UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

MONIQUE SYKES, et al.                          **09 cv 8486 (DC)**

                Plaintiffs,

     -against-

MEL S. HARRIS AND ASSOCIATES, LLC., et. al.

                Defendants.

------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MEL HARRIS DEFENDANTS' MOTION TO DISMISS

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
**150 East 42nd Street**
**New York, New York 10017**
**(212) 490-3000**

3975778.4

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

PLAINTIFFS' ALLEGATIONS ..............................................................................................2

    A.       MONIQUE SYKES ...............................................................................4

    B.       RUBY COLON ......................................................................................5

    C.       REA VEERBADREN ..............................................................................5

    D.       FATIMA GRAHAM ...............................................................................6

    E.       KELVIN PEREZ .....................................................................................6

    F.       SAUDY RIVERA ...................................................................................7

    G.       PAULA ROBINSON ...............................................................................7

    H.       ENID ROMAN .......................................................................................8

LEGAL STANDARD...............................................................................................................8

ARGUMENT............................................................................................................................9

    POINT I:       THE FDCPA CLAIMS MUST BE DISMISSED ...................................10

    A.       PLAINTIFFS' FDCPA CLAIMS FAIL TO STATE A CAUSE OF ACTION..10

    B.       THE FDCPA CLAIMS ARE BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS..................................................................................................11

        1.      The debt collection actions and affidavits of service were filed outside the statute of limitations................................................................................11

        2.      The courts in this district do not recognize the continuing FDCPA violation that plaintiffs advocate.............................................................12

        3.      "Fraudulent concealment" does not apply to the Mel Harris defendants ................................................................................................14

    POINT II:     PLAINTIFFS CANNOT STATE A CAUSE OF ACTION UNDER RICO .........................................................................................15

A.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO DEMONSTRATE THE MEL HARRIS DEFENDANTS' ALLEGED FRAUDULENT INTENT ........................................................................................................16

  1.   Plaintiffs fail to plead "strong circumstantial evidence"

    a.   Guilt by association is not guilt ....................................................18

    b.   "Knew or should have known" is insufficient to establish fraud ..........................................................................................18

    c.   Evidence of the underlying claims is not required before filing debt collection actions ......................................................................19

  2.   There are no allegations that Mel Harris had motive and opportunity to commit the alleged fraud ......................................................................20

B.   PLAINTIFFS FAIL TO ESTABLISH THE REQUISITE ELEMENTS FOR AN "ENTERPRISE" ...................................................................................................21

  1.   Failure to plead association-in-fact..........................................................21

  2.   Failure to plead management and control ................................................23

C.   THERE IS NO A VIABLE CLAIM OF MAIL/WIRE FRAUD BECAUSE PLANTIFFS RELY ON AN ALLEGATION THAT THE DEFENDANTS *FAILED* TO MAIL THE DOCUMENTS AT ISSUE .........................................23

POINT III:   THE STATE LAW CLAIMS MUST BE DISMISSED .........................23

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

## <u>CASES</u>

<u>Page</u>

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937, 1949 (2009)..........................................................................................9

*Atsi Commc'ns, Inc. v. Shaar Fund, Inc.,*493 F.3d 87 (2d Cir. 2007)..................................9

*Bay Harbour Management, LLC v. Carothers*
   282 Fed. Appx. 71 (2d Cir. 2008)..............................................................................17

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................................................9

*Byrd v. Law Offices of John D. Clunk Co.,L.P.A.,*
   2010 U.S.Dist. LEXIS 20636 (S.D. Ohio Mar. 2010)................................................11

*Calka v. Kucker, Kraus & Bush*, LLP.
   1998 U.S.Dist. LEXIS 11868 (E.D.N.Y. 1998).....................................................13, 14

*Richeson v. Javitch, Block, Rathbone*
   576 F.Supp.2d 861 (N.D. Ohio 2008).......................................................................11

*Deere v. Javitch,*
   413 F.Supp.2d 886 (S.D. Ohio 2006)...........................................................10, 11, 19

*Finnegan v. University of Rochester Medical Ctr. et al.,*
   21 F.Supp.2d 223 (W.D.N.Y. 1998)..........................................................................24

*First Capital Asset Management Inc. v. Satinwood, Inc.,*
   385 F.3d 159 (2d Cir. 2004) ...............................................................15, 16, 21, 23

*First Nationwide Bank v. Gelt Funding, Corp,*
   820 F.Supp. 89 (2d 1993) ...................................................................................21, 22

*Foster v. D.B.S. Collection Agency,*
   463 F.Supp. 2d 783 (S.D. Ohio 2006).......................................................................13

*Hart, et al. v. Internet Wire, Inc., et al.*
   50 Fed. Appx. 464 (2d Cir. 2002).............................................................................19

*Harvey v. Great Seneca Finance Corp.,*
   453 F.3d 324 (6th Cir. 2006) .................................................................................10

*Hedges v. United States,*
   404 F.3d 744 (3d Cir. 2005).......................................................................................15

3992843.1

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)......................................................................17, 19

*Krawczyk v. Centurion Capital Corp.,*
    2009 U.S.Dist. LEXIS 12204 (N.D. I11. Feb. 18, 2009)..............................................10

*Levoy v. Gatullo-Wilson, et al.*
    170 Fed. Appx. 721 (2d Cir. 2006)............................................................16

*Moll v. U.S. Life Title Insurance Co.,*
    654 F.Supp. 1012 (S.D.N.Y. 1987) ...........................................................22

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)....................................................................17

*Reeves v. Ernst & Young*
    507 U.S. 170 (1993)............................................................................23

*Rosner v. Bank of China*
    349 Fed. Appx. 637 (2d Cir. 2009)............................................................8

*S.Q.K.F.C. v. Bell Atlantic Tricon Leasing Corp.,*
    84 F.3d 629 (1996)............................................................................23

*Schaffhauser v. Burton Neil & Associates, P.C.*
    2008 U.S.Dist. LEXIS 24894 (M.D, Pa 2008) .............................................13

*Sheppard v. Beerman,*
    18 F.3d 147 (2d Cir. 1994).....................................................................9

*Sierra v. Foster & Garbus,*
    47 F.Supp.2d 393 (S.D.N.Y. 1999) ..........................................................13

*Smallwood et al. v. Lupoli, et al.,* 2009 U.S.App. LEXIS 4959, (2d 2009)..................16, 21

*Smartix International Corp. v. Mastercard International, LLC,*
    2009 U.S.App. LEXIS 23810 (2d Cir. 2009) ............................................15, 21

*Somin v. Total Community Managemen, Corp. et al.,,*
    494 F.Supp.2d 153 (E.D.N.Y. 2007) ........................................................15

*Spagnola v. The Chubb Corp.,et al.*
    574 F.3d 64 (2d Cir. 2009)....................................................................24

*State of New York v. Hendrickson Brothers,Inc.*
    840 F.2d 1065 (2d 1988)....................................................................14, 15

*Subaru Distributings Corp. v. Subaru of America, Inc.*
    425 F.3d 119 (2d Cir. 2005)....................................................................9

*United States v. Coonan,*
   938 F.2d 1553 (2d Cir. 1991)..................................................................................22

*Worch v. Wolpoff & Abramson, L.L.P.*
   477 F.Supp.2d 1015 (E.D. Mo. 2007).........................................................................11

## STATUTES

15 U.S.C. §1692 ......................................................................................... passim

Fed. R. Civ. P. 9.............................................................................................1, 8

Fed. R. Civ. P. 12(b) ................................................................................1, 2, 8, 9

N.Y. Jud. Law § 487 ........................................................................................2, 4

18 U.S.C. §1962 ......................................................................................... passim

22 N.Y.C.R.R. §208(h)(2) ...................................................................................18

N.Y. GBL § 349 .............................................................................................2, 4

3992843.1

This memorandum is submitted on behalf of Mel S. Harris and Associates, LLC, Mel S. Harris, Michael Young, Kerry Lutz, Todd Fabacher, David Waldman, and Mel Harris John/Jane Does (collectively, "Mel Harris defendants") in support of their motion to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), 9(b), and 12(b)(1).

## PRELIMINARY STATEMENT

This is a putative class action, which arises out of the debt collection efforts by the Mel Harris defendants, who served as legal counsel to the creditor co-defendants. On behalf of the creditor co-defendants, the Mel Harris defendants initiated debt collection actions against the debtor plaintiffs in Civil Courts throughout the State of New York. The debtor plaintiffs appear to focus not on the validity of the debt, but challenge the debt collection process with claims under (1) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d); (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (3) New York General Business Law ("GBL") § 349; and (4) New York Judiciary Law § 487.

As a threshold matter, the entire complaint against the Mel Harris defendants must be dismissed for failure to plead "plausible claims" under the *Twombly/Iqbal* pleading standard. Second, with respect to all plaintiffs, the FDCPA claims against the Mel Harris defendants must be dismissed as: (a) an impermissible attempt to hold the Mel Harris defendants vicariously liable for the actions of a process server; and (b) an unlawful attempt to expand the FDCPA to require a debt collection attorney to physically possess trial-admissible evidence of a debt at the time of commencement of a debt collection lawsuit. Third, as to plaintiffs Monique Sykes, Ruby Colon, Rea Veerbadren, Fatima Graham, and Kelvin Perez, the FDCPA claims must be dismissed as time-barred. Fourth, plaintiffs' attempt to make a baseless FDCPA claim into a civil

1

RICO claim fails miserably.  Likewise, the GBL and Judiciary Law claims fail based upon the complaint's failure to plead viable fraud claims against the Mel Harris Defendants.

The gravamen of the claim in this complaint is that the defendants (creditors, a debt collection law firm and their employees, process service companies and independently contracted process servers) collectively conspired to obtain default judgments against destitute debtors.  However, this bold accusation is not substantiated by any factual averments required to support the requisite elements of a substantive RICO claim. In particular the second amended complaint does not allege any facts in support of the Mel Harris defendants' fraudulent intent, nor does it adequately establish the association-in-fact and management and control elements, which are necessary to plead a RICO "enterprise." Of significance, plaintiffs' factual allegations do not offer a plausible explanation for the Mel Harris defendants' participation in the alleged fraudulent scheme, and do not even closely approach the "strong circumstantial evidence" standard, required to sustain a RICO cause of action.  Instead, the second amended complaint is replete with irrelevant and inflammatory stories about the plaintiffs' backgrounds, out-dated studies authored by the nothing less than the plaintiffs' lawyers themselves and reports/cases about a process server and debt collection law firm who are not parties to this action.

Similarly, in the absence of fraud or deceit, the state-law claims for violation of N.Y. GBL § 349 and N.Y. Jud. Law § 487 must be dismissed for failure to state a cause of action as well. In the alternative, the court should decline to exercise jurisdiction over them, and both claims should be dismissed with the federal claims.

**PLAINTIFFS' ALLEGATIONS**

The crux of plaintiffs' claims is that all of the defendants are part of a massive fraud to obtain and collect judgments against consumers without providing each consumer with notice

2

and the opportunity to be heard. (Ex. A ¶4). Plaintiffs allege that Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 12, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 19, LLC, Joseph A. Orlando, Phillip M. Cannella, and LR Credit John/Jane Does 1-20 (collectively, "Leucadia defendants") improperly brought debt collection actions against the plaintiffs and other consumers in Civil Courts throughout the State of New York. (Ex. A ¶ 95). In connection with those actions, plaintiffs contend that the Mel Harris defendants served as Leucadia's legal counsel, and that Samserv, Inc. William Mlotok, Benjamin Lamb, Michael Mosquera, John Andino, Husam Al-Atrash, Assmat Abdelrahman, and Samserv John/Jane Does 1-20 (collectively, "Samserv defendants") were hired as process servers. (Ex. A ¶¶ 96, 98). Even though the named debtor-plaintiffs in this action do not deny owing the debts at issue,[1] they contend that the Leucadia defendants, Samserv defendants, and Mel Harris defendants orchestrated a fraudulent scheme to recover those debts.

Under the plaintiffs' theory, the Samserv defendants purposefully failed to serve summons and complaints on them and on other defendants in the consumer debt collection actions ("sewer service"). (Ex. A ¶4). In making such allegations, plaintiffs present no specific factual allegations, but merely rely on (1) a self-serving study conducted by the plaintiffs' own counsel; (2) a report from the New York Attorney General's office from 1986; and (3) the New York State Attorney General's audit of one process server, American Legal Process ("ALP"), who is not a party to this litigation; and (4) and a lawsuit commenced by the Attorney General against ALP and 37 debt collection law firms (**the Mel Harris Defendants are not named in that suit**) filed in July 2009. (Ex. A ¶¶ 60, 69, 75, 79). The debtors ask the court to make the

---

[1] None of the named plaintiffs expressly deny owing the debts at issue. *Cf.* Ex. A ¶¶ 122, 144, 182, 183, 196, 224, 256, 279 & 300. Kelvin Perez is the only plaintiff who comes close to disputing the debt, claiming that he never held a Bally Total Fitness Club membership, entered a Bally Total Fitness Club, or owned a credit card. (Ex. A ¶224). Mr. Perez does not deny incurring the debt (i.e., did he purchased a membership for a third party).

huge inferential leap that the entire process server industry is corrupt, and that the Mel Harris defendants actively participated in this alleged corruption when relied upon the affidavits of service prepared by the Samserv defendants (confirming receipt of the summons and complaint on the plaintiffs). (Ex. A ¶ 4). Plaintiffs also allege that the Mel Harris defendants submitted misleading affidavits of merit in support of the motions for default. (Ex. A ¶¶ 132, 154, 175, 207, 234, 266, 289 & 310). They speculate that the affidavits are misleading to the extent that the affiant did not possess sufficient document evidence from the original creditor to file a claim against the plaintiffs on the debts at issue. (Ex. A ¶ 135, 157, 179, 210, 269, 292, 313).

The second amended complaint challenges the defendants' debt collection practices with claims under the FDCPA, 15 U.S.C. §1692; civil RICO, 18 U.S.C. §1962(c)&(d); N.Y. GBL §349; and N.Y. Jud. Law § 487.   Below are the allegations specific to each named plaintiff.

## A.   MONIQUE SYKES

Ms. Sykes contends that on or about June 27, 2008, Mel Harris, LLC commenced a lawsuit on behalf of LR Credit 18 against her in Bronx County Civil Court. (Ex. A ¶¶120, 121). The suit alleged that Ms. Sykes owed money to LR Credit 18, an assignee of JP Morgan Chase Bank. (Ex. A ¶121). Ms. Sykes does not deny owing the debt at issue, but alleges that she was never served with the summons and complaint. (Ex. A ¶¶122, 124). Plaintiffs further allege that Ms. Sykes did not receive the second copy of the summons and complaint, which was mailed to her on or about August 7, 2008. (Ex. A ¶131).  Instead, Ms. Sykes maintains that she learned of the lawsuit in July 2009, after the court entered a default against her. (Ex. A ¶137).

Plaintiffs contend that the Samserv defendants executed a fraudulent service affidavit, which was filed with the court on August 1, 2008.   (Ex. A ¶¶ 125, 1127). Thereafter in September or October 2008, the Mel Harris defendants moved for default judgment. (Ex. A ¶¶

4

125, 128). On October 7, 2008, the court entered a default against Ms. Sykes, and nine months later, Ms. Sykes moved to vacate the default on July 7, 2009. (Ex. A ¶ 138). The court granted the motion on July 31, 2009. (Ex. A ¶ 138).

## B.   RUBY COLON

Ms. Colon alleges that on or about May 22, 2007, Mel Harris, LLC commenced a lawsuit against her on behalf of LR Credit 12 for an outstanding debt in the amount of $2,078.18. (Ex. A ¶¶ 142, 143). The suit was brought in Kings County Civil Court and identified Chase Manhattan Bank as the original owner of the debt. (Ex. A ¶ 143). Ms. Colon does not deny incurring the debt, but alleges that she was not served with the summons and complaint. (Ex. A ¶¶ 144, 146). She contends that she learned of the lawsuit in November 2008 (Ex. A ¶ 159).

She alleges that on or about June 12, 2007, defendants filed the fraudulent affidavit with the court, and in July 2007, defendants moved for default judgment. (Ex. A ¶¶ 149, 150). Ms. Colon also alleges that she did not receive the additional copy of the summons and complaint, which the Mel Harris defendants mailed to her on June 20, 2007. (Ex. A ¶ 152). On July 31, 2007, the court entered a default against Ms. Colon, and on December 3, 2009, she moved to vacate the default. (Ex. A ¶¶ 158, 160). The Mel Harris defendants consented to vacate the default and dismiss the action on December 10, 2009. (Ex. A ¶ 160).

## C.   REA VEERBADREN

Ms. Veerbadren alleges that on or about April 12, 2006, Mel Harris LLC commenced a lawsuit against her in the Queens County Civil Court on behalf of LR Credit 10 for a debt originally owned by Sears. (Ex. A ¶¶ 164, 165).  Ms. Veerbadren does not dispute incurring the debt, but alleges that she did not receive the summons and complaint. (Ex. A ¶¶ 167, 182). She contends that on May 25, 2006, the defendants filed a fraudulent affidavit of service and

5

improperly pursued a default against her in July 2006. (Ex. A ¶¶ 170, 171). The court entered a default on August 8, 2006. (Ex. A ¶ 180). Ms. Veerbadren maintains that she did not learn of the lawsuit until January 2008 and did not receive the copy of the summons and complaint that the Mel Harris defendants mailed to her on June 7, 2006. (Ex. A ¶¶ 173, 181). Nearly one year after learning of the default, Ms. Veerbadren moved to vacate the default on December 12, 2008. (Ex. A ¶ 190). Mel Harris, LLC and Ms. Veerbadren entered into a stipulation on December 23, 2008, vacating the judgment and dismissing the action. (Ex. A ¶ 190).

## D.    FATIMA GRAHAM

On or about July 30, 2008, Mel Harris, LLC commenced an action against Fatima Graham on behalf of LR Credit 18 in New York County Civil Court for a debt originally owed to Providian Bank. (Ex. A ¶ 194, 195). Ms. Graham does not dispute incurring the debt, but alleges that she did not receive service of the summons and complaint. (Ex. A ¶¶ 196, 198). Unlike the other plaintiffs, Ms. Graham concedes that she received the copy of summons and complaint mailed to her by Mel Harris, LLC on or about August 29, 2008. (Ex. A ¶¶ 199, 212). Notwithstanding, she challenges the alleged procedural defect and contends that on August 21, 2008, the defendants filed a fraudulent affidavit of service, and later pursued a default against her in September or October 2008. (Ex. A ¶¶ 202, 203). The court entered the default on October 7, 2008. (Ex. A ¶ 211). Seven months later in December 2009, Ms. Graham moved to vacate the default. (Ex. A ¶ 219). Mel Harris, LLC stipulated to the vacatur and dismissal of the case on December 8, 2009 and December 15, 2009, respectively. (Ex. A ¶ 219).

## E.    KELVIN PEREZ

Mel Harris, LLC commenced an action against Kelvin Perez on or about November 5, 2007 in Bronx County Civil Court. (Ex. A ¶ 222). Plaintiffs allege that Mel Harris, LLC

commenced the suit on behalf of LR Credit 14, which was an assignee of debt originally owned by Bally Total Fitness Clubs. (Ex. A ¶ 223). Mr. Perez contends that he was never served with the summons or complaint, and therefore the defendants filed a fraudulent affidavit of service on December 26, 2007. (Ex. A ¶¶ 226, 229). Subsequently, in February 2008, the defendants moved for a default, which the court entered on February 19, 2008. (Ex. A ¶¶ 230, 238). Mr. Perez alleges that he learned of the lawsuit in September 2009 and that he moved to vacate the default on December 31, 2009. (Ex. A ¶¶ 239, 247). On February 12, 2010, Mel Harris, LLC stipulated to discontinuing the action against Mr. Perez. (Ex. A ¶ 251).

**F.     SAUDY RIVERA**

Ms. Rivera contends that on or about January 9, 2009, Mel Harris, LLC commenced an action against her on behalf of LR Credit 19 in Kings County Civil Court for a debt originally owed to JPMorgan Chase Bank.. (Ex. A ¶¶ 254, 255).  Ms. Rivera does not dispute incurring the debt, but alleges that she did not receive service of the summons and complaint. (Ex. A ¶¶ 256, 258). Similarly, she denies receiving the copy of the summons and complaint, which the Mel Harris defendants mailed to her on February 25, 2009. (Ex. A ¶ 264). As such, she contends that on February 17, 2009, the defendants filed a fraudulent affidavit of service and thereafter improperly pursued a default against her in April 2009. (Ex. A ¶¶ 261, 262). The court entered the default on April 13, 2009, but Ms. Rivera states that she did not learn of it until October or November 2009. (Ex. A ¶¶ 270, 272). On December 23, 2009, Ms. Rivera moved to vacate the default and Mel Harris, LLC consented on January 7, 2010. (Ex. A ¶ 273).

**G.     PAULA ROBINSON**

Plaintiffs allege that on or about March 2, 2009, Mel Harris, LLC commenced an action against Paula Robinson on behalf of LR Credit 18 in Bronx County Civil Court for a debt

7

originally owed to Citbank/Sears.  (Ex. A ¶¶ 277, 278). Ms. Robinson does not dispute incurring

the debt, but alleges that she did not receive service of the summons and complaint. (Ex. A ¶¶

279, 281). Similarly, she denies receiving the copy of the summons and complaint, which the

Mel Harris defendants mailed to her on May 14, 2009. (Ex. A ¶ 287). As such, she contends that

on May 7, 2009, the defendants filed a fraudulent affidavit of service and thereafter improperly

pursued a default against her in June 2009. (Ex. A ¶¶ 261, 262). The court entered the default on

July 8, 2009, but Ms. Robinson states that she did not learn of it until February 2010. (Ex. A ¶¶

293, 294). On February 2, 2010, Ms. Rivera moved to vacate the default and Mel Harris, LLC

consented on February 25, 2010. (Ex. A ¶ 295).

**H.     ENID ROMAN**

On or about March 16, 2009, Mel Harris, LLC commenced an action against Enid Roman

on behalf of LR Credit 19 in Kings County Civil Court for a debt originally owed to

WAMU/Providian Bank. (Ex. A ¶¶ 298, 292).  Ms. Roman does not dispute the debt, but alleges

that she did not receive service of the summons and complaint, or the copies mailed to her by the

Mel Harris defendants on May 11, 2009. (Ex. A ¶¶ 300, 302, 308). Thus, she contends that on

May 1, 2009, the defendants filed a fraudulent affidavit of service and then improperly pursued a

default against her in June 2009. (Ex. A ¶¶ 305, 306). The court entered the default on June 23,

2009, which Ms. Roman states she learned of in January 2010. (Ex. A ¶¶ 314, 315). On January

28, 2010, Ms. Roman filed a motion to vacate the default, which the court granted on February

11, 2010.  (Ex. A ¶ 316).

## **LEGAL STANDARD**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), the

Court must accept all of the factual allegations in the complaint as true. *See Rosner v. Bank of*

*China,* 349 Fed. Appx. 637, 638 (2d Cir. 2009); *Atsi Commc'ns, Inc. v. Shaar Fund, Inc.,* 493 F.3d 87, 98 (2d Cir. 2007).  However, a plaintiff can only survive a motion to dismiss if he provides the grounds upon which his claim rests through factual allegations beyond the level of speculation. *See Atsi Commc'ns, Inc.,* 493 F.3d at 98. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if it appears that the plaintiff cannot prove facts in support of his claim that would entitle him to relief. *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994).  Moreover, a plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff in any case must allege enough facts to state a claim that is plausible as opposed to merely conceivable. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Finally, "in determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir. 2005).

## ARGUMENT

As a threshold matter, the second amended complaint must be dismissed for failure to adequately plead a cause of action under the *Twombly/Iqbal* pleading standard. *See Twombly,* 550 U.S. at 570 (recognizing the "plausibility" standard in that the pleadings must set forth enough facts to raise a reasonable expectation of a claim); *Iqbal,* 129 S.Ct. at 1949 (applying 15 to all cases).  With respect to the Mel Harris defendants, the complaint does not make specific factual allegations, but rather, relies heavily on studies and reports that do not pertain to any of the named defendants. (Ex. A ¶¶ 60, 69, 75, 79). Plaintiffs' second amended complaint must also be dismissed because (1) all of the plaintiffs fail to state a claim under the FDCPA, and several

claims are time-barred; (2) plaintiffs do not and cannot establish all the necessary elements of

RICO to sustain a claim; and (3) the remaining state law claims also fail to state a cause of

action.[2]  In addition, if the court dismisses the federal claims, it should not exercise jurisdiction

over the state law claims.

**POINT I:      THE FDCPA CLAIMS MUST BE DISMISSED**

As a threshold matter, plaintiffs' attempt to impose FDCPA liability on the Mel Harris

defendants based upon the alleged fraudulent affidavits of service prepared and filed by the

process servers, Samserv, has been rejected by several courts. In addition, to the extent that

plaintiffs contend that the Mel Harris defendants violated the FDCPA by filing lawsuits without

sufficient documentary evidence, plaintiffs fail to state a cause of action.  Lastly, the FDCPA

claims are barred by the statute of limitations with respect to five of the eight plaintiffs.

**A.      PLAINTIFFS' FDCPA CLAIMS FAIL TO STATE A CAUSE OF ACTION**

With respect to plaintiffs' argument that the Mel Harris defendants purportedly submitted

affidavits of merit that plaintiffs contend could be construed as leading one to believe that they

could produce sufficient evidence of the debt if needed, this argument must fail.  Several courts

have already held that an attorney's lack of physical evidence to prove a debt is not actionable

under the FDCPA.  *See Krawczyk v. Centurion Capital Corp.*, 2009 U.S. Dist. LEXIS 12204

(N.D. Ill. Feb. 18, 2009) ("Federal courts have recognized that filing a collection lawsuit without

the immediate means of proving the debt does not violate the FDCPA because a defendant is

entitled to request more information or details about a plaintiff's claim."); *Harvey v. Great*

*Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006); *Deere v. Javitch*, 413 F. Supp.2d 886, 891

(S.D. Ohio 2006).  As there can be no FDCPA violation against an attorney for commencing an

---

[2] All claims brought by Ruby Colon must be dismissed against the Mel Harris defendants. Upon entering into a stipulation to dismiss the underlying debt collection action, Ms. Colon  stipulated that dismissal of the action constituted a "complete settlement of all issues related to or arising out of this matter." Exhibit B ¶ 4.

action without sufficient evidence to prove the existence of the debt, there can be no violation for allegedly submitting an affidavit that could be construed as representing this very information. Likewise, these claims are barred under the Rooker-Feldman doctrine as they are an attempt to challenge the sufficiency of submissions accepted by the New York State courts as sufficient to establish the existence of a valid debt.

Similarly, the Mel Harris defendants cannot be held vicariously liable for alleged fraudulent service by the Samserv defendants who were responsible for serving process and preparing and filing the affidavits of service.  As the process server defendants are not debt collectors for FDCPA purposes, they are not subject to the FDCPA. As a result, as several courts have held, the Mel Harris defendants, as the attorneys that hired Samserv, cannot be vicariously liable for the process server's alleged acts. *Byrd v. Law Offices of John D. Clunk Co., L.P.A.*, 2010 U.S. Dist. LEXIS 20636 (S.D. Ohio Mar. 8, 2010); *Worch v. Wolpoff & Abramson, L.L.P.*, 477 F. Supp. 2d 1015, 1019 (E.D. Mo. 2007).  Likewise, the Mel Harris defendants were entitled to accept as true, the representations in the Samserv affidavits of service. *Cf. Richeson v. Javitch, Block, Rathbone,* 576 F. Supp. 2d 861, 867 (N.D. Ohio 2008) (recognizing that the FDCPA "'does not require an independent investigation of the debt referred for collection.'") (quoting *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)).  Because the Mel Harris defendants cannot be vicariously liable for the allegedly fraudulent affidavits of service, all of the FDCPA claims seeking to impose liability on them must be dismissed.

**B.    THE FDCPA CLAIMS ARE BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS**

**1.    The debt collection actions and affidavits of service were filed outside the statute of limitations**

The FDCPA provides, "An action to enforce any liability under this subchapter may be brought . . . within *one year* from the date on which the violation occurs." 15 U.S.C. 1692k(d)

11

(emphasis added). Here, plaintiffs allege that the Mel Harris defendants violated the FDCPA when they commenced the debt collection actions against the plaintiffs and filed false affidavits of service with various courts of New York. (Ex. A ¶337). Plaintiffs, however, did not file the instant litigation until October 6, 2009, thereby placing all underlying debt collection actions that were filed before October 6, 2008 beyond the one-year limitations period. 15 U.S.C. 1692k(d). Even giving the plaintiff the benefit of the doubt, at the latest, any FDCPA claims regarding service upon the plaintiffs in the underlying debt collection actions became time-barred one year after the affidavits of service were filed with the relevant court. To that end, the FDCPA claims brought by plaintiffs Sykes, Colon, Veerbadren, Graham, and Perez are time-barred.

Plaintiffs concede that defendants commenced the action against Sykes on or about June 27, 2008 and filed the allegedly fraudulent affidavit of service on August 1, 2008. (Ex. A ¶¶ 120, 127). Plaintiffs also concede that they defendants commenced the action against Colon on May 22, 2007, filing the purportedly fraudulent affidavit of service on or about June 12, 2007. (Ex. A ¶¶ 142, 149). With respect to Veerbadren, plaintiffs admit that the defendants commenced the lawsuit four years ago on April 12, 2006 and subsequently filed the allegedly fraudulent service affidavit on May 25, 2006. (Ex. A ¶¶164, 170). Plaintiffs concede that the defendants commenced suit against Graham on July 30, 2008 and thereafter filed the allegedly fraudulent affidavit of service on August 21, 2008. (Ex. A ¶¶ 194, 196). Similarly, defendants commenced the debt collection action against Perez on November 5, 2007 and filed the fraudulent affidavit of service on December 26, 2007. (Ex. A ¶¶ 222, 229). As demonstrated by plaintiffs' own pleadings, these plaintiffs' FDCPA claims are barred by the one-year statute of limitations.

2.  **The courts in this district do not recognize the continuing FDCPA violation that plaintiffs advocate**

12

In their pre-motion letter, plaintiffs indicated that their response to the statute of limitations argument will be that every time a document was filed in the underlying debt collection action, the clock begins to run anew on their FDCPA claims.   Plaintiffs argue that every time the Mel Harris Defendants took any action in the course of the underlying action it constituted a new start to the limitations period – despite the fact that the act related back to the alleged initial "sewer service" and the purported false affidavit of service prepared by the Samserv defendants.  However, plaintiffs cite no authority in the Second Circuit.[3]  Conversely, in *Sierra v. Foster & Garbus*, 47 F.Supp. 2d 393, 395 (S.D.N.Y. 1999), the court reasoned, "Plaintiff endeavored to avoid the time bar by contending that his claim was part of a 'continuing violation' . . . If plaintiff's theory were correct, however, his cause of action could be kept alive indefinitely because each new communication would start a fresh statute of limitations." *Id.* at 395; *see also Calka v. Kucker, Kraus & Bruh, LLP,* 1998 U.S. Dist. LEXIS 11868 * 9 (E.D.N.Y. 1998) (rejecting the plaintiff's contention that prosecution of a collection lawsuit, and all the proceedings therein, including the filing of an amended complaint and a motion for summary judgment, constituted continuing violations and holding that all such claims accrued on the date the suit was filed).[4]

Plaintiffs cannot circumvent the statute of limitations by alleging that the defendants continuously violated the FDCPA "by preparing and filing false affidavits of service, affidavits of merit, and attorney affirmations; seeking and obtaining default judgments . . . and actively collecting or attempting to collect the fraudulent obtained default judgments."   (Pl. Let. P. 2). Preparing pleadings and obtaining default judgments amounts to nothing more than "the course

---

[3] In their letter brief, plaintiffs cite *Foster v. D.B.S. Collection Agency*, 463 F.Supp. 2d 783 (S.D. Ohio 2006). However, *Foster* is a District Court case from Ohio and has absolutely no authority or weight in New York.
[4] The rejection of the "continuing violation" theory is embraced by other jurisdictions as well. *See Schaffhauser v. Burton Neil & Associates, P.C.*, 2008 U.S. Dist. LEXIS 24894, *9 (M.D. Pa. 2008).

13

of litigation," which is not a continuing violation of the FDCPA. *See Calka,* 1998 U.S. Dist. LEXIS 11868 at 9. As such, the statute of limitations began to accrue when the underlying actions were commenced, or at the latest, when the affidavits of service were filed.

### 3. "Fraudulent concealment" does not apply to the Mel Harris defendants

Plaintiffs also incorrectly argue that the doctrine of "fraudulent concealment" should be applied to the instant case to toll the statute of limitations. (Pl. Let. p. 2). However, plaintiffs rely on *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d 1988), which applied fraudulent concealment in the context of an antitrust case. As this case involves an FDCPA claim and not an antitrust claim, *Hendrickson* is inapposite. Further, there is no authority in Second Circuit that recognizes equitable tolling in FDCPA cases. Notwithstanding, the doctrine of fraudulent concealment cannot be applied against the Mel Harris defendants for other reasons.

First, plaintiffs contend that they were not made aware of the underlying consumer debt actions until *after* the court entered defaults against them. However, on January 29, 2008, section 208.6 of Uniform Civil Rules of the New York City Civil Court was amended to read as follows:

> (2) *The clerk* promptly shall mail to the defendant the envelope containing the additional notice set forth in paragraph (1). No default judgment based on defendant's failure to answer shall be entered unless there has been compliance with this subdivision and at least 20 days have elapsed from the date of mailing by the clerk.

22 NYCRR §208(h)(2) (emphasis added). Nowhere in the second amended complaint do any of the plaintiffs allege that they did not receive the copies of the summons and complaints, which were sent to them by the Clerk of the Court pursuant to 22 NYCRR §208(h)(2). As demonstrated in Point I.A.1., plaintiffs Sykes and Graham's FDCPA claims were commenced greater than one year before plaintiffs filed the instant lawsuit and were subject to the additional mailing – tolling

14

cannot apply. *Somin v. Total Community Management, Corp. et al.*, 494 F.Supp. 2d. 153, 160 (E.D.N.Y. 2007) (refusing to apply equitable tolling to an FDCPA claim).

Second, under a fraudulent concealment theory, "the plaintiff must prove the concealment element by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Id.* Equitable tolling is "extraordinary relief," and as such is only granted "sparingly." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005). In this action, plaintiffs make no factual allegations, which demonstrate that Mel Harris defendants took affirmative steps to conceal anything from them. As discussed further in Point II, *infra,* the second amended complaint is devoid of any allegation that the Mel Harris defendants knew of the alleged sewer service or knowingly participated in the fraudulent scheme. Thus, the "extraordinary relief" cannot be applied to toll the statute of limitations. *See Hendrickson Bros., Inc.*, 840 F.2d at 1083.

**POINT II:    PLAINTIFFS CANNOT STATE A CAUSE OF ACTION UNDER RICO**

In order to establish a substantive civil RICO cause of action, a plaintiff must demonstrate that the defendant participated in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[5] *Smartix Int'l Corp. v. Mastercard Int'l, LLC, et al.*, 2009 U.S.App. LEXIS 23810 *3 (2d Cir. 2009). To satisfy the defendant's role in the "conduct of the enterprise," the plaintiffs must demonstrate, *inter alia,* that the defendant participated in the "operation and management" of the enterprise by taking "some part in directing the enterprise's affairs." *First Capital Asset Management, Inc.*, 385 F.3d at 176 (citations omitted). Further, where a plaintiff alleges "association in fact" among enterprise members, the plaintiff must

---

[5] Also, plaintiff must show that the enterprise engaged in or affected interstate commerce. *First Capital Asset Management, Inc., et al. v. Satinwood, Inc., et al.*, 385 F.3d 159, 173, n. 12 (2d Cir. 2004) (citations omitted).

15

pleaded specific allegations of the enterprise's continuity of structure. *See Smallwood, et al. v. Lupoli, et al.*, 2009 U.S.App. LEXIS 4959, *3 (2d 2009).

Moreover, when the RICO claim arises from the predicate acts of mail fraud and wire fraud (as alleged in this case), it must be plead with the particularity required under Fed. R. Civ. P. 9(b). *Levoy, v. Gatullo-Wilson, et al.*, 170 Fed. Appx. 721, 723 (2d Cir. 2006) (citations omitted). Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For the reasons sent forth below, plaintiffs' RICO claims are not pleaded with sufficient particularity. Plaintiffs fail to allege the Mel Harris Defendants' acted with "fraudulent intent." Plaintiffs also fail to adequately allege both "association in fact" and the Mel Harris Defendants' "management and control" of the enterprise. Accordingly, plaintiffs fail to state a cause of action under civil RICO.[6]

## A. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO DEMONSTRATE THE MEL HARRIS DEFENDANTS' ALLEGED FRAUDULENT INTENT

To plead mail and wire fraud under RICO, the plaintiff must show: (1) the existence of a scheme to defraud; (2) the defendant's knowing or intentional participation in the scheme; and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. *S.Q.K.F.C. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citations omitted). An allegation of mail or wire fraud must include facts that give rise to a *strong inference of fraudulent intent* by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud; or (2) alleging facts that constitute *strong circumstantial evidence* of conscious misbehavior or recklessness. *Id.* (emphasis added). Here, there are simply no such allegations.

### 1. Plaintiffs fail to plead "strong circumstantial evidence"

---

[6] Plaintiffs' claim for RICO conspiracy must be dismissed because the substantive allegations fail to state a claim. *First Capital*, 385 F.3d at 182 (dismissing the RICO conspiracy claim "because Plaintiffs did not adequately allege a substantive violation of RICO.") (citations omitted).

3975778.4

The plaintiffs cannot meet their burden of demonstrating *strong circumstantial evidence* in support of the Mel Harris defendants' conscious misbehavior. In cases where the plaintiff must plead sufficient facts to establish fraudulent intent, the Second Circuit has determined that *strong circumstantial evidence* is only established through factual allegations of the defendant's "deliberate illegal behavior" or "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Bay Harbour Management, LLC v. Carothers, et al.* 282 Fed. Appx. 71, 77 (2d Cir. 2008) (quoting *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000)). Further, "[w]here motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). As demonstrated in Point II.A.2., *infra*, the second amended complaint is devoid of any allegations constituting the Mel Harris defendants' motive for participation in the fraudulent scheme. Thus, plaintiffs have an even higher burden of demonstrating strong circumstantial evidence, which they simply do not meet.

Not only have the plaintiffs failed to allege facts in support of Mel Harris' alleged deliberate illegal behavior or highly unreasonable conduct, but more notably, plaintiffs' allegations against the Mel Harris defendants are both scarce and benign. In sum, plaintiffs' allegations against the Mel Harris defendants are as follows: (1) the Mel Harris defendants are debt collection attorneys, and therefore are guilty of fraudulent conduct because other debt collection attorneys have been named in a pending lawsuit brought by the New York Attorney General ("guilt by association"); (2) the Mel Harris defendants knew or should have known that Samserv's affidavits of service were fraudulent because other process servers have been accused of sewer service in studies from the 1980's and others authored by plaintiff's counsel ("guilt for

17

the old sins of others"); and (3) the Mel Harris must have committed a fraud because they filed lawsuits without having sufficient evidence to succeed on the merits.

Moreover, as to plaintiffs Monique Skyes, Fatima Graham, Saudy Rivera, Paula Robinson, and Enid Roman, whose underlying debt collection lawsuits were commenced on or after January 29, 2008 (Ex. A ¶¶ 120, 194, 254, 276 & 298) – where the Clerks of the New York Civil Courts handled the supplemental mailings of the summons and complaints to the plaintiffs pursuant to 22 NYCRR §208(h)(2) – plaintiffs cannot plead strong circumstantial evidence. This is because independent of any of the defendants' actions in the underlying cases, plaintiffs would have received the complaints from the court directly, vitiating any attempt to engage in sewer service.

### a.    *Guilt by association is not guilt*

Despite their efforts, plaintiffs cannot rely on out-dated studies, which do not pertain to any of the defendants in this action. As part of their inflammatory yet irrelevant allegations, plaintiffs cite to (1) a report from the New York Attorney General's office from *1986*; (2) a self-serving study of defaults by consumers in lawsuits conducted by the *plaintiffs' own counsel;* (3) the New York State Attorney General's audit of *one process server, American Legal Process* ("ALP"); and (4) and a lawsuit commenced by the Attorney General against ALP and 37 debt collection law firms, which did not include the Mel Harris Defendants. (Ex. A ¶¶ 60, 69, 75 & 79). Reference to these studies is not circumstantial evidence of the Mel Harris defendants' "deliberate illegal behavior" or "highly unreasonable conduct" because reference to these studies is not evidence of the Mel Harris defendants' behavior at all.

### b.    *"Knew or should have known" is insufficient to establish fraud*

The only circumstantial evidence even tangentially related to the Mel Harris defendants is plaintiffs' allegation that the Mel Harris defendants knew or should have known that the affidavits of service were fraudulent based on the number of executed affidavits received and Samserv's compensation structure.  (Ex. A ¶102). However, while the allegation that the Mel Harris defendants "knew or should have known" of the fraud might be sufficient to survive a motion to dismiss a negligence claim, it is not sufficient to survive a motion to dismiss a claim that sounds in fraud. *See Hart, et al. v. Internet Wire, Inc., et al.,* 50 Fed. Appx. 464, 465-66 (2d Cir. 2002) (plaintiffs' allegations that defendants should have investigate "red flags" did not rise to level of a strong inference of fraudulent intent, and at most, suggested carelessness or haste). Moreover, in the absence of motive, plaintiffs must demonstrate even stronger circumstantial evidence of the Mel Harris defendants' purported "deliberate illegal behavior" or "highly unreasonable conduct."  *See Kalnit*, 264 F.3d at 142.  Thus, the mere allegation that the Mel Harris defendants should have known of fraud is far from sufficient.

### c.   *Evidence of the underlying claims is not required before filing debt collection actions*

Assuming, *arguendo* th at the plaintiffs' allegations are true, even if the Mel Harris defendants did not possess sufficient evidence to succeed on the merits of the underlying debt collection actions, simply filing the lawsuits is not evidence of fraud or fraudulent intent. As with nearly all litigated cases, the plaintiffs in a debt collection action are not required to possess all of the necessary evidence to substantiate the claim. *See Deere v. Javitch,* 413 F.Supp. 2d 886, 891 (S.D. Ohio 2006). In *Deere,* the court reasoned that prior to filing a lawsuit, a debt collector need not possess all of the documentary evidence to substantiate a debt because "[a] defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim." *Id.* Further, the *Deere* court reasoned that the plaintiff did not "allege that anything in the state court

19

complaint was false, or that the complaint was baseless. She essentially allege[d] that more of a paper trail should have been in the lawyers' hands or attached to the complaint." *Id.*

In this case, none of the plaintiffs affirmatively deny owing the debts at issue. (Ex. A ¶¶ 119-317). Instead, plaintiffs would like the court to infer that filing a debt collection lawsuit without "more of a paper trail" is *per se* fraud, or at the very least, evidence of fraud. *See* (Ex. A ¶¶ 53-57).   However, as explained in *Deere*, creditors need not possess "paper trail" to substantiate a debt before commencing litigation because the debtor is entitled to request more information about the claim through pleadings or discovery during the course of litigation. *Deere*, 413 F.Supp. 2d at 891.   As such, filing a debt collection action without supporting documents does rise to the level of "deliberate illegal behavior" or "highly unreasonable conduct" sufficient to establish fraudulent intent. *S.Q.K.F.C.*, 84 F.3d at 633.   For that reason, plaintiffs' civil RICO claim (arising from mail and wire fraud) must be dismissed.

### 2.   There are no allegations that Mel Harris had motive and opportunity to commit the alleged fraud

Similarly, the second amended complaint provides no indication that the Mel Harris defendants had motive and opportunity to commit the fraud. Plaintiffs imply that the Samserv defendants possessed motive and opportunity because they are compensated based on the number of plaintiffs they serve as opposed to the number they attempt to serve. (Ex. A ¶ 98). Moreover, plaintiffs allege that the Samserv defendants are compensated only $3.00 - $6.00 per completed service, thereby increasing the Samserv defendants' motive to report serving as many plaintiffs as possible.  (Ex. A ¶ 106). Even if the court views these implications in the light most favorable to the plaintiffs, they do not provide any basis for the Mel Harris defendants' motive to engage in the alleged sewer service. Indeed, nowhere in the second amended complaint do the plaintiffs even suggest that the Mel Harris defendants are compensated based on the number of

20

debt collection actions they file, or on the number of default judgments they obtain. As such, the civil RICO allegations against the Mel Harris defendants fail as a matter of law.

**B.      PLAINTIFFS FAIL TO ESTABLISH THE REQUISITE ELEMENTS FOR AN "ENTERPRISE"**

"The RICO statute defines an 'enterprise' as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Smartix Int'l Corp.,* 2009 U.S.App. LEXIS 23810, *4 (citing 18 U.S.C. § 1961(4)); *First Nationwide Bank v. Gelt Funding, Corp.,e t al.,* 820 F.Supp. 89, 98 (2d 1993) ("The Supreme Court has held that a RICO 'enterprise' is a 'group of persons associated together for a common purpose of engaging in a course of conduct . . . . [It is] proved by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit.'" (quotations omitted)).   Further, "to demonstrate an 'association-in-fact' enterprise . . . a plaintiff must allege facts showing the existence of a 'group of persons associated together for a common purpose of engaging in a course of conduct.'" *Smartix Int'l Corp.,* 2009 U.S.App. LEXIS 23810 *4 (citations omitted). Finally, there must also be a 'nexus . . . between the enterprise and the racketeering activity that is being conducted.' *Smartix Int'l Corp.,* 2009 U.S.App. LEXIS 23810 *4 (quoting *First Capital,* 385 F.3d at 174).

**1.      Failure to plead association-in-fact**

To establish "association in fact" among enterprise members, the plaintiff must plead specific allegations of the enterprise's continuity of structure. *See*; *First Nationwide Bank v. Gelt Funding, Corp.,e t al.,* 820 F.Supp. 89, 98 (2d Cir. 1993) (dismissing the RICO claim because "[p]laintiff has not specified how all defendants . . . joined together a group to perpetuate the frauds); *cf. Smallwood, et al. v. Lupoli, et al.,* 2009 U.S.App. LEXIS 4959 *3 (2d Cir. 2009); *First Nationwide Bank,* 820 F.Supp. at 98 (dismissing the RICO claim because "[p]laintiff has

21

not specified how all defendants . . . joined together a group to perpetuate the frauds). Further, a plaintiff must plead facts in support of the enterprise's "hierarchy, organization, and activities" to determine whether "its members functioned as a unit." *United States* v. *Coonan,* 938 F.2d 1553, 1560-61 (2d Cir. 1991); *see also, Moll* v. *U.S. Life Title Ins. Co.,* 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987) (dismissing the complaint for failure to specify how the alleged enterprise members joined together to achieve real estate kickbacks, and for failure to plead factual allegations in support of the continuity of structure or personnel in the purported enterprise).

In this case, plaintiffs have not properly alleged "association in fact" with respect to the "Mel Harris enterprise" or the enterprise allegedly comprised of the Mel Harris defendants, the Samserv defendants, and the Leucadia defendants because there are no specific allegations regarding the continuity of structure or how the defendants function as a unit. (Ex. A ¶ 343). With respect to the "Mel Harris enterprise," plaintiffs do not specify how the Mel Harris employees functioned as a unit to perpetuate the alleged fraud as opposed to how they function as a unit to provide legal services. There are no allegations that the Mel Harris defendants planned the alleged fraudulent scheme together, that the principals provided employees with incentives to participate in the alleged fraud, or that one particular Mel Harris defendant was in control. As such, the RICO claim must be dismissed. *First Nationwide Bank*, 820 F.Supp. at 98.

Similarly, plaintiffs have failed to allege facts to demonstrate that the Mel Harris defendants, Samserv defendants, and Leucadia defendants functioned as a unit and perpetuate the alleged fraud. Despite having amended the complaint twice, it is still unclear who orchestrated the fraud, how the parties came to agree to participate, and if there was a common benefit to all parties. As such, the RICO claim must be dismissed. *Id.*

22

2.      **Failure to plead management and control**

To satisfy the defendant's role in the "conduct of the enterprise," the plaintiffs must demonstrate, *inter alia,* that the defendant participated in the "operation and management" of the enterprise by taking "some part in directing the enterprise's affairs." *First Capital Asset Management, Inc.*, 385 F.3d at 176 (citations omitted). However, there are no allegations in the complaint that the Mel Harris defendants had any role in the direction or management of the enterprise.   As such, plaintiffs' RICO claim against the Mel Harris defendants must be dismissed. *See Reeves, et al. v. Ernst & Young*, 507 U.S. 170, 183, 113 S.Ct. 1163 (1993) (recognizing that the legislative intent behind the RICO statute confirms that one is not liable under RICO absent participation in the operation and management of the enterprise itself).

C.      **THERE IS NO A VIABLE CLAIM OF MAIL/WIRE FRAUD BECAUSE PLAINTIFFS RELY ON AN ALLEGATION THAT THE DEFENDANTS *FAILED* TO MAIL THE DOCUMENTS AT ISSUE**

One obvious yet crucial element to state a RICO claim, arising from mail and wire fraud, is to plead factual allegations in support of the defendant's use of interstate mails or transmission facilities in furtherance of the scheme. *S.Q.K.F.C.*, 84 F.3d at 633.   In this case, however, plaintiffs make no such allegation. Instead, they contend that the Mel Harris defendants defrauded the plaintiffs by *not* using the mail. (Ex. A ¶351).  More specifically, plaintiffs allege that the Mel Harris defendants represented that they mailed certain pleadings and affidavits to the plaintiffs, when in fact, they did not. (Ex. A ¶ 351).  Accordingly, plaintiffs' attempt to create a civil RICO arising from mail and wire fraud, without pleading the use of mail or wire, must fail. Accordingly, the RICO claims must be dismissed.

**POINT III:   THE STATE LAW CLAIMS MUST BE DISMISSED**

Plaintiffs allege two state law claims against the Mel Harris defendants: (1) violation of New York General Business law ("GBL") § 349; and (2) violation of New York Judiciary Law §

23

487. (Ex. A ¶¶ 364-379). To bring a claim under GBL § 349, the plaintiff must allege facts that demonstrate: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured a result. *Spagnola v. The Chubb Corp., et al.*, 574 F.3d 64, 74 (2d Cir. 2009) (citations omitted). Similarly, to establish a claim under New York Judiciary Law § 487, a plaintiff must show that an attorney willfully intended deceit or collusion upon a court, or willfully delays his client's suit with a view to his own gain. N.Y. Jud. Law § 487 (2010). However, for the reasons set for in Point II.A., the plaintiffs do not adequately allege facts in support of the Mel Harris defendants' fraudulent or deceitful conduct. Thus, neither state law claim is viable. In the alternative, the court should dismiss both claims if it dismisses plaintiffs' claims under the FDCPA and RICO. *See Finnegan v. Univ. of Rochester Med. Ctr., et al.,* 21 F.Supp.2d 223, 227 (W.D.N.Y. 1998); Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

WHEREFORE, the defendants Mel S. Harris and Associates, LLC, Mel S. Harris, Michael Young, Kerry Lutz, Todd Fabacher, David Waldman, and Mel Harris John/Jane Does respectfully request that the court enter an order, dismissing plaintiffs' second amended complaint in its entirety as against them, and granting such other and further relief the court deems necessary and proper.

Dated:      New York, New York
            May 7, 2010

                            WILSON, ELSER, MOSKOWITZ,
                            EDELMAN & DICKER LLP

                            By: Brett A. Scher
                            Attorneys for Defendants
                            Mel Harris and Associates, LLC, Mel Harris,
                            Michael Young, Kerry Lutz, Todd Fabacher,
                            David Waldman, & Mel Harris John/Jane Does
                            150 East 42nd Street
                            New York, New York 10017
                            (212) 490-3000
                            Our File No.: 09120.00197

25