## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT I

    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR A VIOLATION
    OF THE FAIR DEBT COLLECTION PRACTICES ACT . . . . . . . . . . . . . . . . 9

        A.  Most of Plaintiffs' claims for violation of the FDCPA are time-barred
            by the one-year statute of limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.  Plaintiffs' remaining claims under the FDCPA fail because the FDCPA
            does not apply to process servers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT II

    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR A VIOLATION
    OF THE RACKETEER INFLUENCED AND CORRUPT
    ORGANIZATIONS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.  The RICO claims against the Samserv Defendants must fail because,
            assuming all allegations and baseless legal conclusions in the
            Complaint are true, the Samserv Defendants did not
            proximately cause Plaintiffs' injuries . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.  Plaintiffs failed to plead facts sufficient to establish the requisite
            elements of a RICO claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    POINT III

    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR A VIOLATION
    OF NEW YORK'S CONSUMER PROTECTION ACT . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motion of Defendants Samserv, Inc., William Mlotok, Husam Al-Atrash and Samserv John/Jane Does 1-20 (collectively "Samserv Defendants") pursuant to Fed. R. Civ. P. 12(b)(6), 9(b) and 12(b)(1), seeking an Order dismissing Plaintiffs' Second Amended Complaint (hereinafter the "Complaint") in its entirety.[1]

Plaintiffs purport to bring this action on behalf of "more than 100,000 New York City residents" who, according to Plaintiffs, were the victims of a "scheme to deprive them of due process and fraudulently obtain and enforce thousands of default judgments, worth millions of dollars, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), New York's Consumer Protection Act, General Business Law § 349 ("CPA") and New York Judiciary Law § 487." Complaint ¶ 1.

The gravamen of Plaintiff's Complaint against the Samserv Defendants is that they participated in this alleged scheme by virtue of the fact that they are regularly hired by the co-defendants to serve process in debt collection lawsuits. Complaint ¶ 4. In actuality, this lawsuit is nothing but a thinly-veiled attempt by Plaintiffs to avoid payment of debts. This Court must dismiss the Complaint because Plaintiffs have failed to state a claim for violation of any of the aforementioned statutes.

---

[1] The individual named defendants Benjamin Lamb, Michael Mosquera, John Andino and Assmat Abdelrahman do not appear to have been served, so this motion is not made on their behalf at this time. To the extent they have been served, however, or are served in the near future, this motion should be deemed made on their behalf as well.

# STATEMENT OF FACTS[2]

### *The Parties*

Plaintiffs allege that they are debtors who represent the rights of themselves and "more than 100,000 New York City residents" who have been allegedly damaged by the Defendants' purported violations of the FDCPA, RICO and New York's CPA.  We will not restate the Plaintiffs' individual personal life stories, irrelevantly detailed in the Complaint for inflammatory purposes.  However, for the Court's ease of reference, the following sets forth the relevant information as to each of the individual Plaintiffs:

| PLAINTIFF | DATE UNDERLYING DEBT COLLECTION ACTION FILED | DATE AFFIDAVIT OF SERVICE FILED | PLAINTIFF'S POSITION AS TO THE DEBT ALLEGEDLY OWED IN THE UNDERLYING DEBT COLLECTION LAWSUIT |
|---|---|---|---|
| MONIQUE SYKES | 06/27/2008 | 08/01/2008 | Sykes "believes that it is possible she owes this debt, but she is not sure, as she does not recognize the amount." Complaint ¶ 122. |
| RUBY COLON | 05/22/2007 | 06/12/2007 | Colon "believes that it is possible she incurred charges" of $2,078.18 to a Chase Manhattan account "but she is not sure, as she does not recognize the amount." Complaint ¶ 144. |
| REA VEERABADREN | 04/12/2006 | 05/25/2006 | Veerabadren "previously owned a Sears account, but remembers that she had to stop making payments on that account . . . because she could no longer afford to make payments." Complaint ¶ 182. |
| FATIMA GRAHAM | 07/30/2008 | 08/21/2008 | Graham "believes that it is possible she owes this debt" to Providian Bank "but she is not sure, as she does not recognize the amount and the debt is quite old." Complaint ¶ 196. |
| KELVIN PEREZ | 11/05/2007 | 12/26/2007 | Perez denied he ever held a Bally Total Fitness Club membership, ever entered a Bally Total Fitness Club, or owned a credit card.  Complaint ¶ 224. |

---

[2] For purposes of this motion only, the facts as alleged in the Complaint are deemed true.

| SAUDY RIVERA | 01/09/2009 | 02/17/2009 | Rivera recalled previously owning a Chase credit card and alleged there were fraudulent charges which she disputed with Chase. Complaint ¶ 256. |
| PAULA ROBINSON | 03/02/2009 | 05/07/2009 | Robinson "believes that it is possible she owes this debt" to Citibank/Sears "but she is not sure, as she does not recognize the amount or the account number" and alleges that, even if she did owe Sears money, it was "most likely past the statute of limitations." Complaint ¶ 279. |
| ENID ROMAN | 03/16/2009 | 05/01/2009 | Roman admits she previously had a Providian account, but "does not remember owing" the amount sued for in the debt collection action, and alleges that even if she did, the account is "most likely past the statute of limitations." Complaint ¶ 300. |

As demonstrated above, Plaintiffs generally do not deny that they owe debts. Instead, Plaintiffs seek to avoid repaying their debts by alleging that Defendants have violated their rights in seeking to collect on these debts.

Plaintiffs allege that the "Leucadia Defendants" (comprised of Leucadia National Corporation and its "alter ego" companies, L-Credit, LLC, LR Credit, LLC, LR Credit 10, 12, 14, 18 and 19 LLC and their principals) are debt-buying companies who file debt collection actions in the Civil Court of the City of New York. Plaintiffs further allege that the "Mel Harris Defendants" (comprised of a law firm, Mel S. Harris and Associates LLC, and its principals) are a law firm whose primary purpose is to file debt collection actions in the Civil Court of the City of New York, and who file most of the lawsuits brought by the Leucadia Defendants. Complaint ¶¶ 2, 3.

Defendant Samserv, Inc. is a process service agency. Plaintiffs allege that Samserv: (i) is a process serving agency regularly engaged in the business of collecting consumer debts by assisting the other defendants in this case to file and maintain civil debt collection lawsuits and

obtain default judgments in those cases by utilizing the mail, telephone and internet; (ii) regularly collects, directly or indirectly, consumer debts; and, (iii) is a "debt collector" as defined by the FDCPA. Complaint ¶ 37.

Plaintiffs further allege that Defendants William Mlotok (Chairman and CEO of Samserv) and Defendants Benjamin Lamb, Michael Mosquera, John Andino, Husam Al-Atrash and Assmat Abdelrahman (natural persons who work for Samserv as independent contractor process servers) are also allegedly "in the business of collecting consumer debts" and "debt collectors" as defined by the FDCPA. Complaint ¶¶ 38-43.

### The Purported Scheme

Plaintiffs allege that the Leucadia and Mel Harris Defendants secure default judgments in consumer debt actions by, *inter alia,* filing false affidavits of service as well as false affidavits of merit. Complaint ¶ 6. After fraudulently obtaining default judgments, "Defendants" proceed to wrongfully restrain bank accounts, garnish wages, threaten to seize personal property and/or pressure people into unaffordable payment plans. Complaint ¶ 7.[3]

As to the relationship between and among the defendants, Plaintiffs allege that (1) Samserv engages in "sewer service;" and, (2) the Mel Harris Defendants regularly hire Samserv to serve process in debt collection actions that regularly result in default judgments for the plaintiff's failure to appear, presumably as the result of sewer service. Complaint ¶¶ 4, 98.

### "Sewer Service" in Debt Collection Actions

Plaintiffs take six (6) full pages of their Complaint to present the following, wholly irrelevant purported "facts": (i) a history of "sewer service" in New York in the 1960s and 70s;

---

[3] We note that, although Plaintiffs make this allegation generally against all Defendants, there is no allegation in the Complaint that the Samserv Defendants have any role in actually collecting debts through the restraint of bank accounts, garnishment of wages, etc.

(ii)  a report issued by the Office of the New York State Attorney General and the New York City Department of Consumer Affairs in the 1980s containing a review of the state of process service in New York and the causes of process servers filing fraudulent affidavits of service; (iii) a 1987 Court of Appeals case that noted issues with "unscrupulous service practices by licensed process servers"; (iv) a June 2008 report issued by MYF Legal Services, which MYF serves as counsel to Plaintiffs in the instant action, purportedly documenting process service practices in consumer credit cases; (v) a statement that the Office of the New York State Attorney General conducted a mass-auditing of licensed process servers in 2008 and 2009; and, (vi) a lawsuit filed in July 2009 by the Attorney General and the Chief Administrative Judge of the New York Courts against one specific process service agency, American Legal Process, and 37 debt collection firms and collectors.  Complaint Pgs. 16 – 21.  Plaintiffs also allege that, in April 2008, acknowledging the high rate of defaults in debt collection actions, the Civil Court issued a new directive requiring the clerk mail an additional notice to defendants in consumer credit actions.  Complaint ¶ 68.

The  Samserv Defendants are not mentioned or named in any of the reports, studies or cases cited by Plaintiffs.  As these six pages lend not one bit of factual information to the case at hand, and were apparently necessitated by the utter lack of any actual facts supporting Plaintiffs' theory that the Samserv Defendants participated in the alleged "scheme," they should be disregarded by this Court.  In the event this Court does consider this irrelevant information, we note that the absence of the Samserv Defendants from any of the reports, studies and cases Plaintiffs have cited, most relevantly the 2008 and 2009 auditing of licensed process servers by the Attorney General and the 2009 litigation initiated by the Attorney General, makes it far more

probable that the scheme alleged in the Complaint supposedly involving the Samserv Defendants does not, in fact, exist.

### *Procedure for Debt Collection Actions*

According to Plaintiffs, to obtain a default judgment in a consumer debt action in City Court, a plaintiff must submit the following: (1) proof of service in the form of an affidavit by the process server (<u>Complaint ¶ 87</u>); (2) proof of the claim, the default and the amount due by affidavit made by the party (<u>Complaint ¶ 87</u>); (3) an affidavit that <u>additional notice</u> has been given to the defendant at least twenty days prior to the plaintiff's application for a default judgment by mailing a copy of the summons to the defendant (<u>Complaint ¶ 88</u>); (4) an attorney certification that the papers submitted are not frivolous and were not obtained through illegal conduct pursuant to Rules of the Chief Judge of New York § 130-1.1-a (<u>Complaint ¶ 89</u>); and, (5) an affidavit stating whether or not the defendant is in military service (<u>Complaint ¶ 90</u>). In addition, Plaintiffs allege that a consumer debt collection plaintiff must provide the clerk with an additional notice of the lawsuit and stamped envelope addressed to the defendant, which notice the clerk then mails to the defendant (<u>Complaint ¶ 91</u>).

### *The Causes of Action*

In the Complaint, Plaintiffs allege the following causes of action against the Samserv Defendants:[4]

1. Violation of the Fair Debt Collection Practice Act (15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10) and 1692f) ("FDCPA") in that all Defendants made "false and misleading representations, and [engaged] in unfair and abusive practices." Presumably specific to the Samserv Defendants, Plaintiffs

---

[4] Plaintiff's Fourth Cause of Action for violation of New York Judiciary Law § 487 is specifically directed at the Mel Harris Defendants and is therefore not discussed herein.

allege these purported violations include "producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not." Complaint ¶ 337.

2. Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1692(c) and (d)) ("RICO") by all defendants, acting individually and as an "enterprise," engaging in a "pattern of racketeering activity" (Mail Fraud in violation of 18 U.S.C. § 1341 and Wire Fraud in violation of 18 U.S.C. § 1343), in that all Defendants participated in a scheme to defraud and obtain money or property by means of false or fraudulent pretenses and representations. Complaint ¶¶339 – 347. Presumably specific to the Samserv Defendants, Plaintiffs allege these purported violations include "producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not." Complaint ¶ 348. Plaintiffs further allege acts by the individual Samserv Defendants in making purportedly false affidavits of service of personal and mail service. Complaint ¶¶ 351.

3. Violation of New York's Consumer Protection Act (NY General Business Law § 349)("CPA") by all defendants, in that they allegedly used "deceptive acts and practices in the conduct of their businesses" that had "a broad impact on consumers." Complaint ¶¶ 364 – 368. Presumably specific to the Samserv Defendants, Plaintiffs allege these purported violations include "producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and

class members were served with a summons and complaint when in fact they were not." Complaint ¶ 371.

## STANDARD OF REVIEW

In resolving a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), "the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799 *2 (S.D.N.Y. Dec. 1, 2003), *citing to Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(internal quotations omitted). Although the court must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to withstand a motion to dismiss. *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996). *See also Kirk v. Heppt*, 532 F.Supp.2d 586, 589 (S.D.N.Y. 2008)(mere conclusions of law or unwarranted deductions need not be accepted).

In "alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "It is well-established law in this Circuit that the particularity requirements of Fed. R. Civ. P. 9(b) are applicable to RICO claims where, as here, such claims are based on mail fraud under 19 U.S.C. § 1341 or wire fraud under 18 U.S.C. § 1343." *Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799 *2, *citing to McCoy v. Goldberg*, 748 F.Supp. 146 (S.D.N.Y. 1990). Although "malice, intent, knowledge, and other condition of mind of a person may be averred generally", Fed. R. Civ. P. 9(b), a plaintiff must nonetheless

8

"allege facts that give rise to a strong inference of fraudulent intent." *Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799 *2, *citing to San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996).

## ARGUMENT

## POINT I

### Plaintiffs Have Failed to State a Claim for Violation of the Fair Debt Collection Practices Act against the Samserv Defendants.

**A. Most of Plaintiffs' claims for violation of the FDCPA are time-barred by the one-year statute of limitations.**

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here, Plaintiffs allege that the Samserv Defendants violated by FDCPA by filing affidavits of service affirming that the various Plaintiffs had been served when, in fact, they had not. Complaint ¶ 337.

The instant litigation was commenced on October 6, 2009. Therefore, any alleged violation of the FDCPA must have occurred on or after October 6, 2008, to be timely under the statute. Based upon the dates on which the affidavits of service were allegedly filed as against the individual Plaintiffs, any FDCPA claims brought by Plaintiffs Sykes, Colon, Veerbadren, Graham and Perez are time-barred and must be dismissed.

**B. Plaintiffs' remaining claims under the FDCPA fail because the FDCPA does not apply to process servers.**

The FDCPA was enacted "to eliminate abusive debt collection practices by <u>debt collectors</u> . . . ." FDCPA § 1692(e)(emphasis added). The FDCPA specifically defines a "debt

collector" as "any person who uses any instrumentality of interstate commerce of the mails <u>in any business the principal purpose of which is the collection of any debts</u>." FDCPA § 1692a(6)(emphasis added).  The FDCPA's definition of "debt collector" specifically <u>excludes</u> "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." FDCPA § 1692a(6)(D).

Process servers are simply not "debt collectors" within the meaning of FDCPA.  This is evident from a plain reading of the statute, which explicitly excludes process servers from the definition.  Case law supports the fact that the definition of "debt collector" has never been broadened to include process servers. *See, e.g., McNall v. Credit Bureau of Josephine County*, 2010 WL 466146 *10-11 (D.Or. 2010)(dismissing FDCPA cause of action against law firm that was alleged on theory of vicarious liability of law firm for actions of process server hired by law firm to serve pleadings because the process server could not be liable under the FDCPA: "there is no evidence before the court which shows that the process server went beyond the role of messenger in serving the complaint on plaintiffs."); *Byrd v. Law Offices of John D. Clunk Co., LPA*, 2010 WL 816932 *1, 5-7 (S.D.Ohio 2010)(dismissing cause of action against private investigator hired to serve process on plaintiff because of the FDCPA's statutory language specifically excluding process servers from the definition of "debt collector"); *Worch v. Wolpoff & Abramson, LLP*, 477 F.Supp.2d 1015, 1016-17 (E.D.Mo. 2007)(reaffirming that a process server is <u>not</u> a debt collector within the meaning of the FDCPA, even where plaintiff alleged that defendant process server refused to identify himself to plaintiff's husband when he opened the door of their home, demanded to see plaintiff, demanded plaintiff's phone number and served plaintiff's husband with an arbitration claim to be served upon plaintiff).

Indeed, previous attempts to "lump" process servers and other service entities utilized by actual debt collectors into the definition of "debt collector" have failed.  For example, a printing company hired to print and mail collection ("dunning") letters for a debt collection agency is not a "debt collector" within the meaning of the FDCPA.  *Laubach v. Arrow Service Bureau, Inc. et al.*, 987 F.Supp. 625 (N.D.Ill. 1997).  In *Laubach*, the plaintiffs alleged that defendant Lason, a printing company hired by a debt collection agency (co-defendant Arrow) to aid in the dissemination of letters to the plaintiff debtors, was part of a "phony attorney letter scheme" to collect debts in violation of the FDCPA.  Plaintiffs based their claim upon allegations that Lason stored the debt collection agency's letters on their computers, merged the letters with the debt collection agency's mailing lists, wrote and formatted the letters, and, printed and mailed the letters to the debtors.  987 F.Supp. at 626-627.

In determining that Lason was not a "debt collector" within the meaning of the FDCPA, the Court considered the following factors: plaintiffs admitted that Lason does not collect money from the debtors; the debtors were not asked or instructed to contact Lason; Lason's contact information is not printed on the letters; Lason does not provide follow-up collection services, such as calling the debtors; Lason's fees are not contingent upon the amount of money its clients actually collect; Lason charges its clients on a per-copy basis; and, Lason has no relationship with the debtors' creditors.  *Laubach v. Arrow Service Bureau, Inc. et al.*, 987 F.Supp. at 631.

In discussing the exemption for process servers, the United States Court of Appeals for the Second Circuit has stated "Congress intended to apply the exemption only to "process servers, and not to those who prepared the communication that was served on the consumer."  *Romea v. Heiberger & Assoc.*, 163 F.3d 111, 117 (2d Cir. 1998)(finding that a defendant law firm that prepared and served a notice to a plaintiff tenant pursuant to Article 7 of the New York

Real Property Actions and Proceedings Law extended its services beyond mere service and could not avail itself of the exemption for process servers from the definition of "debt collector" under the FDCPA).

Here, the Samserv Defendants were simply process servers and did not extend their services beyond mere service. In that regard, Plaintiffs do not allege that the Samserv Defendants collected or attempted to collect any money or property from the debtor Plaintiffs, or provide any follow-up collection services; Plaintiffs do not allege that they were instructed to contact the Samserv Defendants; and, Plaintiffs do not allege that the Samserv Defendants placed their contact information on the debt collection pleadings. The Complaint is devoid of any allegation that the Samserv Defendants had any relationship with the debtors' creditors, or benefited in any way from the service of process above their usual fee. In fact, the Complaint alleges that the Samserv Defendants were paid on a per-service basis, contingent upon service and not upon the ultimate success or failure of the debt collection lawsuit. *Cf. Andrews v. South Coast Legal Service, Inc.*, 582 F.Supp.2d 82, 85-86, 89 (D.Mass. 2008)(local debt collection business appointed "special process server" to execute a writ of execution on a judgment entered against the plaintiffs not excluded as a "debt collector" under the FDCPA where, while serving process on plaintiff, the defendant's agent improperly identified himself as a constable; informed the plaintiff he had papers from the court that enabled him to take her car; and, served various other papers on plaintiff, informing plaintiff he was authorized to seize her car, detailing the steps plaintiff would need to take to retrieve her car (including paying towing fees and a constable's fee) and stating that the car would be auctioned if plaintiff did not pay the judgment).

Here, Plaintiffs have not alleged any facts that would bar the Samserv Defendants from the benefit of the FDCPA's specific exclusion of process servers from its application. As such, Plaintiffs' claim against the Samserv Defendants for violation of the FDCPA must be dismissed.

## POINT II

### Plaintiffs Have Failed to State a Claim for Violation of the Racketeer Influenced and Corrupt Organizations Act.

Under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962:

(c)   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or the collection of unlawful debt.

(d)   It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.

To properly state a RICO claim for damages under 18 U.S.C. § 1962(c):

a plaintiff has two pleading burdens. First, a plaintiff must establish (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce or foreign commerce. Second, a plaintiff must allege he or she was injured in his [or her] business or property by reason of a violation of section 1962.

*Casio Computer Co., Ltd. v. Sayo*, WL 1877516, 10 -16 (S.D.N.Y. 2000)(internal citations and quotations omitted), *citing to Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert.*

*denied, Moss v. Newman,* 465 U.S. 1025 (1984); *Vasile v. Dean Witter Reynolds, Inc.,* 20 F.Supp.2d 465, 483 (E.D.N.Y. 1998); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir. 1990), *cert. denied; Syverson v. Summit Women's Center West, Inc.,* 510 U.S. 865 (1993); *Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 457 (S.D.N.Y. 1998), *judgment aff'd,-*F.3d-, No. 98-7501, 1999 WL 464990 (2d Cir. June 29, 1999). *See also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985)(In order to establish a RICO violation under 18 U.S.C. § 1962(c), plaintiffs must allege and prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *De Falco v. Bernas,* 244 F.3d 286, 306 (2d Cir. 2001).

Furthermore, the requirements of section 1962(c) must be established as to each individual defendant. *See Hoatson v. New York Archdiocese,* 2007 WL 431098, 3 (S.D.N.Y. 2007).

Here, Plaintiffs allege:

    (1)    Samserv is a "person" within the meaning of 18 U.S.C. § 1961(3);

    (2)    Samserv, along with the Mel Harris Defendants and the Leucadia Defendants, compromise three distinct groups of persons that together form both an "enterprise" and an "association-in-fact" within the meaning of 18 U.S.C. § 1961(4);

    (3)    Samserv is a distinct enterprise within the meaning of 18 U.S.C. § 1961(4);

    (4)    The purpose of all aforementioned enterprises is to secure default judgments through fraudulent means to extract money from Plaintiffs and putative class members; and,

     (5)    Samserv's role in the enterprise is to provide fraudulent affidavits of service in furtherance of the scheme.

*See* Complaint ¶¶ 341-345.

**A. The RICO claims against the Samserv Defendants must fail because, assuming all allegations and baseless legal conclusions in the Complaint are true, the Samserv Defendants did not proximately cause Plaintiffs' injuries.**

First and foremost, Plaintiffs fail to demonstrate that any alleged violation of § 1692 was the proximate cause of their alleged injuries. As discussed above, Plaintiffs generally do not deny that they owe a debt, or that the Leucadia Defendants currently own their debt. Second, even if the Samserv Defendants' alleged failure to serve process was a pattern of racketeering activity conducted through an enterprise, which Samserv Defendants vehemently deny, such a failure would not have been the legal proximate cause of Plaintiffs' alleged injuries.

The RICO statute allows for private civil actions as follows: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). The Supreme Court of the United States has specifically declined to give this language a broad interpretation, under which a plaintiff could recover by simply showing the defendant violated § 1692, the plaintiff was injured, and the defendant's violation was a "but for" cause of the plaintiff's injury. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-66 (1992).

In discussing the legislative history and intent behind RICO, the Supreme Court noted that Congress modeled § 1964(c) on the civil action provision of the federal antitrust laws, § 4 of the Clayton Act, which in turn borrowed similar language from § 7 of the Sherman Act. 503 U.S. at 267-68. In referring to its decision in *Associated General Contractors of Cal., Inc. v.*

15

*Carpenters*, 459 U.S. 519 (1983), the Supreme Court reiterated the long-standing rule that the civil action language embodied in the RICO Act (as with the Clayton Act and Sherman Act before it) requires a plaintiff to show that a defendant's violation of RICO was not only a "but for" cause of his injury, but was the proximate cause as well. 503 U.S. at 268.

Here, Plaintiffs provide detailed allegations as to the process for obtaining a default judgment in a debt collection action. Although the filing of an affidavit of service is one of the first steps that must be taken, Plaintiffs themselves point out that, in recognizing failed service as a contributor towards default judgments in debt collection actions, both the creditor's attorney and the Clerk of the Court are required to mail additional notices of the claim to the debtors prior to the creditor seeking default. Complaint ¶¶ 87 – 91. In other words, even if Samserv Defendants failed to properly serve the Plaintiffs, which the Samserv Defendants do not admit, Plaintiffs were mailed additional notices of the pending debt collection actions by both the collection attorney and the Clerk of the Court. Plaintiffs do not allege that they did not receive copies of the pleadings from these additional notices, or that their addresses were incorrect. Therefore, any alleged failure on the part of the Samserv Defendants to serve the Plaintiffs with process is not the proximate cause of Plaintiffs' purported damages, and as such the RICO claims must be dismissed.

## B. Plaintiffs failed to plead facts sufficient to establish the requisite elements of a RICO claim.

Assuming an alleged failure to serve process was *the* proximate cause of Plaintiffs' injuries, a proposition that must fail as a matter of law, Plaintiffs have nevertheless failed to state a claim for a civil law RICO violation.

The Supreme Court of the United States has held that a RICO "enterprise" is a "group of persons associated together for a common purpose of engaging in a course of conduct . . . [It is]

16

proved by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit." *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89, 98 (2d Cir. 1993). First, to satisfy a defendant's role in the "conduct of the enterprise," a plaintiff must demonstrate, *inter alia*, that the defendant participated in the "operation and management" of the enterprise by taking "some part in directing the enterprise's affairs." *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004). Where a plaintiff alleges "association in fact" among enterprise members, the plaintiff must plead specific allegations of the enterprise's continuity of structure. *See, e.g., Smallwood v. Lupoli*, 2009 WL 579419 *3 (2d Cir. 2009).

Here, Plaintiffs have failed to allege that the Samserv Defendants had any role in the "conduct of the enterprise," participated in its "operation and management" or that there was any "continuity of structure." At best, as discussed above, Plaintiffs have alleged that the Samserv Defendants failed to properly serve process in debt collection actions because of the low wages paid to all process servers that required them to do so to make a living wage (allegations which the Samserv Defendants deny). Plaintiffs have <u>not</u> alleged any facts that would show the Samserv Defendants were a part of any "enterprise," nevertheless participated in its "operation and management."

Second, when the RICO claim arises from the predicate acts of mail and/or wire fraud, it must be pleaded with the particularity required under Fed. R. Civ. P. 9(b). *See, e.g., In re Sumitomo Copper Litigation*, 995 F.Supp. 451 (S.D.N.Y. 1998), *citing to Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). Specifically, to plead mail and wire fraud under RICO, the plaintiff must show: (1) the existence of a scheme to defraud; (2) the defendant's <u>knowing or intentional participation</u> in the scheme; and, (3) the use of interstate

mails or transmission facilities in furtherance of the scheme.  *S.Q.K.F.C. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 533 (2d Cir. 1996)(citations omitted)(emphasis added).   An allegation of mail or wire fraud must include facts that give rise to a strong inference of fraudulent intent by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud; or (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *Id.*

Here, Plaintiffs have failed to plead any claim under RICO to satisfy the prerequisite pleading requirements of Fed. R. Civ. P. 9(b).  Plaintiffs failed to allege any facts that would constitute strong circumstantial evidence that the Samserv Defendants would participate in the alleged scheme, as Plaintiffs admit the Samserv Defendants were paid a flat rate for service that was not dependent upon whether or not default judgments were ultimately entered or debts actually collected.  The Plaintiffs' detailed recitation of the history of sewer service does not make any allegations against the Samserv Defendants specifically, but instead unsuccessfully attempts to support the Plaintiffs' baseless conjecture that, because there has been a history of process servers in debt collection actions failing to serve process properly, and because the Samserv Defendants have been hired to serve process in a debt collection action, they therefore must have failed to properly serve process.  Therefore, Plaintiffs RICO claim must be dismissed.

# POINT III

## Plaintiffs Have Failed to State a Claim for Violation of the New York Consumer Protection Act.

First, as the FDCPA and RICO claims must be dismissed, this Court lacks jurisdiction against the remaining state law claims, and as such they must be dismissed outright. *See, e.g., Finnegan v. Univ. of Rochester Med. Ctr.*, 21 F.Supp.2d 223, 227 (W.D.N.Y. 1998); Fed. R. Civ. P. 12(b)(1).

However, assuming that either the FDCPA or RICO claims remain after a disposition on this motion, Plaintiffs fail to state a claim for violation of the CPA because they have failed to allege that the Samserv Defendants are engaged in a "consumer oriented" act or practice that mislead them in a material way.

"Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." NY G.B.L. § 349(a). To assert a private claim under the CPA, a plaintiff must allege: (1) that the acts or practices at issue are <u>consumer oriented</u> or <u>directed at customers</u>; (2) that such acts or practices are deceptive or misleading in a material way; and, (3) that plaintiff has been injured by reason of those acts. *See, City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d. Cir. 2008); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F.Supp.2d 434, 438 (S.D.N.Y. 2004).

Thus, the threshold to stating a claim for a violation of the CPA is that the conduct is "consumer oriented." *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F.Supp.2d at 438 (dismissing plaintiff insured's cause of action for violation of the CPA based upon defendant insurer's alleged failure to pay insured pursuant to property damage policy of insurance, as

conclusory allegation in complaint that the relationship between insured and insurer is a "consumer oriented" service is insufficient).

Essentially, to be in violation of the CPA, a service provider must <u>mislead</u> the <u>consumer</u>. For example, in *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, the Court of Appeals for the Second Circuit considered four consolidated actions in which out-of-state cigarette vendors sold cigarettes to New York City residents, on which the residents did not pay taxes. The Second Circuit found that CPA claims were properly dismissed against defendants who failed to notify the New York City residents that they were required to pay taxes to New York City on cigarettes purchased out of state, however, CPA claims could stand against defendants who affirmatively advertised their cigarettes as "tax free," misleading the residents into believing they did not have to pay taxes.

The typical violations contemplated by the CPA are deceptive acts and practices that involve an individual consumer who falls victim to misrepresentations made by a seller of consumer goods, usually by way of false and misleading advertising. *See Gottlieb Devel. LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 625 (S.D.N.Y. 2008)(dismissal of claim under CPA proper where plaintiff fails to allege any facts that show defendant's conduct materially misleads the specific consumer of the public at large); *Vitolo v. Mentor H/S, Inc.*, 426 F.Supp.2d 28 (E.D.N.Y. 2006)(The United States District Court for the Eastern District of New York stated that, to "show consumer-oriented conduct, Plaintiff would have to demonstrate that the acts or practices complained of have a broader impact on consumers at large."). *See also Horowitz v. Stryker Corp.*, 613 F.Supp.2d 271 (E.D.N.Y. 2009)("Deceptive acts" are defined as those representations or omissions that are likely to mislead a reasonable consumer acting reasonably under the circumstances.).

Further, the gravamen of a "deceptive business practices" claim under § 349 is "harm to the public interest." *See City of New York v. Smokes-Spirit.Com, Inc.*, 541 F.3d 425 (2d Cir. 2008). Absent discrete facts from which harm to the general public interest can be inferred, "conclusory allegations of harm to the public interest do not state a claim under Section 349." *Sotheby's, Inc. v. Halsey Minor*, 08 Civ. 7649 (BSJ) (HBP) (S.D.N.Y. 10/26/2009), *citing to Gottlieb Dev., LLC v. Paramount Pictures, Corp.*, 590 F.Supp.2d 625, 637 (S.D.N.Y. 2008)(dismissing § 349 claim where plaintiff provided only 'conclusory and speculative allegations about how the public will be deceived' and did not 'allege any facts that support the claim that it has been harmed by [defendant's] conduct."). *See also Kirk v. Heppt*, 532 F.Supp.2d 586 (S.D.N.Y. 2008)(New York consumer protection statute prohibiting deceptive acts and practices applies solely to matters affecting the <u>consumer public at large</u>.)

Here, Plaintiffs have not alleged that Defendant Samserv's business practices have materially misled them as "reasonable consumers" or the "consumer public at large." Plaintiffs have not alleged that the Samserv Defendants took any affirmative act or made any representation that induced or misguided the Plaintiffs into any action (or inaction) that caused them injury. Instead, Plaintiffs essentially allege that the Samserv Defendants filed affidavits of service that misled <u>the Civil Court</u> as to the completion of service of process, thus supposedly deceptively inducing the Court into entering default judgments against the Plaintiff debtors. Even if this were true, and the Samserv Defendants do not concede that it is, Plaintiffs' claim cannot survive on the theory that the Samserv Defendants "misled" the Court into entering the default judgments.

In fact, Plaintiffs contend that they had <u>no</u> contact with the Samserv Defendants. While the Samserv Defendants deny that they purposefully failed to serve the Plaintiffs as a part of a

21

"scheme" with the other defendants to obtain default judgments, such an allegation does not support a claim under the CPA. Samserv provided its services to the Leucadia and Mel Harris Defendants. Plaintiffs cannot claim that the parties were engaged in a scheme to deceive the Civil Court into entering default judgments in which Defendant Samserv was solicited to fail to serve process, yet alternately argue that the Leucadia and Mel Harris Defendants, the actual consumers of Samserv's services, were reasonable consumers who were deceived.

## CONCLUSION

For all reasons stated herein, Defendants Samserv, Inc., William Mlotok, Husam Al-Atrash, and Samserv John/Jane Does 1-20, respectfully request that this Court issue an Order dismissing the Plaintiff's claims against them, together with any further relief this court deems just and proper.

Dated: White Plains, New York
      May 7, 2010

                         BABCHIK & YOUNG, LLP

             By:              _____

                         Jordan Sklar (JS 3631)
                         Attorneys for Samserv Defendants
                         200 East Post Road, 2nd Floor
                         White Plains, New York 10601
                         (914) 470-0001