USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/29/2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

MONIQUE SYKES et al.,                    :

                    Plaintiffs,          :

          - against -                    :     **OPINION**

MEL HARRIS AND ASSOCIATES, LLC,          :     09 Civ. 8486 (DC)
et al.,
                                         :

                    Defendants.          :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   (See last page)

**CHIN, Circuit Judge:**

          In this case, eight plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a "massive scheme" to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court.  Plaintiffs allege that defendants did so by engaging in "sewer service" -- the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service.  When the debtors failed to appear in court because they did not have notice of the lawsuits, defendants obtained default judgments against them.

          Plaintiffs sue on behalf of themselves and all others similarly situated.  Their second amended complaint (the

"Complaint") asserts claims under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., New York General Business Law ("GBL") § 349, and New York Judiciary Law § 487.  Plaintiffs seek injunctive relief, declaratory relief, and damages.

Defendants move to dismiss the Complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, challenging the sufficiency of every claim and the subject matter jurisdiction of this Court.  For the reasons that follow, the motions to dismiss are denied in part and granted in part.

## BACKGROUND

### A.   The Facts

The facts alleged in the Complaint are assumed to be true for purposes of this motion and may be summarized as follows:

#### 1.   The Parties

Plaintiffs Monique Sykes, Ruby Colon, Rea Veerabadren, Fatima Graham, Kelvin Perez, Saudy Rivera, Paula Robinson, and Enid Roman ("plaintiffs") are New York City residents who allege that defendants conspired to fraudulently secure default

judgments against them.  Each named plaintiff was sued by

defendants in state debt collection actions commenced between

2006 and 2009.  (Compl. ¶¶ 120-37, 142-59, 164-81, 194-212, 222-

39, 254-73, 277-94, 298-315).  Default judgments were obtained

against them.  (Id.).  All except Graham deny having received

actual notice of the commencement of the actions against them.

(Id.).  Plaintiffs propose a class action on behalf of all

victims of this purported scheme.

          The three sets of defendants are a debt-buying company,

a law firm, and a process service company, and their respective

affiliates and associates.

          Defendants L-Credit, LLC, LR Credit, LLC, LR Credit 10,

LLC, LR Credit 12, LLC, LR Credit 14, LLC, LR Credit 18, LLC, and

LR Credit 19, LLC are wholly-owned subsidiaries of defendant

Leucadia National Corporation ("LNC").  (See id. ¶¶ 28-34).  All

eight entities are primarily engaged in the business of

purchasing and collecting on defaulted debts.  (Id.).  They,

along with affiliated individuals, comprise the "Leucadia

defendants."

          Defendant Mel S. Harris and Associates, LLC ("Mel

Harris, LLC") is a Manhattan law firm primarily engaged in debt

collection litigation on behalf of the Leucadia defendants and

-3-

other debt-buyer clients.  (<u>Id.</u> ¶¶ 3, 18-25).  Also named as defendants are its principals and affiliated individuals (together, the "Mel Harris defendants").  (<u>Id.</u>).

Defendant Samserv, Inc. ("Samserv") is a process serving agency located in Brooklyn, New York.  (<u>Id.</u> ¶¶ 36-44).  Its chief executive officer, five individual process servers, and affiliated individuals are also named as defendants (together, the "Samserv defendants").  (<u>Id.</u>).

## 2.   <u>The Debt-Buying Business</u>

Debt-buying companies typically purchase "portfolios" of defaulted debts for pennies on the dollar and then attempt to collect the full face value of the debts for themselves.  (<u>Id.</u> ¶ 46).  The debts are priced based upon recency:  debt-buyers must pay more for "freshly charged-off" debts than older debts, which often include debts that others have unsuccessfully tried to collect.  (<u>Id.</u> ¶ 47).  An active market exists even for debts that are beyond the statute of limitations.  (<u>Id.</u>).

A debt portfolio customarily contains account information for each consumer, including her name, account number, Social Security number, last known address and telephone number, charge-off date, date and amount of last payment, and the alleged amount owed.  (<u>Id.</u> ¶ 48).  When debt-buyers acquire these

-4-

portfolios, however, they generally do not purchase documentation of the indebtedness between the original creditor and consumer, or they may purchase the documentation for only a small fraction of the accounts. (Id. ¶¶ 48-49). Thus, many debt-buyers have limited proof of the validity of these debts. (Id. ¶ 50).

### 3.   **The Alleged Scheme**

Plaintiffs allege that the Leucadia and Mel Harris defendants entered into joint ventures to purchase debt portfolios, pursued debt collection litigation en masse against the alleged debtors, and sought to collect millions of dollars in fraudulently obtained default judgments. (Id. ¶¶ 1, 3, 95, 97). In 2006, 2007, and 2008, they filed a total of 104,341 debt collection actions in New York City Civil Court. (Id. ¶ 96).[1] Assuming 260 business days a year, they filed an average of 133 debt collection actions per day.

The Leucadia and Mel Harris defendants regularly hired Samserv to serve process. (Id. ¶¶ 4, 98). They paid Samserv only for service attempts that were reported as completed and paid nothing for service attempts that were not reported as completed. (Id. ¶ 73). More than 90% of the individuals they

---

[1]    The Leucadia defendants retained Mel Harris, LLC in more than 99% of these cases. (Compl. ¶ 96).

sued did not appear in court; most defaulted because they were
not actually served.  (<u>Id.</u> ¶¶ 3-4; <u>see also</u> <u>id.</u> ¶¶ 3-4 69, 107).

Sewer service was integral to this scheme.  After a
consumer failed to appear in court, the Leucadia and Mel Harris
defendants applied for a default judgment by providing the court
with proof of service; proof of additional mailed notice to the
consumer; an affidavit attesting to whether the consumer was in
the military; and an "affidavit of merit" attesting to their
personal knowledge of facts substantiating their legal claims to
the court.  (<u>Id.</u> ¶¶ 86-90, 108-10).

Leucadia had limited proof to substantiate its claims
because it typically did not purchase documentation of the
consumers' indebtedness to the original creditors.  (<u>Id.</u> ¶¶ 46-
50).  Nonetheless, the Mel Harris defendants' "designated
custodian of records," Todd Fabacher, signed the vast majority of
the approximately 40,000 affidavits of merit they filed each
year.  (<u>Id.</u> ¶¶ 110-17).  Fabacher averred to having personal
knowledge of the key facts establishing that the debt in each
collection action was due and owing.  (<u>Id.</u> ¶ 113).  Assuming 260
business days a year, Fabacher had to have personally (and
purportedly knowledgeably) issued an average of twenty affidavits
of merit per hour, i.e., one every three minutes, over a

-6-

continuous eight-hour day.

After obtaining the default judgments, the Leucadia and Mel Harris defendants proceeded to restrain plaintiffs' bank accounts, threatened to garnish their wages or seize their property, caused them to incur litigation costs, and impaired their credit, making it difficult for plaintiffs to obtain housing, employment, and loans.  (Id. ¶¶ 7-8, 140, 162, 192, 212-17, 219, 240, 242, 244-46, 252, 275, 294-96, 315-17).

Government agencies have recognized that abusive debt collection practices are a public concern.  In 2008, the New York City Department of Consumer Affairs held a public hearing on unethical debt-collector fee arrangements with process servers. (Id. ¶¶ 70, 72).  Last year, the Federal Trade Commission issued a report that identified and discussed, inter alia, industry-wide problems with debt-buyers failing to substantiate their claims against consumers.  (Id. ¶ 50).

B.    **Prior Proceedings**

Sykes commenced this action on October 6, 2009 against some of the Leucadia, Mel Harris, and Samserv defendants, alleging only FDCPA and New York GBL claims.  On December 28, 2009, Colon, Veerabadren, and Graham joined the action as plaintiffs, and class allegations and RICO claims were added.

Plaintiffs filed the "Complaint" on March 31, 2010, adding Perez, Rivera, Robinson, and Roman as plaintiffs and a Judiciary Law claim.

These three motions to dismiss followed, on behalf of each set of defendants.

## DISCUSSION

First, I address whether plaintiffs have sufficiently pled claims under the FDCPA, RICO, and state law.  Second, I consider defendants' remaining arguments regarding the <u>Rooker-Feldman</u> doctrine, absolute privilege, the <u>Noer-Pennington</u> doctrine, and piercing the corporate veil.

**A.   <u>Plaintiffs' Claims</u>**

**1.   <u>The FDCPA Claims</u>**

Defendants move to dismiss plaintiffs' FDCPA claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[2]  The FDCPA forbids "debt collectors"

---

[2]     To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  First, a court considering a motion to dismiss must accept plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor.  <u>See id.</u>; <u>Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.</u>, 517 F.3d 104, 115 (2d Cir. 2008).  Second, the court determines whether the allegations

from, <u>inter</u> <u>alia</u>: (1) engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person," 15 U.S.C. § 1692d, (2) making a "false, deceptive, or misleading representation," 15 U.S.C. § 1692e, or (3) using "unfair or unconscionable means" to attempt to collect a debt, 15 U.S.C. § 1692f. Section 1692e specifically prohibits false representation of "the character, amount, or legal status of any debt" and the use of deceptive means "to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2)(A),(10).

Defendants contest the applicability of the FDCPA, arguing that: (1) the statute of limitations has expired for all or some of the plaintiffs who allege FDCPA claims;[3] (2) they are

---

"plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 129 S. Ct. at 1950. A plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 556). Dismissal of a complaint under Rule 12(b)(6) is appropriate only if, after drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege facts that give rise to a plausible claim for relief.

[3]     Only six of the eight plaintiffs assert FDCPA claims, as Colon and Veerabadren do not assert any. (Compl. ¶ 337 n.*). The Leucadia and Mel Harris defendants maintain, however, that all claims brought by Colon must be dismissed because she entered into a stipulation with LR Credit 12, LLC on December 10, 2009 to dismiss the underlying debt collection action in a "complete settlement of all issues related to or arising out of this matter." (Scher Decl. in Supp. of Mel Harris Defs.' Mot. to Dismiss Ex. B ¶ 4). Notwithstanding the dismissal of the claims,

not "debt collectors" within the meaning of the statute; and (3) their alleged actions are not prohibited by the FDCPA.  I address each argument in turn.

### a)   Statute of Limitations

Defendants argue that some or all of the FDCPA claims are time-barred.[4]  To be timely, an FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).  Plaintiffs counter that the equitable tolling doctrine preserves their claims.

The first FDCPA violations allegedly occurred when the Leucadia and Mel Harris defendants filed the state debt collection actions.  Defendants plausibly violated the FDCPA again when they subsequently applied for default judgments against plaintiffs.[5]  Even using the default judgment application

_____

Colon claims damages arising from independent causes of action in this Court.  Moreover, paragraph 3 of the stipulation states that the matter and any counterclaim are discontinued "without prejudice."  (Id. Ex. B. ¶ 3).  Thus, I decline to dismiss Colon's other claims.

[4]    The Leucadia defendants argue that all plaintiffs' claims are time-barred.  The Mel Harris and Samserv defendants only argue that the FDCPA claims of Sykes, Graham, and Perez are time-barred, and concede that the claims of Rivera, Robinson, and Roman are timely.

[5]    See, e.g., Gargiulo v. Forster & Garbus Esqs., 651 F. Supp. 2d 188, 191-92 (S.D.N.Y. 2009) (applying FDCPA to

dates, the claims of Sykes, Graham, and Perez would be time-barred because those dates were more than a year before December 28, 2009, when the class action allegations were asserted.[6]  (See Compl. ¶¶ 128, 203, 230).  Thus, it appears that absent equitable tolling, their claims would be untimely.

The Complaint plausibly alleges that equitable tolling applies, as to most of the plaintiffs' FDCPA claims.  A statute of limitations may be tolled in extraordinary circumstances, if a plaintiff establishes that:  (1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time

---

statements in affidavits submitted by defendant law firm in default judgment application); Hasbrouck v. Arrow Fin. Servs. LLC, 09 Civ. 748 (GLS), 2010 WL 1257885, at *1-3 (N.D.N.Y. Mar. 26, 2010) (same, with respect to defendant debt collector's affidavit); Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C., 04 Civ. 733 (RHB), 2005 WL 2180481, at *4-5 (W.D. Mich. Sept. 9, 2005) (finding submission of attorney affidavit containing false representation in default judgment application violated FDCPA).

[6]     A class action challenging debt collection practices must assert FDCPA violations that accrued within a year of the filing of the class action complaint.  See Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974) ("[T]he rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties[.]"); Petrolito v. Arrow Fin. Servs., LLC, 221 F.R.D. 303, 315 (D. Conn. 2004) (certifying "one-year FDCPA class" reaching one year back from filing of class action).

within the statutory period before commencement of his action;
and (3) his continuing ignorance was not attributable to lack of
diligence on his part.  State of N.Y. v. Hendrickson Bros., Inc.,
840 F.2d 1065, 1083 (2d Cir. 1988); see also Bailey v. Glover, 88
U.S. (21 Wall.) 342, 349-50 (1874).  FDCPA claims are subject to
equitable tolling.  Somin v. Total Cmty. Mgmt. Corp., 494 F.
Supp. 2d 153, 158 (E.D.N.Y. 2007) (citing Johnson v. Nyack Hosp.,
86 F.3d 8, 12 (2d Cir. 1996)).

Sykes and Perez have sufficiently alleged that
defendants fraudulently deprived them of notice of their debt
collection actions.[7]  Because sewer service purposefully ensures
that a party is never served, it is plausible that defendants'
acts were "of such character as to conceal [themselves]" to
warrant equitable tolling.  Bailey, 88 U.S. at 349-50.  The
present class action commenced on December 28, 2009.  Because
Sykes and Perez allege that they discovered the default judgments
entered against them after December 28, 2008, their claims would

---

[7]    The Mel Harris and Samserv defendants counter that some
of plaintiffs must have received copies of the summons and
complaint directly from the court clerk or Mel Harris, LLC prior
to entry of the default judgments, pursuant to state rules.  See
22 N.Y. Comp. Codes R. & Regs. § 208.6(h)(2); N.Y. C.P.L.R.
§ 3215.  In doing so, they impermissibly ask the Court to draw an
inference -- that plaintiffs received notice -- that is
contradicted by the factual allegations of the Complaint.

be timely under equitable tolling.  (See Compl. ¶¶ 137, 239).
The Complaint alleges, however, that Graham did receive a copy of
the summons and complaint by mail from Mel Harris, LLC sometime
before a default judgment was entered against her, and thus it
fails to allege exercise of due diligence on her part.  (See id.
¶ 199).  Thus, this prong of defendants' motion is granted with
respect to Graham, but denied as to all other plaintiffs.

### b)   Definition of "Debt Collectors"

Congress enacted the FDCPA to eliminate the abusive
debt collection practices of "debt collectors," and the
provisions plaintiffs invoke apply only to the activities of
"debt collectors."  15 U.S.C. § 1692(e); see 15 U.S.C. §§ 1692d,
1692e, 1692f.  A "debt collector" is a "person" who "uses any
instrumentality of interstate commerce or the mails in any
business the principal purpose of which is the collection of any
debts, or who regularly collects or attempts to collect, directly
or indirectly, debts owed or due or asserted to be owed or due
another."  15 U.S.C. § 1692a(6).  The FDCPA does not apply to
"creditors" or their employees, however, if they seek to collect
their own debt.  See 15 U.S.C. § 1692a(4) (defining a "creditor"
as "any person who offers or extends credit creating a debt or to
whom a debt is owed"); 15 U.S.C. § 1692a(6)(A), (6)(F)(ii)

-13-

(defining "debt collector" to exclude any officer or employee of a "creditor" collecting its own debts, or any person collecting a debt "originated by such person").[8]  The Leucadia defendants argue that plaintiffs have failed to sufficiently allege that they are "debt collectors."  The Samserv defendants argue that they fall within the FDCPA's special process server exemption.

I conclude, as a matter of law, that the Leucadia defendants are "debt collectors."  The Second Circuit has interpreted the FDCPA's definition of "debt collector" to include an entity that attempts to collect debts in default and does not "service" the debt, even though it nominally owns the debt and is collecting it for itself.  Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 83-85 (2d Cir. 2003) (citing 15 U.S.C. § 1692a(6)(F)(iii)).  First, the Complaint alleges that the Leucadia defendants are principally in the business of buying defaulted debts and seeking to collect on them, as they have filed more than 100,000 debt collection actions in state courts since 2006.  Second, the Complaint alleges numerous instances in

---

[8]    The FDCPA applies to debt collectors and not creditors "because debt collectors, unlike creditors, are not constrained in their actions by the risk that a negative reputation regarding debt collection practices might threaten their continued access to new borrowers."  Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 528 n.6 (S.D.N.Y. 2008).

which the Leucadia defendants used interstate wires, to prepare
non-military affidavits and to freeze plaintiffs' bank accounts,
among other acts.  Thus, they fall squarely within the first
prong of section 1692a(6)'s definition of "debt collector."  To
the extent that the Leucadia defendants argue that they are not
"debt collectors," that the FDCPA does not apply to employees or
subsidiaries of a "creditor" collecting its own debts, or that
their principal business is not the collection of debts, their
motion to dismiss is denied.

The Samserv defendants argue that they are not "debt
collectors" because the FDCPA expressly exempts any "person"
engaged in "serving or attempting to serve legal process on any
other person in connection with the judicial enforcement of any
debt."  15 U.S.C. § 1692a(6)(D).  Thus, process servers whose
involvement is merely "limited to serving the [debt collection]
communication on the consumer -- in effect, to being messengers"
-- are exempt.  Romea v. Heiberger & Assocs., 163 F.3d 111, 117
(2d Cir. 1998) (quoting  S. Rep. No. 95-382, at 3-4 (1977), as
reprinted in 1977 U.S.C.C.A.N. 1695, 1697-98).  But a process
server who goes "beyond being merely being a messenger . . . and
engages in prohibited abusive or harassing activities to force an
individual to repay a debt" cannot claim the exemption's

-15-

protections.  <u>Flamm v. Sarner & Assoc., P.C.</u>, No. 02 Civ. 4302

(LAR), 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002); <u>see</u>

<u>McNall v. Credit Bureau of Josephine County</u>, 689 F. Supp. 2d

1265, 1277-78 (D. Or. 2010).  Because the FDCPA protects process

servers only "while" they serve process, the Samserv defendants'

alleged failure to serve plaintiffs process and provision of

perjured affidavits of service remove them from the exemption.

On these facts, their conduct would be actionable under the

FDCPA.  Their motion to dismiss is denied.[9]

### c)  Whether the Activities Are Prohibited

The Mel Harris defendants argue that their filing of

debt collection actions and affidavits of merit are not

prohibited under the FDCPA.  While the filing of a debt

collection action alone does not violate the FDCPA, if the

complaint was supported by affidavits that contained false or

deceptive representations about the status and character of the

debt, <u>see</u> 15 U.S.C. § 1692e(2)(A), (10), then the filing of the

---

[9]     Thus, to the extent that the Mel Harris defendants
argue that they cannot be vicariously liable for the Samserv
defendants' actions because process servers are exempt under the
FDCPA, I also deny their motion to dismiss.  Plaintiffs have also
sufficiently pled facts that, if proven, show that the Mel Harris
and Leucadia defendants knew Samserv's affidavits of service were
"highly likely to be false."  (Compl. ¶¶ 98-107).

state action could also be deemed "unfair or unconscionable" in violation of 15 U.S.C. § 1692f.  See, e.g., Kuria v. Palisades Acquisition XVI, LLC, No. 09 Civ. 3321 (JOF) (RGV), ___ F. Supp. 2d ___, 2010 WL 4780769, at *7 (N.D. Ga. Nov. 16, 2010) (finding actionable FDCPA claims where debt-buyer allegedly did not intend to take claims to trial to prove their merit, but instead intended only to obtain default judgment or pursue settlement). Courts that have addressed misrepresentations regarding an affiant's knowledge in affidavits of merit in such cases have also rejected the Mel Harris defendants' position.[10]

Plaintiffs do not merely allege that the Leucadia and Mel Harris defendants "lack physical evidence of the debt," but that they knowingly authorized defendant Fabacher to file false affidavits of merit -- misleading both the Civil Court and

---

[10]   See, e.g., Midland Funding LLC v. Brent, 644 F. Supp. 2d 961, 970 (N.D. Ohio) (holding that debt-buyers' false affidavit of merit, used in attempt to collect debt, violated FDCPA because it effectively served to validate debt to reader, whether consumer or court), modified on reconsideration Midland Funding LLC v. Brent, No. 08 Civ. 1434 (DAK), 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009) (narrowing order to enjoin use of form affidavits that falsely claim to be based on defendant's personal knowledge); Williams v. Javitch, Block & Rathbone, LLP, 480 F. Supp. 2d 1016, 1022-24 (S.D. Ohio 2007) (finding actionable FDCPA claim against debt collector's law firm that prepared and filed debt collection suits including affidavits of creditor employee whom defendant "knew or should have known" lacked specific knowledge of the original debt).

consumer-defendants -- to secure default judgments that enabled

them to freeze bank accounts, threaten to garnish wages, or

pressure individuals into settlements.  (Compl. ¶¶ 6-7, 116-18).

The FDCPA claims against the Mel Harris defendants are plausible,

and their motion to dismiss them is denied.

### 2.   **The RICO Claims**

Plaintiffs assert civil RICO claims against all

defendants pursuant to 18 U.S.C. § 1962(c) (substantive RICO

claim) and § 1962(d) (RICO conspiracy claim).  Defendants move to

dismiss the RICO claims pursuant to Rules 12(b)(6) and 9(b).[11]

To state a claim for a substantive RICO violation, a

plaintiff must allege the following elements:  "(1) conduct (2)

of an enterprise (3) through a pattern (4) of racketeering

---

[11]    Under Rule 9(b), a complaint that alleges fraud must
comply with heightened pleading requirements, as it must state
"with particularity" the "circumstances" of the fraud.  Fed. R.
Civ. P. 9(b).  Where a RICO claim is predicated upon mail or wire
fraud, plaintiffs must "adequately specify the statements it
claims were false or misleading, give particulars as to the
respect in which plaintiffs contend the statements were
fraudulent, state when and where the statements were made, and
identify those responsible for the statements."  Cosmas v.
Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The complaint must also
establish a "strong inference" of fraudulent intent, by showing
that defendants had both motive and opportunity to commit fraud,
or allege facts that constitute "strong circumstantial evidence
of conscious misbehavior or recklessness."  Lerner v. Fleet Bank,
N.A., 459 F.3d 273, 290-91 (2d Cir. 2006).

activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)

(citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

To establish standing under section 1962(c), a plaintiff must

show injury to "business or property," and that such injury was

"by reason of" the substantive RICO violation under both factual

and proximate causation. Lerner, 318 F.3d 113, 120 (2d Cir.)

(quoting 18 U.S.C. § 1964(c)), cert. denied, 540 U.S. 1012

(2003). Defendants challenge the sufficiency of every element of

plaintiffs' RICO claims and plaintiffs' standing pursuant to

section 1964(c). I first address the substantive RICO claims, by

considering: the underlying predicate acts (i.e., the latter two

elements); the elements of enterprise and conduct; and

plaintiffs' standing. I then address the RICO conspiracy claim.

### a)    Substantive RICO Claim

#### 1.    Pattern of Racketeering Activity

"Racketeering activity" is defined to include certain

criminal acts, including mail fraud, 18 U.S.C. § 1341, and wire

fraud, 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1). A complaint

alleging mail and wire fraud as the predicate acts of a RICO

claim must show: (1) the existence of a scheme to defraud; (2)

defendant's knowing or intentional participation in the scheme;

and (3) the use of interstate mails or transmission facilities in

furtherance of the scheme.[12]  S.Q.K.F.C., Inc. v. Bell Atl.
TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996) (citing
United States v. Gelb, 700 F.2d 875, 879 (2d Cir.), cert. denied,
464 U.S. 853 (1983)).  At least two acts of racketeering activity
within a span of ten years are required to establish a "pattern"
of racketeering activity.  18 U.S.C. § 1961(5).

The Complaint meets Rule 9(b)'s heightened pleading
standard.  As discussed supra, plaintiffs have presented "strong
circumstantial evidence" of a scheme among defendants to defraud
plaintiffs of money or property.  (See Compl. ¶¶ 347-55).
Moreover, plaintiffs have pleaded with particularity a pattern of
racketeering activity, including at least twenty allegedly
fraudulent statements and eighteen acts involving use of the mail
and wires over three years, in furtherance of the alleged fraud.
(Id. ¶¶ 347-55, 351(A)-(II)).  The Complaint sufficiently alleges
facts that give rise to "a strong inference of fraudulent intent"
because defendants had a motive and opportunity to do so.  The
allegations sufficiently establish defendants' "conscious
misbehavior or recklessness" with respect to preparing false

---

[12]    The communications transmitted by mail or wire need not
themselves contain false or misleading statements so long as the
mail or interstate wires are in furtherance of the fraudulent
scheme.  Schmuck v. United States, 489 U.S. 705, 714-15 (1989).

filings with state courts.[13]   The Complaint, however, does not

sufficiently allege that all defendants committed the mail and

wire fraud.   No facts are alleged connecting Mel Harris manager

David Waldman or Joseph Orlando and Philip Cannella (officers of

LNC and of LR Credits 10, 12, 14, 18, and 19, LLCs) to the

racketeering activity.   I dismiss all substantive RICO claims

against these three individual defendants, but deny the motion as

to the other defendants.

### 2.  <u>Enterprise</u>

Plaintiffs allege that the three groups of defendants

comprise three distinct groups of "persons" forming four

"enterprises" within the meaning of 18 U.S.C. § 1961(4)[14]:   a

Leucadia RICO enterprise, a Mel Harris RICO enterprise, a Samserv

---

[13]   Any pleadings alleging fraud based upon information and
belief are appropriate under Rule 9(b) where there are facts
peculiarly within the opposing party's knowledge and plaintiff
provides a statement of the facts upon which the belief is based.
<u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d
Cir. 1987).   Despite the Leucadia defendants' claim that
plaintiffs did not indicate that the information necessary to
plead fraud was within their control, the Complaint clearly
indicates that facts are peculiarly in the control of the
remaining defendants.   (<u>See</u> <u>also</u> Compl. ¶ 351(II)).

[14]   The RICO statute broadly defines "enterprise" to
include "any individual, partnership, corporation, association,
or other legal entity, and any union or group of individuals
associated in fact although not a legal entity." 18 U.S.C.
§ 1961(4).

RICO enterprise, and an enterprise made up of all three groups. (Compl. ¶¶ 342-44).  Each group of defendants is allegedly "employed by or associated with" their respective group enterprise and the conglomerate enterprise.  (Id. ¶¶ 342-43).

A RICO enterprise must have a "common purpose of engaging in a course of conduct," and its existence is "proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  An association-in-fact must have at minimum the following structural features:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 129 S. Ct. 2237, 2244 (2009).  See also United States v. Burden, 600 F.3d 204, 215 (2d Cir. 2010) ("An association-in-fact enterprise . . . need not have a hierarchical structure or a 'chain of command.'") (quoting Boyle, 129 S. Ct. at 2245).

The Mel Harris defendants claim that plaintiffs have not properly alleged an association-in-fact among the defendants. The Complaint sufficiently describes a collective enterprise

-22-

among the defendants, formed for the common purpose of securing default judgments through fraudulent means. (See also Compl. ¶¶ 342-46). Specifically, the Mel Harris and Leucadia defendants allegedly formed joint ventures to purchase portfolios of defaulted debts; agreed to collect on the debts through litigation coupled with fraudulent means, including the filing of fraudulent affidavits of service from the Samserv defendants; and used the proceeds of the scheme to fund the purchase of new debts to continue the enterprise. (Id. ¶¶ 82, 97-98, 345-46, 355). Thus, the Complaint sufficiently alleges the purpose, relationships and longevity required of an association-in-fact.

A RICO "enterprise" must also be separate and distinct from the "person" conducting the racketeering activities of the enterprise. DeFalco, 244 F.3d at 307 (citing 18 U.S.C. § 1962(c)). Thus, where "employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, [they] do not form an enterprise distinct from the corporation." Id. (quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 399, 344 (2d Cir. 1994)). Nor can a corporate entity simultaneously be the "enterprise" and the "person" who engages in the activity prohibited under RICO. Bennett v. U.S. Trust Co.

-23-

of N.Y., 770 F.2d 308, 315 (2d Cir. 1985). The Second Circuit

has interpreted Bennett to bar separate RICO liability for

subsidiaries that act on behalf of and are wholly owned by a

defendant parent corporation. Discon, Inc. v. NYNEX Corp., 93

F.3d 1055, 1063-64 (2d Cir. 1996), vacated on other grounds sub

nom. NYNEX Corp. v. Discon, Inc., 525 U.S. 128 (1998).

          The Leucadia defendants argue that plaintiffs have

failed to show that the "persons" accused of violating RICO are

distinct from the alleged "enterprise" because a parent and its

subsidiaries cannot conspire with each other to form a distinct

"Leucadia RICO enterprise," and thus cannot be subject to

liability for conducting the affairs of that enterprise. An

enterprise may exist, however, when a defendant corporate entity

allegedly associates with others to form an enterprise that is

sufficiently distinct from itself -- i.e., where a "partial

overlap" between the "person" and the "enterprise" exists.

Riverwoods, 30 F.3d at 344. Thus, a group of corporations can

form a RICO enterprise. United States v. Huber, 603 F.2d 387,

393-94 (2d Cir. 1979). Assuming that LNC is the parent

corporation of the seven Leucadia subsidiaries, these defendant

entities and their employees cannot form a distinct "Leucadia

RICO enterprise." In the same vein, the Mel Harris and Samserv

-24-

employee defendants cannot "associate with" the corporate

defendants to comprise a distinct "Mel Harris RICO enterprise"

and "Samserv RICO enterprise."  Thus, I grant defendants' motion

to dismiss the allegations that each of the three sets of

defendants comprises a separate RICO enterprise.  I hold,

however, as a matter of law that the Complaint does allege a

viable RICO enterprise composed of all three sets of defendants.

### 3.   Conduct

The substantive RICO statute makes it unlawful "for any

person employed by or associated with any enterprise . . . to

conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs."  18 U.S.C. § 1962(c).  All three

groups of defendants argue that their individual defendants

cannot be liable because their respective roles and leadership

have not been sufficiently alleged and thus the conduct element

of plaintiffs' 1962(c) claim fails.

The Supreme Court has construed the otherwise broad

language of section 1962(c) regarding conduct to require that the

defendant "participated in the operation or management" of the

enterprise itself and had "some part in directing the

enterprise's affairs" to be liable.  Reves v. Ernst & Young, 507

U.S. 170, 179, 183 (1993).  A lower-level participant may be

liable even if he does not perform a "managerial role," but nonetheless "exercise[s] broad discretion" in carrying out a principal's instructions. <u>Burden</u>, 600 F.3d at 219 (quoting <u>United States v. Diaz</u>, 176 F.3d 52, 92 (2d Cir. 1999)).

Accordingly, I dismiss the substantive RICO claims against the five individual process server defendants, Benjamin Lamb, Michael Mosquera, John Andino, Husam Al-Atrash, and Assmat Abdelrahman, as the Complaint only alleges that they were "associated" with the enterprise and fails to allege that they directed or controlled the racketeering activity in any way.  The Complaint has sufficiently pleaded facts, however, that would establish the substantive RICO liability of all the other defendants (except Waldman, Orlando, and Canella).

### 4.   <u>Standing: Injury and Causation</u>

The Leucadia and Samserv defendants argue that the Complaint insufficiently alleges injury to plaintiffs' property interests and that the RICO violations were not the proximate cause of their injuries.  As discussed <u>supra</u>, defendants' pursuit of default judgments and attempts to enforce them against plaintiffs proximately caused their injuries, <u>see</u> <u>Baisch v. Gallina</u>, 346 F.3d 366, 373-74 (2d Cir. 2003), which include the freezing of personal bank accounts and incurring of legal costs

-26-

to challenge those default judgments.  The motions to dismiss are
denied to the extent that they argue lack of standing.

####     b)     RICO Conspiracy Claim

Section 1962(d) makes it "unlawful for any person to
conspire to violate" any of the substantive provisions of RICO.
18 U.S.C. § 1962(d).  Thus, a RICO conspiracy is "an agreement to
conduct or to participate in the conduct of a charged
enterprise's affairs through a pattern of racketeering."  United
States v. Pizzonia, 577 F.3d 455, 464 (2d Cir. 2009) (citing
United States v. Persico, 832 F.2d at 705, 713 (2d Cir. 1987)).
Defendants claim that plaintiffs have neither pleaded a
substantive RICO violation nor established an agreement among the
defendants.  Here, the pleadings sufficiently allege substantive
RICO violations and plausibly establish an agreement among the
defendants, as discussed supra.

In addition, while a defendant may not be liable under
the "operation or management" test for substantive RICO
violations, he may be liable of a RICO conspiracy where he
"'know[s] the general nature of the conspiracy and that the
conspiracy extends beyond [his] individual role[].'"  United
States v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000) (quoting
United States v. Rastelli, 870 F.2d 822, 828 (2d Cir. 1989)); see

-27-

also Salinas v. United States, 522 U.S. 52, 64 (1997) ("A person
. . . may be liable for [§ 1962(d)] conspiracy even though he was
incapable of committing the substantive offense.").  For the
above reasons, I deny the Samserv defendants' motions to dismiss
the RICO conspiracy claims with respect to all Samserv employees,
including the five individual process server defendants.
Conversely, because of the insufficiency of the pleadings with
respect to Waldman, Orlando, and Canella, I also dismiss all RICO
conspiracy claims against them.  The Complaint has sufficiently
pleaded facts, however, that would establish the liability of all
other defendants for the RICO conspiracy claim, and thus this
prong of their motions to dismiss is denied.

    3.   **Pendent State Claims**

       Defendants challenge the GBL § 349 claim on the grounds
of sufficiency (all defendants) and mootness (Leucadia), and the
Judiciary Law § 487 claim on the ground of sufficiency (Mel
Harris).

       Under GBL § 349, a plaintiff must show that:  (1) the
defendant's conduct is "consumer-oriented"; (2) the defendant is
engaged in a "deceptive act or practice"; (3) the plaintiff was
injured by this practice; and (4) "the acts or practices have a
broader impact on consumers at large."  Wilson v. Nw. Mut. Ins.

Co., 625 F.3d 54, 64 (2d Cir. 2010) (citing Oswego Laborers'
Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d
20, 24-27 (1995)).  Thus, even though the default judgments
against plaintiffs have been vacated by the state courts or by
agreement with defendants, plaintiffs' claim for damages cannot
be moot.  For the same reasons discussed supra, plaintiffs have
alleged facts sufficient to survive a motion to dismiss as to all
defendants except Waldman, Orlando, and Cannella.  Thus, I grant
the defendants' motions only as to these three individuals.

       Judiciary Law § 487 provides that any attorney who has
engaged in "any deceit or collusion, or consents to any deceit or
collusion, with intent to deceive the court or any party" is
guilty of a misdemeanor and liable for damages.  N.Y. Jud. L.
§ 487.  Plaintiffs' allegations regarding the fraudulent
affidavits and other filings provide adequate support for this
claim against the Mel Harris defendants.  Thus, the Mel Harris
defendants' motion to dismiss the Judiciary Law claim is denied.

**B.  Defendants' Remaining Arguments**

       **1.  The *Rooker-Feldman* Doctrine**

       The Leucadia and Mel Harris defendants claim that this
Court lacks subject matter jurisdiction over all or some of the
claims under the Rooker-Feldman doctrine because plaintiffs are

-29-

effectively appealing from a state-court judgment.  The <u>Rooker-Feldman</u> doctrine applies only if, <u>inter alia</u>, a plaintiff invites a district court to review and reject an adverse state-court judgment.  <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005).  This argument fails, as plaintiffs assert claims independent of the state-court judgments and do not seek to overturn them.  In fact, all plaintiffs have had the default judgments against them vacated or discontinued.  Plaintiffs seek, <u>inter alia</u>, declaratory relief that defendants violated the law and injunctive relief via notice to putative class members that is independent of the state-court judgments.  The motion to dismiss for lack of subject matter jurisdiction is denied.

    2.    **The Litigation Privilege and *Noerr-Pennington* Doctrine**

The Leucadia defendants also argue that they are entitled to absolute privilege under state law for the statements made in the course of litigation in state courts.  Because plaintiffs have not claimed defamation, the privilege is wholly inapplicable here.

Alternatively, the Leucadia defendants maintain that they are immune from liability for exercising their First Amendment right to petition based upon the <u>Noer-Pennington</u> doctrine, which "immunizes from liability a party's commencement

-30-

of a prior court proceeding." <u>T.F.T.F. Capital Corp. v. Marcus</u> <u>Dairy, Inc.</u>, 312 F.3d 90, 93 (2d Cir. 2002).  The doctrine's "sham exception," however, excludes any abuse of process that bars access to the courts, such as "'unethical conduct in the setting of the adjudicatory process' or the pursuit of a 'pattern of baseless, repetitive claims.'" <u>Landmarks Holding Corp. v.</u> <u>Bermant</u>, 664 F.2d 891, 896 (2d Cir. 1981) (quoting <u>Calif. Motor</u> <u>Transp. v. Trucking Unltd.</u>, 404 U.S. 508, 513 (1972)).  Given the allegations of litigation-related misconduct here, I deny this prong of their motion to dismiss.

   3.   <u>**Piercing the Corporate Veil**</u>

        The Leucadia defendants move to dismiss for failure to state a claim on the basis that plaintiffs fail to pierce two layers of corporate veils.  I construe their motion to dismiss the claims to be on behalf of all Leucadia defendants except the LR Credits 10, 12, 14, 18, and 19, LLCs (the "numerical LR Credits"), since the numerical LR Credit defendants directly sued plaintiffs in state court.  The Complaint makes the following factual allegations:

   •   LNC is the parent corporation of the other seven
        Leucadia corporate defendants, which are wholly-owned
        subsidiaries of LNC and remit all their profits

directly to LNC;

- LNC has complete control over the other seven corporate Leucadia entities' debt collection activities;

- L-Credit, LLC is the sole corporate owner of LR Credit, LLC., which in turn is the sole corporate owner of all five numerical LR Credits;

- Orlando serves as vice president and CFO of LNC while also serving as president of LR Credit, LLC and all five numerical LR Credits;

- Cannella serves as LNC's assistant vice president and director of taxes while also serving as vice president of LR Credit, LLC and all five numerical LR Credits;

- all eight corporate defendants share the same Manhattan address:  315 Park Avenue South, 20th Floor.

(<u>Id.</u> ¶¶ 26-34).

Courts may pierce the corporate veil and disregard the corporate form "whenever necessary to prevent fraud or to achieve equity." <u>Morris v. N.Y. State Dep't of Taxation and Fin.</u>, 82 N.Y.2d 135, 140 (1993) (quoting <u>Walkovszky v. Carlton</u>, 18 N.Y.2d 414, 417 (1966)(internal punctuation omitted)).  The Complaint alleges a plausible claim of veil-piercing against parent LNC

vis-à-vis all seven Leucadia corporate subsidiaries.[15]

Generally, the veil-piercing analysis is governed by the law of the place of incorporation. United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000). LR Credit, LLC and L-Credit, LLC are Delaware limited liability companies, and the numerical LR Credits are New York limited liability companies. (Compl. ¶¶ 30-32). Under New York law, the veil-piercing analysis has two elements: (1) the owner "exercised complete domination over the corporation with respect to the transaction at issue;" and (2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997) (citing Morris, 82 N.Y.2d at 141). Under Delaware law, this analysis similarly requires that: (1) "the business entity and its owner 'operated as a single economic entity'" and (2) "an 'overall element of injustice or unfairness.'" NetJets Aviation, Inc. v. LHC

---

[15]    The law in this jurisdiction is unclear as to whether a plaintiff is required to pierce the veil of each layer of alleged corporate control. See In re BH S & B Holdings LLC, 420 B.R. 112, 135 (Bankr. S.D.N.Y. 2009) (noting the lack of clarity and declining to reach the issue). Deciding that issue is not necessary here, as I find a plausible claim of veil-piercing against LNC with respect to the seven other corporate entities.

Communications, LLC, 537 F.3d 168, 173-74 (2d Cir. 2008) (quoting

Fletcher v. Atex, Inc., 68 F.3d 1451, 1458 (2d Cir. 1995)).

Because the second prongs of both tests are easily met based upon

the fraud and misconduct allegations supra, I turn to the

factors-based tests for the first prongs.

    Courts within this Circuit have found both tests to be

substantially similar.[16]  Under New York law, the Leucadia

defendants' business model as alleged meets the "complete

control" requirement given the "overlap in ownership, officers,

directors, and personnel," "common office space" among the

corporate entities, and low "amount of business discretion

displayed by the allegedly dominated corporation[s]."  See Wm.

Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933

F.2d 131, 139 (2d Cir. 1991).  Similarly, under Delaware law I

conclude that plaintiffs plausibly allege that the Leucadia

subsidiaries "operated as an alter ego of another" -- LNC -- and

that "in general, the corporation simply functioned as a facade

---

    [16]    See, e.g., EED Holdings v. Palmer Johnson Acquisition
Corp., 387 F. Supp. 2d 265, 273 n.3 (S.D.N.Y. 2004) (noting
substantial similarity between New York and Delaware approaches
to piercing the corporate veil); Wausau Bus. Ins. Co. v. Turner
Const. Co., 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001) (same); S.J.
Berwin & Co. v. Evergreen Entm't Group, Inc., 1995 WL 606094
(WK), at *2 (S.D.N.Y. Oct. 12, 1995) (same).

for the dominant shareholder." Maloney-Refaie v. Bridge at
School, Inc., 958 A.2d 871, 881 (Del. Ch. 2008) (quoting Harco
Nat'l Ins. Co. v. Green Farms, Inc., Civ. A. No. 1331 (MAH), 1989
WL 110537, at *4 (Del. Ch. Sept. 19, 1989)); see also Geyer v.
Ingersoll Publ'ns Co., 621 A.2d 784, 793 (Del. Ch. 1992); accord
Fletcher, 68 F.3d at 1457 (citing cases).  Thus, I deny the
Leucadia defendants' motion to dismiss on this basis.

### CONCLUSION

For the foregoing reasons, defendants' motions are
granted in part and denied in part.  The following claims are
dismissed:  the FDCPA claims asserted by Graham as against all
defendants; the claims alleging a distinct "Leucadia RICO
enterprise," a distinct "Mel Harris RICO enterprise," and a
distinct "Samserv RICO enterprise"; the substantive RICO claims
against David Waldman, Joseph Orlando, Philip Canella, Benjamin
Lamb, Michael Mosquera, John Andino, Husam Al-Atrash, and Assmat
Abdelrahman; and the RICO conspiracy and GBL § 349 claims against
Waldman, Orlando, and Canella.  Plaintiffs may proceed with their
remaining claims.  The stay on depositions is hereby lifted.  The

parties shall appear for a status conference on January 11, 2011

at 11:00 a.m.


        SO ORDERED.

Dated:     New York, New York
           December 29, 2010

                                   DENNY CHIN
                                   United States Circuit Judge
                                   Sitting by Designation

**APPEARANCES:**

For Plaintiffs:
            EMERY CELLI BRINKERHOFF & ABADY LLP
                  By:  Matthew D. Brinckerhoff, Esq.
                       Elisha Jain, Esq.
            75 Rockefeller Plaza, 20th Floor
            New York, New York  10019

            NEIGHBORHOOD ECONOMIC DEVELOPMENT ADVOCACY PROJECT
                  By:  Susan Shin, Esq.
                       Claudia Wilner, Esq.
                       Josh Zinner, Esq.
            176 Grand Street, Suite 300
            New York, New York  10013

            - and -

            MFY LEGAL SERVICES, INC.
                  By:  Carolyn E. Coffey, Esq.
                       Andrew Goldberg, Esq.
                       Anamaria Segura, Esq.
            299 Broadway, 4th Floor
            New York, New York  10013

For Mel Harris Defendants:
            WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
                  By:  Brett A. Scher, Esq.
            150 East 42nd Street
            New York, New York  10017

For Leucadia Defendants:
            MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
                  By:  Adam R. Schwartz, Esq.
            88 Pine Street, 24th Floor
            New York, New York  10005

For Samserv Defendants:
            BABCHICK & YOUNG, LLP
                  By:  Jordan Sklar, Esq.
            200 East Post Road, 2nd Floor
            White Plains, NY  10601