UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONIQUE SYKES, RUBY COLON, REA
VEERABADREN, FATIMA GRAHAM, KELVIN
PEREZ, SAUDY RIVERA, PAULA ROBINSON,
and ENID ROMAN, individually and on behalf of
all others similarly situated,

                      Plaintiffs,

      *- against -*

MEL S. HARRIS AND ASSOCIATES LLC; MEL
S. HARRIS; MICHAEL YOUNG; DAVID
WALDMAN; KERRY LUTZ; TODD
FABACHER; MEL HARRIS JOHN/JANE DOES
1-20; LEUCADIA NATIONAL CORPORATION;
L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT
10, LLC; LR CREDIT 12, LLC; LR CREDIT 14,
LLC; LR CREDIT 18, LLC; LR CREDIT 19, LLC;
JOSEPH A. ORLANDO; PHILIP M. CANNELLA;
LR CREDIT JOHN/JANE DOES 1-20;
SAMSERV, INC.; WILLIAM MLOTOK;
BENJAMIN LAMB; MICHAEL MOSQUERA;
JOHN ANDINO; HUSAM AL-ATRASH;
ASSMAT ABDELRAHMAN; and SAMSERV
JOHN/JANE DOES 1-20,

                      Defendants.

ECF Case
No. 09 Civ. 8486 (DC)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION AND TO AMEND THE COMPLAINT

EMERY CELLI BRINCKERHOFF
& ABADY LLP
75 Rockefeller Plaza, 20th Fl.
New York, New York 10019
(212) 763-5000

NEIGHBORHOOD ECONOMIC
DEVELOPMENT ADVOCACY
PROJECT
176 Grand Street, Suite 3000
New York, New York 10013
(212) 680-5100

MFY LEGAL SERVICES, INC.
299 Broadway, 4th Floor
New York, New York 10013
(212) 680-5100

TABLE OF CONTENTS

Page No(s):

TABLE OF AUTHORITIES ................................................................................iii-vi

PRELIMINARY STATEMENT ...........................................................................1

FACTS ..................................................................................................................2

    A.    *Procedural History* ...............................................................................3

    B.    *Class-Wide Allegations and Relief Sought* .........................................3

    C.    *Proposed Class Representatives* ..........................................................5

        1.    *Plaintiff Monique Sykes* ...........................................................5

        2.    *Plaintiff Rea Veerabadren* ........................................................5

        3.    *Plaintiff Kelvin Perez* ...............................................................6

        4.    *Proposed Plaintiff Clifton Armoogam* ......................................7

ARGUMENT .........................................................................................................8

    I.    LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED......................8

    II.    THIS CASE SHOULD BE CERTIFIED AS A CLASS ACTION ............................9

        A.    The Proposed Class Satisfies Rule 23(a) ........................................11

            1.    Numerosity - Rule 23(a)(1) .....................................................11

            2.    Common Questions of Law or Fact - Rule 23(a)(2)..................11

            3.    Typicality - Rule 23(a)(3) ........................................................15

            4.    Adequacy of Representation - Rule 23(a)(4)............................16

        B.    This Suit Qualifies as a Class Action under Rule 23(b) ..................18

            1.    A Rule 23(b)(2) Class Should Be Certified...............................19

i

2.    A Rule 23(b)(1)(A) Class Should Be Certified ........................................20

3.    A Rule 23(b)(3) Class Should Be Certified............................................21

      a.    Common Legal and Factual Issues Predominate ...............................21

      b.    A Class Action Is Superior to Other Methods of Adjudication.........23

C.    The Class is Sufficiently Definite....................................................................24

CONCLUSION...........................................................................................................................25

TABLE OF AUTHORITIES

Page No(s)

Federal Cases

*Abromovitz v. Ahern*,
    96 F.R.D. 208 (D.C. Conn. 1982) ..........................................................................................20

*Amchem Prods, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................14, 18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ......................................................................................16

*Block v. First Blood Associates*,
    988 F.2d 344 (2d Cir. 1993) ......................................................................................8

*Brown v. Kelly*,
    244 F.R.D. 222 (S.D.N.Y. 2007) ...........................................................................14, 18, 21

*Burley v. City of New York*,
    No. 03 Civ. 735 (WHP), 2005 WL 668789 (S.D.N.Y. March 23, 2005) .................................13

*Bynum v. Dist. of Columbia*,
    214 F.R.D. 27 (D.D.C. 2003) .....................................................................................22

*Casale v Kelly*,
    257 F.R.D. 396 (S.D.N.Y. 2009) ...........................................................................17, 21

*Civic Assoc. of the Deaf of New York City, Inc. v. Giuliani*,
    915 F. Supp. 622 (S.D.N.Y. 1996) .............................................................................11

*Conley v. Gibson*,
    355 U.S. 41 (1957) .................................................................................................14

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) .........................................................................................11

*Cromer Finance Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) ...............................................................................15

*Cutler v. Perales*,
    128 F.R.D. 39 (S.D.N.Y. 1989) ...............................................................................15

*D.D. v. New York City Dep't of Educ.*,
No. 03-CV-2489 (DGT), 2004 WL 633222 (E.D.N.Y., Mar. 30, 2004)...................................18

*D.S. ex rel. S.S. v. New York City Dept. of Educ.*,
255 F.R.D. 59 (E.D.N.Y. 2008) .............................................................................................16

*D'Alauro v. GC Services Ltd. Partnership*,
168 F.R.D. 451 (E.D.N.Y. 1996) ...........................................................................................23

*Daniels v. City of New York*,
198 F.R.D. 409 (S.D.N.Y. 2001) ..................................................................................... *passim*

*Finch v. New York State Office of Children and Family Services*,
252 F.R.D. 192 (S.D.N.Y. 2008) ...........................................................................................14

*Foman v. Davis*,
371 U.S. 178 (1962).................................................................................................................8

*Hirschfeld v. Stone*,
193 F.R.D. 175 (S.D.N.Y. 2000) ...........................................................................................16

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987)...................................................................................................11

*In re AMF Bowling Sec. Litig.*,
No. 99 Civ. 3020, 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002).   ...........................................10

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
241 F.R.D. 435 (S.D.N.Y. 2007) ...........................................................................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996). ..........................................................................................21

*In re Nassau County Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006).......................................................................................12, 18, 22

*In Re Visa Check/Mastermoney Antitrust Litigation*,
280 F.3d 124 (2d Cir. 2001)..............................................................................................21, 24

*Ingles v. Toro*,
No. 01 Civ. 8279 (DC), 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003)......................................18

*Kanter v. Casey*,
43 F.3d 48 (3rd Cir. 1994) ..............................................................................................16, 19

iv

*Koch v. Dwyer*,
 No. 98 Civ. 5519, 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001) ................................................8

*Latino Officers Assoc. of New York v. City of New York*,
 209 F.R.D. 79 (S.D.N.Y. 2002) ................................................................................19

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997)....................................................................10, 11, 12, 19

*McBean v. City of New York*,
 260 F.R.D. 120 (S.D.N.Y. 2009) ...............................................................................17

*McBean v. City of New York*,
 No. 02 Civ. 5426 (GEL), 2007 WL 2947448 (S.D.N.Y. Oct. 05, 2007)...................................18

*Monaco v. Stone*,
 187 F.R.D. 50 (E.D.N.Y. 1999) ................................................................................13

*Nicholson v. Williams*,
 205 F.R.D. 92 (E.D.N.Y. 2001) ................................................................................19

*Parker v. Time Warner Entertainment Co., L.P.*,
 331 F.3d 13 (2d Cir. 2003)......................................................................................10

*Ray M. v. Bd. of Educ.*,
 884 F. Supp. 696 (E.D.N.Y. 1995) ...........................................................................14

*Ricciuti v. New York City Transit Auth.*,
 941 F.2d 119 (2d Cir. 1991)......................................................................................8

*Rios v. Marshall*,
 100 F.R.D. 395 (S.D.N.Y. 1983) ..............................................................................24

*Robertson v. Nat'l Basketball Ass'n*,
 556 F.2d 682 (2d Cir. 1977).....................................................................................20

*Robidoux v. Celani*,
 987 F.2d 931 (2d. Cir. 1993)...............................................................................10, 15

*Robinson v. Metro-North Commuter R.R.*,
 267 F.3d 147 (2d Cir. 2001).............................................................................. 14-15, 19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 130 S. Ct. 1431 (2010)..............................................................................................9

*Sharif v. New York State Board of Educ. Dept.*,
    127 F.R.D. 84 (S.D.N.Y. 1989) ........................................................10

*Staggers v. Otto Gerdau Co.*,
    359 F.2d 292 (2d Cir. 1966)............................................................8

*Ventura v. New York City Health & Hosp. Corp.*,
    125 F.R.D. 595 (S.D.N.Y. 1989) ....................................................16


<u>Federal Statutes</u>:

15 U.S.C. § 1692 ...........................................................................1

18 U.S.C. §§ 1961-1968 ................................................................1


<u>Federal Rules</u>:

Fed. R. Civ. P. 15................................................................................15

Fed. R. Civ. P. 23................................................................................*passim*

Fed. R. Civ. P. 68................................................................................3


<u>Other Authorities</u>

Newberg § 3:05....................................................................................11

Newberg § 3:15....................................................................................15, 21

Newberg § 4.04....................................................................................20

Newberg § 4:11....................................................................................18

Newberg § 4.25....................................................................................21

## PRELIMINARY STATEMENT

Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez, and proposed additional Plaintiff Clifton Armoogam ("the Named Plaintiffs") are all victims of Defendants' scheme to appropriate money through illegal means in violation of federal and state law. The Named Plaintiffs seek to certify a plaintiff class, pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(2) and/or (b)(3), consisting of all persons who have been or will be sued by the Mel Harris Defendants,[1] as counsel for the Leucadia Defendants, in actions commenced in New York City Civil Court and where a default judgment has been obtained, or will be sought.

Plaintiffs' overarching common claim – that Defendants, working in concert, are engaged in an enterprise designed to illegally appropriate Plaintiffs' property in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), New York General Business Law ("NY GBL") § 349, and New York Judiciary Law ("NY JL") § 487 – should be adjudicated on a class-wide basis. Because Defendants' practice of securing default judgments based on fraudulent statements is orchestrated by a relatively small number of people, and proceeds at high volume and breakneck speed, it relies heavily on computerized systems following uniform processes. Thus, common proof of Plaintiffs' claims is contained in Defendants' own databases and electronic records. Those records document Defendants' pattern and practice of creating hundreds of thousands of materially identical affidavits of service and affidavits of merit, which are in turn used to obtain default judgments. The same records also establish the methods used to execute or enforce those improper judgments and the exact amount

---

[1] The terms "Mel Harris Defendants," "Leucadia Defendants," and "Samserv Defendants" are used as defined in Plaintiffs' Second Amended Class Action Complaint, ¶¶ 18, 27, 36.

of money "recovered" from each victim.  Defendants' conduct has commonly impacted tens (if not hundreds) of thousands of individuals.  Given these circumstances, this action is tailor-made for class treatment under Fed. R. Civ. P. 23.

The Rule 23(a) prerequisites are handily met because: (1) the proposed class has many thousands of members, (2) the claims and defenses involve scores of common factual and legal issues concerning Defendants' scheme, (3) the Named Plaintiffs' claims and circumstances are materially indistinguishable from the absent class members they seek to represent – all have been injured (or are threatened with injury) by the same scheme and all will benefit from the relief sought – and (4) the Named Plaintiffs and their counsel will vigorously prosecute this action.

Rule 23(b)(2) is properly invoked because Defendants' conduct applies to all plaintiffs and the equitable and injunctive relief sought – to halt Defendants' scheme and remedy its harmful effects through disgorgement and other equitable means – will benefit the class as a whole.

Rule 23(b)(1)(A) is satisfied because the prosecution of separate actions by individual members of the proposed class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

Rule 23(b)(3) is appropriately applied to the proposed class because the common issues – whether Defendants' scheme violates the FDCPA, or RICO, or the NY GBL, or the NY Judiciary Law – predominate, indeed overwhelm, any possible individual issues that might arise.

## FACTS

The facts below are set forth in the Second Amended Class Action Complaint ("Compl."), the proposed Third Amended Class Action Complaint ("Prop. Compl."), the

2

Declaration of Eisha Jain, dated April 15, 2011 ("Jain Decl."), the Declaration of Nicholas

Egleson ("Egleson Decl."), dated April 14, 2011, and the Declaration of Herman De Jesus ("De

Jesus Decl."), dated April 15, 2011.

**A.**   ***Procedural History***

This putative class action was commenced on December 28, 2009, and Plaintiffs'

Second Amended Class Action Complaint was filed on March 31, 2010.  Thereafter, all three

groups of Defendants moved to dismiss.  Those motions were fully submitted on May 28, 2010.

On December 29, 2010, the motions were denied in part and granted in part.  *Sykes v. Mel Harris*

*and Assoc., LLC*, No. 09 Civ. 8486, 2010 WL 5395712 (S.D.N.Y. Dec. 29, 2010).

Pursuant to Fed. R. Civ. P. 68, judgments have been submitted for entry against

Defendants and in favor of Plaintiffs Ruby Colon, Fatima Graham, Saudy Rivera, Paula

Robinson and Enid Roman, in the amount of $15,000 for each Plaintiff, together with reasonable

costs and attorneys' fees.

Although the Plaintiffs who chose to accept offers of judgment pursuant to Fed.

R. Civ. P. 68 will presumably no longer be parties to the case, their experiences remain evidence

of the uniform and common issues and facts presented in this action.  The three remaining

Plaintiffs are Monique Sykes, Rea Veerabadren and Kelvin Perez.  Plaintiffs also seek leave to

add an additional plaintiff, Clifton Armoogam, concurrent with their motion for class

certification.

**B.**   ***Class-Wide Allegations and Relief Sought***

On behalf of the plaintiff class, the Named Plaintiffs bring three claims against all

Defendants and one additional claim against the Mel Harris Defendants, pursuant to the FDCPA,

RICO, NY GBL § 349, and NY JL § 487, respectively.  The Named Plaintiffs and those they

seek to represent are all victims (or future targets) of the same scheme. All have had the misfortune of having their names appear in connection with a list of purported debts purchased by the Leucadia and Mel Harris Defendants for pennies on the dollar. All have had or in the future may have default judgments entered against them based on fraudulent affidavits – an affidavit of service claiming that process was served when it was not, and an affidavit of merit falsely alleging personal knowledge that a debt is owed, based on little more than a name and a number on a list.

Defendant Mel Harris S. Harris & Associates, LLC maintains electronic databases that are designed to process a high volume of debt collection lawsuits in a uniform, automated way, starting with the purchase of a debt portfolio, continuing through the entry of a default judgment, and concluding with the execution of the judgment. Given the uniformity of the files in the electronic databases, the individuals who fit the class parameters can be easily identified. The Mel Harris Defendants will readily be able to extract material data from these databases, enabling the parties to specifically determine: 1) whether a default judgment was obtained; 2) the amount of the default judgment; 3) when process was allegedly served; 4) the identity of the process serving company; 5) the method of service; 6) whether money was collected pursuant to the default judgment; 7) the amount that was collected; and 8) the method of collection. *See* Egleson Decl. ¶¶ 3, 4, 15.

Plaintiffs seek a judgment declaring that Defendants' challenged conduct violated the FDCPA, RICO, NY GBL § 349, and NY JL § 487. Plaintiffs also seek critical injunctive and other equitable relief designed to prevent Defendants from continuing their illegal activities and to disgorge the large sums of money their scheme has generated. Finally, Plaintiffs also seek compensatory damages, statutory damages, and treble damages as provided by the FDCPA,

RICO, NY GBL § 349, and NY JL § 487.

**C.**    *Proposed Class Representatives*

    **1.**    *Plaintiff Monique Sykes*

        Plaintiff Monique Sykes lives in the Bronx.  At some time prior to June 27, 2008, the Leucadia and Mel Harris Defendants purchased a large number of alleged debts, one of which was identified as being owed by Ms. Sykes.  On or about June 27, 2008, the Leucadia and Mel Harris Defendants commenced a lawsuit against Ms. Sykes in Bronx County Civil Court. Ex. A to Jain Decl.  The suit alleged that Ms. Sykes owed money to one of the Leucadia Defendants as an assignee and purchaser of a debt originally owed to an unrelated entity.  On or about July 25, 2008, Defendant Samserv prepared an affidavit attesting that Ms. Sykes had been served with process via "substituted" service when she had not.  Ex. B to Jain Decl.  The fraudulent affidavit of service was filed in court on or about August 1, 2008.

        In September or October 2008, Defendants sought a default judgment against Ms. Sykes.  In support of that motion, Defendants submitted the fraudulent affidavit of service prepared by the Samserv Defendants and an affidavit of merit from Defendant Fabacher claiming that he was "fully and personally familiar with, and [had] personal knowledge of, the facts and proceedings relating to the within action."  Ex. C to Jain Decl.

        On October 7, 2008, the court entered a default judgment against Ms. Sykes in the amount of $ 2,522.61.  Ex. D. to Jain Decl.  In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

    **2.**    *Plaintiff Rea Veerabadren*

        Plaintiff Rea Veerabadren lives in Queens.  At some time prior to April 12, 2006, the Leucadia and Mel Harris Defendants purchased a large number of alleged debts, one of

which was identified as being owed by Ms. Veerabadren.  On or about April 12, 2006, the

Leucadia and Mel Harris Defendants commenced a lawsuit against Ms. Veerabadren in Queens

County Civil Court.  Ex. E to Jain Decl.  The suit alleged that Ms. Veerabadren owed money to

one of the Leucadia Defendants as an assignee and purchaser of a debt originally owed to an

unrelated entity.  On or about May 25, 2006, Defendant Samserv prepared an affidavit attesting

that Ms. Veerabadren had been served with process via "substituted" service when she had not.

Ex. F to Jain Decl.  The fraudulent affidavit of service was filed in court on or about May 25,

2006.

On or about July 2006, Defendants sought a default judgment against Ms.

Veerabadren.  In support of that motion, Defendants submitted the fraudulent affidavit of service

prepared by the Samserv Defendants and an affidavit of merit from Defendant Fabacher claiming

that he was "fully and personally familiar with, and [had] personal knowledge of, the facts and

proceedings relating to the within action."  Ex. G to Jain Decl.

On August 8, 2006, the court entered a default judgment against Ms. Veerabadren

in the amount of $ 7,260.29.  In doing so, the court relied upon the fraudulent affidavit of service

and affidavit of merit submitted to the court by Defendants.  Ex. H to Jain Decl.

### 3.   *Plaintiff Kelvin Perez*

Plaintiff Kelvin Perez lives in the Bronx.  At some time prior to November 5,

2007, the Leucadia and Mel Harris Defendants purchased a large number of alleged debts, one of

which was identified as being owed by Mr. Perez.  On or about November 5, 2007, the Leucadia

and Mel Harris Defendants commenced a lawsuit against Mr. Perez in Bronx County Civil

Court.  Ex. I to Jain Decl.  The suit alleged that Mr. Perez owed money to one of the Leucadia

Defendants as an assignee and purchaser of a debt originally owed to an unrelated entity.  On or

6

about December 20, 2007, Defendant Samserv prepared an affidavit attesting that Mr. Perez had been served with process via "substituted" service when he had not.  The fraudulent affidavit of service was filed in court on or about December 26, 2007.  Ex. J to Jain Decl.

In January or February 2008, Defendants sought a default judgment against Mr. Perez.  In support of that motion, Defendants submitted the fraudulent affidavit of service prepared by the Samserv Defendants and an affidavit of merit from Defendant Fabacher claiming that he was "fully and personally familiar with, and [had] personal knowledge of, the facts and proceedings relating to the within action."  Ex. K to Jain Decl.

On February 19, 2008, the court entered a default judgment against Mr. Perez in the amount of $2,009.99.  In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.  Ex. L to Jain Decl.

### 4. *Proposed Plaintiff Clifton Armoogam*

Proposed Plaintiff Clifton Armoogam lives in Queens.  At some time prior to May 27, 2010, the Leucadia and Mel Harris Defendants purchased a large number of alleged debts, one of which was identified as being owed by Mr. Armoogam.  On or about May 27, 2010, the Leucadia and Mel Harris Defendants commenced a lawsuit against Mr. Armoogam in Queens County Civil Court.  Ex. M to Jain Decl.  The suit alleged that Mr. Armoogam owed money to one of the Leucadia Defendants as an assignee and purchaser of a debt originally owed to an unrelated entity.  On or about June 24, 2010, Defendant Samserv prepared an affidavit attesting that Mr. Armoogam had been served with process via "substituted" service when he had not. The fraudulent affidavit of service was filed in court on or about July 1, 2010.  Ex. N to Jain Decl.

7

In August 2010, Defendants sought a default judgment against Mr. Armoogam. In support of that motion, Defendants submitted the fraudulent affidavit of service prepared by the Samserv Defendants and an affidavit of merit from Defendant Fabacher claiming that he was "fully and personally familiar with, and [had] personal knowledge of, the facts and proceedings relating to the within action." Ex. O to Jain Decl.

On September 15, 2010, the court entered a default judgment against Mr. Armoogam in the amount of $6,264.88. In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants. Ex. P to Jain Decl.

## ARGUMENT

## I.      LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED

Leave to amend a complaint "will be freely given when justice so requires." Fed. R. Civ. P. 15(a). The "liberality in granting leave to amend also applies to amending a complaint to add new parties." *Koch v. Dwyer*, No. 98 Civ. 5519, 2001 WL 289972, at *6 (S.D.N.Y. Mar. 23, 2001) (citing *Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296-97 (2d Cir. 1966)). The Supreme Court has emphasized that the refusal to grant leave to amend must be justified by grounds such as undue delay, bad faith, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in [the Second] Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith"). *See also Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (counseling that it is "rare" that leave to amend should be denied).

By the proposed Third Amended Class Action Complaint, Ex. Q to Jain Decl., Plaintiffs seek to: (1) add a plaintiff – Clifton Armoogam; (2) add eight defendants – PHLCorp

8

Holding LLC, Baldwin Enterprises, Inc., TLCO Group Holdings, Inc., Darsen, LLC, PRLC, LLC, Rushmore Recovery Management, LLC, LR Credit 21, LLC, and Zalman Jacobs – all of whom were only recently identified by defendants as participating in the scheme challenged in this action; and (3) add treble damages as a form of relief sought pursuant to Plaintiffs' claim under NY GBL § 349(h) and NY JL § 487, a form of relief only recently made available by *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), *rev'g*, 549 F.3d 137 (2d Cir. 2008) (holding that CPLR 901(b) barred recovery of penalties on New York state law claim brought in class action in federal court).  Because Defendants cannot show prejudice, bad faith, futility, or undue delay, Plaintiffs' motion to amend should be granted.

## II.       THIS CASE SHOULD BE CERTIFIED AS A CLASS ACTION

The Named Plaintiffs seek to represent a class, pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(2) and/or (b)(3), consisting of all persons who have been sued by the Mel Harris Defendants, as counsel for the Leucadia Defendants, in actions commenced in New York City Civil Court and where a default judgment has been obtained, or will be sought.

Class certification is appropriate where plaintiffs establish that the prerequisites of Rule 23(a) are satisfied, and that a class action may be maintained pursuant to one of the subsections of Rule 23(b).  Rule 23(a) permits class certification if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).

Plaintiffs may seek class relief: (i) where defendants "have acted or refused to act on grounds generally applicable to the class," so that injunctive or declaratory relief is

appropriate "with respect to the class as a whole," Rule 23(b)(2); or (ii) where "prosecuting

separate actions . . . would create a risk" of "inconsistent or varying adjudications with respect to

individual class members that would establish incompatible standards of conduct for"

Defendants, Rule 23(b)(1)(A); or (iii) where questions of law or fact common to the members of

the class predominate over any questions affecting only individual members and a class action is

superior to other available methods for the fair and efficient adjudication of the controversy,

Rule 23(b)(3).

Rule 23 is traditionally given liberal construction.  *See Marisol A. v. Giuliani*, 126

F.3d 372, 377 (2d Cir. 1997).  Errors concerning class certification are to be made "in favor and

not against the maintenance of a class action."  *Sharif v. New York State Board of Educ. Dept.*,

127 F.R.D. 84, 87 (S.D.N.Y. 1989) (citations omitted).  "[B]ecause courts are given discretion to

tailor the scope of the class later in the litigation, liberal consideration of the requirements for

class certification is permitted in the early stages of litigation."  *In re AMF Bowling Sec. Litig.*,

No. 99 Civ. 3020, 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002).  While the decision to

certify a class is committed to the district court's discretion, the Second Circuit is "noticeably

less deferential . . . when that court has denied class status than when it has certified a class."

*Parker v. Time Warner Entertainment Co., L.P.,* 331 F.3d 13, 18 (2d Cir. 2003) (quoting

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  Finally, in considering whether to certify

a class, the district court should not assess any aspect of the merits unrelated to a Rule 23

requirement.  *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 241 F.R.D. 435,

443-44 (S.D.N.Y. 2007) (citation omitted).

A.      **The Proposed Class Satisfies Rule 23(a)**

1.      **Numerosity - Rule 23(a)(1)**

The essential element of any class action is that the proposed class be so large that joinder of all individual class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  In cases involving classes numbering in the hundreds or thousands, the numerosity requirement of Rule 23(a)(1) is easily met.  *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3:05 (4th ed. 2002) (hereinafter "*Newberg*").  Numerosity can be presumed at a level of 40 members. *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (citing *Newberg* § 3.05 (1992)).  In this case, the proposed plaintiff class consists of many tens of thousands of persons.  *See* De Jesus Decl. ¶¶ 4-5.   Any argument that the proposed class does not satisfy the numerosity prerequisite would be frivolous.

2.      **Common Questions of Law or Fact - Rule 23(a)(2)**

Common issues abound.  All Plaintiffs' claims and injuries derive from a unitary course of conduct:  Defendants' scheme to fraudulently obtain default judgments in New York City Civil Court.  As courts have recognized, "[t]he fact that the claims of the proposed class stem from the same alleged [illegal] conduct of the defendants proves the existence of common questions of law or fact."  *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (citations omitted).

Rule 23(a)(2) does not require that all questions of law or fact be common to the class, but only that the named plaintiffs share at least one question of fact or law with the rest of the putative class.  *See Marisol A.*, 126 F.3d at 377; *Daniels*, 198 F.R.D. at 417 (citing *In Re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987)).  Factual differences among the claims of class members do not preclude a finding of commonality.  *See e.g., Daniels*,

11

198 F.R.D. at 417; *Civic Assoc. of the Deaf of New York City, Inc. v. Giuliani*, 915 F. Supp. 622,

633 (S.D.N.Y. 1996).  This is particularly true where, as here, plaintiffs challenge a common

policy or practice.  The commonality requirement is satisfied where "the injuries complained of

by the named plaintiffs allegedly resulted from the same [illegal] practice or policy that allegedly

injured or will injure the proposed class members."  *Daniels*, 198 F.R.D. at 417; *see also Marisol*

*A*., 126 F.3d at 376-77.

   In this case, scores of common questions of law and fact lie at the core of

Plaintiffs' claims.  One need look no further than the briefing on Defendants' motions to dismiss

and the defenses raised in Defendants' Answers to see that this is so (the Leucadia Defendants

asserted 44 separate affirmative defenses).  Indeed, legal issues that were raised and resolved as

part of Defendants' motions to dismiss remain common issues for purposes of class certification

even though they are now the law of the case.  *See In re Nassau County Strip Search Cases*, 461

F.3d 219, 228 (2d Cir. 2006) ("Even resolved questions continue to implicate the 'common

nucleus of operative facts and issues' with which the predominance inquiry is concerned.").

   Some questions of law and fact common to all class members include, without

limitation:

  (i)  whether Defendants are debt collectors under the FDCPA;
  (ii)  identifying the point in time when a claim accrues under the FDCPA;
  (iii)  whether Defendants as a whole constitute an association-in-fact sufficient to create an enterprise under RICO;
  (iv)  whether Defendants' scheme utilized the mails or wires;
  (v)  whether Defendants' affidavits of service were false and misleading;
  (vi)  whether Defendants' affidavits of merit were false and misleading;
  (vii)  whether Defendants' attorney affirmations were false and misleading;
  (viii)  the amount of money purloined through Defendants' scheme, and thus subject to an order of disgorgement;
  (ix)  the nature and scope of appropriate injunctive relief;
  (x)  whether Defendants are entitled to the benefit of a good faith defense, and if so,

whether Defendants acted in good faith;

(xi)    whether any Defendants are insulated from liability based on the corporate form;

(xii)    whether the Rooker-Feldman doctrine bars this action;

(xiii)    whether the litigation privilege bars Plaintiffs' claims;

(xiv)    whether the Noerr-Pennington Doctrine applies to Plaintiffs' claims;

(xv)    whether Plaintiffs are entitled to pre-judgment interest;

(xvi)    whether, under RICO, Defendants must demonstrate that Plaintiffs relied on Defendants' fraudulent statements, or whether reliance by the courts is sufficient;

(xvii)    whether reliance on the advice of counsel is a defense to an action under any of the statutes at issue, and if so whether Defendants actually relied on such advice;

(xviii)    whether Defendants' actions were unintentional and if so, whether that constitutes a valid defense under the FDCPA;

(xix)    whether contributory fault is a defense cognizable under any of the statutes at issue.[2]

These are just some of the key legal and factual issues in the case, and they are common to all class members. *See Monaco v. Stone*, 187 F.R.D. 50, 61-62 (E.D.N.Y. 1999) (common question of law is legality of defendants' policy); *Burley v. City of New York*, No. 03 Civ. 735 (WHP), 2005 WL 668789 at *4 (S.D.N.Y. March 23, 2005) (common questions of law and fact posed by application of policy to individual members of putative class); *Daniels*, 198 F.R.D. at 418 (commonality is met "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members").

The Leucadia and Mel Harris Defendants, working in concert, purchase portfolios of debt. They load all the information they purchase, *i.e.*, the names, addresses, and amounts allegedly owed, into a computer system that generates uniform documents to initiate a debt collection action in New York City Civil Court. Those documents are transmitted to the Samserv Defendants, who then create affidavits of service that are executed and transferred back to the Mel Harris Defendants in electronic form. Subsequently, the Mel Harris Defendants

---

[2] One can, of course, quibble over whether a common question is legal, factual or a mixed question of both. For present purposes, however, it is sufficient to observe that the issues identified are *common*.

generate a second set of documents, including affidavits of merit for Defendant Fabacher's signature, which are then submitted to the court in support of applications for default judgments. Once obtained, the default judgments are entered into the computer system, and the system then generates judgment enforcement documents, including without limitation, information subpoenas and execution documents for City Marshals.  See Egleson Decl. ¶¶ 5-9.[3]

Plaintiffs are thus "challenging a *practice* of defendants," not merely Defendants' "conduct with respect to the individual plaintiff[s]," and therefore, the commonality requirement is readily met.  *Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (citations omitted, emphasis supplied); *see also Finch v. New York State Office of Children and Family Services*, 252 F.R.D. 192, 201 (S.D.N.Y. 2008) (commonality is met because "any variation in the reasons for each person's delayed hearing does not negate the common questions of fact and law surrounding the State's policies").

Because the injuries complained of by the Named Plaintiffs resulted from the same illegal scheme or practice that has injured or will injure the proposed class members, the commonality requirement is satisfied.  Rule 23(a)(2) "does not require all questions of law or fact be common to the class," and, indeed, to so require "would be the death knell for class actions challenging" an illegal practice or scheme, an "unacceptable result."  *Brown v. Kelly*, 244 F.R.D. 222, 230-31 (S.D.N.Y. 2007), *aff'd in pertinent part, rev'd on other grounds*, 609 F.3d 467 (2d Cir. 2010).

---

[3] Out of an abundance of caution, and to ensure that we fully comply with the confidentiality order entered in this matter, we have provided only a general description of the Mel Harris Defendants' computer systems.  These systems are described in greater detail in the Egleson Declaration, which has been filed under seal for the time being.

### 3.    Typicality - Rule 23(a)(3)

Rule 23(a)(3) requires that the claims of the class representative must be "typical" of those of the absent class members. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 607 n.11 (1997).  A proposed class representative's claims or defenses are typical when they arise from the same general "course of events" as those of the absent class members and rely on "similar legal arguments" to prove defendants' liability. *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *In re "MTBE" Prod. Liab. Litig.*, 241 F.R.D. at 444 (citation omitted).  Typicality is determined by the nature of the claims of the class representative, not by the specific facts from which they arose. *See generally Newberg* § 3:15.

For instance, the Second Circuit has found claims to be typical where the different types of workplace discrimination experienced by the proposed class members and the putative class allegedly arose from the employer's discriminating "in the same general fashion" against all class members. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d. Cir. 1993).  The purpose of the typicality requirement is to "ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence." *Cromer Finance Ltd. v. Berger,* 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (internal punctuation and citation omitted). "[V]iewed in the most practical way, typicality is present when all members of the putative class would benefit by the success of the named plaintiff." *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (citations omitted).

The violations suffered by the Named Plaintiffs are typical of those of the class

they seek to represent.  The Named Plaintiffs' claims arise from the same course of illegal

conduct – Defendants' attempt to appropriate money though fraudulent means – that gives rise to

the claims of all the other class members, and are based upon the same legal theories as those of

the putative class.  Here, the Named Plaintiffs claim that this conduct violates their statutory

rights under the FDCPA, RICO, NY GBL and NY JL.  These common claims are central to both

the damages claims and the request for injunctive and other equitable relief.  Thus, "by

advancing their own interests, [the named] plaintiffs will advance the interests of the class."

*Ventura v. New York City Health & Hosp. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) (citations

omitted); *see also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994) ("[C]ases

challenging the same unlawful conduct which affects both the named plaintiffs and the putative

class usually satisfy the typicality requirement."); *D.S. ex rel. S.S. v. New York City Dept. of

Educ.*, 255 F.R.D. 59, 71-72 (E.D.N.Y. 2008) ("Named plaintiffs and other class members have

faced similar illegal exclusions from educational services to which they are entitled. While these

exclusions were effectuated in a variety of ways . . . defendants' general practices and course of

conduct and the harms suffered by class and subclass members satisfy the typicality requirement

for purposes of class certification.").

### 4.    Adequacy of Representation - Rule 23(a)(4)

Rule 23(a)(4) requires that class representatives must "fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[A]dequacy of representation entails

inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest of other members of

the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the

litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Both requirements are met here.  The proposed class representatives have no conflict with any

class members, and will fairly and adequately protect the interests of the classes.  The Named

Plaintiffs are adequate representatives because they were subjected to the same unlawful conduct

as the class members.  *Hirschfeld v. Stone*, 193 F.R.D. 175, 183 (S.D.N.Y. 2000).  Because the

Named Plaintiffs: (1) have suffered the injury sought to be prevented by class relief; (2) intend to

pursue claims that will secure relief for the class; and (3) seek equitable and injunctive relief

which will benefit the entire class, the Named Plaintiffs are adequate class representatives.  *Id.*

Counsel competent and experienced in class action and consumer protection

litigation have been retained to represent the class.

The Neighborhood Economic Development Advocacy Project ("NEDAP") is a

nonprofit organization that works to promote community economic justice and to eliminate

discriminatory economic practices that harm communities and perpetuate inequality and poverty.

Through its Consumer Law Project, NEDAP provides direct legal services to thousands of low

income New Yorkers through a legal hotline and clinic, builds the capacity of legal services and

community-based organizations to address consumer financial justice issues, and advocates for

systemic reform.

MFY Legal Services, Inc. ("MFY") is a nonprofit organization that provides

advice and representation to over 7, 500 New Yorkers each year, working in concert with

neighborhood social service providers and community advocates, and initiates affirmative

litigation that impacts many thousands of people.  Through its Consumer Rights Project, MFY

provides advice and representation to consumers who are harassed by debt collectors, sued in

New York courts, and affected in various ways by consumer issues.

Emery Celli Brinckerhoff & Abady LLP is a law firm with extensive experience

in class action lawsuits and civil rights litigation that has served or is currently serving as class

counsel in: *McBean v. City of New York*, 260 F.R.D. 120 (S.D.N.Y. 2009) (certifying Rule 23(b)(3) class of persons subjected to unlawful misdemeanor pre-trial strip search policy); *Casale v Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009) (certifying Rule 23(b)(2) and (b)(3) classes of persons arrested for subsections of loitering statute declared unconstitutional); *Coultrip v. Pfizer,* No. 06 Civ. 9952 (AKH) (counsel for thousands of sales representatives in nationwide collective action under the Fair Labor Standards Act); *McBean v. City of New York*, No. 02 Civ. 5426 (GEL), 2007 WL 2947448 (S.D.N.Y. Oct. 05, 2007) (certifying Rule 23(b)(2) class of persons subjected to unlawful misdemeanor pre-trial strip search policy); *Brown*, 244 F.R.D. 222 (certifying Rule 23(b)(2) bilateral plaintiff and defendant classes and Rule 23(b)(3) plaintiff class of persons arrested for loitering for the purpose of begging); *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) (reversing and certifying Rule 23(b)(3) class of persons subjected to unlawful misdemeanor pretrial strip search policy); *D.D. v. New York City Dep't of Educ.*, No. 03-CV-2489 (DGT), 2004 WL 633222 (E.D.N.Y., Mar. 30, 2004) (certifying Rule 23(b)(2) class of New York City preschool children seeking to enforce the Individuals with Disabilities Education Act);  *Ingles v. Toro,* No. 01 Civ. 8279 (DC), 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) (certifying Rule 23(b)(1) and (2) class).

   Both elements of Rule 23(a)(4) are clearly satisfied.

  **B.**  **This Suit Qualifies as a Class Action under Rule 23(b)**

   The Named Plaintiffs seek to represent a class, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(1)(A) and 23(b)(3), consisting of all persons who have been sued by the Mel Harris Defendants, as counsel for the Leucadia Defendants, in actions commenced in New York City Civil Court and where a default judgment has been obtained, or will be sought.

### 1.    A Rule 23(b)(2) Class Should Be Certified

Rule 23(b)(2) was designed especially for cases such as this one, seeking declaratory or injunctive relief for a large class of persons. *See* Fed. R. Civ. P 23(b)(2), Advisory Committee Notes to 1966 Amendment; *Amchem Prods*, 521 U.S. at 614; *Newberg* § 4:11. This section is typically relied on where, as here, a plaintiff class is seeking systematic reform through injunctive relief. *See Marisol A.*, 126 F.3d at 378; *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001). Rule 23(b)(2) provides a basis for certifying a class in actions challenging a pattern and practice of illegal conduct. *See e.g. Daniels*, 198 F.R.D. at 415 (racially-motivated police stop-and-frisk). Indeed, "(b)(2) classes have been certified" in a host of cases "where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." *Baby Neal*, 43 F.3d at 57.

The Second Circuit instructs that district courts should weigh "whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Robinson*, 267 F.3d at 164 (citation and internal quotations omitted). Even when compensatory or punitive damages are sought, (b)(2) certification is appropriate where the relative weight or value of the equitable relief sought is predominant, and class treatment would be efficient and manageable. *Id.* In this case, certification is appropriate because "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Id.* at 162; *Latino Officers Assoc. of New York v. City of New York*, 209 F.R.D. 79, 93 (S.D.N.Y. 2002) (certifying a (b)(2) class where plaintiffs sought "significant" injunctive relief including training within the NYPD's ranks). As set forth above, Plaintiffs seek extensive forms of equitable relief, including an injunction against prospective

illegal conduct and the disgorgement of Defendants' ill-gotten gains.

Here, by instituting a high-volume computerized scheme to obtain default judgment through fraud, Defendants have acted on grounds generally applicable to all members of the proposed class, such that equitable relief for the entire class is appropriate.   Moreover, given Defendants' long history of prosecuting this scheme, including their continued practice even after this lawsuit was filed in December 2009, *see supra* at 7 (describing facts of Plaintiff Clifton Armoogam), injunctive and declaratory relief are plainly of paramount importance to the putative class.  The need for injunctive relief to compel Defendants to cease their illegal conduct, and to resolve its lingering impact on the lives of the putative class, is critical.  Accordingly, Plaintiffs can readily meet the requirements of Rule 23(b)(2) certification.

### 2.        A Rule 23(b)(1)(A) Class Should Be Certified

The Named Plaintiffs also seek class certification pursuant to Fed. R. Civ. P. 23(b)(1)(A).  Rule 23(b)(1)(A) provides that class actions are to be maintained if "prosecuting separate actions by . . . individual class members would create a risk of: inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  *See generally Newberg* § 4.04.  Pursuit of these claims for system-wide injunctive relief through multiple individual suits would not only be inefficient but would also create a risk that different courts might order divergent – even conflicting – relief.

Where, as here, Plaintiffs seek affirmative injunctive relief, the certification of a class protects against the risk not only of "inconsistent adjudications but also of incompatible conduct, that is, where a defendant is sued by different plaintiffs asking for different and incompatible affirmative relief."  *Abromovitz v. Ahern*, 96 F.R.D. 208, 215 (D.C. Conn. 1982);

*cf. Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977) (23(b)(1) certification proper where plaintiffs sought rule changes that would impact future class members).

### 3.    A Rule 23(b)(3) Class Should Be Certified

The Named Plaintiffs also seek class certification pursuant to Fed. R. Civ. P. 23(b)(3). Courts may certify class actions under Rule 23(b)(2) and Rule 23(b)(3) when the requirements of both are satisfied, and injunctive relief and damages are both important components of the requested relief. *Casale,* 257 F.R.D. 396 (certifying bilateral Rule 23(b)(2) and (b)(3) classes); *Brown*, 244 F.R.D. 222 (same); *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493 (S.D.N.Y. 1996).

Rule 23(b)(3) certification is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Courts have not developed a precise test to determine whether common issues predominate but often look for "an essential common link among class members" that can be remedied through litigation. *Newberg* § 4.25. In this case, all Plaintiffs' claims revolve around two broad common questions with many constituent common parts: (1) whether class members were victims of Defendants' uniform scheme to obtain default judgments by submitting fraudulent documents to the New York City Civil Court and (2) whether that scheme violates the statutes Plaintiffs invoke. These questions and their many common subsidiary issues can and should be adjudicated on a class-wide basis.

### a.    Common Legal and Factual Issues Predominate

To satisfy predominance under Rule 23(b)(3), plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In Re*

21

*Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001) (citation and internal quotations omitted)).  Predominance is generally satisfied (along with typicality) unless "it is clear that individual issues will overwhelm the common questions."  *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. at 517.

Here, as set forth in the discussion of common issues under Rule 23(a)(2), *see supra* at pp.11-14, there are a raft of common issues of law and fact.  Plaintiffs will use common proof to establish Defendants' liability for the violations of their statutory rights.  The Mel Harris databases contain records of all individuals subjected to Defendants' scheme, thereby making the determination of class membership simple.  *In re Nassau County Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006) (finding that defendants possessed records of misdemeanor detainees strip searched during class period); *In re Visa Check*, 280 F.3d at 142 (approving class certification where class members can be identified "by defendants' own records").  These databases constitute undisputed, class-wide evidence of the illegal conduct at issue in this case. *See Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 39-40 (D.D.C. 2003) (predominance requirement satisfied where plaintiffs raised "one common question of fact (whether defendant has detained the class members later than their scheduled release date) and at least one common question of law (whether these alleged over-detentions violate the Fourth, Fifth, and Eighth Amendments)).

This case is ideally suited for class certification because it concerns the systemic, computerized, high volume practice of filing serial actions and motions for default judgments in order to appropriate Plaintiffs' property through fraudulent means.

Insofar as Defendants may oppose certification of a (b)(3) class on the ground that there are individual issues, such as the quantum of individual damages, this argument is a

non-starter.  First, the mere existence of a potential issue or defense that "may affect different class members differently does not compel a finding that individual issues predominate over common ones."  *In Re Visa Check*, 280 F.3d at 138 (citation omitted).  Rather, "[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)."  *Id*. (citation omitted).  "Therefore, the question for purposes of determining predominance is not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense."  *Id.*

Second, the Second Circuit has squarely ruled that individualized damages determinations will not preclude a finding of predominance.  "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.* at 139.  Here, issues concerning liability for engaging in Defendants' uniform scheme link the class neatly and provide the basis for a systemic resolution.  Moreover, even though the actual quantum of compensatory damages sought by each absent class member may vary, the method for determining that number requires nothing more than simple math.

> **b.**    **A Class Action Is Superior to Other Methods of Adjudication**

Given the sheer number of class members and the fact that Defendants' lawsuits are concentrated in low-income communities and communities of color, a class action is not just superior to other methods of adjudication[4] – it is the *only* method of adjudication.  Absent class certification it is virtually certain that the rights of individual class members will not be

---

[4] Factors relevant to the superiority of a class action under Rule 23(b)(3) include: "(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

vindicated.  *See, e.g., D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 458 (E.D.N.Y.

1996) (in considering Rule 23(b)(3) superiority, it is appropriate for the court to consider the

"inability of the poor or uninformed to enforce their rights and the improbability that large

numbers of class members would possess the initiative to litigate individually").

       Class certification will permit the resolution of tens of thousands of individual

claims in a single forum, at one time, thereby avoiding either a multiplicity of repetitive lawsuits,

or worse yet, and more likely, no lawsuits at all.  When plaintiffs are "aggrieved by a single

policy of the defendants," such as the scheme at issue here, the case presents "precisely the type

of situation for which the class action device is suited," since many nearly identical litigations

can be adjudicated in unison.  *In re Visa Check*, 280 F.3d at 146.

       A class action is also superior to any other method for the fair and efficient

adjudication of this dispute, as the damages suffered by certain members of the class, although

substantial, are small in relation to the extraordinary expense and burden of individual litigation.

Rather than have tens or hundreds of thousands of persons victimized by Defendants'

misconduct commence individual actions, these claims should be adjudicated together, in a

single proceeding.  Without class certification, thousands of individuals will lose any practical

means for obtaining either equitable relief (such as an injunction barring Defendants from

continuing to operate in this manner and disgorgement of the funds amassed to date) or damages

for Defendants' illegal conduct.

### C.    The Class is Sufficiently Definite

       In addition to other requirements, the proposed class must also be sufficiently

definite.  *Daniels*, 198 F.R.D. at 414.  The court "must be able to make [the definiteness]

determination without having to answer numerous fact-intensive questions."  *Id.* (internal

quotations and citation omitted).  A proposed class must be clearly defined so that it is

"administratively feasible for the court to determine whether a particular individual is a member." *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983) (citation omitted).  The proposed class definition is unambiguous.  Nearly every member of the class can be identified through the Mel Harris database.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify a plaintiff class as set forth above, pursuant to Rules 23(a), (b)(2), (b)(1)(A), and (b)(3).

Dated:  April 15, 2011
New York, New York

EMERY CELLI BRINCKERHOFF
 & ABADY LLP

By: _____/s/_____
Matthew D. Brinckerhoff
Eisha Jain
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
212-763-5000

NEIGHBORHOOD ECONOMIC
DEVELOPMENT ADVOCACY PROJECT
(NEDAP)

By: _____/s/_____
Susan Shin
Claudia Wilner
Josh Zinner
176 Grand Street, Suite 300
New York, NY 10013
212-680-5100

MFY LEGAL SERVICES, INC.

By: _____/s/_____
Carolyn E. Coffey
Anamaria Segura
Of Counsel to Christopher D. Lamb, Esq.
299 Broadway, 4th Floor
New York, New York 10007
212-417-3701

*Attorneys for Plaintiffs*