UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
MONIQUE SYKES, REA VEERABADREN, KELVIN
PEREZ, and CLIFTON ARMOOGAM, et al.,

                           Plaintiffs,

             -against-

MEL S. HARRIS AND ASSOCIATES, LLC, et al.,

                           Defendants.

------------------------------------------------------------------------ X

Case No.:
09-CV-8486 (DC)

---

## MEL HARRIS DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

KAUFMAN DOLOWICH VOLUCK & GONZO LLP
Attorneys for Defendants
Mel Harris and Associates, LLC, Mel Harris,
Michael Young, Kerry Lutz, Todd Fabacher,
and David Waldman
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100

On the brief:
       Brett A. Scher, Esq.
       Yale Pollack, Esq.

## TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................. 3

POINT I PLAINTIFFS HAVE FAILED TO SATISFY THE
REQUIREMENTS OF FED. R. CIV. P. 23(a) .................................................................... 5

A.   Plaintiffs Cannot Sustain Their Burden Under Fed. R. Civ. P. 23(a) ...................... 5

    1.   Rule 23(a)(1) - Numerosity .......................................................................... 5

    2.   Rule 23(a)(2)/rule 23(a)(3) - Commonality and Typicality ............................ 6

        a.   Different Facts Surrounding the Underlying Debts ........................... 10

        b.   Different Facts Surrounding the Critical issue of "Sewer Service" ......... 13

        c.   Different Facts Surrounding Application of the Statute of
        Limitations and Equitable Tolling Warrant Denial of Class
        Certification ............................................................................. 16

    3.   Fed. R. Civ. P. 23(a)(4) - Adequacy of Representation ........................ 17

POINT II PLAINTIFFS' CLAIMS ARE NOT APPROPRIATE
FOR CERTIFICATION UNDER FED. R. CIV. P. 23(b)(2) .......................................... 18

POINT III PLAINTIFFS' CLAIMS FAIL TO MEET THE
REQUIREMENTS FOR CERTIFICATION UNDER FED. R. CIV. P. RULE 23(B)(3) ........... 19

A.   Common Questions of Law or Fact Do Not Predominate ..................................... 19

B.   A Class Action Is Not A Superior Method Of Adjudicating Plaintiffs' Claims .......... 22

POINT IV PLAINTIFFS' COUNSEL HAVE FAILED TO
ESTABLISH THAT THEY ARE QUALIFIED TO ACT AS CLASS COUNSEL ..................... 25

CONCLUSION ............................................................................................................... 25

i

## TABLE OF CASES AND AUTHORITIES

**Cases**

Agency for Health Care Admin. v. Assoc. Indus. of Fla., Inc.
678 So. 2d 1239 (Fla. 1996) ........................................................................................................... 23

Agostino v. Quest Diagnostics, Inc.
2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010) ........................................................ 8, 9, 10, 13

Amchem Prods., Inc. v. Windsor
521 U.S. 591 (1997) ..................................................................................................................... 3, 22

Andrews v. AT&T Co.
95 F.3d 1014  (11th Cir. 1996) ..................................................................................................... 23, 25

Barnes v. Am. Tobacco Co.
161 F.3d 127 (3d Cir. 1998) ........................................................................................................... 4

Benner v. Becton Dickinson & Co.
214 F.R.D. 157 (S.D.N.Y. 2003) .................................................................................................... 20

Broussard v. Meineke Disc. Muffler Shops, Inc.
155 F.3d 331 (4th Cir. 1998) ....................................................................................................... 16, 17

Caridad v. Metro N. Commuter R.R.
191 F.3d 283 (2d Cir. 1999) ........................................................................................................... 3

Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.
271 F.3d 374 (2d Cir. 2001) ........................................................................................................... 21

Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons, Inc.
502 F.3d 91 (2d Cir. 2007) ............................................................................................................. 20

Finch v. N.Y.S. Off. of Children & Family Servs.
252 F.R.D. 192 (S.D.N.Y. 2008) .................................................................................................... 4

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
903 F.2d 176 (2d Cir. 1990), *cert. denied*, 111 S. Ct. 675 (1991) .................................................. 7, 20

Gen. Tel. Co. v. Falcon,
 457 U.S. 147 (1982) ....................................................................................................................... 4

Hohider v. United Parcel Svc., Inc.
574 F.3d 169, 176 (3d Cir. 2009) ................................................................................................... 4

Honda Motor Co. v. Oberg
512 U.S. 415 (1994)............................................................................................................... 22

Huntley v. Law Office of Richard Clark, PLLC
262 F.R.D. 203 (E.D.N.Y. 2009)........................................................................................ 5, 6

Hydrogen Peroxide
552 F.3d 15 307 ......................................................................................................................4

In re Currency Conversion Fee Antitrust Litig.
230 F.R.D. 303(S.D.N.Y. 2004) ........................................................................................... 20

In re Hotel Tel. Charges
500 F.2d 86, 89-91 (9th Cir. 1974)....................................................................................... 23

In re Hydrogen Peroxide Antitrust Litig.
552 F.3d 305 (3rd Cir. 2009) ...................................................................................................4

In re IPO Sec. Litig.
471 F.3d 24 (2d Cir. 2006) .......................................................................................... 3, 4, 20

In re Merrill Lynch Ltd. P'ship Litig.
154 F.3d 56 (2d Cir. 1998) ................................................................................................... 17

In re Phenylpropanolamine Prods. Liab. Litig.
2003 U.S. Dist. LEXIS 22530 (W.D. Wash. Nov. 5, 2003) .................................................. 23

In re Repetitive Stress Injury Litig.
11 F.3d 368, 373 (2d Cir. 1993) ........................................................................................... 23

In re Rezulin Prods. Liab. Litig.
210 F.R.D. 61(S.D.N.Y. 2002)................................................................................................4

In re Visa Check/ Mastermoney Antitrust Litig.
280 F.3d 124(2d Cir. 2001) .................................................................................................. 20

J.H. Cohn & Co. v. American Appraisal Assoc., Inc.
628 f.2d 994, (7th Cir. 1980) ................................................................................................ 20

Jaroslawicz v. Cohen
12 A.D.3d 160, (1st Dept.  2004) .........................................................................................21

Jeffries v. Pension Trust Fund of the Pension, Hospitalization and
Benefit Plan of the Elec. Indus.
172 F. Supp.2d 389, 394 (S.D.N.Y. 2001) ..............................................................................5

Kottler v. Deutsche Bank AG
  2010 U.S. Dist. LEXIS 30590 (S.D.N.Y. Mar. 29, 2010) ........................................................ 3

Labbate-D'Alauro v. GC Servs., Ltd. Pshp.
  168 F.R.D. 451, (E.D.N.Y. 1996 .............................................................................................. 7

Lama Holding Co. v. Smith Barney Inc.
  88 N.Y.2d 413, (1996) ............................................................................................................. 21

Lewis Tree Serv., Inc. v. Lucent Techs., Inc.
  211 F.R.D. 228 (S.D.N.Y. 2002) ............................................................................................. 7

Lindsey v. Normet
  405 U.S. 56 (1972) .................................................................................................................... 22

Ludke v. Philip Morris Cos.
  2001 WL 1673791, *3 (Minn. Dist. Ct. Nov. 21, 2001) ......................................................... 23

Marisol A. v. Giuliani
  126 F.3d 372, 376 (2d Cir. 1997) ............................................................................................ 6

Martino v. McDonald's Sys., Inc.
  86 F.R.D. 145 (N.D. Ill. 1980) ................................................................................................. 13

Mayo v. Sears, Roebuck & Co.
  148 F.R.D. 576, 583 (S.D. Ohio 1993) .................................................................................... 24

McLaughlin v. Am. Tobacco Co.
  522 F.3d 215 (2d Cir. 2008) ..................................................................................................... 21

Nason v. Fisher
  36 A.D.3d 486, 487 (1st Dep't 2007) ....................................................................................... 21

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
  259 F.3d 154, 166 (3d Cir. 2001) .................................................................................. 4, 9, 13, 23

Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.
  213 F.R.D. 537(W.D. Mo. 2002) ............................................................................................. 13

Parker v. Time Warner Entm't Co.
  331 F.3d 13 (2d Cir. 2003) ....................................................................................................... 22

Perez v. Metabolife Int'l, Inc.
  218 F.R.D. 262(S.D. Fla. 2003) ............................................................................................... 23

Petrolito v. Arrow Financial Services, LLC
  221 F.R.D. 303(D. Conn. 2004) ............................................................................................... 18

Poulos v. Caesars World, Inc.
  379 F.3d 654 (9th Cir. 2004) ............................................................................................................ 21

Religious Tech. Ctr. v. Wollersheim
  796 F.2d 1076 (9th Cir. 1986) ......................................................................................................... 19

Sandwich Chef of Texas, Inc.
  319 f.3d 205 (5th Cir. 2003) ...................................................................................................... 20, 21

Scheidler v. Nat'l Org. for Women, Inc.
  537 U.S. 393 (203) (Nos. 01-1118,01-1119) ...................................................................................19

Sedima, S.P.R.L. v. Imrex Co.,
  741 F.2d 482, n.20 (2d Cir. 1984.................................................................................................. 18, 19

Smith v. Lyons, Doughty & Veldhuius, P.C.
  2008 U.S. Dist. LEXIS 56725 (D.N.J. July 23, 2008)............................................................................ 18

Sparkman v. Zwicker & Assocs., P.C.
  374 F. Supp. 2d 293n.2 (E.D.N.Y. 2005) ............................................................................................ 18

Stutman v. Chem. Bank
  95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000)............................................................................................. 21

Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.
  .546 F.3d 196 (2d Cir. 2008) ............................................................................................................. 5

United States v. Charmer Indus., Inc.
  1981 U.S. Dist. LEXIS 13534, at * 8 (E.D.N.Y. July 1, 1981)................................................................. 24

United States v. Veksler
  62 F.3d 544 (3rd Cir. 1995)................................................................................................................ 9

Vega v. Credit Bureau Enterprises
  2005 U.S. Dist. LEXIS 4927, at *14 (E.D.N.Y. Mar. 29, 2005)............................................................. 18

Vengurlekar v. HSBC Bank
  2007 U.S. Dist. LEXIS 37521, at *9 (S.D.N.Y. May 22, 2007) .......................................................... 5, 7

Vengurlekar v. Silverline Technologies, Ltd.
  220 F.R.D. 222, 227 (S.D.N.Y. 2003)................................................................................................... 5

.Windham v. Am. Brands, Inc.
  565 F.2d 59, 68 (4th Cir. 1977) ....................................................................................................... 23

iv

Wright v. Giuliani
2000 U.S. Dist. LEXIS 8322, at *29 (S.D.N.Y. June 14, 2000) ................................................................ 4

## Statutes

### Federal

15 U.S.C. § 1692k ............................................................................................................................ 17, 24

18 U.S.C. §1964(c) .......................................................................................................................... 18, 24

28 U.S.C. § 2072(b) ............................................................................................................................... 22

Fed. R. Civ. P. 23 .......................................................................................................................... passim

### State

22 N.Y.C.R.R. §208.6(h) ............................................................................................................ 15, 20, 22

N.Y. GBL §349 ................................................................................................................................. 1, 21

N.Y. Judiciary Law §487 ......................................................................................................... 1, 3, 21, 23, 24

## PRELIMINARY STATEMENT

Defendants Mel Harris and Associates, LLC, Mel Harris, Michael Young, Kerry Lutz, Todd Fabacher, and David Waldman (collectively "MSH" or the "Mel Harris Defendants") respectfully submit this Memorandum of Law and the accompanying Declaration of Brett A. Scher, dated June 13, 2011 ("Scher Dec."), in opposition to the motion for class certification filed by representative plaintiffs, Monique Sykes, Rea Veerabadren, Kelvin Perez, and Clifton Armoogam.  In this putative class action, Plaintiffs allege that MSH, the Samserv Defendants and the Leucadia Defendants, in violation of RICO, FDCPA, N.Y. GBL §349 and N.Y. Judiciary Law §487, conspired to purportedly: (a) purchase "bad" debt portfolios; (b) commence lawsuits seeking to collect these "bad" debts allegedly having no ability to secure "documentation" of the debts; (c) have Samserv engage in "sewer service" so that Plaintiffs would not have any notice of the lawsuits; (d) submit "false and misleading" affidavits of merit to the courts to hide the fact that they could not secure "documentation" of the debts; and (e) obtain default judgments against Plaintiffs.  In their motion for class certification, Plaintiffs seek to certify a class of "all persons who have been sued by [MSH], as counsel for Leucadia Defendants, in actions commenced in New York City Civil Court and where a default judgment has been obtained, or will be sought."

By seeking class certification under both Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek injunctive and monetary relief purportedly on behalf of approximately 120,000 plaintiffs.  Incredibly, Plaintiffs do not even attempt to limit their class to individuals that purportedly were served by Samserv, and instead seek to include every defendant in a lawsuit commenced by MSH since as early as 2006. Plaintiffs base their numerosity argument on a paralegal's cursory review of cases listed on "eCourts," and this paralegal's assumption that every single person sued by MSH was the victim of the alleged conspiracy asserted in the complaint (without even bothering to review any documents in the court files).   The numerosity argument is probably the least flawed argument in Plaintiffs' motion.

court files). The numerosity argument is probably the least flawed argument in Plaintiffs' motion. Plaintiffs' class certification motion also fails to establish both the commonality and typicality requirements under Fed. R. Civ. P. 23(a), as well as the predominance and superiority aspects of Fed. R. Civ. P. 23(b)(3). As established herein, the claims alleged in the Complaint not only lack merit, but even if they were true, do not lend themselves to class certification because each of the claims would require a mini-trial focusing on the issues of whether Plaintiffs owed the debts at issue, and whether Plaintiffs were not only "properly" served but were the victims of "sewer service." In other words, a full-blown traverse hearing is required for every one of the plaintiffs' proposed 100,000+ class members. To proceed otherwise would allow Plaintiffs to summarily deny MSH its due process rights by making a wholesale declaration that service was invalid in 100,000+ lawsuits without ever looking to the facts of those cases. No court has ever certified a class as outlandish as Plaintiffs propose to do in this case and this Court should deny class certification without hesitation.

The reality is that Plaintiffs trumped up a meritless FDCPA claim – that MSH, a law firm, commenced debt collection lawsuits without sufficient "evidence" of the debt at issue (a claim that has been repeatedly rejected by the courts)[1] with accusations of a massive RICO conspiracy. As part of the conspiracy, Plaintiffs contend that all of the defendants collectively agreed to buy "bad" debt and sue individuals on that debt, utilize "sewer service" and "false and misleading" affidavits to keep the individuals from responding to the complaint, hoping to ultimately secure a default judgment against those individuals. Ironically, in seeking class certification, Plaintiffs ask the Court to ignore their lavish conspiracy theories and ignore the multitude of factual and legal issues raised with respect to determining whether each individual Plaintiff was actually a victim of this concocted scheme. Simply put, Plaintiffs' conclusory assertions that the case is ripe for class certification, without any substantive

---

[1]     In fact, Plaintiffs' counsels' own lobbying documents have repeatedly acknowledged that it is not a violation of the FDCPA for an attorney to bring lawsuits without "evidence" of the debt. See Exhibit Q.

2

ways, arguing the existence of an elaborate RICO conspiracy involving the submission of alleged "false and misleading" affidavits and the use of "sewer service" on 100,000+ cases (not to mention the alleged 100,000+ violations of N.Y. Judiciary Law §487 – a criminal offense), and then ignoring the very individualized factual analysis inherent in proving their elaborate claims. Plaintiffs' complaint and the allegations contained therein, even if proven true, provide the exact reason why class certification is inappropriate and must be denied.

## ARGUMENT[2]

Plaintiffs seek to certify a class that consists of "all persons who have been or will be sued by the Mel Harris Defendants, as counsel for the Leucadia Defendants, in actions commenced in New York City Civil Court and where a default judgment has been obtained, or will be sought." Class Cert. Mot., p. 1. Plaintiffs offer no time frame for their class, nor do they even attempt to limit their class to those putative plaintiffs purportedly served by Samserv, the only process server named as a defendant in this action. In moving for class certification, plaintiffs bear the burden of satisfying each requirement of Fed. R. Civ. P. 23. See Caridad v. Metro N. Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999). First, the four "prerequisites" of Rule 23(a) must be satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class. Fed. R. Civ. P. 23(a); see In re IPO Sec. Litig., 471 F.3d 24, 32 (2d Cir. 2006); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997); Kottler v. Deutsche Bank AG, 2010 U.S. Dist. LEXIS 30590, at *3-4 (S.D.N.Y. Mar. 29, 2010). "The Second Circuit has cautioned against certifying over-broad classes, even under Rule 23(b)(2), which ordinarily requires a less precise class definition." Wright v. Giuliani, 2000 U.S.

---

[2] Pursuant to the Court's request that defendants avoid overlap on briefing this class certification motion, MSH hereby adopts the arguments set forth in the briefs of the Samserv Defendants and the Leucadia Defendants.

Dist. LEXIS 8322, at *29 (S.D.N.Y. June 14, 2000); see Finch v. N.Y.S. Off. of Children & Family Servs., 252 F.R.D. 192, 198 (S.D.N.Y. 2008).

A court cannot satisfy itself that a class meets Rule 23's standard in some abstract, theoretical way; it must conduct a "rigorous analysis" based on the elements of the claims the plaintiff seeks to pursue in a representative capacity on behalf of the class. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3rd Cir. 2009); see also Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). "A class certification decision requires a thorough examination of the factual and legal allegations." Id. (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001)). The Rule 23 analysis indeed "may include a preliminary inquiry into the merits" insofar as the merits of the claim may be relevant to the class certification analysis. Hohider v. United Parcel Svc., Inc., 574 F.3d 169, 176 (3d Cir. 2009); see also Hydrogen Peroxide, 552 F.3d at 307. To certify a claim under Rule 23(b)(3), plaintiffs must also show that common questions "predominate," and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). For certification under Rule 23(b)(2), the "cohesiveness" requirement serves a similar purpose to predominance and is even more stringent. See, e.g., Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998) (a "court should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it should under subsection 23(b)(3)"); In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 75 (S.D.N.Y. 2002) (same).

In re IPO, the Second Circuit concluded that a class can be certified only after determination that each of the Rule 23 requirements has been met, and such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established, and is persuaded to rule, based on the relevant facts and applicable legal standard, that the requirement is met. 471 F.3d at 41. Thus, a district court must now "make any disputed factual calls that are relevant to

4

certification, and must make merits determinations to the extent they relate to Rule 23 requirements."

Vengurlekar v. HSBC Bank, 2007 U.S. Dist. LEXIS 37521, at *9 (S.D.N.Y. May 22, 2007). As

discussed below, class certification is not appropriate in this case and the motion must be denied.

**POINT I**
**PLAINTIFFS HAVE FAILED TO SATISFY**
**THE REQUIREMENTS OF FED. R. CIV. P. 23(a)**

**A.**    **Plaintiffs Cannot Sustain Their Burden Under Fed. R. Civ. P. 23(a)**

Fed. R. Civ. P. 23(a) requires that plaintiffs establish by a preponderance of the evidence: (1)

numerosity, (2) commonality, (3) typicality, and (4) adequate representation.   Teamsters Local 445

Freight Division Pension Fund v. Bombardier Inc., .546 F.3d 196 (2d Cir. 2008) (emphasis added).

**1.**    **Rule 23(a)(1) - Numerosity**

While the precise number of class members does not need to be proven with definite certainty,

the Court cannot find numerosity that is based on "pure speculation without any factual support."

Jeffries v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus., 172

F. Supp.2d 389, 394 (S.D.N.Y. 2001).   In Huntley v. Law Office of Richard Clark, PLLC, 262 F.R.D.

203, 205 (E.D.N.Y. 2009), the court stated the following:

> Here, the Plaintiff cannot establish the numerosity requirement on the
> strength of the bare and speculative allegation that, because Bratton
> made a threatening phone call to the Plaintiff, she must have made
> similar threatening phone calls to other consumers. See Demarco v.
> Edens, 390 F.2d 836, 845 (2d Cir. 1968) (denying class certification
> where the evidence of numerosity was purely speculative); Reese v.
> Arrow Fin. Servs., LLC, 202 F.R.D. 83, 90-91 (D. Conn. 2001) (finding
> that the numerosity requirement was not met by speculative assertion
> about the number of class members). With the Plaintiff having failed to
> establish the numerosity requirement, the Court need not analyze
> whether the other requirements of Fed. R. Civ. P. 23 have been met.
> Accordingly, the Plaintiff's motion for class certification is denied.

Id. Plaintiffs' proposed class "consists of many tens of thousands of persons." Pl. Class. Cert. Motion,

p. 11.  Their "research" supporting numerosity is based upon a biased and extremely flawed "study"

5

conducted by a paralegal of one of the Plaintiffs' law firms. See Declaration of Herman De Jesus, dated April 15, 2011 ("De Jesus Dec."). Mr. De Jesus claims that he determined that the "LR Credit entities filed 124,838 cases in the New York City Civil Court from 2006 through November 2009. . . ." De Jesus Dec., ¶4. Incredibly, Mr. De Jesus could not be bothered to review any of the 124,838 cases – admitting that he "could not determine the exact number of default judgments entered in these cases" – a task easily accomplished had he bothered to make one trip to the court house. See De Jesus Dec., ¶5. Plaintiffs' refusal to conduct any type of review of the cases at issue to determine whether any judgments were under similar circumstances as the representative plaintiffs, including whether the putative plaintiffs in those actions were served by Samserv, is a product of Plaintiffs' continued efforts to create a class that is simply untenable under Fed. R. Civ. P. 23. Mr. De Jesus' observation that "the vast majority of cases were marked as 'disposed' with no appearance by the defendant, indicating a high likelihood that a default judgment was entered," has no scientific or legal credibility. See De Jesus Dec., ¶5. The word "disposed" in the New York Court system can mean many things including that the case was voluntarily discontinued, settled, judgment entered on the merits, or a default judgment. Similar to Huntley, Plaintiffs' conclusory assertion that the defendants allegedly conspired to engage in "sewer service" on the four representative cases (an allegation that is flatly disproved in this motion), 120,000 other cases must have had "sewer service," must be rejected.

### 2.    Rule 23(a)(2)/Rule 23(a)(3) - Commonality and Typicality

As is well recognized, "[t]he commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (citing Gen. Tel. Co., 457 U.S. at 157 n. 13 (1982)). Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must "present evidence that a common factual nexus exists among the purported class."  See Lewis Tree Serv., Inc. v. Lucent Techs., Inc., 211 F.R.D. 228, 231-32 (S.D.N.Y. 2002). "The critical

inquiry is whether the common questions are at the 'core' of the cause of action alleged." Labbate-D'Alauro v. GC Servs., Ltd. Pshp., 168 F.R.D. 451, 456 (E.D.N.Y. 1996). Typicality is met when the named plaintiff's claims and each class member's claims "arise from the same course of events and each class member's makes similar legal arguments to prove defendant's liability." Vengurlekar v. Silverline Technologies, Ltd., 220 F.R.D. 222, 227 (S.D.N.Y. 2003). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).

In the case at bar, Plaintiffs contend that the commonality and typicality requirements are easily met – yet, they fail to cite to a single FDCPA or RICO case where class certification was granted under circumstances even remotely similar to this action. In support of certification, Plaintiffs list "some questions of law and fact common to all class members," which they contend militate in favor of class certification.[3] These "questions of law and fact" purposely gloss over the key allegations in the Third Amended Complaint ("TAC") and the crux of Plaintiffs' claims. Knowing that the very allegations that they have relied upon to get this far in this litigation are the exact reason why class certification cannot be granted, Plaintiffs ignore the following critical issues of law and fact, each of which will require individualized proof:

---

[3]    As discussed herein, MSH disputes the validity of this list of purported common law and facts. Nonetheless, even a cursory review of the Plaintiffs' list demonstrates exactly why Plaintiffs have failed to establish both the commonality and typicality components of class certification. For example, Plaintiffs claim that there are common issues of law and fact surrounding "identifying the point in time when a claim accrues under the FDCPA." Plaintiffs' Class Cert. Motion, p. 12. This is a perfect example of an issue of law and fact that will be unique to each Plaintiff as demonstrated just by the briefing on the motion to dismiss in this action, wherein Plaintiffs invoked equitable tolling of the statute of limitations on their FDCPA claims. This Court expressly recognized the factual issues inherent in such an analysis when it held that the FDCPA claims of several plaintiffs would be time-barred absent the application of equitable tolling on a case-by-case basis. Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413 (S.D.N.Y. 2010). In fact, the Court rejected one of the representative plaintiff's equitable tolling argument based upon an analysis of that plaintiff's failure to use "due diligence" in commencing a timely FDCPA claim. Likewise, Plaintiffs' contention that the issues of whether: (a) "Defendants' affidavits of service were false and misleading"; (b) "Defendants' affidavits of merit were false and misleading"; and (c) "Defendants' attorney affirmations were "false and misleading," are somehow "common" and appropriate for class resolution is refuted for the reasons set forth below.

(a)  Did each Plaintiff owe the debt at issue (i.e., was the debt correct as stated in the affidavit of merit or was the debt "of dubious merit" as Plaintiffs contend)? (TAC, ¶110)

.(b)  Was each Plaintiff properly served with a summons and complaint by Samserv? (TAC, ¶¶117-119, 138-140, 169-171, and 201-203)

(c)  If a particular Plaintiff was not properly served by Samserv, did MSH have any knowledge that they were not properly served? (TAC, ¶¶122, 143, 174, and 206)

(d)  Did Samserv engage in "sewer service" with respect to "tens of thousands" of civil lawsuits as Plaintiffs contend? (TAC, ¶93)

(e)  If the prior allegation were true, did MSH know/condone "sewer service" by Samserv and utilize affidavits of service from Samserv that MSH knew was "highly likely to be false"? (TAC, ¶92)

(f)  Did the Defendants submit "deceptive and misleading" affidavits of merit to courts, as Plaintiffs allege, to hide the fact that "[MSH] and Leucadia Defendants have not obtained documentation from the original creditor, nor are they able to or intending to obtain such documentation in the vast majority, if not all cases."? (TAC, ¶108)

(g)  Did any of Plaintiffs receive the supplemental mailings of the summons and complaint from MSH? (TAC, ¶¶123, 144, 175, and 207)

(h)  Did any of the Plaintiffs receive the mandatory supplemental mailing of the summons and complaint in their actions from the NYC Civil Court Clerk (providing them with the requisite notice of the claim) and, if not, why? (TAC, ¶85)

(i)  Was a default judgment entered the Plaintiff?

(j)  Was the Plaintiff subjected to garnishment/restraint of bank account (applicable to Veerabadren and Perez but not Sykes or Armoogam)? (TAC, ¶¶158, 182)

(k)  Did the Plaintiff suffer any damages as a result of having the bank account restrained (applicable to Veerabadren and Perez only)? (TAC, ¶¶163, 185)

(l)  Was the Plaintiff's judgment reported to any of the credit reporting agencies (applicable to Perez only)? (TAC, ¶186)

(m)  Did any negative credit reporting proximately cause an individual Plaintiff damage (applicable to Perez only)? (TAC, ¶¶ 187-189)

Courts have repeatedly rejected aggregate proceedings -- similar to the one proposed here -- that would dispense with necessary individual proof and violate defendants' constitutional rights. The case of Agostino v. Quest Diagnostics, Inc., 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010), is particularly instructive. In Agostino, the plaintiffs sought to certify a RICO class action involving claims that Quest Diagnostics systematically overbilled patients. In Agostino, the court noted that "[p]roving the underlying acts of racketeering requires Plaintiffs to demonstrate that [the defendant] participated in a scheme with specific intent to defraud." Id. at *42 (citing United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995) (establishing mail fraud violation requires proof of a participation in a

scheme with specific intent to defraud); United States v. Veksler, 62 F.3d 544 (3ʳᵈ Cir. 1995) (establishing a wire fraud violation requires proof of a participation in a scheme with specific intent to defraud). The court stated that it "may deny certification where proof of an essential element of a cause of action requires individualized inquiry into the facts underlying the plaintiff's claim." Id. at *43 (*citing* Newton, 259 F.3d at 172). Because scienter was an element of the Agostino plaintiffs' prima facie RICO claim, the court held that the plaintiffs could not satisfy their burden of establishing predominance in their class certification motion.

In Agostino, the court reasoned that:

> The need to sort out situations in which [the defendant] billing was proper according to one EOB but 'improper' according to another, whether issued by the same insurer after re-adjudicating a claim or by a secondary insurer reaching its own determination of patient responsibility, negates the factual commonality which Plaintiffs believe exists across the group of customers allegedly defrauded by [the defendant's] post-EOB billing. The fact-in-common that must underpin Plaintiffs' class-wide theory of scienter, that is, that all instances of billing deviating from an EOB amount to improper overbilling, is simply not evident.

Id. at *44-45. In concluding its analysis of the plaintiffs' RICO class claim, the Agostino court stated that:

> For the reasons discussed, if the class definition were viewed through the lens of the RICO claim, determining membership in the class would depend upon a determination of victimization, which would depend upon separate adjudications as to the circumstances of each customer's billing transaction. "[T]he ascertainability of a class depends on whether there will be a definitive membership in the class once judgment is rendered." In re Methyl Tertiary Butyl Ether (MBTE) Products Liability Litig., 241 F.R.D. 185, 196 (S.D.N.Y. 2007). A hypothetical judgment in favor of Plaintiffs on the RICO claim would not illuminate class membership in the slightest. **A transaction by transaction inquiry would still need to be performed as to all customers who paid [the defendant] more than the EOB amount to determine whether a customer had been defrauded, that is, whether [the defendant] acted with scienter as to him or her.**
>
>         \*      \*      \*

9

> As the Court's example illustrates, however, membership of any particular individual in the [proposed class] would require a determination on the merits of the RICO claim.

Id. at *50-51 (emphasis supplied). The case at bar is analogous to the Agostino case because, as demonstrated below, this Court will be required to make a transaction by transaction inquiry with respect to each purported plaintiff with respect to two key components of the claims asserted in the TAC – (1) the facts surrounding the validity of the alleged debt that the Mel Harris Defendants sued upon; and (2) the facts surrounding the alleged "sewer service" with respect to each lawsuit commenced.

### a.    Different Facts Surrounding the Underlying Debts

At the crux of Plaintiffs' class action (and completely ignored in their motion) are their contentions that: (a) the debts which MSH commenced suit upon were "of dubious merit" (TAC, ¶110); (b) MSH had the Samserv Defendants engage in "sewer service" to prevent Plaintiffs from challenging these "dubious" debts;[4] and (c) MSH submitted "deceptive and misleading" affidavits of merit in those lawsuits to hide the fact that they had no documentation and could not obtain documentation to support the debt being sued upon. (TAC, ¶108).

The allegations in the TAC, Plaintiffs' respective depositions, as well as the documents produced in discovery, easily establish the vastly divergent facts concerning each plaintiff – defeating any logical claim of commonality or typicality. For example, the TAC alleges that each of Plaintiffs' alleged debts was "dubious." ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Likewise,

Veerabadren acknowledged that she had an account with Sears (the original creditor on the debt at

---

[4]    The issues surrounding "sewer service" are discussed in the next section.

issue) and defaulted on that debt. (TAC, ¶153). ███████████████████████████

████████████████████████████████████████████████ Further

demonstrating the unique factual issues inherent in this case, Veerabadren claims that she was subject

to collection on the same Sears debt from two debt collectors at the same time. (TAC, ¶¶154-155).

Thus, Plaintiffs' own admissions confirm that on two out of the four representative plaintiffs' claims

there are significant factual issues as to whether MSH was collecting on "dubious" debts. With respect

to the remaining two debts, Perez claims that the debt has nothing to do with him (and is apparently a

case of mistaken identity) (TAC, ¶167), ███████████████████████████████████

█████████████████████████████████ Other "individualized" facts that will

dominate the case include issues like Armoogam's questionable identity fraud defense. ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

        More importantly, Plaintiffs contend in the TAC that MSH submitted false affidavits of merit,

encouraged Samserv's use of "sewer service," and purposely failed to mail supplemental mailings to

Plaintiffs (as part of the alleged RICO conspiracy as well as violations of the FDCPA, N.Y. GBL and

NY Judiciary Law) because MSH could not obtain any documentation of the debts at issue (and, thus,

would not be able to support the claim if challenged by the Plaintiffs). Plaintiffs expressly base their

class action complaint on affidavits of merit submitted by MSH with the motions for default judgments

against Plaintiffs in the debt collection actions. For example, with respect to Armoogam, Plaintiffs

allege:

> "In the affidavit [of merit], Defendant Fabacher claims that he is 'fully and personally
> familiar with, and [has] personal knowledge of the facts and proceedings relating to the
> within action. Upon information and belief, this claim is false.
>
> In the affidavit, Defendant Fabacher claims that he maintains "the daily records and
> accounts in the regular course of business, including records maintained by and
> obtained from plaintiff's assignor."
>
> This claim is misleading, as it suggests that Defendant Fabacher and the other
> Defendants are in possession of documentation obtained from Chase Bank and that
> Defendants have evidence that Mr. Armoogam owes this debt. Upon information and
> belief, Defendant have no such evidence and have information about this debt other
> than the "media" which is inadmissible in court."
>
> On September 15, 2010, the court entered a default judgment against Mr. Armoogam.
> In doing so, the court relied upon the fraudulent affidavit of service and affidavit of
> merit submitted to the court by Defendants."

TAC, ¶¶210-213.

Contrary to Plaintiffs' allegation, the affidavit of merit is not misleading. In fact, the only thing

that is "false and misleading" is Plaintiffs' deceptive misquoting of the affidavit of merit in the TAC.[5]

In direct contradiction to Plaintiffs' allegations (and in a substantial blow to the very crux of their

claim), MSH did have access to and could obtain evidence of the Plaintiffs' debt (i.e., the physical

---

[5]     The Affidavit of Merit actually reads, in pertinent part, as follows:

**"I am the authorized and designated custodian of records for the plaintiff [LR Credit 21, LLC] in the State of NY,
that I maintain the daily records and accounts in the regular course of business, including records maintained by
and obtained from plaintiff's assignor, which were made and maintained in the regular course of business and that
I am thereby fully and personally familiar with, and have personal knowledge the facts and proceedings relating to
the within action.**

**That LR CREDIT 21, LLC [plaintiff] is a LIMITED LIABILITY COMPANY. LR CREDIT 21, LLC is the
assignee and purchaser of Account Num #4266841081400945, owed to CHASE BANK USA NA  As such LR
CREDIT 21, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect
same."**

See Exhibit I. Moreover, Plaintiffs' complaint ignores the fact that the Affidavit of Merit submitted in Armoogam's case
was accompanied by the very documentation required by the Civil Court Of The City Of New York Directives and
Procedures DRP-182, Default Judgments on Purchased Debt, which became effective on May 13, 2009. See Exhibit J.

credit card statements establishing the debt due and owing). (See Exhibits G and H). Thus, the first factual analysis that the Court will need to undertake with respect to each plaintiff's claim that the debts were "dubious" and that MSH condoned "sewer service" because they could not support the claimed debt with any documentation is meritless.[6]

Likewise, the fact that Plaintiffs now admit that they never even reviewed the affidavits of merit before the entry of judgment defeats their claims under the FDCPA. ████████████████ ████████████████████████████████████████ Plaintiffs' admission that they were not deceived by the affidavit and reliance on an assertion that the underlying courts may have been deceived by the affidavit of merits (something that Plaintiffs have yet to substantiate) is fatally flawed.[7] The individualized review inherent in establishing "reliance" on the purported affidavits of merit establishes exactly why Plaintiffs' attempt to "ram through" a class runs afoul of Rule 23. Just like the Agostino case, "determining membership in the class would depend upon a determination of victimization, which would depend upon separate adjudications as to the circumstances of each customer's billing transaction." Agostino, 2010 U.S. Dist. LEXIS 135310 at *50.

### b.   Different Facts Surrounding the Critical Issue of "Sewer Service"

Courts consistently reject certification where there are individual issues relating to whether each class member suffered an injury. See, e.g., Newton, 259 F.3d at 187; Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 213 F.R.D. 537, 547 (W.D. Mo. 2002); Martino v. McDonald's Sys., Inc., 86 F.R.D. 145, 147 (N.D. Ill. 1980). More important than the issues regarding the factual issues with respect to the alleged debt are the highly unique factual issues pertaining to the alleged

---

[6]     MSH by no way concedes that Plaintiffs' argument that "evidence" of the debt was required before commencing suit or entering a default judgment is legally correct. In fact, Plaintiffs have failed to produce anything establishing that the law in New York required a debt collection attorney to possess documentary proof before entering a default judgment.

[7]     See O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 944 ("Because nothing in the Act's text extends its protections to anyone but consumers and those who have a special relationship with the consumer, we hold that the Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge.").

"sewer service" at the heart of this case. Plaintiffs' class certification motion glosses over the fact that by certifying a class of 120,000 individuals –without even limiting the class size to those individuals served by Samserv – Plaintiffs are asking the Court to summarily determine that <u>every</u> judgment obtained by MSH since 2006 was a product of "sewer service." The clear denial of due process to MSH by making such a sweeping determination – based upon the claims of four individuals – should be readily apparent.

There are a multitude of factual issues with respect to service upon each of the four representative plaintiffs which require denial of the motion. For example, Sykes and Veerabadren admit that they resided at the place where the affidavit of service states they were served by Samserv with the process server leaving the papers with someone of suitable age and discretion (TAC ¶¶119, 140), while the other two (Perez and Armoogam) deny living at the residence at which service was effectuated. (TAC, ¶¶171, 203). With respect to both Sykes and Veerabadren, they initially claimed would have definitively been at home at the time of service (and, thus, disputed service was properly effectuated), ███████████████████████████████████████████████████████████

███████████████████████████████████████████ (<u>Compare</u> TAC, ¶¶ 119(c),

140(c) <u>with</u> ██████████████████████████ Thus, their claims of "sewer service" have no merit (and, at a minimum, will be the subject of intense factual dispute).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

There is a meta-data encrypted photograph confirming the process server's presence at Armoogam's sister's residence at the exact time of service – June 14, 2010 at 8:24 p.m. – refuting any claim of "sewer service." Exhibit K. W█████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ Thus, neither Perez

nor Armoogam can dispute whether someone was served at the address on the affidavit of service and,

as a result, at worst, the best they could argue is that they were not <u>properly</u> served. Their claims do

not support a claim of "sewer service," further establishing the lack of merit to Plaintiffs' entire claim

and, at a minimum, a lack of a preponderance of evidence.

In addition to issues surrounding service of the summons and complaint, Sykes and

Veerabadren also claim that they did not receive any of the supplemental mailings sent by MSH

pursuant CPLR 3215 as well as additional correspondence attempting to place the plaintiffs on notice

of the claim against them.  <u>See</u> Exhibits M and N.[8] ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Raising another set of factual issues that will have to be determined on a case by case basis is

the fact that every putative class member who was served with a complaint after January 1, 2009 –

after the clerks of the New York City Courts took over the responsibility for providing supplemental

notice to defendants before a default would be entered – will have to disprove receipt of the court

clerk's mailing to substantiate their claims of being injured by "sewer service."  <u>See</u> 22 N.Y.C.R.R.

208.6(h).  As Armoogam's claim was commenced after January 1, 2009 (TAC, ¶197), his (and his

sister's) denial of receipt of the mailing from the court is yet another factual issue that will dominate

the class proceedings.  Along the same lines, each plaintiff who would be part of this purported class

(and was served after January 1, 2009) would have to be examined as to whether they were: (a)

---

[8]     As further proof of the divergent facts, one of the plaintiffs listed in the "representative facts" section of the complaint actually acknowledges that she received a copy of the complaint, which was mailed to her by MSH. TAC ¶245. This admission vitiates Plaintiffs' entire claim – that MSH purposely failed to give notice to debtors prior to taking defaults against them.

15

claiming lack of service; and (b) failed to receive the supplemental mailing from the court clerk before a default judgment was entered against them.



Thus, she has yet another unique factual issue – a pattern of defaulting on debt and escaping liability by claiming lack of service.

Individual issues dominate in this case – there is no commonality or typicality. Defendants would be denied their due process rights if the Court was to make a wholesale declaration that every debtor who received a default judgment against him or her in an action commenced by MSH was the victim of "sewer service." This is precisely what Plaintiffs are asking this Court to do by certifying a class. At a minimum, a traverse hearing is necessary on each and every one of the cases to determine whether or not the debtors were indeed served with process. In conclusion, the four representative plaintiffs in this case each have vastly divergent issues regarding service of the summons and complaint in the underlying debt collection actions and their purported notice of the lawsuits against them. Whether there was "sewer service" in every case will require a full traverse hearing.[9]

### c. Different Facts Surrounding Application of the Statute of Limitations and Equitable Tolling Warrant Denial of Class Certification

In addition to the issues regarding the merits of the debt at issue and service of process, another factually based issue requiring individual consideration results from Plaintiffs' invocation of the equitable tolling doctrine to toll the statute of limitations on their FDCPA and RICO claims. See, e.g.,

---

[9] A pre-trial hearing used to determine whether the defendants in that action were properly served with process so as to invoke a court's jurisdiction. See, e.g., Rey v. TVS Automotive, Inc., 128 Misc. 2d 1015 (NYC Civ. Ct. N.Y. Co. 1985).

Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998) (defenses such as statute of limitations should be considered in deciding certification). Plaintiffs' FDCPA claims were required to be brought "within one year from the date on which the violation occur[ed]." 15 U.S.C. § 1692k(d). Their RICO claims are subject to a four-year statute of limitations that begins to run "on the date that plaintiff discovers or should have discovered that injury." In re Merrill Lynch Ltd. P'ship Litig., 154 F.3d 56, 60 (2d Cir. 1998). As discussed above, Plaintiffs' invocation of the equitable tolling doctrine raises yet another factual and legal issue that will require a summary adjudication on each and every putative class member's claim. See Point I (n. 4), *supra*.

### 3. Fed. R. Civ. P. 23(a)(4) - Adequacy of Representation

Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Each of the purported class representatives have provided substantial reasons as to why they are no qualified to act as class representatives.

Likewise, Sykes failed to appear for a trial in another case, resulting in a default judgment against her. See Exhibit P.

17

## POINT II
## PLAINTIFFS' CLAIMS ARE NOT APPROPRIATE FOR
## CERTIFICATION UNDER FED. R. CIV. P. 23(b)(2)

Plaintiffs purport to seek class-wide injunctive relief under Fed. Civ. P. 23(b)(2). It has been long held that when individualized inquiries are central to the case, a class action is extremely difficult to manage. See Sparkman v. Zwicker & Assocs., P.C., 374 F. Supp. 2d 293, 298 n.2 (E.D.N.Y. 2005) (the court, in discussing the type of relief available in a FDCPA action, stated, "the FDCPA contains no express provision for injunctive or declaratory relief in private actions, although it does authorize such relief in enforcement actions brought by the Federal Trade Commission."). Indeed, numerous courts have held that certification under Rule 23(b)(2) is not appropriate in FDCPA cases. See Vega v. Credit Bureau Enterprises, 2005 U.S. Dist. LEXIS 4927, at *14 (E.D.N.Y. Mar. 29, 2005) (noting that certification under 23(b)(2) is inappropriate in a FDCPA case because "although plaintiff additionally seeks declaratory and injunctive relief, plaintiff's eligibility for statutory damages comes directly from the FDCPA and not merely from a declaration that the [defendant's] letter violated the FDCPA"); Petrolito v. Arrow Financial Services, LLC, 221 F.R.D. 303, 312 (D. Conn. 2004) (denying plaintiff's motion for class certification under Rule 23(b)(2), and noting that practically speaking, FDCPA cases do not primarily concern declaratory or injunctive relief, because "even if the court were to issue a declaratory ruling that [the defendant] violated the FDCPA by its debt collection practices, that declaration would not have the practical effect of an injunction, or correspond to injunctive relief."); Smith v. Lyons, Doughty & Veldhuius, P.C., 2008 U.S. Dist. LEXIS 56725 (D.N.J. July 23, 2008) (dismissing class claim because injunctive and declaratory relief is not available under the FDCPA).

Likewise, as the Second Circuit has noted, RICO's express provision for a private treble damages remedy in 18 U.S.C. §1964(c), but not for injunctive relief, precludes a private remedy for injunctive relief under section 1964(a). See Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482, 489 n.20 (2d Cir. 1984) ("It thus seems altogether likely that §1964(c) as it now stands was not intended to provide

18

private parties injunctive relief."), *rev'd on other grounds*, 473 U.S. 479 (1985); see also Religious

Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1086 (9th Cir. 1986) ("Congress was repeatedly presented

with the opportunity expressly to include a provision permitting private plaintiffs to secure injunctive

relief. On each occasion, Congress rejected the addition of any such provision."). Consistent with this

authority, the U.S. Government has agreed that RICO's equitable remedies are not available to private

parties, criticizing the few courts that have ruled to the contrary as "flawed":

> By empowering the Attorney General alone to institute proceedings
> "under this section," Congress signaled its intent that the district court's
> equitable jurisdiction under Section 1964(a) must be invoked by the
> Attorney General. . . . Under Section 1964(a) and (b), therefore, the sole
> authority to seek final and interim injunctive relief against racketeering
> activities and enterprises is given to the Attorney General.

See Brief for the United States as Amicus Curiae at 6-8, Scheidler v. Nat'l Org. for Women, Inc., 537

U.S. 393 (2003) (Nos. 01-1118, 01-1119).[10] Not surprisingly, Plaintiffs have not cited any cases where

a court in the Second Circuit has granted 23(b)(2) class certification in FDCPA or a RICO cases.

## POINT III
## PLAINTIFFS' CLAIMS FAIL TO MEET THE REQUIREMENTS FOR
## CERTIFIFCATION UNDER FED. R. CIV. P. RULE 23(B)(3)

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the

Rule 23(a) prerequisites: (1) common questions must "predominate over any questions affecting only

individuals members"; and (b) class resolution must be "superior to other available methods for the fair

and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3).

## A.     Common Questions of Law or Fact Do Not Predominate

Common questions of law and fact predominate when issues applicable to the class as a whole

are subject to generalized proof and predominate over issues that are subject to individualized proof.

See Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 107-08 (2d Cir. 2007);

---

[10] http://www.usdoj.gov/osg/briefs/2002/3mer /1ami/2001-1118.mer.ami.pdf. n76

In re Visa Check/ Mastermoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001), *abrogated on other grounds by* In re IPO. To satisfy the predominance requirement, plaintiffs "must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." In re Visa Check, 280 F.3d at 136 (2d Cir. 2001) (internal quotations and citation omitted). "This requirement is more demanding than the commonality requirement under Rule 23(a); thus a court must deny certification where individual issues of fact abound." In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303, 309 (S.D.N.Y. 2004); Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 168 (S.D.N.Y. 2003). Several courts have held that class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), *cert. denied*, 111 S. Ct. 675 (1991); see also J.H. Cohn & Co. v. American Appraisal Assoc., Inc., 628 F.2d 994, 998-99 (7th Cir. 1980).

As demonstrated in Point I, *supra*, issues subject to individualized proof predominate including the validity of each Plaintiffs' debt, the manner of service of the summons and complaint, and their receipt (or their purported lack thereof) of supplemental mailings from MSH as well as mailings from the Civil Court Clerk's office under 22 N.Y.C.R.R. §208.6(h), advising them of the existence of the lawsuit. As such, plaintiffs have failed to satisfy the predominance aspect of class certification.

Moreover, Plaintiffs' efforts to maintain a RICO claim and the elements necessary to prove such a claim raise a host of individual issues that warrant denial of certification. Indeed, as the Fifth Circuit has acknowledged, there is "a working presumption against class certification" in "RICO fraud actions." Sandwich Chef of Texas, Inc., 319 F.3d 205, 219 (5th Cir. 2003), *overruled on other grounds by* Bridgewater v. Double Diamond-Delaware, Inc., 2011 U.S. Dist. LEXIS 47248 (N.D. Tex. Apr. 29, 2011). Consistent with this "working presumption," courts have repeatedly declined to certify

classes seeking damages under RICO. See, e.g., Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004). In addition to having to prove scienter, to prevail on their RICO and fraud claims, Plaintiffs must also show proximate causation. McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 533 U.S. 639 (2008); Stutman v. Chem. Bank, 95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000). Proving that Plaintiffs' injuries were proximately caused by Defendants' scheme will require individualized proof. See Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001) ("RICO's use of the clause 'by reason of' has been held to limit standing to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or 'but for,' cause."). In addition, Plaintiffs assert causes of action for violations of N.Y. GBL §349 and N.Y. Judiciary Law §487. These claims each require individualized proof of reliance, causation and damages. See McLaughlin, 522 F.3d at 222; Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Nason v. Fisher, 36 A.D.3d 486, 487 (1st Dep't 2007); Jaroslawicz v. Cohen, 12 A.D.3d 160, 161 (1st Dep't 2004). These issues of reliance and causation will predominate over this case.

Furthermore, the amount of damages suffered by each of the class members as a result of the alleged acts of Defendants "cannot be resolved by way of generalized proof." McLaughlin, 522 F.3d at 226. For example, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Armoogam seeks damages relating to transportation costs for trips to his lawyer's office. (TAC, ¶216). Each of the

representative Plaintiffs' purported damages will involve individualized analysis, further warranting denial of class certification.

### B.    A Class Action Is Not A Superior Method Of Adjudicating Plaintiffs' Claims

Rule 23(b)(3) also requires Plaintiffs to demonstrate that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The rule requires consideration of various factors, including 'the interest of members of the class in individually controlling the prosecution or defense of separate actions, as well as 'the difficulties likely to be encountered in the management of a class action." Parker v. Time Warner Entm't Co., 331 F.3d 13, 21 (2d Cir. 2003) (citations omitted). The Supreme Court has made clear that Rule 23(b)(3)'s manageability test is satisfied only if trial of the case as a class action can be accomplished "without sacrificing procedural fairness" and without "abridg[ing], enlarg[ing] or modify[ing] any substantive right." See Amchem Prods., 521 U.S. at 613, 615. "What this means, as a practical matter, is that, in an effort to achieve manageability, courts may not relieve plaintiffs of the burden of proving the individualized elements of their claims * * * and may not deprive defendants of the right to put on individualized evidence, to raise individualized defenses, and to receive a verdict on the individualized facts of each class member's claims." Evan M. Tager, *The Constitutional Limitations on Class Actions*, Mealy's Litig. Rpt.: Class Actions, January 2001, at 35. Indeed, a class action defendant's due process right to assert a defense against each and every class member is guaranteed by the Rules Enabling Act, "which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.' 28 U.S.C. § 2072(b)." Amchem Prods., 521 U.S. at 613; see also Honda Motor Co. v. Oberg, 512 U.S. 415, 430 (1994) (whenever traditional practices such as the right to confront and rebut evidence are denied, it is presumed that due process is denied); Lindsey v. Normet, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense"); Agency for Health Care Admin. v. Assoc. Indus. of Fla., Inc., 678 So. 2d 1239, 1254 (Fla. 1996)

22

(allowing aggregate procedures without right to dispute individual issues on an individual basis violates due process); Newton, 259 F.3d at 192 (defendants possess a due process right "to raise individual defenses against each class member").

As the Second Circuit has repeatedly cautioned, "[t]he systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's -- and defendant's -- cause not be lost in the shadow of a towering mass litigation." In re Repetitive Stress Injury Litig., 11 F.3d 368, 373 (2d Cir. 1993). Any trial of this case as a class action of 120,000 Plaintiffs that permits the fair presentation of evidence from both Plaintiffs and Defendants would necessarily place "a gigantic burden on the Court's resources beyond its capacity to manage or effectively control." In re Hotel Tel. Charges, 500 F.2d 86, 89-91 (9th Cir. 1974); Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977); Andrews v. AT&T Co., 95 F.3d 1014, 1025 (11th Cir. 1996). Indeed, even the threshold question of determining who are members of the class would make certification unmanageable. Plaintiffs' summary contention that 120,000 people were not properly served with complaints requires an inquiry into each individual's unique circumstances, and inevitably, such inquiries would entail a series of mini-trials just to determine the threshold issue of class membership. See Perez v. Metabolife Int'l, Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003); Ludke v. Philip Morris Cos., 2001 WL 1673791, *3 (Minn. Dist. Ct. Nov. 21, 2001); In re Phenylpropanolamine Prods. Liab. Litig., 2003 U.S. Dist. LEXIS 22530 (W.D. Wash. Nov. 5, 2003).

Further, above and beyond the individualized due process issues surrounding the alleged violations of RICO and FDCPA (discussed above), the question of whether MSH committed engaged in criminal conduct on 120,000 cases, as Plaintiffs allege, cannot be adjudicated summarily through a class action vehicle. Plaintiffs seek relief under Judiciary Law §487, which provides that an attorney who:

23

1.   Is guilty of any deceit or collusion, or consents to any deceit or collusion with intent to deceive the court or any party, or

2.   Willfully delays the client's suit with a view to his own gain, or willfully receives any money or allowance for an account of any money which he has not laid out, or becomes answerable for

**Is guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law,** he forfeits to the party injured treble damages, to be recovered in a civil action.

Judiciary Law 487 (McKinney 2010) (emphasis supplied). Plaintiffs cannot be allowed to use the class action vehicle to summarily deprive MSH of its due process rights to confront each and every accuser seeking to prevail against it on a criminal violation of Judiciary Law §487. Noticeably absent from Plaintiffs' motion is any citation to a case certifying a class action under Judiciary Law §487.

Plaintiffs contend that "a class action is also superior to any other method for the fair an efficient adjudication of this dispute, as the damages suffered by certain members of the class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation." Class Cert. Mot., p. 24. On the contrary, by virtue of the claims asserted by Plaintiffs, this argument fails on its face. First, Plaintiffs have asserted claims against the defendants under FDCPA and RICO. Under RICO, a plaintiff may seek treble damages, attorneys' fees, and costs. See 18 U.S.C. §1964(c). Likewise, Plaintiffs' claims under the FDCPA, if successful, also provide for the recovery of statutory and actual damages, as well as attorneys' fees. See 15 U.S.C. §1692k(a)(1), (2)(A), (3). Plaintiffs' claim under Judiciary Law §487, if successful, allows for the recovery of treble damages. These provisions wholly undercut any argument that the expense of litigating against the defendants individually means that Plaintiffs' claims must be prosecuted only as a class action. See, e.g., United States v. Charmer Indus., Inc., 1981 U.S. Dist. LEXIS 13534, at * 8 (E.D.N.Y. July 1, 1981) ("[t]he prospect of an award of treble damages and attorneys' fees, should they prevail, provides plaintiffs and their attorneys with a significant incentive to litigate the civil actions vigorously"); Mayo v. Sears, Roebuck & Co., 148 F.R.D. 576, 583 (S.D. Ohio 1993). Any plaintiff who might have a

24

meritorious RICO, FDCPA and Judiciary Law claims against Defendants should not have any difficulty finding able counsel to prosecute it. See, e.g., Andrews, 95 F.3d at 1025 ("even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs").

### POINT IV
### PLAINTIFFS' COUNSEL HAVE FAILED TO ESTABLISH THAT THEY ARE QUALIFIED TO ACT AS CLASS COUNSEL

In certifying class counsel, a court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In the case at bar, all three of Plaintiffs' law firms fail to establish any experience in handling the types of claims asserted herein. MFY and NEDAP, by their own admission, have no experience in handling class actions. While Emery Celli Brinckerhoff & Abady may have class action experience, none of its cases appear to have anything to do with the predominant claims in this action – violations of FDCPA and RICO.

### CONCLUSION

For the foregoing reasons, MSH respectfully requests that the Court enter an Order denying Plaintiffs' motion for class certification in its entirety, and granting such other and further relief the Court deems necessary and proper.

Dated: Woodbury, New York
      June 13, 2011

            KAUFMAN DOLOWICH VOLUCK & GONZO, LLP

        By: _____
            Brett A. Scher
            Yale Pollack
            Attorneys for the Mel S. Harris Defendants
            135 Crossways Park Drive, Suite 201
            Woodbury, New York 11797
            (516) 681-1100

25