UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONIQUE SYKES, REA VEERABADREN,
KELVIN PEREZ, and CLIFTON ARMOOGAM,
individually and on behalf of all others similarly
situated,

                                        Plaintiffs,

        - against -

MEL S. HARRIS AND ASSOCIATES LLC; MEL
S. HARRIS; MICHAEL YOUNG; DAVID
WALDMAN; KERRY LUTZ; TODD
FABACHER; MEL HARRIS JOHN/JANE DOES
1-20; LEUCADIA NATIONAL CORPORATION;
L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT
10, LLC; LR CREDIT 14, LLC; LR CREDIT 18,
LLC; LR CREDIT 21, LLC; JOSEPH A.
ORLANDO; PHILIP M. CANNELLA; LR
CREDIT JOHN/JANE DOES 1-20; SAMSERV,
INC.; WILLIAM MLOTOK; BENJAMIN LAMB;
MICHAEL MOSQUERA; JOHN ANDINO; and
SAMSERV JOHN/JANE DOES 1-20,

                                        Defendants.

ECF Case
No. 09 Civ. 8486(DC)


**DECLARATION OF
MATTHEW D. BRINCKERFHOFF**

        MATTHEW D. BRINCKERHOFF, an attorney duly admitted to practice in the

Southern District of New York, declares under penalty of perjury as follows:

        1.        I am a member of Emery Celli Brinckerhoff & Abady LLP, which, along with

MFY Legal Services and the Neighborhood Economic Development Advocacy Project,

represents Plaintiffs in this action.  I submit this declaration in further support of Plaintiffs'

motion for class certification.

1

2.      Attached as Exhibit A is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated September 16, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ms. Sykes.

3.      Attached as Exhibit B is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated July 7, 2006, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ms. Veerabadren.

4.      Attached as Exhibit C is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated February 5, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Mr. Perez.

5.      Attached as Exhibit D is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated August 26, 2010, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Mr. Armoogam.

6.      Attached as Exhibit E is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated June 23, 2009, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Paula Robinson, a former plaintiff in this matter.

7.      Attached as Exhibit F by Todd Fabacher and dated September 30, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Fatima Graham, a former plaintiff in this matter.

8.      Attached as Exhibit G is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated April 7, 2009, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Saudy Rivera, a former plaintiff in this matter.

9.      Attached as Exhibit H is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated July 24, 2007, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Enid Roman, a former plaintiff in this matter.

10.     Attached as Exhibit I is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated June 16, 2009, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ruby Colon, a former plaintiff in this matter.

11.     Attached as Exhibit J is a true and correct copy of the Affirmation of Seth Schlanger dated September 14, 2006.

12.     Attached as Exhibit K is a true and correct copy of Affidavit of William Mlotok dated July 12, 2011 regarding Samserv logbooks.

13.     Attached as Exhibit L is a true and correct copy of Affidavit of John Andino dated July 23, 2011 regarding Samserv logbooks.

14.     Attached as Exhibit M is a true and correct copy of the transcript of this Court's June 27, 2011 conference.


Dated: August 1, 2011
       New York, New York

_____/s/_____
MATTHEW D. BRINCKERHOFF

# Exhibit A

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX
Index No. 55929 BCV08

LR CREDIT 18, LLC

              PLAINTIFF

                     **AFFIDAVIT OF MERIT**

    AGAINST

MONIQUE S SYKES

              DEFENDANT(S)

STATE OF NEW YORK      )
COUNTY OF NEW YORK   ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#5149230750022307, owed to **JPMORGAN CHASE BANK**. As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **JPMORGAN CHASE BANK**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $2359.51.

That although duly demanded no part of the total sum of $2359.51 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2359.51 together with interest on $1907.51 from 06-27-2008 plus the costs of this action.

signed: _____

Sworn to before me this <u>16 day Of September, 2008</u>.

      Michael Young
   Notary Public - State of New York
       No. 01YO4930598
     Qualified in Queens County
   Commission Expires June 20, 2010



NEDAP-0687

# Exhibit B

COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
Index No. 046440/06

LR CREDIT 10, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

REA L MOUKENGESCHAIE

DEFENDANT(S)

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss

**Todd Fabacher** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff's assignor in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from the assignor, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 10, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of a debt owed to SEARS. As such LR CREDIT 10, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with plaintiff's assignor wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant by the assignor in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $6987.21.

That although duly demanded no part of the total sum of $6987.21 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $6987.21 together with interest on $5700.98 from 04-12-2006 plus the costs of this action.

signed:

Sworn to before me this **07 day Of July, 2006.**

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

275786-3 / LRCR10 / 85729409

# Exhibit C

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX
Index No. 86522 BCV07

LR CREDIT 14, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

KELVIN PEREZ

DEFENDANT(S)

STATE OF NEW YORK    )
COUNTY OF NEW YORK.    ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 14, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of Account Num#2601258131005, owed to **BALLY TOTAL FITNESS CLUBS**. As such LR CREDIT 14, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

**BALLY TOTAL FITNESS CLUBS** duly performed all conditions on its part to be performed under the Retail Installment Contract, a copy of which agreement underlying the transaction was delivered to the defendant(s) at or before the time of the transaction.

Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests pertinent thereto.

Defendant(s) defaulted in payment and under the terms of the Retail Installment Contract plaintiff opted to accelerate the agreed balance then due and owing: to wit -- $1846.80.

That although duly demanded no part of the total sum of $1846.80 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $1846.80 together with interest on $1460.98 from 11-05-2007 plus the costs of this action.

signed: _____

Sworn to before me this **05 day Of February, 2008**.

O'CONNELL HORNE
Notary Public - State of New York
No. 01HO6119203
Qualified in New York County
Commission Expires 11-29-2008

777186-1 / LRCR14 / 15802770



# Exhibit D

_OURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
Index No. 65383 QCV10

LR CREDIT 21, LLC

PLAINTIFF
**AFFIDAVIT OF MERIT**

AGAINST

CLIFTON D ARMOOGAM
DEFENDANT(S)

STATE OF NEW YORK            )
COUNTY OF NEW YORK           ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 21, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. LR CREDIT 21, LLC is the assignee and purchaser of Account Num#4266841081400945, owed to **CHASE BANK USA NA.** As such LR CREDIT 21, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **CHASE BANK USA NA**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but on 12-09-2007, defendant had defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $4891.65. That although duly demanded no part of the total sum of $4891.65 has been paid.

In accordance with CCM-186A this cause of action accrued in the state of NY having a 6 year statute of limitations with respect to collection of debts of this kind. After reasonable inquiry, I have reason to believe that the applicable statute of limitations had not expired as of the date this lawsuit had been commenced.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $4891.65 together with interest on $4891.65 from 12-09-2007 plus the costs of this action.

signed: _____

Sworn to before me this **26 day OF August, 2010**

**Michael Young**
**Notary Public - State of New York**
**No. 01YO4930598**
**Qualified in Queens County**
**Commission Expires June 20, 2014**

990156-1 / LRCR21 / 4266841081400945

# Exhibit E

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

Index No. 39423 BCV09

LR CREDIT 18, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

PAULA ROBINSON

DEFENDANT(S)

STATE OF NEW YORK          )
COUNTY OF NEW YORK      ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#1150107338602, owed to **CITIBANK/SEARS**. As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **CITIBANK/SEARS**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $509.35.

That although duly demanded no part of the total sum of $509.35 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $509.35 together with interest on $509.35 from 12-06-2003 plus the costs of this action.

signed: _____

Sworn to before me this **23 day Of June, 2009.**

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010



901605-1 / LRCR18 / 117115381

# Exhibit F

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF NEW YORK
Index No. 48003 CVN08

LR CREDIT 18, LLC
                         PLAINTIFF
                                    **AFFIDAVIT OF MERIT**

        AGAINST

FATIMA E GRAHAM
                         DEFENDANT(S)

STATE OF NEW YORK           )
COUNTY OF NEW YORK          ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY,that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business,and that I am  thereby fully and personally familiar with,and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#4559501500537901, owed to **PROVIDIAN BANK.** As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **PROVIDIAN BANK**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured.  There remains due and owing an unpaid agreed balance of $2688.73.

That although duly demanded no part of the total sum of $2688.73 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2688.73 together with interest on $2688.73 from 10-03-2003 plus the costs of this action.

                signed: _____

Sworn to before me this **30 day Of September, 2008.**

            CHANTELLA ULMER
        Notary Public - State of New York
                No. 01UL6131327
            Qualified in KINGS County
        Commission Expires 08-01-2009

894191-1 / LRCR18 / 13238040051002346



NEDAP-0235

# Exhibit G

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF KINGS

Index No. 2058 KCV09

LR CREDIT 19, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

SAUDY RIVERA

DEFENDANT(S)

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 19, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 19, LLC is the assignee and purchaser of Account Num#5466725650447640, owed to **JPMORGAN CHASE BANK.** As such LR CREDIT 19, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **JPMORGAN CHASE BANK,** wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $5808.40.

That although duly demanded no part of the total sum of $5808.40 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $5808.40 together with interest on $5808.40 from 02-01-2006 plus the costs of this action.

signed: _____

Sworn to before me this **07 day Of April, 2009.**

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

943431-1 / LRCR19 / 5466725650447640

NEDAP-0315

# Exhibit H

Jan 20 2010 2:38PM   HP LASERJET FAX                                    p.6

...URT OF THE CITY OF NEW YORK - COUNTY OF KINGS

Index No. 27856 KCV09

LR CREDIT 19, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

ENID ROMAN

DEFENDANT(S)

STATE OF NEW YORK      )
COUNTY OF NEW YORK    ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 19, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 19, LLC is the assignee and purchaser of Account Num#4559541900671322, owed to **WAMU/PROVIDIAN BANK**. As such LR CREDIT 19, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **WAMU/PROVIDIAN BANK**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $3437.00.

That although duly demanded no part of the total sum of $3437.00 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $3437.00 together with interest on $3437.00 from 03-01-2006 plus the costs of this action.

signed: _____

Sworn to before me this **16 day Of June, 2009**.

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

949398-1 / LRCR19 / 4559541900671322

NEDAP-0421

# Exhibit I

URT OF THE CITY OF NEW YORK - COUNTY OF KINGS
                              Index No. 63815 KCV07

LR CREDIT 12, LLC

                    PLAINTIFF
                              **AFFIDAVIT OF MERIT**

        AGAINST

RUBY A COLON

                    DEFENDANT(S)

STATE OF NEW YORK          )
COUNTY OF NEW YORK         )  ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff's assignor in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from the assignor, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 12, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of a debt owed to **CHASE MANHATTAN BANK**. As such LR CREDIT 12, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with plaintiff's assignor wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant by the assignor in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $2078.18.

That although duly demanded no part of the total sum of $2078.18 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2078.18 together with interest on $1761.91 from 05-22-2007 plus the costs of this action.

        signed: _____

Sworn to before me this 24 day Of July, 2007.

        Michael Young
    Notary Public - State of New York
        No. 01YO4930598
    Qualified in Queens County
    Commission Expires June 20, 2010

737217-1 / LRCR12 / 13372024060109623



NEDAP-0609

# Exhibit J

CIVIL COURT OF THE CITY OF NEW YORK,
COUNTY OF KINGS

LR CREDIT 9, LLC

<em>Plaintiff,</em>

-against-

ANGELA RICHMOND

<em>Defendant</em>

Index No.  68765/05

**AFFIRMATION
IN OPPOSITION
TO DEFENDANT'S MOTION**

Seth Schlanger, a New York attorney and senior associate of attorney for the plaintiff, affirms the following under the penalties of perjury:

1.  I am the senior associate of Mel S Harris and Associates, LLC, attorneys for the plaintiff in this matter. I am a New York attorney and, as such, affirm that I know all that is stated herein to be true, under the penalties of perjury.   This affirmation is in agreement with defendant's motion to dismiss with prejudice and in opposition to so much of defendant's motion that seeks sanctions pursuant to 22 N.Y.C.R.R. 130-1.1(a).

2.  For the reasons set forth herein, we agree to dismiss this action with prejudice but believe that no sanctions should be assessed.

3.  In order to determine whether plaintiff counsel has engaged in any sanctionable conduct under Rule 130-1.1 the court should look at the definition of frivolous conduct which states" conduct is frivolous if: "it asserts material factual statements that are false." As discussed in detail throughout this affirmation, there are no false statements contained within any of plaintiff's documents in this matter.

4.  I will endeavor to provide a full explanation in relation to this pending motion, but, in order to do so, must provide the context of the changes in the collection field in New York. I have been practicing law for 40 years and have seen personally the substantial changes in the field over the past two decades.

5.  When I started in this business clients were primarily the original creditors and my contact was thereby with the original creditor. Today, the proliferation of credit cards and other consumer accounts and their general usage has engendered a new industry where such accounts are sold by the original creditor and collected by an assignee or even a chain of assignees. The clients of my firm are (i)banks, (ii)merchants, (iii)agencies servicing debt for original creditors, and (iv)paper

buyers that have purchased the debt on an assignee and transferee basis. Often the direct assignor is not the original creditor and my client's contact is with or through its assignor. Further, at times, even a servicing agent's contact will be an assignee.

6.   Further, debt buying and selling has become a business unto itself. It would be mistaken to cast negative aspersions on a case just because an account has been sold to another entity. Just because a debt has not been collected by or for a creditor or subsequent assignee does not mean that it is a bad debt or a problem situation. More often it means that bad events such as loss of job, illness, short term disability, loss of income, general inability to pay, and the like have prevented the debtor from paying the debt to the original creditor or some subsequent entity or ineffectual collection efforts have otherwise resulted in the inability to collect the debt. With the passage of time a debtor's circumstances can improve or a debtor may be able to resolve an account in a mutually agreeable manner. In any event, the underlying debt remains.

7.   My firm's client base follows the prevalent pattern. My firm's contacts are therefore generally directly with servicing agencies and paper buyers that must communicate with or through their immediate transferor. In the present matter, my contact is through a paper buyer.

8.   As your Honor can see, the collection field was at one time paper intensive because electronic processes were relatively primitive compared to today. The referral of files had involved, usually as a matter of necessity, the intake of paper records or referral memoranda.

9.   Now, more and more debt is being sold to paper buyers or is being serviced through agencies. For the most part, I have found that debt sellers and, as a result, debt buyers provide essential account related information electronically. A firm to which such a debt is referred for collection must then generally rely on the electronic information provided, subject to review by counsel's office to see if anything in that information on its face does not make sense or otherwise precludes further proceedings. When further documents are needed, request must then be made through or from the debt buyer or servicing agency. The debt buyer seeks documents from and through its transferor and down the chain of transfer. It can take months to get documents, if they can be obtained. An underlying problem is that, as they get further down the line, the original creditor becomes less invested in the overall process. That tri-partite work process is the process applicable to this case.

10.  Further, the State of New York encourages the use of electronic information and electronic records, and in furtherance thereof has enacted and strengthened the State Technology Law. The Legislative history stated in Chapter 314, L.2002, provides:

P00221

"Legislative intent. Article I of the state **technology law**, known as the Electronic Signatures and Records Act (ESRA), is intended to support and encourage electronic commerce and electronic government by allowing people to use electronic signatures and electronic records in lieu of handwritten signatures and paper documents. Subsequent to the adoption of ESRA, the federal Electronic Signatures in Global and National Commerce Act (15 U.S.C. §§ 7001-7006), known as the ESign Law, was adopted to permit and encourage the expansion of electronic commerce in interstate and foreign commercial transactions. Like ESRA, this federal law authorizes the use and acceptance of electronic signatures and electronic records in the context of these commercial transactions. It is the intent of this bill to ensure that these laws continue to complement each other in achieving their stated purposes. Rather than seeking to modify, limit or supercede federal law, the legislature finds that it is in the best interest of the state of New York, its citizens, businesses and government entities for State and federal law to work in tandem to promote the use of electronic technology in the everyday lives and transactions of such individuals and entities. It is with this finding in mind that the following amendments are made to the state **technology law**."

Otherwise stated, today's electronic commerce includes the opening and usage of credit and merchant accounts, as well as the electronic transmission of information. Thus, collection law and practices have evolved electronically in accordance with the Legislature's intent to embrace technology.

11. This firm is a high volume collection firm in New York. We can and must rely on the electronic information provided, including date of last pay, principal referred, total referred, social security number, last known address, original creditor, and other information that may be provided. We are given enough information to make a thinking decision regarding the handling of a referred case. When some important piece of information is missing we seek it from our client.

12. In the present matter, my firm represents a debt buyer. If any documents are to be obtained they can take months in such circumstances. We are willing to consent to a discontinuance with prejudice.

13. While the attorney for the defendant did request, back in April 2006, that we consent to discontinue this matter with prejudice, this office reasonably requested that she provide us with an affidavit of fraud executed by her client in order to substantiate those allegations. This office was under the impression that such an affidavit would be forthcoming, and therefore was waiting for said affidavit.

14. Upon receipt of the pending motion for sanctions, plaintiff counsel attempted to resolve the pending motion by consenting to discontinue this matter with prejudice. Instead of being agreeable, defendant's counsel stated that she "wanted to see what happens" with her motion for sanctions.

15.   Further, keeping the above stated realities in mind, my firm does have practices in place to work carefully with referred debt and to minimize any human error.

16.   First, we evaluate accounts through outside vendors and within our own computer system for dates of last payment, deceased status, and bankruptcy. This allows us to eliminate any matters that should be immediately closed and returned. Occasionally, such a status in a case will fall between the cracks and we must deal with it as it is discovered.

17.   Second, we send out a first demand letter to all debtors remaining after the preliminary evaluation process is completed, with the required dispute/validation language. If the letter is returned we status the account accordingly and keep it on hold pending a new address. If we receive no mail return and no dispute the debt, as per the letter, which is based on the mandates of Federal law, is deemed valid. After 35 days has passed since that letter was mailed litigation can follow. If a dispute is raised we mark the account as such and seek documentation, with the account remaining in a hold status.  As per our notes in the instant matter, a demand letter was sent to the 4420 Kings Highway, Brooklyn address on April 25, 2005.  We obtained the 4420 Kings Highway address as one of Ms. Richmond's most current addresses pursuant to a search on accurint.  SEE EXHIBIT A.  We had no notice that the defendant currently lives at 1909 Amsterdam Ave. Apt 14B, New York, NY until we received the defendant's OSC, at which time, we updated our records to reflect said change of address.  SEE EXHIBIT B.

18.   Third, before any summons will be issued or signed, the reviewing attorney is directed to look at the case notes to assure that nothing is evident that necessitates the stoppage of the summons before it is referred to a process server. This firm checks for date of last payment, bankruptcy, disputes, noted previous payment, returned mail, and anything else that may compel the disapproval of the summons from being issued.

19.   Fourth, approved and signed summons papers are then referred to an outside process service agency for service and filing. We do not employ in-house process servers. When the affidavit of service is returned to us we send out the 20 day notice letter as required in CPLR 3215. This further enables a debtor to dispute a debt by reminding the debtor to file an Answer. If a dispute then comes in by letter that has not been sent to the Court we remind the debtor that an Answer must be filed with the Court. If the letter is filed with the Court we deem it to be an Answer. We pursue investigation of any dispute that is brought to our attention.  In this matter, the CPLR 3215 20 day notice letter was sent to the defendant on September 29, 2005.  See a copy of the 20 day letter attached as EXHIBIT C.

20. The above stated processes were followed in the present matter and there was no return mail. Also, there was no Answer or dispute raised so as to keep us from going to the next level, default judgment.

21. Fifth, if an Answer does come in and appears to require documents we will seek them if they have not been ordered already. If a court date comes up in the interim we have been known to, in lieu of the long adjournment needed to wait for documents, mark a case off the calendar or discontinue without prejudice pending the documents. While we were ready earlier on to discontinue with prejudice, the attorney for the defendant wishes to proceed with the current motion for sanctions.

22. Sixth, after default judgment enforcement generally follows. If we receive an OSC an attorney must review it. The OSC in the above-captioned matter was received by this office on November 22, 2005.

23. If an OSC is received and reviewed, a determination is made as to whether or not an opposition paper will be submitted or if we will exercise some form of consent. The decision to consent should not be seen in a negative light. At times we will make a business and/or practical decision to allow a judgment to be vacated and an Answer filed. When a traverse is involved, we make a similar determination regarding the dismissal of the case on jurisdictional grounds.

24. Additionally, in order to understand why the defendant's bank account was restrained for over one month in this matter it is important to understand that the defendant had more than one collection matter that was placed with this firm.

25. The defendant also has an account with MSH ID # 543805-2, which was a judgment account placed with this firm. See EXHIBIT D. Since we had a valid enforceable judgment, information subpoenas and restraining notices were sent out to the banks in order to collect on that judgment as well. In other words, the matter was referred to this office with the judgment already entered by other counsel, in this instance the law office of Eric S. Finger, Esq.

26. While the order to show cause was pending on LR Credit 9 v. Angela Richmond, Kings Civil Index. No. 068765/05, restraints were also issued to various banks on the second enforceable judgment placed with this office, Garden City Asset Management Corp. v. Angela Richmond, Index No. 124294/04. Plaintiff cannot affirm as to the length of time defendant's bank account was restrained, but the time period in which an account is restrained can be lengthened if there is more than one restraining notice sent to the same bank account for various judgments.

27. I would next like to address the assertions of counsel that the statements by Todd Fabacher are false as contained in the affidavit of merit, which was submitted with the default judgment in this matter. The custodian of records merely states that he is "fully and personally familiar with the facts and proceedings relating to

the within action" based upon his review of the business records obtained from the plaintiff's assignor. In this case, these records are electronic records maintained and transmitted through the immediate assignor of plaintiff. As discussed above, said business records are an exception to the hearsay rule and are a legitimate basis for the custodian to base his belief.

28.   Next, defendant's attorney states that in plaintiff's "Response to Defendant's Discovery Request" "Plaintiff admits that neither it nor its assignor has any records or documents related to this case." While this office has ceased using the "Response to Defendant's Discovery Request" in all cases, there is nothing contained within that document that is a false material factual statement. The response merely states that the plaintiff is obtaining hard copies of the credit card statements it has requested from the plaintiff's assignor.

29.   In order to determine whether plaintiff counsel has engaged in any sanctionable conduct under Rule 130-1.1 the court should look at the definition of frivolous conduct which states" conduct is frivolous if: "it asserts material factual statements that are false." As discussed in detail above, there are no false statements contained within any of plaintiff's documents.

30.   Based on the foregoing, I hereby respectfully request that the court deny the defendant's motion for sanctions. Plaintiff is ready to consent to a dismissal of this matter with prejudice if the court so orders.

New York, NY
9/14/2006

MEL HARRIS & ASSOCIATES, LLC.
By: Seth Schlanger, Esq.

RefNum: 543805-1

# Exhibit K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MONIQUE SYKES, et al.,

                         Plaintiffs,

   - against -

MEL S. HARRIS AND ASSOCIATES LLC, et al.

                        Defendants.

-------------------------------------------------------------X

ECF Case
No. 09 Civ. 8486 (DC)

**MLOTOK**
**AFFIDAVIT**

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF _Kings_   )

     **WILLIAM MLOTOK**, being duly sworn, deposes and says:

     1.    I am the principal of Samserv, Inc.

     2.    At all times relevant herein Samserv, Inc. utilizes the services of Independent Contractor Process Servers to effectuate service.

     3.    Samserv, Inc. does not now, and did not at any time relevant herein, maintain the Process Server's Logbook(s) that detail the processes they served as well as their instances of attempted service of process.

     4.    Similarly, Samserv, Inc. does not now, and did not at any time relevant herein, maintain copies of the Process Server's Logbook(s).

                                           WILLIAM MLOTOK

Sworn to before me this
_____ day of July, 2011

_____
Notary Public

GERALD SLOTNIK
Notary Public, State of New York
No. 02SL5061548
Qualified in Kings County
Commission Expires 6/10/20___

                                               1

# Exhibit L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

MONIQUE SYKES, et al.,

                              Plaintiffs,

        - against -

MEL S. HARRIS AND ASSOCIATES LLC, et al.

                              Defendants.
------------------------------------------------------------------- X

ECF Case
No. 09 Civ. 8486 (DC)


**ANDINO**
**AFFIDAVIT**

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

        **JOHN ANDINO**, being duly sworn, deposes and says:

        1.      I have worked with Samserv, Inc. as an Independent Contractor Process

Server including during the start of the proposed class period, 2006.

        2.      During that period of time, I maintained Logbook(s) detailing the processes

I served as well as instances of attempted service of process.

        3.      I have attempted to locate those Logbooks but have been unable to locate

them at this time.

                                                    _____
                                                    JOHN ANDINO

Sworn to before me this
23 day of July, 2011.

_____
Notary Public

**HOPE KLEIN-ANDINO**
**Notary Public - State of New York**
**No. 01KL6151635**
**Qualified in Westchester County**
**My Commission Expires Aug. 21, 2014**

1

# Exhibit M

# In The Matter Of:

*MONIQUE SYKES, et al., v.*

*MEL S. HARRIS AND ASSOCIATES*

---

*June 27, 2011*

---

*SOUTHERN DISTRICT REPORTERS*

*500 PEARL STREET*

*NEW YORK, NY 10007*

*212 805-0330*

Original File 16rksykc.txt

**Min-U-Script® with Word Index**

This Page Intentionally Left Blank

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

---

16RKSYKC          Conference          Page 1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MONIQUE SYKES, et al.,

4          Plaintiffs,

5          v.                    09 CV 8486 (DC)

6   MEL S. HARRIS AND ASSOCIATES
    LLC, et al.,
7
8          Defendants.

9   ------------------------------x
                              New York, N.Y.
10                            June 27, 2011
                              4:46 p.m.
11  Before:

12                    HON. DENNY CHIN,

13                              District Judge

14                    APPEARANCES

15  COUNSEL FOR PLAINTIFFS:

16  CLAUDIA WILNER, NEDAP
    JOSH ZINNER, NEDAP
17  SUSAN SHIN, NEDAP
    MATTHEW D. BRINCKERHOFF, Emery Celli Brinckerhoff & Abady, LLP
18  CAROLYN E. COFFEY, MFY Legal Services Incorporated

19  KAUFMAN DOLOWICH VOLUCK & GONZO LLP
         Attorneys for Mel Harris Defendants
20  BRETT A. SCHER

21  McELROY DEUTSCH MULVANEY & CARPENTER LLP
         Attorneys for Leucadia Defendants
22  LEWIS H. GOLDFARB

23  BABCHIK & YOUNG LLP
         Attorneys for SamSERV Defendants
24  JORDAN SKLAR
25

---

16RKSYKC          Conference          Page 2

1        (In open court)

2        THE COURT: Since there are so many of you, just
3   identify yourself when you speak.

4        THE DEPUTY CLERK: Sykes versus Harris, civil cause
5   for conference. If all the parties could state their
6   experiences and who they represent, please.

7        MR. BRINCKERHOFF: Matthew Brinckerhoff for the
8   plaintiffs.

9        MS. WILNER: Claudia Wilner for the plaintiffs.

10       MS. COFFEY: Carolyn Coffey for the plaintiffs.

11       MS. SHIN: Susan Shin for the plaintiffs.

12       MR. ZINNER: Josh Zinner for the plaintiffs.

13       THE COURT: All right.

14       MR. GOLDFARB: Lou Goldfarb for the Leucadia
15  defendants.

16       MR. SKLAR: Jordan Sklar for the SamSERV defendants.

17       MR. SCHER: And Brett Scher on behalf of the Mel
18  Harris defendants.

19       THE COURT: All right. We had some discovery issues.
20  Who wants to go first?

21       MS. WILNER: I will, your Honor. Thank you.
22  This is Claudia Wilner of NEDAP on behalf of the
23  plaintiffs.

24       THE COURT: Yes.

25       MS. WILNER: And we had sent a letter to the Court

---

16RKSYKC          Conference          Page 3

1   over several discovery matters items.

2        THE COURT: Let's just go through them.

3        MS. WILNER: Sure.

4        THE COURT: Identify anything that's still outstanding
5   just one by one. What's the first one?

6        MS. WILNER: The first one has to do with some
7   electronic discovery requests that we had made, one to the Mel
8   Harris defendants and one to the SamSERV defendants. Both sets
9   of defendants have electronic databases that contain
10  information that's extremely important to our case. It
11  includes information on the people that they sued, the methods
12  of service, their applications for a default judgments, the
13  amounts that they were able to collect, the methods of
14  collection. All of this information is stored in electronic
15  databases. It is easily retrievable and is not burdensome to
16  produce to us, and we really need to information to move
17  forward with our case.

18       THE COURT: OK, what's the objection?

19       MS. WILNER: Well, we haven't --

20       THE COURT: No, no, what's the objection.

21       MR. SCHER: Your Honor, Brett Scher on behalf of the
22  Mel Harris defendants.

23       THE COURT: Yes.

24       MR. SCHER: The first objection we have is with
25  respect to the scope of Rule 23 we talk about the Dziennik

---

16RKSYKC          Conference          Page 4

1   case, which talks about the scope of what is discoverable
2   before certification. And the issue here is that plaintiffs
3   are looking for putative class member identities and documents.

4        With respect to my clients, what they are talking
5   about, based on their definition of the class, is 120,000 legal
6   files, attorney-client files, pertaining to every case that my
7   clients that my clients have essentially represented Leucadia
8   in the New York City court system over the last five or six
9   years. We think this goes well beyond the scope of what's
10  discoverable under Rule 23.

11       THE COURT: I don't remember: Are we just doing class
12  discovery now or are we doing all discovery? Have we addressed
13  that issue?

14       MR. SCHER: Your Honor, at the outset of the case, I
15  believe there was an application made by Mr. Goldfarb to
16  bifurcate, which your Honor denied at that point. So the issue
17  we're dealing with here is that, even I believe even under Rule
18  23, even with the class and merits discovery, we have given
19  them everything in terms of policies and procedures that deal
20  with not just the plaintiffs but everybody, but when you're
21  talking about actually producing 120,000 legal files -- and
22  it's after they've already moved for class certification.

23       THE COURT: It sounds like they're only asking for the
24  electronic files. In other words, you don't have to print out
25  120,000 files; you just give them the data.

---

June 27, 2011

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

16RKSYKC          Conference          Page 5

1   MR. SCHER: The problems is those, what they call
2   electronic files, are legal files. My client's law firms, they
3   maintain everything electronically; that has all the
4   communications with clients, it has their internal memorandums,
5   it has everything --
6       THE COURT: It sounds like you're saying there are
7   privileged materials in there, work product materials, and so
8   it's not so easy as pushing a button; you'd have to go through
9   and sort out the privileged materials?
10      MR. SCHER: Exactly correct, your Honor. And we don't
11  know what size class we're dealing with because they've gone
12  well beyond what's alleged in the conspiracy here, between the
13  SamSERV defendants and the sewer servers. They've now asked
14  for my clients' entire files, well beyond using SamSERV, who is
15  the alleged process server that engaged the sewer servers.
16      THE COURT: Ms. Wilner, I'm concerned about ordering
17  the production of things that could be privileged, and I am
18  concerned about reviewing 120,000 files for privilege. Is
19  there some other way of doing this?
20      MS. WILNER: Well, your Honor --
21      THE COURT: I think, first of all, certainly for all
22  the named plaintiffs it should be done.
23      MR. SCHER: That's been done, your Honor.
24      THE COURT: OK. My only other thought is whether you
25  can have discussions about whether there is a way to sort, so

16RKSYKC          Conference          Page 6

1   that you can sort out certain things that would not be
2   privileged. For example, you could sort out things like
3   pleadings, affidavits, I don't know, it seems to me that
4   is the kind of thing which wouldn't be burdensome if it would
5   not require reviewing 120,000 files. And the other possibility
6   is to depose a person with knowledge on how these things are
7   kept and see what the person says, unless you can work it out
8   informally.
9       MS. WILNER: Your Honor, if I may, we already did have
10  that deposition and what we're seeking is specifically -- most
11  of what we're seeking is data fields that have a specific
12  information in it, such as an amount or an address. I don't
13  think that there is information in those particular data fields
14  that's subject to privilege. We haven't asked for --
15      THE COURT: So you're willing to narrow the request to
16  certain data fields?
17      MS. WILNER: The request has already been narrowed to
18  certain data fields. What they have produced to us for the
19  individual plaintiffs are those fields, and now what we're
20  looking for is that information, not for the individual
21  plaintiffs but for the class members.
22      THE COURT: Mr. Scher, I'm hearing that the plaintiffs
23  think that they can narrow it to certain data fields that would
24  not elicit any privileged or confidential materials. Is that
25  not so?

16RKSYKC          Conference          Page 7

1   MR. SCHER: Based on even what's in their letter to
2   the Court, your Honor, I'm most concerned -- on page 2, where
3   they're saying they want every document that we have in these
4   electronic files, including efforts to collect on the
5   unlawfully-obtained judgments, including methods of collection
6   and amounts taken from class members, I think we're getting
7   beyond --
8       THE COURT: That does sound too broad, because it
9   could pick up things that are privileged, communications,
10  et cetera.
11      The parties are directed to meet and confer to see
12  whether there is a way of sorting electronically so that
13  certain data fields could be pulled out without the need to
14  review each file individually for privilege and
15  confidentiality. If there is a factual disagreement, then
16  you'll either have to submit something or you'll have to call,
17  we'll have to have a hearing or something; I don't know, I'll
18  have to resolve the factual dispute if there is one.
19      If it can't be done without the extraordinary effort
20  of somebody going through 120,000 files, then someone will have
21  to pay for that; I would think in the first instance it ought
22  to be the plaintiffs if they really want it. So I think you
23  should meet and confer try to work it out.
24      Yes, sir?
25      MR. BRINCKERHOFF: Judge, if I may, I just want the

16RKSYKC          Conference          Page 8

1   Court to understand that we have gone about this discovery in a
2   very deliberative way. The first thing we did was we did a
3   30(b)(6) deposition of the custodian of all the records at Mel
4   Harris, which is the prime depository. And the request that we
5   made was specific to the database information, not to the paper
6   records that are behind it, but to the database information.
7   And, in fact -- and the reason I'm raising this, I think we can
8   short-circuit this a little bit -- what we got in response,
9   with no privilege log or any assertion of privilege, were the
10  exact pieces of data that we requested for each and every one
11  of the collection efforts made against the individual
12  plaintiffs. There is no indication from that response that
13  they're claiming any privilege with respect to that information
14  that was produced in an Excel spreadsheet that was exported
15  from their database.
16      All we're seeking at this point to evaluate are those
17  same data fields, the same information, the ticks and the
18  little lines of text that were already produced without any
19  claim of privilege. So it's a little hard to understand why
20  they could be claiming that a review or an assertion of
21  privilege is necessary when they have already produced this
22  information with no such assertion.
23      And we've been trying to keep it very --
24      THE COURT: Is there a problem with producing the same
25  information for the others electronically?

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

1    MR. SCHER: Yes, your Honor. This deals with
2  financial and private information with respect to plaintiffs,
3  putative plaintiffs, who the plaintiffs' counsel doesn't
4  represent. And I think that goes to the whole issue of the
5  cases that we cited that talk about that the discovery process
6  is not intended to be a mechanism for plaintiffs to go out and
7  seek out new plaintiffs to add to the lawsuit.
8    THE COURT: They are different issues, different
9  objections, I'm hearing: One is burdensomeness; two is, there
10 may be privileged or confidential materials; and three, what
11 you're really saying is relevancy and that they are trying to
12 come up with more plaintiffs. So I'm not quite sure which ones
13 you're really pressing. Are you really pressing a
14 burdensomeness argument if they limit it to the data fields
15 that they have already gotten information on for the named
16 plaintiffs?
17    MR. SCHER: I think it does because one of those
18 fields is what we call the attorney notes field, which we did
19 produce for the four named plaintiffs but not with the
20 anticipation that it would be the same demand as to 120,000
21 people that they didn't even represent. So that is one of the
22 fields that was given to them, but that is --
23    THE COURT: What if we eliminated attorney notes?
24    MR. SCHER: It depends on what they're asking for
25 other than that. That's the main thrust of --

1    THE COURT: Did you give me a printout of what you've
2  gotten?
3    MR. BRINCKERHOFF: We could. We could give you the
4  Excel file that our expert --
5    THE COURT: Do this: Try to work it out. If you
6  can't work it out, then submit a copy of what it is that you
7  got already and you're telling me that you want the equivalent
8  of for everyone else, and then you can respond on what the
9  additional objections there would be to this. Try to narrow it
10 as much as you can, and then I'll rule quickly on that issue if
11 you can't work it out.
12    MR. BRINCKERHOFF: I think that we can certainly do
13 that, Judge. Insofar as there is any kind of an objection
14 based on attempting to solicit plaintiffs or anything of the
15 sort, which I don't think there's any basis for, we'd be happy
16 for the Court to order us not to reach out to any witnesses
17 until further notice or anything of that sort, if that's a real
18 concern. I think the only real issue here is whether or not
19 maybe there is something that might be privileged.
20    THE COURT: And why are you looking? Why do you want
21 to say all of this data? And can you really process it?
22    MS. WILNER: Well, yes, we believe we can process it.
23 And what we're really looking for is data in the patterns that
24 we think are there that would prove our case. We've talked
25 about defendants having a pattern and practice of engaging in

1  these improper collection efforts on a vast scale, for hundreds
2  or a hundred thousand people, and that they do this
3  electronically --
4    THE COURT: Fair enough. I think that's reasonable.
5  Have that same discussion. Plaintiffs would be willing not to
6  approach any of these other unnamed class members, potential
7  class members, without giving the defendants a chance at least
8  to come back to court to object. So that's another condition
9  that you can add to your discussion.
10    What's next? So you'll come back to me on this if you
11 need my help.
12    MS. WILNER: The next issue has to do with the SamSERV
13 defendants. And we had requested copies of logbooks and also
14 records of traverse hearings that were involving the individual
15 process servers. And SamSERV has refused to produce that
16 information. The logbooks are as essentially a paper record
17 that the individual process servers keep, that record all their
18 services. And of course because we have alleged a pattern and
19 practice of sewer service, the information that would address
20 that that's not in the electronic databases is in these
21 logbooks.
22    Similarly, with the traverse hearings, if there are
23 documents pertaining to traverse hearings --
24    THE COURT: For how many individuals?
25    MS. WILNER: Well, we've asked for the logbooks and

1  traverse hearings that relate to the individual process server
2  defendants in the case.
3    THE COURT: How many?
4    MS. WILNER: I believe there are four defendants.
5    THE COURT: OK, what's the objection?
6    MR. SKLAR: Well, the objection there, starting off,
7  is it's overbroad because it's not limited to a potential class
8  and that that's not limited to Mel Harris; it's all possible
9  clients that these process servers did work for. SamSERV
10 itself, the corporate defendant, doesn't keep the logbooks.
11 That's the responsibility of the individual named process
12 servers, most of whom don't work for SamSERV anymore; and I
13 believe none of them have those logbooks. I can try to clarify
14 that as best I can.
15    As far as the claim there would be information in
16 there that would not be available elsewhere, I respectfully
17 submit that's not correct. All those logbooks record is the
18 data that ultimately --
19    THE COURT: Are you saying the logbooks don't exist?
20    MR. SKLAR: My understanding is the individual process
21 servers don't have these logbooks.
22    THE COURT: And corporate defendants do not have them?
23    MR. SKLAR: No. They're independent contractors.
24 It's their responsibility to hold onto them.
25    THE COURT: I think you should make a written

16RKSYKC          Conference          Page 13

1  representation --
2       MR. SKLAR: OK.
3       THE COURT: Actually, the representation should come
4  from someone at the client under oath, who will say, if it's
5  true, that the corporate defendants do not have the logbooks,
6  that the logbooks were kept in the possession of the individual
7  process servers; and, if you are representing the individual
8  process servers, confirm with each of them, and they should
9  provide a sworn statement that they do not have any logbooks.
10      MR. SKLAR: Absolutely, your Honor. But as I say, the
11 information that's in there would be the exact same information
12 that is in the electronic database which they have, which is in
13 the affidavit of service.
14      THE COURT: It doesn't matter whether it's
15 duplicative. I think they would be entitled to see them if
16 they exist. If you're saying they do not exist, then let's not
17 fight about it. Make the representations in writing. When the
18 individual process servers are deposed, if the plaintiffs think
19 that they are lying about the existence of these logbooks and
20 they have something to point to, then they can come back to me
21 and I'll take a look at it. But there's no sense fighting over
22 it if their position is that they do not exist. If they say
23 that, then it would be a fair game at deposition to inquire
24 into did they ever exist, if so, what happened to them, when
25 were they destroyed or tossed or whatever; and then I can see.

16RKSYKC          Conference          Page 14

1  But let's make sure that they do a search and can confirm that
2  they do not have them.
3       MR. SKLAR: Fair enough.
4       Also, as far as the traverse hearing, again, it's not
5  limited to the Mel Harris defendants and --
6       THE COURT: Any objection to limiting it to traverse
7  hearings involving Mel Harris Associates?
8       MS. WILNER: Well, yes, your Honor, because the
9  purpose of requesting the information about the traverse
10 hearings is to gain information about the individual process
11 servers' practices. And their normal practices when they serve
12 process are the same, whether it's Mel Harris or somebody else
13 that they're serving for.
14      THE COURT: Do you have the resources to process all
15 this information?
16      MS. WILNER: Your Honor, we believe there are not very
17 many traverse hearings, because they're rarely held.
18      THE COURT: For what period of time did you go back?
19      MS. WILNER: I believe we went back to 2006, which is
20 the period of the class, the proposed class.
21      THE COURT: Is there a record kept -- do we know what
22 we're talking about -- in terms of volume?
23      MR. SKLAR: I don't know, your Honor. I don't think
24 there's a button, that you can press a "traverse hearing"
25 button and spit it out.

16RKSYKC          Conference          Page 15

1       THE COURT: Tell me what you are asking for with
2  respect to traverse hearings.
3       MS. WILNER: Well, we had asked for all documents that
4  they have that pertain to them, so that would include
5  information just about whether a traverse hearing was scheduled
6  as well as if they happened to have a transcript of the
7  traverse hearing, which they may be unlikely to have. But even
8  knowing how many hearings were scheduled over a period of time
9  would be helpful to our case.
10      MR. SKLAR: Again, I don't see how that is at all
11 relevant or reasonably calculated to lead to any sort of
12 information about whether, if some other client has a policy of
13 pressing traverse hearings and another client has a policy of
14 pressing for traverse hearings only on Tuesday and Mel Harris
15 has a different policy, how that's at all relevant to this
16 case, the members of the class.
17      MS. WILNER: The traverse hearing --
18      THE COURT: My concern is, unless there's a file kept
19 on traverse hearings, how do you figure out how many traverse
20 hearings there were, when they occurred?
21      MR. SKLAR: If I may, your Honor, why don't we fold
22 that into the meet-and-confer and let me talk to my client and
23 try and get some answers on that subject.
24      THE COURT: Yes, some of this should have been done
25 already.

16RKSYKC          Conference          Page 16

1       Let me give you some general thoughts:
2       In general, I think the issue of the number of
3  traverse hearings that are conducted is relevant. If many of
4  these cases result in traverse hearings, I think that could be
5  relevant, could lead to relevant evidence. I think I'm a
6  little skeptical about non-Mel Harris. But I think SamSERV
7  needs to provide some information as to how these things are
8  logged, whether there is a reference, whether there is any kind
9  of collection of data relating to traverse hearings. In other
10 words, I don't know that -- you'd have to almost look through
11 every file to see whether there was a traverse hearing -- and
12 I'm sympathetic to that -- but maybe there's a master calendar,
13 there's a calendar kept of when these hearings are scheduled.
14      So I'm inclined to rule that much of this is relevant.
15 I am a little bit sympathetic to whether it would create too
16 much of a burden. It depends on the volume. I think that the
17 SamSERV defendants need to provide some information about
18 recordkeeping for these kinds of things. I don't know if there
19 would be a mechanism for keeping track of this. Expenses
20 maybe? I don't know if there's a record for expenses related
21 to traverse hearings. But if there was a way of doing it, that
22 ought to be done. So hopefully that gives you some guidance.
23      MR. SKLAR: Thank you, your Honor.
24      THE COURT: OK, what's next?
25      MS. WILNER: Your Honor, we requested a copy of an

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

| 16RKSYKC | Conference | Page 17 |
| --- | --- | --- |

1 Access database that's maintained by the SamSERV defendants
2 that concerns service of process. So all of the records of
3 service that they've done for the Mel Harris defendants are in
4 an Access database. Again, it would be easy for them to make a
5 copy of this database for the relevant time and produce it to
6 us, and they have refused to do that.
7         MR. SKLAR: Again, we're getting into a similar issue
8 that, if I'm not mistaken -- I apologize, I don't know that the
9 request was limited to the Mel Harris defendants; I think it
10 was all process servers, for everybody under the sun, which I
11 think is really wholly improper and overbroad. And, again, all
12 it is --
13         THE COURT: Is that a relevancy objection?
14         MR. SKLAR: Relevance and burdensomeness.
15         THE COURT: If it's just a database, how is that
16 burdensome?
17         MR. SKLAR: Because then I would go with the
18 relevance, your Honor, is that --
19         THE COURT: Is there anything other than relevance?
20         MR. SKLAR: No, your Honor. I believe it is just a
21 database, and it just lists of names and dates.
22         THE COURT: Yes?
23         MS. WILNER: The database would contain names, dates,
24 also the type of service that's alleged and --
25         THE COURT: Why do you need it for others if Mel

| 16RKSYKC | Conference | Page 18 |
| --- | --- | --- |

1 Harris is not involved?
2         MS. WILNER: Actually, the request was for electronic
3 documents concerning service of process for the Mel Harris
4 defendants.
5         THE COURT: OK, for this, you're limiting it to Mel
6 Harris?
7         MS. WILNER: It is limited to Mel Harris already.
8         THE COURT: The objection is overruled. SamSERV shall
9 provide the database in question for all service done on behalf
10 of Mel Harris purported to be done on behalf of Mel Harris.
11         MR. SKLAR: And the time period?
12         THE COURT: For the period of the class. Anything
13 else? Next.
14         MS. WILNER: Yes, your Honor, the Mel Harris
15 defendants have produced a series of documents that have
16 crucial information redacted. So this comes up in, for
17 example, the purchase and sale agreements for the portfolios of
18 the accounts where they have omitted information such as the
19 purchase price for the portfolios, the amount that it would
20 cost them to obtain documentation of the debts if they're even
21 able to obtain documentation of the debts, and information like
22 that.
23         Now, this information is relevant to our claims
24 because we have alleged that they have this scheme to produce
25 these debts cheaply, to not spend very much money. The

| 16RKSYKC | Conference | Page 19 |
| --- | --- | --- |

1 financial aspects are crucial --
2         THE COURT: The purchase and sale agreements are to
3 buy groups of debt?
4         MS. WILNER: Right, and the individual plaintiffs'
5 debt is one debt among many purchases that are happening all at
6 the same time.
7         THE COURT: They're not actually getting the
8 underlying documents; they're just buying --
9         MS. WILNER: A spreadsheet, correct.
10         THE COURT: -- a spreadsheet and the right to pursue
11 those?
12         MS. WILNER: Right.
13         THE COURT: And then these things say that if you want
14 individual documentation, it would cost you X dollars?
15         MS. WILNER: They may say that. Sometimes they say
16 that no further documentation is available, but in particular,
17 what we're talking about is where they say exactly that, that
18 if you want more documentation, you can get this type of
19 documentation --
20         THE COURT: OK, what's the objection?
21         MR. SCHER: Your Honor, the primary objection we have
22 is that with respect to the purchase and sale agreements,
23 they're contracts with third parties and they have
24 confidentiality clauses in which -- that's why they were
25 redacted, because we were told that we can't -- by these third

| 16RKSYKC | Conference | Page 20 |
| --- | --- | --- |

1 parties -- you're not to give up this information. We tried to
2 accommodate the plaintiffs by giving them at least the
3 agreements in the redacted form, but without the court order --
4         THE COURT: All right, the objection is overruled.
5 The Mel Harris defendants are hereby ordered to produce the
6 redacted information from the purchase and sale agreements.
7 Next?
8         MS. WILNER: Your Honor, we have requested from all of
9 the defendants that they produce privilege logs if indeed they
10 are withholding documents on the basis of privilege, and they
11 have not done so.
12         THE COURT: Privilege logs, they should be produced if
13 they're required to be produced.
14         MR. SCHER: With respect to Mel Harris, other than the
15 issue that we've discussed earlier today, I don't think we've
16 claimed privilege as to any documents. I can put that on
17 paper. I'm not sure we asserted it anywhere else.
18         THE COURT: All right.
19         MR. GOLDFARB: On behalf of the Leucadia defendants, I
20 have to go back and check, your Honor. I don't think we
21 claimed privilege but we may have. And we'll certainly provide
22 the logs very promptly.
23         MR. SKLAR: And, again, on behalf of the SamSERV, I
24 don't believe any documents are withheld.
25         THE COURT: If any documents have been withheld by

16RKSYKC        Conference        Page 21

1 either side on the basis of privilege, including attorney work
2 product, a privilege log shall be provided forthwith. It
3 should be done.
4        Depending on what happens with the database, talk
5 about it; maybe there's a way to summarize the reactions, if
6 necessary, but you can include that in your discussions.
7        OK, what's next?
8        MS. WILNER: Your Honor, there is just one more thing
9 that we wanted to clarify.
10        THE COURT: Yes.
11        MS. WILNER: That is that many of the objections that
12 defendants have been making to our discovery requests are
13 objections to providing information that relates to people
14 other than the four named plaintiffs. I know that we've talked
15 about that some today, but we just wanted a ruling or
16 clarification that information that pertains to class members
17 other than plaintiffs is relevant and discoverable.
18        THE COURT: Yes?
19        MR. GOLDFARB: Yes, your Honor. We object to that.
20 Our view of the law under Rule 23, is that there is no class at
21 this moment in time, and the plaintiffs are not entitled to get
22 detailed information, contact information, regardless of what
23 they're going to use it for, about putative class members. And
24 there's case law in support of that.
25        THE COURT: Well, I think we've addressed that to some

16RKSYKC        Conference        Page 22

1 extent. The plaintiffs would agree not to make any efforts to
2 contact any putative class members without permission from the
3 Court. So I think all that would be left would be either a
4 burdensomeness or a relevancy argument. And I would say I did
5 not bifurcate discovery, so discovery hasn't been bifurcated;
6 on the other hand, I am sensitive to the issue of producing in
7 hard copy, for example, 120,000 files where the case has not
8 yet been certified. And it may be that some of these things
9 we'll have to wait until I decide the motion, but I have not
10 blanketly ruled anything off limits because discovery has not
11 been bifurcated. But hopefully, the parties will work with
12 each other and try to use some common sense in dealing with
13 these things.
14        Have the parties -- I haven't read Wal-Mart, but I
15 assume that's the subject of some discussion?
16        MR. GOLDFARB: Your Honor, we would request leave to
17 file a very brief, five-page, letter setting forth the
18 implications of the Wal-Mart ruling on the pending class cert.
19        THE COURT: You filed your briefs when?
20        MR. GOLDFARB: We filed our opposition briefs the 13th
21 of June.
22        THE COURT: Would it make sense to let you withdraw
23 those briefs and give you like a week or so to supplement, or
24 do you want to incorporate it? Obviously, I want to hear what
25 the parties think on Wal-Mart, of Wal-Mart, and whether we do

16RKSYKC        Conference        Page 23

1 it in separate letters or what --
2        MR. GOLDFARB: We prefer just a separate letter, a
3 five-page letter, that lays out our arguments as to why
4 basically the standard for commonality has been changed by the
5 Wal-Mart case.
6        THE COURT: And when are your papers due?
7        MR. BRINCKERHOFF: I believe it's July 22nd. So we
8 can incorporate it in our reply obviously. And we don't have
9 an objection to -- is it three?
10        MR. SCHER: Just one combined letter.
11        MR. BRINCKERHOFF: One combined five-page letter
12 sounds fine. Obviously we have a different view as to the
13 significance of the Wal-Mart decision.
14        THE COURT: I want to hear both views.
15        MR. BRINCKERHOFF: And you will hear them both.
16        THE COURT: The defendants can submit a joint letter
17 addressing the impact, if any, of Wal-Mart on the pending
18 motions. When can you do that?
19        MR. GOLDFARB: One week, your Honor.
20        THE COURT: OK. I'll do better than a week. Eight
21 days. A week is the 4th of July, so July 5th. And are you all
22 right with your current date or do you need a few more days
23 now?
24        MR. BRINCKERHOFF: One more week, Judge.
25        THE COURT: Is there an objection if I give them

16RKSYKC        Conference        Page 24

1 another week since they have to wait for your letter?
2        MR. SCHER: No, your Honor.
3        MR. GOLDFARB: No, your Honor.
4        THE COURT: OK, the plaintiffs can have an additional
5 week for their reply, and it will be teed up. Maybe it will be
6 one of the first decisions applying Wal-Mart or not applying
7 Wal-Mart, we'll see.
8        OK, any other issues today?
9        MS. WILNER: Yes, your Honor. I think it would be
10 helpful for the parties to have some deadlines in terms of the
11 actual production of the discovery that you ordered produced,
12 particularly the SamSERV database.
13        THE COURT: When can you produce the SamSERV database?
14        MR. SKLAR: I'm not sure what the technological side
15 of that -- what is involved, so I would say three weeks.
16        THE COURT: All right, three weeks is reasonable.
17 Three weeks. And I think the other things are still under
18 discussion. So meet soon and work out the deadlines as well.
19        What's the outside discovery cutoff in the case? I
20 don't remember.
21        MR. GOLDFARB: September, second week in September, I
22 believe.
23        THE COURT: Do you want a little more time?
24        MR. BRINCKERHOFF: I think we're going to need more
25 time. Our plan, just so the Court understands, was to try to

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES                                                    June 27, 2011

| 16RKSYKC | Conference | Page 25 |
|---|---|---|

1 be, as I said, efficient. And if we get these two databases,
2 the Mel Harris database and the SamSERV one, we're hopeful we
3 will need very little past that and we can conduct our
4 depositions and be done, but we can't really know that until we
5 get all the electronic information. So another month or so, I
6 think, is inevitably going to be needed even if things go
7 smoothly.
8          THE COURT: What do the defendants think?
9          MR. GOLDFARB: Your Honor, a lot will be affected by
10 the outcome of the class certification ruling.
11          THE COURT: Well, if I don't get it fully briefed
12 until the end of July, I'll do the best I can, but I don't know
13 that I can get it done by September.
14          MR. GOLDFARB: We're OK adding what plaintiffs are
15 seeking an additional month.
16          THE COURT: Does anyone have the date?
17          I'll issue is a scheduling order, but the idea is,
18 we'll extend discovery by about a month and unless the parties
19 need to see me, what I'll do is, we'll extend the date, which
20 should have been the same day as the discovery cutoff. We'll
21 extend the date of the next pretrial conference. And in part
22 it may depend on what's happening with the motion.
23          But I don't have much of a district court docket left.
24 The Second Circuit doesn't sit during the summer, so if you get
25 it in, I might be able to get to it although I start sitting

| 16RKSYKC | Conference | Page 26 |
|---|---|---|

1 again in late August. So try not to delay the class
2 certification papers, as that will hold things up.
3          OK, anything else today?
4          MR. GOLDFARB: No, your Honor.
5          MR. BRINCKERHOFF: No, Judge.
6          MS. WILNER: No, your Honor.
7          THE COURT: Is there any desire to talk settlement off
8 the record or no?
9          MR. SCHER: Your Honor, before we get into that, I
10 just wanted to confirm with counsel --
11          THE COURT: On the record?
12          MR. SCHER: Yes, still on the record.
13          This is with respect to subpoenas we had served. I
14 think we had an issue outstanding. I think we reached an
15 agreement with respect to the scope of -- they'll provide us
16 with carrier names and numbers, and we'll agree to limit the
17 subpoenas' scope and time frame. So I don't know if counsel
18 wants to put that on the record or --
19          MR. BRINCKERHOFF: Judge, I don't think it's
20 necessary. We're happy to do it if it helps the defendants in
21 some way. We did reach an agreement on that as well as -- the
22 Court may or may not remember -- there were five plaintiffs who
23 accepted Rule 68 offers of judgment and there was attorneys'
24 fees that were associated with that. You had extended, at our
25 joint request, the deadline to make a fee application, and

| 16RKSYKC | Conference | Page 27 |
|---|---|---|

1 we've just now reached an agreement, given all of the privilege
2 issues that are going to arise in producing time records in the
3 middle of the case, to hold any application for fees in
4 abeyance. And we're going to work out the language as to what
5 will trigger that, but we'll be submitting a letter to the
6 Court.
7          THE COURT: All right.
8          MR. SCHER: I don't know if the Court's ready, but we
9 can stipulate right now; I think we've all agreed that we don't
10 object.
11          MR. BRINCKERHOFF: I think our preference would be to
12 put in writing in a letter to the Court, or a writing amongst
13 ourselves so it's clear exactly what is.
14          THE COURT: That's fine. Work it out. It's better if
15 it's in writing, and it can either a stipulation which I can so
16 order, or it can be a letter which I can so order, whatever is
17 easier for all of you.
18          THE WITNESS: Thank you, Judge.
19          THE COURT: Anything else? Is there any desire to see
20 me off the record or no?
21          MR. SCHER: Defendants would have no objection.
22          MR. BRINCKERHOFF: We're happy to meet with the Court
23 at any time but --
24          THE COURT: Let's go off the record.
25                    * * *

This Page Intentionally Left Blank

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

**1**

**120,000 (8)**
4:5,21,25;5:18;6:5;
7:20;9:20;22:7
**13th (1)**
22:20

**2**

**2 (1)**
7:2
**2006 (1)**
14:19
**22nd (1)**
23:7
**23 (4)**
3:25;4:10,18;21:20

**3**

**30b6 (1)**
8:3

**4**

**4th (1)**
23:21

**5**

**5th (1)**
23:21

**6**

**68 (1)**
26:23

**A**

**abeyance (1)**
27:4
**able (3)**
3:13;18:21;25:25
**Absolutely (1)**
13:10
**accepted (1)**
26:23
**Access (2)**
17:1,4
**accommodate (1)**
20:2
**accounts (1)**
18:18
**actual (1)**
24:11
**actually (4)**
4:21;13:3;18:2;19:7
**add (2)**
9:7;11:9
**adding (1)**

25:14
**additional (3)**
10:9;24:4;25:15
**address (2)**
6:12;11:19
**addressed (2)**
4:12;21:25
**addressing (1)**
23:17
**affected (1)**
25:9
**affidavit (1)**
13:13
**affidavits (1)**
6:3
**again (7)**
14:4;15:10;17:4,7,11;
20:23;26:1
**against (1)**
8:11
**agree (2)**
22:1;26:16
**agreed (1)**
27:9
**agreement (3)**
26:15,21;27:1
**agreements (5)**
18:17;19:2,22;20:3,6
**alleged (5)**
5:12,15;11:18;17:24;
18:24
**almost (1)**
16:10
**although (1)**
25:25
**among (1)**
19:5
**amongst (1)**
27:12
**amount (2)**
6:12;18:19
**amounts (2)**
3:13;7:6
**anticipation (1)**
9:20
**anymore (1)**
12:12
**apologize (1)**
17:8
**application (3)**
4:15;26:25;27:3
**applications (1)**
3:12
**applying (2)**
24:6,6
**approach (1)**
11:6
**argument (2)**
9:14;22:4
**arguments (1)**
23:3
**arise (1)**
27:2

aspects (1)
19:1
asserted (1)
20:17
assertion (3)
8:9,20,22
associated (1)
26:24
Associates (1)
14:7
assume (1)
22:15
attempting (1)
10:14
attorney (3)
9:18,23;21:1
attorney-client (1)
4:6
attorneys' (1)
26:23
August (1)
26:1
available (2)
12:16;19:16

**B**

back (5)
11:10;13:20;14:18,19;
20:20
based (3)
4:5;7:1;10:14
basically (1)
23:4
basis (3)
10:15;20:10;21:1
behalf (7)
2:17,22;3:21;18:9,10;
20:19,23
behind (1)
8:6
best (2)
12:14;25:12
better (2)
23:20;27:14
beyond (4)
4:9;5:12,14;7:7
bifurcate (2)
4:16;22:5
bifurcated (2)
22:5,11
bit (2)
8:8;16:15
blanketly (1)
22:10
Both (3)
3:8;23:14,15
Brett (2)
2:17;3:21
brief (1)
22:17
briefed (1)
25:11

briefs (3)
22:19,20,23
BRINCKERHOFF (14)
2:7,7;7:25;10:3,12;
23:7,11,15,24;24:24;
26:5,19;27:11,22
broad (1)
7:8
burden (1)
16:16
burdensome (3)
3:15;6:4;17:16
burdensomeness (4)
9:9,14;17:14;22:4
button (3)
5:8;14:24,25
buy (1)
19:3
buying (1)
19:8

**C**

calculated (1)
15:11
calendar (2)
16:12,13
call (3)
5:1;7:16;9:18
can (33)
5:25;6:1,7,23;8:7;
10:8,10,12,21,22;11:9;
12:13,14;13:20,25;14:1,
24;19:18;20:16;21:6;
23:8,16,18;24:4,13;25:3,
12,13;27:9,15,15,16,16
Carolyn (1)
2:10
carrier (1)
26:16
case (14)
3:10,17;4:1,6,14;
10:24;12:2;15:9,16;
21:24;22:7;23:5;24:19;
27:3
cases (2)
9:5;16:4
cause (1)
2:4
cert (1)
22:18
certain (5)
6:1,16,18,23;7:13
certainly (3)
5:21;10:12;20:21
certification (4)
4:2,22;25:10;26:2
certified (1)
22:8
cetera (1)
7:10
chance (1)
11:7

changed (1)
23:4
cheaply (1)
18:25
check (1)
20:20
Circuit (1)
25:24
cited (1)
9:5
City (1)
4:8
civil (1)
2:4
claim (2)
8:19;12:15
claimed (2)
20:16,21
claiming (2)
8:13,20
claims (1)
18:23
clarification (1)
21:16
clarify (2)
12:13;21:9
class (22)
4:3,5,11,18,22;5:11;
6:21;7:6;11:6,7;12:7;
14:20,20;15:16;18:12;
21:16,20,23;22:2,18;
25:10;26:1
Claudia (2)
2:9,22
clauses (1)
19:24
clear (1)
27:13
CLERK (1)
2:4
client (4)
13:4;15:12,13,22
clients (5)
4:4,7,7;5:4;12:9
client's (1)
5:2
clients' (1)
5:14
Coffey (2)
2:10,10
collect (2)
3:13;7:4
collection (5)
3:14;7:5;8:11;11:1;
16:9
combined (2)
23:10,11
common (2)
22:12
commonality (1)
23:4
communications (2)
5:4;7:9

concern (2)
10:18;15:18
concerned (3)
5:16,18;7:2
concerning (1)
18:3
concerns (1)
17:2
condition (1)
11:8
conduct (1)
25:3
conducted (1)
16:3
confer (2)
7:11,23
conference (2)
2:5;25:21
confidential (2)
6:24;9:10
confidentiality (2)
7:15;19:24
confirm (2)
13:8;14:1;26:10
conspiracy (1)
5:12
contact (2)
21:22;22:2
contain (2)
3:9;17:23
contractors (1)
12:23
contracts (1)
19:23
copies (1)
11:13
copy (4)
10:6;16:25;17:5;22:7
corporate (3)
12:10,22;13:5
cost (2)
18:20;19:14
counsel (3)
9:3;26:10,17
course (1)
11:18
court (96)
2:1,2,13,19,24,25;3:2,
4,18,20,23;4:8,11,23;
5:6,16,21,24;6:15,22;
7:2,8;8:1,24;9:8,23;10:1,
5,16,20;11:4,8,24;12:3,
5,19,22,25;13:3,14;14:6,
14,18,21;15:1,18,24;
16:24;17:13,15,19,22,
25;18:5,8,12;19:2,7,10,
13,20;20:3,4,12,18,25;
21:10,18,25;22:3,19,22;
23:6,14,16,20,25;24:4,
13,16,23,25;25:8,11,16,
23;26:7,11,22;27:6,7,12,
14,19,22,24
Court's (1)

27:8
create (1)
16:15
crucial (2)
18:16;19:1
current (1)
23:22
custodian (1)
8:3
cutoff (2)
24:19;25:20

**D**

data (14)
4:25;6:11,13,16,18,23;
7:13;8:10,17;9:14;
10:21,23;12:18;16:9
database (15)
8:5,6,15;13:12;17:1,4,
5,15,21,23;18:9;21:4;
24:12,13;25:2
databases (4)
3:9,15;11:20;25:1
date (4)
23:22;25:16,19,21
dates (2)
17:21,23
day (1)
25:20
days (2)
23:21,22
deadline (1)
26:25
deadlines (2)
24:10,18
deal (1)
4:19
dealing (3)
4:17;5:11;22:12
deals (1)
9:1
debt (3)
19:3,5,5
debts (3)
18:20,21,25
decide (1)
22:9
decision (1)
23:13
decisions (1)
24:6
default (1)
3:12
defendant (1)
12:10
defendants (30)
2:15,16,18;3:8,8,9,22;
5:13;10:25;11:7,13;
12:2,4,22;13:5;14:5;
16:17;17:1,3,9;18:4,15;
20:5,9,19;21:12;23:16;
25:8;26:20;27:21

definition (1)
4:5
delay (1)
26:1
deliberative (1)
8:2
demand (1)
9:20
denied (1)
4:16
depend (1)
25:22
Depending (1)
21:4
depends (2)
9:24;16:16
depose (1)
6:6
deposed (1)
13:18
deposition (3)
6:10;8:3;13:23
depositions (1)
25:4
depository (1)
8:4
DEPUTY (1)
2:4
desire (2)
26:7;27:19
destroyed (1)
13:25
detailed (1)
21:22
different (4)
9:8,8;15:15;23:12
directed (1)
7:11
disagreement (1)
7:15
discoverable (3)
4:1,10;21:17
discovery (16)
2:19;3:1,7;4:12,12,18;
8:1;9:5;21:12;22:5,5,10;
24:11,19;25:18,20
discussed (1)
20:15
discussion (4)
11:5,9;22:15;24:18
discussions (2)
5:25;21:6
dispute (1)
7:18
district (1)
25:23
docket (1)
25:23
document (1)
7:3
documentation (6)
18:20,21;19:14,16,18,
19

documents (10)
4:3;11:23;15:3;18:3,
15;19:8;20:10,16,24,25
dollars (1)
19:14
done (12)
5:22,23;7:19;15:24;
16:22;17:3;18:9,10;
20:11;21:3;25:4,13
due (1)
23:6
duplicative (1)
13:15
during (1)
25:24
Dziennik (1)
3:25

**E**

earlier (1)
20:15
easier (1)
27:17
easily (1)
3:15
easy (2)
5:8;17:4
efficient (1)
25:1
effort (1)
7:19
efforts (4)
7:4;8:11;11:1;22:1
Eight (1)
23:20
either (4)
7:16;21:1;22:3;27:15
electronic (10)
3:7,9,14;4:24;5:2;7:4;
11:20;13:12;18:2;25:5
electronically (4)
5:3;7:12;8:25;11:3
elicit (1)
6:24
eliminated (1)
9:23
else (6)
10:8;14:12;18:13;
20:17;26:3;27:19
elsewhere (1)
12:16
end (1)
25:12
engaged (1)
5:15
engaging (1)
10:25
enough (2)
11:4;14:3
entire (1)
5:14
entitled (2)

13:15;21:21
equivalent (1)
10:7
essentially (2)
4:7;11:16
et (1)
7:10
evaluate (1)
8:16
even (8)
4:17,17,18;7:1;9:21;
15:7;18:20;25:6
everybody (2)
4:20;17:10
everyone (1)
10:8
evidence (1)
16:5
exact (2)
8:10;13:11
Exactly (1)
5:10;19:17;27:13
example (3)
6:2;18:17;22:7
Excel (2)
8:14;10:4
exist (5)
12:19;13:16,16,22,24
existence (1)
13:19
Expenses (2)
16:19,20
experiences (1)
2:6
expert (1)
10:4
exported (1)
8:14
extend (3)
25:18,19,21
extended (1)
26:24
extent (1)
22:1
extraordinary (1)
7:19
extremely (1)
3:10

**F**

fact (1)
8:7
factual (2)
7:15,18
Fair (3)
11:4;13:23;14:3
far (2)
12:15;14:4
fee (1)
26:25
fees (2)
26:24;27:3

**few (1)**
23:22
**field (1)**
9:18
**fields (11)**
6:11,13,16,18,19,23;
7:13;8:17;9:14,18,22
**fight (1)**
13:17
**fighting (1)**
13:21
**figure (1)**
15:19
**file (5)**
7:14;10:4;15:18;
16:11;22:17
**filed (2)**
22:19,20
**files (13)**
4:6,6,21,24,25;5:2,2,
14,18;6:5;7:4,20;22:7
**financial (2)**
9:2;19:1
**fine (2)**
23:12;27:14
**firms (1)**
5:2
**first (8)**
2:20;3:5,6,24;5:21;
7:21;8:2;24:6
**five (2)**
4:8;26:22
**five-page (3)**
22:17;23:3,11
**fold (1)**
15:21
**form (1)**
20:3
**forth (1)**
22:17
**forthwith (1)**
21:2
**forward (1)**
3:17
**four (3)**
9:19;12:4;21:14
**frame (1)**
26:17
**fully (1)**
25:11
**further (2)**
10:17;19:16

**G**

**gain (1)**
14:10
**game (1)**
13:23
**general (2)**
16:1,2
**given (3)**
4:18;9:22;27:1

**gives (1)**
16:22
**giving (2)**
11:7;20:2
**goes (2)**
4:9;9:4
**Goldfarb (14)**
2:14,14;4:15;20:19;
21:19;22:16,20;23:2,19;
24:3,21;25:9,14;26:4
**groups (1)**
19:3
**guidance (1)**
16:22

**H**

**hand (1)**
22:6
**happened (2)**
13:24;15:6
**happening (2)**
19:5;25:22
**happens (1)**
21:4
**happy (3)**
10:15;26:20;27:22
**hard (2)**
8:19;22:7
**Harris (23)**
2:4,18;3:8,22;8:4;
12:8;14:5,7,12;15:14;
16:6;17:3,9;18:1,3,6,7,
10,10,14;20:5,14;25:2
**hear (3)**
22:24;23:14,15
**hearing (9)**
6:22;7:17;9:9;14:4,24;
15:5,7,17;16:11
**hearings (18)**
11:14,22,23;12:1;
14:7,10,17;15:2,8,13,14,
19,20;16:3,4,9,13,21
**held (2)**
14:17
**help (1)**
11:11
**helpful (2)**
15:9;24:10
**helps (1)**
26:20
**hereby (1)**
20:5
**hold (3)**
12:24;26:2;27:3
**Honor (34)**
2:21;3:21;4:14,16;
5:10,20,23;6:9;7:2;9:1;
13:10;14:8,16,23;15:21;
16:23,25;17:18,20;
18:14;19:21;20:8,20;
21:8,19;22:16;23:19;
24:2,3,9;25:9;26:4,6,9
**inquire (1)**
13:23

**hopeful (1)**
25:2
**hopefully (2)**
16:22;22:11
**hundred (1)**
11:2
**hundreds (1)**
11:1

**I**

**idea (1)**
25:17
**identify (2)**
2:3;3:4
**identities (1)**
4:3
**impact (1)**
23:17
**implications (1)**
22:18
**important (1)**
3:10
**improper (2)**
11:1;17:11
**inclined (1)**
16:14
**include (2)**
15:4;21:6
**includes (1)**
3:11
**including (3)**
7:4,5;21:1
**incorporate (2)**
22:24;23:8
**indeed (1)**
20:9
**independent (1)**
12:23
**indication (1)**
8:12
**individual (14)**
6:19,20;8:11;11:14,
17;12:1,11,20;13:6,7,18;
14:10;19:4,14
**individually (1)**
7:14
**individuals (1)**
11:24
**inevitably (1)**
25:6
**informally (1)**
6:8
**information (38)**
3:10,11,14,16;6:12,13,
20;8:5,6,13,17,22,25;
9:2,15;11:16,19;12:15;
13:11,11;14:9,10,15;
15:5,12;16:7,17;18:16,
18,21,23;20:1,6;21:13,
16,22,22;25:5
**inquire (1)**
13:23

**Insofar (1)**
10:13
**instance (1)**
7:21
**intended (1)**
9:6
**internal (1)**
5:4
**into (4)**
13:24;15:22;17:7;26:9
**involved (2)**
18:1;24:15
**involving (2)**
11:14;14:7
**issue (13)**
4:2,13,16;9:4;10:10,
18;11:12;16:2;17:7;
20:15;22:6;25:17;26:14
**issues (4)**
2:19;9:8;24:8;27:2
**items (1)**
3:1

**J**

**joint (2)**
23:16;26:25
**Jordan (1)**
2:16
**Josh (1)**
2:12
**Judge (6)**
7:25;10:13;23:24;
26:5,19;27:18
**judgment (1)**
26:23
**judgments (2)**
3:12;7:5
**July (4)**
23:7,21,21;25:12
**June (1)**
22:21

**K**

**keep (3)**
8:23;11:17;12:10
**keeping (1)**
16:19
**kept (5)**
6:7;13:6;14:21;15:18;
16:13
**kind (3)**
6:4;10:13;16:8
**kinds (1)**
16:18
**knowing (1)**
15:8
**knowledge (1)**
6:6

**L**

**language (1)**
27:4
**last (1)**
4:8
**late (1)**
26:1
**law (3)**
5:2;21:20,24
**lawsuit (1)**
9:7
**lays (1)**
23:3
**lead (2)**
15:11;16:5
**least (2)**
11:7;20:2
**leave (1)**
22:16
**left (2)**
22:3;25:23
**legal (3)**
4:5,21;5:2
**letter (12)**
2:25;7:1;22:17;23:2,3,
10,11,16;24:1;27:5,12,
16
**letters (1)**
23:1
**Leucadia (3)**
2:14;4:7;20:19
**limit (2)**
9:14;26:16
**limited (5)**
12:7,8;14:5;17:9;18:7
**limiting (2)**
14:6;18:5
**limits (1)**
22:10
**lines (1)**
8:18
**lists (1)**
17:21
**little (7)**
8:8,18,19;16:6,15;
24:23;25:3
**log (2)**
8:9;21:2
**logbooks (13)**
11:13,16,21,25;12:10,
13,17,19,21;13:5,6,9,19
**logged (1)**
16:8
**logs (3)**
20:9,12,22
**look (2)**
13:21;16:10
**looking (4)**
4:3;6:20;10:20,23
**lot (1)**
25:9
**Lou (1)**
2:14
**lying (1)**

13:19

## M

main (1)
9:25
maintain (1)
5:3
maintained (1)
17:1
making (1)
21:12
many (9)
2:2;11:24;12:3;14:17;
15:8;19;16:3;19:5;21:11
master (1)
16:12
materials (5)
5:7,7,9;6:24;9:10
matter (1)
13:14
matters (1)
3:1
Matthew (1)
2:7
may (11)
6:9;7:25;9:10;15:7,21;
19:15;20:21;22:8;25:22;
26:22,22
maybe (5)
10:19;16:12,20;21:5;
24:5
mechanism (2)
9:6;16:19
meet (4)
7:11,23;24:18;27:22
meet-and-confer (1)
15:22
Mel (21)
2:17;3:7,22;8:3;12:8;
14:5,7,12;15:14;17:3,9,
25;18:3,5,7,10,10,14;
20:5,14;25:2
member (1)
4:3
members (8)
6:21;7:6;11:6,7;15:16;
21:16,23;22:2
memorandums (1)
5:4
merits (1)
4:18
methods (3)
3:11,13;7:5
middle (1)
27:3
might (2)
10:19;25:25
mistaken (1)
17:8
moment (1)
21:21
money (1)

18:25
month (3)
25:5,15,18
more (7)
9:12;19:18;21:8;
23:22,24;24:23,24
most (3)
6:10;7:2;12:12
motion (2)
22:9;25:22
motions (1)
23:18
move (1)
3:16
moved (1)
4:22
much (5)
10:10;16:14,16;18:25;
25:23

## N

named (6)
5:22;9:15,19;12:11;
21:14,17
names (3)
17:21,23;26:16
narrow (2)
6:15,23;10:9
narrowed (1)
6:17
necessary (3)
8:21;21:6;26:20
NEDAP (1)
2:22
need (9)
3:16;7:13;11:11;
16:17;17:25;23:22;
24:24;25:3,19
needed (1)
25:6
needs (1)
16:7
New (2)
4:8;9:7
next (7)
11:10,12;16:24;18:13;
20:7;21:7;25:21
none (1)
12:13
non-Mel (1)
16:6
normal (1)
14:11
notes (2)
9:18,23
notice (1)
10:17
number (1)
16:2
numbers (1)
26:16

## O

oath (1)
13:4
object (3)
11:8;21:19;27:10
objection (15)
3:18,20,24;10:13;
12:5,6;14:6;17:13;18:8;
19:20,21;20:4;23:9,25;
27:21
objections (4)
9:9;10:9;21:11,13
obtain (2)
18:20,21
Obviously (3)
22:24;23:8,12
occurred (1)
15:20
off (5)
12:6;22:10;26:7;
27:20,24
offers (1)
26:23
OK (13)
3:18;5:24;12:5;13:2;
16:24;18:5;19:20;21:7;
23:20;24:4,8;25:14;26:3
omitted (1)
18:18
one (19)
3:5,5,5,6,7,8,7:18;
8:10;9:9,17,21;19:5;
21:8;23:10,11,19,24;
24:6;25:2
ones (1)
9:12
only (4)
4:23;5:24;10:18;15:14
onto (1)
12:24
open (1)
2:1
opposition (1)
22:20
order (5)
10:16;20:3;25:17;
27:16,16
ordered (2)
20:5;24:11
ordering (1)
5:16
others (2)
8:25;17:25
ought (2)
7:21;16:22
ourselves (1)
27:13
out (19)
4:24;5:9;6:1,2,7;7:13,
23;9:6,7;10:5,6,11,16;
14:25;15:19;23:3;24:18;

27:4,14
outcome (1)
25:10
outset (1)
4:14
outside (1)
24:19
outstanding (2)
3:4;26:14
over (4)
3:1;4:8;13:21;15:8
overbroad (2)
12:7;17:11
overruled (2)
18:8;20:4

## P

pack (1)
11:8
page (1)
7:2
paper (3)
8:5;11:16;20:17
papers (2)
23:6;26:2
part (1)
25:21
particular (2)
6:13;19:16
particularly (1)
24:12
parties (9)
2:5;7:11;19:23;20:1;
22:11,14,25;24:10;25:18
past (1)
25:3
pattern (2)
10:25;11:18
patterns (1)
10:23
pay (1)
7:21
pending (2)
22:18;23:17
people (4)
3:11;9:21;11:2;21:13
period (5)
14:18,20;15:8;18:11,
12
permission (1)
22:2
person (2)
6:6,7
pertain (1)
15:4
pertaining (2)
4:6;11:23
pertains (1)
21:16
pick (1)
7:9
pieces (1)

8:10
plaintiffs (32)
2:8,9,10,11,12,23;4:2,
20;5:22;6:19,21,22;
7:22;8:12;9:2,3,6,7,12,
16,19;10:14;11:5;13:18;
20:2;21:14,17,21;22:1;
24:4;25:14;26:22
plaintiffs' (2)
9:3;19:4
plan (1)
24:25
pleadings (1)
6:3
please (1)
2:6
point (3)
4:16;8:16;13:20
policies (1)
4:19
policy (3)
15:12,13,15
portfolios (2)
18:17,19
position (1)
13:22
possession (1)
13:6
possibility (1)
6:5
possible (1)
12:8
potential (2)
11:6;12:7
practice (2)
10:25;11:19
practices (2)
14:11,11
prefer (1)
23:2
preference (1)
27:11
press (1)
14:24
pressing (4)
9:13,13;15:13,14
pretrial (1)
25:21
price (1)
18:19
primary (1)
19:21
prime (1)
8:4
print (1)
4:24
printout (1)
10:1
private (1)
9:2
privilege (16)
5:18;6:14;7:14;8:9,9,
13,19,21;20:9,10,12,16,

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

21;21:1,2;27:1
privileged (8)
 5:7,9,17;6:2,24;7:9;
 9:10;10:19
problem (1)
 8:24
problems (1)
 5:1
procedures (1)
 4:19
process (19)
 5:15;9:5;10:21,22;
 11:15,17;12:1,9,11,20;
 13:7,8,18;14:10,12,14;
 17:2,10;18:3
produce (8)
 3:16;9:19;11:15;17:5;
 18:24;20:5,9;24:13
produced (8)
 6:18;8:14,18,21;
 18:15;20:12,13;24:11
producing (4)
 4:21;8:24;22:6;27:2
product (2)
 5:7;21:2
production (2)
 5:17;24:11
promptly (1)
 20:22
proposed (1)
 14:20
prove (1)
 10:24
provide (6)
 13:9;16:7,17;18:9;
 20:21;26:15
provided (1)
 21:2
providing (1)
 21:13
pulled (1)
 7:13
purchase (5)
 18:17,19;19:2,22;20:6
purchases (1)
 19:5
purported (1)
 18:10
purpose (1)
 14:9
pursue (1)
 19:10
pushing (1)
 5:8
put (3)
 20:16;26:18;27:12
putative (4)
 4:3;9:3;21:23;22:2

Q

quickly (1)
 10:10

quite (1)
 9:12

R

raising (1)
 8:7
rarely (1)
 14:17
reach (2)
 10:16;26:21
reached (2)
 26:14;27:1
read (1)
 22:14
ready (1)
 27:8
real (2)
 10:17,18
really (9)
 3:16;7:22;9:11,13,13;
 10:21,23;17:11;25:4
reason (1)
 8:7
reasonable (2)
 11:4;24:16
reasonably (1)
 15:11
record (11)
 11:16,17;12:17;14:21;
 16:20;26:8,11,12,18;
 27:20,24
recordkeeping (1)
 16:18
records (5)
 8:3,6;11:14;17:2;27:2
redacted (4)
 18:16;19:25;20:3,6
redactions (1)
 21:5
reference (1)
 16:8
refused (2)
 11:15;17:6
regardless (1)
 21:22
relate (1)
 12:1
related (1)
 16:20
relates (1)
 21:13
relating (1)
 16:9
Relevance (3)
 17:14,18,19
relevancy (1)
 9:11;17:13;22:4
relevant (9)
 15:11,15;16:3,5,5,14;
 17:5;18:23;21:17
remember (3)
 4:11;24:20;26:22

reply (2)
 23:8;24:5
represent (3)
 2:6;9:4,21
representation (2)
 13:1,3
representations (1)
 13:17
represented (1)
 4:7
representing (1)
 13:7
request (7)
 6:15,17;8:4;17:9;18:2;
 22:16;26:25
requested (4)
 8:10;11:13;16:25;20:8
requesting (1)
 14:9
requests (2)
 3:7;21:12
require (1)
 6:5
required (1)
 20:13
resolve (1)
 7:18
resources (1)
 14:14
respect (9)
 3:25;4:4;8:13;9:2;
 15:2;19:22;20:14;26:13,
 15
respectfully (1)
 12:16
respond (1)
 10:8
response (2)
 8:8,12
responsibility (2)
 12:11,24
result (1)
 16:4
retrievable (1)
 3:15
review (2)
 7:14;8:20
reviewing (1)
 5:18;6:5
right (11)
 2:13,19;19:4,10,12;
 20:4,18;23:22;24:16;
 27:7,9
Rule (7)
 3:25;4:10,17;10:10;
 16:14;21:20;26:23
ruled (1)
 22:10
ruling (3)
 21:15;22:18;25:10

S

sale (4)
 18:17;19:2,22;20:6
same (9)
 8:17,17,24;9:20;11:5;
 13:11;14:12;19:6;25:20
SamSERV (16)
 2:16;3:8;5:13,14;
 11:12,15;12:9,12;16:6,
 17;17:1;18:8;20:23;
 24:12,13;25:2
save (1)
 22:9
saying (5)
 5:6;7:3;9:11;12:19;
 13:16
scale (1)
 11:1
scheduled (3)
 15:5,8;16:13
scheduling (1)
 25:17
scheme (1)
 18:24
Scher (22)
 2:17,17;3:21,21,24;
 4:14;5:1,10,23;6:22;7:1;
 9:1,17,24;19:21;20:14;
 23:10;24:2;26:9,12;
 27:8,21
scope (5)
 3:25;4:1,9;26:15,17
search (1)
 14:1
second (2)
 24:21;25:24
seek (1)
 9:7
seeking (4)
 6:10,11;8:16;25:15
seems (1)
 6:3
sense (1)
 13:21;22:12,22
sensitive (1)
 22:6
sent (1)
 2:25
separate (2)
 23:1,2
September (3)
 24:21,21;25:13
series (1)
 18:15
serve (1)
 14:11
served (1)
 26:13
server (2)
 5:15;12:1
servers (11)
 5:13,15;11:15,17;
 12:9,12,21;13:7,8,18;
 17:10

servers' (1)
 14:11
service (8)
 3:12;11:19;13:13;
 17:2,3,24;18:3,9
services (1)
 11:18
serving (1)
 14:13
sets (1)
 3:8
setting (1)
 22:17
settlement (1)
 26:7
several (1)
 3:1
sewer (3)
 5:13,15;11:19
shall (2)
 18:8;21:2
Shin (2)
 2:11,11
short-circuit (1)
 8:8
side (2)
 21:1;24:14
significance (1)
 23:13
similar (1)
 17:7
Similarly (1)
 11:22
sit (1)
 25:24
sitting (1)
 25:25
six (1)
 4:8
size (1)
 5:11
skeptical (1)
 16:6
Sklar (19)
 2:16,16;12:6,20,23;
 13:2,10;14:3,23;15:10,
 21;16:23;17:7,14,17,20;
 18:11;20:23;24:14
smoothly (1)
 25:7
solicit (1)
 10:14
somebody (2)
 7:20;14:12
someone (2)
 7:20;13:4
Sometimes (1)
 19:15
soon (1)
 24:18
sort (7)
 5:9,25;6:1,2;10:15,17;
 15:11

June 27, 2011

**sorting (1)**
7:12
**sound (1)**
7:8
**sounds (3)**
4:23;5:6;23:12
**speak (1)**
2:3
**specific (2)**
6:11;8:5
**specifically (1)**
6:10
**spend (1)**
18:25
**spit (1)**
14:25
**spreadsheet (3)**
8:14;19:9,10
**standard (1)**
23:4
**start (1)**
25:25
**starting (1)**
12:6
**state (1)**
2:5
**statement (1)**
13:9
**still (3)**
3:4;24:17;26:12
**stipulate (1)**
27:9
**stipulation (1)**
27:15
**stored (1)**
3:14
**subject (3)**
6:14;15:23;22:15
**submit (4)**
7:16;10:6;12:17;23:16
**submitting (1)**
27:5
**subpoenas (1)**
26:13
**subpoenas' (1)**
26:17
**sued (1)**
3:11
**summarize (1)**
21:5
**summer (1)**
25:24
**sun (1)**
17:10
**supplement (1)**
22:23
**support (1)**
21:24
**Sure (5)**
3:3;9:12;14:1;20:17;
24:14
**Susan (1)**
2:11

**sworn (1)**
13:9
**Sykes (1)**
2:4
**sympathetic (2)**
16:12,15
**system (1)**
4:8

**T**

**talk (5)**
3:25;9:5;15:22;21:4;
26:7
**talked (2)**
10:24;21:14
**talking (4)**
4:4,21;14:22;19:17
**talks (1)**
4:1
**technological (1)**
24:14
**teed (1)**
24:5
**telling (1)**
10:7
**terms (3)**
4:19;14:22;24:10
**third (2)**
19:23,25
**thought (1)**
5:24
**thoughts (1)**
16:1
**thousand (1)**
11:2
**three (5)**
9:10;23:9;24:15,16,17
**thrust (1)**
9:25
**ticks (1)**
8:17
**today (4)**
20:15;21:15;24:8;26:3
**told (1)**
19:25
**tossed (1)**
13:25
**track (1)**
16:19
**transcript (1)**
15:6
**traverse (22)**
11:14,22,23;12:1;
14:4,6,9,17,24;15:2,5,7,
13,14,17,19,19;16:3,4,9,
11,21
**tried (1)**
20:1
**trigger (1)**
27:5
**true (1)**
13:5

**try (8)**
7:23;10:5,9;12:13;
15:23;22:12;24:25;26:1
**trying (2)**
8:23;9:11
**Tuesday (1)**
15:14
**two (2)**
9:9;25:1
**type (2)**
17:24;19:18

**U**

**ultimately (1)**
12:18
**under (6)**
4:10,17;13:4;17:10;
21:20;24:17
**underlying (1)**
19:8
**understands (1)**
24:25
**unlawfully-obtained (1)**
7:5
**unless (3)**
6:7;15:18;25:18
**unlikely (1)**
15:7
**unnamed (1)**
11:6
**up (6)**
7:9;9:12;18:16;20:1;
24:5;26:2
**use (2)**
21:23;22:12
**using (1)**
5:14

**V**

**vast (1)**
11:1
**versus (1)**
2:4
**view (2)**
21:20;23:12
**views (1)**
23:14
**volume (2)**
14:22;16:16

**W**

**wait (1)**
24:1
**Wal-Mart (9)**
22:14,18,25,25;23:5,
13,17;24:6,7
**wants (2)**
2:20;26:18
**way (7)**
5:19,25;7:12;8:2;

16:21;21:5;26:21
**week (8)**
22:23;23:19,20,21,24;
24:1,5,21
**weeks (3)**
24:15,16,17
**What's (13)**
3:5,18,20;4:9;5:12;
7:1;1:1,10;12:5;16:24;
19:20;21:7;24:19;25:22
**whole (1)**
9:4
**wholly (1)**
17:11
**willing (2)**
6:15;11:5
**Wilner (35)**
2:9,9,21,22,25;3:3,6,
19;5:16,20;6:9,17;
10:22;11:12,25;12:4;
14:8,16,19;15:3,17;
16:25;17:23;18:2,7,14;
19:4,9,12,15;20:8;21:8,
11;24:9;26:6
**withdraw (1)**
22:22
**withheld (2)**
20:24,25
**withholding (1)**
20:10
**without (6)**
7:13,19;8:18;11:7;
20:3;22:2
**WITNESS (1)**
27:18
**witnesses (1)**
10:16
**words (2)**
4:24;16:10
**work (13)**
5:7;6:7;7:23;10:5,6,
11;12:9,12;21:1;22:11;
24:18;27:4,14
**writing (4)**
13:17;27:12,12,15
**written (1)**
12:25

**Y**

**years (1)**
4:9
**York (1)**
4:8

**Z**

**Zinner (2)**
2:12,12

Min-U-Script®