UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

MONIQUE SYKES, et al.,                                          ECF Case
                                                                No. 09 Civ. 8486 (DC)
                                    Plaintiffs,

        - against -

MEL S. HARRIS AND ASSOCIATES LLC,
MEL S. HARRIS, MICHAEL YOUNG, DAVID
WALDMAN, KERRY LUTZ, TODD FABACHER,
MEL HARRIS JOHN/JANE DOES 1-20,
LEUCADIA NATIONAL CORPORATION,
L-CREDIT, LLC, LR CREDIT, LLC, LR CREDIT 10,
LLC, LR CREDIT 12, LLC, LR CREDIT 14, LLC,
LR CREDIT 18, LLC, LR CREDIT 19, LLC,
JOSEPH A. ORLANDO, PHILIP M. CANNELLA,
LR CREDIT JOHN/JANE DOES 1-20,
SAMSERV, INC., WILLIAM MLOTOK,
BENJAMIN LAMB, MICHAEL MOSQUERA,
JOHN ANDINO, HUSAM AL-ATRASH,
ASSMAT ABDELRAHMAN, AND
SAMSERV JOHN/JANE DOES 1-20,

                                    Defendants.
-------------------------------------------------------------------------X


---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH NON-PARTY SUBPOENAS

---


                                    BABCHIK & YOUNG, LLP
                                    Attorneys for the
                                    Samserv Defendants
                                    200 East Post Road
                                    White Plains, New York 10601
                                    (914) 470-0001

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motion by defendants SAMSERV, INC., WILLIAM MLOTOK, BENJAMIN LAMB, MICHAEL MOSQUERA, and JOHN ANDINO (hereinafter the "Samserv Defendants" or "Samserv") seeking an Order, quashing various non-party subpoenas (Exhibit "A")[1] served (or in the process of being served), by plaintiffs upon twenty six independent contractors or former independent contractors utilized by Samserv.  In the subpoenas, plaintiffs seek "[a]ll original written records of service ("logbooks") that you have kept pursuant to New York General Business Law §§ 89-u, 89-cc and Title 6 of the Rules of the City of New York § 2-233, from December 28, 2005 to the present."

The Samserv defendants now move to quash the subpoenas pursuant to the Federal Rules of Civil Procedure on the grounds that:

- The version of the statutory authority on which the subpoenas are based, particularly Title 6 of the Rules of the City of New York § 2-233, is no longer valid law;

- Plaintiffs' request for seven years of logbooks is excessive;

- The documents requested in the subpoenas are wholly irrelevant to the current plaintiffs claims and, for that matter, those of the prospective class; and

- The subpoenas are overbroad and tantamount to a fishing expedition.

---

[1]    All exhibits are annexed to the affidavit of Jordan Sklar dated September 14, 2011, submitted herewith in support of the Samserv defendants' motion to quash.

## STATEMENT OF FACTS

Plaintiffs charge Samserv with being part of a "scheme" to enable the other defendants to collect on unsupportable debts. (Third Amended Complaint ["TAC"] is submitted herewith as Exhibit "B.") According to plaintiffs, Samserv's "role" in this scheme was to engage in "sewer service," thereby allowing the other defendants to obtain default judgments against various debtors. Although "sewer service" is not a legally defined term, for purposes of plaintiffs' complaint, it appears to be the allegation that Samserv never made any effort to serve any party and, instead, concocted affidavits of service out of whole cloth.

Based upon the foregoing, plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), New York's Consumer Protection Act, General Business Law § 349 ("CPA") and New York Judiciary Law § 487.

Plaintiffs generally do not deny that they owe debts but instead seek to avoid repaying them by alleging that Defendants violated their rights in seeking to collect on those debts. Plaintiffs allege that the "Leucadia Defendants" (Leucadia National Corporation and its "alter ego" companies, L-Credit, LLC, LR Credit, LLC, LR Credit 10, 12, 14, 18 and 19 LLC and their principals), are debt-buying companies who, through counsel, file debt collection actions in the Civil Court of the City of New York. Plaintiffs further allege that the "Mel Harris Defendants" (comprised of a law firm, Mel S. Harris and Associates LLC, and its principals), are a law firm that file debt collection actions in

the Civil Court of the City of New York including lawsuits brought by the Leucadia Defendants. (Exhibit "B," ¶¶ 2, 3.)

As to the relationship between and among the defendants, plaintiffs allege that: (1) the Samserv Defendants engage in "sewer service;" and, (2) the Mel Harris Defendants regularly hire Samserv to serve process in debt collection actions that regularly result in default judgments for the plaintiffs' failure to appear, allegedly as the result of sewer service. (Exhibit "B," ¶¶ 4, 98).

Upon information and belief, plaintiffs have served, or will attempt to serve, twenty six (26) non-party subpoenas upon former and current independent contractors whom did not serve documents upon plaintiffs.   Plaintiffs purport to seek:

> All original written records of service ("logbooks") that you have kept pursuant to New York General Business Law §§ 89-u, 89-cc and Title 6 of the Rules of the City of New York § 2-233, from December 28, 2005 to the present.

For the reasons stated more fully herein, plaintiffs' subpoenas are without basis in law, and are also overbroad and tantamount to a fishing expedition.

## ARGUMENT

### The Subpoenas Should Be Quashed Because The Documents They Seek Are Neither Relevant Nor Reasonably Calculated To Lead To The Discovery Of Admissible Evidence[2]

**A.     Standard For Quashing A Subpoena That Is Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence And Lacks Relevance**

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the scope of discovery and, as a general proposition, permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," subject, however, to the limitations of Rule 26(b)(2)(C).[3] Fed. R. Civ. P. 26(b)(1).  Subpoenas issued pursuant to Rule 45 are subject to the Rule 26 relevance requirements. See Heller v. City of New York, No. 06 Civ. 2842 (NG), 2008 WL 2965474, 2 (E.D.N.Y. 2008). While "[t]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant" (Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y. 2007)), the issuing party bears the primary burden of "demonstrat[ing] that the information sought is

---

[2]      Parties have standing to quash subpoenas issued to non-parties under Rule 45 if they have a claim of privilege or some proprietary or personal interest in the subpoenaed matter. Ehrlich v. Incorporated Village of Sea Cliff, 2007 WL 1593211 (E.D.N.Y. 2007); Tummino v. Von Eschenbach, 2006 U.S. Dist. LEXIS, at * 12 (E.D.N.Y. Nov. 6, 2006) (See also Langford v. Chrysler Motors Corp., 513 F.2d 1121 (2d Cir.1975); In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990, 741 F.Supp. 1059, 1060 n. 1 (S.D.N.Y.1990)(same), aff'd, 956 F.2d 1160 (2d Cir.1992).  Here, the subpoenas are clearly designed to harass the named process servers and interrupt Samserv's business. Accordingly, the Samserv defendants have standing to contest plaintiffs' subpoenas.

[3] Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure states that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

relevant and material to the allegations and claims at issue in the proceedings." Night

Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ. 1382 (RWS), 2003 U.S. Dist. LEXIS 23179,

2003 WL 23018833, 8 (S.D.N.Y. 2003); accord Copantitla v. Fiskardo Estiatorio, Inc.,

2010 U.S. Dist. LEXIS 33430, 2010 WL 1327921, 9 (S.D.N.Y. 2010); Kingsway Fin.

Servs., Inc. v. PriceWaterhouse-Coopers LLP, No. 03 Civ. 5560 (RMB)(HBP), 2008 U.S.

Dist. LEXIS 77018, 2008 WL 4452134, 4 (S.D.N.Y. 2008) (collecting cases); Ford

Motor Credit Co. v. Meehan, No. 05 Civ. 4807 (DRH)(AKT), 2008 U.S. Dist. LEXIS

53192, 2008 WL 2746373, 5 (E.D.N.Y. 2008); Charles A. Wright & Arthur R. Miller,

Federal Practice & Procedure § 2459 n.7.1 (3d ed. 2010).

The Supreme Court has noted that "discovery, like all matters of procedure, has

ultimate and necessary boundaries.  Discovery of matter not reasonably calculated to lead

to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)."

Oppenheimer Fund v. Sanders, 437 U.S. 340, 351-352 (U.S. 1978) (internal quotation

marks and citation omitted) (emphasis added).  "To the extent a subpoena sweepingly

pursues material with little apparent or likely relevance to the subject matter it runs the

greater risk of being found overbroad and unreasonable." Concord Boat Corp. v.

Brunswick Corp., 169 F.R.D. 44, 50 (S.D.N.Y. 1996).  Moreover, a subpoena that

"pursues material with little apparent or likely relevance to the subject matter … is likely

to be quashed as unreasonable even where the burden of compliance would not be

onerous" Corbett, supra, 2010 U.S. Dist. LEXIS 77712, at 10 (internal punctuation and

citations omitted).  Thus, documents that "bear no more than a 'doubtful or tangential'

relationship" to the issues presented in a lawsuit, the "enforcement of the subpoena would

constitute an unreasonable or burdensome misuse of the discovery process.") Ackermann

v. New York City Dep't of Info. Tech., No. 09 Civ. 2436 (JBW)(LB), 2010 U.S. Dist. LEXIS 28537, 2010 WL 1172625, 1 (E.D.N.Y. 2010) (when evidence sought by a subpoena is, at best, "doubtful and tangential," (internal quotation marks and citation omitted).

**B.    The Subpoenas Are Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence**

> *i.*                *The Samserv defendants and the Subpoenaed Parties are not Required by law to Maintain Process Serving Records Dating Back to December 28, 2005, and are Certainly not Required to Produce Such Documentation.*

By the terms of their subpoenas, plaintiffs seek "logbooks" that the subpoenaed parties "have kept....from December 28, 2005 to the present". Plaintiffs apparently rely on an outdated version of Title 6 of the Rules of the City of New York § 2-233 as their basis for requesting six years of logbooks. However, prior to February 23, 2011, § 2-233 only required process servers to keep records for two (2) years. (Exhibit "C"). On or about February 23, 2011, § 2-233 was amended to require process servers to retain their records for (7) years. (Exhibit "D"). The seven year requirement, however, became the subject of litigation and was ultimately repealed effective July 13, 2011 in favor of a three year requirement. (Exhibit "E"). The new rule reads, in pertinent part:

> Section 1 of the Rule amends Section 2-233 to simplify paper recordkeeping in three ways:
>
> (3)    It shortens the time that licensees must maintain paper record from seven years to three years and thereby reduces the expense of record maintenance.

The new Section 2-233 comports with New York General Business Law §§ 89-cc, which applies to Process Servers and Process Serving Agencies in a City of 1,000,000 or more:

> All records required to be maintained by this article shall be retained by a process server or process serving agency for a minimum of three years and shall be available for inspection by the attorney general.

In short, the subpoena requests records that process servers in New York City are not required to maintain.

Moreover, Title 6 of the Rules of the City of New York § 2-233 and New York General Business Law §§ 89-cc apply to the five boroughs of New York City only. With respect to process served <u>outside</u> the five boroughs, records need only be maintained for a period of two (not three) years[4]. In view of the foregoing, the subpoena requests non-discoverable materials, is overly broad, and must be quashed.

     ii.    *The Subpoena Improperly Demands Records that have Nothing to do with Plaintiffs' Underlying Lawsuits, and is Accordingly Overbroad*

Rule 45(c)(3)(A)(iv) of the Federal Rules of Civil Procedure commands that a court "shall" quash or modify a subpoena if the subpoena "subjects a person to undue burden." "On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). Courts must weigh the burden of compliance on the subpoenaed party against the value of the information to the serving party in making an "undue burden" determination. <u>Ebbert v. Nassau County</u>, 2007 U.S. Dist. LEXIS 15159, 11 (E.D.N.Y. 2007) (citing <u>Travelers Indem. Co. v. Metropolitan Life Ins. Co.</u>, 228 F.R.D. 111 (D. Conn. 2005)). The factors included in such a determination include, *inter alia*, "relevance, the need of the party for the documents, the breadth of the document request,

---

[4] All four plaintiffs were served in the underlying collection actions within New York City, and therefore plaintiffs should not be entitled to any records for process served outside of New York City. However, if this Court does require the subpoenaed parties to produce any records for process served outside of New York City, those records should be limited a time frame of two (not three) years.

the time period covered by it, the particularity with which the documents are described and the burden imposed." United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979). "Courts do, however, accord special weight to the burden on non-parties of producing documents for others involved in litigation." Ebbert, supra, 2007 U.S. Dist. LEXIS 15159, at 11-12 (citing Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs")).

In this lawsuit, plaintiffs allege that the "Leucadia Defendants" are debt-buying companies who, through counsel Mel Harris, file debt collection actions in the Civil Court of the City of New York. It is further alleged that Mel Harris utilizes the services of the Samserv defendants to engage in "sewer service;" resulting in default judgments for the plaintiffs' failure to appear. The issues in this case, therefore, are limited to the service of the handful of pleadings in plaintiffs' underlying debt collection actions. However, plaintiffs apparently seek, without limitation, every written record of service generated by former and current and Samserv employees for a period of nearly six years.[5] In other words, plaintiffs' subpoenas are not restricted to:

- records associated with plaintiffs' underlying debt collection actions, or even records associated with the prospective class' underlying debt collection actions; or

- process served on behalf of Mel Harris' office.

Thus, the subpoenas ostensibly seek, for example, a logbook generated prior to the commencement of the underlying debt collection actions, regarding process served on

---

[5] The unreasonable nature of the time frame provided in the subpoena is discussed at length in section I(b) above.

behalf of an attorney other than Mel Harris.   Similarly, the subpoenas improperly seek records of service outside of New York City, even though all four plaintiffs were served with process in New York City.  Such evidence has no probative value to the question of an alleged conspiracy by defendants to obtain default judgments vis-à-vis "sewer service."  Simply put, the subpoenas are nothing more than a fishing expedition.  *See*, *e.g.*, Waldron v. Cities Serv. Co., 361 F.2d 671, 673 (2d Cir. 1966) (plaintiff who had advanced multiple theories of the case denied discovery "to engage in still another 'fishing expedition' in the hope that he could come up with some tenable cause of action"), *aff'd*, 391 U.S. 253 (1968); Liberty Mut. Ins. Co. v. Bankers Trust Co., 1993 U.S. Dist. LEXIS 4805, 18-19 (S.D.N.Y. 1993) (motion for additional discovery denied where court determined it was nothing more than a fishing expedition).  As the subpoenas are not calculated to lead to the discovery of <u>any</u> additional evidence, admissible or otherwise, they must be quashed.

## CONCLUSION

For the aforementioned reasons, the Subpoenas are improper and, consequently, it is respectfully submitted that this Court must quash the Subpoenas.

Dated: White Plains, New York
      September 14, 2011

JORDAN SKLAR (JS 3631)