## EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
ILANN M. MAAZEL
O. ANDREW F. WILSON
KATHERINE ROSENFELD
ELIZABETH S. SAYLOR
DIANE L. HOUK
DEBRA L. GREENBERGER
EISHA JAIN
ADAM R. PULVER
ZOE SALZMAN
SAM SHAPIRO
JULIA EINBOND

ATTORNEYS AT LAW
75 ROCKEFELLER PLAZA
NEW YORK, NEW YORK  10019

TELEPHONE
(212) 763-5000
TELECOPIER
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com

October 12, 2011

**By ECF**

The Honorable Denny Chin
United States Circuit Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re:   *Sykes, et al. v. Mel S. Harris and Associates LLC, et al., 09 Civ. 08486 (DC)*

Dear Judge Chin:

> We, along with co-counsel, represent Plaintiffs in the above-captioned matter. As discussed during the parties' October 11, 2011 conference with the Court, we write to submit the following additional authority in response to the Mel Harris Defendants' October 10, 2011 submission: *Vasalle  v. Midland Funding, LLC,* No. 3:11 CV 96, 2011 WL 3557045 (N.D.Ohio Aug. 12, 2011) and *Gutierrez v. LVNV Funding, LLC,* EP-08CV-225-DB, 2009 U.S. Dist. LEXIS 54479 (W.D.Tex. March 16, 2009).   Thank you for your consideration.

Respectfully submitted,

Eisha Jain

c:      All Counsel  (via ECF)

# Exhibit A

Westlaw.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Western Division.
Martha **VASSALLE**, Plaintiff,
v.
**MIDLAND FUNDING**, LLC, Defendant.

No. 3:11 CV 96.
Aug. 12, 2011.

Dennis E. Murray, Sr., Donna Jean A. Evans, Murray & Murray, Sandusky, OH, for Plaintiff.

Amy Marshall Gallegos, Richard L. Stone, Hogan Lovells, Los Angeles, CA, Gary P. Gordon, Theodore W. Seitz, Dykema Gossett, Lansing, MI, for Defendant.

*MEMORANDUM OPINION AND JUDGMENT*
KATZ, District Judge.

*1 On March 11, 2011, this Court granted preliminary approval to a nationwide class settlement in three related cases, *Midland Funding v. Brent* (No. 3:08–cv–1434), *Franklin v. Midland Funding* (No. 3:10–cv–00091), and *Vassalle v. Midland Funding* (No. 3:11–cv–00096) (*Vassalle* Doc. 7). As part of its order preliminarily approving the settlement, the Court provisionally certified a nationwide class of persons who had been sued by Defendants, Midland Funding LLC and Midland Credit Management, Inc., Encore Capital Group, Inc., and related entities (collectively, "Midland") between January 1, 2005 and the date of the approval order, in debt collections suits where Midland used affidavits attesting to facts about the underlying debt. The Court appointed as Class Counsel the law firm of Murray & Murray, counsel for Andrea Brent, Martha Vassalle, Jerome Johnson, and Hope Franklin, the Named Plaintiffs in these suits, and approved the proposed form of notice to the class.

This matter is now before the Court on the joint motion of Named Plaintiffs and Defendants for an order granting approval of the class action settlement they have reached (*Vassalle* Doc. 131), and Class

Counsel's motion for an award of attorney's fees (*Vassalle* Doc. 134). The Court held a Fairness Hearing regarding the proposed settlement pursuant to Fed.R.Civ.P. 23(e) (2) on July 11, 2011. The Court has carefully reviewed the memoranda that have been filed in connection with these motions, as well as the Objections that have been filed. For the following reasons, the motions will be granted, and the settlement approved..

**I. Background**

The settlement here at issue relates to three class action lawsuits arising from similar factual predicates. The oldest of these, *Midland Funding v. Brent* (No. 3:08–cv–1434), began life as a debt collection action filed by Midland Funding LLC against Andrea Brent in the Municipal Court of Sandusky, Ohio, on April 17, 2008. (*Brent* Doc. 1, Exh. A). Attached to the initial complaint in that action was an affidavit signed by one Ivan Jimenez, an employee of Midland Credit Management, Inc., claiming on personal knowledge that Brent owed a debt to Midland Funding of $4,516.57. In response, Brent filed an answer as well as a class-action counterclaim against Midland Funding and Midland Credit Management, asserting claims for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), and for intentional and/or negligent infliction of emotional distress under the common law of Ohio. Brent's counterclaim sought certification of two classes, with one class consisting of "(a) all natural persons (b) sued in the name of Midland or MCM (c) in an Ohio court (d) where a form affidavit was attached to the complaint, and (e) the suit was filed on or after a date one year prior to this action," and the other class consisting of Ohio debtors who had been sued by Midland beyond the statute of limitations. Brent's counterclaim alleged, *inter alia,* that form affidavits, such as the one attached to complaint filed by Midland against Brent, were signed by MCM employees who had no personal knowledge of the facts asserted.

*2 *Brent* was removed to this Court on the basis of federal question jurisdiction on June 13, 2008. Discovery commenced in August 2008. The discovery process was hard-fought and extensive, with Class Counsel conducting substantial inquiry into

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

Midland's debt-collection procedures. Specifically, Class Counsel investigated the procedures Midland used in printing and signing the affidavits it used in collection actions; the process by which Midland purchased debts and received information concerning those debts; the availability of account information in Midland's computer system; how that account information was utilized; how accounts were referred to collection attorneys for suit through the business logic component of Midland's computer programming; the role of the affiants in the collection process; and Midland's organizational structure generally. As part of this investigation, Class Counsel conducted several depositions, engaged experts to gain an understanding of Midland's computer system (at substantial monetary expense), and propounded extensive written discovery, resulting in Midland producing over four hundred pages of documents. Class Counsel also researched public filings of Midland to understand the full extent of prospective damages arising from its alleged practices. Information gained during discovery resulted in Class Counsel filing an Amended Counterclaim Complaint with more detailed factual allegations on December 1, 2008. The Amended Counterclaim Complaint also added a claim alleging violation of the Ohio Consumer Sales Protection Act, Ohio Rev.Code Ann. § 1345 *et seq.* (2008) (OCSPA), removed the common-law negligent and/or intentional infliction of emotional distress claim, dropped the statute-oflimitations class, and added two proposed classes based on the interest rate at which Midland attempted to collect. The discovery process was hard-fought and contentious, resulting in numerous discovery disputes. Ultimately, the Court was forced to intervene, holding a discovery conference on December 5, 2008 to resolve contested issues.

The parties then began extensive motion practice, with both parties filing summary judgment motions in February 2009. After both motions had been fully briefed, the Court issued its decision in a memorandum opinion on August 11, 2009. *Midland Funding v. Brent,* 644 F.Supp.2d 961 (N.D.Ohio 2009) (*Brent* Doc. 50). In a landmark ruling, this Court became the first in the country to hold that the practice of "robo-signing" affidavits in debt collection actions violates the FDCPA. The Court found that Midland generated affidavits for law firms to use in debt-collection actions by means of a computer system. "Specialists" in Midland's litigation support department would sign between 200 and 400 of these auto-

matically-generated affidavits per day. While the affidavit stated that the statements therein were based on the signer's personal knowledge, deposition testimony revealed that Midland's "specialists" who signed the affidavits did not have personal knowledge of the accounts at issue. While the Court noted that "the actual account information is probably either correct or likely thought correct in good faith by Midland" (*Brent* Doc. 50 at 12), the Court nonetheless found the affidavit both false and misleading as a whole for purposes of the FDCPA, "notwithstanding the fact that some of the data in it are correct," due to the false attestation of personal knowledge. *Id.* The Court also found that the falsehoods were material, as "the fact that the affiant allegedly had personal knowledge that the debt was valid[ ] would effectively serve to validate the debt to the reader." *Id.* at 15. The Court also rejected the notion that the errors in question were "bona fide errors" under the FDCPA.

**\*3** The Court also held that the practice of "robo-signing" affidavits violates the OCSPA. While the Court found that declaratory and injunctive relief were not appropriate under the FDCPA, the Court ordered such relief with respect to the OCSPA. The Court also held that genuine issues of material fact precluded summary judgment on Brent's claims involving the interest rate at which Midland attempted to collect.

Midland then filed a Motion for Reconsideration, challenging this Court's grant of injunctive relief under the OCSPA. In response, the Court issued a memorandum opinion upholding its decision to enter an injunction under the OCSPA but clarifying that the injunction was limited to Midland's use of affidavits that falsely claim to be based on the affiant's personal knowledge, and not affidavits that may be false in other respects, such as cases where the original creditor has supplied inaccurate information about the debt.

The Court's August 11, 2009 memorandum opinion set off a wave of class action complaints in other states that relied upon and cited this Court's summary judgment opinion. Among these cases was one filed on July 7, 2010 in the Eastern District of Virginia, *Rubio v. Midland Funding* (No. 3: 1 0–cv–00464). The plaintiff in *Rubio* was represented by Consumer Litigation Associates, the same firm that represents

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

Intervenor Ladon Herring, who objects to the settlement in this case. The complaint in *Rubio* sought class certification and, *inter alia,* "an Order of this Court ... enforcing the Orders entered in the Northern District of Ohio and specifically enjoining [Midland] from continuing to file false collection affidavits in the courts of the Commonwealth of Virginia." (*Brent* Doc. 154, Exh. 4). Other subsequent class actions include *Gray v. Suttell & Associates* (E.D.Wash. No. CV–09–251), brought by Kelli Gray, an Objector in this case (*Brent* Doc. 144, Exh. 1), and *Reimann v. Brachfeld* (Alameda County, Ca., Superior Court, No. 10–529702), brought by a party represented by Charles Delbaum, attorney for objector Robert Clawson (*Brent* Doc. 144, Exh.2).

Following issuance of the Court's August 11, 2009 memorandum opinion, and at Midland's request, the parties began mediation with the Hon. Richard McQuade, a retired federal judge experienced in resolving class action cases. On August 31, 2009, the Court ordered the case stayed pending the outcome of the mediation (*Brent* Doc. 53). The parties first met with Judge McQuade for mediation on October 29, 2009. At the session, which lasted all day and took weeks to prepare for, the parties engaged in intense discussions and negotiations, but left without settling the case. Class Counsel reluctantly agreed to continue attempts to resolve the case through mediation with Judge McQuade, though he filed a Notice of Mediation Status on October 30, 2009, seeking to partially lift the stay in order to litigate class certification issues while still attempting mediation (*Brent* Doc. 57). The Court held another status conference on November 9, 2009, and issued an order holding that the stay would continue in force through the parties' second scheduled mediation session with Judge McQuade on December 8, 2009 (*Brent* Doc. 60).

**\*4** The December 8, 2009 mediation was also unsuccessful, and Brent requested that the case be restored to active status on the Court's docket (*Brent* Doc. 61). The Court held a status conference on December 15, 2009, at which it lifted the stay and established a new briefing and discovery schedule (*Brent* Doc. 63). The Court denied Brent's motion to file an amended complaint (which Midland opposed) on timeliness and futility grounds on February 22, 2010 (*Brent* Doc. 72). The parties engaged in two additional day-long mediation sessions on June 29, 2010, and September 10, 2010, again with Judge McQuade,

both of which were unsuccessful.

Brent filed a motion for class certification on March 24, 2010, seeking certification of two classes: one class that had been sued by Midland in an Ohio court using an affidavit that falsely claimed to be based on the affiant's personal knowledge, and another class that had been sued by Midland in an Ohio court where Midland sought to collect on a higher interest rate than was allowed by law (*Brent* Doc. 76). Midland challenged every aspect of the class certification motion, arguing, *inter alia,* that the proposed affidavit class could not satisfy any of the elements necessary for certification under Fed.R.Civ.P. 23(a) or (b) (*Brent* Doc. 84). Midland also filed a motion for partial summary judgment on Brent's claim for actual damages (*Brent* Doc. 88).

After both motions had been fully briefed, the Court issued a memorandum opinion on November 4, 2010, granting in part Brent's motion for class certification and granting Midland's motion for partial summary judgment on the issue of actual damages (*Brent* Doc. 104). The Court certified the proposed affidavit class, finding that it satisfied each of the requirements of Fed.R.Civ.P. 23(a) and (b), but found that the proposed class based on the interest rate at which Midland sought to collect failed on both commonality and typicality grounds. The Court also found that Brent could not show emotional distress resulting from the aspects of the affidavit that violated the FDCPA and OCSPA, as opposed to the general stress that accompanies being sued in a debt collection action, and thus dismissed her claim for actual damages. That holding limited her (and similarly-situated debtors) to seeking recovery of statutory damages and attorneys fees.

On December 9, 2009, Hope Franklin and Thomas Hyder, represented by Class Counsel, filed the *Franklin v. Midland Funding* action in Erie County, Ohio Common Pleas Court, bringing a claim for common-law misrepresentation against Midland based on their alleged use of affidavits that falsely claimed to be based on the affiant's personal knowledge. The action was removed to this Court pursuant to the jurisdictional provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Midland moved to dismiss the complaint on the grounds that Hyder's claims were subject to binding arbitration, and Franklin had not alleged facts indicating that she

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

relied on false statements in the affidavit, an element of common-law misrepresentation. On October 6, 2010, the Court granted the motion to dismiss (Doc. 18), and the Plaintiffs appealed to the Sixth Circuit. The parties attempted to resolve the *Franklin* appeal via discussions with the Sixth Circuit mediator, with sessions beginning on December 22, 2010.

**\*5** Upon the dismissal and appeal of the *Franklin* action, Martha Vassalle and Jerome Johnson, represented by Class Counsel, filed the *Yassalle v. Midland Funding* action with this Court on January 17, 2011, bringing claims against Midland on behalf of a nationwide class for common-law fraudulent misrepresentation, negligence, and unjust enrichment, again based on Midland's alleged practice of filing affidavits that falsely claimed to be based on the affiant's personal knowledge.

With motion practice in *Brent* concluded, the parties agreed to participate in a settlement conference with the Court. The Court conducted settlement conferences beginning on January 28, 2011, and continuing for two weeks. After much hard-fought negotiating, the parties finally reached an agreement in principle to resolve the litigation on February 11, 2011. Even then, the parties required an additional month of negotiations, including further assistance from the Court, to finalize the agreement. The parties finally presented their agreement to the Court on March 9, 2011, with the filing of joint motions for preliminary approval of the class proposed settlement (*Brent* Doc. 107) and for entry of an order enjoining parallel litigation of claims to be released by the proposed settlement (*Brent* Doc. 108).

In the settlement agreement, which applied to the *Brent, Franklin,* and *Yassalle* actions, the parties stipulated to the certification of the following class:

> All natural persons (a) sued in the name of Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively, "Midland"), (b) between January 1, 2005 and the date the Order of Preliminary Approval of Class Action Settlement is entered by the Court, (c) in any debt collection action in any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit.

(*Brent* Doc. 107, Exh. A. ["Settlement Agreement"] at 6). In order to settle the case on the basis of this nationwide class, Midland agreed to pay $5.2 million into an interest-bearing fund for the benefit of the class. Attorney's fees of no more than $1.5 million would be paid out of this fund to Class Counsel, as would the costs of administration. The remainder of the fund would be used to make payments to class members who timely returned a claim form and were determined to be eligible by the Class Administrator. All eligible class members were to receive $10 each. Class Counsel represented to the Court that, if significant funds remained, the amount payable to class members would increase. In addition, if sufficient funds remained, the Named Plaintiffs would receive $8,000 collectively, Class Counsel would be reimbursed for out-of-pocket expenses of up to $9,000, and any funds left over would be awarded *cy pres* to an organization to be determined by Class Counsel with approval of the Court. None of the money would revert to Midland. In addition, if the settlement fund were insufficient to pay each eligible class member $10, Midland would pay the lesser of the amount necessary to cover a payment of $10 to each eligible class member, or $500,000.

**\*6** In fact, the response rate has been such that each eligible class member is now expected to receive $17.38 if the settlement is approved (*Vassalle* Doc. 153).

The settlement agreement also included injunctive relief. The parties stipulated to entry of an injunction mandating that Midland create and implement written procedures for the generation and use of affidavits in debt collection lawsuits in order to prevent the use of affidavits where the affiant lacks personal knowledge of the facts set forth in the affidavit. The parties requested that Judge McQuade be appointed as Special Master to monitor Midland's compliance with the injunction, at Midland's expense. Midland would submit their affidavit procedures to the Special Master for approval within thirty days of entry of the stipulated injunction. The Special Master would then make findings as to whether the affidavit procedures are reasonably assured to prevent the use of affidavits of the sort the Court has found unlawful. If the Special Master finds the procedures inadequate, Midland would have thirty days to revise the procedures so as to cure any defects identified by the Spe-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

cial Master. The stipulated injunction would expire at the end of twelve months; at that time, Midland would be required to submit to the Special Master a declaration confirming that the affidavit procedures approved by the Special Master have been implemented. During the twelve-month term of the stipulated injunction, either party would have the right to seek relief from or modification of the stipulated injunction from the Special Master based on an "unfair burden on the business" or a change in law."

In exchange for the monetary and injunctive relief noted above, the settlement contained a classwide release. The classwide release provided that each class member who chose not to opt out would release Midland, its affiliates, and specified third parties (including attorneys) "from all causes of action, suits, claims and demands, whatsoever, known or unknown, based on state or federal law, which the class now has, ever had or hereafter may have against the Released Parties, arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." (*Brent* Doc. 107 at 11–12).

The settlement also contained a broader release that applied only to the Named Plaintiffs. The Named Plaintiffs agreed to release Midland, affiliated entities, and specified third parties from "all causes of action, suits, claims demands, whatsoever ... under any legal theory," not just those based on Midland's use of affidavits in debt collection lawsuits. (*Brent* Doc. 107 at 12–13). Midland also agreed to release the debts owed by the Named Plaintiffs, though it did not agree to release debts owed by other class members. (*Brent* Doc. 107 at 13).

The Court granted the motion for preliminary approval of the class settlement on March 11, 2011 (*Brent* Doc. 111; *Franklin* Doc. 25; *Yassalle* Doc. 7), finding that the proposed settlement was within the range of fairness and reasonableness. The Court also found that the proposed nationwide class met all the requirements for class certification, and it approved the form of notice, finding that it met the requirements of due process and Fed.R.Civ.P. 23(c)(B). The Court gave class members until June 1, 2011 to submit a claim form, request for exclusion, or an objection to the proposed settlement, and scheduled a Fairness Hearing for July 11, 2011. The Court also granted the motion for a preliminary injunction against parallel litigation (*Brent* Doc. 110; *Franklin*

Doc. 24; *Yassalle* Doc. 6).

**\*7** The Court appointed Class Action Administration ("CAA") as Claims Administrator. Pursuant to the Preliminary Approval Order, CAA sent a copy of the Class Notice and Claim Form to the last postal address of each class member, as updated through the United States Postal Service National Change of Address Service. Class members could return a postage-paid claim form if they wished to file a claim or opt out of the settlement. Out of a class of approximately 1.4 million, more than 133,000 class members, or about 9.2% of the class, have filed claims, while 4,262 (about .3%) opted out and 61 (about .004%) filed objections. Of the opt-outs, almost six hundred submitted form letter-type opt-outs (presumably generated by their attorney). Over half of these form opt-outs were submitted by parties represented by Consumer Litigation Associates, the firm that was pursuing the *Rubio* case in the Eastern District of Virginia.

A copy of the Class Notice was published in the legal section of *USA Today* on April 18, 2011, and in the *USA Today* 's marketplace section on April 21, 2011. In addition, a website was established to provide class members with information at www.BrentSettlement.com. Under Class Counsel's supervision, CAA established a toll-free interactive voice response system to provide answers to frequently asked questions. Callers could also speak to a live operator. Class members who wanted additional information could contact CAA through an email box on the settlement website, and Class Counsel responded to questions from Class Members via telephone, email, and U.S. Mail, over 100 calls and emails in total.

The Court subsequently clarified the scope of its preliminary injunction in a memorandum opinion and order issued on May 17, 2011. (*Brent* Doc. 156; *Franklin* Doc. 28, *Yassalle* Doc. 8). The Court also denied motions to dissolve the preliminary injunction, granted a motion to intervene filed by Ladon Herring, and granted a motion to dismiss the *Brent* action for lack of jurisdiction. That jurisdictional defect was technical in nature: the federal question that formed the basis for Brent's claims was found in a counterclaim, not the original complaint filed by Midland. Neither the Court nor the parties were aware of the jurisdictional error until it was pointed out in a motion filed by putative class members Kelli

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

Gray and Marla Herbert, and the Court will consider the course of the *Brent* action in determining the fairness of the proposed settlement. The various opinions issued by the Court and efforts undertaken by the parties in the *Brent* action have created important precedent that would guide this Court and others in dealing with the claims both of the Named Plaintiffs and similarly-situated parties.

**II. Pending Motions**

Now pending before the Court are: the joint motion of Midland and the Named Plaintiffs for an order granting approval to the class settlement (*Yassalle* Doc. 131); a motion for attorneys' fees and reimbursement of expenses filed by Class Counsel (*Yassalle* Doc. 134); and a motion to strike (*Yassalle* Doc. 135) the declaration of Stephen Gardner (*Yassalle* Doc. 26), filed by Robert Clawson and Ladon Herring in support of their Objection to the settlement (*Yassalle* Doc. 25).

**\*8** Clawson and Herring have also filed joint memoranda in opposition to the motion for an order approving the class settlement (*Yassalle* Doc. 148) and in opposition to the motion to strike Gardner's affidavit (*Yassalle* Doc. 147). Putative class member Elaine Pelzer has filed a joinder in Clawson and Herring's memorandum in opposition to the class settlement (*Yassalle* Doc. 149), as well as an Objection of her own (*Yassalle* Doc. 42).[FN1] Putative class member Kelli Gray has filed an Objection to the settlement (*Yassalle* Doc. 32), as well as a response to the joint motion for approval of the class settlement (*Yassalle* Doc. 150). In addition to the aforementioned Objections, 61 individuals have filed Objections to the settlement (*Yassalle* Docs. 57–117), one of which was subsequently withdrawn (*Yassalle* Doc. 140).

> FN1. Pelzer has appealed from the partial denial of her motion to intervene (Doc. 157). But her appeal concerns an ancillary matter, and does not affect this Court's jurisdiction to determine matters not involved in the appeal. See *Shevlin v. Schewe,* 809 F.2d 447, 451 (7th Cir.1987).

The attorneys general of 38 states have filed a brief *amicus curiae* opposing the settlement (*Yassalle* Doc. 27), as has the Federal Trade Commission (FTC) (Doc. 55).

Midland has filed a memorandum in response to the Objections of Clawson, Herring, Gray and Pelzer (*Yassalle* Doc. 133), and a memorandum in response to the Objections of putative class members Lutchmin Persaud, Sarai Ossers, Christopher Guest, Manuela Rivera, Sylvia Yeado, and Ada Carter (Doc. 130). Midland has also filed memoranda in response to the *amicus* briefs of the state attorneys general (*Yassalle* Doc. 124) and the FTC (*Yassalle* Doc. 125). The Named Plaintiffs have joined in Midland's response to the attorneys general (*Yassalle* Doc. 126), and have filed their own response to the Objections (Doc. 127). Objectors Guest (*Yassalle* Doc. 145) and Rivera (*Yassalle* Doc. 146) have filed replies to Midland's response to their Objections.

**III. Positions of the Parties**

The Objections to the settlement filed with the Court contain several common themes. The Objections interpret the class release as applying to *any* claim of falsity in an affidavit used by Midland, not just false attestations of personal knowledge. Thus, the Objectors see the class release as barring class members from contesting statements in a Midland affidavit as to the amount of a debt, even if the amount is false, or as to service of process, even though they were never properly served. In Objectors' view, then, the release is overly broad, in that class members who do not opt out are giving up their rights to defend themselves in debt collection actions, to vacate improperly obtained default judgments against them, or to seek potentially lucrative monetary relief under state debt collection statutes.

The monetary relief to the class, the Objectors argue, is paltry and incommensurate with the scope of the release. The Objectors criticize the incentive payments and broader release afforded to the Named Plaintiffs, contending that the debts of all class members should be vacated. The Objectors also decry the attorney's fees agreed to by the parties as excessively high. While acknowledging that putative class members may opt out if they wish to avoid these consequences, the Objectors argue that they will be deterred from doing so because they will not want to provide Midland with their current address, which Midland would then use in its debt-collection activities. Midland deserves much harsher punishment for its practices than the settlement provides for, in the view of the Objectors.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

**\*9** In addition, the Objectors contend that the settlement was collusive, not the product of arms-length negotiations. Some of the Objectors argue that their attorneys should have been included in the settlement negotiations, but were purposefully kept in the dark. The Objectors contend that Midland engineered a "reverse auction," whereby they cherry-picked "the most ineffectual class lawyers" with whom to negotiate a settlement, apparently finding them in the Northern District of Ohio (*Vassalle* Doc. 57 at 13).

The Objectors also take issue with the adequacy of the injunctive relief contained in the settlement, taking issue with the fact that it lapses after one year, and that Midland may petition the Special Master to modify the injunction. Finally, they take issue with the notice provided to the class, contending that it failed to inform putative class members that they would be forfeiting all rights to challenge affidavits filed by Midland (based on their interpretation of the release).

Midland and the Named Plaintiffs respond that the release is not as broad as Objectors suggest. They point out that the release only applies to claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." (Settlement Agreement at 6). That is, the release, by its plain terms, only bars class members from asserting claims against the Released Parties where the basis for relief is the affidavit itself, as opposed to some other issuethat the class member did not owe the debt sued upon, or was not validly served. Midland and the Named Plaintiffs thus argue that the Class Notice was adequate based on this understanding of the release. They contend that, while the settlement does not address all the harms associated with alleged practices of Midland, it was not designed to, and is a fair and adequate means of addressing defects in affidavits used by Midland that falsely claimed to be based on personal knowledge. They further argue that a mass vacatur of judgments would only result in needless time and expense to the court system as Midland sought to relitigate formerly closed cases.

Midland and the Named Plaintiffs point out further that statutory damages under the FDCPA are capped at $1000 per individual and $500,000 in class actions like this one, where the Defendant's net worth exceeds $50,000,000. Moreover, pursuant to this Court's earlier ruling, actual damages resulting from unlawful aspects of Midland's affidavits would be very difficult to prove. That holds true as well for state-law claims, where class members would face a difficult challenge proving they were damaged by an affidavit that contained accurate information about the debt but was not based on the affiant's personal knowledge. Therefore, Midland and the Named Plaintiffs argue that the monetary provisions of the settlement are fair and adequate, given the small potential individual recovery and the fact that the class settlement in this case far exceeds the FDCPA class action damages cap. Further, they point out that any class member who believes he or she can obtain a greater recovery on an individual claim can opt out of the class. Class Counsel argues that his attorney's fees are justified by value of the settlement and the amount of work he has done in this case over three years on a contingency-fee basis.

**\*10** Pointing to the multiple attempts at settlement and extensive motion practice in these cases, as well as the participation of Judge McQuade as a third-party mediator during settlement talks, Midland and the Named Plaintiffs assert that the settlement was the result of arms-length negotiations between adversaries, and was not collusive. They defend the incentive payments to the Named Plaintiffs as reasonable considering the efforts they expended in pursuing these cases, as well as the broader scope of the release to which they have agreed.

Regarding injunctive relief, Midland and the Named Plaintiffs assert that the one year term is reasonable and comparable with injunctive relief approved in other debt-collection cases, and point out that Judge McQuade would have to approve any modification.

Finally, with regard to the use of class members' current addresses, Midland and the Named Plaintiffs point out that the settlement is being administered by an independent class action administrator; the address information used in this case came from Midland's own existing records; and that Midland has access to the U.S. Postal Service's National Change of Address Data. Moreover, Midland has stipulated that none of the information obtained through the claims process will be used for the purpose of collecting debts of the class members. (*Vassalle* Doc. 125 at 4).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

## IV. Discussion

### A. Class Certification

In order to approve the class settlement in this case, the Court must grant certification of the proposed nationwide class. In determining whether to grant certification, the Court must find that the class satisfies each of the four requirements set forth in Fed.R.Civ.P. 23(a):

(1) the class must be so numerous that joinder of all members is impracticable;

(2) there must be questions of law or fact common to the class;

(3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and

(4) the representative parties must fairly and adequately protect the interests of the class.

Also, class certification implicitly requires both that there be an identifiable class, and that the named representative falls within the proposed class. *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir.1989). Once the prerequisites are satisfied, an action may be maintained as a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

In this case, the court finds that the proposed nationwide class meets the standards for certification. The class, which contains more than 1.4 million members, is sufficiently large that joinder would be impracticable. All class members seek resolution of a common legal question: whether Midland's use of affidavits purporting to be based on the personal knowledge of the affiant is an unfair and deceptive debt collection practice. Resolution of this common question will affect the class as a whole, and can be most efficiently resolved in the context of a class action. The claims of the class representatives are typical of those of the class, as their claims arise from

the same factual predicate (being sued by Midland using an affidavit falsely claiming to be based on the affiant's personal knowledge) as those of the rest of the class.

**\*11** In considering whether the class representatives will "fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a)(4), the Court looks to two factors: "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.1976). The Court finds both factors satisfied in this case. The class representatives share with the putative class members a desire to recover from Midland for the use of false affidavits in debt collection actions, and a desire to prevent Midland from employing such deceptive practices in the future. Further, the Court finds that Class Counsel is qualified and has vigorously pursued this action.

The Court also finds that the Rule 23(b)(3) factors (whether common questions predominate over questions particular to each class member, and whether a class action is a superior means of adjudicating the controversy) are satisfied. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. Century-Tel, Inc.,* 511 F.3d 554, 565 (6th Cir.2007). "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individual proof." *Id.* (internal quotation marks omitted). In addition, "[a]n action in which both injunctive relief and money damages are sought may be certified as a class under Rule 23(b)(2), as long as money damages do not constitute the predominate type of relief requested." *Hoffman v. Honda of America Mfg., Inc.,* 191 F.R.D. 530, 536 (S.D.Ohio 1999) (emphasis omitted).

The question of whether affidavits used by Midland were deceptive and unlawful lies at the heart of this litigation, and is susceptible to classwide proof. As the Court found in its previous opinion on class certification in *Brent,* "the unlawful aspects of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

form affidavits here at issue were a result of the process by which they were produced pursuant to Midland and MCM's general business practices. Liability questions are thus amenable to class-wide proof." *Midland Funding v. Brent,* 2010 WL 4628593 (N.D.Ohio Nov.4, 2010) (*Brent* Doc. 104 at 9). Moreover, the request for monetary relief does not predominate over the request for injunctive relief, while the affidavit issues do predominate over any claims subject only to individual proof.

In determining whether a class action is superior to other methods of resolving the controversy, the Court may look to: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of concentrating the litigation of the claims in this forum; (4) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. 23(b)(3).

*\*12* Given the limited resources of the typical class member and the meager monetary relief they could expect to recover, there is a strong interest in litigating these claims in a single forum. In addition, this case is far more procedurally advanced than the other actions bringing similar claims, ensuring that the class members may obtain relief more speedily than if the litigation were permitted to proceed piecemeal.

Thus, the Court finds that the proposed nationwide class meets all the requirements of Fed.R.Civ.P. 23(a) and 23(b), and certifies same.

**B. Standard of Review of the Class Settlement**
"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11.41 (4th ed.2002); accord *Int'l Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.,* 477 F.3d 615, 632 (6th Cir.2007) (noting "the federal policy favoring settlement of class actions"). The Sixth Circuit has recognized that complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992) (quoting *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir.1983). Thus,

"[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada,* 962 F.2d at 1205.

"In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion." *Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir.1989). Fed.R.Civ.P. 23(e) provides,

The Court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

The typical process for approving class action settlements in federal court is: 1) preliminary approval of the proposed settlement at an informal hearing; 2) dissemination of mailed and/or published notice to all affected class members; and 3) a formal fairness hearing at which interested parties may comment on the proposed settlement. *Williams v. Vukovich,* 720 F.2d 909, 920–921 (6th Cir.1983). All three of these steps have now taken place in this case.

In considering whether the settlement is fair, reasonable, and adequate, the trial court considers the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union,* 497 F.3d at 631. A class settlement is presumptively reasonable upon preliminary approval, and an individual who objects consequently has "a heavy burden" of demonstrating that the settlement is unreasonable. *Vukovich,* 720 F.2d at 921. In general, a reviewing court's task "is not to decide whether one side is right or even whether one side has the better of these arguments.... The question is rather whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Int'l Union,* 497 F.3d at 632.

**C. Scope of the Release**
*\*13* Much of the disagreement between the Ob-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

jectors and the Settling Parties revolves around the scope of the release. Objectors contend vigorously that the release would effectively prevent any class member from raising a legal challenge in a case where Midland has used an affidavit, including cases where Midland has sued upon an incorrect amount, or where the debtor has not been served. The Court finds that this interpretation is unsupported. By its terms, the release applies only to claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." (Settlement Agreement at 6). Thus, the release is limited to claims where the basis for relief is the affidavit itself, such as those of the Named Plaintiffs, who sought damages based upon Midland's use of an affidavit. Claims that the debtor did not owe the amount being sued upon, or was not validly served, are not covered, because the factual basis for the claim is something other than the affidavit. Certainly, nothing in the release prevents a class member from pointing to evidentiary deficiencies in the proof offered by Midland in defending a debt collection action. Nor does the release apply to actions being pursued by state attorneys general against Midland, as it only applies to "class members," defined as "natural persons" in the release. See *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[I]n common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it.") The release simply prevents a deficient affidavit from furnishing the basis for an independent claim for damages against Midland, be it pursuant to the FDCPA or some state-law cause of action.

Therefore, the release is properly limited to claims that share a factual predicate with the claims pled in the complaint: that is, claims based on the allegation that an affidavit used by Midland falsely purports to be based on the affiant's personal knowledge. See *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 349 (6th Cir.2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a factual predicate with the claims pled in the complaint") (internal quotation marks omitted). The fact that the release does not include language specifically stating that it will only apply in cases sharing the same factual predicate as those released does not render it overbroad, nor does the potential that Midland may in some future case urge a broader interpretation of the

release. See *In re WorldCom, Inc. Secs. Litig.,* 388 F.Supp.2d 319, 342 n. 36 ("The Release does not state that its application is bounded by the "identical factual predicate" doctrine, but the addition of language releasing claims "arising from the same facts," or similar formulations, would be unnecessary and redundant. It is, after all, a given that the Release will only be applied insofar as its application conforms to the law.").

**\*14** The Objectors also contend that the release would be overbroad if interpreted to apply to Midland's attorneys. The Court finds that the language of the release, which references "agents," "representatives," and "attorneys" of Midland, applies to attorneys who filed Midland's affidavits in state court collection proceedings. While the Court held that the preliminary injunction previously entered in this matter did not apply to third parties such as attorneys, that was due entirely to concern that tolling would not apply to claims against such persons, based on the rule that "class action tolling does not apply to a defendant not named in the class action complaint." (*Vassalle* Doc.8 at 9) (quoting *Wyser–Pratte Mgmt. Co., Inc. v. Telxon Corp.,* 413 F.3d 553, 567 (6th Cir.2005)).

The fact that the release applies to attorneys associated with Midland does not render it unfair and inadequate. In the Court's long experience, it is standard to include the defendant's agents, assigns, and attorneys within the scope of a release. There is nothing improper about a class action settlement releasing claims against non-parties where, as here, "the claims against the non-parties being released [are] based upon the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 109 (2d Cir.2005), quoting *In re Lloyd's Am. Trust Fund Litig.,* 2002 WL 31553577 at \* 11 (S.D.N.Y. Nov. 26, 2002); see also 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 12:16, (4th ed. 2002) ("A settlement may ... seek to discharge parties who have not been served with process and are therefore not before the court.").

Based on the limited scope of the release as outlined above, the Court reaffirms that the notice provided to class members was adequate. Under Fed.R.Civ.P. 23(e), before ratifying a proposed settlement agreement, "[t]he court must direct notice in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

a reasonable manner to all class members who would be bound by the proposal." "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the [Fairness Hearing]." 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8.32, (4th ed.2002). "Class member are not expected to rely upon the notices as a complete source of settlement information." *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.1975). Upon review, the notice provided to the class in this case was more than adequate to meet the standards of Fed.R.Civ.P. 23(e) and due process. It was not necessary for the Court to incorporate the Objectors' attorneys' dubious interpretation of the release into the Class Notice. [FN2]

> FN2. The Court notes additionally that Midland's stipulation that it will not use any address information obtained during the claims process, along with the fact that most of the address information used to identify and contact class members came from Midland's own files, effectively addresses the concerns that have been raised about Midland using information gathered from the class settlement process in order to pursue class members for debts.

**D. Fairness, Reasonableness, and Adequacy of the Settlement**

*15 After considering the extensive briefing of the issues and oral presentations at the Fairness Hearing, the Court finds the settlement to be fair, reasonable, and adequate.

**1. The Risk of Fraud or Collusion**

Initially, the Court finds that the evidence indicates beyond any doubt that the settlement was the product of arms-length negotiation. The Objectors concede that they "have no direct evidence of fraud and collusion between the settling parties." (*Vassalle* Doc. 148 [Joint Memorandum in Opposition to Motion for Approval of Class Settlement] at 9). This lack of evidence alone indicates that the Court should reject the argument that the settlement was collusive, as "the courts respect the integrity of counsel and presume the absence of fraud and collusion in negoti-

ating the settlement, unless evidence to the contrary is offered." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed.2002).

But the history of this litigation, recounted above, positively belies any contention that the settlement was collusive. The parties reached their agreement only after three years of litigation, four mediation sessions with Judge McQuade, and several more settlement conferences with the Court. "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot,* 617 F.Supp.2d 668, 673 (S.D.Ohio 2007). Moreover, the Court notes that Class Counsel in this case has almost fifty years of experience in litigating class action matters, and has a track record of integrity and vigorous advocacy on behalf of clients. The Objectors' insinuations that the settlement was collusive are entirely unsupported.

The Objectors take issue with both the incentive payments of $8,000 to Named Plaintiffs and the broader release the Named Plaintiffs have obtained from Midland. But courts have recognized that incentive payments of a few thousand dollars to class representatives are appropriate, and have frequently approved class settlements including same where the class settlement has resulted in the creation of a common fund for the benefit of the class. See, *e.g.,* *Huguley v. General Motors Corp.,* 128 F.R.D. 81, 85 (E.D.Mich.1989) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne."); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (approving payment of $2,000 to five class representatives). Moreover, the Named Plaintiffs have agreed to a much broader release than the other class members, agreeing to release all claims, not just those based on affidavits, that they may have against Midland. (Settlement Agreement at 12–13). In view of the time, effort, risk, and expense the Named Plaintiffs have undertaken in pursuing this litigation (including participation in discovery and settlement efforts); the broader release to which they have agreed; and the substantial common fund that their efforts have created for the benefit of the class, the Court finds the incentive payments justified.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

**2. The Complexity, Expense, and Likely Duration of Continued Litigation**

**\*16** "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 174 (S.D.N.Y.2000). Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002).

In view of its complexity and likely expense, this class action is no exception. "The Fair Debt Collection Practices Act is a set of complex laws with many components." *Wess v. Storey,* 2011 WL 1463609 (S.D.Ohio Apr.14, 2011) (granting final approval of class settlement of FDCPA and OCSPA claims). The instant case would be very expensive to fully litigate, and might take years to finally resolve through the course of trial and appeal, creating additional attorney's fees and reducing any potential payout to the class.

**3. The Amount of Discovery Engaged in by the Parties**

This litigation was commenced in April 2008 with the filing of the *Brent* action. In the nearly three years between the filing of *Brent* and the settlement, the parties undertook extensive discovery and motion practice, recounted above. The Court has no doubt that, after two rounds of motion practice that had established the strength of each side's legal claims and several rounds of settlement negotiations, the experienced attorneys who negotiated this settlement had an accurate understanding of the strength of their respective cases.

**4. The Likelihood of Success on the Merits**

As noted above, Brent prevailed upon her motion for summary judgment on liability issues. But, in its subsequent partial summary judgment opinion on damages, the Court held that she could not recover actual damages under the FDCPA, because she could not show that any of her actual damages resulted from the unlawful aspects of the affidavit (the false attestation that it was based on the affiant's personal knowledge), as opposed to the general stress of the debt collection process. (Doc. 104 at 12–13) (citing *Davis v. Creditors Interchange Receivable Manage-*

*ment, LLC,* 585 F.Supp.2d 968 (N.D.Ohio 2008) and *Higgins v. Capitol Credit Services, Inc.,* 762 F.Supp. 1128, 1135 (D.Del.1991)). This holding severely limits the damages obtainable by Brent and similarly-situated persons who had received an unlawful Midland affidavit. That is, such persons can only recover statutory damages under the FDCPA, capped at $1000, on an individual claim, along with attorney's fees. Few debtors could be expected to bear the cost and uncertainty of litigation in pursuit of such a meager potential recovery, a fact which weighs in favor of approving the settlement in this case.

Indeed, the class settlement in this case far exceeds the FDCPA statutory damages cap of $500,000 per class action that would otherwise obtain in this case. See *Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647, 650–651 (6th Cir.1994) (holding that the FDCPA limits damages to "per proceeding," not "per violation" in class actions). While Objectors decry the monetary relief afforded to the class by the settlement as a "pittance," "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Smith v. Tower Loan of Mississippi, Inc.,* 216 F.R.D. 338, 369 (S.D.Miss.2003) (quoting *Dunleavy v. Nadler ( In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir.2000)). Given the damages cap applicable to FDCPA cases, the monetary relief provided for in the class settlement here is well in line with that provided for in other FDCPA class settlements that have been approved. See, *e.g., Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 at *3 (S.D.Cal. Jun.22, 2010) (approving FDCPA settlement of $35,000 distributed *cy pres,* with no payment to class members); *Cope v. Duggans,* 203 F.Supp.2d 650, 653 (E.D.La.2002) (approving FDCPA settlement where class members who returned claim forms would receive $11.90 each); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.,* 2006 WL 3681138 at *7 (E.D.N.Y. Dec.11, 2006) (approving FDCPA settlement of $45,000 *cy pres,* with no payment to class members); see also *Jerman v. Carlisle,* 271 F.R.D. 572, 576–77 (N.D.Ohio 2010) (certifying FDCPA class even though FDCPA damages cap would limit relief to $3.10 per class member).

**\*17** While Objectors contend vigorously that they have lucrative claims against Midland arising from false affidavits under both state and federal law,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

the Court is unconvinced. Most of the lawyers who filed affidavit class actions against Midland following this Court's August 11, 2009 summary judgment opinion included only FDCPA claims which, as noted above, would be subject to the FDCPA's statutory damages cap. Even with respect to those claims, success on the merits is not assured. See, *e.g., Myers v. Asset Acceptance LLC,* 750 F.Supp.2d 864 (S.D.Ohio 2010) (dismissing FDCPA claim based on false affidavits on summary judgment, and distinguishing this Court's August 11, 2009 opinion in *Brent* ); *Albritton v. Sessoms & Rogers, P.A.,* 2010 WL 3063639 at *7 (E.D.N.C. Aug.3, 2010) (dismissing FDCPA claim based on affidavits that falsely claimed to be based on the affiant's personal knowledge at the pleading stage, decrying "the absurd results that could come from plaintiff's interpretation, wherein every *de minimis* error would render a debt collector liable under the FDCPA and every debt collection defense would turn into a hunt for the slightest misspelling, mislabeling, or minute technical falsity").

The argument that has been submitted with respect to potential state-law affidavit claims against Midland is speculative and inconclusive. No strong precedent exists that convinces this Court that class members would be able to recover significant relief under state law with respect to affidavits that correctly state the amount the debtor owes, but which falsely claim to be based on the affiant's personal knowledge. The two cases now pending bringing state-law claims against Midland based on affidavits, *Gray v. Suttell & Associates* (E.D.Wash. No. CV–09–251) and *Reimann v. Brachfeld* (Alameda County, Ca., Superior Court, No. 10–529702), have not been litigated to judgment, and the plaintiffs in both face significant hurdles to obtaining their desired relief. The Court is satisfied that the speculative possibility that certain class members may have more lucrative claims under state law should not prevent the classwide settlement of this case. See *In re M3 Power Razor System Marketing and Sales Practices Litig.,* 270 F.R.D. 45, 61 (D.Mass.2010) (certifying national settlement class over objections of California plaintiffs; noting that "California consumer protection laws present differences that are, in the context of this case, both minimal and speculative); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022–23 (9th Cir.1998) (approving nationwide settlement class and explaining that "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims."). Moreover, any class member who believes he or she can obtain a greater recovery has been free to opt out of the class.

The settlement is also not defective because it does not vacate all state-court judgments obtained by Midland using the affidavits. It is unsurprising that such relief was not included in the settlement agreement, because under the *Rooker–Feldman* doctrine, a mass vacatur of state court judgments would be beyond the power of this Court to grant if this litigation proceeded to judgment. Moreover, such a resolution, if contained in a settlement, would result in needless time and expense, as Midland would seek to relitigate formerly closed judgments where the debtor was sued on the correct amount, but the affidavit contained a technical defect.

**5. The Opinion of Class Counsel and Class Representatives**

*18 The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement. See *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D.Cal.2004). Skilled and experienced counsel in this case recommend the settlement as a fair, adequate, and reasonable.

**6. The Reaction of Absent Class Members**

Of approximately 1.4 million total class members, only 61 (about .004% of the class) objected, and 4,262 (.3%) opted out. By comparison, more than 133,000 class members (9.2%) filed a claim form. The fact that very few class members opted out or objected indicates that the settlement is adequate. See *In re Delphi Securities Litig.,* 248 F.R.D. 483, 498–499 (E.D.Mich.2008).

**7. The Public Interest**

The Court finds, finally, that the settlement is beneficial to the public interest. The settlement aggregates many claims that would likely not go to trial, resulting in a $5.2 million common fund that provides relief to the class far above the otherwise-applicable damages cap of $500,000, while significantly penalizing Midland for its prior unlawful acts. In addition, the settlement provides substantial injunctive relief, requiring it to submit policies for ensuring the accuracy of its affidavits to a third-party Special Master, and to implement those policies.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

For the foregoing reasons, therefore, the Court finds the settlement fair, reasonable, and adequate, and approves it.

### E. Attorney's Fees

As stated by the U.S. Supreme Court, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Such an award may be based "on a percentage of the fund recovered on the class." *Blum v. Stenson,* 465 U.S. 900 n. 16 (1984). The rationale for such an award is "the equitable notion that those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply System Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir.1994). This "common fund doctrine" has been recognized by the Sixth Circuit. See *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993) ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances.").

In considering the reasonableness of a fee award, the Court looks to six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir.1974).

**\*19** Here, Class Counsel seeks a common fund fee award of $1.5 million, approximately 29% of the total $5.2 million settlement amount. This amount is in line with percentages approved in other common fund cases. See, *e.g., Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933 (N.D.Ohio Mar.8, 2010) (33% of settlement amount); *Clevenger v. Dillards, Inc.,* 2007 WL 764291 (S.D.Ohio Mar.9, 2007) (29% of settlement fund); *New England Employees Pension Fund v. Fruit of the Loom,* 234 F.R.D. 627, 634) (W.D.Ky.2006) (25% of the total settlement

fund). Additionally, the Court finds that the reasonableness of Class Counsel's fee request is supported by a review of the six *Ramey* factors.

Class Counsel's efforts have rendered a substantial benefit to the class. The settlement amount is nearly ten times the applicable FDCPA class-action damages cap, and the injunctive relief reasonably ensures that the class will not again be subjected to Midland's unlawful practices. The award is also supported by society's stake in providing an incentive for other attorneys. Class Counsel took this case on a contingency-fee basis, with no guarantee of receiving anything, and has invested more than $1 million of time, unreimbursed fees, and out-of-pocket expenses over more than 38 months of hard-fought litigation. His efforts have resulted in substantial relief for low-income debtors, whose claims under the FDCPA for false affidavits would ordinarily not provide a sufficient monetary incentive to litigate on an individual basis. The risk Class Counsel undertook in pursuing this litigation militates in favor of the fee award.

Class Counsel's fee award is also supported by the value of his services on an hourly basis. The lodestar figure in this case amounts to $939,200. The Court has reviewed the documentation supporting this figure, and finds the amount reasonable in light of the description of work undertaken in this case. (*Vassalle* Docs. 155, 134–1). The requested fee thus constitutes a multiplier of approximately 1.5, well within an acceptable range. See *Barnes v. City of Cincinnati,* 401 F.3d 729, 746–747 (6th Cir.2005) (upholding multiplier of 1.75). The use of a multiplier is supported by the substantial risk Class Counsel undertook in prosecuting this matter so vigorously on a contingency-fee basis, and his efforts in establishing groundbreaking legal precedent to benefit low-income debtors.

The complexity of the litigation also supports the requested fee award. Class Counsel has litigated the *Brent* matter through two rounds of complex motion practice that took over three years to resolve, involving novel FDCPA issues. Finally, the award is supported by the professional skill and standing of counsel for both sides. Both are distinguished practitioners who have provided competent and skillful representation in this matter.

### F. Motion to Strike

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
(Cite as: 2011 WL 3557045 (N.D.Ohio))

Midland moves to strike (*Yassalle* Doc. 135) the Declaration of Stephen Gardner, an attorney, which was filed in connection with Objection of class members Clawson and Herring. The Declaration sets forth Gardner's opinions about the fairness of the settlemens. The Court has reviewed the Declaration, and finds that its consideration would not affect the Court's ultimate conclusion that the settlement is fair and adequate. Thus, the motion is denied as moot.

**V. Conclusion**
    *20 The Court hereby grants final approval of the settlement of this class action litigation. The motions to approve the settlement (*Yassalle* Doc. 131) and for an award of attorney's fees (*Yassalle* Doc. 134) are granted. The motion to strike the Declaration of Stephen Gardner (*Yassalle* Doc. 135) is denied as moot.

    The Court hereby dismisses with prejudice the *Yassalle v. Midland Funding* (No. 3:11–cv–00096) and *Midland Funding v. Brent* (No. 3:08–cv–1434) actions. With respect to *Franklin v. Midland Funding* (No. 3:10–cv–00091), which was previously dismissed with prejudice but is now before the Court on a limited remand, the Court again dismisses the matter. The Court awards attorney's fees in the amount of $1,500,000, and reimbursement of unpaid expenses in the amount of $9,000. The Court retains jurisdiction over the parties, including all members of the class, with respect to the implementation and enforcement of the settlement.

    The Court hereby permanently enjoins and restrains all class members who did not duly request exclusion from the class in the time and manner provided for in the Class Notice from commencing or prosecuting any action, suit, claim or demand against any of the parties released by virtue of the Settlement Agreement arising out of or related to the released parties' use of affidavits in debt collection lawsuits.

    The Court enjoins Midland as follows, based on the factual predicate stipulated as between the parties. (*Vassalle* Doc. 151 at 1–3). Midland, throughout the United States, will create and implement written procedures for the generation and use of affidavits in debt collection lawsuits (the "Affidavit Procedures"). These procedures shall be reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge

of the facts set forth in the affidavit. Midland shall appoint a person responsible for ensuring compliance with the Affidavit Procedures.

    The Court hereby appoints the Hon. Richard McQuade as Special Master to monitor Midland's compliance with this injunction. Within thirty (30) days of entry of this injunction, Midland shall submit its Affidavit Procedures to the Special Master for review.

    Upon review of the Affidavit Procedures, the Special Master shall make findings as to whether the Affidavit Procedures are reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit. In the event that the Special Master finds that the Affidavit Procedures are not reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit, Defendants shall have thirty (30) days to revise procedures so as to cure any defects identified by the Special Master.

    This injunction will lapse and expire twelve (12) months after the Effective Date, as defined in Section V.-A of the Settlement Agreement. At the end of the twelve month injunction, Midland shall submit to the Special Master a declaration from the responsible person confirming that the Affidavit Procedures approved by the Special Master have been implemented. A copy of such declaration shall be filed with this Court.

    *21 During the 12–month term of this injunction, both parties have the right to seek relief from, or modification of, this injunction based on an unfair burden on the business, or a change in the law. Any request for alteration or modification of the injunction shall be made to the Special Master. Any alteration or modification of the injunction shall not extend or contract the length of its 12–month term. Any alteration or modification shall only apply prospectively for the remainder of the 12–month injunction. The Court shall retain jurisdiction to enter further orders as may be necessary to implement and/or enforce the provisions of this injunction.

    IT IS SO ORDERED.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3557045 (N.D.Ohio)
**(Cite as: 2011 WL 3557045 (N.D.Ohio))**

N.D.Ohio,2011.
Vassalle v. Midland Funding, LLC
Slip Copy, 2011 WL 3557045 (N.D.Ohio)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit B

1 of 1 DOCUMENT

**GABRIEL GUTIERREZ, on behalf of himself and all others similarly situated, Plaintiff, v. LVNV FUNDING, LLC, et al., Defendants.**

**EP-08-CV-225-DB**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, EL PASO DIVISION**

**2009 U.S. Dist. LEXIS 54479**

**March 16, 2009, Decided**
**March 16, 2009, Filed**

**CORE TERMS:** class members, putative, class action, typicality, actual damages, predominance, class representative's, affiant, commonality, collection, personal knowledge, arbitration, numerosity, statutory damages, individualized, predominate, superiority, state action, attorney's fees, adequacy, prong, arbitration clauses, defeat, class certification, individual actions, additionally, common questions, res judicata, purported, collection action

**COUNSEL:** [*1] For Gabriel Gutierrez, on behalf of himself and others similarly situated, Plaintiff: Scott Alan Vogelmeier, LEAD ATTORNEY, Law Office of Scott A. Vogelmeier, El Paso, TX; James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC., Chicago, IL.

For LVNV Funding, LLC, Alegis Group, LLC, Resurgent Capital Services LP, Defendants: David C. Sander, LEAD ATTORNEY, Scanlan, Buckle & Young, P.C., Austin, TX.

**JUDGES:** THE HONORABLE DAVID BRIONES, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** DAVID BRIONES

**OPINION**

**MEMORANDUM OPINION AND ORDER**

On this day, the Court considered Plaintiff Gabriel Gutierrez's "Motion For Class Certification," filed in the above-captioned cause on September 15, 2008. On October 7, 2008, Defendants LVNV Funding, LLC, et filed a "Response In Opposition To Plaintiff's Motion For Class Certification," to which Plaintiff replied on October 20, 2008. On January 28, 2009, with the Court's leave, Defendants filed a "Supplemental Response In Opposition To Plaintiff's Motion For Class Certification" ("Supplemental Response"). On February 6, 2009, Plaintiff filed a "Su-Reply In Support Of Certification." After due consideration, the Court is of the opinion that Plaintiff's Motion should be granted for the reasons [*2] that follow.

**BACKGROUND**

The instant case involves alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Texas Finance Code ("TFC"). On or about January 24, 2008, Defendant LVNV Funding, LLC ("LVNV Funding") filed suit against Plaintiff in the 448th District Court, El Paso County, Texas ("state action"), to collect upon a purported credit card debt, which LVNV Funding claimed to have purchased. Attached to the state action petition was an "affidavit of account," signed by an authorized representative of LVNV Funding and notarized. The affidavit of account stated that the affiant or a person under her supervision "has care, custody, and control of all records concerning [Plaintiff's] account . . . ." Further, the affiant averred that she had "personal knowledge" that the claim against Plaintiff is "just and true," and that Plaintiff owed LVNV Funding $ 6961.13, exclusive of interest. Plaintiff alleges that this affidavit of account is false because LVNV Funding did not have any original documents or records concerning Plaintiff's purported debt and instead relied upon a computerized list that provides minimal information. Further, Plaintiff alleges that the affidavit [*3] of account is a standard form document prepared on a mass production basis, that the affiant is always one of Defendants' employees, and that the affidavit of account is always untrue.

The affidavit of account filed against Plaintiff was also allegedly false in that it mistakenly identified Plaintiff as the putative debtor when he, in fact, was not. Prior to the filing of the state action against Plaintiff, Plaintiff allegedly provided LVNV Funding a copy of his Social Security card, showing that the last four (4) digits of his social security number did not match those of the putative debtor. Nevertheless, LVNV Funding commenced the state action. As a result, Plaintiff hired counsel to defend the state action. In May 2008, the state action was nonsuited. On June 23, 2008, Plaintiff filed a Complaint in federal court on behalf of himself and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). The instant Motion followed.

## DISCUSSION

Rule 23 provides the criteria for certifying a class action. FED. R. CIV. P. 23. "The party seeking certification bears the burden of establishing that *all* requirements of Rule 23 have been satisfied." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) **[*4]** (emphasis in original). To certify a class, the court must first find that the class satisfies the four (4) requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]. FED. R. CIV. P. 23(a); *see James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001).

The court must additionally find that the case fits into one (1) of the three (3) categories of class actions prescribed in Rule 23(b). Plaintiff pleads the instant case falls within the third category, which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Further, the court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

The court has great discretion in certifying **[*5]** a class action and may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 478 (5th Cir. 2001); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). Indeed, to determine "whether common issues predominate, the district court must consider how a trial on the merits would be conducted if a class were certified." *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Ins. Indem. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). Nevertheless, the court "may not allow its view of the merits to determine the outcome of the class certification issue." *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532 (5th Cir. 1978).

Thus, the Court examines Plaintiff's claims in Section A in order to consider how a trial on the merits would proceed. Next, in Section B, the Court addresses the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Finally, in Section C, the Court considers the predominancy and superiority requirements of Rule 23(b).

## A. FDCPA and TFC Claims

Plaintiff claims that Defendants violated the FDCPA--specifically, 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10)--and section 392.304 of the TFC **[*6]** ("§ 392.304"). These claims require proof of similar behavior: false or misleading representations. The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e (West 1998). This prohibition is to be applied generally. 15 U.S.C.A. § 1692e. The FDCPA also specifies certain conduct that violates § 1692e, including "[t]he false representation of . . . the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C.A. §§ 1692e(2)(A), (10). Similarly, the TFC prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE ANN. § 392.304 (Vernon 2006).

Accordingly, to prove Defendants violated § 1692e or § 392.304, Plaintiff must show that Defendants used false representations in a debt collection proceeding. In the instant case, Plaintiff alleges that Defendant regularly used false affidavits of account. To so prove, Plaintiff must show that the affiants--LVNV **[*7]** Funding's employees--never had in their possession documents to support their claims of "personal knowledge." Plaintiff must further show that the use of false affidavits violates § 1692e or § 392.304. Thus, Plaintiff seeks to certify a class consisting of all individuals sued in Texas by LVNV Funding, where an "affidavit of account" in the form represented by Exhibit A of the instant Motion was attached to the complaint, and the complaint was filed on or between June 23, 2007, and July 13, 2008.

## B. Rule 23(a) Requirements

In the context of those claims, the Court considers in this Section whether Plaintiff fulfilled his burden of showing numerosity, commonality, typicality, and adequacy as required by Rule 23(a). In Section C, the Court examines whether Plaintiff met the predominancy and superiority requirements of Rule 23(b).

## 1. Numerosity

Plaintiff argues that the numerosity prong is satisfied, as he submitted thirty-nine (39) state court petitions filed with affidavits of account by LVNV Funding in El Paso County, Texas. [1] Defendants counter that, since a collection agency--not LVNV Funding-- attaches the affidavits of account, it would be difficult for Defendants to discern the number [*8] of times affidavits of account were filed. Plaintiff responds that this difficulty is not a bar to finding numerosity, as that information is within Defendant's control. The Court agrees with Plaintiff.

> 1 In his Reply, Plaintiff claims to have submitted into the record thirty-seven (37) state court petitions with attached affidavits of accounts in Exhibit 3. However, the Court counts thirty-eight (38) such petitions in Exhibit 3. Additionally, Plaintiff submitted the affidavit of account filed in Plaintiff's state court action. Accordingly, Plaintiff has submitted thirty-nine (39) state court petitions with attached affidavits of accounts filed on or between June 23, 2007, and July 13, 2008.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). While "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," the first prong of Rule 23(a) is generally fulfilled "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001); *see Walker v. Jim Dandy Co.*, 638 F.2d 1330, 1335 (5th Cir. 1981); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) [*9] (noting that courts have certified classes with as few as twenty-five (25) or thirty (30) members). However, the focus of the numerosity requirement "'is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman*, 651 F.2d at 1038 (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). These factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.* To support a finding of numerosity, a plaintiff must "'demonstrate some evidence or reasonable estimate of the number of purported class members.'" *James*, 254 F.3d at 570 (quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)).

Here, Plaintiff alleges that LVNV Funding filed approximately 1000 collection suits in Texas after July 1, 2007, and estimates that the class includes at least 100 members. To support this estimation, Plaintiff attached to his Motion thirty-nine (39) examples of state action complaints with attached affidavits of accounts. Notably, these petitions reflect [*10] a minimum approximation of class members because Defendants have better access to this information than Plaintiff. Additionally, all of the submitted state petitions were filed in El Paso County, whereas the class encompasses all individuals sued in the State of Texas. Despite Defendants' assertions to the contrary, LVNV Funding brought suit against the class members and thus should have records of which petitions included affidavits of account. Further, under the FDCPA, statutory damages for individual actions are limited to $ 1000, plus costs and reasonable attorney's fees. 15 U.S.C.A. § 1692k(a)(2)(A), (3) (West 1998). Thus, the claims at issue are relatively small, and individuals are unlikely to pursue individual actions. Accordingly, Plaintiff fulfilled the numerosity prong of Rule 23(a) by showing such numerosity that joinder of all members would be impracticable. [2]

> 2 Under Rule 23, the Court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983). Accordingly, the Court must "define, redefine, subclass, and decertify as appropriate . . . ." *Id.* If, as the instant litigation [*11] proceeds, the class shrinks to such a size that joinder would be practicable, the Court may consider decertifying the class.

## 2. Commonality

Next, Plaintiff argues that the class satisfies the commonality prong because all class members are affected by LVNV Funding's general policy of attaching false affidavits of accounts to state court petitions. Defendants respond that Plaintiff's claims require individualized inquiries as to the truthfulness of the affidavits of account for each class member and as to the amount of actual damages sustained by class members. Plaintiff clarifies that few individualized inquires are necessary, as class members can receive statutory damages and *every* attached affidavit of account was false in that the affiant claims to have personal knowledge of the alleged debt. The Court finds Defendants' arguments unconvincing.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "The threshold of 'commonality' is not high." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). This inquiry is aimed to discover whether there is a need for or benefit from considering the members' claims together. [*12] *Id.* Thus, the resolution of the common questions must "affect all or a substantial number of the class members." *Id.* Still, "[t]he interests and claims of the various plaintiffs need not be identical." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *see Stewart v. Winter*, 669 F.2d 328, 334 (5th Cir. 1982). Indeed, even the complex determination of individual damages is not a basis for finding a plaintiff has not

satisfied Rule 23(a)(2). *Forbush*, 994 F.2d at 1106 (finding the alleged overestimation of social security benefits to be a common issue despite class members' various pension plans).

In the instant case, whether the affidavits of account that LVNV Funding attached to state court petitions during the class period were always false constitutes a common question of fact. Specifically, Plaintiff alleges that the affiants claimed to have certain records and personal knowledge of the putative debtors' debts when, in fact, they had no such personal knowledge and relied instead on a computerized list with minimal information. Additionally, whether the submission to state court of false affidavits of account violated class members' rights under the FDCPA or the [*13] TFC represents a common question of law. The resolution of these common issues will undoubtedly advance the litigation of each class member's claims. Defendants erroneously emphasize Plaintiff's circumstances--that the state court action against him was a case of mistaken identity. Regardless of whether or not Plaintiff was indeed the putative debtor, the affidavit of account was allegedly false with regard to the affiant's claim to have personal knowledge of the debt. *See Forbush*, 994 F.2d at 1106.

With regard to damages, Defendants are correct that not every class member may have sustained actual damages. Nevertheless, such class members could receive statutory damages. *See* 15 U.S.C.A. § 1692k(a)(2)(B) (allowing the court to require any debt collector to pay an amount "not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of the debt collector"). Further, while the actual damage incurred by each class member is not a common question, Rule 23(a)(2) does not require commonality of *all* issues between class members. Accordingly, Plaintiff has established common questions of law and fact sufficient to meet the low threshold of Rule 23(a)(2). In Section C, the Court considers [*14] whether these common issues satisfy Rule 23(b)(3) by sufficiently predominating over individual issues.

**3. Typicality**

Next, Plaintiff argues that his legal and remedial theories are similar to those of class members he purports to represent because the claims arise from the same practice--the submission of false affidavits of account with state court petitions. Defendants argue that Plaintiff's claim is not typical, as his claim includes mistaken identity and each class member's claim would entail an individualized inquiry as to the truthfulness of the affidavit of account and the member's actual damages. Further, Defendants assert that individual defenses exist in contract law that are not uniform across the class. [3] Plaintiff replies that his claim against Defendants is typical because it relies upon the claim that LVNV Funding's affidavits of account were false in every instance. The Court agrees with Plaintiff.

---

3 In their Supplemental Response, Defendants further argue that Plaintiff cannot satisfy the typicality prong because he cannot speak, read, or write in English. Specifically, Defendants assert that Plaintiff's claim that he was confused by the affidavit of account is not typical [*15] for English-speaking class members. Plaintiff replies that he never alleges that he was *confused* by the affidavit of account but rather that the affidavit of account was untrue. Defendants misconstrue Plaintiff's claim and make no argument that the claim at issue or relevant defenses depend upon Plaintiff's ability to understand English. Therefore, this argument does not defeat class certification.

---

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The test for typicality is not demanding. *Forbush*, 994 F.2d at 1106. This prong "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *James*, 254 F.3d at 571. Still, typicality does not require claims to be completely identical. *Id.* "Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* (internal quotation omitted). Factual differences between the named representative's claims and those of other members will not defeat typicality if "the claims arise [*16] from a similar course of conduct and share the same legal theory." *Id.* (internal quotation omitted).

To determine whether Plaintiff satisfies the typicality prong, the Court firsts examines the typicality of Plaintiff's claims. Next, the Court examines the typicality of Defendants' defenses against Plaintiff's claims. Finally, the Court addresses the typicality of Plaintiff's remedial theory. Only if typicality is met in each of these three (3) areas can Rule 23(b)(3) be satisfied.

First, with regard to the similarity of Plaintiff's claims to those of other class members, Plaintiff claims that Defendants violated § 1692e and § 392.304 by misrepresenting the legal status of his debt in the affidavit of account. Specifically, Plaintiff claims Defendants represented that the debt was vouched for or established by the affidavit of account when that affidavit of account was untrue. The affidavit of account against Plaintiff may have been false for two (2) reasons: mistaken identity and the affiant's lack of claimed personal knowledge. Some of the affidavits of account filed against other class members might also be false in more than one (1) way. For example, the affidavits of account could [*17] contain a mistaken identity, an incorrect balance of debt owed, or an erroneous last date of payment. Regardless of the additional possible errors an affidavit of account could have, Plaintiff asserts that the affidavits of account are always erroneous because the affiant lacks the claimed personal knowledge. Thus, Plaintiff's claim that the affidavit of account was untrue in his case is typical of other class members' claims.

Second, the Court examines whether Defendants' defenses against Plaintiff's claims are typical of the defenses Defendants could raise against other class members' claims. Defendants assert that Plaintiff's claimed lack of contract--because of the mistaken identity-- defeats typicality, but Defendants do not explain how this affects Plaintiff's claim or Defendants' defenses. [4] Defendants also claim the ability to assert defenses of estoppel and waiver as to some purported class members' § 1692e claims but fail to explain how such defenses could apply. Defendants cannot assert collateral estoppel simply because they received a final judgment in a debt collection action in state court against a class member. *See infra* Sections C.4-C.5. Nor can defendants defend themselves [*18] against claims against § 1692e and § 392.304 merely because class members did not assert those claims in the state court actions. *See infra* Section C.5.

4 Under the FDCPA, "consumer" refers to "any natural person obligated or *allegedly* obligated to pay any debt." 15 U.S.C.A. § 1692a(3) (West 1998) (emphasis added). Thus, Plaintiff is a consumer according to the FDCPA.

Finally, the Court examines the similarity between Plaintiff's remedial theories and those of the class. Plaintiff, for himself and on behalf of the class, seeks statutory damages, any actual damages a class member incurred, an injunction against further violations, and attorney's fees, litigation expenses, and costs of suit. [5] Any class member bringing a similar claim would also seek statutory damages and actual damages, if applicable. *See* 15 U.S.C.A. § 1692k(a). Since Plaintiff expended money for representation in the state court action, he claims actual damages in the form of attorney's fees. Not all other class members made such an expenditure. Nevertheless, the calculation of the incurred attorney's fees would not be complex, and state court records would show whether a class member retained counsel in the state court [*19] proceeding. As such, the variety of actual damages incurred by class members does not preclude typicality. *See Forbush*, 994 F.2d at 1106. Accordingly, Plaintiff's Motion cannot be defeated for lack of typicality.

5 Because Defendants do not quarrel with Plaintiff's request for injunctive relief, the Court will assume for the purpose of this Order that injunctive relief is available under the FDCPA. *But see Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) (noting that, while the United States Court of Appeals for the Fifth Circuit "has not definitively ruled on the issue, courts uniformly hold that the FDCPA does not authorize equitable relief").

## 4. Adequacy

Lastly, Plaintiff argues that his interests coincide with those of the class and that he is thus an adequate class representative. He also claims that his counsel is adequate class counsel. Defendants do not question the competency of class counsel, but they attack Plaintiff's ability to serve as class representative. First, Defendants assert that Plaintiff has not shown he possesses common interests with the class. Second, Defendants claim Plaintiff does not understand his obligations as class representative and [*20] lacks sufficient knowledge of the case. Third, Defendants argue that Plaintiff is an inadequate class representative because he is unable to comprehend legal notices composed in English. Plaintiff counters that his interests do not conflict with those of the class because all seek money damages. Further, Plaintiff claims that he need not have a proficient knowledge of the law in order to be able and willing to protect the interests of the class throughout the litigation. The Court agrees with Plaintiff.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). To fulfill the adequacy prong, first, class counsel must be "'qualified, experienced, and generally able to conduct the proposed litigation.'" *N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 644 (5th Cir. 1979) [*21] (quoting *Johnson v. Ga. Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969)). Second, the court must "uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Mere differences between the named plaintiff and class members do not render the named plaintiff an inadequate representative unless those differences create conflicts of interest. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir.1999). Third, the named plaintiff must have "a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation and also . . . [have an] understanding of his role as class representative." *Berger*, 257 F.3d at 482-83.

First, Defendants do not contest the competency of class counsel, and Plaintiff submitted sufficient proof of counsel's familiarity with FDCPA class action suits to satisfy that aspect of the adequacy inquiry. Second, Plaintiff satisfied his burden of showing that his interests do not conflict with the class's interests. The Court has already found that Plaintiff adequately proved the commonality and typicality prongs of [*22] Rule 23. Thus, Plaintiff's claims and those of the class are similar. Additionally, Plaintiff and class members seek money damages as the result of Defendants' collection practices. Though the facts of Plaintiff's case and the amount of

his actual damages may differ from those of other class members, these differences do not result in a conflict. *See Mullen*, 186 F.3d at 625-26; *Palmer v. Stassinos*, 233 F.R.D. 546, 551 (N.D. Cal. 2006) (finding no conflict where class representative could recover $ 1000 in statutory damages and unnamed class members no more than $ 0.21 each).

Third, the Court considers whether Plaintiff lacks sufficient understanding of the litigation and his obligations as a class representative. Defendants argue that Plaintiff's deposition by Defendants' counsel ("Deposition") evidences that Plaintiff lacks understanding of his role as class representative and sufficient knowledge and understanding to control or prosecute the litigation. Plaintiff responds that he fully understands the class representative's primary duties--to retain experienced counsel, participate in the discovery process, and take an active role in monitoring class counsel's activities--and that particular  **[*23]**  knowledge of the litigation strategy is unnecessary to satisfy adequacy.

The Deposition reveals that Plaintiff, after being served with the state action petition, actively sought out counsel and relies heavily on his counsel to litigate his claim. When asked directly about who the class representative is in this case and what his duties entail, Plaintiff responded that the class representative "must be me" and that his "obligations are to be in contact with my attorney." When shown a copy of the Complaint in English, Plaintiff responded that he recognized the first page of the document but could not explain what it was, only that it was "something legal." Plaintiff could not identify any of the Defendants by name, and he did not have a clear understanding of the damages he is seeking. [6] Instead, Plaintiff stated that he authorized counsel to seek damages on his behalf and that he did not know how to put a price on the damages he has suffered: "That's why I hired the attorney, so he can be in charge of evaluating the situation."

6 Plaintiff stated that he was claiming lost wages and damages for the harm the state action caused his family. He never mentioned statutory damages or the other  **[*24]**  relief identified in the Complaint.

Defendants rely heavily on *Ogden v. Americredit Corporation* ("*Ogden*"), claiming the facts of the instant case are virtually identical to those in *Ogden*. 225 F.R.D. 529 (N.D. Tex. 2005). The Court disagrees. The *Ogden* court emphasizes that it found the plaintiff inadequate based upon *all* of the circumstances present in that case. *Id*. at 533. In *Ogden*, the plaintiff did not seek out counsel and retained counsel only after they solicited her. *Id*. at 535. She then did not appear at a hearing set specifically to determine whether she was an adequate class representative. *Id*. at 536. Further, when asked by the court to explain why she failed to appear, her affidavit merely stated that she had to watch her cousin's children, without explaining why no one else could do so. *Id*. at 537. These crucial facts are absent in the instant case. Here, Plaintiff actively sought out counsel, appeared at the Deposition, and understands his duty to be in contact with his counsel.

With regard to a named plaintiff's level of knowledge and understanding of the litigation, the *Ogden* court recognized that a named plaintiff is entitled to rely on counsel and need not know  **[*25]**  the legal minutia of the litigation. *Id*. at 534. Nevertheless, the named plaintiff must know more than that he was "'involved in a bad business deal.'" *Id*. (quoting *Berger*, 257 F.3d at 483). The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") adopted this principle from *Kelley v. Mid-America Racing Stables, Incorporated* ("*Kelley*"), a case relied upon in *Berger v. Compaq Computer Corporation*. *Berger*, 257 F.3d at 483 (citing *Kelley*, 139 F.R.D. 405, 410 (W.D. Okla. 1990)). The *Berger* court interpreted *Kelley* as providing two (2) useful requirements: that named plaintiffs "should understand the actions in which they are involved, and that [their] understanding should not be limited to derivative knowledge acquired solely from counsel." *Id*. at 483 n.18. In *Kelley*, the named plaintiffs were found to be inadequate class representatives because they had no personal knowledge of any wrongdoing or misrepresentations made by any defendant. *Kelley*, 139 F.R.D. at 410. Similarly, the *Ogden* plaintiff could not state how she was harmed by a defendant and did not know of any facts supporting her allegations. *Ogden*, 225 F.R.D. at 534. In contrast, Plaintiff described his harm  **[*26]**  in the deposition. He also explained that he knew LVNV Funding did not possess the original documents as the affidavit of account represented because Plaintiff never had that credit card, so no documents could exist. [7] Thus, Plaintiff claimed personal knowledge of LVNV Funding's' alleged misrepresentation. Accordingly, all of the circumstances present in *Ogden* are not present here. *See id*. at 533. While Plaintiff's explanations may not have satisfied Defendants, Plaintiff satisfied Rule 23(a)(4). [8] *See Berger*, 257 F.3d at 482-83.

7 Specifically, Defendants' counsel asked what evidence Plaintiff had that LVNV Funding does not possess original documents relative to the accounts it collects. Plaintiff responded, "If I didn't make those requests or the payments, then they do not exist."

8 Defendants further rely upon *Lopez v. Wolpoff and Abramson, LLP*, in which the court issued Rule 11 sanctions against plaintiff's counsel. *Lopez v. Wolpoff & Abramson, LLP*, Case No. 1:08-CV-510-SS, 2008 U.S. Dist. LEXIS 104320 (W.D. Tex. Dec. 19, 2008). Again, *Lopez* is easily distinguishable from the instant case. In *Lopez*, the named plaintiff was not aware of the lawsuit when it was filed, had no idea she was a plaintiff in a lawsuit,  **[*27]**  and first met her attorney only a month before her deposition. *Lopez v. Wolpoff & Abramson, LLP*, Case No. 1:08-CV-510-SS, 2008 U.S. Dist. LEXIS 104321 (W.D. Tex. Oct. 8, 2008).

Finally, Rule 23, the FDCPA, and the TFC never state that a class representative must be fluent in English, and the Court highly doubts the constitutionality of such a requirement if one existed. The Court found above that Plaintiff has sufficient knowledge of his claims and is able to control and prosecute the litigation by managing and assisting his attorneys. Thus, Plaintiff's ability to converse in or read English is of no moment. [9] *See Rugambwa v. Betten Motor Sales*, 200 F.R.D. 358, 365 n.3 (W.D. Mich. 2001) ("[F]luency in English is not a requirement for an adequate class representative."); *see, e.g., Lau v. Nichols*, 414 U.S. 563, 564, 94 S. Ct. 786, 39 L. Ed. 2d 1 (1974) (deciding class suit brought by non-English-speaking Chinese students), *abrogation recognized in Alexander v. Sandoval*, 532 U.S. 275, 285, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001). Accordingly, Plaintiff has shown that he fulfills the adequacy requirement of Rule 23(a)(4).

9 Defendants' argument is reminiscent of one rejected by the Supreme Court--that an uneducated and illiterate person could not be a plaintiff in a derivative suit [*28] because she did not understand the complaint. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966). Though the Supreme Court was addressing a different Rule 23 requirement, its reminder that the Federal Rules were designed to "administer justice tough fair trials" and allow "unsophisticated litigants" to have their day in court is appropriate here, *Surowitz*, 383 U.S. at 373.

## C. Rule 23(b)(3) Predominance and Superiority Requirements

Having found that Plaintiff satisfied the requirements of Rule 23(a), the Court now considers the requirements of Rule 23(b)(3). Plaintiff argues that the certification under Rule 23(b)(3) is appropriate because common questions of law and fact predominate over individual determinations and because a class action is a superior and more efficient means of litigation than individual suits. Defendants respond that Plaintiff has not met the predominance for five (5) reasons. [10] First, class members' claims and Defendants' defenses depend on individual documents and testimonial evidence. Second, some class members do not have actual damages. Third, arbitration clauses may bar putative class members' claims. Fourth, the *Rooker-Feldman* doctrine may bar [*29] putative class members' claims. Fifth, res judicata may bar putative class members' claims. Finally, Defendants also argue that Plaintiff failed to meet the superiority requirement because of the number of individual inquiries required and the ability for individuals to bring suits on their own, as the FDCPA provides reasonable attorney's fees to a prevailing plaintiff.

10 Additionally, Defendants argue that Defendant Resurgent Capital Services LP ("Resurgent") and Defendant Alegis Group LLC ("Alegis") are improperly included in this litigation because Resurgent is not listed as a plaintiff in any of the submitted state court petitions. Plaintiff responds that LVNV Funding and Resurgent act in concert in their debt collection activities and that Alegis is Resurgent's general partner and therefore liable for its acts. Based on these arguments, the Court is of the opinion Resurgent and Alegis are proper parties to the class action.

Plaintiff responds, first, that class actions are appropriate for cases dealing with standardized conduct such as the filing of affidavits of account that falsely claim personal knowledge. Second, class members without actual damages may claim statutory damages. [*30] Third, Defendants have not shown putative class members to be bound to arbitration agreements. Fourth, the *Rooker-Feldman* doctrine is confined to barring federal claims where the claimed injury was caused by the state court judgment, and that is not the case here. Fifth, res judicata does not apply because the validity of class members' purported debts does not affect the putative class members' claims. Finally, a class action is superior because it would promote uniformity; achieve economies of time, effort, and expense; and protect rights of those unlikely to bring individual suits despite the FDCPA's provision for attorney's fees. The Court finds Defendant's arguments unconvincing.

In addition to satisfying the four (4) requirements of Rule 23(a)--numerosity, commonality, typicality, and adequacy, the putative class must fall into one (1) of the Rule 23(b) types of class actions. Rule 23(b)(3) requires the court to find "that the [*31] questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3). The purpose of Rule 23(b)(3) is to certify classes where "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (quoting FED. R. CIV. P. 23 advisory committee's note to 1966 Amendment). The factors a court should consider in reviewing both the predominance and superiority requirements include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely [*32] to be encountered in the management of a class action. FED. R. CIV. P. 23(b)(3).

While the predominance requirement is reminiscent of the Rule 23(a)(3) commonality prong, it is "'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Amchem*, 521 U.S. at 623-24 ). Specifically, the plaintiff must show that issues "that are subject to generalized proof and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir.1982). The court cannot merely "rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano*, 84 F.3d at 742. Rather, the Court must consider how trial on the merits would be conducted if the class is certified. *Sandwich Chef of Tex.*, 319 F.3d at 218. The Court considers each of Defendants' arguments in turn

**1. Individual Documents and Testimonial Evidence**

Predominance is not satisfied simply because class members' claims are connected through a defendant's [*33] common course of conduct. *Gene & Gene LLC*, 541 F.3d at 326. Rather, the court must "identify the substantive issues that will control the outcome of the case, assess which of these issues will predominate," and "consider how the common course of conduct would affect a trial on the merits." *Id.*

In the instant case, the substantive issues are whether the filed affidavits of account were indeed false by misrepresenting the affiant's personal knowledge and whether filing these false affidavits of account with state court petitions violated § 1692e and § 392.304. The falsity of the affidavits of account would entail factual findings as to (1) whether Defendants routinely file affidavits of account, (2) whether the affiant ever has personal knowledge of debt, and (3) whether affiant has meaningful records of the debt. Plaintiff claims that the affidavits of account are based solely on a computerized list of debts purchased by Defendants and that Defendants, at the time affidavits of account were executed, had no other records of the debt. Plaintiff submitted over eighty (80) examples of attached affidavits of account, including thirty-nine (39) from the class period. The Court notes that [*34] many of these affidavits of account were executed on the same days despite the fact that the suits were filed on a variety of days, supporting an inference of a standardized practice. [11]

> 11 Of the thirty-nine (39) examples of class members, the state court petitions were filed on approximately twenty-one (21) days. The attached affidavits of account were executed on ten (10) days. Nearly half, seventeen (17), were executed on September 19, 2007; nine (9) were executed on August 29, 2007.

Defendants cite several cases from the Southern and Northern District of Illinois to support their argument that commonality is not met where each putative class member's claims and various defenses hinge on individualized inquiries into the underlying documents regarding each plaintiff and possessed by defendant. Each of these cases is easily distinguishable from the instant cause. *See, e.g., Parkis v. Arrow Fin. Serv., LLC*, 2008 U.S. Dist. LEXIS 1212, 2008 WL 94798, *4 (N.D. Ill. 2008) (finding the court would have to analyze payment history of each putative debtor to determine if last payment date fell within statute of limitation); *Sadler v. Midland Credit Mgmt., Inc.*, 2008 U.S. Dist. LEXIS 51198, 2008 WL 2692274, *3 (N.D. Ill. 2008) (finding no commonality [*35] where individualized inquiry of 12,000 accounts was necessary to determine if debtor was within statute of limitations and had received a certain communication); *Ramirez v. Palisades Collection LLC*, 2007 U.S. Dist. LEXIS 95972, 2007 WL 4335293, 3 (N.D. Ill. 2007) (finding inquiry into whether individuals fall within statute of limitations and whether a written contract was attached to the debt collection suit too onerous); *Reiser v. Residential Funding Corp.*, 236 F.R.D. 425, 429 (S.D. Ill. 2006) (finding each borrower's claims and various defenses hinge on individualized documentary and testimonial evidence of what service fee was charged and what services rendered).

Here, Defendants need not review putative class members' payment histories to determine whether they fall within the statute of limitations as in most of the cited cases. Defendants need only consult court records for a specific time frame and then determine whether an affidavit of account was attached. If Defendants did not engage in a standardized practice of attaching false affidavits of account, then this factual showing to defeat Plaintiff's claims should not be difficult to prove. [12] Accordingly, Defendants have not shown the putative class action [*36] to involve an arduous individual inquiry rather than a ministerial review.

> 12 Defendants submitted two (2) credit card statements for putative debtor Gabriel Gutierrez but offered no proof or argument that the affiant had these records at the time the affidavit of account was executed or the state action began.

Further, Defendants erroneously assert that an inquiry must be made as to whether each class member was confused by the affidavit. Confusion is not a necessary element of § 1692e or § 392.304. As such, an individualized inquiry about a class member's confusion is unnecessary, and the veracity of the affidavits of account is susceptible to common proof. *See Gene & Gene LLC*, 541 F.3d at 328 (citing *Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 645 (W.D. Wash. 2007)). Further, each individual's claim would involve the same legal question: whether an affidavit that falsely represents the affiant's personal knowledge and was attached to state court petitions

violates § 1692e and § 392.304. **[\*37]** Thus, the Court is not persuaded that individualized inquiries with regard to the documents and testimonial evidence related to each class member are necessary, and this argument does not defeat predominance.

### 2. Damages

The Court already found that differences between class members' actual damages did not defeat the commonality requirement of Rule 23(a)(2). *See supra* Section B.2. The Court now briefly considers whether they would predominate over the common issues in this case. As explained with regard to the commonality requirement, the determination of class members' actual damages would not be complex. Court records would reveal whether a class member hired counsel in response to Defendants' filing of a state court petition with an affidavit of account. Only for those few would calculation of attorney's fees be necessary. The Court is not of the opinion that such facile calculations would predominate over the more substantive legal and factual questions regarding the veracity of the affidavits of account.

### 3. Arbitration Clauses

Defendants argue that, as putative class members have different original creditors, [13] the individual contracts and terms and conditions for each creditor may **[\*38]** vary and require independent determination. For example, some Citibank and Household accounts are subject to arbitration at the election of either party. In those cases, Defendants could assert the affirmative defense of arbitration. Plaintiff responds that Defendants do not provide competent evidence that any putative class members entered into arbitration provisions that would limit their causes of action against Defendants. Further, to the extent that judgments were rendered in the underlying state cases, any arbitration provision is no longer extant. The Court finds Defendants' proof of these individual inquiries to be insufficient.

13 According to the state court petitions in Plaintiff's Appendix to the instant Motion, the original creditor for Plaintiff's alleged debt was Washington Mutual. The original creditors for five (5) putative class members included Citibank, Household, and Best Buy.

The Federal Arbitration Act ("FAA") provides that a written arbitration "provision in any . . . contract evidencing a transaction involving interstate commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." **[\*39]** 9 U.S.C.A. § 2 (West 1992). To determine whether arbitration should be compelled under the FAA, a court must first determine (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of the agreement encompasses the asserted claims." *In re Conseco Fin. Serv. Corp.*, 19 S.W.3d 562, 567 (Tex. App.--Waco 2000); *Sherer v. Green Tree Serv. LLC*, 548 F.3d 379, 381 (5th Cir. 2008). The court then considers whether any federal statute or policy would bar arbitration. *Sherer*, 548 F.3d at 381; *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). Texas courts have held that arbitration clauses in loan agreements apply to state debt collection practices claims. *Conseco Fin. Serv. Corp.*, 19 S.W.3d at 570-71. Further, a nonsignatory to a loan agreement can compel arbitration in response to an FDCPA claim if the terms of the loan agreement arbitration clause clearly state that a signatory may be compelled to arbitrate with a nonsignatory. *Sherer*, 548 F.3d at 381-82. Nevertheless, courts have certified classes despite defendants' claims that arbitration clauses may bar litigation for certain class members. *See, e.g., Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 350, 352 (N.D. Ill. 2008); **[\*40]** *Jackson v. Nat'l Action Fin. Serv., Inc.*, 227 F.R.D. 284, 287 (N.D. Ill. 2005) (finding defendants' arbitration clause argument insufficiently supported).

Here, Defendants speculate that some of the class members may be subject to arbitration agreements that would prohibit them from joining in the class action. Defendants submitted examples of contracts they claim are used in the normal course of business by three (3) lenders that contain arbitration clauses likely sufficient to include nonsignatory debt collectors such as Defendants. [14] While Defendants assert that these contracts are the general agreements that would have been entered into by class members, Defendants offer no proof of this despite the fact that LVNV Funding affiants stated that records concerning those putative class members' debts were within their "care, custody, and control." Accordingly, the Court does not believe that Defendant has offered sufficient proof that the potential existence of arbitration clauses that may bar some class members from joining the suit predominates over the common questions of law and fact in the instant case. [15]

14 The examples include a clause requiring arbitration if requested by either **[\*41]** party for "[a]ny claim, dispute or controversy . . . arising from or relating to this Agreement or the relationships which result from this Agreement." If such a clause was included in a class member's contract, then Defendants may be able to enforce the arbitration clause. *See Sherer v. Green Tree Serv. LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

15 Again, the Court notes its ongoing duty to manage the class. Should Defendants establish the presence of enforceable arbitration clauses in loan agreements that would defeat predominance, the Court may modify or vacate class certification as appropriate. *See Jackson v. Nat'l Action Fin. Serv., Inc.*, 227 F.R.D. 284, 287 n.3 (Ill. 2005).

#### 4. *Rooker-Feldman* Doctrine

Defendants argue that predominance is defeated because the *Rooker-Feldman* doctrine bars class members against whom judgments were entered in state court proceedings. Plaintiff responds that these members' claims are not barred by the *Rooker-Feldman* doctrine because the instant action does not seek damages for injuries caused by the state court judgments. The Court agrees with Plaintiff.

Under the *Rooker-Feldman* doctrine, a person who lost in state court cannot later bring an action in federal [**42**] court "complaining of injuries caused by state court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). Thus, federal review is prohibited if a federal claim is "'inextricably intertwined'" with a state judgment such that the federal court would have to conclude that the state court wrongly decided the issues before it. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)). Where a debt collector commits an FDCPA violation in the course of state court litigation, the putative debtor may be barred from recovering actual damages resulting from entry of judgment, but is permitted to recover statutory damages for the violation and any actual damages not caused by entry of judgment. *Todd v. Weltman, Weinberg & Reis*, 434 F.3d 432, 437 (6th Cir. 2006); *Long v. Shorebank Dev't Corp.*, 182 F.3d 548, 556 (7th Cir. 1999). Whether the putative debtor successfully defends the collection action or a default judgment is entered, there still may be an FDCPA violation. *Gibson v. Grupo De Ariel, LLC*, 2006 U.S. Dist. LEXIS 539, 2006 WL 42369, *2 (Tex. Jan. 9, 2006). [**43**] Thus, the state court decision and the issue before the federal court are not inextricably intertwined if the plaintiff can prevail in federal court without disturbing the state court judgment. *See id.*; *Hunter v. Copeland*, 2004 U.S. Dist. LEXIS 9356, 2004 WL 1161368, *5 (E.D. La. May 24, 2004).

Here, Plaintiff and putative class members do not seek damages for injuries caused by state court judgments, nor do they invite the Court to review and reject those judgments. Rather, Plaintiff alleges that Defendants violated the FDCPA by filing state court petitions with false affidavits of account. The alleged violation, thus, was complete when Defendants filed the collection action in state court. *See Gibson*, 2006 U.S. Dist. LEXIS 539, 2006 WL 42369, at *2. Further, Plaintiff seeks statutory damages and actual damages, such as attorney's fees, incurred in the state court litigation. Plaintiff does not seek damages from the resulting state court judgment; indeed, the state action against him was non-suited. Thus, the inclusion of class members who received final judgments in state court on their debts does not violate the *Rooker-Feldman* doctrine and therefore does not defeat the predominance requirement.

#### 5. Res Judicata

Defendants [**44**] also argue that predominance is defeated because res judicata bars class members who received a state judgment in their favor. Specifically, Defendants argue that such class members's FDCPA and TFC claims were compulsory counterclaims to the state collection actions because the relevant issue to all claims is whether a putative class member owes a debt to LVNV Funding. Plaintiff responds that res judicata is not a bar and the claims were not compulsory because the putative class's claims do not depend on the validity of class members' purported debts. The Court agrees with Plaintiff.

Texas uses a transactional approach to res judicata. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). Under this approach, "[a]ny cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id.* at 630. This is similar to the rule of compulsory counterclaims, that a "party defending a claim must bring as a counterclaim any claim that 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .'" *Id.* (quoting TEX. R. CIV. P. 97). Nevertheless, courts in other states with compulsory counterclaim [**45**] rules have recognized that debt collection actions and FDCPA actions challenging pre-judgment collection conduct do not arise from the "same transaction" and do not present the same "cause of action." *See, e.g., Hart v. Clayton-Parker & Assocs., Inc.*, 869 F. Supp. 774, 777 (D. Ariz. 1994); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 797 (S.D. Ohio 2006). Further, unpublished decisions from this District recognize that a defendant's counterclaim for payment of an underlying debt is not compulsory where plaintiff's FDCPA claim alleges improper debt collection practices. *Hurtado v. TAM Fin. Corp.*, 2007 U.S. Dist. LEXIS 39758, 2007 WL 1746884, *2 (W.D. Tex. June 5, 2007); *Barcena v. TAM Fin. Corp.*, 2007 U.S. Dist. LEXIS 38674, 2007 WL 1452587, *3 (W.D. Tex. May 8, 2007).

Here, the claims before the state and federal court do not arise from the same transaction. The transaction before the state court was the creation of a loan agreement and its subsequent alleged violation. The transaction before this Court is the purported submission by LVNV Funding of false affidavits of account during the collection of the putative debt. While both claims share as a fact LVNV Funding's actions in collecting a debt from a putative debtor, this is [**46**] not so relevant to both claims as to render alleged violations of the FDCPA and the TFC compulsory counterclaims in the state court debt collection proceeding. Further, the Court doubts that requiring putative debtors to raise FDCPA claims in a state court proceeding comports with the FDCPA's stated purpose to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692(e). The Court agrees with Plaintiff and persuasive case law that res judicata does not bar class members who received final judgments in the state collection actions, and this issue thus does not negate predominance.

Having found Defendants' five (5) arguments against predominance unconvincing, the Court is of the opinion that common issues of fact and law sufficiently predominate over individual issues such that Plaintiff has met the predominance requirement of Rule 12(b)(3). In the final subsection, the Court addresses Plaintiff's showing of superiority.

**6. Superiority**

Finally, the Court considers the superiority requirement of Rule 12(b)(3). Defendants argue that a class action is not a superior means of adjudicating the interests of the class because of the necessity of individualized inquiries. [*47] Additionally, given that the FDCPA provides for reasonable attorney's fees and costs to the prevailing party and that some plaintiffs' attorneys work on contingency, Defendants assert that FDCPA suits typically do not cost plaintiffs a penny. Plaintiff responds that a class action is the best method for adjudicating numerous, relatively small FDCPA claims, thereby achieving the economies of time, effort, and expense. Further, even if some attorneys work on contingency, the low individual monetary recovery in FDCPA suits reduces the likelihood of individual class members retaining counsel and pursuing relief. The Court agrees with Plaintiff.

In certifying Rule 23(b)(3) class actions, the courts are to "'consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit.'" *Amchem Products*, 521 U.S. at 616 (quoting FED. R. CIV. P. 23 advisory committee's note to 1966 Amendment). While such individual interests may be "'so strong as to call for denial of a class action,'" the Advisory Committee also recognized that "'these interests may be theoretic rather than practical[, as] the class may have a high degree of cohesion and [*48] prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable.'" *Id.* (quoting FED. R. CIV. P. 23 advisory committee's note to 1966 Amendment). Accordingly, a class action may be *superior* even if individual actions are *feasible*. *Bertulli v. Indep. Ass'n of Continental Pilots*, 242 F.3d 290, 299 (5th Cir. 2001). For example, the Fifth Circuit affirmed certification of a Rule 12(b)(3) class where certain class members had substantial potential damages and attorney's fees were available under the applicable statute. *Id.* at 298-99. There, some class members may have been entitled to approximately $ 29,000 in damages, but most class members would only receive, primarily, injunctive relief and some nominal damages. *Id.* at 299. The Fifth Circuit recognized that "attorney's fees do not alter the relatively low damages most plaintiffs would receive nor the significance of injunctive relief to the entire class." *Id.* Rather, to defeat a plaintiff's superiority showing, defendants "must [*49] show that individual class members have an interest sufficient to make individual actions desirable." *Id.*

Here, Defendants have shown that individual actions are feasible but not that class members have sufficient interest to pursue individual actions such that denial of certification should follow. While those class members who incurred actual damages may recover substantial damages, other class members will only receive statutory damages as the court may allow. *See* 15 U.S.C.A. § 1692k(a)(2)(B). If they were to proceed individually, putative class members not incurring actual damages could receive, at most, $ 1000. *See* 15 U.S.C.A. § 1692k(a)(2)(A). The Court does not believe this low amount of statutory damages for individual actions provides sufficient interest for individuals to pursue individual actions, even if some attorneys work on contingency. In contrast, a class action may result in members receiving some remedy and may also "help eliminate abusive debt collection practices." *See* 15 U.S.C.A. § 1692(e). Further, the Court has sufficiently rejected above Defendants' claims that individualized inquiries would predominate in the instant action. Accordingly, the Court finds a class [*50] action to be the superior method of litigating class members' claims. Therefore, the predominance of common issues as well as the economies of class treatment weigh in favor of certifying the class action.

**CONCLUSION**

After due consideration, the Court is of the opinion that Plaintiff's Motion should be granted. Plaintiff has demonstrated that the class fulfills the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy. Additionally, Plaintiff has satisfied the Rule 23(b)(3) requirements of predominance and superiority. The common issues in the instant case include the following: (1) whether the affidavits of account Defendants file with state court petitions in Texas are always false because the affiant never has the claimed personal knowledge of the debt, and (2) whether the filing of these false affidavits violates § 1692e or § 392.304. While ascertaining the actual damages for some class members may entail an individualized inquiry, those class members can be easily identified and the calculations will not be complex. As such, common issues predominate and class action is the superior method for resolving class members' claims. Thus, the Court is of the opinion [*51] that the following orders should enter:

**IT IS HEREBY ORDERED** that Plaintiff Gabriel Gutierrez's "Motion For Class Certification" is **GRANTED**.

**IT IS FURTHER ORDERED** that a class is **CERTIFIED** of (a) all individuals (b) sued in Texas by Defendant LVNV Funding, LLC (c) where an "affidavit of account" in the form represented by Exhibit A of Plaintiff Gabriel Gutierrez's "Motion For Class Certification" was attached to the state court petition, and (d) the state court petition was filed on or between June 23, 2007, and July 13, 2008.

**IT IS FINALLY ORDERED** that the Law Offices of Scott A. Vogelmeier and Edelman, Combs, Latturner & Goodwin, LLC are **APPOINTED** counsel for the certified class.

SIGNED this **16th** day of **March, 2009**.

/s/ David Briones

**THE HONORABLE DAVID BRIONES**

**UNITED STATES DISTRICT JUDGE**