UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONIQUE SYKES, REA VEERABADREN, KELVIN PEREZ, and CLIFTON ARMOOGAM, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

MEL S. HARRIS AND ASSOCIATES LLC, *et al.*,

Defendants.

Case No. 09-cv-08486

Judge Denny Chin

Magistrate Judge Ronald L. Ellis

---

## MEL HARRIS DEFENDANTS' OBJECTION TO PLAINTIFFS' PROPOSED CLASS CERTIFICATION ORDER

James R. Asperger
Maria Ginzburg
QUINN EMANUEL URQUHART
& SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Marc A. Becker (*pro hac vice* pending)
1 Fleet Place
London, EC4M 7RA
United Kingdom
+44 (0) 20 7653 2000

Brett Scher
KAUFMAN, DOLOWICH, VOLUCK &
GONZO LLP
135 Crossways Park Drive, Suite 215
New York, NY 10038

*Attorneys for Defendants Mel S. Harris and Associates, Mel S. Harris, Michael Young, David Waldman, Kerry Lutz, and Todd Fabacher*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL BACKGROUND.......................................................................................2

     A.    Plaintiffs Expressly Disclaim To The Court Any Intention Of Seeking To Overturn State Court Judgments ............................................................3

     B.    Plaintiffs Never In Discovery Identify As Damages The Return Of Monies Paid Under Default Judgments ...................................................6

     C.    The Return Of Monies Paid Under Default Judgments Is Not Addressed In The Class Certification Motion Briefing Or This Court's Opinion ........................6

     D.    In December 2012, Plaintiffs Explain Their Damages Theory For The First Time ...........................................................................................7

ARGUMENT ......................................................................................................................8

I.     PLAINTIFFS HAVE NEVER RAISED – AND THE COURT HAS NEVER ADDRESSED – A CLAIM FOR ALL MONIES PAID TO DEFENDANTS PURSUANT TO DEFAULT JUDGMENTS .....................................................8

II.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' PURPORTED CLAIM SEEKING THE RETURN OF MONIES PAID UNDER STATE COURT JUDGMENTS ..............................................10

     A.    The *Rooker-Feldman* Doctrine Bars Plaintiffs' New Damages Theory ...............10

     B.    Even If *Rooker-Feldman* Does Not Bar Plaintiffs' New Damages Theory, The Class Representatives Lack Standing To Bring That Claim – And No Subject-Matter Jurisdiction Existed For The Claim At The Time Of Class Certification ...........................................................................................16

CONCLUSION.................................................................................................................21

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Ballyhighlands, Ltd. v. Bruns*,
   1999 U.S. App. LEXIS 11811 (2d Cir. May 29, 1999) ......................................10

*Biscone v. JetBlue Airways Corp.*,
   681 F. Supp. 2d 383 (E.D.N.Y. 2010) ..................................................................16

*Blum v. Yaretsky*,
   457 U.S. 991, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)....................16, 17, 18

*Bullock v. Credit Bureau of Greater Indianapolis, Inc.*,
   272 F. Supp. 2d 780 (S.D. Ind. 2003) ..................................................................13

*Clapper v. Amnesty Int'l USA*,
   ---S. Ct.. ----, 2013 WL 673253 (U.S. Feb. 26, 2013) .......................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)...................................16

*Gabriele v. Am. Home Mortg. Servicing, Inc.*,
   2012 WL 5908601 (2d Cir. Nov. 27, 2012).........................................................13

*Gabriele v. Law Office of Martha Croog, et al.*,
   10cv01798, (D. Conn. 2011)..........................................................................13, 14

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)...............................................................................................19

*Gervais v. O'Connel, Harris & Assoc. Inc.*,
   297 F. Supp. 2d 435 (D. Conn. 2003) ..................................................................14

*Granger v. Harris*,
   2007 U.S. Dist. LEXIS 30076 (E.D.N.Y. Apr. 17, 2007) ..................................10

*Hamid v. Stock & Grimes, LLP*,
   876 F. Supp. 2d 500 (E.D. Penn. 2012) ...............................................................14

*Hoblock v. Albany Cnty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005).......................................................................10, 11, 13

*Kelley v. Med-1 Solutions, LLC*,
   548 F.3d 600 (7th Cir. 2008) .................................................................................12

*Lewis v. Casey*,
   518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)............................16, 20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)..................................16

*Lyndonville Savings Bank & Trust Co. v. Lussier & Applied Research and Dev. Inc.*,
   211 F.3d 697 (2d Cir. 2000)..................................................................................10

*MacPherson v. State Street Bank & Trust Co.*,
   452 F. Supp. 2d 133 (E.D.N.Y. 2006) ..................................................................14

*Marshall v. Grant*,
   521 F. Supp. 2d 240 (E.D.N.Y. 2007) ..................................................................14

*McKithen v. Brown*,
   481 F.3d 89 (2d Cir. 2007)....................................................................................11

*Moose Lodge No. 107 v. Irvis*,
   407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972).........................................16

*Morris v. Rosen*,
   2012 U.S. Dist. LEXIS 91681 (E.D.N.Y. July 2, 2012).........................................13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)............................................................................18, 19

*Raydos v. Cohen & Slamowitz, LLP*,
   2009 U.S. Dist. LEXIS 81789 (W.D.N.Y. Sept. 9, 2009) ......................................13

*Trakansook v. Astoria Fed. Sav. & Loan Assoc.*,
   2007 WL 1160433 (E.D.N.Y. Apr. 18, 2007) .......................................................13

*Vassalle v. Midland Funding LLC*,
   2013 WL 673517 (6th Cir. Feb. 26, 2013) ......................................................12, 19

*Waldman v. Vill. of Kiryas Joel*,
   39 F. Supp. 2d 370 (S.D.N.Y. 1999)……………………………………………… 9

*Walters v. Edgar*,
   163 F.3d 430 (7th Cir. 1998) ...........................................................................15, 20

*Warth v. Seldin*,
   422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).........................................16

## Statutes and Federal Rules of Civil Procedure

28 U.S.C. § 1257....................................................................................................10

Fed. R. Civ. P. 12(b)(1)............................................................................................2

Fed. R. Civ. P. 12(b)(6)..........................................................................................21

Fed. R. Civ. P. 23...................................................................................................21

## PRELIMINARY STATEMENT

Pursuant to the Court's March 4, 2013 Order, Mel S. Harris and Associates LLC, Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher (collectively "Mel Harris" or the "Mel Harris Defendants") respectfully submit this memorandum objecting to Plaintiffs' proposed class certification order.  Specifically, Mel Harris objects to the proposed order to the extent it purports to certify a claim seeking to recover millions of dollars paid by class members pursuant to binding state court judgments and settlements.

Mel Harris's objection is prompted by Plaintiffs' recent notification that they are pursuing this claim, and that they read the Court's class certification opinion as certifying such a claim, even though:

(1) Plaintiffs' complaints, sworn interrogatory responses and deposition testimony have all omitted this theory of damages;

(2) Plaintiffs expressly disavowed to this Court that their claims sought to overturn state court judgments in their opposition to the motions to dismiss on *Rooker-Feldman* grounds;

(3) this purported damages claim therefore was never briefed in the context of motions to dismiss or class certification, and the Court has never considered it in making any of its rulings; and

(4) had the claim been raised, Mel Harris would have demonstrated that it could not be subject to class treatment  because (a) it is barred by *Rooker-Feldman* principles and (b) none of the class representatives – all of whom have had their state court judgments vacated and are not out-of-pocket on any such judgment – have Article III standing to assert the claim which the Court therefore lacks subject-matter jurisdiction to consider.

Both because such a claim was not previously raised, and is flawed as a matter of law, Mel Harris now objects to the proposed order to the extent it could be read to certify such a claim.  Mel Harris suggests the following clarification to Plaintiffs' proposed order that would resolve this issue:

> Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class is certified of all persons who have been sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been obtained, asserting violations of RICO; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; GBL § 349; and New York Judiciary Law § 487; provided, however, that no claim may be asserted under those statutes to recover money collected on or paid out in connection with any default judgment.

A similar modification was presented to Plaintiffs on February 5, 2013 but rejected the next day.  *See* Defs.' Class Certification Counterproposal, Declaration of Maria Ginzburg ("Ginzburg Decl."), Ex. A.

Mel Harris respectfully submits that this Court should accept the proposed modification language, which ensures the order properly reflects the claims that were presented for certification at the time the motion was briefed and argued.  In the event the Court is inclined even to consider Plaintiffs' vast expansion of the proposed class claims, Mel Harris respectfully requests that the Court not reach any final decision before allowing Mel Harris an opportunity to formally brief (through a motion to dismiss and further opposition to class certification) why any such claims cannot be certified.[1]

## PROCEDURAL BACKGROUND

At no time prior to the issuance of this Court's class certification opinion did Plaintiffs explain to the Court or to Defendants that their damages claim encompassed a request for the return of tens of millions of dollars paid pursuant to state court default judgments.

---

[1]  Because the Court may address its subject-matter jurisdiction at any time and because both Article III standing and the *Rooker-Feldman* doctrine go to the Court's subject-matter jurisdiction, Defendants' objection to Plaintiffs' proposed certification order may also be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

**A.      Plaintiffs Expressly Disclaim To The Court Any Intention Of Seeking To Overturn State Court Judgments**

In none of the three complaints Plaintiffs have filed since they initiated this suit in October 2009 have they pled any facts in support of their new theory of recovery for the return of monies paid under default judgments.  This is not surprising because, as detailed further below, the named Plaintiffs have not paid any such funds[2] as their default judgments were vacated.  Instead, Plaintiffs have asserted claims based on incidental damages – *e.g.*, transportation to the courthouse to have "false" judgments lifted, ATM fees, copying costs, et cetera.  *See* Complaint, D.E. 1; Second Amended Complaint, D.E. 29; Third Amended Complaint ("TAC"), D.E. 82.  In the operative TAC, Plaintiffs' damages are characterized as follows:

- **Plaintiff Sykes**. Money spent copying her court file; transportation to and from the courthouse; cab fare; husband's offers of work turned down to watch children while Sykes was in court. TAC, ¶ 133;

- **Plaintiff Veerabadren**.  Incurred a $125 legal processing fee because of Defendants' alleged restraint upon bank account; lost use of levied funds; transportation costs to and from courthouse and lawyer's office; missed days of work.  TAC, ¶ 163;

- **Plaintiff Perez**. Incurred fees each time he used a check-cashing service to cash his paycheck; negative credit report affected his ability to obtain full-time employment and housing; incurred "numerous other costs" in visiting the courthouse.  TAC, ¶ 195;

- **Plaintiff Armoogam**.  Spent money copying his court file and on transportation to and from lawyer's office.  TAC, ¶ 216.

---

[2]   In their letter to the Court dated February 12, 2013, Plaintiffs claim that this is factually inaccurate because "Defendants extracted money from the bank accounts of both Ms. Veerabadren and Mr. Perez."  Pls.' Ltr, p. 5.  As they are forced to acknowledge, however, Plaintiffs Veerabadren and Perez "have since recovered that money." *Id.*  What Plaintiffs neglected to acknowledge in their letter to the Court was that Plaintiffs Veerabadren and Perez "recovered that money" *before* they filed any claims in this lawsuit.  *See* Third Amended Complaint, ¶¶ 161, 194.

The Court will vainly search the TAC for any facts in support of Plaintiffs' purported claim for damages in the amount of money collected from class members – which claim, according to Plaintiffs, apparently includes even amounts paid under voluntary settlements that many thousands of class members entered into, acknowledging their debts and waiving all defenses they could have raised as well as any claims they might have had against Defendants.  *See* Stipulations of Settlement and/or Payment, dated January 12, 2010, January 26, 2012, and April 27, 2011, Ginzburg Decl., Exs. B, C, and D.  These exhibits are representative of the stipulations of settlement entered into by thousands of class-member borrowers.

When Defendants recently challenged the new damages theory, Plaintiffs averred that it is somehow reflected in the following cryptic language from the TAC, buried in its concluding paragraphs:  "Defendants' violations include . . . Using fraudulently obtained default judgments to extract money from Plaintiffs and class members," TAC ¶ 351F (FDCPA claim); "The purpose of the enterprise and/or enterprises . . . is to secure default judgments through fraudulent means and to use those judgments to extract money from Plaintiffs and putative class members," TAC ¶ 359, *see also* ¶¶362F, 370, and 374 (RICO claim); TAC ¶ 385F (N.Y. GBL claim); TAC ¶ 392D (N.Y. Jud. Law claim).  *See* Pls.' Ltr, p. 2.

This same language was contained in the Second Amended Complaint ("SAC") that was the subject of Defendants' motions to dismiss.  SAC ¶¶ 337F, 345, 348F, 356, 360, 371F, 378D.  Yet in their opposition to those motions, filed in May 2010, to persuade the Court that *Rooker-Feldman* posed no obstacle to their claims, Plaintiffs made the following representations to the Court:

> **None of the Plaintiffs 'lost in state court**.' Though each Plaintiff did 'lose' initially on default – the inevitable result of Defendants' unlawful conduct – each of those default judgments was later vacated, and each state court action was thereafter discontinued or dismissed. **Absent an extant final judgment, Plaintiffs cannot be said to have 'lost in state court**.'. . . **[N]owhere in the**

> **Complaint do Plaintiffs seek a judgment declaring invalid the default judgments entered against them**. . . . [T]he Complaint . . . . **decidedly does** *not* **seek to vacate existing state court default judgments**.

Pls.' Br. in Opp., D.E. 48, p. 44 (bold added, italics in original).

In the same brief, Plaintiffs described their damages quite differently than they do today, focusing solely on injuries incidental to the judgments themselves, such as having to use check cashing services and lost wages.  There was no mention whatsoever of payments made pursuant to default judgments:

> "bank fees, los[t] wages, borrow[ed] money to cover living expenses . . . various expenses to defend their cases, as well as . . . damaged credit"; "economic costs associated with travel"; "high fees from a government debit card after she could no longer write checks"; "she had to pay for all of her expenses with expensive money orders,  was forced to borrow money at a high interest rate, and fell behind in her rent, resulting in a suit by her landlord"; "forced to use an expensive check-cashing service"; "charged a legal processing fee by her bank"; "lost wages as a result of taking time off of work"; "When Defendants enforced the judgments, they caused great harm to Plaintiffs, for example by denying them access to their limited resources, forcing them to pay bank fees and to otherwise spend money to correct problems over which they had no control; by causing them to lose wages to fight the default judgments in court; and by damaging their credit.

Pls.' Br. in Opp., D.E. 48, pp. 27, 28, 36, 41.

It was precisely because Plaintiffs characterized their damages this way – incidental and *unrelated to the underlying debts* – that the Court held that *Rooker-Feldman* did not bar Plaintiffs claims.  As the Court put it in its December 29, 2010 order denying in part Defendants' motions to dismiss, the claims survived the *Rooker-Feldman* challenge *because* "[P]laintiffs . . . do not seek to overturn" the state court judgments.  Order on Mot. to Dismiss, D.E. 58,  p. 30.

**B.   Plaintiffs Never In Discovery Identify As Damages The Return Of Monies Paid Under Default Judgments**

In response to the Mel Harris Defendants' interrogatories concerning the class representatives' alleged damages, served after the filing of the TAC, none of the named Plaintiffs identified monies paid to the Defendants pursuant to a default judgment. *See* Pls.' Resp. and Obj. to Mel Harris Defs.' First Set of Disc. Demands, Interrog. No. 19 (setting out various forms of incidental damages but not monies paid pursuant to a judgment); Pl. Clifton Armoogam's Resp. and Obj. to Mel Harris Defs.' First Set of Disc. Demands, Interrog. No. 19 (same), Ginzburg Decl., Exs. E and F.

The class members were deposed in May 2011. None of them testified that their alleged damages included monies paid to Defendants pursuant to collections made following the entry of default judgments. All of them conceded that the judgments entered against them had been vacated and that they had not paid monies on any judgment or that the monies had been returned. *See* Perez Dep., p. 31: 10-13, May 23, 2011; Sykes Dep., p. 29:1-5, May 24, 2011; Veerabadren Dep., p. 27-28, May 31, 2011; Armoogam Dep., p. 28:21-23, May 31, 2011; Ginzburg Decl., Exs. G (Perez), H (Sykes), I (Veerabadren), and J (Armoogam).

**C.   The Return Of Monies Paid Under Default Judgments Is Not Addressed In The Class Certification Motion Briefing Or This Court's Opinion**

Similarly, the Court will not find any mention of recovery of default judgment payments in either the parties' class certification briefing, or in the Court's opinion granting Plaintiffs' certification motion. In fact, the Court's certification opinion noted in pertinent part that "[t]he various claims of the named plaintiffs as to the validity or existence of the underlying debts *are not at issue here*" and are "*not relevant to the litigation at hand*." Op. Granting Class Certification, D.E. 123, pp. 30-31. (emphasis added). Put simply, the Court did not consider this theory of recovery in

making any of its Rule 23 findings, still less did it affirmatively decide it was consistent with class commonality, typicality, or predominance prerequisites.

**D.    In December 2012, Plaintiffs Explain Their Damages Theory For The First Time**

Following the Court's certification opinion, Plaintiffs' counsel notified Defendants that, contrary to their clients' sworn discovery responses, and their prior representations to this Court in opposition to Defendants' motions to dismiss, Plaintiffs were in fact seeking to recover as damages amounts paid pursuant to state court default judgments.[3]  It was only at this recent and excessively belated point that Plaintiffs unveiled their contention that damages would be sought under the theory of vacating default judgments entered in state court, thereby leading to previously unrequested damages potentially in the range of hundreds of millions of dollars (if damages trebling provisions are applied).  Later asked to cite the specific portions of the operative complaint – the TAC – where this theory of recovery could be found, Plaintiffs referred Defendants to stray references to money having been "extracted" from the Plaintiffs, which are buried in the final paragraphs of their 81-page complaint, as described above, and have never been the basis for articulating any of Plaintiffs' purported damages.

After Plaintiffs refused to accept Defendants' clarification to their proposed certification order, Defendants filed this objection to the proposal to the extent that it incorporates Plaintiffs' newfound damages claim, a claim never brought to the Court's attention and one which cannot proceed either on an individual or class basis as a matter of law.

---

[3]   The crux of Plaintiffs' case is that Defendants used affidavits of merit to mislead New York City courts about the amounts of money owed to them.  It is not without irony, then, that Plaintiffs have represented to this Court for years that they were not seeking the form of recovery which they now contend is owed to them by Defendants.

## ARGUMENT

### I.    PLAINTIFFS HAVE NEVER RAISED – AND THE COURT HAS NEVER ADDRESSED – A CLAIM FOR ALL MONIES PAID TO DEFENDANTS PURSUANT TO DEFAULT JUDGMENTS

The procedural summary above demonstrates that Plaintiffs have not sought to recover as damages amounts paid pursuant to state court default judgments.  To the contrary, to persuade this Court that their claims survived Defendants' motions to dismiss on *Rooker-Feldman* grounds, Plaintiffs expressly represented that they were not seeking to overturn state court judgments. Plaintiffs have now reversed course, and contend that, though the issue was never presented to the Court or disclosed in discovery, the Court's certification opinion somehow intended to certify a class seeking monies paid pursuant to allegedly improper judgments.

In granting Plaintiffs' motion to certify their claims for class treatment, however, the Court predicated its decision on the *absence* of the damages theory Plaintiffs now purport to advance.  In particular, the Court stated that "[t]he various claims of the named plaintiffs as to the validity or existence of the underlying debts *are not at issue here*" and are "*not relevant to the litigation at hand*."  Order Granting Class Certification, D.E. 123, pp. 30-31 (emphasis added).  Had the Court intended its ruling to encompass a claim for the return of monies paid pursuant to state court judgments, "the validity or existence of the underlying debts" would have been very much "at issue here" because Plaintiffs would be required to show that Defendants' allegedly "false" affidavits *caused* or were *material to* a class member's payment of money to the Defendants after a judgment was entered.

Plaintiffs' new theory of damages – had it been presented for class certification – would have raised a host of issues that can only be decided on an  individual-by-individual basis, concerning which class members did or did not owe which debts, and for what reasons, none of which was ever briefed or addressed by the Court. These questions include:

- Was the amount of money paid to Defendants in fact owed?

- If the debt is in fact owed by a given class member, why could the Defendants have not simply changed the allegedly false language in the affidavit of merit and collected their judgment under a differently-phrased affidavit?

- If the Defendants *could* have collected the same amount of debt from a given class member with a differently-phrased affidavit, in what sense does the class member's payment of money to Defendants stem from the "falsity" in the affidavit of merit?

- There are a myriad of mechanisms for payment of debt following a judgment (for example, a conditional release from a restrained bank account, so-ordered stipulations agreed to and entered in court, judgment payment arrangements, garnishment of wages, and others). How did Defendants' alleged misconduct variously cause an "extraction" of money from the class members in each of these situations?

- For the thousands of debtors who entered into stipulations of settlement following entry of judgment in which they acknowledged owing the judgment amount and waived their defense to object to the judgment amount,[4] under what possible theory of liability are Defendants required to return to class members debts they have promised to pay in sworn statements?

- For the thousands of debtors who waived any and all claims they may have had against the Defendants in their post-judgment settlements, why are their claims here not barred?[5] Even if, *arguendo*, their claims were not barred, how are questions of Rule 23 commonality, typicality and predominance affected by the legal arguments these waivers will inevitably generate for some class members and not others?

These questions are critical to the resolution of Plaintiffs' new damages theory in the class

context. How do they affect Rule 23 commonality? Typicality? Predominance? Yet because

---

[4] *See*, *e.g.*, Ginzburg Decl. Exs. B, C, and D.

[5] *Id.* Moreover, the doctrine of *res judicata* bars any such claims brought by class members who have finally resolved their claims by entering into post-judgment settlements, which waive "any claims [the class member] may have to date against [the LR-Credit entity] or [Mel Harris] related to [the debt-collection action]." *Id.* Ex. B; *see also Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000) (a settlement agreement "is considered a final judgment on the merits for purposes of *res judicata* . . . unless the parties provide otherwise").

Plaintiffs failed to apprise the Court and Defendants of the type of recovery they were purportedly seeking, the parties never briefed the issue and the Court never had the occasion to incorporate any of these questions into its Rule 23 analysis and findings.  That the Court's opinion is silent on these indispensable questions confirms that the Court never intended its ruling to encompass Plaintiffs' newfound damages claim.  The Court should reject Plaintiffs' unilateral attempt vastly to expand the scope of liability in this case at the certification stage.

## II.   THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' PURPORTED CLAIM SEEKING THE RETURN OF MONIES PAID UNDER STATE COURT JUDGMENTS

Even if the Court were inclined to agree with Plaintiffs that this multi-million dollar claim is buried in a few words at the end of an 81-page complaint, and even if Plaintiffs were permitted to assert such a claim notwithstanding their sworn discovery responses, deposition testimony, and affirmative representations to the Court to the contrary that  persuaded the Court to deny Defendants' motions to dismiss, the question of whether Plaintiffs can proceed with such a claim as a matter of law, and whether the Court can certify such a claim, can and should be addressed now.  *See*, *e.g.*, *Lyndonville Savings Bank & Trust Co. v. Lussier & Applied Research and Dev. Inc.,* 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject-matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.").

### A.   The *Rooker-Feldman* Doctrine Bars Plaintiffs' New Damages Theory

Not only is Plaintiffs' newly-asserted claim demonstrably absent from the Court's class certification opinion, it could not have been certified had it been raised, as it is barred by the *Rooker-Feldman* doctrine.  The doctrine's animating principle is that, among the federal courts, only the Supreme Court may sit in review of state-court decisions. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (*citing* 28 U.S.C. § 1257).  The doctrine will preclude a plaintiff's federal claim where he (1) lost in state court; (2) complains of injuries caused by a state-court

judgment; (3) invites the federal court to review and reject the judgment; and (4) the state-court judgment was rendered before the district court proceeding commenced, or when the operative pleading was filed.   *Id.* at 85.   Courts in this Circuit have repeatedly rejected attempts to nullify a state court's default judgments through federal claims.   *See*, *e.g.*, *Ballyhighlands, Ltd. v. Bruns*, 1999 U.S. App. LEXIS 11811, at *4-5 (2d Cir. May 29, 1999) (unpublished) ("Once entered, a default judgment is a valid judgment, even if the affidavit contained allegedly false information, unless a party successfully moves to vacate that judgment pursuant to N.Y. Civ. Prac. L. & R. Rules 5015 or 317.   *Rooker-Feldman* applies to default judgments just as it does to other types of judgments."); *Granger v. Harris*, 2007 U.S. Dist. LEXIS 30076, at *16 (E.D.N.Y.  Apr. 17, 2007) ("To the extent plaintiffs claim . . . that [defendant] wrongfully obtained a default judgment and/or lien against [plaintiff] without properly serving her with process . . . [plaintiff's] claims are barred by the *Rooker-Feldman* doctrine, since, in essence, they seek to overturn the default judgment entered against [plaintiff] in the state court action.").

It makes no difference for *Rooker-Feldman* purposes that Plaintiffs' purported claim would seek "actual damages" under their FDCPA, RICO, N.Y. GBL and N.Y. Judiciary Law claims in the amount of the state court judgments – as opposed to formally nullifying them – as that is not materially different from vacatur of those judgments.  As the Second Circuit made clear in *Hoblock*: "Just presenting in federal court a legal theory not raised in state court . . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment . . . . *Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment." 422 F.3d at 86.  In *Hoblock* the Second Circuit offered a hypothetical to explain what it means to "review and reverse" a state court judgment for purposes of *Rooker-Feldman*:

> [W]e can see how a suit asking a federal court to 'den[y] a legal conclusion' reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes.  Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and *loses*.  If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies a state court's conclusion that the employer is not liable, but he will not be alleging an injury *from the state judgment*.  Instead, he will be alleging injury based on the employer's discrimination.

> *Id.* at 87-88 (emphasis added).

Unlike the plaintiff in the Court of Appeals' hypothetical, Plaintiffs' new damages theory does allege injury from the state judgment as *Defendants would have had no right to collect the monies Plaintiffs now seek under the authority they did without the state judgments.  See McKithen v. Brown,* 481 F.3d 89, 97-98 (2d Cir. 2007) ("[T]he applicability of the *Rooker-Feldman* doctrine turns . . . on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court.") (emphasis in original).

The decision in *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008) is highly instructive.  There, debtors brought FDCPA claims against a debt-collector who filed lawsuits against them to collect hospital charges incurred by the debtors.  The debtors contended that the debt-collector had violated the FDCPA by falsely claiming in their debt-collection lawsuits that the debt-collector was entitled to attorneys fees and court costs.  *Id.* at 602.  The debt-collector's statements filed in Indiana state courts were allegedly false because the debt-collector owned no interest in the debt and therefore could not seek fees and costs under applicable law.  *Id.*  In federal court, the plaintiff-debtors sought as damages "amounts no less than all the attorneys fees awarded to defendants by the state court." *Id.* at 602-03.  Just as Plaintiffs argue here, the *Kelley* plaintiffs contended that their injury was not caused by state court judgments so much as by the debt-

collector's *misrepresentations that led to those judgments. Id.*  The Seventh Circuit roundly rejected this theory because:

> [D]efendants needed to convince the state courts that they were entitled to attorney fees in order to succeed in extracting money from plaintiffs . . . . **Because defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgments**.
>
> *Id.* at 605 (emphasis added).

The *Kelley* court's reasoning is on all fours with the case here.  The Defendants *had* to prevail in New York City Civil Court in order to collect money pursuant to those judgments, the money that Plaintiffs now purport to recover.  *See also Vassalle v. Midland Funding LLC,* 2013 WL 673517, at *7 (6th Cir. Feb. 26, 2013) (reversing district court's certification of a nationwide settlement class bringing FDCPA claims against debt collector who purportedly filed affidavits falsely claiming "personal knowledge," partly because *Rooker-Feldman* doctrine prevented district court from awarding to class members what class representatives received under the settlement – the extinguishment of their debt and vacatur of judgments);  *Raydos v. Cohen & Slamowitz, LLP*, 2009 U.S. Dist. LEXIS 81789, *6 (W.D.N.Y. Sept. 9, 2009) ("[D]efendants would have had no right to collect that money without the State Judgment.  The State Judgment, therefore, caused at least part of any actual damages that plaintiff could have claimed in the case.");  *Trakansook v. Astoria Fed. Sav. & Loan Assoc.,* 2007 WL 1160433 (E.D.N.Y. Apr. 18, 2007) (holding *Rooker-Feldman* barred claim against mortgagee bank because it was the "judgment, when subsequently executed, [that] had the effect of depriving plaintiff of her property and causing the injury she asks this court to address.  In other words, plaintiff's injury – like the injury complained of in *Hoblock* – was caused by the state court judgment");  *Morris v. Rosen*, 2012 U.S. Dist. LEXIS 91681, at *11 (E.D.N.Y. July 2, 2012) ("the state court judgment brought about Morris's subsequent eviction, which could not have

13

happened absent the judgment."); *Bullock v. Credit Bureau of Greater Indianapolis, Inc.*, 272 F. Supp. 2d 780, 783 (S.D. Ind. 2003) ("The problem is that plaintiffs' theory is that [defendant] violated the federal law by seeking exactly what the state court awarded . . . . In other words, plaintiffs cannot avoid *Rooker–Feldman* by framing their claims in terms of defendants' attempts to obtain exactly what the state court awarded to them.").

The unpublished decision *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 2012 WL 5908601 (2d Cir. Nov. 27, 2012), cited in Plaintiffs' letter-brief to the Court dated February 12, 2013, does not refute this principle. Plaintiffs cite *Gabriele* as an example of a case where "litigation misconduct was not the product of the state court's . . . judgment of strict foreclosure." Pls.' Ltr., p. 3 (*quoting Gabriele*, 2012 WL 5908601, at *4-5). Plaintiffs misread this decision. In *Gabriele*, the plaintiff, who alleged that the foreclosure law firm representing plaintiff's mortgagee filed false documents in his foreclosure action, expressly pled in his FDCPA complaint that he was *not* challenging the state court's finding of judgment. *Gabriele v. Law Office of Martha Croog, et al.*, 10cv01798, (D. Conn. 2011), D.E. 61, Second Amended Complaint, ¶ 15 n. 1. More to the point, the plaintiff characterized his damages as comprising "resources expend[ed] to defend the underlying action," *not* money paid pursuant to a state court judgment. *Id.*, D.E. 62, Pls.' Opp. to Defs.' Mot. to Dismiss, p. 4. In other words, the question confronting the Court of Appeals in *Gabriele* was not the one presented here.[6]

---

[6]   In their letter-brief to the Court dated February 12, 2013, Plaintiffs also cite *Marshall v. Grant*, 521 F. Supp. 2d 240 (E.D.N.Y. 2007) and *MacPherson v. State Street Bank & Trust Co.*, 452 F. Supp. 2d 133 (E.D.N.Y. 2006) for the same proposition. These decisions are neither binding on this Court nor consistent with the weight of authority in this Circuit on the question of whether a plaintiff's claim in federal court improperly alleges injury caused by a state court judgment where he seeks to recover in federal district court an amount or property of which plaintiff was previously deprived owing to the entry of the state court judgment. Nor do these decisions concern monies collected pursuant to a debt-collection action or any of the causes of action Plaintiffs bring in their lawsuit.

Equally unavailing is Plaintiffs' contention that the class members' state court judgments would not have to be reviewed by this Court to determine whether debts collected on by Defendants were actually owed by the class members.  Neither *Hamid v. Stock & Grimes, LLP*, 876 F. Supp. 2d 500 (E.D. Penn. 2012) nor *Gervais v. O'Connel, Harris & Assoc. Inc.*, 297 F. Supp. 2d 435 (D. Conn. 2003) stands for so broad a proposition.  To begin with, in neither decision was money collected from a debtor pursuant to a *judgment* but instead through a voluntary out-of-court settlement, rendering inapposite any comparison to the *Rooker-Feldman* question here.  *Hamid*, 876 F. Supp. 2d at 502; *Gervais*, 297 F. Supp. 2d at 439.  More fundamentally, in both cases the FDCPA plaintiffs were permitted to recover monies collected from them because the statute of limitations on their debt had expired prior to collection; *i.e.*, *Hamid* and *Gervais* do not hold, as Plaintiffs state in their February 12, 2013 letter to the Court, that "actual damages under the FDCPA include money paid to defendant even if that money was actually owed by plaintiff."  Pls.' Ltr., p. 4.

Notwithstanding the weight of authority in favor of Defendants' position, Plaintiffs' counsel have further claimed that *Rooker-Feldman* is not applicable because, even if awarding as "actual damages" in federal court the amount of the state court judgment leaves the judgment an empty shell, the un-vacated judgment would remain in state court.  This misses the point.  The *Rooker-Feldman* doctrine concerns itself with prohibiting a federal district court from upsetting the substance of a state court's judgment.  Here, the state court judgments were about whether a certain sum of money should be awarded to Defendants; returning that sum would nullify the judgment in substance if not in form.

In short, the Court should make clear that its certification order does not encompass Plaintiffs' newfound claim for monies paid pursuant to state court judgments, as such a claim was never briefed, and cannot withstand *Rooker-Feldman* scrutiny.

**B.**    **Even If *Rooker-Feldman* Does Not Bar Plaintiffs' New Damages Theory, The Class Representatives Lack Standing To Bring That Claim – And No Subject-Matter Jurisdiction Existed For The Claim At The Time Of Class Certification**

Plaintiffs' belated attempt to recover tens of millions of dollars paid to Defendants by class members following the entry of default judgments fails for an independently sufficient reason:  the class representatives have no Article III standing to seek such recovery, because, as the Court has itself acknowledged, they have all "had the default judgments against them vacated or discontinued." Order on Mot. to Dismiss, D.E. 58, p. 30.  Because this jurisdictional defect existed prior to the Court's certification decision, the proper remedy is dismissal of the claim, not the substitution of new class representatives.  *See Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998) (Posner, J.) (dismissing altogether class claims because named representatives never had standing to bring denial-of-access claims which infected class certification and motion to dismiss decisions).

It is axiomatic that to have Article III standing, each of the named Plaintiffs must allege and prove (1) an injury in fact (2) fairly traceable to defendants' actions that is (3) redressable by the requested relief.  *See Clapper v. Amnesty Int'l USA*, --- S. Ct.. ----, 2013 WL 673253, at *7 (U.S. Feb. 26, 2013); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).    Each of the Plaintiffs must show these elements for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L. Ed. 2d 610 (2000);  *see also Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has *suffered the injury that gives rise to that claim*") (internal quotations omitted) (emphasis added). Furthermore, in the class action context, the class representatives must show that they have suffered substantially the same *type* of injury as the class they aim to represent.  *See Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (rejecting class representatives' denial-of-

access claims on behalf of prisoners who were denied access in different ways because "standing is not dispensed in gross"); *see also Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S. Ct. 2777, 2783, 73 L. Ed. 2d 534 (1982) (rejecting nursing home residents' standing to bring claims on behalf of residents transferred to higher levels of care when they had been transferred to lower levels because "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject"); *Warth v. Seldin*, 422 U.S. 490, 503, 95 S. Ct. 2197, 2207, 45 L. Ed. 2d 343 (1975) (holding that class representatives lacked standing to challenge the zoning restrictions of a town because they failed to show how the injury they had suffered was in any way related to the defendants' alleged constitutional and statutory infractions); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 168, 92 S. Ct. 1965, 1969, 32 L. Ed. 2d 627 (1972) (holding that although man who was denied food and drink service as a guest at a fraternal lodge due to discrimination had standing to challenge the *guest* policies of the lodge, he did not have standing separately to challenge the exclusionary *membership* policies of the lodge because he had never applied for membership).

Plaintiffs have already represented to the Court that "each of [the class representatives'] default judgments was later vacated, and each state court action was thereafter discontinued or dismissed." Pls.' Br. in Opp., D.E. 48, p. 44. Plaintiffs have also admitted that they have paid *no* monies to Defendants from post-judgment collection efforts that have not been returned to Plaintiffs prior to the filing of their claims in this action. TAC, ¶¶ 133, 163, 195, 216; Ginzburg Decl. Ex. G, p. 31: 10-13; Ex. H, p. 29:1-5; Ex. I, p. 27-28; Ex. J, p. 28:21-23. The allegedly "injurious conduct of one kind" to which Plaintiffs have been subjected, then, is qualitatively different from that giving rise to a claim seeking as "actual damages" all amounts paid by class members whose judgments were *not* lifted and who *did* pay monies to the Defendants pursuant to them. *Blum*, 457 U.S. at 999.

In *Blum*, the class representatives, residents of Medicaid-funded nursing homes, challenged the ability of their nursing homes and the state-administered health care funding apparatus to transfer them to lower levels of care without first affording them adequate notice and the right to an administrative hearing. *Id.* at 995. Although the class representatives had both been transferred to *lower* levels of care without notice or a hearing, the district court included within the class definition nursing home residents who had been transferred to *higher* levels without notice or a hearing. *Id.* at 998. After acknowledging that the class representatives enjoyed standing to bring their Fourteenth Amendment claims on behalf of residents who, like them, were transferred to lower levels, the Supreme Court reversed the lower courts' ruling that they *also* possessed standing to bring the same claims on behalf of residents transferred to higher levels. *Id.* at 1001. Even though the class representatives alleged similar deprivation-of-notice-and-hearing problems as those transferred to higher levels of care, "the conditions under which such transfers occur are sufficiently different from those which respondents do have standing to challenge that any judicial assessment of their procedural adequacy would be wholly gratuitous and advisory." *Id.*

Similarly, in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), the court held that the RMBS investor class representatives had standing to bring Securities Act claims on behalf of investors who purchased securities different than their own where the exact same lender originated the collateral backing both of their securities and where the offering materials' misrepresentations about collateral quality were identical. *Id.* at 163. However, the class representatives *lacked* "class standing" to represent investor class members in certain other securitizations because, although the offering materials for both securitizations featured the same misrepresentations about collateral quality, the *injuries* of investors in the distinct securities "ha[d]

18

the potential to be very different—and could turn on very different proof" because their backing collateral was originated by different lenders.  *Id.*

So it is here.  Fundamentally different and challenging questions are raised by the absent class members' putative theory of recovery under which they would have returned to them monies paid to Defendants pursuant to default judgments.  As noted above,  there are multiple questions that *must* be answered by class members seeking such amounts but *cannot* be answered by the class representatives, as they have had their judgments lifted and have paid no money to Defendants. How does a class representative who has had his judgment vacated and who has paid no money to Defendants have a stake in litigating such fundamental questions as:  whether other class members acknowledged owing debts to Defendants; whether Defendants could not have simply changed the allegedly false language in the affidavit of merit and collected their judgments under a differently-worded affidavit; whether borrowers who waived all claims and defenses against Defendants in settlement agreements entered post-judgment may seek a return of these amounts at all?

These are questions that go to the heart of whether the class members who have paid money to Defendants will be able to prove Defendants' *liability* to the class members under this theory of recovery.  The named Plaintiffs respond that "the precise quantum of their damages is irrelevant." Pls.' Ltr dated Feb. 12, 2013, p. 5.  That is a straw man argument.  The class members' purported claim seeking return of these monies will turn on *qualitatively* different proof than those claims brought by the class representatives whose only alleged damages relate exclusively to procedural and incidental costs.  Just as in *NECA-IBEW*, although the named Plaintiffs' incidental damages allegedly stem from the same misrepresentations as the class members' judgment payments, their *injuries* "have the potential to be very different – and could turn on very different proof."  *NECA-IBEW*, 693 F.3d at 163.  Again, the Court has already well acknowledged this reality when it stated

in its certification Opinion that "[t]he various claims of the named plaintiffs as to the validity or existence of the underlying debts *are not at issue here*" and are "*not relevant to the litigation at hand*." Op. Granting Class Certification, D.E. 123,  p. 30-31 (emphasis added).  For the class members who seek the return of monies paid to the Defendants, the "validity or existence of the underlying debts" is certainly "at issue here."  And this issue turns on entirely different proof than that which will be adduced by the class representatives.[7]

Because no named Plaintiff had standing to assert a claim for all monies recovered pursuant to default judgments at the time the Court granted the motion to certify (and, indeed, at the time the Court denied in part Defendants' motions to dismiss), the Court did not have subject matter jurisdiction to include it within the scope of the classes it certified; the claim should be dismissed altogether.  *Edgar*, 163 F.3d at 432.  In *Edgar*, for example, inmates in a maximum security prison brought class action claims against prison officials, alleging that the officials had blocked their access to the courts in violation of the Fourteenth Amendment.  *Id*. at 430.  The case was litigated for ten years until the district judge found that their right of access had been violated.  *Id.*  But after the Supreme Court decided  *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606  (1996) (rejecting class representatives' denial-of-access claims on behalf of prisoners who were denied access in different ways because "standing is not dispensed in gross"), the district court dismissed

---

[7]    For the same reasons, the class representatives' claims are plainly not typical of the class members' purported claims, and the named Plaintiffs are not adequate class representatives, in this respect – an issue the Court did not address in its certification decision because Plaintiffs' newly-created theory of recovery was never briefed or presented to the Court.  *See*, *e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982) (Rule 23 typicality requires that the class members "*suffer[] the same injury* as [the class representatives], such that . . . the [class representative's] claim will be typical of the class claims"); *see also Vassalle*, 2013 WL 673517, at *7 (finding named plaintiffs in nationwide FDCPA settlement class were inadequate representatives because their debts had been forgiven, leaving them without any interest in vigorously pursuing the same form of recovery for class members whose judgments had not been lifted and who had paid money pursuant to them).

the lawsuit on the ground that the named plaintiffs lacked standing.  In affirming the decision, Judge Posner held that dismissal, rather than the substitution of new class representatives, was appropriate because the named plaintiffs lacked standing from the very beginning of their lawsuit to bring their denial-of-access claims.  *Edgar*, 163 F. 3d at 433.  Just as in *Edgar*, *none* of the named Plaintiffs have suffered the injury for which they now claim to be seeking the recovery of all monies paid pursuant to default judgments.  This claim should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should clarify that it will not certify for class treatment Plaintiffs' newly-raised theory of "actual damages" in the amount of monies collected from class members following the entry of a default judgment by modifying the class certification order as Mel Harris proposes because (1) Plaintiffs' new theory of recovery  has never been raised before the Court and was therefore never considered in its certification opinion; (2) it is barred by the *Rooker-Feldman* doctrine; and (3) Plaintiffs lack Article III standing to bring such a claim in any event.[8]

---

[8]   In the alternative, should the Court conclude that Plaintiffs' new theory of recovery is somehow encompassed within the class definitions even though it was never asserted by Plaintiffs until now and despite *Rooker-Feldman* and standing problems, the Mel Harris Defendants respectfully request that they be given the opportunity to formally address the validity of this new theory of recovery, both through a Fed. R. Civ. P. 12(b)(6) motion and a challenge based on the Fed. R. Civ. P. 23 requirements.  Had Plaintiffs put Defendants and the Court on notice of their new theory prior to this point, Defendants would have moved to dismiss the claim and would have raised additional arguments in opposing Plaintiffs' motion to certify their classes.

DATED:   New York, New York           QUINN EMANUEL URQUHART &
         March 12, 2013                    SULLIVAN, LLP


                                       By:/s/ Maria Ginzburg


                                       James R. Asperger
                                       Maria Ginzburg
                                       Quinn Emanuel Urquhart & Sullivan, LLP
                                       51 Madison Avenue, 22nd Floor
                                       New York, NY 10166
                                       (212) 849-7000

                                       Marc A. Becker (*pro hac vice* pending)
                                       1 Fleet Place
                                       London, EC4M 7RA
                                       United Kingdom
                                       +44 (0) 20 7653 2000

                                       Brett Scher
                                       KAUFMAN, DOLOWICH, VOLUCK &
                                       GONZO LLP
                                       135 Crossways Park Drive, Suite 215
                                       New York, NY 10038