UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE SYKES, REA VEERABADREN, KELVIN PEREZ, and CLIFTON ARMOOGAM, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 09 Civ. 8486 (DC) |
| - against - | |
| MEL S. HARRIS AND ASSOCIATES LLC; MEL S. HARRIS; MICHAEL YOUNG; DAVID WALDMAN; KERRY LUTZ; TODD FABACHER; MEL HARRIS JOHN/JANE DOES 1-20; LEUCADIA NATIONAL CORPORATION; L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC; LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 21, LLC; JOSEPH A. ORLANDO; PHILIP M. CANNELLA; LR CREDIT JOHN/JANE DOES 1-20; SAMSERV, INC.; WILLIAM MLOTOK; BENJAMIN LAMB; MICHAEL MOSQUERA; JOHN ANDINO; and SAMSERV JOHN/JANE DOES 1-20, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PROPOSED CLASS CERTIFICATION ORDER

CHARLES J. OGLETREE, JR.
Harvard Law School
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 495-5097

NEIGHBORHOOD ECONOMIC DEVELOPMENT
ADVOCACY PROJECT
176 Grand Street, Suite 3000
New York, New York 10013
(212) 680-5100

EMERY CELLI BRINCKERHOFF & ABADY LLP
75 Rockefeller Plaza, 20th Fl.
New York, New York 10019
(212) 763-5000

MFY LEGAL SERVICES, INC.
299 Broadway, 4th Floor
New York, New York 10013
(212) 417-3701

## TABLE OF CONTENTS

**PAGE NO(s)**:

TABLE OF AUTHORITIES ................................................................................................ii-v

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ....................................................................................................................... 4

    I.     PLAINTIFFS' PROPOSED CLASS CERTIFICATION ORDER IS FULLY
          CONSISTENT WITH THIS COURT'S OPINION AND FED. R. CIV. P.
          23(C)(1)(B) ............................................................................................... 4

    II.    PLAINTIFFS' CLAIMS FOR ACTUAL OR COMPENSATORY DAMAGES IN
          THE FORM OF OUT-OF-POCKET LOSSES IS NOT *NEW* .............................. 5

          1.    The Complaints ........................................................................... 6

          2.    Course of Litigation ..................................................................... 8

    III. THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR THIS ACTION ........... 9

          A.    Plaintiffs' Actual Damages Claims Are Outside the Scope of the
                *Rooker-Feldman* Doctrine ....................................................... 10

                1.    Claims for actual damages are not the equivalent of
                      seeking vacatur of state-court judgments...................................... 10

                2.    Claims for actual damages are not subject to *Rooker-*
                      *Feldman* .................................................................................. 12

          B.    *Rooker-Feldman* Does Not Bar Plaintiffs' Actual Damages Claims
                Because Those Claims Allege that Defendants Fraudulently
                Procured the State-Court Judgments ............................................. 13

          C.    The Court Need Not and Should Not Review the Validity of the
                 Underlying Debts ....................................................................... 20

    IV.    PLAINTIFFS HAVE STANDING TO SEEK ACTUAL OR
          COMPENSATORY DAMAGES ON BEHALF OF THEMSELVES AND
          ALL ABSENT CLASS MEMBERS ................................................................ 22

CONCLUSION .................................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s)</u>:

Cases

*Abby v. Paige,*
   10-23589-CIV, 2013 WL 141145 (S.D. Fla. Jan. 11, 2013).................................................. 20

*Amalfitano v. Rosenberg,*
   874 N.Y.S.2d 868 (2009) ........................................................................................................ 7

*Ashby v. Polinsky,*
   328 Fed. Appx. 20 (2d Cir. 2009) ......................................................................................... 16

*Ballyhighlands, Ltd. v. Bruns*,
   182 F.3d 898 (2d Cir. 1999)................................................................................................... 17

*Bankers Trust Co. v. Rhoades,*
   859 F.2d 1096, 1106 (2d Cir. 1988)........................................................................................ 7

*Blum v. Yaretsky,*
   457 U.S. 991 (1982) ............................................................................................................... 24

*Brokaw v. Weaver,*
   305 F.3d 660 (6th Cir. 2002)........................................................................................... 14, 15

*Bullock v. Credit Bureau of Greater Indianapolis*, Inc.,
   272 F. Supp. 2d 780 (S.D. Ind. 2003) ................................................................................. 16

*Cent.l States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
   504 F.3d 229 (2d Cir. 2007).................................................................................................. 22

*Dandar v. Church of Scientology Flag Serv. Org.*, No. 12 Civ. 2477, 2013 WL 593840
   (M.D. Fla. Feb. 15, 2013)...................................................................................................... 16

*Done v. Wells Fargo Bank, N.A.*,
   No. 08 Civ. 304, 2009 WL 2959619 (E.D.N.Y. Sept. 14, 2009) ......................................... 16

*Dowlah v. Dowlah,*
   No. 09 Civ. 2020, 2010 WL 889292 (E.D.N.Y. Mar. 10, 2010)........................................... 12

*Drees v. Ferguson,*
   396 Fed. App'x 656 (11th Cir. 2010)..................................................................................... 12

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
  544 U.S. 280 (2005) ................................................................................... 9, 18

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ............................................................................... 7

*Forjone v. Federated Fin. Corp. of Am.*,
  816 F. Supp. 2d 142 (N.D.N.Y. 2011) ............................................................ 16

*Fort Worth Emp.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  862 F.Supp.2d 322 (S.D.N.Y. 2012) .......................................................... 21, 23

*Francis ex rel. Francis v. City of New York*,
  197 Fed. Appx. 27 (2d Cir. 2006) ................................................................... 14

*Gabriele v. American Home Mortgage Services, Inc.*,
  No. 12-985, 2012 WL 5908601 (2d Cir. Nov. 27, 2012) .................................. 13

*GASH Assocs. v. Rosemont*,
  995 F.2d 726 (7th Cir. 1993) ..................................................................... 12, 18

*Goddard v. Citibank*,
  No. 05 Civ. 5317, 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006) ....................... 14

*Granger v. Harris*,
  No. 05 Civ. 3607, 2005 WL 2547201 (Apr. 17, 2007) .................................... 17

*Gray v. Americredit Financial Servs., Inc.*,
  No. 07 Civ. 4039, 2009 WL 1787710 (S.D.N.Y. June 23, 2009) ..................... 17

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010) ........................................................................... 14

*Hall v. Dixon*,
  No. 11-20154, 2012 WL 4478437 (S.D. Tex. Sept. 30, 2010) ........................ 16

*Hoblock v. Albany County Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ......................................................................... 9, 13

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
  851 F.Supp.2d 746 (S.D.N.Y. 2012) .......................................................... 21, 22

*Jensen v. Foley*,
  295 F.3d 745 (7th Cir. 2002) .......................................................................... 15

*Johnson v. Phila. Hous. Auth.*,
  448 Fed. Appx. 190 (3d Cir. 2011) ................................................................. 15

*Keele v. Wexler,*
  149 F.3d 589 (7th Cir. 1998)...................................................................... 23

*Kelley v. Med-1 Solutions, LLC,*
  548 F.3d 600 (7th Cir. 2008)...................................................................... 16

*Lance v. Dennis,*
  546 U.S. 459 (2006) ...................................................................................... 9

*Lewis v. Casey,*
  518 U.S. 343 (1996) .................................................................................... 21

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................................... 21

*Marshall v. Grant,*
  521 F. Supp. 2d 240 (E.D.N.Y. 2007)........................................................ 13

*McNamara v. Kaye,*
  360 Fed. App'x 177 (2d Cir. 2009) ............................................................ 11

*Moccio v. N.Y.S. Office of Court Admin.,*
  95 F.3d 195 (2d Cir. 1996) ........................................................................... 9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
  693 F.3d 145 (2d Cir. 2012) ....................................................................... 24

*Nesses v. Shepard,*
  68 F.3d 1003 (7th Cir.1995)........................................................................ 15

*Oswego Laborers' 214 Pension Fund v. Marine Midland Bank, N.A.,*
  623 N.Y.S.2d 529 (N.Y. 1995) ..................................................................... 7

*Raydos v. Cohen & Slamowitz, LLP,*
  No. 08 Civ. 4A, 2009 WL 2929166 (W.D.N.Y. Sept. 9, 2009)................. 16

*Robinson v. New Jersey Mercer County Vicinage-Family Div.,*
  No. 12-2429, 2013 WL 563337 (3d Cir. Feb. 15, 2013)............................ 15

*Ross v. RBS Citizens, N.A.,*
  667 F.3d 900 (7th Cir. 2012)......................................................................... 5

*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208 (1974) .................................................................................... 24

*Schlesinger v. Reservists Committee to Stop the War,*
  418 U.S. 208 (1974) .................................................................................... 21

*Shechet v. Abby Favali Corp. Counsel NYC*,
　No. 05-5027, 2006 WL 1308656 (2d Cir. May 9, 2006) ....................................................... 11

*Sibley v. Lando*,
　437 F.3d 1067 (11th Cir. 2005)........................................................................................... 12

*Swiatkowski v. Citibank*,
　446 Fed. Appx. 360 (2d Cir. 2011) ...................................................................................... 16

*Sykes v. Mel Harris & Assoc., LLC*,
　757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............................................................................. 9, 18

*Sykes v. Mel Harris & Associates, LLC*,
　285 F.R.D. 279 (S.D.N.Y. 2012)......................................................................................... 19

*United States v. Iwanski*,
　805 F. Supp. 2d 1355 (S.D. Fla. 2011)................................................................................. 20

*Walters v. Edgar*,
　163 F.3d 430 (7th Cir. 1998)............................................................................................... 25

Statutes:

15 U.S.C. § 1692k(a)(1)............................................................................................................ 7

42 U.S.C. § 1983..................................................................................................................... 11

Rules:

Fed. R. Civ. P. 23(b)(3)............................................................................................................. 4

Fed. R. Civ. P. 23(c)(1)(B) ....................................................................................................... 1

Rule 23(c)(1)(B)................................................................................................................... 2, 4

Other Authorities

Hon. Jed. S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* § 4.02
　(2012) .................................................................................................................................. 7

On September 4, 2012, this Court issued a forty-two page Opinion certifying a "Rule 23(b)(2) injunctive and declaratory relief class – comprised of all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been or will be sought – to resolve the equitable portion of plaintiffs' RICO, GBL and Judiciary Law claims;" and a "Rule 23(b)(3) liability class – comprised of all person[s] who have been sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been entered against them – to resolve the issues of whether defendants' actions violated the FDCPA, RICO, New York GBL § 349, and New York Judiciary Law § 487." Opinion at 39-40.  The Opinion also directed plaintiffs to "submit a proposed order on notice." *Id.* at 40.  Plaintiffs submitted their proposed order on February 7, 2013.  Defendants subsequently objected and, in accordance with this Court's Order dated March 4, 2013, plaintiffs submit this Memorandum of Law in Support of Their Proposed Class Certification Order.

## PRELIMINARY STATEMENT

As required by Fed. R. Civ. P. 23(c)(1)(B), plaintiffs' proposed order certifies the classes as defined in the Court's opinion and appoints class counsel.  In response, and under the guise of "objecting" to plaintiffs' proposed order, defendants make four points; none really have anything to do with class certification or the order proposed by plaintiffs.

First, they object because plaintiffs' proposed order "ask[s] this Court to do what it jurisdictionally cannot . . . annul over 124,000 state court judgments."  Leucadia Defendants' Objections to Plaintiffs' Proposed Class Certification Order and Memorandum in Support of Proposed Counter-Order ("Leucadia Br.") at 1, Dkt. 161; *see also* Mel Harris Defendants'

Objection to Plaintiffs' Proposed Class Certification Order ("Mel Harris Br.") at 1, Dkt. 159

(alleging that plaintiffs' proposed class certification order "purports to certify a claim seeking to

recover millions of dollars paid by class members pursuant to binding state court judgments").

This is curious because nothing in the order adverts to any such thing.  Indeed, plaintiffs do not

now, and have never, sought to annul any state court judgments.  Ironically, it is defendants, not

plaintiffs, who propose the addition of language wholly extraneous to the purpose of a class

certification order under Rule 23(c)(1)(B) by inserting a proviso that "no claim may be asserted .

. . to recover money collected on or paid out in connection with any default judgment." Mel

Harris Br. at 2.  This makes no sense.  It is inconsistent with Rule 23(c)(1)(B) – which decidedly

does not suggest that class certification orders should also preclude parties from categories of

damage recovery.  Indeed, it is nothing more than a transparent attempt to revisit issues

previously decided by the Court and to raise arguments never before made.

       Second, new counsel for both the Leucadia and Mel Harris defendants attempt to

rewrite history.  They claim that plaintiffs "revealed for the first time" in December 2012 "that

they seek to recover as damages any and all moneys that were collected from class members on

default judgments entered by state courts."  Leucadia Br. at 1.  This is false.  Plaintiffs have

always sought actual and/or compensatory damages in various forms, including, without

limitation, out-of-pocket losses.  Indeed, that is why plaintiffs sought, and this Court granted,

certification of a class seeking to recover damages pursuant to Fed. R. Civ. P. 23(b)(3).  The

Complaint and the record are replete with this information.  Plaintiffs, on behalf of themselves

and the absent class members, seek to be made financially whole and to be restored to the

position they would have been in had defendants not violated the law.  Defendants' illegal

enterprise caused plaintiffs to lose money.  They lost money in the form of bank fees paid

because of defendants' collection activities.  They lost money when they had to go to court to contest a fraudulently obtained default judgment.  They lost money when defendants drained their bank accounts.  They lost money when defendants garnished their wages.  Defendants have always known that plaintiffs seek damages in an amount equal to plaintiffs' out-of-pocket losses.

Third, and based on the false premise that plaintiffs' claims for damages are new, defendants argue that this Court was wrong when it denied their motion to dismiss on Rooker-Feldman grounds in 2010.  Defendants' Rooker-Feldman argument is as wrong now as it was when it was first presented to the Court three years ago.

Fourth, the Mel Harris defendants throw in an argument that plaintiffs do not have standing to seek actual or compensatory damages because the amounts and categories of plaintiffs' damages may differ from those of absent class members.  Setting aside the fact that this has nothing to do with an order certifying this case as a class action (the ostensible purpose of this briefing), there is no question that plaintiffs have Article III standing.  They assert injuries caused by defendants' violations of various federal and state statutes and seek compensatory or actual damages for their injuries.  Plaintiffs are entitled to be made whole for their out-of-pocket losses.  The fact that the class representatives' out-of-pocket losses may differ in quantity or kind from absent class members does not undermine their standing to seek compensatory damages on behalf of themselves and all others who suffered such losses.  In arguing to the contrary, the Mel Harris defendants conflate two distinct forms of Article III standing.  They rely on cases that involve *prospective* injunctive relief, even though plaintiffs here seek monetary damages for their out-of-pocket losses on behalf of themselves and others who also suffered out-of-pocket losses.

This Court should decline defendants' improper invitation to revisit its prior rulings concerning the sufficiency of plaintiffs' claims or the propriety of class certification. Both rulings were correct.

## ARGUMENT

### I.   PLAINTIFFS' PROPOSED CLASS CERTIFICATION ORDER IS FULLY CONSISTENT WITH THIS COURT'S OPINION AND FED. R. CIV. P. 23(C)(1)(B)

Fed. R. Civ. P. 23(c)(1)(B) provides that an "order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel." Tellingly, defendants do not contend that plaintiffs' proposed class order is inconsistent with the rule. It is not. It defines the classes. It lists the claims to be adjudicated. It appoints class counsel. It fully complies with the rule and effectuates the rulings contained in the Court's class certification Opinion.

In the face of this, defendants submit a proposed counter-order that violates Rule 23(c)(1)(B) and defies common sense. Defendants seek to add the following language after the definition of the Fed. R. Civ. P. 23(b)(3) damages class and the recitation of the statutory claims asserted by plaintiffs: "provided, however, that no claim may be asserted under those statutes to recover money collected on or paid out in connection with any default judgment." Mel Harris Br. at 2. Defendants do not explain why an order precluding plaintiffs from recovering an entire category of out-of-pocket losses should be incorporated into an order certifying a class under Rule 23(c)(1(B). Rule 23(c)(1)(B) certainly does not support the inclusion of extraneous material in a class certification order.

Indeed, one of the few circuit courts to consider a challenge to a class certification order on Rule 23(c)(1)(B) grounds rejected the defendants' argument that the district court

should have added extraneous language concerning "seven additional questions" to a class

certification order.  *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 907 (7th Cir. 2012).  As the court

in *Ross* explained, "the claims identified by the district court are the *only* claims that require

resolution at trial," whereas the "seven questions . . . are merely issues of trial strategy or proof,

rather than the overall claims or issues necessitating resolution."  *Id.* (emphasis in original).  If

Rule 23(c)(1)(B) were read "to require a district court to list," extraneous material, such as "any

possible method of proof," or, here a ruling not yet made on a particular category of actual

damages, "the length of such an order would border on the absurd."  *Id.*

> The counter-orders proposed by defendants should be rejected based solely on

their failure to comply with Rule 23(c)(1)(B).

## II.   PLAINTIFFS' CLAIMS FOR ACTUAL OR COMPENSATORY DAMAGES IN THE FORM OF OUT-OF-POCKET LOSSES IS NOT *NEW*

> Defendants contend that, in December 2012, plaintiffs, for the first time,

"unveiled their contention that damages would be sought" for the recovery of out-of-pocket

losses suffered by all members of the certified damages class, "thereby leading to previously

unrequested damages potentially in the range of hundreds of millions of dollars (if damage

trebling provisions are applied)."  Mel Harris Br. at 7; *see also* Leucadia Br. at 2 (plaintiffs

recently "laid claim to a dramatically expanded category of damages that . . . damages may run

as high as $100 million – a staggeringly large figure").  Defendants' charge is untrue and

frivolous.

> In December 2012, when plaintiffs allegedly "unveiled" this "dramatically

expanded category of damages," defendants expressed no surprise at all.  Defendants said

nothing about plaintiffs' damages being new, despite ample opportunity to do so.  Defendants

were not surprised because plaintiffs have *always* made plain that they seek actual or

compensatory damages in an amount to make plaintiffs, and the absent class members they represent, whole, including damages for the out-of-pocket losses caused by defendants' fraud and misconduct.  This is borne out by the complaints in this action, the discovery taken thus far, and statements made by counsel in court proceedings and correspondence.

### 1.    The Complaints

First, both the Second Amended Class Action Complaint and Jury Demand, dated March 31, 2010, Dkt. 29 (the "SAC"), and the current operative Third Amended Class Action Complaint and Jury Demand, dated May 16, 2011, Dkt. 82 (the "TAC"), clearly state that plaintiffs seek to recover "[a]ctual and/or compensatory damages against all defendants in an amount to be proven at trial," on behalf of themselves and others who have been victimized by defendants' scheme and suffered pecuniary loss.  SAC at 79; TAC at 81.

Second, in describing the injuries suffered by plaintiffs and those similarly situated, the TAC alleges that "[a]s a direct and proximate result of the RICO violations described in this Complaint, plaintiffs and putative class members have suffered substantial injuries.  Plaintiffs and putative class members have . . . had money judgments entered against them on default which have been used to extract money from them by restraining and levying on their bank accounts . . . [and] garnishing their wages."  TAC ¶ 374 (RICO Cause of Action); *see also id.* ¶ 351(F) (FDCPA Cause of Action – "Defendants' violations include, but are not limited to: . . . Using fraudulently obtained default Judgments to extract money from Plaintiffs and class members"), ¶ 385(F) (GBL Cause of Action (same)), ¶ 392(D) (N.Y. Jud. Law Cause of Action (same)), ¶¶ 359, 362(F), 370 (RICO Cause of Action (same)).  The TAC complies with Fed. R. Civ. P. 8.  It notifies defendants that plaintiffs seek to recover the actual or compensatory damages that flow from having had "money judgments entered against them on default which

have been used to extract money from them by restraining and levying on their bank accounts," among other things. *Id.* ¶ 374.

Pursuant to all of plaintiffs' claims for damages, each member of the class is entitled to be made whole; to be placed in the position he or she would have been, but for defendants' fraudulent acts. *See, e.g., Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1106 (2d Cir. 1988) (remedial purpose of awarding damages for injury to property under RICO is "to place the plaintiff in the same financial position he would have occupied absent the illegal conduct"); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (observing in RICO action that the "general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket losses caused by the fraud"); *Oswego Laborers' 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 533 (N.Y. 1995) ("a plaintiff seeking compensatory damages" under the GBL must show that defendants' "deceptive act or practice . . . caused actual, although not necessarily pecuniary, harm"); *Amalfitano v. Rosenberg*, 874 N.Y.S.2d 868 (2009) (discussing award of compensatory damages in the form of out-of-pocket losses plus mandatory treble damages under the NY JL); 15 U.S.C. § 1692k(a)(1) (under FDCPA defendant is liable for "any actual damage sustained" by plaintiff); Hon. Jed. S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* § 4.02 (2012) (explaining that "RICO damages include actual, out-of-pocket losses or the costs that 'naturally and proximately' result from the fraud").

### 2.    Course of Litigation

Beyond the Complaints themselves, which are independently sufficient, the litigation record in this case is replete with references to the fact that all parties understood plaintiffs' claims for damages to include the recovery of out-of-pocket losses suffered by the

class representatives and the absent class members they now represent.  In fact, many of these

record references were made by *defendants* themselves.  Space does not allow a complete

recitation of every such instance, but the following examples are illustrative.

   In their brief opposing plaintiffs' motion for class certification, the Samserv

defendants challenged typicality and commonality as follows:

> Further demonstrating that the circumstances surrounding the individual plaintiffs are
> neither "typical" nor common" [sic] to the proposed class is the fact that the debt
> collection actions against the named plaintiffs were discontinued and their money was
> returned and/or their accounts "unfrozen." In contrast, the *proposed class supposedly*
> *consists of scores of individuals who have suffered actual financial consequences as a*
> *result of the debt collection actions commenced against them*.

Samserv Defs. Br. in Opposition to Plaintiffs' Motion for Class Certification ("Samserv Br."),

dated June 13, 2011 at 17, Ex. A attached to the Declaration of Matthew D. Brinckerhoff

("Brinck. Decl.") (emphasis supplied).

   In an August 15, 2011 letter brief to the Court that was submitted in opposition to

plaintiffs motion for class certification, the Leucadia defendants, joined by all defendants,

explained that "Plaintiffs are asking this court to certify a class of more than 120,000 debtors

seeking reversal of their default judgments and refunds."  Brinck. Decl. Ex. B.

   During argument on plaintiffs' motion for class certification, counsel for the

Leucadia defendants stated:

> Your Honor, if this Court certifies a RICO class action, it's all over.  These defendants
> could be liable for as much as $100 million because they're seeking treble damages and
> disgorgement, and so what happens after the class certification hearing is almost
> meaningless.

Transcript of Oral Argument, dated Oct. 11, 2011 at 69-70. Brinck. Decl. Ex. C.  Clearly,

Leucadia was on notice that plaintiffs were seeking damages in the amount of the money

extracted because their attorney cited the precise quantum of those damages.  This

acknowledgement flies in the face of their description of our "dramatically expanded category of damages . . . run[ning] as high as $100 million."

On this record, the Court should not be fooled by defendants' feigned surprise concerning damages categories or the "staggeringly large figure" yielded by the recovery of out-of-pocket losses.  Plaintiffs' claims for damages are not new.  The only thing that is "new" is the bevy of new lawyers hired by the Leucadia and Mel Harris defendants since this Court issued its class certification opinion, who are now attempting to re-litigate the entire case.

### III.     THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR THIS ACTION

As this Court has already held, this Court has federal subject matter jurisdiction to hear this case.  *Sykes v. Mel Harris & Assoc., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010).  Although courts in this Circuit applied the *Rooker-Feldman* doctrine expansively in the past, *see Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996), the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), expressly rejected this overreach, "par[ing] back the *Rooker-Feldman* doctrine to its core," *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir. 2005); *see also Lance v. Dennis*, 546 U.S. 459, 468 (2006) (Stevens, J., dissenting) ("Last Term, . . . in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Court finally interred the so-called '*Rooker-Feldman* doctrine.'" (internal citation omitted)).  It is now clear that the *Rooker-Feldman* doctrine is a very narrow one, "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284.

### A.     Plaintiffs' Actual Damages Claims Are Outside the Scope of the *Rooker-Feldman* Doctrine

### 1.    Claims for actual damages are not the equivalent of seeking vacatur of state-court judgments.

It is undisputed that Plaintiffs are not seeking vacatur of the state-court default judgments.  Yet Defendants suggest that by seeking actual damages, Plaintiffs are "effectively" seeking vacatur of the state court judgments.  But nowhere do Defendants explain why or how this is the case or, more importantly, cite *any* relevant case law so suggesting.  And Defendants are wrong:  The federal-court judgment for actual damages that Plaintiffs seek is materially different from a judgment vacating the state-court default judgments.

Plaintiffs' claims for money damages—including, *inter alia*, for the money extracted following the entry of the default judgments—are materially distinguishable from claims for vacatur because they will not render the default judgments legally unenforceable.  The default judgments will remain in place.  A federal court award of damages to Plaintiffs would not bar Defendants from collecting upon default judgments should they choose to do so.  Though a ruling in Plaintiffs' favor may discourage Defendants from executing on the state-court judgments, such practical considerations are irrelevant to *Rooker-Feldman*'s legal inquiry into the reach of this Court's power.

Defendants try another tack: They argue that Plaintiffs' actual damages claims are identical to claims that seek the return of a tangible good or person whose removal was produced by the state court, and are thereby equivalent to vacatur.  By Defendants' reasoning, because a plaintiff cannot seek the return of a car that was repossessed pursuant to a state court judgment, he cannot seek actual damages for fraud that resulted in the extraction of money pursuant to a state-court default judgment.  But the latter proposition does not follow from the former.  While a tangible item cannot be in two places at once, money is fungible.  And while a plaintiff seeking

the return of his car is requesting injunctive relief, Plaintiffs in this case seek actual damages, and actual damages do not ask for the *return* of any particular *dollar.*  In short, that Defendants may acquire—through this lawsuit—the independent obligation to compensate Plaintiffs for their losses will have no legal effect on the default judgments.

Furthermore, even accepting *arguendo* that somehow Plaintiffs' actual damages claims could interfere with the execution of the state-court judgments with respect to the numerical LR-Credit entities (which they could not), this is clearly not the case with respect to the other Defendants.  It is the numerical LR-Credit entities that obtained and now own the default judgments.  It is therefore the LR-Credit entities that may execute upon the default judgments that have not already been fully executed upon.  A judgment awarding Plaintiffs actual damages against the *other* Defendants *clearly* could not and would not have any legal effect on the default judgments owned by the numerical LR-Credit entities.  Thus at the very least, with respect to all of the Defendants apart from the numerical LR-Credit entities, Plaintiffs' claims for actual damages have no effect *whatsoever* on the state-court judgments.  They are not akin to vacatur.

## 2.    Claims for actual damages are not subject to *Rooker-Feldman*.

Claims for actual damages are not subject to the *Rooker-Feldman* jurisdictional bar.  In *Mascoll v. Strumpf*, No. 05 Civ. 667, 2006 WL 2795175, at *8 (E.D.N.Y. Sept. 26, 2006), the court made this very point:  *Rooker-Feldman* was inapplicable to a debtor's challenge to a Nassau County default judgment pursuant to, *inter alia,* the FDCPA and the GBL because plaintiff sought only money damages and not "an order vacating the Nassau County court's judgment," such that the federal court action "would continue even if the state-court judgment were vacated."  *See also McNamara v. Kaye*, 360 Fed. Appx. 177 (2d Cir. 2009) ("*Rooker-*

*Feldman* only applies when the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment. Inasmuch as McNamara's claims challenge the procedures applied in all attorney disciplinary proceedings and seek damages and prospective relief rather than a modification of her suspension or reinstatement orders, her claims would not appear to be barred by *Rooker-Feldman*." (internal citation omitted)); *Shechet v. Abby Favali Corp. Counsel NYC*, No. 05-5027, 2006 WL 1308656 (2d Cir. May 9, 2006) ("Shechet does not seek reversal of the child-support orders—relief clearly barred by *Rooker/Feldman*, even as narrowed by *Exxon*—but rather seeks money damages, under 42 U.S.C. § 1983, for defendants-appellees' conduct during the state-court proceedings.  Providing such relief would not require disturbing the child-support orders themselves, and thus, under *Exxon*, this case presumably avoids *Rooker/Feldman*'s jurisdictional bar." (internal citation omitted)); *Drees v. Ferguson*, 396 Fed. App'x 656 (11th Cir. 2010) ("[T]he *Rooker-Feldman* doctrine does not apply when a party seeks money damages for the state court's alleged constitutional deprivations"); *Dowlah v. Dowlah*, No. 09 Civ. 2020, 2010 WL 889292 (E.D.N.Y. Mar. 10, 2010) ("[C]laims seeking only monetary damages or prospective-only relief against court procedures rather than modification of a family court's temporary custody or other orders would not run afoul of the *Rooker-Feldman* doctrine.").

### B.  *Rooker-Feldman* Does Not Bar Plaintiffs' Actual Damages Claims Because Those Claims Allege that Defendants Fraudulently Procured the State-Court Judgments

*Rooker-Feldman* does not bar Plaintiffs' actual damages claims against Defendants for their fraudulent conduct, because Plaintiffs are not complaining of injuries caused by state-court judgments or inviting district court review and rejection of those judgments. Plaintiffs do not complain of injuries caused by state-court judgments.  Rather, Plaintiffs

complain that Defendants filed facially valid yet fraudulent motions for default judgment,

complete with fraudulent affidavits of merit and fraudulent affidavits of service, and the state

court clerk entered judgment accordingly.  Nor do Plaintiffs seek review and rejection of the

state-court judgments.  Because they assert fraud in the procurement of the state-court

judgments, Plaintiffs present an "independent claim" well beyond *Rooker-Feldman*'s limited

reach.  *See Exxon*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726 (7th Cir.

1993)).

        As the Second Circuit has explained, "a federal suit complains of injury from a

state-court judgment, even if it appears to complain only of a third party's action, when the third

party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or

left unpunished by it."  *Hoblock v. Albany Cnty.Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2007).

When a plaintiff challenges—through an action seeking actual damages—fraud by a third party

in the procurement of a judgment, it cannot be said that "the third party's actions are produced by

the state court judgment" rather than "simply ratified, acquiesced in, or left unpunished by it."

Indeed, in *Marshall v. Grant*, 521 F. Supp. 2d 240, 244-45 (E.D.N.Y. 2007), the Court found that

where the plaintiff had "elected to live with his judgment of divorce" and proceed simply with a

claim for damages, he was not complaining of injuries caused by state court judgment because he

alleged fraud in the procurement of the judgment.  Similarly, in *Gabriele v. American Home

Mortgage Services, Inc.*, No. 12-985, 2012 WL 5908601 (2d Cir. Nov. 27, 2012), the Second

Circuit made clear that when a plaintiff claims actual damages for defendants' litigation

misconduct, that misconduct cannot be described as the "product of" any ensuing state-court

judgment.  *Id.* at *4-5  (defendants' "litigation misconduct was not the product of the state

court's . . . judgment of strict foreclosure . . . but rather . . . was 'simply ratified, acquiesced in, or

left unpunished by [the state court judgment]'" (quoting *Hoblock*, 422 F.3d at 88 (fourth alteration in original))).[1]

Numerous courts have made clear that *Rooker-Feldman* does not apply to claims for actual damages arising from a defendant's fraudulent procurement of a state-court judgment. For example, in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010), a case in which the plaintiff alleged "an extensive conspiracy among [defendants and others] to engineer [the plaintiff's] defeat in state court," the Third Circuit held that because plaintiff's claims for damages alleged fraud in the procurement of judgment, *Rooker-Feldman* did not apply. *Id.* at 171. In concluding that the suit did not complain of damages caused by a state-court judgment, the court explained: "'[B]ecause [the plaintiff's] claim for damages is based on an alleged independent violation of [its] constitutional rights,' the source of [the plaintiff's] purported injury was the actions of Defendants . . . , not the state-court decisions themselves." *Id.* at 172 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 667 (6th Cir. 2002)) (first and third alterations in original)). And in finding that the suit did not seek review and rejection of the state-court judgments, the court reasoned that "while [plaintiff's] claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for [plaintiff] to prevail." *Id.* at 173.

*Francis ex rel. Francis v. City of New York*, 197 Fed. Appx. 27 (2d Cir. 2006), was a suit for damages against case workers for falsely inducing a state court into issuing a judgment ordering the removal of children from their home. The *Francis* Court found that

---

[1] Although the plaintiff in *Gabriele* appeared to seek only actual damages that were incurred prior to the entry of the state-court judgment, and Plaintiffs here seek actual damages incurred subsequent to the entry of the state-court judgment, the import of *Gabriele* remains: When a plaintiff seeks actual damages for a third party's fraudulent litigation conduct, the third-party's fraud is not "produced by" a subsequent state-court judgment; to the contrary, the third-party's fraud is the cause of plaintiff's injury.

*Rooker-Feldman* did not bar the claim because plaintiffs had asserted an independent claim

attacking the misconduct of the defendants.  *Id.* at 29.  And in *Goddard v. Citibank*, No. 04 Civ.

5317, 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006), the plaintiff complained of injuries caused by

a state-court judgment of foreclosure and sought a declaration that the judgment was invalid.

The Court found that although *Rooker-Feldman* barred the plaintiff's claim for declaratory relief,

but did not bar her claims for damages that alleged fraud in the procurement of the judgment.

*Id.*\*5-6.

   Similar cases include: *Robinson v. New Jersey Mercer County Vicinage-Family

Div.*, No. 12-2429, 2013 WL 563337 (3d Cir. Feb. 15, 2013) ("[Plaintiff] is not asking for federal

courts to reverse the [state-court judgment] or to modify its terms. Rather, he seeks damages

from entities whom he claims acted unlawfully in creating and entering the [state-court

judgment]. That his success in this federal suit would call the state-court judgment into question

is not, post-*Exxon*, enough to preclude federal jurisdiction."); *Johnson v. Phila. Hous. Auth.*, 448

Fed. Appx. 190 (3d Cir. 2011) (noting that plaintiff's claim alleging fraudulent procurement of

judgment "sought damages, and not the abrogation of the [state-c]ourt judgment," and thus "may

not run afoul of Rooker-Feldman"); *Brokaw v. Weaver*, 305 F.3d 660, 667-69 (7th Cir.

2002) (holding that *Rooker-Feldman* did not bar claims that defendants had engaged in a

conspiracy to file false child neglect proceeding); *Jensen v. Foley*, 295 F.3d 745 (7th Cir.

2002) (holding that the injury in a federal suit against officers enforcing a child-custody order

"was caused not by the state court's temporary custody order, but by the underlying taking by the

. . . officers" such that *Rooker-Feldman* was inapplicable); *Nesses v. Shepard*, 68 F.3d 1003,

1004 (7th Cir.1995) (Posner, J.) (holding that *Rooker-Feldman* did not bar claim where plaintiff

alleged that the defendants conspired to "engineer" plaintiff's state court loss: because plaintiff

claimed that "people involved in the decision violated some independent right of his," he can "sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm."   "Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment."); *Dandar v. Church of Scientology Flag Serv. Org.*, No. 12 Civ. 2477, 2013 WL 593840, *6 (M.D. Fla. Feb. 15, 2013) (section 1983 claim alleging that presiding judge in state court action conspired to violate plaintiff's constitutional rights was not barred by *Rooker-Feldman*, "because Defendants' separate constitutional violations, rather than the state judgments themselves, are the cause of [plaintiff's] alleged injuries"); *Hall v. Dixon*, No. 11-20154, 2012 WL 4478437 (S.D. Tex. Sept. 30, 2010) (section 1983 claim against guardian *ad litems* involved in removal of minor child from mother not barred by *Rooker-Feldman* because even if "state court's decisions are part of the causal chain that connects the ad litem defendants' alleged deficient performance to [plaintiffs'] injuries, that is not enough to trigger *Rooker-Feldman*").

        The cases Defendants supply for the contrary proposition are inapposite because in those cases the plaintiffs expressly sought vacatur (or its equivalent) of a state-court judgment.[2]  *See, e.g.*, *Ashby v. Polinsky*, 328 Fed. Appx. 20 (2d Cir. 2009) (affirming dismissal

---

[2]        Defendants supply three cases where courts have applied *Rooker-Feldman* to bar a damages claim unaccompanied by requests for vacatur of a state-court judgment or its equivalent.  *Bullock v. Credit Bureau of Greater Indianapolis*, Inc., 272 F. Supp. 2d 780 (S.D. Ind. 2003), was a pre-*Exxon* case barring suit where plaintiffs did not allege fraud in the procurement of judgment, and is thus inapplicable.  *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008), a Seventh Circuit case in tension with other Seventh Circuit cases, as well as with cases from circuits around the country, hardly carries the day for Defendants.  The same is true for *Swiatkowski v. Citibank*, 446 Fed. Appx. 360 (2d Cir. 2011), an unpublished summary order dismissing the incomprehensible complaint of a *pro se* frequent filer and relying upon on several pre-*Exxon* cases.  Defendants also rely upon *Raydos v. Cohen & Slamowitz, LLP*, No. 08 Civ. 4A, 2009 WL 2929166 (W.D.N.Y. Sept. 9, 2009), for the proposition that a suit for actual

of action to vacate a judgment of foreclosure and transfer the deed back to plaintiff); *Forjone v. Federated Fin. Corp. of Am.*, 816 F. Supp. 2d 142 (N.D.N.Y. 2011) (barring action where *pro se* plaintiff repeatedly argued the state-court judgment was void); *Done v. Wells Fargo Bank, N.A.*, No. 08 Civ. 3040, 2009 WL 2959619 (E.D.N.Y. Sept. 14, 2009) (barring action that "request[ed] that the court vacate the state court judgment of foreclosure"); *Gray v. Americredit Financial Servs., Inc.*, No. 07 Civ. 4039, 2009 WL 1787710 (S.D.N.Y. June 23, 2009) (barring plaintiff's "PETITION TO OVERTURN STATE COURT RULING" that "explicitly seeks to have this Court review and reverse a [state-court] decision"); *Granger v. Harris*,[3] No. 05 Civ. 3607, 2005 WL 2547201 (Apr. 17, 2007) (barring suit where plaintiffs sought injunctive relief prohibiting future execution upon state-court judgment, and failing to even consider relevance of fraud); *Ballyhighlands, Ltd. v. Bruns*, 182 F.3d 898 (2d Cir. 1999) (pre-*Exxon* decision barring suit that sought a "judgment to compel the [defendants] to deliver a bargain and sale deed to Plaintiff").

Defendants suggest that because the Plaintiffs would not have incurred their actual damages had the state-court judgments not been entered, Plaintiffs are actually complaining of injuries caused by the state-court judgments. In other words, Defendants' theory appears to be that if a plaintiff complains of a state-court judgment any time that judgment comprises a single link in the causal chain of the incursion of damages. By this logic, *all* of the actual damages Plaintiffs seek—not simply the sums extracted from Plaintiffs pursuant to the default judgments but also Plaintiffs' "incidental" damages—should be barred by *Rooker-*

---

damages alleging violations of the FDCPA is barred by *Rooker-Feldman*. However, the court's musing about actual damages (which were not alleged) was entirely in dicta, and there was no issue of fraud in the procurement of the state-court judgment.

[3]    This opinion is incomplete: a material portion of the Court's reasoning is inexplicably missing. Counsel has checked both Westlaw and ECF, and it appears that a page is missing from the slip opinion. *See id.* at *5.

*Feldman*.  Indeed, if the default judgments had never been entered, Plaintiffs would not have

spent money, for example, on copying costs in connection with vacating the defaults.  Thus if the

default judgments are, for *Rooker-Feldman* purposes, the "cause" of Plaintiffs' injuries with

respect to their claims for the money Defendants extracted from them, the same must be true of

their claims for incidental damages.

But even Defendants acknowledge that *Rooker-Feldman* poses no bar to

Plaintiffs' claims for incidental damages, and the Court has already held unequivocally that

Plaintiff's claims for incidental damages may proceed.  *See Sykes*, 757 F. Supp. 2d at 429

("[P]laintiffs assert claims independent of the state-court judgments and do not seek to overturn

them.").  Thus the Court has already recognized, and Defendants have implicitly conceded, that

the mere fact that the state court judgment may be described as one of many but-for causes of

Plaintiffs' damages does not trigger the *Rooker-Feldman* bar.  Because Plaintiffs' damages

claims—for the money extracted and for incidental damages—complain of injuries caused by

Defendants' fraudulent procurement of default judgments rather than the default judgments

themselves, the Court has jurisdiction to hear those claims.

It is true, of course, that if Plaintiffs prevail on their claims before this Court (and

are awarded actual damages), this Court's judgment will implicitly deny a state court legal

conclusion—that Defendants were *entitled* to default judgment.  However, as the *Exxon* Court

explained, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that *denies a*

*legal conclusion that a state court has reached* in a case to which he was a party . . . , then there

is jurisdiction.'"  *Exxon*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726 (7th

Cir. 1993)) (second and fourth alterations in original).  Plaintiffs' federal court claims are

independent because they do not complain of an injury caused by a state court judgment, as

discussed above.  Accordingly, the fact that Plaintiffs' success would deny a legal conclusion of the state courts is irrelevant.

### C.       The Court Need Not and Should Not Review the Validity of the Underlying Debts

The Leucadia Defendants argue that they can retain the moneys collected from fraudulently-obtained default judgments unless Plaintiffs can prove that they "did not actually owe the debt."  Lecadia Br. at 13; *see also* Mel Harris Br. at 15 (making similar argument). Accordingly, they suggest, the Court will ultimately be required to review the validity of the underlying debts.  In effect, Defendants ask this Court to permit them to profit handsomely from their illegitimate scheme, and to manufacture a *Rooker-Feldman* question where none exists. This Court has already considered *and rejected* this very argument.

In their papers opposing class certification, Defendants argued that the Rule 23(a) requirements were not met because, while the named plaintiffs' had "their money . . . returned," "the proposed class supposedly consists of scores of individuals who have suffered actual financial consequences as a result of the debt collection actions," Brinck. Decl. Ex. A, at 17.  A certified class would be untenable, Defendants claimed, as it would "require a mini-trial focusing on the issues of whether Plaintiffs owed the debts at issue,"  Mel Harris Defs.' Mem. of Law in Opp. to Pl.'s Mot. for Class Cert., dated June 13, 2011, at 2, Dkt. 90.  This Court soundly rejected that argument: "The various claims of the named plaintiffs as to the validity or existence of the underlying debts are not at issue here."  *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 292 (S.D.N.Y. 2012).

And the Court's prior resolution—which is law of the case—was well-considered, because Defendants' proposal would turn the federal statutory scheme on its head.  As the court in *Hamid v. Stock & Grimes, LLP*, explained:  "It is clear from its underlying purpose that

debtors may recover for violations of the FDCPA even if they have defaulted on a debt.  It follows that debtors may recover the amount paid to settle a debt, if the debt collected violated the FDCPA in making the collection, as occurred here."  876 F. Supp. 2d 500, 503 (E.D. Pa. 2012).  *Hamid* decried the perverse incentives that would flow from the damages limitation Defendants here propose:  "If [plaintiff's] payment was not a proper element of actual damages under the FDCPA, a debt collector could harass a debtor in violation of the FDCPA, as a result of that harassment collect the debt, and thereafter retain what it collects."  *Id.*  "We do not believe that Congress intended" a debt collector to "retain what it collected" as a result of violating the FDCPA*, Hamid* concluded.[4]  *Id.; see also Abby v. Paige*, 10-23589-CIV, 2013 WL 141145, at *8-9 (S.D. Fla. Jan. 11, 2013) (holding that plaintiff is entitled to return of the moneys collected by defendants in violation of the FDCPA "[r]egardless of whether Plaintiff owed these amounts").

        Defendants cite no case law to the contrary.  The cases they do cite (Leucadia Br. at 13) stand only for the unremarkable proposition that courts cannot "cancel or extinguish debts as a remedy for FDCPA violations."  *United States v. Iwanski*, 805 F. Supp. 2d 1355, 1359 (S.D. Fla. 2011); *United States v. Iwanski*, 805 F. Supp. 2d 1355, 1359 (S.D. Fla. 2011) (same).  But Plaintiffs do not seek cancellation of *any* debts.  Plaintiffs ask only that Defendants collect any debts in conformity with federal and state law.  And, to the extent Defendants collected moneys

---

[4]        The Mel Harris Defendants claim that *Hamid* is inapposite because the underlying state court debt-collection action in that case was resolved by settlement, rather than by default judgment.  Mel Harris Br. at 15.  This distinction is meaningless because Plaintiffs do not rely on *Hamid* to argue the inapplicability of *Rooker-Feldman*; there is a litany of other case support for that proposition.  Instead, *Hamid* stands for the separate principle that Defendants cannot profit from their misdeeds by retaining the moneys they wrongfully obtained.  And while Defendants also claim that the debts in *Hamid* were invalid, there was a dispute on that point, and the Court's reasoning, cited above, makes clear that resolution of that dispute did not dictate its holding; indeed, *Abby*, 2013 WL 141145, at *9, explicitly states that damages include the amounts wrongfully collected "[r]egardless of whether Plaintiff owed these amounts."

as a result of their misdeeds, such collections were illegal and must be remitted as damages.

Defendants remain entitled to pursue outstanding debts from class members in state court—if

they can do so legitimately.  Accordingly, requiring Defendants to compensate plaintiffs for their

out-of-pocket losses does not pose any *Rooker-Feldman* concerns.

## IV.    PLAINTIFFS HAVE STANDING TO SEEK ACTUAL OR COMPENSATORY DAMAGES ON BEHALF OF THEMSELVES AND ALL ABSENT CLASS MEMBERS

Each class representative handily meets the threshold requirements for standing.

To establish standing: (1) "the plaintiff must have suffered an injury in fact–an invasion of a

legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the

conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992) (internal quotation marks and citations omitted).  "[I]n order to maintain a class

action, . . . the named plaintiffs 'must allege and show that they personally have been injured, not

that injury has been suffered by other, unidentified members of the class to which they belong

and which they purport to represent.'"  *Fort Worth Emp.' Ret. Fund v. J.P. Morgan Chase &*

*Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012) (quoting *Lewis v. Casey,* 518 U.S. 343, 357

(1996)).  "The named plaintiff 'must be a part of [the] class, that is, he must possess the same

interest and suffer the same injury shared by all members of the class he represents.'"  *In re Bear*

*Stearns Mortg. Pass-Through Certificates Litig.,* 851 F.Supp.2d 746, 776 (S.D.N.Y. 2012)

(quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216 (1974)).

The Complaint plainly alleges all three elements.  It alleges a "massive scheme to

deprive [New York City consumers] of due process and fraudulently obtain and enforce

thousands of default judgments worth millions of dollars." TAC ¶ 1.  Defendants injured class

members in a number of cognizable ways, such as by wrongfully restraining bank accounts,

garnishing wages, threatening to seize personal property, and/or pressuring people into

unaffordable payment plans.  *Id.* ¶ 7.   Plaintiffs seek "preliminary and permanent injunctive

relief, including disgorgement, declaratory relief, and damages."   *Id.* ¶ 8.

       Each of the class representatives has suffered damages as a result of defendants'

actions.  Ms. Veerabadren provides a representative example.  *See Cent.l States Se. & Sw. Areas*

*Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 241 (2d Cir.

2007) ("[o]nly one of the named Plaintiffs is required to establish standing in order to seek relief

on behalf of the entire class").  Defendants submitted false and misleading affidavits to

wrongfully obtain a default judgment against Ms. Veerabadren, then restrained her bank account

and seized its assets.  TAC ¶¶ 134-163.  After considerable time and expense, Ms. Veerabadren

was eventually able to vacate the default judgment and recover the funds that had been seized.[5]

But that does not negate the injury Ms. Veerabadren suffered, it only lessens the damages she is

owed.

       The Mel Harris defendants concede – as they must – that the out-of-pocket losses

experienced by Ms. Veerabadren and the other class representatives flowed from an injury-in-

fact.  Mel Harris Br. at 3.  They attempt to argue that because the class representatives vacated

the default judgments that were entered against them and recovered the money that defendants

unlawfully seized, they lack "standing."  But the recovery of money collected after the entry of a

default judgment has nothing to do with standing.  It goes to damages.

---

[5] Ms. Veerabadren was never compensated for bank fees from the restraint, lost use of her funds
for nearly a year, and other out-of-pocket losses.

It is well established that a class representative may prosecute "claims" on behalf of a class – with a claim being defined as "a cause of action arising from a discrete case and controversy." *In re Bear Stearns.*, 851 F.Supp.2d at 778.   A named plaintiff is not required to "literally suffer the same actual injury that each class member suffered" – that would "be impossible." *Fort Worth Emp. Ret. Fund*, 862 F. Supp. 2d at 332.  "Rather, the named plaintiff must 'show that he is within the class of persons who [were] concretely affected' by 'injurious conduct' by the defendant such that that plaintiff has the 'necessary stake in litigating' the case." *Id.* (citing *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982)).   Thus, for instance, in  *Gratz v. Bollinger*, the United States Supreme Court held that a class representative who challenged the university's use of race in *transfer* admissions had standing to represent class members challenging the university's use of race in *undergraduate* admissions, because the university's use of race in transfer admissions "does not implicate a significantly different set of concerns than does its use of race in undergraduate freshman admissions."  539 U.S. 244, 265 (2003)

Each class representative has alleged a violation of civil RICO, the FDCPA, the GBL, and New York's Judiciary Law.  Their claims remain live, regardless of the amount of their damages, and regardless of whether a default judgment has been vacated.[6]  *See, e.g., Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (holding that class representative in FDCPA claim who had not paid an unlawful collection fee had standing to represent class members who had

---

[6] The named plaintiffs suffered from defendants' wrongful conduct, but were unique in their ability to learn of the fraud, consult with counsel, and undertake the time and expense of vacating the default judgments.  These characteristics make them *better* suited to represent the class; they do not deprive the representatives of standing to represent the class.  Had the plaintiffs learned of the default judgments entered against them and *not* sought to vacate the default judgments, defendants would point to this lack of diligence to claim that plaintiffs were inadequate class representatives.

paid the fee, because the focus is "on the debt collector's misconduct, not whether the debt is valid").

Defendants subjected all class members to the same illegal business practices. They churned out unlawful affidavits, unlawfully obtained default judgments, and illegally extracted money.  Each class representative was harmed because of these business practices. Each class representative "possess[es] the same interest and suffer[ed] the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974).

The Mel Harris defendants fail to cite a single case that remotely supports their argument.  They rely on *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).  But the *NECA* Court *rejected* the narrow approach that defendants urge this Court to adopt: "[T]he district court's requirement that NECA show that its injuries are *the same* as those allegedly suffered by purchasers of Certificates from outlying Trusts backed by distinct sets of loans was error."  *Id.* at 162 (internal quotation marks and alterations omitted; emphasis in original).  The Second Circuit instead held that "in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," and (2) that such conduct implicates "the same set of concerns" as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Id.* at 162 (citations and internal quotation marks omitted).  *NECA* involved allegations of misleading statements in 17 different registered security offerings involving different originators, though plaintiffs had only purchased 2 such offerings.  *Id.*  Plaintiffs lacked standing to bring claims involving misrepresentation in the remaining 15 offerings, "because, to the extent the representations in the Offering Documents

were misleading with respect to one Certificate, they were not necessarily misleading with respect to others." *Id.* at 163.  Thus, while a plaintiff cannot bring claims for misrepresentation that is different in kind from the misrepresentation plaintiff suffered, there is no requirement that the named plaintiff suffer the "same" injury as the class members.

Similarly, *Blum v. Yaretsky*, 457 U.S. 991 (1982), does not help the Mel Harris defendants.  *Blum* involved a due process claim by nursing home residents who were transferred to lower levels of care without adequate notice.  The Court determined the plaintiffs had standing for claims related to threatened transfers to lower levels of care, but lacked standing to challenge the procedures governing transfers to higher levels of care because plaintiffs faced no "substantial" threat of such transfers.  Plaintiffs never suffered from defendants' "injurious conduct" in higher-level transfers (nor were they likely to suffer from such misconduct).  Here, in marked contrast, the same conduct—filing false affidavits of service and merit—has injured the named plaintiffs and the class members; it is only the amount of damages that differs.

Finally, *Walters v. Edgar,* 163 F.3d 430 (7th Cir. 1998) also involved a due process claim by prisoners for denial of access to courts.  During the pendency of the litigation, the Supreme Court held that such a denial, by itself, did not violate due process – thus leading to the court's determination that the class representatives lacked standing.  *Id.* at 434.  *Walters* has no applicability to plaintiffs' claims for damages.

The Mel Harris defendants' standing arguments fail.

## CONCLUSION

Plaintiffs' proposed class certification order should be entered by the Court.

Dated:  March 19, 2013
          New York, New York

                                EMERY CELLI BRINCKERHOFF
                                & ABADY LLP


                              _____/s_____
                              By:  Matthew D. Brinckerhoff

                              Jonathan S. Abady
                              Eisha Jain
                              Debbie Greenberger
                              Julia Sheketoff
                              75 Rockefeller Plaza, 20th Floor
                              New York, New York 10019
                              212-763-5000

                              Charles J. Ogletree
                              Harvard Law School
                              1563 Massachusetts Avenue
                              Cambridge, MA 02138
                              (617) 495-5097

                              NEIGHBORHOOD ECONOMIC
                              DEVELOPMENT ADVOCACY PROJECT
                              (NEDAP)
                              Josh Zinner
                              Susan Shin
                              Claudia Wilner
                              176 Grand Street, Suite 300
                              New York, NY 10013
                              212-680-5100

                              MFY LEGAL SERVICES, INC.
                              Carolyn E. Coffey
                              Ariana Lindermayer
                              Of Counsel to Jeanette Zelhof
                              299 Broadway, 4th Floor
                              New York, New York 10007
                              212-417-3701

                              *Counsel for the Plaintiff Class*