RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
O. ANDREW F. WILSON
KATHERINE ROSENFELD
ELIZABETH S. SAYLOR
DEBRA L. GREENBERGER
EISHA JAIN
ADAM R. PULVER
ZOE SALZMAN
SAM SHAPIRO
JULIA EINBOND
VASUDHA TALLA
JULIA FONG SHEKETOFF
JENNIFER M. KEIGHLEY

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
75 ROCKEFELLER PLAZA, 20TH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE
(212) 763-5000
FACSIMILE
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
DIANE L. HOUK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/17/13

May 8, 2013

*By Facsimile (212) 857-2346*

The Honorable Denny Chin
United States Circuit Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Sykes, et al. v. Mel S. Harris and Associates LLC, et al.*, 09 Civ. 08486 (DC)

Dear Judge Chin:

This firm, along with co-counsel MFY Legal Services and the Neighborhood Economic Development Advocacy Project, represents Plaintiffs in the above-referenced action. We write to request: 1) a pre-motion conference regarding Plaintiffs' proposed motion to quash nine subpoenas, served by the Mel Harris Defendants upon original creditors, that seek thousands of records relating to the purported accounts of potential class members and 2) that the Court stay compliance with the nine subpoenas issued by the Mel Harris Defendants pending resolution of Plaintiffs' proposed motion. The return date for certain of the subpoenas is Friday May 10, 2013. The nine subpoenas issued by the Mel Harris Defendants are attached as Exhibit A.[1]

As this Court is aware, Plaintiffs allege that Defendants engaged in a massive debt collection scheme to illegally obtain default judgments. A key component of Defendants' scheme is to file false affidavits of merit claiming that they have personal knowledge that a debt is due and owing, when in fact they do not have any personal knowledge regarding the underlying debt, and are unable to obtain information about the underlying debt from original creditors because of contractual limitations restricting Defendants' access. According to Defendants' own testimony, when they purchase portfolios of debts, they typically acquire

---

[1] The Mel Harris Defendants attached spreadsheets to the subpoenas seeking information in the aggregate concerning over 100,000 purported accounts. The attachments are not included due to their size.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

minimal information for each account in the portfolio: the consumer's name, Social Security number, last known address and telephone number, account number, charge-off date (the date that the creditor wrote off the debt as bad debt), and the alleged amount owed as of the charge-off date. Essentially, the Defendants pay to purchase a spreadsheet. At the time of purchase, the Mel Harris and Leucadia Defendants typically do not acquire any documents showing indebtedness between the original creditor and consumer, such as a contract or account statements. In addition, the debt purchase and sale agreements almost always bar the Defendants from obtaining documentation from the original creditor beyond a limited period of time and/or for more than a limited number of accounts. Some agreements (which Defendants produced in discovery in this matter) bar the debt buyer from obtaining *any* documentation for any debts in the portfolio.

In apparent recognition that they lacked the documentation necessary to support the claims contained in their fraudulent affidavits of merit, the Mel Harris Defendants recently submitted a number of subpoenas to original creditors, seeking "documents sufficient to show the amounts charged off" for the accounts of thousands of potential class members.[2] But these overbroad subpoenas are irrelevant to any of the claims in this litigation. As this Court has already held, "[a]t the crux of plaintiffs' claims is defendants' uniform action to fraudulently obtain default judgments by submission of false affidavits in New York City Civil Court. The various claims of the named plaintiffs as to the validity or the existence of the underlying debts are not at issue here. Liability under the FDCPA can be established irrespective of whether the presumed debtor owes the debt in question." Dkt. 123 at 30-31.

The Court's prior determination — which is law of the case—was well-considered. As the court in *Hamid v. Stock & Grimes, LLP*, explained: "It is clear from its underlying purpose that debtors may recover for violations of the FDCPA even if they have defaulted on a debt. It follows that debtors may recover the amount paid to settle a debt, if the debt collected violated the FDCPA in making the collection, as occurred here." 876 F. Supp. 2d 500, 503 (E.D. Pa. 2012). *Hamid* decried the perverse incentives that would flow from a damages limitation premised upon the validity of the debt: "If [plaintiff's] payment was not a proper element of actual damages under the FDCPA, a debt collector could harass a debtor in violation of the FDCPA, as a result of that harassment collect the debt, and thereafter retain what it collects." *Id.* "We do not believe that Congress intended" a debt collector to "retain what it collected" as a result of violating the FDCPA, *Hamid* concluded. *Id.*; *see also Abby v. Paige*, No. 10 Civ. 23589, 2013 WL 141145, at *8-9 (S.D. Fla. Jan. 11, 2013) (holding that plaintiff is entitled to return of the moneys collected by defendants in violation of the FDCPA "[r]egardless of whether

---

[2] Plaintiffs have standing to challenge the subpoenas on behalf of the class members whose personal financial information is being sought. *See, e.g., In re Flag Telecom Holdings, Ltd.*, No. 02 Civ. 3400, 2006 WL 2642192 (S.D.N.Y. Sept. 13, 2006) (determining that a party has standing to quash a subpoena that seeks personal financial information that is not likely to lead to the discovery of relevant evidence); *Koch v. Greenberg*, No. 07 Civ. 9600, 2009 WL 2143634, *3 n.1 (S.D.N.Y. July 14, 2009) (noting that "individuals have a constitutionally protected privacy interest in their personal records" that provides grounds to challenge subpoenas served on non-party institutions); *Arias-Zeballos v. Tan*, No. 06 Civ. 1268 (GEL) (KNF), 2007 WL 210112 (S.D.N.Y. Jan. 25, 2007) ("[C]ourts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution"); *Zagroba v. York Restoration Corp.*, No. 10 Civ. 2663, 2011 WL 2133837 (E.D.N.Y. May 26, 2011) (quashing overbroad subpoenas relating to bank records and noting that plaintiffs had standing to challenge subpoenas that implicated their bank records).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

Plaintiff owed these amounts"); *cf. Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("We must focus on the debt collector's misconduct, not whether the debt is valid . . . ."). In short, regardless of whether Defendants can prove at some point in the proper forum (New York City Civil Court) that a class member owed a debt to some original creditor, this has nothing to do with Defendants' fraudulent conduct: their filing of materially false affidavits in New York City Civil Court. Defendants made a business decision not to purchase proof that a debt was owed at the time they purchased each debt portfolio. They are now attempting to use this lawsuit as a vehicle to subpoena documents they chose not to purchase, and could not otherwise obtain, in an effort to support their debt collection business. Defendants are attempting to use the subpoena power of the Court to legitimate their fraudulent collection of the purported debts in this case.

The subpoenas also suffer from a host of other defects: 1) all but two of the subpoenas[3] are facially invalid, having been served outside this judicial district and more than 100 miles of the place specified for production, in violation of Fed. R. Civ. Proc. 45(b)(2); 2) the subpoenas compel recipients to create documents that otherwise do not exist, by directing recipients to provide information in specific columns in an electronic spreadsheets provided as an attachment to the subpoena; 3) the subpoenas seek confidential financial records of class members[4] and are not time-limited in any way; and 4) the subpoenas are overbroad and seek information that is not relevant and material to the allegations in this proceeding.

Plaintiffs served written objections to the subpoenas and requested that the Mel Harris Defendants withdraw them, but Defendants refused. Plaintiffs seek the opportunity to file a motion to quash the subpoenas and request a pre-motion conference to discuss this anticipated motion. In addition, because the return date for some of these invalid subpoenas is this Friday, May 10, Plaintiffs request that the Court issue an order that compliance with the subpoenas is stayed pending resolution of Plaintiffs' anticipated motion.

Respectfully Submitted,

Matthew D. Brinckerhoff
Eisha Jain

Encl.
c. All counsel (via email)

---

[3] The defective subpoenas are as follows: Verizon Legal Compliance (served in San Angelo, Texas), Bank of America (served in Phoenix, Arizona), Capital One Bank (served in Richmond, Virginia), Chase Bank (served in Indianapolis, Indiana), Citibank, N.A. (served in Sioux Falls, South Dakota), Columbus Bank & Trust Co. (served in Columbus, Georgia), and GE Capital Retail Bank (served in Draper, Utah).

[4] Defendants' offer to treat the information as confidential does not address the primary issue that Defendants have no right to this personal financial information in the first place. In addition, it is Defendants who will seek to use this information—which they otherwise would not be able to obtain—in support of their ongoing efforts to unlawfully obtain and enforce default judgments on a mass scale.