**quinn emanuel** trial lawyers | los angeles

865 S. Figueroa St., 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3000

WRITER'S INTERNET ADDRESS
jimasperger@quinnemanuel.com

May 9, 2013

**BY FAX**

The Honorable Denny Chin
United States Circuit Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/17/13

Re:   *Monique Sykes, et al. v. Mel S. Harris and Associates LLC, et al.* (No. 09-CV-08486-DC)

Dear Judge Chin:

On behalf of Mel S. Harris and Associates LLC, Mel S. Harris, Michael Young, David Waldman, Kerry Lutz, and Todd Fabacher (collectively, "Mel Harris") we write in response to Plaintiffs' letter dated May 8, 2013, requesting (1) leave to file a motion to quash nine subpoenas served by Mel Harris on third-parties, and (2) a stay of compliance with the subpoenas pending resolution of Plaintiffs' proposed motion. The arguments Plaintiffs raise, ostensibly on behalf of third-parties who themselves have made no objection to Mel Harris's subpoenas, are entirely without merit. Plaintiffs' request to stay compliance with valid subpoenas seeking documents vital to this case and to Mel Harris's defense should be denied.

Mel Harris issued subpoenas to original creditors who extended to class members the debts that are the subject of Plaintiffs' claims challenging default judgments Mel Harris obtained in New York City Civil Courts. The subpoenas seek credit records corroborating the reliability of the outstanding amounts of the debts that were charged off by those creditors and were ultimately the subject of suits by Mel Harris as counsel for certain of the Leucadia Defendants. Although most of the creditors have offices in New York and might easily be re-served with a subpoena there, some have expressly requested that the subpoenas be served at destinations outside of New York where they centralize subpoena responses. Mel Harris has complied with

those requests and has been working with the creditors to facilitate the production of responsive documents.

As a threshold matter, Plaintiffs lack standing to object to subpoenas issued to third-parties on grounds of relevance, burden or service of process. *See, e.g., See Estate of Ungar v. Palestinian Authority*, 332 Fed. App'x 643, 645 (2d Cir. 2009) (a party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party); *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 12cv6811 CM-JCF, 2012 WL 5395249, at *6 (S.D.N.Y. Nov. 5, 2012) (same); *see also Public Service Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 691204, at *5 (W.D.Okla. 2011) (Even if a party has standing to challenge a subpoena directed to a third-party on privacy or privilege grounds, he may not challenge that subpoena on grounds that the information imposes an undue burden on the subpoenaed party).

Indeed, the cases Plaintiffs themselves cite show that a party has standing to challenge a third-party subpoena *only* to the extent the requested documents implicate that party's privacy interests or a privilege. *See Koch v. Greenberg*, 07cv9600 (BSJ)(DF), 2009 WL 2143634, at *3 n.1 (S.D.N.Y. July 14, 2009) (holding that a party's basis for challenging a third-party subpoena is that his constitutionally protected privacy interest is implicated). Moreover, "as a litigant [to an] action, however, *[plaintiff's] expectation of privacy is slight* [and] *the entry of a protective order could address [plaintiff's] privacy concerns.*" *Id.*, at *4 (S.D.N.Y. July 14, 2009) (*citing During v. City Univ. of New York*, 05cv6992 (RCC), 2006 WL 2192843, at *5 (S.D.N.Y. Aug. 1, 2006)) (emphasis added).

Mel Harris has offered to address Plaintiffs' privacy concerns. In their letter to the Court, Plaintiffs failed to disclose Mel Harris's proposal to ensure that the subpoenaed material is kept confidential under the protective order entered in this case. *See* Ltr. to Eisha Jain, attached hereto as Exhibit A; *see also* D.E. 66 (protective order entered). Rather than take Mel Harris up on its offer to meet and confer, Plaintiffs have sought leave to quash all nine subpoenas two days before the return date. Plaintiffs offer no explanation as to why the protective order would be inadequate to safeguard the information. Instead, they brazenly suggest to the Court that Mel Harris has sought the credit information not to support their defense in this case but with an alleged ulterior plan to "unlawfully obtain and enforce default judgments on a mass scale." Pls. Ltr., p. 3 n. 4. This insinuation has no basis in fact and is flatly contradicted by Mel Harris's offer to limit their use of this information to this litigation, pursuant to the protective order.

It is ironic that although Plaintiffs' theory of the case is that only by *obtaining* the original credit records would Mel Harris have had reliable data upon which to file default judgments, Plaintiffs contend in their letter that Mel Harris may not, in litigation, obtain those records to show the Court that the information in the original credit records and the information upon which Mel Harris relied in its affidavits of merit was in fact the *same*. The reliability of the data Mel Harris used in preparing affidavits of merit – as compared to the original credit data – lies at the heart of this case. Plaintiffs cannot credibly argue that the original credit records are irrelevant when they are the benchmark against which Mel Harris's alleged false statements are measured.

Plaintiffs' allegations are replete with claims that Mel Harris obtained payments on debt to which it was not entitled, or for which its records allegedly were not satisfactory. For example:

- "[T]he Mel Harris and Leucadia Defendants . . . submit fraudulent and deceptive affidavits of merit to the court in order to obtain default judgments *to which they are not entitled*," TAC, ¶ 110 (emphasis added);

- "Plaintiffs and members of the putative class are substantially harmed when Defendants use the default judgments to freeze bank accounts, garnish their wages, and pressure them into making settlement agreements *on debts of dubious merit for which little or no documentation is available*," TAC, ¶ 111 (emphasis added);

- "[D]ebt buyers generally bring lawsuits based solely upon the skeletal 'media' obtained upon purchase of the account portfolio. *This 'media' is not sufficient to meet the debt buyer's burden of proof as the plaintiff in a lawsuit*," TAC, ¶ 47 (emphasis added).

The bank records Mel Harris seeks to obtain will show that in filing motions for default judgment, Mel Harris was relying on credit information transmitted seamlessly from accurate and admissible business records maintained by the original creditors whom Mel Harris has subpoenaed. These records thus address – among other issues – falsity, materiality, causation and damages. Mel Harris needs the original credit data to show (a) that it relied on information that was potentially admissible as a business record of the original creditor and thus was sufficient proof for a default judgment, (b) that any alleged misstatement in the affidavits of merit due to Mel Harris lacking the original credit data was immaterial because the information contained in the affidavits of merit was identical to that in the original credit data, and (c) that Mel Harris's reliance on the data it purchased could not have caused Plaintiffs' alleged injuries because the data accurately reflected debts that were owed. Thus, contrary to Plaintiffs' letter, Mel Harris does not seek these documents "in apparent recognition that they lacked the documentation necessary to support the claims contained in their fraudulent affidavits of merit." Pls.' Ltr, p. 2. Plaintiffs have it exactly backwards. Mel Harris has served the subpoenas to show that records kept by class members' original creditors *reflect the same information* as that reasonably relied on by Mel Harris in seeking default judgments. There can be no question that these records satisfy the "extremely broad concept" of relevance for purposes of discovery. *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008).

Against all of this, Plaintiffs selectively cite FDCPA decisions from other circuits in support of the overbroad proposition that whether a debt is actually owed never matters in an FDCPA claim.[1] Pls.' Ltr, p. 2. *First*, as explained above, the subpoenaed documents do not

---

[1] Plaintiffs quote the Court's ruling that "[t]he various claims of the named plaintiffs as to the validity or the existence of the underlying debts are not at issue here." Pls.' Ltr., p. 2 (*citing* Dkt. 123 at 30-31). As Mel Harris pointed out in its Objection to Plaintiffs' Class Certification Order, if the validity of the Plaintiffs' debts was not an
(footnote continued)

3

merely go to whether the debt is owed but also to the purported falsity and materiality of statements in the affidavits of merit. *Second*, that FDCPA liability can attach *in some instances* regardless of whether debt is owed is unremarkable: here, Plaintiffs do not merely seek statutory damages but also "actual damages" in the amount of moneys paid pursuant to default judgments. The FDCPA requires a plaintiff to show that his actual damages were sustained "as a result of" the alleged violation. 15 U.S.C. § 1692k(a)(1). For each class member seeking the return of moneys paid pursuant to judgments, Plaintiffs must prove that class members' payments were made "as a result of" the alleged misconduct and not because the class member actually owed a debt that must be paid regardless of the misconduct – an FDCPA violation cannot abrogate class members' debt contracts. *Hamid v. Stock & Grimes, LLP* does not hold otherwise. 876 F. Supp. 2d 500 (E.D. Pa. 2012) (returning plaintiff's payment to a debt collector of *time-barred* debt, which would not have been paid but for defendant's violation); *see also Lane v. Fein, Such and Crane, LLP,* 767 F.Supp. 2d 382, 389-90 (E.D.N.Y. 2011) (claim that a false statement violated the FDCPA must satisfy a materiality requirement). *Third,* even if FDCPA liability can sometimes attach regardless of whether a debt is owed, Plaintiffs simply gloss over their claims for the return of all judgment payments under RICO, N.Y. GBL and N.Y. Judiciary Law theories of liability, for which the question whether the debt is owed is paramount to issues of materiality and causation. *See, e.g., McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 226 (2d Cir. 2008) (RICO plaintiff must show that defendant's misrepresentations caused the plaintiff to suffer the economic loss complained of) *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *Pelman v. McDonald's Corp.,* 272 F.R.D. 82, 96 (S.D.N.Y. 2010) (N.Y. GBL plaintiff must show causal link between injury and the materially deceptive act); *Lazer Elec. Corp. v. Cecchi,* 97cv130 (DLC), 1997 WL 311925, at *6 (S.D.N.Y. June 10, 1997) (N.Y. Judiciary Law has a causation requirement).

As for the "host of other defects" in the subpoenas, even if Plaintiffs had standing to mount this challenge (they do not), they would be wrong. The third-parties have expressly requested that subpoenas be served upon them at the addresses used in the subpoenas. Mel Harris has complied with those requests and the third-parties have not objected. Nor do the subpoenas improperly request third-parties to "create documents that otherwise do not exist." Rather, the third-parties have been asked to produce *existing* data in a manageable format and in a manner that promises to reduce any burden they may have in complying with the subpoenas.

In sum, Mel Harris has informed Plaintiffs that it will ensure the protective order entered in this case will apply to the documents it has subpoenaed. Authority in this Court holds that the protective order satisfies the sole concern Plaintiffs may raise in connection with Mel Harris's subpoenas. Mel Harris respectfully submits that Plaintiffs, who have offered no explanation as to why the protective order does not adequately guard their privacy, should not be allowed to quash subpoenas calling for documents integral to Mel Harris's defense. However, if the Court believes that briefing on Plaintiffs' proposed motion would be appropriate, Mel Harris will agree to a temporary stay of the subpoenas to argue the motion.

---

issue at the time of the Court's decision on class certification, that was because only after the decision did Plaintiffs announce their intention to seek the return of all judgment payments regardless of whether the debts are owed, a theory of recovery Plaintiffs disclaimed in sworn discovery responses. *See* Dkt. 159, at pp. 2-7.

4

Sincerely,

*[signature]*

James R. Asperger

cc: Counsel of Record via e-mail