# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MONIQUE SYKES, *et al.*,** | |
| **Plaintiffs,** | 09 Civ. 8486 (DC) |
| **vs.** | |
| **MEL S. HARRIS AND ASSOCIATES, LLC, *et al.*,** | **STIPULATION OF SETTLEMENT AS TO CLAIMS AGAINST MEL HARRIS DEFENDANTS AND SAMSERV DEFENDANTS** |
| **Defendants.** | |

**STIPULATION OF SETTLEMENT**

WHEREAS, (i) Mel S. Harris and Associates, L.L.C., Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher (collectively the "Mel Harris Defendants") and (ii) Samserv Inc., William Mlotok, Benjamin Lamb, Michael Mosquera, and John Andino (collectively the "Samserv Defendants") were named as defendants in a class action brought by Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam on their own behalf and on behalf of Class Members; and

WHEREAS, Lead Plaintiffs allege that the Mel Harris Defendants, Samserv Defendants, and the other named defendants violated the FDCPA, RICO, the GBL and the NY Judiciary Law in connection with the collection of Consumer Debt from Class Members or attempts to collect Consumer Debt from Class Members, including obtaining Default Judgments against certain Class Members respecting the collection of such Consumer Debt; and

WHEREAS, this Settlement Agreement reflects the Parties' Settlement of all Claims of Class Members, subject to Court approval;

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by, between and among the undersigned, including Lead Plaintiffs (individually and in their representative capacity for the Classes), the Mel Harris Defendants, and Samserv Defendants, each through their respective duly authorized counsel, that the Action and the matters raised by it are hereby settled and compromised as to the Mel Harris Defendants and Samserv Defendants, that the Action will be dismissed on the merits and with prejudice as to the Mel Harris Defendants and Samserv Defendants, that the Released Class Members' Claims will be released, the Released Leucadia Claims will be released, the Released Samserv Claims will be released, and that the Released Releasees' Claims will be released based upon the terms and conditions set forth in this Settlement Agreement (including the Release), subject to the Court's approval and such approval becoming Final.

## I.    DEFINITIONS AND INCORPORATION BY REFERENCE

A.    As specified herein certain definitions and terms contained in the settlement agreement among Lead Plaintiffs (on behalf of both themselves and Class Members) and the Leucadia Defendants, dated as of March 18, 2015, attached hereto as Annex 1 (the "Original Leucadia Settlement Agreement"), as amended on November 12, 2015 by the first amendment to stipulation of settlement, attached hereto as Annex 2 (the "First Amendment" and together with the Original Leucadia Settlement Agreement, the "Leucadia Settlement Agreement"), are incorporated by reference.  The following

capitalized terms have the meanings ascribed to them in the Leucadia Settlement

Agreement:

      "Action"
      "Affiliate" or "Affiliated"
      "Business Day"
      "CAFA"
      "CAFA Notice"
      "Claim"
      "Classes"
      "Class Members"
      "Complaint"
      "Consumer Debt"
      "Consumer Debt Portfolios"
      "Controlling Interest"
      "Court"
      "Default Judgments"
      "FDCPA"
      "GBL"
      "Lead Plaintiffs"
      "Legal Holiday"
      "Leucadia Defendants"
      "LR Credit, LLC"
      "Nominal Restitution Declination"
      "Nominal Restitution Declination Deadline"
      "Nominal Restitution Relief"
      "Notice"
      "NY Judiciary Law"
      "Operative Facts"
      "Qualified Settlement Fund"
      "Released Class Members' Claims"
      "Releasor"
      "Request for Exclusion Deadline"
      "Rule 23(b)(2) Class"
      "Rule 23(b)(2) Injunction Only Beneficiaries"
      "Rule 23(b)(2) Injunction Only Releasor"
      "Rule 23(b)(2) Nominal Restitution Recipients"
      "Rule 23(b)(2) Nominal Restitution Releasor"
      "Rule 23(b)(3) Class"
      "Rule 23(b)(3) Releasors"
      "RICO"
      "Second Circuit"

"Service Award"
"Service Award Application"
"Subsidiary"

B.      As used in this Settlement Agreement, the following capitalized terms have the following meanings, unless provided otherwise in this Settlement Agreement:

1.      "Additional Settlement Payments" means Rushmore's share of any amounts LR Credit, LLC (or any of its Subsidiaries) receives after the Execution Date in connection with the collection of Consumer Debt from Class Members, if any.

2.      "Administration Expenses" means all fees, costs and expenses, including the fees of the Class Administrator and any fees, costs or expenses associated with vacatur of any Default Judgments and Notice Expenses not paid for under the Leucadia Settlement Agreement; *provided however*, that Administration Expenses shall not include any fees, costs or expenses regarding administration and/or implementation of this Settlement incurred by Samserv or Mel Harris' Defendants' Counsel, any other counsel of the Mel Harris Defendants or Samserv Defendants or any of the Mel Harris Defendants or Samserv Defendants' accountants regarding the administration and/or implementation of this Settlement other than those fees, costs and expenses incurred by the Mel Harris Defendants or Mel Harris' Defendants' Counsel or any other counsel of the Mel Harris Defendants at the request or direction of any court, tribunal, Office of Court Administration for the New York State Unified Court System or other New York governmental or judicial entity in connection with the Mel Harris Defendants' compliance with Section III.B.1.

3. "Allocation Plan" means the plan by which the Net Settlement Fund will be distributed, subject to Court approval, to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients; *provided* that Lead Plaintiffs will be solely responsible for developing the Allocation Plan, which proposed plan shall be submitted to the Court at the time the Settlement Agreement is submitted for preliminary approval.

4. "Approval Order" means the order to be submitted to the Court as contemplated in Section X.B of this Settlement Agreement, approving this Settlement and this Settlement Agreement and dismissing with prejudice all claims in the Action as to the Mel Harris Defendants and Samserv Defendants, which order shall be submitted substantially in the form set out in Exhibit B attached to the First Amendment.

5. "Attorneys' Fees and Expenses Application" means the motion(s) for fees and expenses to be made by Class Counsel pursuant to Section IV.A below which shall, to the extent feasible, be a single Attorneys' Fees and Expenses Application for both the instant Settlement Agreement and the Leucadia Settlement Agreement without needing to distinguish the amount of Attorneys' Fees and Expenses sought from each settlement.

6. "Attorneys' Fees and Expenses Award" means the amount(s) that the Court awards to Class Counsel to compensate them for their fees and expenses in connection with investigating the facts and circumstances of Lead Plaintiffs' claims and prosecuting and/or settling the Action, as provided for in Section IV below and which shall, to the extent feasible, be a single Attorneys' Fees and Expenses Award for both the instant Settlement Agreement and the Leucadia Settlement Agreement.

7.     "Claim Form" means the claim form or forms, as approved by the Court, that will be included as part of the Individual Notice provided to those potential Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients who may submit a claim for money pursuant to the Allocation Plan.  Such Claim Form shall, to the extent feasible, be the same as the Claim Form for the Leucadia Settlement Agreement.

8.     "Class Administrator" means, subject to Court approval, Epiq Systems, which the Court shall appoint in the Preliminary Approval Order to distribute the Individual Notice, cause the Publication Notice to be published, operate the settlement website, set up and run a toll-free telephone center to respond to inquiries from potential Class Members, receive requests for exclusion, receive and process Claim Forms, distribute the Net Settlement Fund in accordance with the terms of this Settlement Agreement, and otherwise administer the terms of this Settlement Agreement.  The same Class Administrator shall also be appointed to administer the Leucadia Settlement Agreement.

9.     "Class Counsel" means Emery Celli Brinckerhoff & Abady LLP, New Economy Project and MFY Legal Services, Inc.

10.     "Class Settlement Account" means an  account to be maintained by the Class Administrator (*i*) into which the Mel Harris Settlement Amount, the Additional Settlement Payment, and the Samserv Settlement Amount will be deposited and from which Administration Expenses, Mel Harris Tax Expenses, Samserv Tax Expenses, Service Awards and the Attorneys' Fees and Expenses Award shall be paid and (*ii*) in which the Net Settlement Fund shall be held until it is distributed to eligible Rule 23(b)(3)

Class Members and Rule 23(b)(2) Nominal Restitution Recipients; *provided* that, where appropriate, such account shall be treated for tax purposes as a Qualified Settlement Fund; *provided further* that the Mel Harris Defendants and Samserv Defendants shall not have any interest in, dominion or control over, or claim on the amounts held in the Class Settlement Account except as specified herein. Such Class Settlement Account shall bear interest until such time after the Final Settlement Date as the money is transferred to a checking account to be distributed to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients pursuant to such Allocation Plan as the Court approves. The Mel Harris Defendants shall be entitled to any accrued interest on Mel Harris Individuals' Contribution from the time the Mel Harris Individuals' Contribution is deposited in the Class Settlement Account until the Final Settlement Date; such interest shall be transferred to the Mel Harris Defendants, on a quarterly basis, as directed by the Mel Harris Defendants. All other accrued interest shall be added to the Class Settlement Account. Such Class Settlement Account shall also include the Settlement Fund Balance from the Leucadia Settlement Agreement, if feasible.

11. "Complete Bar Order" means that portion of the Approval Order, the text of which shall be substantially in the form set out in Paragraph 26 of Exhibit B attached to the First Amendment, that the Settling Parties shall ask the Court to enter and that is an essential term of this Settlement Agreement.

12. "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

13.     "Fairness Hearing" means the hearing at which the Court will be asked to make a decision, pursuant to Fed. R. Civ. P. Rule 23, as to whether this Settlement is fair, reasonable and adequate to settle the Class Members' Claims against the Mel Harris Defendants, Samserv Defendants, and the other Releasees, and whether the Court should approve the proposed Settlement as set out in this Settlement Agreement.  To the extent feasible, such Fairness Hearing shall be the same as the Fairness Hearing contemplated in the Leucadia Settlement Agreement.

14.     "Final" means, when used in connection with any Court judgment or order (including any order approving this Settlement or any order approving this Settlement on appeal), that the judgment or order shall be final:

a.     if no appeal is taken, on the date on which the time to appeal from the judgment or order (including any extension of time) has expired; or

b.     if any appeal is taken from the order and judgment, the date on which all appeals therefrom – including any petitions for rehearing en banc, petitions for certiorari or any other form of review and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired and all appeals have been exhausted in a manner resulting in an affirmance of the relevant judgment or order.

15.     "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

16.     "Individual Notice" means the notices described in Section III.D.1 of this Settlement Agreement and in the Preliminary Approval Order (or any other order of

the Court), as approved by the Court.  Such Individual Notice shall, to the extent feasible, also provide notice of the Leucadia Settlement Agreement.

17. "Insurance Payments" means collectively the Mel Harris Insurance Payment and the Samserv Insurance Payment.

18. "Judgment" means the judgment to be submitted to the Court as contemplated in Section X.B of this Settlement Agreement, which judgment shall be substantially in the form set out in Exhibit C attached to the First Amendment.

19. "Leucadia Released Party" means each and every one of, and "Leucadia Released Parties" mean all of, the Leucadia Defendants and for each of the foregoing Leucadia Released Parties, (*x*) the Leucadia Released Party's agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest and insurance carriers, (*y*) to the extent the foregoing Leucadia Released Party is an entity, each of such Leucadia Released Party's past and present officers, directors, employees, officials, members, principals, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers and (*z*) to the extent the foregoing Leucadia Released Party is a person, each of such Leucadia Released Party's estates, heirs, executors, beneficiaries, trusts and trustees.

20. "LR Credit" means LR Credit, LLC, and each and all of (*i*) its parents, predecessors, successors and members, (*ii*) its current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns and (*iii*) all other entities in which LR Credit has or had a Controlling Interest

or that have or had a Controlling Interest in LR Credit, including, without limitation, the Subsidiaries.

21.     "Mediator" means a mediator approved by the Lead Plaintiffs and the Mel Harris Defendants.

22.     "Mel Harris Defendants" has the meaning set forth in the Recitals.

23.     "Mel Harris Defendants' Counsel" means the law firms of Quinn Emanuel Urquhart & Sullivan, LLP and Kaufman Dolowich & Voluck, LLP.

24.     "Mel Harris Firm" means the law firm of Mel S. Harris and Associates, L.L.C.

25.     "Mel Harris Individuals' Contribution" means the amount of $6,000,000 (six million dollars) paid by the Mel Harris Defendants.

26.     "Mel Harris Insurance Payment" means an amount equal to $1,975,000 (one million nine hundred seventy five thousand dollars) paid by the Mel Harris Insurer.

27.     "Mel Harris Insurer" means First Mercury Insurance Company.

28.     "Mel Harris Settlement Amount" means the amount of $7,975,000 (seven million nine hundred seventy five thousand dollars), consisting of the Mel Harris Individuals' Contribution and the Mel Harris Insurance Payment.

29.     "Mel Harris Tax Expenses" means (*i*) all taxes on any interest accrued on the monies in the Class Settlement Account after the Final Settlement Date as well as any interest accrued on the Mel Harris Insurance Payment after it is transferred to the Class Administrator and (*ii*) any expenses and costs incurred in connection with the

taxation of such interest (including expenses of tax attorneys and accountants).  For the

avoidance of doubt, Mel Harris Tax Expenses shall not mean the taxes on any accrued

interest on Mel Harris Individuals' Contribution from the time the Mel Harris Individuals'

Contribution is deposited in the Class Settlement Account until the Final Settlement Date

or any expenses and costs incurred in connection with the taxation of such accrued interest,

and such taxes, expenses, and costs shall be the sole responsibility of the Mel Harris

Defendants.

        30.    "Net Settlement Fund" means the balance in the Class Settlement

Account after payment (pursuant to the terms of this Settlement Agreement) of

Administration Expenses, Mel Harris Tax Expenses, Samserv Tax Expenses, Service

Awards and the Attorneys' Fees and Expenses Award.

        31.    "New York State Court" means any court within the New York

State Unified Court System including, but not limited to, any Supreme Court, Civil Court,

Small Claims Court, County Court, City Court, District Court, Town & Village Court,

Appellate Court, or any court of original instance.

        32.    "Notice Expenses" means all fees, costs and expenses associated

with providing Notice pursuant to Section III.D and the Preliminary Approval Order or any

other order of the Court which are not paid for under the Leucadia Settlement Agreement.

        33.    "Objection Deadline" means the date by which objections to this

Settlement described in this Settlement Agreement must be submitted to the Class

Administrator as set out in the Preliminary Approval Order or any other order of the Court.

34.    "Preliminary Approval Order" means the order to be submitted to the Court that, among other things, authorizes that notice be provided to putative Class Members, authorizes retention of the Class Administrator and schedules the Fairness Hearing, which order shall be submitted substantially in the form set out in Exhibit A attached to the First Amendment.

35.    "Publication Notice" means the notice described in Section III.D.2 of this Settlement Agreement and in the Preliminary Approval Order (or any other order of the Court), as approved by the Court.  Such Publication Notice shall, to the extent feasible, also provide notice of the Leucadia Settlement Agreement.

36.    "Release" means the Rule 23(b)(3) Release, the Rule 23(b)(2) Injunction Only Release, the Rule 23(b)(2) Nominal Restitution Release, this Settlement Release and the Releasees' Release as forth in Section III.H.

37.    "Released Class Members' Settlement Claims" means each and every Claim that one or more of the Lead Plaintiffs, any other Rule 23(b)(2) Class Member or any other Rule 23(b)(3) Class Member have asserted, could have asserted or could assert against any of the Releasees (including Mel Harris Defendants and Samserv Defendants' Counsel) or any Releasor (including Class Counsel) under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to any acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the prosecution, defense or settlement of the Action or the

implementation of this Settlement Agreement, including (without limitation) (*i*) the

provision of Notice, (*ii*) the amount distributed to Rule 23(b)(3) Class Members and Rule

23(b)(2) Nominal Restitution Recipients in connection with this Settlement and (*iii*) any

tax consequence to any Class Member resulting from or arising out of this Settlement.

"Released Mel Harris Defendants' Claims Against Samserv" means each and every Claim

that one or more of the Mel Harris Defendants, or any of the foregoing's respective estates,

heirs, executors, agents, attorneys (including in-house counsel, outside counsel and the Mel

Harris Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts,

trustees, administrators and assigns might have against any or all of the Samserv

Defendants or any other Releasee for indemnification, contribution or payment of

attorneys' fees.

        38.    "Released Releasees' Claims" means each and every Claim that one

or more of the Mel Harris Defendants or Samserv Defendants, any other Releasee or any of

the foregoing's respective estates, heirs, executors, agents, attorneys (including in-house

counsel, outside counsel and Mel Harris Defendants' Counsel and Samserv Defendants'

Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators

and assigns have asserted, could have asserted or could assert against Lead Plaintiffs, any

other Class Member or any of their respective attorneys (including, without limitation,

Class Counsel) or any Releasee or any Leucadia Released Parties under any national, state,

territorial, or other local law of the United States or of any other country, or any principle

of federal or common law, in any court, tribunal, agency or other forum, that arises out of

or relates in any way to any acts, omissions, nondisclosures, facts, matters, transactions,

occurrences, or oral or written statements or representations in connection with, or directly

or indirectly relating to, the initiation, prosecution, or settlement of the Action or the

implementation of this Settlement and this Settlement Agreement, including, without

limitation, any Claim that the Mel Harris Defendants or any other Releasee might have

against any or all of the Leucadia Defendants for indemnification, contribution or payment

of attorneys' fees or based upon the facts and/or allegations that gave rise to the Action.

39.     "Released Rule 23(b)(3) Class Members' Claims" means each and

every Claim that one or more of the Lead Plaintiffs or any other Rule 23(b)(3) Class

Member (*i*) asserted in the Action against any of the Releasees as of, on or before the Final

Settlement Date (including all claims alleged in the Complaint or in earlier complaints

filed in the Action) or (*ii*) could have asserted or could assert against any of the Releasees

as of, on or before the Final Settlement Date, under any national, state, territorial, or other

local law of the United States or of any other country, or any principle of federal or

common law, in any court, tribunal, agency or other forum, that arises out of or relates in

any way to the Operative Facts alleged in the Action regarding (*a*) the Default Judgments,

(*b*) the purchase of Consumer Debt owed or alleged to be owed by any Rule 23(b)(3) Class

Member, (*c*) the collection of (through Default Judgment or otherwise) or attempts to

collect Consumer Debt from any Rule 23(b)(3) Class Member or (*d*) the payment in total

or in part of any Consumer Debt by any Rule 23(b)(3) Class Member.  Without limiting

the generality of the foregoing, Released Rule 23(b)(3) Class Members' Claims shall

specifically include, without limitation, Claims arising out of the Operative Facts alleged

in the Action respecting:

a.    the procurement of a Default Judgment against any Rule 23(b)(3) Class Member by or on behalf of any Releasee;

b.    any costs incurred by any Rule 23(b)(3) Class Member in (*i*) defending any action in connection with the collection of or attempts to collect Consumer Debt or (*ii*) challenging any Default Judgment entered against the Rule 23(b)(3) Class Member, including (without limitation) copying costs, travel costs, costs arising out of the time spent in defending any action or challenging any Default Judgment (including lost wages of the Rule 23(b)(3) Class Member and/or of his or her family member(s)), court-related costs, attorneys' fees or expenses;

c.    any bank costs (including bounced-check fees or legal process fees) and/or costs arising from the use of check-cashing services incurred by a Rule 23(b)(3) Class Member arising from or related to the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

d.    the loss of the use of any funds or ability to use a bank account for any period of time allegedly arising from or related to the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including (without limitation) the freezing of any bank account or the delayed receipt of any funds (including unemployment, Social Security or other benefits) by a Rule 23(b)(3) Class Member;

e.    any costs associates with any loan(s) (including interest costs) that a Rule 23(b)(3) Class Member allegedly had to take as a result of the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

15

f.      the allegedly forced use of a government credit and/or debit card or of money orders for financial transactions and any fees and expenses associated with such use as a result of the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

g.      any adverse effect on a Rule 23(b)(3) Class Member's credit rating or report relating to the entry of a Default Judgment or the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

h.      any adverse effect allegedly arising out of a credit rating or report negatively affected by the entry of a Default Judgment or the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including (without limitation) an adverse effect on the Rule 23(b)(3) Class Member's ability to find housing or employment;

i.      any emotional distress experienced by a Rule 23(b)(3) Class Member arising out of the entry of a Default Judgment or the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including any alleged pressure on a Rule 23(b)(3) Class Member to enter into a settlement agreement (including but not limited to a payment plan) in connection with a Consumer Debt;

j.      any statement(s) or omission(s) by or on behalf of any Releasee in connection with the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member, including (without limitation) any statement(s) or omission(s) in any complaint, petition, affidavit of

16

merit and/or affidavit of service filed with any New York State Court in support of the collection of or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member;

k.      service of process, including (without limitation) allegations of defective service of process, in connection with the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member;

l.      use of process in connection with the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member, including (without limitation) execution on any Default Judgment;

m.      payment(s) by any Rule 23(b)(3) Class Member of any Consumer Debt allegedly in excess of the amount owed by such Rule 23(b)(3) Class Member;

n.      payment(s) by any Rule 23(b)(3) Class Member of any Consumer Debt allegedly not owed by such Rule 23(b)(3) Class Member;

o.      the calculation of, attempt to collect and/or collection of any interest, attorneys' fees and/or expenses respecting Consumer Debt owed or alleged to be owed by any Rule 23(b)(3) Class Member; and

p.      any other adverse effect or consequential damages allegedly borne by any Rule 23(b)(3) Class Member arising out of the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including (without limitation) a loss or threatened loss of employment or a loss or threatened loss of housing;

17

*provided however,* that Released Rule 23(b)(3) Class Members' Claims shall not include

any Claim that any Rule 23(b)(3) Class Member or any other Rule 23(b)(3) Releasor has as

to Rushmore and/or one or more of the Mel Harris Defendants or Samserv Defendants

arising out of any debt portfolio(s) owned in whole or in part by Rushmore and/or one or

more of the Mel Harris Defendants, but in which the Leucadia Defendants have no

financial interest.

40.    "Released Rule 23(b)(2) Class Members' Injunction Only Claims"

means each and every Claim that Lead Plaintiffs or any other Rule 23(b)(2) Members have

as of, on or before the Final Settlement Date for injunctive relief or ancillary non-monetary

equitable relief attendant to such injunctive relief that any Rule 23(b)(2) Class Member

(*i*) asserted in the Action against any of the Releasees (including all claims alleged in the

Complaint or in earlier complaints filed in the Action) or (*ii*) could have asserted or could

assert against any of the Releasees, under any national, state, territorial, or other local law

of the United States or of any other country, or any principle of federal or common law, in

any court, tribunal, agency or other forum, that arises out of or relates in any way to the

Operative Facts alleged in the Action regarding (*x*) the purchase of Consumer Debt owed

or alleged to be owed by any Rule 23(b)(2) Class Member, (*y*) attempts to collect (pursuant

to Default Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class Member

and (*z*) Default Judgments or attempts to obtain any default judgments.  Without limiting

the generality of the foregoing, Released Rule 23(b)(2) Class Members' Injunction Only

Claims shall specifically include, without limitation, Claims for injunctive relief or

ancillary non-monetary equitable relief attendant to such injunctive relief arising out of the

Operative Facts alleged in the Action respecting:

a.      the procurement of a Default Judgment against any Rule

23(b)(2) Injunction Only Beneficiary by or on behalf of any Releasee;

b.      any statement(s) or omission(s) by or on behalf of any

Releasee in connection with attempts to collect (pursuant to Default Judgment or

otherwise) Consumer Debt from any Rule 23(b)(2) Class Member, including (without

limitation) any statement(s) or omission(s) in any affidavit of merit and/or affidavit of

service filed with any New York State Court in support of attempts to collect (pursuant to

Default Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class Member;

c.      service of process, including (without limitation) allegations

of defective service of process, in connection with attempts to collect (pursuant to Default

Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class Member;

d.      use of process in connection with attempts to collect

(pursuant to Default Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class

Member, including (without limitation) execution on any Default Judgment;

e.      attempts to collect from any Rule 23(b)(2) Class Member

(pursuant to Default Judgment or otherwise) any Consumer Debt allegedly in excess of the

amount owed by such Rule 23(b)(2) Class Member;

f.      attempts to collect from any Rule 23(b)(2) Class Member

(pursuant to Default Judgment or otherwise) any Consumer Debt that was allegedly not

owed by such Rule 23(b)(2) Class Member; and

g.      the calculation of and/or attempt to collect any interest, attorneys' fees and/or expenses (pursuant to Default Judgment or otherwise) respecting Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Class Member; *provided however*, that Released Rule 23(b)(2) Class Members' Injunction Only Claims shall not include any Claim for injunctive relief or ancillary non-monetary equitable relief attendant to such injunctive relief that any Rule 23(b)(2) Class Member or any other Rule 23(b)(2) Releasor has as to Rushmore and/or one or more of the Mel Harris Defendants or Samserv Defendants arising out of any debt portfolio(s) owned in whole or in part by Rushmore and/or one or more of the Mel Harris Defendants, but in which the Leucadia Defendants have no financial interest.

41.     "Released Rule 23(b)(2) Class Members' Nominal Restitution Claims" means  each and every Claim that one or more Rule 23(b)(2) Nominal Restitution Recipients (*i*) asserted in the Action against any of the Releasees as of, on or before the Final Settlement Date (including all claims alleged in the Complaint or in earlier complaints filed in the Action) or (*ii*) could have asserted or could assert against any of the Releasees as of, on or before the Final Settlement Date, under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to the Operative Facts alleged in the Action regarding (*a*) attempts to obtain any default judgments, (*b*) the purchase of Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Nominal Restitution Recipients, (*c*) the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient

or (*d*) the payment in total or in part of any Consumer Debt by any Rule 23(b)(2) Nominal Restitution Recipient.  Without limiting the generality of the foregoing, Released Rule 23(b)(2) Class Members' Nominal Restitution Claims shall specifically include, without limitation, Claims arising out of the Operative Facts alleged in the Action respecting:

      a.    any attempt to procure a Default Judgment against any Rule 23(b)(2) Nominal Restitution Recipient by or on behalf of any Releasee;

      b.    any costs incurred by any Rule 23(b)(2) Nominal Restitution Recipient defending any action (including one for default judgment) in connection with the collection of or attempts to collect Consumer Debt, including (without limitation) copying costs, travel costs, costs arising out of the time spent in defending any action (including lost wages of the Rule 23(b)(2) Nominal Restitution Recipient and/or of his or her family member(s)), court-related costs, attorneys' fees or expenses;

      c.    any bank costs (including bounced-check fees or legal process fees) and/or costs arising from the use of check-cashing services incurred by a Rule 23(b)(2) Nominal Restitution Recipient arising from or related to the collection of or attempts to collect Consumer Debt;

      d.    any costs associates with any loan(s) (including interest costs) that a Rule 23(b)(2) Nominal Restitution Recipient allegedly had to take as a result of the collection of or attempts to collect Consumer Debt;

      e.    the allegedly forced use of a government credit and/or debit card or of money orders for financial transactions and any fees and expenses associated with such use as a result of the collection of or attempts to collect Consumer Debt;

21

f.      any adverse effect on a Rule 23(b)(2) Nominal Restitution Recipient's credit rating or report relating to the collection of or attempts to collect Consumer Debt;

g.      any adverse effect allegedly arising out of a credit rating or report negatively affected by the collection of or attempts to collect Consumer Debt, including (without limitation) an adverse effect on the Rule 23(b)(2) Nominal Restitution Recipient's ability to find housing or employment;

h.      any emotional distress experienced by a Rule 23(b)(2) Nominal Restitution Recipient arising out of collection of or attempts to collect Consumer Debt, including any alleged pressure on a Rule 23(b)(2) Nominal Restitution Recipient to enter into a settlement agreement (including but not limited to a payment plan) in connection with a Consumer Debt;

i.      any statement(s) or omission(s) by or on behalf of any Releasee in connection with the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient, including (without limitation) any statement(s) or omission(s) in any complaint, petition, affidavit of merit and/or affidavit of service filed with any New York State Court in support of the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient;

j.      service of process, including (without limitation) allegations of defective service of process, in connection with the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient;

k.      use of process in connection with the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient;

l.      payment(s) by any Rule 23(b)(2) Nominal Restitution Recipient of any Consumer Debt allegedly in excess of the amount owed by such Rule 23(b)(2) Nominal Restitution Recipient;

m.      payment(s) of by any Rule 23(b)(2) Nominal Restitution Recipient of any Consumer Debt allegedly not owed by such Rule 23(b)(2) Nominal Restitution Recipient;

n.      the calculation of, attempt to collect and/or collection of any interest, attorneys' fees and/or expenses respecting Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Nominal Restitution Recipient; and

o.      any other adverse effect or consequential damages allegedly borne by any Rule 23(b)(2) Nominal Restitution Recipient arising out of the collection of or attempts to collect Consumer Debt, including (without limitation) a loss or threatened loss of employment or a loss or threatened loss of housing;

*provided however,* that Released Rule 23(b)(2) Class Members' Nominal Restitution Claims shall not include any Claim that any Rule 23(b)(2) Nominal Restitution Recipient or any other Rule 23(b)(2) Nominal Restitution Releasor has as to Rushmore and/or one or more of the Mel Harris Defendants or Samserv Defendants arising out of any debt portfolio(s) owned in whole or in part by Rushmore and/or one or more of the Mel Harris Defendants, but in which the Leucadia Defendants have no financial interest.

42.     Released Samserv Claims" means each and every Claim that one or more of the Samserv Defendants, or any of the foregoing's respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel and the Samserv Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators and assigns might have against any or all of the Mel Harris Defendants or any other Releasee for indemnification, contribution or payment of attorneys' fees.

43.     "Releasee" means each and every one of, and "Releasees" mean all of, the Mel Harris Defendants, Rushmore, and Samserv Defendants and for each of the foregoing Releasees, (*x*) the Releasee's agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest and insurance carriers, (*y*) to the extent the foregoing Releasee is an entity, each of such Releasee's past and present officers, directors, employees, officials, members, principals, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers and (*z*) to the extent the foregoing Releasee is a person, each of such Releasee's estates, heirs, executors, beneficiaries, trusts and trustees.

44.     "Releasees' Release" means that portion of the Release as set out in Section III.H.1.d.

45.     "Rule 23(b)(2) Injunction Only Release" means that portion of the Release as set out in Section III.H.1.c.

46.     "Rule 23(b)(2) Nominal Restitution Release" means that portion of the Release as set out in Section III.H.1.b.

47.     "Rule 23(b)(3) Release" means that portion of the Release as set out in Section III.H.1.a.

48.     "Rushmore" means Rushmore Recovery Management LLC, a limited liability company formed pursuant to the March 27, 2003 Operating Agreement Rushmore Recovery Management, LLC.

49.     "Samserv Defendants" has the meaning in the Recitals.

50.      "Samserv Defendants' Counsel" means Babchick & Young LLP.

51.     "Samserv Insurance Payment" mean an amount equal to $475,000 (four hundred seventy-five thousand dollars) paid by Samserv Insurer.

52.     "Samserv Insurer" means Philadelphia Insurance Companies.

53.     "Samserv Settlement Amount" means $42,500 to be paid by the Samserv Defendants plus the Samserv Insurance Payment.

54.     "Samserv Tax Expenses" means all taxes on any interest accrued on the monies in the Class Settlement Account and any expenses and costs incurred in connection with the taxation of the amount held in the Class Settlement Account (including expenses of tax attorneys and accountants).

55.     "Settlement" means the settlement terms, conditions and other provisions memorialized in this Settlement Agreement.

56.     "Settlement Agreement" means this Stipulation of Settlement, including any subsequent written amendments to this Stipulation of Settlement and the Exhibits attached thereto, including any subsequent written amendments to this Stipulation of Settlement and/or its Exhibits.

57.      "Settlement Counsel" means Class Counsel, Mel Harris Defendants'
Counsel, and Samserv Defendants' Counsel.

58.      "Settling Parties" means Lead Plaintiffs (on behalf of themselves
and the Class Members), the Mel Harris Defendants, and Samserv Defendants.

59.      "Settlement Release" means that portion of the Release as set out in
Sections III.H.1.a(2), III.H.1.b(2) and III.H.1.c(2).

60.      "Termination Date" means that date on which any of the Settling
Parties provides notice that he, she or it is exercising a right to terminate this Settlement
Agreement under Section XII.D of this Settlement Agreement.

61.      "Unknown Claim" means any and all (*i*) Released Rule 23(b)(3)
Class Members' Claims that any Rule 23(b)(3) Releasor does not know or suspect exist
with respect to one or more Releasees at the time of the release of the Releasees,
(*ii*) Released Rule 23(b)(2) Class Members' Injunction Only Claims that any Rule 23(b)(2)
Injunction Only Releasor does not know or suspect exist with respect to one or more
Releasees at the time of the release of the Releasees, (*iii*) Released Rule 23(b)(2) Class
Members' Nominal Restitution Claims that any Rule 23(b)(2) Nominal Restitution
Releasor does not know or suspect exist with respect to one or more Releasees at the time
of the release of the Releasees, (*iv*) Released Class Members' Settlement Claims that any
Releasor does not know or suspect exist with respect to one or more Releasees or any other
Releasor at the time of the release of the Releasees and Releasors and (*v*) Released
Releasees' Claims that any Releasee does not know or suspect exist with respect to one or
more Releasors or any other Releasee at the time of the release of the Releasors and

Releasees, which, if known by such Releasee or Releasor (as the case may be), might have

affected his, her or its decision(s) concerning the Settlement Agreement.  As to any and all

Released Rule 23(b)(3) Class Members' Claims, Released Rule 23(b)(2) Class Members'

Injunction Only Claims, Released Rule 23(b)(2) Class Members' Nominal Restitution

Claims, Released Class Members' Settlement Claims and Released Releasees' Claims,

each of the Settling Parties and Settlement Counsel stipulate and agree that, upon the Final

Settlement Date, they shall expressly waive, and each other Class Member, Releasee and

Releasor shall be deemed to have waived, and by operation of the Approval Order and the

Judgment shall have expressly waived, any and all provisions, rights and benefits

conferred by any national, state, territorial, or other local law of the United States or of any

other country, or any principle of federal or common law, that is similar, comparable, or

equivalent to California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor
> at the time of executing the release, which if known by him
> or her must have materially affected his or her settlement
> with the debtor.

The Settling Parties and Settlement Counsel acknowledge, and all other Class Members,

Releasees and Releasors by operation of law shall be deemed to have acknowledged, that

the inclusion of Unknown Claims in the Claims released pursuant to this Settlement

Agreement was separately bargained for and is a key element of this Settlement

Agreement.

C.      Capitalized terms used in this Settlement Agreement but not defined above shall have the meanings ascribed to them in this Settlement Agreement or, as specified, the Leucadia Settlement Agreement.

## II.     BACKGROUND

A.      Sections II.A (Initial Court Proceedings), II.B (Mediation), and II.C (The Court's Class Certification Order) of the Leucadia Settlement Agreement are hereby incorporated by reference.

B.      **Mediation Before Magistrate Judge Ellis**

1.      In December 2015, the Settling Parties recommenced settlement negotiations.  On March 18, 2015, at the request of the Settling Parties, the Court referred the Action to Magistrate Judge Ronald L. Ellis for settlement purposes.

2.      Between March 18, 2015 and September 11, 2015, the Settling Parties participated in multiple in-person and telephonic settlement conferences before Judge Ellis and submitted letters setting out their respective positions.  On September 18, 2015, the parties reached an agreement in principle to settle the Action.

C.      **Discovery and Information Exchange**

1.      Substantial discovery had been conducted by the Settling Parties in the Action before execution of the Settlement Agreement, including the production of over 500,000 pages of documents by the defendants and the production of over 5,000 pages of documents by Lead Plaintiffs.

2.      Both Lead Plaintiffs and the defendants have served and responded to written interrogatories.

3.    In addition, 14 depositions have been taken, including depositions of five (5) representatives of the Samserv Defendants and two (2) representatives of the Mel Harris Defendants.  The Mel Harris Firm-related individuals who have been deposed were among the most knowledgeable individuals regarding the Mel Harris' Defendants' involvement in the purchase and collection of Consumer Debt.

4.    The named plaintiffs also have been deposed.

5.    In addition, the Leucadia Defendants also provided Lead Plaintiffs with certain factual information regarding the Default Judgments, as well as certain other factual data regarding Class Members that Lead Plaintiffs deemed necessary to allow them to develop the Allocation Plan.

D.    **Experts**

1.    Throughout the pendency of the Action, including during the mediation and settlement negotiations, Lead Plaintiffs and the Defendants have been advised by various consultants and experts, including individuals with expertise in consumer protection and consumer finance issues.

E.    **Settlement Considerations**

1.    Based upon Class Counsel's investigation and evaluation of the facts and law relating to the Claims alleged in the Action, Class Counsel's pre- and post-filing investigations, Class Counsel's consultation with experts, the discovery that has been conducted in the Action, and the factual and legal information that has been provided to Class Counsel by the Leucadia Defendants, the Mel Harris Defendants, and the Samserv Defendants, Lead Plaintiffs have agreed on behalf of themselves and Class Members to

settle the Action as to all defendants and release the Releasees as to the Released Class

Members' Claims pursuant to the terms of the Settlement Agreement after considering,

among other things: (*i*) the substantial benefits that the terms of the Settlement Agreement

will provide to Class Members, (*ii*) the attendant risks of litigation, especially in complex

consumer actions such as this one, and the risks of judgment collection, (*iii*) the defenses

available to the Samserv Defendants and Mel Harris Defendants (including whether the

Court would have subject matter jurisdiction to address certain of Class Members' claims),

(*iv*) the ability to maintain one or more certified classes through trial, (*v*) the difficulties

and delays inherent in litigation, (*vi*) sessions with the Mediator and with Magistrate Judge

Ellis, (*vii*) the desirability of consummating the Settlement Agreement promptly to provide

effective relief to Class Members, (*viii*) the new rules recently adopted by the New York

Court System regarding the process to be used in consumer debt collection cases in New

York State Courts, (*ix*) the ability to expand the settlement Classes to include individuals

who were subject to debt collection efforts by the Leucadia Defendants and the Mel Harris

Defendants throughout New York State and not just in New York City and (*x*) Lead

Plaintiffs' and Class Counsel's belief that the proposed Settlement is fair, reasonable and

adequate and in the best interests of Class Members.

        2.     Although the Mel Harris Defendants and Samserv Defendants

expressly deny any of the wrongdoing as alleged in the Action or in connection with the

purchase or collection of Consumer Debt, and do not concede any wrongdoing or liability

in connection with the facts or Claims that have been, could have been or could be asserted

in the Action, they consider it desirable to settle the Action and have the claims against

them dismissed with prejudice because the proposed Settlement would, among other things:  (*i*) bring to an end the expenses, burdens and uncertainties associated with continued litigation of the Claims asserted in the Action, (*ii*) finally put to rest those Claims and the underlying matters and (*iii*) confer benefits upon them, including the further avoidance of disruption of their businesses and lives due to the pendency and defense of the Action.

**III.    TERMS AND CONDITIONS OF THE SETTLEMENT**

    A.    **Settlement Fund**

        1.    **Creation of Settlement Fund**

            a.    Within fifteen (15) calendar Days following the Execution Date, Class Counsel shall provide to the Mel Harris Defendants in writing the account information for the Class Settlement Account, including wiring instructions.  Within fifteen (15) Business Days following the Preliminary Approval Order, the Mel Harris Defendants will contribute or cause to be contributed to the Class Settlement Account $5,000,000 (five million dollars).

            b.    Within fifteen (15) Business Days following the close of each month (starting with the first month after the Execution Date) until the Final Settlement Date, the Mel Harris Defendants will deposit or cause to be deposited in the Class Settlement Account any and all Additional Settlement Payments.  Within thirty-five (35) calendar days following the Execution Date, (i) the Mel Harris Insurer is required to contribute the Mel Harris Insurance Payment to the Class Settlement Account, (ii) the Mel Harris Defendants will contribute or cause to be contributed to the Class Settlement

Account $1,000,000 (one million dollars); (iii) the Samserv Insurer will contribute the Samserv Insurance Payment to the Class Settlement Account; (iv) and the Samserv Defendants will contribute or cause to be contributed 42,500 to the Class Settlement Account.

        c.      If the Leucadia Settlement Agreement terminates, the Mel Harris Defendants and the Samserv Defendants agree that Class Counsel may seek Court approval to delay distributing the Net Settlement Fund to the Classes until there is a Final resolution of claims in the Action as to the Leucadia Defendants, whether by settlement, court adjudication, or alternative dispute resolution procedure.

        d.      Once the Final Settlement Date has occurred, no portion of the Settlement Fund will revert to any of the Samserv Defendants or Mel Harris Defendants, subject to Section XII.B.3.

        2.      **Treatment of Class Settlement Account as Qualified Settlement Fund**

        a.      All necessary steps to enable the Class Settlement Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the filing by Class Counsel and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years in which the Class Settlement Account is in existence, beginning with the date of its establishment.  The Class Administrator shall be the "administrator" of the Qualified Settlement Fund(s) for tax purposes under Treas. Reg. §§ 1.468B-0 through

1.468B-5, shall file or cause to be filed on a timely basis any required federal, state and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund to be paid from the Class Settlement Account.  The Settling Parties agree that the Class Settlement Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Class Settlement Account as a Qualified Settlement Fund from the earliest date possible.  In no event shall any of the Mel Harris Defendants or Samserv Defendants have any responsibility whatsoever for filing elections or other required statements, or tax returns, or for paying costs associated therewith, any taxes due, or the expenses of notice or administration of the Class Settlement Account.  Class Counsel and the Mel Harris Defendants shall cooperate to the extent necessary to comply with this Section III.A.3.  The Mel Harris Defendants and Samserv Defendants agree to provide or cause to be provided promptly to Class Counsel the statement described in Treas. Reg. §1.468B-3(e).

b.    Upon reasonable request by the Mel Harris Defendants and Samserv Defendants, Class Counsel shall make best efforts promptly to provide to the Mel Harris Defendants and Samserv Defendants all information reasonably available to Class Counsel and requested in connection with any tax returns that one or more of the Mel Harris Defendants or the Samserv Defendants must file or any other report or filing that the Mel Harris Defendants, Samserv Defendants or any other Releasee must make concerning the Settlement Fund or any portion of it.

33

c.      The Class Administrator may issue any required tax documents concerning interest earned on the Mel Harris Individuals' Contribution prior to the Final Settlement Date in accordance with any direction the Mel Harris Defendants have provided to the Class Administrator as to where to transfer such interest.

3.      **Distribution of the Net Settlement Fund**

a.      If approval of the proposed Settlement becomes Final, the Net Settlement Fund shall be distributed pursuant to such Allocation Plan as the Court approves.

b.      No person or entity shall have any Claim against Lead Plaintiffs, Class Counsel, the Class Administrator, any of the foregoing's agents or any Releasee (including the Mel Harris Defendants and Samserv Defendants and Mel Harris Defendants and Samserv Defendants' Counsel) relating to or arising out of any distributions or lack thereof made under any Court-approved Allocation Plan, this Settlement Agreement, or orders of the Court.

c.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a Court-ordered or Court-approved change to the Allocation Plan as proposed by Lead Plaintiffs shall not operate to modify, terminate or cancel this Settlement or this Settlement Agreement or affect the finality of the Approval Order, the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement, including those provisions giving effect to the Release.

d.      Neither the Mel Harris Defendants, the Samserv Defendants, nor the other Releasees (including Mel Harris Defendants and Samserv Defendants' Counsel) shall have any role in, responsibility for, or liability as to or in connection with (*i*) the Allocation Plan, (*ii*) the form, substance, method, or manner of allocation, (*ii*) the administration or distribution of the Net Settlement Fund, (*iv*) any tax liability (if any) that a Class Member might incur as a result of this Settlement Agreement or (*v*) the result of any action taken pursuant to this Settlement Agreement, the amounts of claims or distribution of the Net Settlement Fund or (except as set out in Section III.A.3) the maintenance of the Class Settlement Account as a Qualified Settlement Fund.

e.      Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients shall look solely to the Net Settlement Fund for settlement and satisfaction of all Released Rule 23(b)(3) Class Members' Claims and Released Rule 23(b)(2) Class Members' Nominal Restitution Claims, respectively, and only to the extent expressly provided by this Settlement Agreement, the Court-approved Allocation Plan, or any order of the Court.  Under no circumstances will any of the Settling Parties or any Releasees be responsible for the payment of any fees, costs, expenses or other funds associated with or arising out of this Settlement contemplated by this Settlement Agreement other than as provided herein.

f.      To the extent that any monies remain in the Class Settlement Account after the Class Administrator has caused initial distributions to be made from the Net Settlement Fund to all Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients, such monies shall be (*i*) used for the payment of any unpaid

Administration Expenses arising out of redistribution and then (*ii*) distributed to Class

Members who have cashed their initial distribution checks and who would receive at least

the minimal amount as set forth in the Allocation Plan from such redistribution.  If any

funds remain in the Class Settlement Account after such redistribution(s), or if any such

redistribution is not economically feasible, the unpaid residue shall, subject to Court

approval, be given to one or more not-for-profit organizations identified by Lead Plaintiffs

that operate programs designed to benefit persons adversely affected by consumer debt

collection practices.

B.        **Equitable and Injunctive Relief**

1.        The Settling Parties acknowledge that, within 30 Business Days

following the day on which the later of the following occurs: (a) the Leucadia Settlement

Agreement becomes Final and (b) the Final Settlement Date, LR Credit, LLC will transfer,

convey and/or provide, to an entity to be identified by Lead Plaintiffs, the Consumer Debt

Portfolio assets held, as of December 14, 2014, by LR Credit, LLC or any of its

Subsidiaries, related to the Classes; *provided* that for the avoidance of doubt, the intent of

this Section III.B.1 is to transfer, convey and/or provide assets in the form of debt

portfolios, and any Default Judgments associated therewith, owned by LR Credit, LLC or

any of its Subsidiaries, to an entity designated by Lead Plaintiffs to enable Lead Plaintiffs

to (*i*) halt all collection activities and (*ii*) seek to have such Default Judgments vacated by

the courts of the State of New York; *provided however*, that Lead Plaintiffs, with the

reasonable cooperation of the Mel Harris Defendants (including, without limitation,

executing documents and making reasonable best efforts to provide data and

documentation in their possession, custody, or control which is requested by Class

Counsel; for the avoidance of doubt the Mel Harris Defendants represent that the database

formerly maintained by the Mel Harris Defendants containing information regarding

Consumer Debt is, as of the date of this Settlement Agreement, in the possession, custody

and control of LR-Credit, LLC and its counsel, not the Mel Harris Defendants), will be

solely responsible for taking all steps necessary to vacate the Default Judgments, with all

Administration Expenses relating thereto to be paid from the Class Settlement Account,

and Lead Plaintiffs' success or lack thereof in vacating the Default Judgments shall not be

grounds for termination of Settlement or this Settlement Agreement or give rise to any

Claim or remedy against any Releasee or any obligation on the part of any Releasee;

provided further, that (i) the Mel Harris Defendants shall not be required to perform work

that Class Counsel or other counsel engaged on behalf of the Classes is reasonably capable

of performing, including but not limited to, serving as counsel for the Classes or appearing

in any court proceeding, drafting or filing any motions, briefs or proposed orders,

conducting legal research, or furnishing legal advice; (ii) any reasonable out of pocket

costs or expenses associated with providing such reasonable cooperation shall be paid from

the Class Settlement Account and shall not be the responsibility of the Mel Harris

Defendants; (iii) and the Mel Harris Defendants may give Class Counsel or other counsel

for the Classes limited power of attorney to sign documents on their behalf, if agreed to by

Class Counsel and the Mel Harris Defendants.

        2.      The Mel Harris Defendants warrant to the best of their knowledge

that the following is a complete list of LR Credit, LLC Subsidiaries:  LR Credit 1, LLC,

LR Credit 2, LLC, LR Credit 3, LLC, LR Credit 4, LLC, LR Credit 5, LLC, LR Credit 6, LLC, LR Credit 7, LLC, LR Credit 8, LLC, LR Credit 9, LLC, LR Credit 10, LLC, LR Credit 11, LLC, LR Credit 12, LLC, LR Credit 13,  LLC, LR Credit 14, LLC, LR Credit 15, LLC, LR Credit 16, LLC, LR Credit 17, LLC, LR Credit 18, LLC, LR Credit 19, LLC, LR Credit 20, LLC, LR Credit 21, LLC, LR Credit 22, LLC and LR Credit 23, LLC.

        C.      **Other Injunctive Relief**

            1.      Other Injunctive Relief as to the Mel Harris Defendants:

                a.      Upon the Execution Date, the Mel Harris Defendants will, if so instructed by LR Credit, LLC, reasonably cooperate with any reasonable efforts by LR Credit, LLC, LR Credit, LLC's Subsidiaries, Lead Plaintiffs or LR Credit, LLC's current attorney representative, Stephen Einstein & Associates ("SEA"), or any replacement counsel retained by LR Credit, LLC (together with SEA, "Replacement Counsel") to suspend as soon as reasonably practicable all collection activities on Consumer Debt until the Final Settlement Date; *provided, however*, that Replacement Counsel shall be responsible for such efforts and the Mel Harris Defendants shall not be required to appear in any court proceeding, draft or file any motions or briefs, conduct legal research, furnish legal advice, or perform work that Replacement Counsel is reasonably capable of performing; *provided further*, that any reasonable out of pocket costs or expenses associated with providing such reasonable cooperation shall be paid from the Class Settlement Account and shall not be the responsibility of the Mel Harris Defendants.  If Final Settlement Date does not occur, this obligation to provide reasonable cooperation will lapse.  The efforts of LR Credit, LLC and Replacement Counsel to suspend all

collection activities on Consumer Debt may include but not be limited to:  notifying any

marshal or sheriff offices in New York state that are implementing income executions or

other property levies against any Class Member to immediately stop such efforts; notifying

any banks or financial institutions that are restraining any bank accounts held by Class

Members to immediately lift the restraints; ceasing any Automated Clearing House or

other automatic withdrawals from Class Members' bank accounts or other form of

payment automatically taken by LR Credit, LLC or its attorney representative; and

returning any payments received by Class Members (by check, money order, or other

means) with a letter instructing the Class Member not to send payments until further

notice.  The Mel Harris Defendants further agree: (1) Mel S. Harris will remain (to the best

of his ability) an active, licensed member of the New York Bar until the Final Settlement

Date, and David Waldman will remain (to the best of his ability) an active, licensed

member of the New York Bar until February 27, 2016; (2) The Mel Harris Defendants

will, if so instructed by their client, LR Credit, LLC, sign or cause to be signed documents

reasonably deemed necessary by LR Credit, LLC or Replacement Counsel.  Other than as

detailed in this paragraph, the Mel Harris Firm will not engage in the practice of law and

Mr. Mel Harris, Kerry Lutz, and David Waldman will not act as an attorney in any

consumer debt collection proceeding initiated after the Execution Date.

          b.      Each of the individual Mel Harris Defendants solely on

behalf of himself agrees that:

                 i.      He will comply with all applicable debt collection

laws.

        ii.      He will not, on and from the Execution Date, purchase any consumer debt portfolios or judgments, or initiate any litigation with respect to any consumer debt in which he has a controlling interest or the Mel Harris Defendants, collectively, have a controlling interest.

2.      Other Injunctive Relief as to the Samserv Defendants:

      a.      Samserv Defendants agree to follow process serving laws applicable to the relevant jurisdiction in which service is being effected.

      b.      Samserv and Mlotok

        i.      Solely for purposes of assisting defendants in consumer debt collection cases, Samserv or Mlotok will provide Class Counsel an Excel spreadsheet listing the index number, county and court of the consumer debt collection lawsuits filed in New York, Bronx, Kings, Queens, Richmond, and Westchester Counties in which Samserv (via employees, independent contractor process servers, or otherwise) served process from August 2011 to Final Approval Date. Class Counsel may disseminate this Excel spreadsheet only to the administrators of the Civil Legal Advice and Resource Office clinics located in New York, Bronx, Kings, Queens, Richmond, and Westchester counties (collectively "CLARO Clinics"), and any other applicable

CLARO clinics in New York State.

ii.      Based on Samserv's representation that it has no

process serving records from before August 2011, and solely

for purposes of assisting defendants in consumer debt

collection cases:

1.      Upon Execution Date and for a period of two

(2) years following Final Approval Date, upon

request by Class Counsel or a person designated by

the administrators of the CLARO Clinics to an e-mail

address to be provided by Samserv, Samserv or

Mlotok will—as soon as is practicable (and in any

event no more than twenty-four (24) hours from the

request)—provide to the person who submitted the

request the affidavit(s) of service for any consumer

debt collection lawsuits in which it allegedly

effectuated service of process, through its employees,

independent contractors or otherwise, in or after

August 2011.

2.      To facilitate processing, the person who

submits the request will provide: (i) the name of the

plaintiff in the consumer debt collection lawsuit; (ii)

the name of the defendant in the consumer debt

collection lawsuit; and (iii) Index number of the

consumer debt collection lawsuits.  However, each of

these data fields are not required if Samserv is

otherwise able to locate the applicable Affidavit of

Service.

3.     If the information provided to Samserv relates

to a lawsuit in which it did not effectuate service of

process, it will—as soon as is practicable (and in any

event no more than twenty-four (24) hours from the

request)—notify the person who submits the request.

4.     Class counsel will also provide Samserv with

an e-mail address to which all responses to such

requests can be copied.

5.     If Samserv or Mlotok fail to respond as

outlined in III.C.2.b.ii within twenty-four (24) hours

of request, they will be afforded a three (3) business

day "cure" period and Class Counsel or a person

designated by the administrators of the CLARO

Clinics can contact Babchik & Young, LLP seeking

the information.

c.    Samserv

  i.    Agrees not to serve process in consumer debt

     collection cases.

  ii.    To the extent it continues to serve process, agrees to

     pay process servers for unsuccessful attempts at the same

     rate as for successful attempts.

d.    To the extent Mlotok ever has a controlling interest in a

process serving agency or is ever in a position to set policies regarding the hiring or

retention of process servers, whether as employees or independent contractors, he agrees to

pay process servers for unsuccessful attempts at the same rate as for successful attempts

e.    Individual Process Server Defendants

  i.    Upon Execution Date and for a period of two (2)

     years following Final Approval Date, where section 2-233 of

     Title 6 of the Rules of the City of New York applies, for

     service effected under CPLR § 308(1), the process server

     will include in his records entry a description of the vicinity

     in which process was delivered.  If service was effected

     inside a house or building, this description shall include the

     name, when applicable, and address of the building, color

     and composition of surrounding hallway walls, color and

     composition of surrounding hallway floor or doorstep, and

     location of defendant in relation to stairs, elevator or

entranceway.  If service was effected outside a building or house, this description shall include the street address, cross streets, and any nearby buildings, stores, and similar markers.

ii.        Upon Execution Date and for a period of two (2) years following Final Approval Date, where section 2-233 of Title 6 of the Rules of the City of New York applies, for service effected under CPLR § 308(2), the process server will include in his records entry a description of the actual place of business, dwelling place or usual place of abode at which process was delivered to a person of suitable age and description.  This description shall include the color and composition of hallway walls, color and composition of hallway floor or doorstep, and location of premises in relation to stairs, elevator or entranceway.

D.        **Notice to Class**

1.        **Individual Notice**

a.        Subject to the requirements of the Preliminary Approval Order or any other order of the Court, the Settling Parties will cause the Class Administrator to provide Individual Notice by first-class mail to the last-known address(es), updated using publicly-available databases, of all potential Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients.  A copy of the Claim

44

Form will be mailed along with the Individual Notice for all potential Rule 23(b)(2)

Nominal Restitution Recipients and for those potential Rule 23(b)(3) Class Members who

are eligible for money pursuant to the Allocation Plan.

        b.      The Individual Notice shall be mailed at least ninety (90)

days prior to the earlier of the Objection Deadline, the Request for Exclusion Deadline or

the Nominal Restitution Declination Deadline.

        c.      If any of the Settling Parties is aware of a putative Rule

23(b)(3) Class Member and/or Rule 23(b)(2) Nominal Restitution Recipient having a

pending action as of the Execution Date against one or more of the Mel Harris Defendants,

the Leucadia Defendants and/or the Samserv Defendants relating in any way to Released

Rule 23(b)(3) Class Members' Claims and/or Released Rule 23(b)(2) Class Members'

Nominal Restitution Claims, each of the Settling Parties will advise the other of any such

putative Rule 23(b)(3) Class Member and/or Rule 23(b)(2) Nominal Restitution Recipient

of whom they are aware and, in addition to providing Individual Notice to such putative

Rule 23(b)(3) Class Member or Rule 23(b)(2) Nominal Restitution Recipient, the Settling

Parties will also cause the Class Administrator to send the Individual Notice to the attorney

representing such Rule 23(b)(3) Class Member or Rule 23(b)(2) Nominal Restitution

Recipient in the pending action.

        d.      The Settling Parties will also cause the Class Administrator

to post a notice that is, in sum and substance, similar to the Individual Notice on its website

by no later than the date on which the first Individual Notices are mailed to potential Rule

23(b)(3) Class Members and/or Rule 23(b)(2) Nominal Restitution Recipients.

2.  **Publication Notice**

a.      Subject to the requirements of the Preliminary Approval

Order or any other order of the Court, the Settling Parties will cause the Class

Administrator to publish the Publication Notice once in each of the following publications:

the *New York Daily News,* the *New York Post*, *AM New York*, *New York Metro*, *El Diario*,

the *Times Union* and the *Buffalo News*.

b.      The Publication Notice will be published at least sixty (60)

days prior to the earlier of the Objection Deadline, the Request for Exclusion Deadline or

the Nominal Restitution Declination Deadline.

3.  **CAFA Notice**

a.      The Settling Parties will also provide or cause to be provided

CAFA Notice to appropriate federal and state officials as required by CAFA.  In

scheduling hearings relating to the Court's determination whether to approve the proposed

Settlement and this Settlement Agreement, the Settling Parties shall take into account the

time periods prescribed in CAFA.

4.  **Notice Expenses**

a.      To the extent Notice Expenses are incurred specifically to

mail separate Individual Notices or to publish a separate Publication Notice of the terms of

this Settlement Agreement that are in addition to the to the Individual Notices and

Publication Notice of the Leucadia Settlement Agreement, such additional Notice

Expenses shall be paid from the Settlement Fund.

E.     **Class Administrator**

1.     As provided in the Preliminary Approval Order, Epiq Systems shall be appointed as the Class Administrator to help implement this Settlement contemplated by this Settlement Agreement.  The Mel Harris Defendants and Samserv Defendants shall cooperate in the administration of this Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including any acts that the Class Administrator, Lead Plaintiffs or Class Counsel are required to undertake pursuant to this Settlement Agreement).

2.     In using potential Class Members' confidential information for purposes of providing Notice or making distributions to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients, the Class Administrator shall act as Class Counsel's agent and shall (*i*) use such information only in connection with the administration of the proposed Settlement (including providing Notice) and (*ii*) take reasonable measures to maintain the security of the confidential information.

3.     Joint Administration:  The parties agree that, so long as the Leucadia Settlement is preliminarily approved at such time that joint administration is feasible, this Settlement Agreement will be administered jointly with the administration of the Leucadia Settlement Agreement.  Such joint administration will include, but not be limited to: (a) the same Individual Notice, Publication Notice, and Claim Form will be used for the instant Settlement Agreement and the Leucadia Settlement Agreement; and (b) the same website and telephone center for Class Member inquiries shall be used for the instant Settlement Agreement and the Leucadia Settlement Agreement.  Moreover, if the Leucadia Settlement

Agreement and the instant Settlement are both finally approved, (c) the Administrator may create a single Class Settlement Account for the instant Settlement Agreement and the Leucadia Settlement Agreement and jointly distribute the Net Settlement Fund, in a single check to each eligible Class Member for the initial distribution and, if there is any redistribution, in a single check to each eligible Class Member for any redistribution..

4.      To the extent Administration Expenses are incurred specifically relating to the implementation of this Settlement Agreement that are in addition to the administration expenses incurred in connection with the implementation of the Leucadia Settlement Agreement, such Administration Expenses shall be paid from the Settlement Fund.

F.      **Communications Regarding the Settlement**

1.      The Settling Parties agree to keep the terms of this Settlement Agreement confidential until such time as the Settling Parties submit this Settlement Agreement to the Court for preliminary approval pursuant to Section IX.A; *provided however*, that Lead Plaintiffs are permitted, to advise (*i*) potential designees for receipt of the Consumer Debt Portfolios as contemplated in Section III.B.1 and/or (*ii*) the Office of Court Administration for the New York State Unified Court System or other governmental entities regarding the terms of this Settlement Agreement for purposes of pursuing vacatur of the Default Judgments contemplated in Section III.B.1.

2.      The Settling Parties, Class Counsel and Mel Harris Defendants' Counsel agree that (*i*) they will cooperate to ensure that any statements about the proposed Settlement are balanced, fair and accurate and (*ii*) none of them will make any comments

to the media respecting Lead Plaintiffs, the Samserv Defendants, the Mel Harris

Defendants or this Settlement that are inconsistent with the terms or purposes of this

Settlement Agreement.

3.      The Settling Parties further agree that they will not, consistent with

their duties of candor to the Court or any other reviewing court, assert positions in any

court (whether directly or indirectly) or aid any other entity in asserting positions in any

court (whether directly or indirectly) that may compromise the enforceability or approval

of this Settlement Agreement or any other settlement agreement in this action.

4.      The Settling Parties agree to provide each other with the opportunity

to review and comment on each other's press releases (if any) announcing the Settlement.

G.      **Dispute Resolution**

1.      If the Settling Parties have a dispute concerning the Notice to be

provided to Class Members or the administration or implementation of this Settlement

Agreement, such dispute shall be submitted to the Mediator for binding, nonreviewable

arbitration.

2.      Any amounts due to the Mediator pursuant to this Section III.G.1

shall be borne one-half (1/2) by Class Counsel and one-half (1/2) by the Mel Harris

Defendants if the dispute involves the Mel Harris Defendants only; one-half (1/2) by Class

Counsel and one-half (1/2) by the Samserv Defendants if the dispute involves the Samserv

Defendants only; and one-third (1/3) each by Class Counsel, the Samserv Defendants, and

Mel Harris Defendants if the dispute involves both the Mel Harris Defendants and Samserv

Defendants.  If the Leucadia Defendants are involved in the dispute, the mediator shall

determine and split any mediation costs that are over and above the mediation costs that

are attributable to the dispute with the Leucadia Defendants equally among the parties

other than the Leucadia Defendants that are involved in the dispute.

     H.     **Releases and Waivers, and Order of Dismissal**

          1.     **Releases and Waivers**

               a.     Pursuant to the terms of this Settlement Agreement, the

Approval Order and the Judgment, without further action by anyone, and subject to

Section III.H.1.f, on and after the Final Settlement Date, Lead Plaintiffs and all other Rule

23(b)(3) Class Members, on behalf of themselves and all other Rule 23(b)(3) Releasors, for

good and sufficient consideration, the receipt and adequacy of which are hereby

acknowledged, shall be deemed to have, and by operation of law and of the Approval

Order and the Judgment shall have fully, finally, and forever released, relinquished, settled

and discharged:

               (1)     all Released Rule 23(b)(3) Class Members'

Claims against each and every one of the Releasees;

               (2)     all Released Class Members' Settlement Claims

against each and every one of the Releasees and Releasors; and

               (3)     except to the extent otherwise specified by this

Settlement Agreement, all Claims that have been, could have been or could be asserted by

any Rule 23(b)(3) Releasor against any Releasee for attorneys' fees, costs or disbursements

incurred by Lead Plaintiffs' Counsel (including Class Counsel) or any other counsel

representing any Lead Plaintiff or any other Rule 23(b)(3) Class Member in connection

with or related in any manner to (*i*) any collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member and (*ii*) the Action, the settlement of the Action or the administration of the Action and/or this Settlement.

        b.      Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.f, on and after the Final Settlement Date, all Rule 23(b)(2) Nominal Restitution Recipients, on behalf of themselves and all other Rule 23(b)(2) Nominal Restitution Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged:

        (1)      all Released Rule 23(b)(2) Class Members' Nominal Restitution Claims against each and every one of the Releasees;

        (2)      all Released Class Members' Settlement Claims against each and every one of the Releasees and Releasors; and

        (3)      except to the extent otherwise specified by this Settlement Agreement, all Claims that have been, could have been or could be asserted by any Rule 23(b)(2) Nominal Restitution Releasor against any Releasee for attorneys' fees, costs or disbursements incurred by any counsel (including Class Counsel) representing any Rule 23(b)(2) Nominal Restitution Recipient in connection with or related in any manner to (*i*) any collection of or attempts to collect Consumer Debt from any Rule 23(b)(2)

Nominal Restitution Releasor and (*ii*) the Action, the settlement of the Action or the administration of the Action and/or the Settlement.

c.    Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.f, on and after the Final Settlement Date, all Rule 23(b)(2) Injunction Only Beneficiaries, on behalf of themselves and all other Rule 23(b)(2) Injunction Only Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged:

(4)    all Released Rule 23(b)(2) Class Members' Injunction Only Claims against each and every one of the Releasees;

(5)    all Released Class Members' Settlement Claims against each and every one of the Releasees and Releasors; and

(6)    except to the extent otherwise specified by this Settlement Agreement, all Claims that have been, could have been or could be asserted by any Rule 23(b)(2) Injunction Only Releasor against any Releasee for attorneys' fees, costs or disbursements incurred by any counsel (including Class Counsel) or any other counsel representing any Rule 23(b)(2) Injunction Only Beneficiary in connection with or related in any manner to (*i*) attempts to collect Consumer Debt from any Rule 23(b)(2) Injunction Only Beneficiary and (*ii*) the Action, the settlement of the Action or the administration of the Action and/or the Settlement.

d.      Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.f, on and after the Final Settlement Date and, with respect to the Leucadia Released Parties, conditioned upon the occurrence of the Leucadia Settlement Agreement becoming Final and not terminating:  each and all Releasees for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged all Released Releasees' Claims against each and every one of the Releasors, Leucadia Released Parties, and Releasees (with respect to each Releasee, subject to such Releasee not having terminated this Settlement Agreement).

e.      Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.f and this Settlement Agreement not being terminated by any of the Settling Parties, on and after the Final Settlement Date:

(7)      each and all Samserv Defendants for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged all Released Samserv Claims against each and every one of the Mel Harris Defendants and any other Releasee.

(8)         each and all the Mel Harris Defendants for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged all Released Mel Harris Defendants 'Claims Against Samserv with respect to each and every one of the Samserv Defendants and any other Releasee.

f.         Notwithstanding any other provision of this Section III.H, nothing in this Settlement Agreement, the Approval Order or the Judgment shall bar any Claim:

(9)         by any of the Settling Parties, Class Counsel, Samserv Defendants' Counsel, or Mel Harris Defendants' Counsel to enforce the terms of this Settlement Agreement, the Approval Order or the Judgment;

(10)        by Mel Harris Defendants or Samserv Defendants' Counsel seeking reimbursement from its client(s) for fees and expenses incurred in representing one or more Mel Harris Defendant in connection with the Action or the Settlement;

(11)        by any Releasee who is or was employed or associated with one or more other Releasee, with respect to any such individual's rights under or to pension plans, 401(k) plans, separation agreements, employment agreements, stock options, salary benefits or any other benefit plan, including health plans, in which such Releasee participates as a result of his or her current or former employment or association with such Releasee;

(12)     by any Releasee for indemnification coverage with respect to any claim made as to a Releasee that arises by reason of the fact that he or she is or was a director, member, officer or employee of a Mel Harris or Samserv Defendant; or

(13)     subject to Section XIII.B and the Complete Bar Order (as set out in Paragraph 26 of the Approval Order, Exhibit B attached to the First Amendment), by any Releasee for coverage under an applicable insurance policy.

g.     The releases and waivers in this Section III.H.1 were separately bargained for and are essential elements of this Settlement Agreement.

2.     **Approval Order, Judgment and Dismissal**

a.     The Settling Parties shall seek and obtain from the Court the Approval Order and the Judgment as further described in Section X.B, pursuant to which the Action shall be dismissed with prejudice with respect to the Mel Harris Defendants and Samserv Defendants.

**IV.    ATTORNEYS' FEES AND EXPENSES**

A.      Class Counsel may file an Attorneys' Fees and Expenses Application(s) at or after the Fairness Hearing; *provided* that, in no event, will such Attorneys' Fees and Expenses Application(s) seek an Attorneys' Fees and Expense Award(s) that, in the aggregate, exceeds one-third of the funds remaining in the Class Settlement Account after deductions for Service Awards, Administration Expenses and Tax Expenses.

B.      Any Attorneys' Fees and Expenses Award(s) shall be paid to Class Counsel from the Class Settlement Account within three (3) Business Days after the Final Settlement Date.

C.      No Releasee shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Lead Plaintiffs and Class Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement except as expressly provided for in this Settlement Agreement.

D.      Lead Plaintiffs shall not be liable for or obligated to pay any fees, expenses, costs or disbursement to, or incur any expenses on behalf of, any person or entity (including, without limitation, any Mel Harris Defendant or Samserv Defendant, and Mel Harris Defendants and Samserv Defendants' Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement except as expressly provided for in this Settlement Agreement.

E.      No Releasee shall have any responsibility whatsoever in connection with the allocation of the Attorneys' Fees and Expenses Award between or among Class

Counsel, any other counsel purporting to represent any Class Member, or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action, the Settlement or implementation of this Settlement Agreement.

## V.   SERVICE AWARDS

A.   Section V (Service Awards) of the Leucadia Settlement Agreement is hereby incorporated by reference.

## VI.   REQUESTS FOR EXCLUSION

A.   Section VI (Requests for Exclusion) of the Leucadia Settlement Agreement is hereby incorporated by reference.

## VII.   NOMINAL RESTITUTION DECLINATION

A.   Section VII (Nominal Restitution Declination) of the Leucadia Settlement Agreement is hereby incorporated by reference.

## VIII.   OBJECTIONS

A.   Section VIII (Objections By Class Members) of the Leucadia Settlement Agreement is hereby incorporated by reference, except that such Section VIII is modified to provide that Objections shall be submitted to the Class Administrator rather than filed with the Court.

B.   The Mel Harris Defendants will not object to the settlement between Lead Plaintiffs as in existence on the date of the Settlement Agreement and the Leucadia Defendants or to the terms of the Leucadia Settlement Agreement.  The Mel Harris Defendants will not object to the settlement between Lead Plaintiffs and the Samserv

Defendants as in existence on the date of the Settlement Agreement or to the term of this Settlement Agreement.

C.      The Samserv Defendants will not object to the settlement between Lead Plaintiffs and the Leucadia Defendants as in existence on the date of the Settlement Agreement or to the terms of the Leucadia Settlement Agreement.  The Samserv Defendants will not object to the settlement between Lead Plaintiffs and the Mel Harris Defendants or to the terms of this Settlement Agreement.

## IX.    PRELIMINARY APPROVAL HEARING AND PRELIMINARY APPROVAL ORDER

A.      Within ten (10) Business Days following the Execution Date (or any other date to which the Settling Parties agree or as ordered by the Court), the Settling Parties shall submit this Settlement Agreement to the Court and jointly apply to the Court for entry of the Preliminary Approval Order substantially in the form set out in Exhibit A attached to the First Amendment.

B.      The Settling Parties shall request that the Court, in its discretion, either (*i*) hold a Preliminary Approval Hearing to allow the Settling Parties to describe the proposed Settlement, the notice to be provided pursuant to its terms and the scheduling of a Fairness Hearing or (*ii*) address the Settling Parties' application for entry of a Preliminary Approval Order based on the Settling Parties' application without a hearing.

C.      The Settling Parties shall ask the Court to certify the settlement Classes and certify Lead Plaintiffs as representatives of the Classes and Class Counsel as counsel for the Classes solely for the purposes of the proposed Settlement.  The right of the Mel Harris

Defendants or Samserv Defendants to object to any expanded Class in the event the proposed Settlement does not become Final is preserved in all respects and nothing herein shall be deemed a waiver of any such right to object.

## X.     FAIRNESS HEARING, APPROVAL ORDER, JUDGMENT AND DISMISSAL

A.     At the time the Settling Parties submit this Settlement Agreement to the Court and jointly apply for entry of the Preliminary Approval Order, they shall request that the Court schedule a Fairness Hearing.

B.     At the Fairness Hearing, the Settling Parties shall jointly ask the Court to enter the Approval Order and the Judgment, substantially in the form set out in Exhibits B attached to the First Amendment and C attached to the First Amendment, respectively. The Approval Order and the Judgment shall include, among other provisions, the Complete Bar Order (the text of which is set out in Paragraph 26 of Exhibit B attached to the First Amendment).

C.     If any term of the Complete Bar Order entered by the Court in the Approval Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford each of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Class Members' Claim.

D.     At the Fairness Hearing, the Settling Parties shall jointly ask the Court to include in the Judgment a statement that, during the course of the Action, the Settling Parties and their respective counsel (including Class Counsel and Mel Harris Defendants'

Counsel) at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## XI.    NO ADMISSIONS

A.    This Settlement Agreement, the offer of this Settlement Agreement, and implementation of and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by the Mel Harris Defendants, Samserv Defendants, or other Releasees, or any of them individually, of any wrongdoing or liability.  The Mel Harris Defendants and Samserv Defendants expressly deny any wrongdoing.

B.    This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Action.  The Settling Parties agree that no party was or is a "prevailing party."

C.    In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Action, any other action, or any other judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement or any of its terms, including Section III.B.1.

D.    Without limiting any of the foregoing provisions in this Section XI, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of a waiver by any of the Mel Harris Defendants or Samserv Defendants of any applicable defense or an admission or concession of any liability or wrongdoing whatsoever, including that any

of the Default Judgments were improperly obtained, on the part of any of the Mel Harris Defendants or any other Releasee; *provided however*, that nothing in this Section XI.D shall be interpreted to limit or affect the ability of Class Counsel (on behalf of the Rule 23(b)(3) Class) to seek to have Default Judgments vacated by the courts of the State of New York as set forth in Section III.B.1.

## XII.   MODIFICATION OR TERMINATION

A.     The terms and provisions of this Settlement and this Settlement Agreement may be amended, modified or expanded by written agreement of the Settling Parties; *provided however*, that after entry of the Approval Order and the Judgment, the Settling Parties may by agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all Exhibits to this Settlement Agreement) without notice to or approval by the Court as long as such amendments, modifications or expansions are not materially inconsistent with the Court's Approval Order or the Judgment and do not materially limit the rights of Lead Plaintiffs, any other Class Member, the Mel Harris Defendants, the Samserv Defendants, Releasors or Releasees under this Settlement Agreement.

B.     Subject to Section XII.F, this Settlement and this Settlement Agreement shall terminate:

1.     if the Final Settlement Date does not occur;

2.     at the sole option and discretion of the Mel Harris Defendants or the Samserv Defendants or Class Counsel (on behalf of Lead Plaintiffs and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this

Settlement Agreement that the terminating Settling Party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the provisions relating to Notice, the definition of the Class, the Complete Bar Order, the permanent injunctions, and/or the terms of the Releases or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order and/or the Judgment that the terminating Settling Party reasonably and in good faith believes is material; *provided* that, if the Settling Parties disagree about whether any court's action is material, they will submit the dispute to the Mediator for a final and binding decision; *provided*, *further*, that the Mel Harris Defendants cannot terminate if the Settlement Agreement, Preliminary Approval Order, the Approval Order and/or the Judgment is rejected, modified, altered or expanded only as to the Samserv Defendants, and the Samserv Defendants cannot terminate if the Settlement Agreement, Preliminary Approval Order, the Approval Order and/or the Judgment is rejected, modified, altered or expanded only as to the Mel Harris Defendants, but if only the Mel Harris Defendants or the Samserv Defendants elect to terminate this Settlement and Settlement Agreement, such termination shall be solely with respect to such terminating Settling Party and the rights, obligations, and benefits hereunder with respect to such terminating Settling Party; and *provided, further*, Class Counsel (on behalf of Lead Plaintiffs and the Class) can, in its sole discretion, terminate as to the Samserv Defendants if the Settlement Agreement is terminated as to the Mel Harris Defendants or if the Leucadia Settlement Agreement is terminated;

3.      at the sole option and discretion of Class Counsel (on behalf of Lead Plaintiffs and the Class) if a bankruptcy case is commenced as to a Mel Harris Defendant under Title 11 of the United States Code, or a trustee, receiver or conservator is appointed under United States bankruptcy law, and if a Final order and/or judgment of a court of competent jurisdiction is entered determining that the payment of the Mel Harris Settlement Amount (or any portion of it) by or on behalf of the Mel Harris Defendants to the Class Settlement Account is a voidable preference, voidable transfer or fraudulent transfer, and if the funds in the Class Settlement Account are actually clawed back by the debtor's estate and become unavailable to the Classes before the initial distribution of the Net Settlement Fund has been made to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients; *provided* that this termination right shall not be effective unless Class Counsel sends written notice to the other Mel Harris Defendants and the other Mel Harris Defendants do not elect, in their sole discretion, to contribute such clawback amount to the Class Settlement Account within 20 Business Days after receipt of such notice; *provided*, *further*, if Class Counsel terminates this Settlement and this Settlement Agreement, upon such termination, Class Counsel shall cause the entire amount of the Settlement Fund to be returned immediately to the other Mel Harris Defendants, other than the Mel Harris Insurance Payment, which Mel Harris Insurance Payment shall be returned immediately to the Mel Harris Insurer, as set forth in Section XII.F;

4.      at the sole option and discretion of the Mel Harris Defendants if the aggregate amounts paid pursuant to Default Judgments by putative Rule 23(b)(3) Class

Members who request exclusion exceed five percent (5%) of the aggregate amount paid pursuant to Default Judgments by all putative Class Members; or

5.       at the sole option and discretion of Class Counsel (on behalf of Lead Plaintiffs and the Class) if the Mel Harris Insurer or Samserv Insurer fails to contribute to the Class Settlement Account the Mel Harris Insurance Payment or Samserv Insurance Payment, respectively, within thirty five (35) calendar days following the Execution Date (the "Payment Deadline"), *provided* that such right to terminate this Settlement and this Settlement Agreement shall expire if Class Counsel does not provide written notice of termination to the Mel Harris Defendants or Samserv Defendants, as appropriate, within thirty (30) calendar days after the Payment Deadline, *provided, further*, the only remedy of Class Counsel, the Lead Plaintiffs, and the Class for the failure of the Mel Harris Insurer or Samserv Insurer to pay by the Payment Deadline is to terminate this Settlement and this Settlement Agreement, and they shall have no right to seek payment of the Insurance Payment from the Mel Harris Defendants or Samserv Defendants under any circumstance, *provided, further*, such right to terminate shall be solely with respect to the Settling Party whose Insurer fails to make such payment by the Payment Deadline.

C.       If an option to withdraw from or terminate this Settlement and this Settlement Agreement arises under this Settlement Agreement, no party will be required for any reason or under any circumstances to exercise such option.

D.       Except as provided in Section XII.B.3, the relevant terminating Settling Party must exercise an option to terminate this Settlement and this Settlement Agreement by providing notice to all other Settling Parties by no later than ten (10) days after

receiving actual notice of the event prompting the termination; *provided however*, that any

option to terminate accruing at least two (2) Business Days prior to the Fairness Hearing

must be exercised by no later than two (2) Business Days before the date of the Fairness

Hearing.

E.      Notwithstanding anything set out in this Section XII,

1.      none of the Lead Plaintiffs, any other Class Member or Class

Counsel may terminate this Settlement or this Settlement Agreement on the basis of the

Attorneys' Fees and Expenses Award order by the Court, or as modified by any appellate

court(s); and

2.      none of the Lead Plaintiffs, any other Class Member nor Class

Counsel may terminate this Settlement or this Settlement Agreement based upon Lead

Plaintiffs' success or lack thereof in vacating the Default Judgments

F.      If the proposed Settlement and this Settlement Agreement are terminated

pursuant to the Settlement terms, then:

1.      the proposed Settlement and this Settlement Agreement shall be null

and void and shall have no force or effect, and no Settling Party or Releasee shall be bound

by any of its terms except for the terms set out in this Section XII.F, and Class Counsel and

the Class Administrator shall cause the Settlement Fund and any interest accrued thereon,

to be returned immediately to the Mel Harris Defendants and Samserv Defendants, other

than the Insurance Payments, which Insurance Payments shall be returned immediately to

the Insurer who paid it, in proportion to the amount paid by each source;

2.      the proposed Settlement and this Settlement Agreement, and all of its provisions and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Settling Parties or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to the Notice Expenses, Administration Expenses and Mediator fees or expenses that have been incurred as of the Termination Date as described in Sections III.F.3, III.F.4 and III.F.5;

3.      the aggregate amount of any Administration Expenses due under Section III.E.3 and any incremental Notice Expenses due under Section III.D.4. that have been incurred as of the Termination Date shall be borne (a) one-half (1/2) by Class Counsel and one-half (1/2) by the Mel Harris Defendants as such expenses pertain the Mel Harris Defendants and (b) one-half (1/2) by Class Counsel and one-half (1/2) by the Samserv Defendants as such expenses pertain the Samserv;

4.      any Mediator fees and expenses incurred but not paid as of the Termination Date shall be paid consistent with Section III.G.2;

5.      Releasees (including, without limitation, the Mel Harris Defendants and Samserv Defendants) expressly deny any wrongdoing by Releasees and expressly and affirmatively reserve all defenses, arguments and motions that have been or might later be asserted in the Action;

6.      Lead Plaintiffs expressly and affirmatively reserve all Claims, arguments and motions that have been or might have been asserted or made in the Action;

7.      none of the proposed Settlement, this Settlement Agreement, the fact of the Settlement having been made, nor any negotiations or communications regarding this Settlement shall be admissible or entered into evidence in any proceeding for any purpose whatsoever, except to enforce any of the surviving terms of this Settlement Agreement;

8.      none of  the Mel Harris Defendants or Samserv Defendants' agreement to the proposed Settlement, this Settlement Agreement, nor their execution of this Settlement Agreement shall constitute or be construed to be an admission by any of the Mel Harris Defendants or Samserv Defendants that any wrongdoing has taken place (including that any of the Default Judgments were improperly obtained) or that any of the Mel Harris Defendants or Samserv Defendants (or any other Releasee) has engaged in any actionable conduct in connection with the conduct alleged in the Action or that any of the Claims made in the Action have any merit;

9.      all agreements (including confidentiality agreements) as to the use of documents or information provided to Lead Plaintiffs and/or Class Counsel in connection with mediation, any other attempt to settle the Action, or pursuant to Section II.F shall remain in full force and effect; and

10.     except as expressly set out in this Settlement Agreement in Sections III.F.3, III.F.4, III.F.5, and this Section XII, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees and/or expenses.

### XIII.  GENERAL MATTERS AND RESERVATIONS

A.     The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all Claims arising out of Released Class Members' Claims that have been or could have been asserted by any Class Member against the Mel Harris Defendants and Samserv Defendants and their related Releasees or any of them.

B.     The Settling Parties agree not to assert in any forum that the Action was brought (on the one hand) or that the Mel Harris Defendants or Samserv Defendants defended the Action (on the other hand) in bad faith or without a reasonable basis.  The Settling Parties shall not assert any Claims relating to the prosecution, defense or settlement of the Action except as necessary to enforce this Settlement Agreement.  The Settling Parties agree that the settlement relief provided in this proposed Settlement and this Settlement Agreement and the terms of this Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with experienced counsel.

C.     Matthew D. Brinckerhoff, Jonathan S. Abady, Debra L. Greenberger, Josh Zinner, Susan Shin, Carolyn E. Coffey and Ariana Lindermayer represent that they are authorized to enter into this Settlement Agreement on behalf of each of the Lead Plaintiffs and any other attorneys who have represented or who now represent any of the Lead Plaintiffs in the Action and/or with respect to Released Class Members' Claims and that (*i*) they have kept each of the Lead Plaintiffs apprised of the progress of the settlement negotiations, (*ii*) they have advised each of the Lead Plaintiffs of the terms and provisions of this Settlement Agreement, (*iii*) each of the Lead Plaintiffs has approved the terms of

this Settlement Agreement and (*iv*) none of the Lead Plaintiffs will request to be excluded from the Rule 23(b)(3) Class.

        D.     This Settlement Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter and supersedes any agreements that preceded this Settlement Agreement.  This Settlement Agreement may not be altered or modified except by written instrument executed by Class Counsel (with the permission of Lead Plaintiffs) and the Mel Harris Defendants, as well as the Samserv Defendants' Counsel if the modification specifically pertains to the Samserv Defendants. The Settling Parties expressly acknowledge that no other agreements, arrangements or understandings not described in this Settlement Agreement exist among or between them.  In entering into this Settlement Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly in this Settlement Agreement.

        E.     All Settling Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's length and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Settling Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.  Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

        F.     This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict of laws provision that would result in the application of law of another jurisdiction.

G.      Subject to Section III.G above, the Court retains continuing and exclusive

jurisdiction over this Settlement Agreement, the Settling Parties, all Class Members

(including all Class Members who submit objections pursuant to Section VIII), all

Releasors and all Releasees to adjudicate all issues relating to this Settlement Agreement

and this Settlement, including without limitation, any issues relating to the Preliminary

Approval Order, the Approval Order or the Judgment.  Subject to Section III.G, any action

arising under or to enforce this Settlement Agreement, the Preliminary Approval Order, the

Approval Order or the Judgment shall be commenced and maintained only in the Court.

H.      Whenever this Settlement Agreement requires or contemplates that a

Settling Party shall or may give notice to another Settling Party or to counsel, notice shall

be provided by e-mail, facsimile and/or overnight (excluding Saturday and Sunday)

delivery service as follows and shall be deemed effective upon receipt of such e-mail,

facsimile transmission or delivery to the e-mail, facsimile number or address, as the case

may be, below (or such other address as may be provided in writing by a Settling Party):

        1.      If to the Mel Harris Defendants, then to:

           Maria Ginzburg
           mariaginzburg@quinnemanuel.com
           Quinn Emanuel Urquhart & Sullivan, LLP
           51 Madison Avenue, 22nd Floor,
           New York, New York 10010
           Telephone:  (212) 849-7000
           Facsimile:  (212) 849-7100

and

Brett Scher
bscher@kdvlaw.com
Kaufman Dolowich & Voluck, LLP
60 Broad Street, Suite 3600
New York, NY 10004
Telephone:  (212) 485-9950
Facsimile:  (212) 485-9700

2.      If to the Lead Plaintiffs, then to:

Matthew D. Brinckerhoff
mbrinckerhoff@ecbalaw.com
Debra L. Greenberger
dgreenberger@ecbalaw.com
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Telephone:  (212) 763-5000
Facsimile:   (212) 763-5001

Josh Zinner
josh@neweconomynyc.org
Susan Shin
susan@neweconomynyc.org
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001
Telephone: (212) 680-5100
Facsimile:  (212) 925-2092

Carolyn E. Coffey
ccoffey@mfy.org
Ariana Lindermayer
alindermayer@mfy.org
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007
Telephone:  (212) 417-3700
Facsimile:   (212) 417-3891

If to the Samserv Defendants then:

Jordan Sklar
Babchik & Young, LLP
245 Main Street
White Plains, NY 10601
Tel    : 914 470-0001x15
Fax    : 914 470-0009
e-mail : jordan.sklar @babchikyoung.com

I.      All time periods set forth in this Settlement Agreement shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by a court, the day, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Legal Holiday, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have caused the office of the Clerk of the Court to be inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

J.      The Settling Parties reserve the right, subject to the Court's approval, mutually to agree in writing to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

K.      The Settling Parties, their successors and assigns, and their counsel undertake to implement this Settlement Agreement, to cooperate fully in seeking Court approval and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

L.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or by electronically transmitted signature shall be fully and legally binding on a Settling Party.

M.      All Releasees who are not Settling Parties and, subject to the Leucadia Settlement Agreement becoming Final, the Leucadia Released Parties are intended third-party beneficiaries who are entitled to enforce the terms of the Release, including the release granted under Section III.H.1.d.

Agreed to as of this 12th day of November 2015.

Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020

Josh Zinner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001

Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS

THE MEL HARRIS DEFENDANTS:

Mel S. Harris & Associates, L.L.C

_____
Name:
Title:


Mel S. Harris

_____


Michael Young

_____


David Waldman

_____


Kerry Lutz

_____


Todd Fabacher

_____

74

Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020

Josh Zinner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001

Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS

THE MEL HARRIS DEFENDANTS:

Mel S. Harris & Associates, L.L.C

Name:   Mel S Harris
Title:   Member

Mel S. Harris

Michael Young

David Waldman

Kerry Lutz

Todd Fabacher

74

THE MEL HARRIS DEFENDANTS:

_____

Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020

Mel S. Harris & Associates, L.L.C

_____

Name:
Title:

_____

Josh Zinner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001

Mel S. Harris

_____

Michael Young

_____

Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

David Waldman

_____

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS

Kerry Lutz

_____

Todd Fabacher

_____

THE MEL HARRIS DEFENDANTS:

---

Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L. Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York  10020

Mel S. Harris & Associates, L.L.C

---

Name:
Title:

---

Josh Zinner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001

Mel S. Harris

---

Michael Young

---

Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

David Waldman

---

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS

Kerry Lutz

---

Todd Fabacher

---

SAMSERV DEFENDANTS:

Samserv, Inc.

Name: _____
Title: _____

William Mlotok

_____

Benjamin Lamb

_____

Michael Mosquera

_____

John Andino

_____

SAMSERV DEFENDANTS:

Samserv, Inc.

_____
Name:
Title:

William Mlotok

_____

Benjamin Lamb

_____

Michael Mosquera

_____

John Andino

_____

SAMSERV DEFENDANTS:

Samserv, Inc.

_____
Name:
Title:

William Mlotok

_____

Benjamin Lamb

_____

Michael Mosquera

_____

John Andino

_____

75

SAMSERV DEFENDANTS:

Samserv, Inc.

_____
Name:
Title:

William Mlotok

_____

Benjamin Lamb

_____

Michael Mosquera

_____

John Andino

_____

75

# Annex 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MONIQUE SYKES, *et al.*,**<br><br>                              **Plaintiffs,**<br><br>        **vs.**<br><br><br>**MEL S. HARRIS AND ASSOCIATES, LLC,** *et al.*,<br><br>                              **Defendants.** | 09 Civ. 8486 (DC)<br><br><br>**STIPULATION OF SETTLEMENT AS TO CLAIMS AGAINST CERTAIN DEFENDANTS** |

## STIPULATION OF SETTLEMENT

WHEREAS, Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella were named as defendants in a class action brought by Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam on their own behalf and on behalf of Class Members; and

WHEREAS, Lead Plaintiffs allege that the Leucadia Defendants and the Non-Settling Defendants violated the FDCPA, RICO, the GBL and the NY Judiciary Law in connection with the collection of Consumer Debt from Class Members or attempts to collect Consumer Debt from Class Members, including obtaining Default Judgments against certain Class Members respecting the collection of such Consumer Debt; and

WHEREAS, the Leucadia Defendants and Lead Plaintiffs executed a binding Term Sheet settling all Class Claims, subject to Court approval, on December 14, 2014; and

WHEREAS, the Term Sheet required the Settling Parties to execute a settlement agreement setting out in more detail the terms of the settlement; and

WHEREAS, this Settlement Agreement embodies the settlement terms found in the Term Sheet and provides the requisite detail regarding the terms of the Settlement;

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by, between and among the undersigned, including Lead Plaintiffs (individually and in their representative capacity for the Classes) and the Leucadia Defendants, through their respective duly authorized counsel, that the Action and the matters raised by it are hereby settled and compromised as to the Leucadia Defendants, that the Action will be dismissed on the merits and with prejudice as to the Leucadia Defendants, that the Released Class Members' Claims will be released, and that the Released Releasees' Claims will be released based upon the terms and conditions set forth in this Settlement Agreement (including the Release), subject to the Court's approval and such approval becoming Final.

## I.    DEFINITIONS

A.    As used in this Settlement Agreement, the following capitalized terms have the following meanings, unless provided otherwise in this Settlement Agreement:

1.    "Action" means the class action captioned *Sykes, et al. v. Mel S. Harris and Associates, LLC, et al*, No. 09-cv-08486 (S.D.N.Y.).

2.    "Additional Settlement Payments" means L-Credit, LLC's share of any amounts LR Credit, LLC (or any of its Subsidiaries) receives after January 1, 2015 in connection with the collection of Consumer Debt from Class Members.

3.     "Administration Expenses" means all fees, costs and expenses other than Notice Expenses associated with the administration and/or implementation of this Settlement, including the fees of the Class Administrator and any fees, costs or expenses associated with vacatur of any Default Judgments; *provided however*, that Administration Expenses shall not include any fees, costs or expenses regarding administration and/or implementation of this Settlement incurred by Leucadia Defendants' Counsel, any other counsel of the Leucadia Defendants or any of the Leucadia Defendants' accountants regarding the administration and/or implementation of this Settlement other than those fees, costs and expenses incurred by Leucadia Defendants' Counsel or any other counsel of the Leucadia Defendants "at the request or direction of any court, tribunal, Office of Court Administration for the New York State Unified Court System or other New York governmental or judicial entity in connection with the Leucadia Defendants' compliance with Section III.B.1.

4.     "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

5.     "Allocation Plan" means the plan by which the Net Settlement Fund will be distributed, subject to Court approval, to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients; *provided* that Lead Plaintiffs will be solely responsible for developing the Allocation Plan, which proposed plan shall be submitted to the Court at the time the Settlement Agreement is submitted for preliminary approval.

6.     "Approval Order" means the order to be submitted to the Court as contemplated in Section X.B of this Settlement Agreement, approving the Settlement and

this Settlement Agreement and dismissing with prejudice all claims in the Action as to the

Leucadia Defendants, which order shall be submitted substantially in the form set out in

Exhibit B.

> 7.     "Attorneys' Fees and Expenses Application" means the motion(s)

for fees and expenses to be made by Class Counsel pursuant to Section IV.A below.

> 8.     "Attorneys' Fees and Expenses Award" means the amount(s) that

the Court awards to Class Counsel to compensate them for their fees and expenses in

connection with investigating the facts and circumstances of Lead Plaintiffs' claims and

prosecuting and/or settling the Action as such activities relate to the Leucadia Defendants,

as provided for in Section IV below.

> 9.     "Business Day" means a day other than a Saturday, Sunday or Legal

Holiday.

> 10.     "CAFA" means the Class Action Fairness Act, 28 U.S.C.

§§ 1332(d), 1453, 1711-15.

> 11.     "CAFA Notice" means any notice to be provided pursuant to

CAFA.

> 12.     "Claim" means any and all actions, causes of action, proceedings,

adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums

of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses,

damages, demands (whether written or oral), agreements, promises, liabilities,

controversies, costs, expenses, attorneys' fees and losses of any sort whatsoever, whether

in law or in equity (including, without limitation, injunctions, accountings, restitution and

disgorgement), and whether based on any federal, state or foreign statutory or common-law

right of action or otherwise (including, without limitation, claims based upon the FDCPA,

RICO, the GBL, and/or the NY Judiciary Law), foreseen or unforeseen, matured or

unmatured, known or unknown, accrued or not accrued, existing now or sought to be

created in the future, including Unknown Claims.

   13. "Claim Form" means one or more claim forms, as approved by the

Court, that will be included as part of the Individual Notice provided to potential Rule

23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients pursuant to

which such Class Members may submit a claim for settlement relief pursuant to the

Settlement Agreement.  The proposed Claim Form shall be  submitted to the Court at the

time the Settlement Agreement is submitted for preliminary approval

   14. "Class Administrator" means, subject to Court approval, the

administrator to be chosen by Class Counsel, subject to approval by Leucadia National

Corporation (which approval shall not be unreasonably withheld), which the Court shall

appoint in the Preliminary Approval Order to distribute the Individual Notice, cause the

Publication Notice to be published, operate the settlement website, set up and run a toll-

free telephone center to respond to inquiries from potential Class Members, receive

requests for exclusion, receive and process Claim Forms, distribute the Net Settlement

Amount in accordance with the terms of this Settlement Agreement, and otherwise

administer the terms of this Settlement Agreement.

   15. "Class Counsel" means Emery Celli Brinckerhoff & Abady LLP,

New Economy Project and MFY Legal Services, Inc.

16. "Class Members" or "Members" mean the persons or entities who are members of the Rule 23(b)(2) Class and/or the Rule 23(b)(3) Class.

17. "Class Settlement Account" means an interest-bearing account to be maintained by Class Counsel and Lead Plaintiffs into which the Settlement Fund Balance will be transferred pursuant to Section III.A.2.a of this Settlement Agreement (*i*) from which Administration Expenses, Tax Expenses and the Attorneys' Fees and Expenses Award shall be paid and (*ii*) in which the Net Settlement Fund shall be held until it is distributed to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients; *provided* that such account shall be treated for tax purposes as a Qualified Settlement Fund; *provided further* that the Leucadia Defendants shall not have any interest in or claim on the amounts held in the Class Settlement Account.

18. "Classes" mean the Rule 23(b)(2) Class and Rule 23(b)(3) Class.

19. "Complaint" means the Third Amended Class Action Complaint and Jury Demand filed in the Action on or about May 16, 2011.

20. "Complete Bar Order" means that portion of the Approval Order, the text of which shall be substantially in the form set out in Paragraphs21 and 22 of Exhibit B, that the Settling Parties shall ask the Court to enter and that is an essential term of this Settlement Agreement.

21. "Consumer Debt" means the alleged outstanding debt of consumers that is or was contained in Consumer Debt Portfolios purchased by LR Credit, LLC and/or its Subsidiaries from the original creditors that had issued the alleged debt or from intermediate purchasers of the alleged debt.

6

22.     "Consumer Debt Portfolios" means the portfolios containing alleged consumer debt purchased by LR Credit, LLC and/or its Subsidiaries.

23.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or control the direction of the management and policies of the entity, whether through ownership of voting shares, by contract, or otherwise.

24.     "Court" means the United States District Court for the Southern District of New York.

25.     "Default Judgments" means the default judgments obtained by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for LR Credit, LLC and/or its Subsidiaries against Rule 23(b)(3) Class Members.

26.     "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

27.     "Fairness Hearing" means the hearing at which the Court will be asked to make a decision, pursuant to Fed. R. Civ. P. Rule 23, as to whether this Settlement is fair, reasonable and adequate to settle the Class Members' Claims against the Leucadia Defendants and the other Releasees, and whether the Court should approve the proposed Settlement as set out in this Settlement Agreement.

28.     "FDCPA" means the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.

29.     "Final" means, when used in connection with any Court judgment or order (including any order approving the Settlement or any order approving the Settlement on appeal), that the judgment or order shall be final:

a.     if no appeal is taken, on the date on which the time to appeal from the judgment or order (including any extension of time) has expired; or

b.     if any appeal is taken from the order and judgment, the date on which all appeals therefrom – including any petitions for rehearing en banc, petitions for certiorari or any other form of review and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired and all appeals have been exhausted in a manner resulting in an affirmance of the relevant judgment or order.

30.     "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

31.     "GBL" means the New York General Business Law § 349.

32.     "Individual Notice" means the notice described in Section III.D.1 of this Settlement Agreement and in the Preliminary Approval Order (or any other order of the Court), as approved by the Court, the proposed form of which notice shall be agreed upon by the Settling Parties and submitted to the Court at the time the Settlement Agreement is submitted for preliminary approval.

33.     "Judgment" means the judgment to be submitted to the Court as contemplated in Section X.B of this Settlement Agreement, which judgment shall be submitted substantially in the form set out in Exhibit C.

8

34.     "L-Credit" means L-Credit, LLC and each and all of its members, including, without limitation, Luman, LLC and PLRC, LLC.

35.     "L-Credit, LLC" means the limited liability company formed pursuant to the November 7, 2003 Limited Liability Company Agreement of L-Credit, LLC.

36.     "Lead Plaintiffs" means Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam.

37.     "Legal Holiday" means New Year's Day, the observance of the birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal or New York state holiday.

38.     "Leucadia" means Leucadia National Corporation and each and all of (*i*) its parents, predecessors, and successors, (*ii*) its current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns and (*iii*) all other entities in which Leucadia has or had a Controlling Interest or that have or had a Controlling Interest in Leucadia; *provided* that Leucadia includes, without limitation, L-Credit, LR Credit, Jefferies Group, Inc. and Jefferies Group LLC.

39.     "Leucadia Defendants" means Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella

40.     "Leucadia Defendants' Counsel" means the law firms of Proskauer Rose LLP and McElroy, Deutsch, Mulvaney & Carpenters, LLP or any successor counsel or additional counsel of record making an appearance in the Action.

41.     "Leucadia Defendants' Settlement Counsel" means the law firm of Proskauer Rose LLP or such other counsel as shall be designated by the Leucadia Defendants.

42.     "Leucadia Settlement Account" means an interest-bearing account to be maintained by Leucadia National Corporation into which the Settlement Fund is to be paid by or at the direction of Leucadia National Corporation, and in which the Settlement Fund (and any interest accruing to such amounts) shall be held until the Leucadia Defendants are required to transfer the Settlement Fund Balance to Lead Plaintiffs as set out in Section III.A.2 of this Settlement Agreement; *provided* that, until Final Settlement Date, neither Class Members (including Lead Plaintiffs) nor Class Counsel will have any interest in or claim on the amounts held in the Leucadia Settlement Account and, if (*i*) the Settlement Agreement is not approved by the Court or (*ii*) the Court's approval of the Settlement does not become Final, all amounts held in the Leucadia Settlement Account shall remain in the ownership of Leucadia National Corporation.

43.     "LR Credit" means LR Credit, LLC, and each and all of (*i*) its parents, predecessors, successors and members, (*ii*) its current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns and (*iii*) all other entities in which LR Credit has or had a Controlling Interest

or that have or had a Controlling Interest in LR Credit, including, without limitation, the

Subsidiaries and Rushmore Recovery Management, LLC.

44.      "LR Credit, LLC" means the limited liability company formed

pursuant to the November 12, 2003 Joint Venture and Limited Liability Company

Agreement.

45.      "Luman, LLC" means the limited liability company that is a

member of L-Credit, LLC.

46.      "Mediator" means former California Superior Court Judge Daniel

Weinstein or an individual with equivalent qualifications and experience, as approved by

the Settling Parties, if Judge Weinstein is unavailable.

47.      "Mel Harris Firm" means the law firm of Mel S. Harris and

Associates, L.L.C.

48.      "Net Settlement Fund" means the balance in the Class Settlement

Account after payment (pursuant to the terms of this Settlement Agreement) of

Administration Expenses, Tax Expenses, Service Awards and the Attorneys' Fees and

Expenses Award; *provided* that the Net Settlement Fund shall include any interest that

accrues while it is held in the Class Settlement Account.

49.      "Nominal Restitution Declination" means the submission, as

described in Section VII, by which a potential Rule 23(b)(2) Nominal Restitution Recipient

declines the Nominal Restitution to which he or she is entitled under this Settlement.

50.      "Nominal Restitution Declination Deadline" means the deadline by

which a potential Rule 23(b)(2) Nominal Restitution Recipient must submit a Nominal

Restitution Declination as set out in the Preliminary Approval Order or other order of the Court.

51.     "Nominal Restitution Relief" means monetary relief provided to Rule 23(b)(2) Class Members who are Rule 23(b)(2) Nominal Restitution Recipients, which relief is ancillary to the injunctive relief that is provided to Rule 23(b)(2) Class Members.

52.     "Non-Settling Defendants" means Mel S. Harris and Associates, L.L.C., Mel S. Harris, Michael Young, David Waldman, Kerry Lutz, Todd Fabacher, Samserv, Inc., William Mlotok, Benjamin Lamb, Michael Mosquera and John Andino.

53.     "Notice" means the Individual Notice, the Claim Form the Publication Notice and the CAFA Notice.

54.     "Notice Expenses" means all fees, costs and expenses associated with providing Notice pursuant to Section III.D and the Preliminary Approval Order or any other order of the Court.

55.     "NY Judiciary Law" means the New York Judiciary Law § 487.

56.     "Objection Deadline" means the date by which objections to the Settlement described in this Settlement Agreement must be filed with the Court and served on Settlement Counsel as set out in the Preliminary Approval Order or any other order of the Court.

57.     "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action.

58.     "Preliminary Approval Order" means the order to be submitted to the Court that, among other things, authorizes that notice be provided to putative Class Members, authorizes retention of the Class Administrator and schedules the Fairness Hearing, which order shall be submitted substantially in the form set out in Exhibit A.

59.     "Publication Notice" means the notice described in Section III.D.2 of this Settlement Agreement and in the Preliminary Approval Order (or any other order of the Court), as approved by the Court, the proposed form of which notice shall be agreed upon by the Settling Parties and submitted to the Court at the time the Settlement Agreement is submitted for preliminary approval.

60.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

61.     "Release" means the Rule 23(b)(3) Release, the Rule 23(b)(2) Injunction Only Release, the Rule 23(b)(2) Nominal Restitution Release, the Settlement Release and the Releasees' Release as forth in Section III.H.

62.     "Released Class Members' Claims" means Released Rule 23(b)(3) Class Members' Claims, Released Rule 23(b)(2) Class Members' Injunction Only Claims, Released Rule 23(b)(2) Class Members' Nominal Restitution Claims and Released Class Members' Settlement Claims.

63.     "Released Class Members' Settlement Claims" means each and every Claim that one or more of the Lead Plaintiffs, any other Rule 23(b)(2) Class Member or any other Rule 23(b)(3) Class Member have asserted, could have asserted or could assert against any of the Releasees (including Leucadia Defendants' Counsel) or any

Releasor (including Class Counsel) under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to any acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the prosecution, defense or settlement of the Action or the implementation of this Settlement Agreement, including (without limitation) (*i*) the provision of Notice, (*ii*) the amount distributed to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients in connection with the Settlement and (*iii*) any tax consequence to any Class Member resulting from or arising out of the Settlement.

64.    "Released Releasees' Claims" means each and every Claim that one or more of the Leucadia Defendants, any other Releasee or any of the foregoing's respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel and Leucadia Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators and assigns have asserted, could have asserted or could assert against Lead Plaintiffs, any other Class Member or any of their respective attorneys (including, without limitation, Class Counsel) or any Releasee under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to any acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection

with, or directly or indirectly relating to, the initiation, prosecution, or settlement of the Action or the implementation of this Settlement Agreement.

        65.    "Released Rule 23(b)(2) Class Members' Injunction Only Claims" means each and every Claim that Lead Plaintiffs or any other Rule 23(b)(2) Members have as of, on or before the Final Settlement Date for injunctive relief or ancillary non-monetary equitable relief attendant to such injunctive relief that any Rule 23(b)(2) Class Member (*i*) asserted in the Action against any of the Releasees (including all claims alleged in the Complaint or in earlier complaints filed in the Action) or (*ii*) could have asserted or could assert against any of the Releasees, under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to the Operative Facts alleged in the Action regarding (*x*) the purchase of Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Class Member, (*y*) attempts to collect (pursuant to Default Judgment of otherwise) Consumer Debt from any Rule 23(b)(2) Class Member and (*z*) Default Judgments or attempts to obtain any default judgments.  Without limiting the generality of the foregoing, Released Rule 23(b)(2) Class Members' Injunction Only Claims shall specifically include, without limitation, Claims for injunctive relief or ancillary non-monetary equitable relief attendant to such injunctive relief arising out of the Operative Facts alleged in the Action respecting:

        a.    the procurement of a Default Judgment against any Rule 23(b)(2) Injunction Only Beneficiary by or on behalf of any Releasee

b.       any statement(s) or omission(s) by or on behalf of any

Releasee in connection with attempts to collect (pursuant to Default Judgment or

otherwise) Consumer Debt from any Rule 23(b)(2) Class Member, including (without

limitation) any statement(s) or omission(s) in any affidavit of merit and/or affidavit of

service filed with any New York State Court in support of attempts to collect (pursuant to

Default Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class Member;

c.       service of process, including (without limitation) allegations

of defective service of process, in connection with attempts to collect (pursuant to Default

Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class Member;

d.       use of process in connection with attempts to collect

(pursuant to Default Judgment or otherwise) Consumer Debt from any Rule 23(b)(2) Class

Member, including (without limitation) execution on any Default Judgment;

e.       attempts to collect from any Rule 23(b)(2) Class Member

(pursuant to Default Judgment or otherwise) any Consumer Debt allegedly in excess of the

amount owed by such Rule 23(b)(2) Class Member;

f.       attempts to collect from any Rule 23(b)(2) Class Member

(pursuant to Default Judgment or otherwise) any Consumer Debt that was allegedly not

owed by such Rule 23(b)(2) Class Member; and

g.       the calculation of and/or attempt to collect any interest,

attorneys' fees and/or expenses (pursuant to Default Judgment or otherwise) respecting

Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Class Member;

*provided however*, that Released Rule 23(b)(2) Class Members' Injunction Only Claims shall not include any Claim for injunctive relief or ancillary non-monetary equitable relief attendant to such injunctive relief that any Rule 23(b)(2) Class Member or any other Rule 23(b)(2) Releasor has as to (*i*) Rushmore Recovery Management, LLC arising out of any debt portfolio(s) owned in whole or in part by Rushmore Recovery Management LLC, but in which the Leucadia Defendants have no financial interest, or (*ii*) the Non-Settling Defendants.

66.    "Released Rule 23(b)(2) Class Members' Nominal Restitution Claims" means  each and every Claim that one or more Rule 23(b)(2) Nominal Restitution Recipients (*i*) asserted in the Action against any of the Releasees as of, on or before the Final Settlement Date (including all claims alleged in the Complaint or in earlier complaints filed in the Action) or (*ii*) could have asserted or could assert against any of the Releasees as of, on or before the Final Settlement Date, under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to the Operative Facts alleged in the Action regarding (*a*) attempts to obtain any default judgments, (*b*) the purchase of Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Nominal Restitution Recipients, (*c*) the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient or (*d*) the payment in total or in part of any Consumer Debt by any Rule 23(b)(2) Nominal Restitution Recipient.  Without limiting the generality of the foregoing, Released Rule

23(b)(2) Class Members' Nominal Restitution Claims shall specifically include, without limitation, Claims arising out of the Operative Facts alleged in the Action respecting:

a.     any attempt to procure a Default Judgment against any Rule 23(b)(2) Nominal Restitution Recipient by or on behalf of any Releasee;

b.     any costs incurred by any Rule 23(b)(2) Nominal Restitution Recipient defending any action (including one for default judgment) in connection with the collection of or attempts to collect Consumer Debt, including (without limitation) copying costs, travel costs, costs arising out of the time spent in defending any action (including lost wages of the Rule 23(b)(2) Nominal Restitution Recipient and/or of his or her family member(s)), court-related costs, attorney fees or expenses;

c.     any bank costs (including bounced-check fees or legal process fees) and/or costs arising from the use of check-cashing services incurred by a Rule 23(b)(2) Nominal Restitution Recipient arising from or related to the collection of or attempts to collect Consumer Debt;

d.     any costs associates with any loan(s) (including interest costs) that a Rule 23(b)(2) Nominal Restitution Recipient allegedly had to take as a result of the collection of or attempts to collect Consumer Debt;

e.     the allegedly forced use of a government credit and/or debit card or of money orders for financial transactions and any fees and expenses associated with such use as a result of the collection of or attempts to collect Consumer Debt;

f.      any adverse effect on a Rule 23(b)(2) Nominal Restitution Recipient's credit rating or report relating to the collection of or attempts to collect Consumer Debt;

g.      any adverse effect allegedly arising out of a credit rating or report negatively affected by the collection of or attempts to collect Consumer Debt, including (without limitation) an adverse effect on the Rule 23(b)(2) Nominal Restitution Recipient's ability to find housing or employment;

h.      any emotional distress experienced by a Rule 23(b)(2) Nominal Restitution Recipient arising out of collection of or attempts to collect Consumer Debt, including any alleged pressure on a Rule 23(b)(2) Nominal Restitution Recipient to enter into a settlement agreement (including but not limited to a payment plan) in connection with a Consumer Debt;

i.      any statement(s) or omission(s) by or on behalf of any Releasee in connection with the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient, including (without limitation) any statement(s) or omission(s) in any complaint, petition, affidavit of merit and/or affidavit of service filed with any New York State Court in support of the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient;

j.      service of process, including (without limitation) allegations of defective service of process, in connection with the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient;

k.      use of process in connection with the collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Recipient;

l.      payment(s) by any Rule 23(b)(2) Nominal Restitution Recipient of any Consumer Debt allegedly in excess of the amount owed by such Rule 23(b)(2) Nominal Restitution Recipient;

m.      payment(s) of by any Rule 23(b)(2) Nominal Restitution Recipient of any Consumer Debt allegedly not owed by such Rule 23(b)(2) Nominal Restitution Recipient;

n.      the calculation of, attempt to collect and/or collection of any interest, attorneys' fees and/or expenses respecting Consumer Debt owed or alleged to be owed by any Rule 23(b)(2) Nominal Restitution Recipient; and

o.      any other adverse effect or consequential damages allegedly borne by any Rule 23(b)(2) Nominal Restitution Recipient arising out of the collection of or attempts to collect Consumer Debt, including (without limitation) a loss or threatened loss of employment or a loss or threatened loss of housing;

*provided however,* that Released Rule 23(b)(2) Class Members' Nominal Restitution Claims shall not include any Claim that any Rule 23(b)(2) Nominal Restitution Recipient or any other Rule 23(b)(2) Nominal Restitution Releasor has as to (*i*) Rushmore Recovery Management, LLC arising out of any debt portfolio(s) owned in whole or in part by Rushmore Recovery Management LLC, but in which the Leucadia Defendants have no financial interest, or (*ii*) the Non-Settling Defendants.

67.     "Released Rule 23(b)(3) Class Members' Claims" means each and every Claim that one or more of the Lead Plaintiffs or any other Rule 23(b)(3) Class Member (*i*) asserted in the Action against any of the Releasees as of, on or before the Final Settlement Date (including all claims alleged in the Complaint or in earlier complaints filed in the Action) or (*ii*) could have asserted or could assert against any of the Releasees as of, on or before the Final Settlement Date, under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to the Operative Facts alleged in the Action regarding (*a*) the Default Judgments, (*b*) the purchase of Consumer Debt owed or alleged to be owed by any Rule 23(b)(3) Class Member, (*c*) the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member or (*d*) the payment in total or in part of any Consumer Debt by any Rule 23(b)(3) Class Member.  Without limiting the generality of the foregoing, Released Rule 23(b)(3) Class Members' Claims shall specifically include, without limitation, Claims arising out of the Operative Facts alleged in the Action respecting:

a.      the procurement of a Default Judgment against any Rule 23(b)(3) Class Member by or on behalf of any Releasee;

b.      any costs incurred by any Rule 23(b)(3) Class Member in (*i*) defending any action in connection with the collection of or attempts to collect Consumer Debt or (*ii*) challenging any Default Judgment entered against the Rule 23(b)(3) Class Member, including (without limitation) copying costs, travel costs, costs arising out

21

of the time spent in defending any action or challenging any Default Judgment (including lost wages of the Rule 23(b)(3) Class Member and/or of his or her family member(s)), court-related costs, attorney fees or expenses

     c. any bank costs (including bounced-check fees or legal process fees) and/or costs arising from the use of check-cashing services incurred by a Rule 23(b)(3) Class Member arising from or related to the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

     d. the loss of the use of any funds or ability to use a bank account for any period of time allegedly arising from or related to the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including (without limitation) the freezing of any bank account or the delayed receipt of any funds (including unemployment, Social Security or other benefits) by a Rule 23(b)(3) Class Member;

     e. any costs associates with any loan(s) (including interest costs) that a Rule 23(b)(3) Class Member allegedly had to take as a result of the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

     f. the allegedly forced use of a government credit and/or debit card or of money orders for financial transactions and any fees and expenses associated with such use as a result of the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

g.      any adverse effect on a Rule 23(b)(3) Class Member's credit rating or report relating to the entry of a Default Judgment or the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt;

h.      any adverse effect allegedly arising out of a credit rating or report negatively affected by the entry of a Default Judgment or the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including (without limitation) an adverse effect on the Rule 23(b)(3) Class Member's ability to find housing or employment;

i.      any emotional distress experienced by a Rule 23(b)(3) Class Member arising out of the entry of a Default Judgment or the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including any alleged pressure on a Rule 23(b)(3) Class Member to enter into a settlement agreement (including but not limited to a payment plan) in connection with a Consumer Debt;

j.      any statement(s) or omission(s) by or on behalf of any Releasee in connection with the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member, including (without limitation) any statement(s) or omission(s) in any complaint, petition, affidavit of merit and/or affidavit of service filed with any New York State Court in support of the collection of or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member;

k.      service of process, including (without limitation) allegations of defective service of process, in connection with the collection of (through Default

Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member;

l.      use of process in connection with the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member, including (without limitation) execution on any Default Judgment;

m.      payment(s) by any Rule 23(b)(3) Class Member of any Consumer Debt allegedly in excess of the amount owed by such Rule 23(b)(3) Class Member;

n.      payment(s) by any Rule 23(b)(3) Class Member of any Consumer Debt allegedly not owed by such Rule 23(b)(3) Class Member;

o.      the calculation of, attempt to collect and/or collection of any interest, attorneys' fees and/or expenses respecting Consumer Debt owed or alleged to be owed by any Rule 23(b)(3) Class Member; and

p.      any other adverse effect or consequential damages allegedly borne by any Rule 23(b)(3) Class Member arising out of the collection of (through Default Judgment or otherwise) or attempts to collect Consumer Debt, including (without limitation) a loss or threatened loss of employment or a loss or threatened loss of housing; *provided however,* that Released Rule 23(b)(3) Class Members' Claims shall not include any Claim that any Rule 23(b)(3) Class Member or any other Rule 23(b)(3) Releasor has as to (*i*) Rushmore Recovery Management, LLC arising out of any debt portfolio(s) owned in whole or in part by Rushmore Recovery Management LLC, but in which the Leucadia Defendants have no financial interest, or (*ii*) the Non-Settling Defendants.

24

68.    "Releasee" means, subject to the proviso contained in this Section
I.A.68, each and every one of, and "Releasees" mean all of, (*i*) Leucadia, (*ii*) L-Credit,
(*iii*) LR Credit, (*iv*) Luman, LLC and (*v*) all other Leucadia Defendants and, for each of the
foregoing Releasees, (*x*) the Releasee's agents, representatives, attorneys, advisors,
administrators, accountants, consultants, assigns, partners, successors-in-interest and
insurance carriers, (*y*) to the extent the foregoing Releasee is an entity, each of such
Releasee's past and present officers, directors, employees, officials, members, principals,
any and all in-house counsel and outside counsel, auditors (including any and all internal
and external auditors) and service providers and (*z*) to the extent the foregoing Releasee is
a person, each of such Releasee's estates, heirs, executors, beneficiaries, trusts and
trustees; *provided* that "Releasee" shall not include any of the Non-Settling Defendants.

69.    "Releasees' Release" means that portion of the Release as set out in
Section III.H.1.d.

70.    "Releasor" means Rule 23(b)(2) Injunction Only Releasors, Rule
23(b)(2) Nominal Restitution Releasors and Rule 23(b)(3) Releasors.

71.    "Request for Exclusion Deadline" means the date by which Rule
23(b)(3) Class Members must submit requests for exclusion from the Rule 23(b)(3) Class
as set out in the Preliminary Approval Order or other order of the Court.

72.    "RICO" means the Racketeer Influenced and Corrupt Organizations
Act, 18 U.S.C. §§ 1961-1968.

73.    "Rule 23(b)(2) Class" means the settlement class of all persons or
entities who have been or could have been sued by the Mel Harris Firm (or by any other

counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants,

including LR Credit, in actions commenced in any court located in the state of New York

and where default judgments were or could have been sought.

74.     "Rule 23(b)(2) Injunction Only Beneficiaries" means those

Members of the Rule 23(b)(2) Class who (*i*) did not make any payments whatsoever to the

Leucadia Defendants, LR Credit, LLC or any of its Subsidiaries and/or the Mel Harris

Firm in full or partial satisfaction of the amount due or allegedly due regarding Consumer

Debt, (*ii*) were putative Rule 23(b)(2) Nominal Restitution Recipients but submitted a

timely and valid Nominal Restitution Declination or (*iii*) were putative Rule 23(b)(3) Class

Members but submitted a timely and valid Request for Exclusion.

75.     "Rule 23(b)(2) Injunction Only Release" means that portion of the

Release as set out in SectionIII.H.1.c.

76.     "Rule 23(b)(2) Injunction Only Releasor" means each and every one

of, and "Rule 23(b)(2) Injunction Only Releasors" means all of, Lead Plaintiffs and all

other Rule 23(b)(2) Injunction Only Beneficiaries and, for each such Rule 23(b)(2)

Injunction Only Releasor, (*i*) the Rule 23(b)(2) Injunction Only Releasor's agents,

representatives, attorneys, advisors, administrators, accountants, consultants, assigns,

partners, successors-in-interest, insurance carriers, and any other person or entity

(including any person or entity purporting to act parens patriae for Class Members)

claiming by or through, on behalf of, for the benefit of, derivatively for, or as

representative of any other Rule 23(b)(2) Injunction Only Releasor, (*ii*) to the extent the

foregoing Rule 23(b)(2) Injunction Only Releasor is an entity, each of such Rule 23(b)(2)

Injunction Only Releaser's parents, predecessors, successors, current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries and assigns, and all other entities in which any such Rule 23(b)(2) Injunction Only Releaser has or had a Controlling Interest or that have or had a Controlling Interest in any Rule 23(b)(2) Injunction Only Releaser, and past and present officers, directors, employees, officials, members, principals, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers of any or all of the foregoing, and (*iii*) to the extent the foregoing Rule 23(b)(2) Injunction Only Releaser is a person, each of such Rule 23(b)(2) Injunction Only Releaser's estates, heirs, executors, beneficiaries, trusts and trustees.

77. "Rule 23(b)(2) Nominal Restitution Recipients" means those Members of the Rule 23(b)(2) Class against whom a Default Judgment was not obtained, but who nevertheless made payments to one or more of the Leucadia Defendants, LR Credit, LLC or any of its Subsidiaries and/or the Mel Harris Firm in full or partial satisfaction of the amount due or allegedly due regarding Consumer Debt; *provided* that potential Rule 23(b)(2) Class Members who would be Rule 23(b)(2) Nominal Restitution Recipients may decline to accept Nominal Restitution by submitting a timely and valid Nominal Restitution Declination, in which case they shall not be bound by the Rule 23(b)(2) Nominal Restitution Release, but shall remain Rule 23(b)(2) Injunction Only Beneficiaries bound by the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

78. "Rule 23(b)(2) Nominal Restitution Release" means that portion of the Release as set out in Section III.H.1.b.

79. "Rule 23(b)(2) Nominal Restitution Releasor" means each and every one of, and "Rule 23(b)(2) Nominal Restitution Releasors" means all of, Rule 23(b)(2) Nominal Restitution Recipients and, for each of the Rule 23(b)(2) Nominal Restitution Releasor, (*x*) his, her or its agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest, insurance carriers, and any other person or entity (including any person or entity purporting to act parens patriae for Class Members) claiming by or through or on behalf of, for the benefit of, derivatively for, or as representative of any Rule 23(b)(2) Nominal Restitution Releasor, (*y*) to the extent the foregoing Rule 23(b)(2) Nominal Restitution Releasor is an entity, each of such Rule 23(b)(2) Nominal Restitution Releasor's parents, predecessors, successors, current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries and assigns, and all other entities in which any such Rule 23(b)(2) Nominal Restitution Releasor has or had a Controlling Interest or that have or had a Controlling Interest in any Rule 23(b)(2) Nominal Restitution Releasor, and the past and present officers, directors, employees, officials, members, principals, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers of each of the foregoing, and (*z*) to the extent the foregoing Rule 23(b)(2) Nominal Restitution Releasor is a person, each of such Rule 23(b)(2) Nominal Restitution Releasor's estates, heirs, executors, beneficiaries, trusts and trustees.

80. "Rule 23(b)(3) Class" means the settlement class of all persons or entities who have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where Default Judgments were obtained; *provided* that, for the avoidance of doubt, all members of the Rule 23(b)(3) Class are also members of the Rule 23(b)(2) Class.  Excluded from the Rule 23(b)(3) Class are such persons or entities who submit valid and timely requests for exclusion; *provided* that, even if excluded from the Rule 23(b)(3) Class, such persons or entities shall be Rule 23(b)(2) Injunction Only Beneficiaries and bound by the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

81. "Rule 23(b)(3) Release" means that portion of the Release as set out in Section III.H.1.a.

82. "Rule 23(b)(3) Releasors" means each and every one of, and "Rule 23(b)(3) Releasors" means all of, Lead Plaintiffs and all other Rule 23(b)(3) Class Members and, for each such Rule 23(b)(3) Releasor, (*i*) the Rule 23(b)(3) Releasor's agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest, insurance carriers, and any other person or entity (including any person or entity purporting to act parens patriae for Class Members) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of any other Rule 23(b)(3) Releasor, (*ii*) to the extent the foregoing Rule 23(b)(3) Releasor is an entity, each of such Rule 23(b)(3) Releasor's parents, predecessors, successors, current and former Affiliates, divisions, business units, joint ventures

29

(regardless of percentage of interest), subsidiaries and assigns, and all other entities in which any such Rule 23(b)(3) Releasor has or had a Controlling Interest or that have or had a Controlling Interest in any Rule 23(b)(3) Releasor, and past and present officers, directors, employees, officials, members, principals, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers of any or all of the foregoing, and (*iii*) to the extent the foregoing Rule 23(b)(3) Releasor is a person, each of such Rule 23(b)(3) Releasor's estates, heirs, executors, beneficiaries, trusts and trustees.

83.     "Second Circuit" means the United States Court of Appeals for the Second Circuit.

84.     "Service Award" means each and every one of, and "Service Awards" means all or some of the awards made by the Court to each of the Lead Plaintiffs to compensate such Lead Plaintiff for his or her time and effort in commencing and pursuing the Action.

85.     "Service Award Application" means the application by which each of the Lead Plaintiffs shall seek a Service Award.

86.     "Settlement" means the settlement terms, conditions and other provisions memorialized in this Settlement Agreement.

87.     "Settlement Agreement" means this Stipulation of Settlement and the Exhibits attached hereto, including any subsequent written amendments to the Stipulation of Settlement and/or its Exhibits.

88.     "Settlement Amount" means the amount of forty-six million dollars ($46,000,000).

89.     "Settlement Counsel" means Class Counsel and Leucadia Defendants' Settlement Counsel.

90.     "Settlement Fund" means the aggregate of the Settlement Amount and the Additional Settlement Payments.

91.     "Settlement Fund Balance" means the amount held in the Leucadia Settlement Account (including any interest that has accrued) at the time the Settlement Fund is transferred to Lead Plaintiffs pursuant to SectionIII.A.2 of this Settlement Agreement; *provided* that deducted from the Settlement Fund prior to such transfer shall be any Administration Expenses or Tax Expenses incurred before or as of the Final Settlement Date that Leucadia National Corporation has paid (or has caused to be paid) or will be required to pay (or cause to be paid); *provided* that, prior to the time the Settlement Fund is transferred pursuant to Section III.A.2, the Leucadia Defendants' Counsel shall advise Class Counsel of the amounts that have been or will be deducted from the Settlement Fund prior to transfer and, to the extent Class Counsel in good faith disputes any such deductions and the Settling Parties are unable to resolve such dispute, the Settling Parties shall submit the dispute to the Mediator for resolution consistent with Section III.G.

92.     "Settling Parties" means Lead Plaintiffs (on behalf of themselves and the Class Members) and the Leucadia Defendants.

93.     "Settlement Release" means that portion of the Release as set out in Sections III.H.1.a(2), III.H.1.b(2) and III.H.1.c(2).

94.     "Subsidiary" means each and every one of, and "Subsidiaries" mean all or some of LR Credit 1, LLC, LR Credit 2, LLC, LR Credit 3, LLC, LR Credit 4, LLC, LR Credit 5, LLC, LR Credit 6, LLC, LR Credit 7, LLC, LR Credit 8, LLC, LR Credit 9, LLC, LR Credit 10, LLC, LR Credit 11, LLC, LR Credit 12, LLC, LR Credit 13,  LLC, LR Credit 14, LLC, LR Credit 15, LLC, LR Credit 16, LLC, LR Credit 17, LLC, LR Credit 18, LLC, LR Credit 19, LLC, LR Credit 20, LLC, LR Credit 21, LLC, LR Credit 22, LLC, LR Credit 23, LLC.

95.     "Tax Expenses" means (*i*) all taxes on the income from the monies while held in the Leucadia Settlement Account, (*ii*) all taxes on the income of the monies while held in the Class Settlement Account and (*iii*) any expenses and costs incurred in connection with the taxation of the amount held in the Leucadia Settlement Account and/or the Class Settlement Account (including expenses of tax attorneys and accountants); *provided however*, that Tax Expenses shall not include any fees, costs or expenses in connection with the taxation of the amount held in the Leucadia Settlement Account incurred by the Leucadia Defendants' Counsel or any of the Leucadia Defendants' tax counsel or accountants.

96.     "Term Sheet" means the December 14, 2014 binding agreement in principle executed by Class Counsel (on behalf of Lead Plaintiffs and the Classes) and Leucadia Defendants' Settlement Counsel (on behalf of the Leucadia Defendants).

97.     "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Settlement Agreement under Section XII.D of this Settlement Agreement.

98.     "Unknown Claim" means any and all (*i*) Released Rule 23(b)(3)

Class Members' Claims that any Rule 23(b)(3) Releasor does not know or suspect exist

with respect to one or more Releasees at the time of the release of the Releasees,

(*ii*) Released Rule 23(b)(2) Class Members' Injunction Only Claims that any Rule 23(b)(2)

Injunction Only Releasor does not know or suspect exist with respect to one or more

Releasees at the time of the release of the Releasees, (*iii*) Released Rule 23(b)(2) Class

Members' Nominal Restitution Claims that any Rule 23(b)(2) Nominal Restitution

Releasor does not know or suspect exist with respect to one or more Releasees at the time

of the release of the Releasees, (*iv*) Released Class Members' Settlement Claims that any

Releasor does not know or suspect exist with respect to one or more Releasees or any other

Releasor at the time of the release of the Releasees and Releasors and (*v*) Released

Releasees' Claims that any Releasee does not know or suspect exist with respect to one or

more Releasors or any other Releasee at the time of the release of the Releasors and

Releasees, which, if known by such Releasee or Releasor (as the case may be), might have

affected his, her or its decision(s) concerning this Settlement Agreement.  As to any and all

Released Rule 23(b)(3) Class Members' Claims, Released Rule 23(b)(2) Class Members'

Injunction Only Claims, Released Rule 23(b)(2) Class Members' Nominal Restitution

Claims, Released Class Members' Settlement Claims and Released Releasees' Claims,

each of the Settling Parties and Settlement Counsel stipulate and agree that, upon the Final

Settlement Date, they shall expressly waive, and each other Class Member, Releasee and

Releasor shall be deemed to have waived, and by operation of the Approval Order and the

Judgment shall have expressly waived, any and all provisions, rights and benefits

33

conferred by any national, state, territorial, or other local law of the United States or of any

other country, or any principle of federal or common law, that is similar, comparable, or

equivalent to California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor
> at the time of executing the release, which if known by him
> or her must have materially affected his or her settlement
> with the debtor.

The Settling Parties and Settlement Counsel acknowledge, and all other Class Members,

Releasees and Releasors by operation of law shall be deemed to have acknowledged, that

the inclusion of Unknown Claims in the Claims released pursuant to this Settlement

Agreement was separately bargained for and is a key element of this Settlement

Agreement.

      B.    Capitalized terms used in this Settlement Agreement but not defined above

shall have the meanings ascribed to them in this Settlement Agreement.

## II.    BACKGROUND

### A.    Initial Court Proceedings

      1.    On or about October 6, 2009, plaintiff Monique Sykes filed a

complaint on behalf of herself against the Mel Harris Firm, Mel S. Harris, Michael Young,

Kerry Lutz, Mel Harris John/Jane Does 1-20, LR Credit 18, LLC, L-Credit, LLC, Leucadia

National Corporation, LR Credit John/Jane Does 1-20, Samserv, Inc., William Mlotok,

Todd Fabacher, Benjamin Lamb and Samserv John/Jane Does 1-20 claiming violations of

the FDCPA and the GBL in connection with the named defendants' attempts to collect

Consumer Debt from her in New York State Court.  Ms. Sykes alleged, among other

things, that (*i*) contrary to the affidavit of service submitted, she had not been served with the summons and complaint and (*ii*) the affidavit of merit on which a default judgment had been obtained against her was false.  Ms. Sykes further alleged that, as a consequence of defendants' actions, she had suffered economic harm, including copying and transportation costs and lost employment opportunities for her husband.

2.    Approximately two months later (on or about December 28, 2009), plaintiffs Monique Sykes, Ruby Colon, Rea Veerabadren and Fatima Graham filed an amended class action complaint and jury demand on behalf of themselves and all others similarly situated naming the same defendants named in Ms. Sykes' original complaint, as well as David Waldman, LR Credit, LLC, LR Credit 10, LLC, LR Credit 12, LLC, Joseph Orlando, Philip Cannella and Michael Mosquera.  Plaintiffs claimed violations of the FDCPA, RICO and the GBL based upon allegations by each of the named plaintiffs that were similar to those made by Ms. Sykes in her original complaint, as well as economic harm allegedly suffered as a consequence of defendants' conduct.

3.    At a March 15, 2010 pretrial conference, the Court ordered, among other things, that plaintiffs file a second amended complaint by March 31, 2010.

4.    On March 31, 2010, plaintiffs Monique Sykes, Ruby Colon, Rea Veerabadren, Fatima Graham, Kelvin Perez, Saudy Rivera, Paul Robinson and Enid Roman filed a second amended class action complaint and jury demand on behalf of themselves and all others similarly situated naming the same defendants named in the amended class action complaint and jury demand, as well as LR Credit 14, LLC, LR Credit 19, LLC, John Andino, Husam Al-Atrash and Assmat Abdelrahman.  Plaintiffs claimed

violations of the FDCPA, RICO, the GBL and, as to the Mel Harris defendants who are

attorneys, the NY Judiciary Law, based upon allegations and claims for economic harm by

each of the named plaintiffs that were similar to those made in the original complaint and

the amended class action complaint and jury demand.

        5.      Pursuant to the Court's March 15, 2010 order, the defendants sought

permission to move to dismiss the second amended class action complaint and jury

demand.  The Court granted permission, and defendants filed motions to dismiss on or

about May 7, 2010 challenging all of the claims made by plaintiffs and the subject matter

jurisdiction of the Court.

        6.      After full briefing on the motions to dismiss, the Court issued a

December 29, 2010 opinion dismissing (*i*) plaintiff Fatima Graham's FDCPA claims,

(*ii*) plaintiffs' claims alleging a distinct Leucadia RICO enterprise, a distinct Mel Harris

RICO enterprise and a distinct Samserv RICO enterprise, (*iii*) the substantive RICO claims

against David Waldman, Joseph Orlando, Philip Cannella, Benjamin Lamb, Michael

Mosquera, John Andino, Husam Al-Atrash and Assmat Abdelrahman and (*iv*) the RICO

conspiracy and GBL claims against David Waldman, Joseph Orlando and Philip Cannella.

The Court denied the motions to dismiss with respect to all other claims.

        7.      In connection with a March 18, 2011 pretrial conference, the Court

ordered, among other things, that plaintiffs file their motion for class certification by

March 31, 2011.  Based upon plaintiffs' uncontested request, this date was later continued

by the Court until April 15, 2011.

8.      On April 15, 2011, plaintiffs moved for certification of a class pursuant to Fed. R. Civ. P. Rule 23(b)(1)( A), (b)(2) and/or (b)(3).  As part of their motion, plaintiffs also requested leave to file a third amended complaint in which they sought to (*i*) add a plaintiff and eight defendants and (*ii*) add treble damages as a form of relief for plaintiffs' claim under the GBL and the NY Judiciary Law.

9.      Five of the plaintiffs named in the second amended class action complaint and jury demand (Ruby Colon, Fatima Graham, Saudy Rivera, Paula Robinson and Enid Roman) resolved their claims with the defendants pursuant to Fed. R. Civ. P. Rule 68 Offers of Judgment, and judgments were filed with respect to those plaintiffs on April 18, 2011.

10.      After meeting with the Court on April 26, 2011, the parties agreed pursuant to a May 6, 2011 stipulation that plaintiffs could file a third amended complaint (*i*) removing as named plaintiffs those individuals who had accepted defendants' Rule 68 Offers of Judgment and as defendants LR Credit 12, LLC and LR Credit 19, LLC and (*ii*) adding an additional plaintiff (Clifton Armoogam) and an additional defendant (LR Credit 21).  Consistent with that stipulation, Lead Plaintiffs filed the Complaint, which makes claims under the FDCPA, RICO, the GBL and, as to the Mel Harris defendants who are attorneys, the NY Judiciary Law, based upon allegations by each of the Lead Plaintiffs that are similar to those made in earlier-filed complaints, including allegations of economic harm suffered by each named Lead Plaintiff.

11.     After full briefing and oral argument, the Court issued a September 4, 2012 opinion granting Lead Plaintiffs' motion to certify a Fed. R. Civ. P. Rule 23(b)(2) class and a Fed. R. Civ. P. Rule 23(b)(3) class and appointing Class Counsel.

12.     In an October 2, 2012 letter to the Court, Class Counsel advised the Court that the parties had agreed to submit the case to mediation.  The Court adjourned a status conference scheduled for October 3, 2012 until November 13, 2012.  The Court later rejected the parties' joint request to adjourn the November 13, 2012 status conference.

13.     As ordered by the Court at the November 13, 2012 status conference, the parties submitted a scheduling order on December 10, 2012 that continued the Court's stay of all proceedings (including any submission by Lead Plaintiffs of a proposed class certification order), but set deadlines for completion of discovery.

B.     **Mediation**

1.     In November 2012, the parties agreed to mediate before former California Superior Court Judge Daniel Weinstein.

2.     Prior to meeting with Judge Weinstein, Leucadia Defendants' Settlement Counsel made a presentation to Class Counsel on November 29, 2012 setting out the Leucadia Defendants' factual and legal positions regarding Lead Plaintiffs' claims.

3.     A full-day mediation session attended by counsel for all of the parties was held with Judge Weinstein on December 5, 2012.  At the meeting, Class Counsel made a presentation to defendants setting out Lead Plaintiffs' factual and legal positions regarding their claims.

4.     The parties were unable to resolve the claims at the December 5, 2012 meeting, but Leucadia Defendants' Settlement Counsel and Class Counsel continued to meet both in person and telephonically regarding a possible resolution throughout December 2012 and January 2013.  Judge Weinstein and his colleague Michelle Yoshida also continued to work with the parties in an attempt to reach a resolution of the Action.

5.     The parties were unable to resolve their differences during this period.

6.     In a February 7, 2013 letter, Lead Plaintiffs advised the Court that the parties' settlement negotiations had reached an impasse and requested that the Court lift the stay of discovery.  The Court lifted the stay of discovery in a March 5, 2013 order.

C.     **The Court's Class Certification Order**

1.     With their February 7, 2013 letter, Lead Plaintiffs also submitted to the Court a draft class certification order.

2.     In a February 8, 2013 letter, the Leucadia Defendants (as well as the Non-Settling Defendants) advised the Court that they disagreed with the wording of Lead Plaintiffs' proposed class certification order and sought a clarification from the Court that the class did not include individuals to the extent that their only claimed "damage" was payment of the debt.

3.     After requesting additional briefing on the language of the certification order from the parties, the Court entered a March 28, 2013 order certifying Fed. R. Civ. P. Rule 23(b)(2) and Fed. R. Civ. P. Rule 23(b)(3) classes and appointing

Class Counsel.  The Court denied defendants' request to clarify the language submitted by Lead Plaintiffs.

        D.      **Second Circuit Proceedings**

        1.      On April 10, 2013, the Leucadia Defendants filed a Fed. R. Civ. P. 23(f) petition with the Second Circuit seeking leave to file an interlocutory appeal regarding the Court's class certification order.  The Non-Settling Defendants filed parallel petitions.

        2.      On July 19, 2013, the Second Circuit granted defendants' petitions.

        3.      On August 13, 2013, the Court entered the parties' amended stipulation and proposed order to stay all discovery and/or discovery proceedings (other than certain limited discovery agreed to between the parties) pending the Second Circuit's opinion on the Rule 23(f) appeal.

        4.      After an agreed-upon expedited briefing schedule, the Second Circuit heard oral argument on the defendants' appeal in February 2014.   The appeal was still pending at the time the Term Sheet was executed.  In a February 10, 2015 opinion and judgment, the Second Circuit affirmed the Court's March 28, 2013 class certification order.

        E.      **Execution of the Term Sheet**

        1.      In October 2014, Leucadia Defendants' Settlement Counsel and Class Counsel discussed whether their respective clients had any interest in re-engaging in settlement discussions.

2.      Between then and December 14, 2014, the Settling Parties engaged

in contentious, arm's-length settlement discussions, which culminated in the Term Sheet

executed on December 14, 2014.

F.      **Discovery and Information Exchange**

1.      Substantial discovery had been conducted by the Settling Parties in

the Action before the Term Sheet was executed, including the production of over 500,000

pages of documents by defendants (320,000 of which had been produced by the Leucadia

Defendants) and the production of over 5,000 pages of documents by Lead Plaintiffs.

2.      Both Lead Plaintiffs and the defendants (including the Leucadia

Defendants) have served and responded to written interrogatories.

3.      In addition, 14 depositions have been taken, including depositions of

three representatives of the Leucadia Defendants.  The three Leucadia-related individuals

who have been deposed were among the most knowledgeable individuals regarding the

Leucadia Defendants' involvement in the purchase and collection of Consumer Debt.

4.      The named plaintiffs also have been deposed.

5.      As noted above, the Settling Parties exchanged information

regarding their factual and legal positions in connection with the mediation conducted in

late 2012.  As part of that mediation, the Leucadia Defendants also provided Lead

Plaintiffs with certain factual information regarding the Default Judgments.

6.      In addition, as agreed in the Term Sheet, prior to execution of the

Settlement Agreement, the Leucadia Defendants obtained from the Mel Harris Firm

additional factual data regarding Class Members that Lead Plaintiffs deemed necessary to

41

allow them to develop the Allocation Plan.  This information was provided to Lead Plaintiffs based upon their agreement not to use the information against the Leucadia Defendants in the Action or in any other proceeding, or in connection with any other Claims asserted against the Leucadia Defendants.

      G.     **Experts**

      1.     Throughout the pendency of the Action, including during the mediation and settlement negotiations, Lead Plaintiffs and the Leucadia Defendants have been advised by various consultants and experts, including individuals with expertise in consumer protection and consumer finance issues.

      H.     **Settlement Considerations**

      1.     Based upon Class Counsel's investigation and evaluation of the facts and law relating to the Claims alleged in the Action, Class Counsel's pre- and post-filing investigations, Class Counsel's consultation with experts, the discovery that has been conducted in the Action and the factual and legal information that has been provided to Class Counsel as part of the mediation and pursuant to the Term Sheet, Lead Plaintiffs have agreed on behalf of themselves and Class Members to settle the Action and release the Releasees as to the Released Class Members' Claims pursuant to the terms of this Settlement Agreement after considering, among other things:  (*i*) the substantial benefits that the terms of this Settlement Agreement will provide to Class Members, (*ii*) the attendant risks of litigation, especially in complex consumer actions such as this one, (*iii*) the defenses available to the Leucadia Defendants (including whether the Court would have subject matter jurisdiction to address certain of Class Members' claims), (*iv*) the

ability to maintain one or more certified classes through trial, (*v*) the difficulties and delays inherent in litigation, (*vi*) sessions with the Mediator, (*vii*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members, (*viii*) the new rules recently adopted by the New York Court System regarding the process to be used in consumer debt collection cases in New York State Courts, (*ix*) the ability to expand the settlement Classes to include individuals who were subject to debt collection efforts by the Leucadia Defendants throughout New York State and not just in New York City and (*x*) Lead Plaintiffs' and Class Counsel's belief that the proposed Settlement is fair, reasonable and adequate and in the best interests of Class Members.

2.     Although the Leucadia Defendants expressly deny any of the wrongdoing as alleged in the Action or in connection with the purchase or collection of Consumer Debt, and do not concede any wrongdoing or liability in connection with the facts or Claims that have been, could have been or could be asserted in the Action, they consider it desirable to settle the Action and have the claims against them dismissed with prejudice because the proposed Settlement would, among other things:  (*i*) bring to an end the expenses, burdens and uncertainties associated with continued litigation of the Claims asserted in the Action, (*ii*) finally put to rest those Claims and the underlying matters and (*iii*) confer benefits upon them, including the further avoidance of disruption of their businesses and lives due to the pendency and defense of the Action.

## III.    TERMS AND CONDITIONS OF THE SETTLEMENT

### A.    Settlement Fund

#### 1.    Creation of Settlement Fund

a.    Within fifteen (15) Business Days following the Execution Date, Leucadia National Corporation will contribute or cause to be contributed to the Leucadia Settlement Account the Settlement Amount and any and all Additional Settlement Payments collected as of the Execution Date.

b.    Within fifteen (15) Business Days following the close of each month (starting with the first full month after the Execution Date) until the Final Settlement Date, the Leucadia Defendants will deposit in the Leucadia Settlement Account any and all Additional Settlement Payments.

#### 2.    Transfer of the Settlement Fund to Class Settlement Account

a.    Within five (5) Business Days following the Final Settlement Date, Leucadia National Corporation will transfer or cause to be transferred to Lead Plaintiffs the Settlement Fund Balance by causing it to be deposited in the Class Settlement Account.

b.    Once the Final Settlement Date has occurred, no portion of the Settlement Fund Balance will revert to any of the Leucadia Defendants.

c.    If a bankruptcy case is commenced as to Leucadia National Corporation under Title 11 of the United States Code, or a trustee, receiver or conservator is appointed under United States bankruptcy law, and if a Final order and/or judgment of a court of competent jurisdiction is entered determining that the transfer of the Settlement

44

Fund Balance (or any portion of it) by or on behalf of Leucadia National Corporation to

the Class Settlement Account is a voidable preference, voidable transfer or fraudulent

transfer, and if the funds in the Class Settlement Account are actually clawed back by the

debtor's estate and become unavailable to the Classes before the initial distribution of the

Net Settlement Fund has been made to Rule 23(b)(3) Class Members and Rule 23(b)(2)

Nominal Restitution Recipients, then Class Counsel may declare the entire Settlement null

and void.

    3.    **Treatment of Class Settlement Account as Qualified Settlement Fund**

    a.    All necessary steps to enable the Class Settlement Account

to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the

filing by Class Counsel and/or its agents of all elections and statements required for tax

purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant

statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all

taxable years in which the Class Settlement Account is in existence, beginning with the

date of its establishment.  Class Counsel shall be the "administrator" of the Qualified

Settlement Fund(s) for tax purposes under Treas. Reg. §§ 1.468B-0 through 1.468B-5,

shall file or cause to be filed on a timely basis any required federal, state and local tax

returns, and shall cause any taxes due on the income of the Qualified Settlement Fund to be

paid from the Class Settlement Account.  The Settling Parties agree that the Class

Settlement Account shall be treated as a Qualified Settlement Fund, as provided in Treas.

Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to

any relation-back election required to treat the Class Settlement Account as a Qualified

Settlement Fund from the earliest date possible.  In no event shall any of the Leucadia

Defendants have any responsibility whatsoever for filing elections or other required

statements, or tax returns, or for paying costs associated therewith, any taxes due, or the

expenses of notice or administration of the Class Settlement Account.  Class Counsel and

the Leucadia Defendants shall cooperate to the extent necessary to comply with this

Section III.A.3  Leucadia National Corporation agrees to provide or cause to be provided

promptly to Class Counsel the statement described in Treas. Reg. §1.468B-3(e).

> b.      Upon reasonable request by Leucadia National Corporation,

Class Counsel shall make best efforts promptly to provide to Leucadia National

Corporation all information reasonably available to Class Counsel and requested in

connection with any tax returns that Leucadia must file or any other report or filing that

Leucadia or any other Releasee must make concerning the Settlement Fund or any portion

of it.

> 4.      **Distribution of the Net Settlement Amount**

> a.      If approval of the proposed Settlement becomes Final, the

Net Settlement Amount shall be distributed pursuant to such Allocation Plan as the Court

approves.

> b.      No person or entity shall have any Claim against Lead

Plaintiffs, Class Counsel, the Class Administrator, any of the foregoing's agents or any

Releasee (including the Leucadia Defendants and Leucadia Defendants' Counsel) relating

to or arising out of any distributions or lack thereof made under any Court-approved

Allocation Plan, this Settlement Agreement, or orders of the Court.

           c.      The Settling Parties understand and agree that,

notwithstanding any other provision of this Settlement Agreement, a court-ordered or

court-approved change to the Allocation Plan as proposed by Lead Plaintiffs shall not

operate to modify, terminate or cancel this Settlement or this Settlement Agreement or

affect the finality of the Approval Order, the Judgment or any other orders entered by the

Court giving effect or pursuant to this Settlement Agreement, including those provisions

giving effect to the Release.

           d.      Neither the Leucadia Defendants nor the other Releasees

(including Leucadia Defendants' Counsel) shall have any role in, responsibility for, or

liability as to or in connection with (*i*) the Allocation Plan, (*ii*) the form, substance,

method, or manner of allocation, (*ii*) the administration or distribution of the Net

Settlement Amount, (*iv*) any tax liability (if any) that a Class Member might incur as a

result of this Settlement Agreement or (*v*) the result of any action taken pursuant to this

Settlement Agreement, the amounts of claims or distribution of the Net Settlement Amount

or (except as set out in Section III.A.3) the maintenance of the Class Settlement Account as

a Qualified Settlement Fund.

           e.      Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal

Restitution Recipients shall look solely to the Net Settlement Amount for settlement and

satisfaction of all Released Rule 23(b)(3) Class Members' Claims and Released Rule

23(b)(2) Class Members' Nominal Restitution Claims, respectively, and only to the extent

expressly provided by this Settlement Agreement, the Court-approved Allocation Plan, or any order of the Court.  Under no circumstances will any of the Settling Parties or any Releasees be responsible for the payment of any fees, costs, expenses or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

              f.       To the extent that any monies remain in the Class Settlement Account after the Class Administrator has caused initial distributions to be made from the Net Settlement Amount to all Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients, such monies shall be (*i*) used for the payment of any unpaid Administration Expenses arising out of redistribution and then (*ii*) distributed to Class Members who have cashed their initial distribution checks and who would receive at least the minimal amount as set forth in the Allocation Plan from such redistribution.  If any funds remain in the Class Settlement Account after such redistribution(s), or if any such redistribution is not economically feasible, the unpaid residue shall, subject to Court approval, be given to one or more not-for-profit organizations identified by Lead Plaintiffs that operate programs designed to benefit persons adversely affected by consumer debt collection practices.

        B.      **Equitable and Injunctive Relief**

           1.       Within 30 Business Days following the Final Settlement Date, LR Credit, LLC will transfer, convey and/or provide, to an entity to be identified by Lead Plaintiffs, the Consumer Debt Portfolio assets held, as of December 14, 2014, by LR Credit, LLC or any of its Subsidiaries, related to the Classes; *provided* that for the

avoidance of doubt, the intent of this Section III.B.1 is to transfer, convey and/or provide

assets in the form of debt portfolios, and any Default Judgments associated therewith,

owned by LR Credit, LLC or any of its Subsidiaries, to an entity designated by Lead

Plaintiffs to enable Lead Plaintiffs to (*i*) halt all collection activities and (*ii*) seek to have

such Default Judgments vacated by the courts of the State of New York; *provided*

*however*, that Lead Plaintiffs, with the cooperation of the Leucadia Defendants (including,

without limitation executing documents and making best efforts to provide data and

documentation requested by Class Counsel), will be solely responsible for taking all steps

necessary to vacate the Default Judgments, with all Administrative Expenses relating

thereto to be paid from the Settlement Fund, and Lead Plaintiffs' success or lack thereof in

vacating the Default Judgments shall not be grounds for termination of this Settlement or

this Settlement Agreement.

        2.      The Leucadia Defendants warrant that the following is a complete

list of LR Credit, LLC Subsidiaries:  LR Credit 1, LLC, LR Credit 2, LLC, LR Credit 3,

LLC, LR Credit 4, LLC, LR Credit 5, LLC, LR Credit 6, LLC, LR Credit 7, LLC, LR

Credit 8, LLC, LR Credit 9, LLC, LR Credit 10, LLC, LR Credit 11, LLC, LR Credit 12,

LLC, LR Credit 13,  LLC, LR Credit 14, LLC, LR Credit 15, LLC, LR Credit 16, LLC, LR

Credit 17, LLC, LR Credit 18, LLC, LR Credit 19, LLC, LR Credit 20, LLC, LR Credit

21, LLC, LR Credit 22, LLC and LR Credit 23, LLC.

        C.     **Other Injunctive Relief**

        1.      Since December 14, 2014, neither L-Credit, LLC nor LR Credit,

LLC (or any of its Subsidiaries) has (*i*) purchased any additional portfolios of consumer

debt or (*ii*) to the best of the Leucadia Defendants' knowledge, sought any additional

Default Judgments on any Consumer Debt Portfolios that have already been purchased.

        2.      L-Credit, LLC and LR Credit, LLC (and its Subsidiaries) agree that,

pending the Final Settlement Date, they will not (*i*) purchase any additional portfolios of

consumer debt or (*ii*) seek any additional Default Judgments on any Consumer Debt

Portfolios that have already been purchased; *provided however*, that this Section III.C.2

(*i*) shall be replaced on the Final Settlement Date by the parallel permanent injunctive

provision that is contained in the Approval Order (Exhibit B at Paragraph 20) or (*ii*) shall

terminate if the Final Settlement Date does not occur.

        3.      The Leucadia Defendants agree to entry of a permanent injunction

barring and enjoining L-Credit, LLC and LR Credit, LLC (or any of its Subsidiaries) from

(*i*) purchasing any additional portfolios of consumer debt or (*ii*) seeking any additional

Default Judgments or pursuing collection activities on any Consumer Debt Portfolios that

have already been purchased, which injunction provision shall be part of the Approval

Order and shall become applicable on the Final Settlement Date.

      D.    **Notice to Class**

        1.     **Individual Notice**

           a.     Subject to the requirements of the Preliminary Approval

Order or any other order of the Court, the Settling Parties will cause the Class

Administrator to provide Individual Notice by first-class mail to the last-known

address(es), updated using publicly-available databases, of all potential Rule 23(b)(3)

Class Members and Rule 23(b)(2) Nominal Restitution Recipients.  A copy of the Claim Form will be mailed along with the Individual Notice.

    b.  The Individual Notice shall be mailed at least ninety (90) days prior to the earlier of the Objection Deadline, the Request for Exclusion Deadline or the Nominal Restitution Declination Deadline.

    c.  If any of the Settling Parties is aware of a putative Rule 23(b)(3) Class Member and/or Rule 23(b)(2) Nominal Restitution Recipient having a pending action as of the Execution Date against one or more of the Leucadia Defendants relating in any way to Released Rule 23(b)(3) Class Members' Claims and/or Released Rule 23(b)(2) Class Members' Nominal Restitution Claims, each of the Settling Parties will advise the other of any such putative Rule 23(b)(3) Class Member and/or Rule 23(b)(2) Nominal Restitution Recipient of whom they are aware and, in addition to providing Individual Notice to such putative Rule 23(b)(3) Class Member or Rule 23(b)(2) Nominal Restitution Recipient, the Settling Parties will also cause the Class Administrator to send the Individual Notice to the attorney representing such Rule 23(b)(3) Class Member or Rule 23(b)(2) Nominal Restitution Recipient in the pending action.

    d.  The Settling Parties will also cause the Class Administrator to post the Individual Notice on its website by no later than the date on which the first Individual Notices are mailed to potential Rule 23(b)(3) Class Members and/or Rule 23(b)(2) Nominal Restitution Recipients.

2.      **Publication Notice**

a.      Subject to the requirements of the Preliminary Approval

Order or any other order of the Court, the Settling Parties will cause the Class

Administrator to publish the Publication Notice in each of the following publications:  the

*New York Daily News,* the *New York Post*, *AM New York*, *New York Metro*, *El Diario*, the

*Times Union* and the *Buffalo News*.

b.      The Publication Notice will be published at least sixty (60)

days prior to the earlier of the Objection Deadline, the Request for Exclusion Deadline or

the Nominal Restitution Declination Deadline.

3.      **CAFA Notice**

a.      The Settling Parties will also provide or cause to be provided

CAFA Notice to appropriate federal and state officials as required by CAFA; *provided*

that, in scheduling hearings relating to the Court's determination whether to approve the

proposed Settlement and this Settlement Agreement, the Settling Parties shall take into

account the time periods prescribed in CAFA.

4.      **Notice Expenses**

a.      Leucadia National Corporation shall pay or cause to be paid

all Notice Expenses; *provided* that this obligation is separate from, and in addition to,

Leucadia National Corporation's obligation to fund, or cause to be funded, the Settlement

Fund with the Settlement Amount and Additional Settlement Payments.

E.    **Class Administrator**

1.    As provided in the Preliminary Approval Order, the Class Administrator shall be appointed to help implement the Settlement contemplated by this Settlement Agreement.  The Leucadia Defendants shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including any acts that the Class Administrator, Lead Plaintiffs or Class Counsel are required to undertake pursuant to this Settlement Agreement).

2.    In using potential Class Members' confidential information for purposes of providing Notice or making distributions to Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients, the Class Administrator shall act as Class Counsel's agent and shall (*i*) use such information only in connection with the administration of the proposed Settlement (including providing Notice) and (*iii*) take reasonable measures to maintain the security of the confidential information.

3.    All Administration Expenses shall be paid from the Settlement Fund.

F.    **Communications Regarding the Settlement**

1.    The Settling Parties agree to keep the terms of this Settlement Agreement confidential until such time as the Settling Parties submit this Settlement Agreement to the Court for preliminary approval pursuant to Section IX.A; *provided however*, that Lead Plaintiffs are permitted, after first notifying Leucadia Defendants' Settlement Counsel, to advise (*i*) potential designees for receipt of the Consumer Debt Portfolios as contemplated in Section III.B.1 and/or (*ii*) the Office of Court Administration

53

for the New York State Unified Court System or other governmental entities regarding the terms of this Settlement Agreement for purposes of pursing vacatur of the Default Judgments contemplated in Section III.B.1.

2.     The Settling Parties, Class Counsel and Leucadia Defendants' Settlement Counsel agree that (*i*) they will cooperate to ensure that any statements about the proposed Settlement are balanced, fair and accurate and (*ii*) none of them will make any comments to the media respecting Lead Plaintiffs, the Leucadia Defendants or the Settlement that are inconsistent with the terms or purposes of this Settlement Agreement.

3.     The Settling Parties further agree that they will not, consistent with their duties of candor to the Court or any other reviewing court, assert positions in any court (whether directly or indirectly) or aid any other entity in asserting positions in any court (whether directly or indirectly) that may compromise the enforceability or approval of this Settlement Agreement.

4.     The Settling Parties agree to provide each other with the opportunity to review and comment on each other's press releases (if any) announcing the Settlement.

G.     **Dispute Resolution**

1.     If the Settling Parties have a dispute concerning the Notice to be provided to Class Members or the administration or implementation of this Settlement Agreement, such dispute shall be submitted to the Mediator for binding, nonreviewable arbitration.

2.     The first twenty-five thousand dollars ($25,000) of any amounts due to the Mediator shall be borne by the Leucadia Defendants, and all amounts due to the

Mediator in excess of twenty-five thousand ($25,000) shall be borne one-half (1/2) by

Class Counsel and one-half (1/2) by the Leucadia Defendants; *provided* that, in calculating

whether the first $25,000 has been paid to the Mediator, the Settling Parties shall include in

such calculation any amounts paid to the Mediator pursuant to the Term Sheet.

      H.      **Releases and Waivers, and Order of Dismissal**

            1.      **Releases and Waivers**

                  a.      Pursuant to the terms of this Settlement Agreement, the

Approval Order and the Judgment, without further action by anyone, and subject to Section

III.H.1.e, on and after the Final Settlement Date, Lead Plaintiffs and all other Rule 23(b)(3)

Class Members, on behalf of themselves and all other Rule 23(b)(3) Releasors, for good

and sufficient consideration, the receipt and adequacy of which are hereby acknowledged,

shall be deemed to have, and by operation of law and of the Approval Order and the

Judgment shall have fully, finally, and forever released, relinquished, settled and

discharged:

                        (1)      all Released Rule 23(b)(3) Class Members'

Claims against each and every one of the Releasees;

                        (2)      all Released Class Members' Settlement Claims

against each and every one of the Releasees and Releasors; and

                        (3)      except to the extent otherwise specified by this

Settlement Agreement, all Claims that have been, could have been or could be asserted by

any Rule 23(b)(3) Releasor against any Releasee for attorneys' fees, costs or disbursements

incurred by Lead Plaintiffs' Counsel (including Class Counsel) or any other counsel

representing any Lead Plaintiff or any other Rule 23(b)(3) Class Member in connection

with or related in any manner to (*i*) any collection of (through Default Judgment or

otherwise) or attempts to collect Consumer Debt from any Rule 23(b)(3) Class Member

and (*ii*) the Action, the settlement of the Action or the administration of the Action and/or

the Settlement.

        b.     Pursuant to the terms of this Settlement Agreement, the

Approval Order and the Judgment, without further action by anyone, and subject to Section

III.H.1.e, on and after the Final Settlement Date, all Rule 23(b)(2) Nominal Restitution

Recipients, on behalf of themselves and all other Rule 23(b)(2) Nominal Restitution

Releasors, for good and sufficient consideration, the receipt and adequacy of which are

hereby acknowledged, shall be deemed to have, and by operation of law and of the

Approval Order and the Judgment shall have fully, finally, and forever released,

relinquished, settled and discharged:

        (1)     all Released Rule 23(b)(2) Class Members'

Nominal Restitution Claims against each and every one of the Releasees;

        (2)     all Released Class Members' Settlement Claims

against each and every one of the Releasees and Releasors; and

        (3)     except to the extent otherwise specified by this

Settlement Agreement, all Claims that have been, could have been or could be asserted by

any Rule 23(b)(2) Nominal Restitution Releasor against any Releasee for attorneys' fees,

costs or disbursements incurred by any counsel (including Class Counsel) representing any

Rule 23(b)(2) Nominal Restitution Recipient in connection with or related in any manner

to (*i*) any collection of or attempts to collect Consumer Debt from any Rule 23(b)(2) Nominal Restitution Releasor and (*ii*) the Action, the settlement of the Action or the administration of the Action and/or the Settlement.

        c.      Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.e, on and after the Final Settlement Date, all Rule 23(b)(2) Injunction Only Beneficiaries, on behalf of themselves and all other Rule 23(b)(2) Injunction Only Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged:

        (1)      all Released Rule 23(b)(2) Class Members' Injunction Only Claims against each and every one of the Releasees;

        (2)      all Released Class Members' Settlement Claims against each and every one of the Releasees and Releasors; and

        (3)      except to the extent otherwise specified by this Settlement Agreement, all Claims that have been, could have been or could be asserted by any Rule 23(b)(2) Injunction Only Releasor against any Releasee for attorneys' fees, costs or disbursements incurred by any counsel (including Class Counsel) or any other counsel representing any Rule 23(b)(2) Injunction Only Beneficiary in connection with or related in any manner to (*i*) attempts to collect Consumer Debt from any Rule 23(b)(2) Injunction

Only Beneficiary and (*ii*) the Action, the settlement of the Action or the administration of the Action and/or the Settlement.

        d.      Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.e, on and after the Final Settlement Date, each and all Releasees for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged all Released Releasees' Claims against each and every one of the Releasors and Releasees.

        e.      Notwithstanding any other provision of this Section III.H, nothing in this Settlement Agreement, the Approval Order or the Judgment shall bar any Claim:

        (1)      by any of the Settling Parties, Class Counsel or Leucadia Defendants' Settlement Counsel to enforce the terms of this Settlement Agreement, the Approval Order or the Judgment;

        (2)      subject to Section XIII.B and the Complete Bar Order (as set out in Paragraphs 21 and 22 of the Approval Order, Exhibit B), by any Leucadia Defendant for a Claim against a Releasee for attorneys' fees and/or expenses that is subject to contractual indemnification;

        (3)      by Leucadia Defendants' Counsel seeking reimbursement from its client(s) for fees and expenses incurred in representing one or more Leucadia Defendant in connection with the Action or the Settlement;

(4)      by any Releasee who is or was employed or associated with one or more other Releasee, with respect to any such individual's rights under or to pension plans, 401(k) plans, separation agreements, employment agreements, stock options, salary benefits or any other benefit plan, including health plans, in which such Releasee participates as a result of his or her current or former employment or association with such Releasee;

(5)      by any Releasee for indemnification coverage with respect to any claim made as to a Releasee that arises by reason of the fact that he or she is or was a director, officer or employee of Leucadia; or

(6)      subject to Section XIII.B and the Complete Bar Order (as set out in Paragraphs 21 and 22 of the Approval Order, Exhibit B), by any Releasee for coverage under an applicable insurance policy.

f.      The releases and waivers in this Section III.H.1 were separately bargained for and are essential elements of this Settlement Agreement.

2.      **Approval Order, Judgment and Dismissal**

a.      The Settling Parties shall seek and obtain from the Court the Approval Order and the Judgment as further described in Section X.B, pursuant to which the Action shall be dismissed with prejudice with respect to the Leucadia Defendants.

## IV.    ATTORNEYS' FEES AND EXPENSES

A.      Class Counsel may file an Attorneys' Fees and Expenses Application(s) at or after the Fairness Hearing; *provided* that, in no event, will such Attorneys' Fees and Expenses Application(s) seek an Attorneys' Fees and Expense Award(s) that, in the

aggregate, exceeds one-third of the funds remaining in the Class Settlement Account after deductions for Service Awards, Administration Expenses and Tax Expenses.

B.      Any Attorneys' Fees and Expenses Award(s) shall be paid to Class Counsel from the Settlement Fund Balance within three (3) Business Days after the Settlement Fund Balance has been transferred to the Class Settlement Account.

C.      No Releasee shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Lead Plaintiffs and Class Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement except as expressly provided for in this Settlement Agreement.

D.      Lead Plaintiffs shall not be liable for or obligated to pay any fees, expenses, costs or disbursement to, or incur any expenses on behalf of, any person or entity (including, without limitation, any Leucadia Defendant and Leucadia Defendants' Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement except as expressly provided for in this Settlement Agreement.

E.      No Releasee shall have any responsibility whatsoever in connection with the allocation of the Attorneys' Fees and Expenses Award between or among Class Counsel, any other counsel purporting to represent any Class Member, or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action, the Settlement or implementation of the Settlement Agreement.

## V.    SERVICE AWARDS

A.    Each of the Lead Plaintiffs may file a Service Award Application at or after the Fairness Hearing; *provided* that such Service Award Application will take into account the time spent by the respective Lead Plaintiff in pursuing the Action (including, without limitation, the time spent consulting with Class Counsel, reviewing documents, filings and discovery materials in the Action, and participating in discovery, including responding to discovery requests and being deposed) and the Lead Plaintiff's rejection of any pre-class offer of judgment; *provided further* that, in no event, will any Lead Plaintiff's Service Award Application seek a Service Award in excess of $30,000.

B.    Any Service Award made to a Lead Plaintiff shall be paid to such Lead Plaintiff from the Settlement Fund Balance within three (3) Business Days after the Settlement Fund Balance has been transferred to the Class Settlement Account.

## VI.    REQUESTS FOR EXCLUSION

A.    Any potential Rule 23(b)(3) Class Member who wishes to be excluded from the Rule 23(b)(3) Class must deliver a written request for exclusion to the Class Administrator pursuant to the requirements set out in the Notice and Preliminary Approval Order or any other order of the Court.

B.    Unless otherwise ordered by the Court, any potential Rule 23(b)(3) Class Member who does not submit a valid, timely written request for exclusion shall be bound by the Rule 23(b)(3) Release and by all proceedings, orders and judgments in the Action relating to the Settlement even if he, she or it has pending or subsequently initiates litigation, arbitration, or any other proceeding, or has any other Claim, against any or all of

the Releasees relating to any of the Released Rule 23(b)(3) Class Members' Claims;

*provided* that, even if a potential Rule 23(b)(3) Class Member is excluded from the Rule

23(b)(3) Class, he, she or it shall remain a Rule 23(b)(2) Injunction Only Beneficiary in the

Rule 23(b)(2) Class and shall be bound by the terms and conditions of the Rule 23(b)(2)

Injunction Only Release and the Settlement Release.

## VII.   NOMINAL RESTITUTION DECLINATION

A.      Any potential Rule 23(b)(2) Nominal Restitution Recipient who wishes to

decline receipt of Nominal Restitution pursuant to this Settlement shall submit a Nominal

Restitution Declination to the Class Administrator pursuant to the requirements set out in

the Notice and Preliminary Approval Order.

B.      Unless otherwise ordered by the Court, any potential Rule 23(b)(2) Nominal

Restitution Recipient who does not submit a valid, timely Nominal Restitution Declination

shall be bound by the Rule 23(b)(2) Nominal Restitution Release and by all proceedings,

orders and judgments in the Action relating to the Settlement even if he, she or it has

pending or subsequently initiates litigation, arbitration, or any other proceeding, or has any

other Claim, against any or all of the Releasees relating to any of the Released Rule

23(b)(2) Class Members' Nominal Restitution Claims; *provided* that, even if a potential

Rule 23(b)(3) Nominal Restitution Recipient submits a valid and timely Nominal

Restitution Declination, he, she or it shall remain a Rule 23(b)(2) Injunction Only

Beneficiary in the Rule 23(b)(2) Class and shall be bound by the terms and conditions of

the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

**VIII.   OBJECTIONS BY CLASS MEMBERS**

A.      Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement or to any term(s) of this Settlement Agreement may do so pursuant to the requirements set out in the Preliminary Approval Order or any other order of the Court.

**IX.    PRELIMINARY APPROVAL HEARING AND PRELIMINARY APPROVAL ORDER**

A.      Within twenty (20) Business Days following the Execution Date (or any other date to which the Settling Parties agree or as ordered by the Court), the Settling Parties shall submit this Settlement Agreement to the Court and jointly apply to the Court for entry of the Preliminary Approval Order substantially in the form set out in Exhibit A.

B.      The Settling Parties shall request that the Court, in its discretion, either (*i*) hold a Preliminary Approval Hearing to allow the Settling Parties to describe the proposed Settlement, the notice to be provided pursuant to its terms and the scheduling of a Fairness Hearing or (*ii*) address the Settling Parties' application for entry of a Preliminary Approval Order based on the Settling Parties' application without a hearing.

C.      The Settling Parties shall ask the Court to certify the settlement Classes and certify Lead Plaintiffs as representatives of the Classes and Class Counsel as counsel for the Classes solely for the purposes of this proposed Settlement.

## X.   FAIRNESS HEARING, APPROVAL ORDER , JUDGMENT AND DISMISSAL

A.      At the time the Settling Parties submit this Settlement Agreement to the Court and jointly apply for entry of the Preliminary Approval Order, they shall request that the Court schedule a Fairness Hearing.

B.      At the Fairness Hearing, the Settling Parties shall jointly ask the Court to enter the Approval Order and the Judgment, substantially in the form set out in Exhibits B and C, respectively.  The Approval Order and the Judgment shall include, among other provisions, the Complete Bar Order (the text of which is set out in Paragraph 21 and 22 of Exhibit B).

C.      If any term of the Complete Bar Order entered by the Court in the Approval Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford each of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Class Members' Claim.

D.      The Judgment will contain a statement that, during the course of the Action, the Settling Parties and their respective counsel (including Class Counsel and Leucadia Defendants' Counsel) at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## XI.   NO ADMISSIONS

A.      The Term Sheet, this Settlement Agreement, the offer of this Settlement Agreement, and implementation of and compliance with this Settlement Agreement shall

not constitute or be construed to be an admission by the Leucadia Defendants or other Releasees, or any of them individually, of any wrongdoing or liability. The Leucadia Defendants expressly deny any wrongdoing.

B.      This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Action. The Settling Parties agree that no party was or is a "prevailing party."

C.      In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Action, any other action, or any other judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement or any of its terms, including Section III.B.1.

D.      Without limiting any of the foregoing provisions in this Section XI, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of a waiver by any of the Leucadia Defendants of any applicable defense or an admission or concession of any liability or wrongdoing whatsoever, including that any of the Default Judgments were improperly obtained, on the part of any of the Leucadia Defendants or any other Releasee; *provided however*, that nothing in this Section XI.D shall be interpreted to limit or affect the ability of Class Counsel (on behalf of the Rule 23(b)(3) Class) to seek to have Default Judgments vacated by the courts of the State of New York as set forth in Section III.B.1.

## XII.   MODIFICATION OR TERMINATION

A.   The terms and provisions of this Settlement and this Settlement Agreement may be amended, modified or expanded by written agreement of the Settling Parties; *provided however*, that after entry of the Approval Order and the Judgment, the Settling Parties may by agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all Exhibits to this Settlement Agreement, the Individual Notice, the Claim Form, the Publication Notice and the Allocation Plan) without notice to or approval by the Court as long as such amendments, modifications or expansions are not materially inconsistent with the Court's Approval Order or the Judgment and do not materially limit the rights of Lead Plaintiffs, any other Class Member, the Leucadia Defendants, Releasors or Releasees under this Settlement Agreement.

B.   Subject to Section XII.F, this Settlement and this Settlement Agreement shall terminate:

1.   if the Final Settlement Date does not occur;

2.   at the sole option and discretion of Leucadia Defendants' Settlement Counsel (on behalf of the Leucadia Defendants) and/or Class Counsel (on behalf of Lead Plaintiffs and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this Settlement Agreement that the terminating Settling Party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the provisions relating to Notice, the definition of the Class, the Complete Bar Order, the permanent injunctions, and/or the terms of the Releases, (*ii*) the Court, or

any appellate court(s), does not enter or completely affirm, or alters or expands, any

portion of the Preliminary Approval Order, the Approval Order and/or the Judgment that

the terminating Settling Party reasonably and in good faith believes is material or (*iii*) the

Court, or any appellate court(s) rejects, modifies or denies approval of any of the proposed

findings of fact or conclusions of law respecting the Settlement (which shall be agreed to

by the Settling Parties and jointly presented to the Court); *provided* that, if the Settling

Parties disagree about whether any court's action is material, they will submit the dispute

to the Mediator for a final and binding decision; or

        3.     at the sole option and discretion of Class Counsel (on behalf of Lead

Plaintiffs and the Class) if a bankruptcy case is commenced as to Leucadia National

Corporation under Title 11 of the United States Code, or a trustee, receiver or conservator

is appointed under United States bankruptcy law, and if a Final order and/or judgment of a

court of competent jurisdiction is entered determining that the transfer of the Settlement

Fund Balance (or any portion of it) by or on behalf of Leucadia National Corporation to

the Class Settlement Account is a voidable preference, voidable transfer or fraudulent

transfer, and if the funds in the Class Settlement Account are actually clawed back by the

debtor's estate and become unavailable to the Classes before the initial distribution of the

Net Settlement Fund has been made to Rule 23(b)(3) Class Members and Rule 23(b)(2)

Nominal Restitution Recipients; or

        4.     at the sole option and discretion of Leucadia Defendants' Settlement

Counsel (on behalf of the Leucadia Defendants) if the aggregate amounts paid pursuant to

Default Judgments by putative Rule 23(b)(3) Class Members who request exclusion

exceed five percent (5%) of the aggregate amount paid pursuant to Default Judgments by all putative Class Members.

C.      If an option to withdraw from or terminate this Settlement and the Settlement Agreement arises under this Settlement Agreement, (*i*) neither Lead Plaintiffs nor the Leucadia Defendants will be required for any reason or under any circumstances to exercise such option and (*ii*) if a Settling Party exercises an option to withdraw from or terminate the Settlement, it shall exercise that option in good faith.

D.      The relevant terminating Settling Party must exercise an option to terminate this Settlement and this Settlement Agreement by providing notice to all other Settling Parties by no later than ten (10) days after receiving actual notice of the event prompting the termination; *provided however*, that any option to terminate accruing prior to the Fairness Hearing must be exercised by no later than two (2) Business Days before the date of the Fairness Hearing.

E.      Notwithstanding anything set out in this Section XII,

1.      none of the Lead Plaintiffs, any other Class Member or Class Counsel may terminate this Settlement or the Settlement Agreement on the basis of the Attorneys' Fees and Expenses Award order by the Court, or as modified by any appellate court(s);

2.      none of the Lead Plaintiffs, any other Class Member or Class Counsel may terminate this Settlement or the Settlement Agreement based upon Lead Plaintiffs' success or lack thereof in vacating the Default Judgments; and

3.    the Settling Parties agree that this Settlement Agreement is a binding contract, enforceable by specific performance, injunction or otherwise, committing all Settling Parties to proceed in good faith to pursue Court approval of the proposed Settlement notwithstanding any decision rendered by the Second Circuit on the Rule 23(f) petitions currently pending before that court, or any future proceedings in this Action with respect to the Non-Settling Defendants.

F.    If the proposed Settlement and the Settlement Agreement are terminated pursuant to the Settlement terms, then:

1.    the proposed Settlement, the Term Sheet and this Settlement Agreement shall be null and void and shall have no force or effect, and no Settling Party or Releasee shall be bound by any of its terms except for the terms set out in this Section XII.F;

2.    the proposed Settlement, the Term Sheet and this Settlement Agreement, and all of its provisions and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Settling Parties or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to the Notice Expenses, Administration Expenses and Mediator fees or expenses that have been incurred as of the Termination Date as described in Sections III.F.3, III.F.4 and III.F.5;

3.    The aggregate amount of any Administration Expenses incurred as of the Termination Date shall be borne one-half (1/2) by Class Counsel and one-half (1/2) by the Leucadia Defendants;

69

4.      Leucadia National Corporation shall be responsible for the payment of any Notice Expenses incurred as of the Termination Date;

5.      any Mediator fees and expenses incurred but not paid as of the Termination Date shall be paid consistent with Section III.G.2;

6.      Releasees (including, without limitation, the Leucadia Defendants) expressly deny any wrongdoing by Releasees and expressly and affirmatively reserve all defenses, arguments and motions that have been or might later be asserted in the Action;

7.      Lead Plaintiffs expressly and affirmatively reserve all Claims, arguments and motions that have been or might have been asserted or made in the Action;

8.      none of the proposed Settlement, the Term Sheet or this Settlement Agreement nor the fact of the Settlement having been made shall be admissible or entered into evidence in any proceeding for any purpose whatsoever, except to enforce any of the surviving terms of this Settlement Agreement;

9.      neither the Leucadia Defendants' agreement to the proposed Settlement, the Term Sheet and/or this Settlement Agreement nor their execution of the Term Sheet or this Settlement Agreement shall constitute or be construed to be an admission by any of the Leucadia Defendants that any wrongdoing has taken place (including that any of the Default Judgments were improperly obtained) or that any of the Leucadia Defendants (or any other Releasee) has engaged in any actionable conduct in connection with the conduct alleged in the Action or that any of the Claims made in the Action have any merit;

10.      all agreements (including confidentiality agreements) as to the use of documents or information provided to Lead Plaintiffs and/or Class Counsel in connection with mediation, any other attempt to settle the Action, or pursuant to Section II.F shall remain in full force and effect; and

11.      except as expressly set out in this Settlement Agreement in Sections III.F.3, III.F.4 and III.F.5, nothing in the Term Sheet or this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees and/or expenses.

## XIII.   GENERAL MATTERS AND RESERVATIONS

A.      The Leucadia Defendants warrant that (as of the Execution Date), except for receipt of payments by the Mel Harris Firm and/or Rushmore Recovery Management, LLC towards the fees and expenses of the Leucadia Defendants' original counsel in the Action in an aggregate amount of less than $500,000, the Leucadia Defendants have not, directly or indirectly, retained or received any of the funds collected from the Class other than their proportionate share pursuant to the Joint Venture and Limited Liability Agreement dated November 12, 2003 pursuant to which LR Credit, LLC was formed, as amended, and the Agreement for Legal Collection Services dated November 12, 2003 between LR Credit LLC and the Mel Harris Firm, as amended, and have not received or retained any funds based on any claim against any Non-Settling Defendant, including, without limitation, any claim for offset, indemnification, costs or attorneys' fees related to the Action.

B.      The Leucadia Defendants agree, consistent with the Complete Bar Order (set out at Paragraphs 21 and 22 of the Approval Order, Exhibit B), that (*i*) if the Final

71

Settlement Date occurs, and (*ii*) if the Releasees successfully prosecute claims to final judgment against the Non-Settling Defendants and such judgments are paid by the Non-Settling Defendants, and (*iii*) if Lead Plaintiffs (on behalf of the Class Members) successfully prosecute their own claims to final judgment against the Non-Settling Defendants, and (*iv*) if Lead Plaintiffs are unsuccessful in satisfying their judgment against the Non-Settling Defendants after expending reasonable efforts to do so, then (*v*) any proceeds received by the Releasees from the Non-Settling Defendants pursuant to the judgments they receive will be paid to Lead Plaintiffs (on behalf of Class Members), and the Releasees will become subrogated to the claims of Lead Plaintiffs and the Class Members to the full extent of the amounts that the Releasees pay to Lead Plaintiffs (on behalf of the Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients).

C.      The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all Claims arising out of Released Class Members' Claims that have been or could have been asserted by any Class Member against Releasees or any of them.

D.      The Settling Parties agree not to assert in any forum that the Action was brought (on the one hand) or that the Leucadia Defendants defended the Action (on the other hand) in bad faith or without a reasonable basis.  The Settling Parties shall not assert any Claims relating to the prosecution, defense or settlement of the Action except as necessary to enforce this Settlement Agreement.  The Settling Parties agree that the settlement relief provided in this proposed Settlement and this Settlement Agreement and the terms of this Settlement Agreement were negotiated at arm's length in good faith by

the Settling Parties and reflect a Settlement that was reached voluntarily after consultation

with experienced counsel.

      E.     Matthew D. Brinckerhoff, Jonathan S. Abady, Debra L. Greenberger, Josh

Zinner, Claudia Wilner, Susan Shin, Carolyn E. Coffey and Ariana Lindermayer represent

that they are authorized to enter into this Settlement Agreement on behalf of each of the

Lead Plaintiffs and any other attorneys who have represented or who now represent any of

the Lead Plaintiffs in the Action and/or with respect to Released Class Members' Claims

and that (*i*) they have kept each of the Lead Plaintiffs apprised of the progress of the

settlement negotiations, (*ii*) they have advised each of the Lead Plaintiffs of the terms and

provisions of this Settlement Agreement, (*iii*) each of the Lead Plaintiffs has approved the

terms of this Settlement Agreement and (*iv*) none of the Lead Plaintiffs will request to be

excluded from the Rule 23(b)(3) Class.

      F.     Ralph C. Ferrara, Ann M. Ashton and Margaret A. Dale represent that they

are authorized to enter into this Settlement Agreement on behalf of the Leucadia

Defendants and any other attorneys who have represented or who now represent the

Leucadia Defendants in the Action and/or with respect to Released Class Members'

Claims and that (*i*) they have kept the Leucadia Defendants apprised of the progress of the

settlement negotiations, (*ii*) they have advised the Leucadia Defendants of the terms and

provisions of this Settlement Agreement, and (*iii*) the Leucadia Defendants have approved

the terms of this Settlement Agreement.

      G.     This Settlement Agreement sets forth the entire agreement among the

Settling Parties with respect to its subject matter and supersedes any agreements in

principle (including the Term Sheet) that preceded this Settlement Agreement.  This

Settlement Agreement may not be altered or modified except by written instrument

executed by Class Counsel (with the permission of Lead Plaintiffs) and Leucadia

Defendants' Settlement Counsel (with the permission of the Leucadia Defendants).  The

Settling Parties expressly acknowledge that no other agreements, arrangements or

understandings not described in this Settlement Agreement exist among or between them.

In entering into this Settlement Agreement, no Settling Party has relied upon any

representation or warranty not set forth expressly in this Settlement Agreement.

      H.      All Settling Parties agree that this Settlement Agreement was drafted by

counsel for the Settlement Parties at arm's length and that no parol or other evidence may

be offered to explain, construe, contradict or clarify its terms, the intent of the Settling

Parties or their counsel, or the circumstances under which this Settlement Agreement was

made or executed.  Nor shall there be any presumption for or against any Settling Party

that drafted all or any portion of this Settlement Agreement.

      I.      This Settlement Agreement shall be governed by and interpreted according

to the laws of the State of New York, excluding its conflict of laws provision.

      J.      Subject to Section III.G above, the Court retains continuing and exclusive

jurisdiction over this Settlement Agreement, the Settling Parties, all Class Members

(including all Class Members who submit objections pursuant to Section VIII), all

Releasors and all Releasees to adjudicate all issues relating to this Settlement Agreement

and the Settlement, including without limitation, any issues relating to the Preliminary

Approval Order, the Approval Order or the Judgment.  Subject to Section III.G, any action

arising under or to enforce this Settlement Agreement, the Preliminary Approval Order, the

Approval Order or the Judgment shall be commenced and maintained only in the Court.

      K.      Whenever this Settlement Agreement requires or contemplates that a

Settling Party shall or may give notice to another Settling Party or to counsel, notice shall

be provided by e-mail, facsimile and/or overnight (excluding Saturday and Sunday)

delivery service as follows and shall be deemed effective upon receipt of such e-mail,

facsimile transmission or delivery to the e-mail, facsimile number or address, as the case

may be, below (or such other address as may be provided in writing by a Settling Party):

      1.      If to the Leucadia Defendants, then to:

      Ralph C. Ferrara
      rferrara@proskauer.com
      Ann M. Ashton
      aashton@proskauer.com
      Margaret A. Dale
      mdale@proskauer.com
      Proskauer Rose LLP
      1001 Pennsylvania Avenue, NW
      Suite 600 South
      Washington, DC 20005
      Telephone:  (202) 416-6800
      Facsimile:   (202) 416-6899

2.      If to the Lead Plaintiffs, then to:

Matthew D. Brinckerhoff
mbrinckerhoff@ecbalaw.com
Jonathan S. Abady
jabady@ecbalaw.com
Debra L Greenberger
dgreenberger@ecbalaw.com
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York  10020
Telephone:  (212) 763-5000
Facsimile:   (212) 763-5001

Josh Zinner
josh@neweconomynyc.org
Claudia Wilner
claudia@neweconomynyc.org
Susan Shin
susan@neweconomynyc.org
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001
Telephone: (212) 680-5100
Facsimile:  (212) 925-2092

Carolyn E. Coffey
ccoffey@mfy.org
Ariana Lindermayer
alindermayer@mfy.org
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007
Telephone:  (212) 417-3700
Facsimile:   (212) 417-3891

L.      All time periods set forth in this Settlement Agreement shall be computed in

calendar days unless otherwise expressly provided.  In computing any period of time

prescribed or allowed by a court, the day, event or default from which the designated

period of time begins to run shall not be included.  The last day of the period so computed

shall be included, unless it is a Saturday, a Sunday or a Legal Holiday, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have caused the office of the Clerk of the Court to be inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

M.      The Settling Parties reserve the right, subject to the Court's approval, mutually to agree in writing to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

N.      The Settling Parties, their successors and assigns, and their counsel undertake to implement this Settlement Agreement, to cooperate fully in seeking Court approval and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

O.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or by electronically transmitted signature shall be fully and legally binding on a Settling Party.

P.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled to enforce the terms of the Release.

Agreed to as of this 18th day of March 2015.

Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York  10020

Josh Zinner
Claudia Wilner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001

Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS

Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20005

Margaret A. Dale
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036

COUNSEL FOR THE LEUCADIA
DEFENDANTS

# Exhibit A

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MONIQUE SYKES, *et al*.,

                                        **Plaintiffs,**

        **vs.**

                                                            09 Civ. 8486 (DC)

MEL S. HARRIS AND ASSOCIATES, LLC, *et al*.,

                                        **Defendants.**

---

**[PROPOSED] ORDER PRELIMINARILY APPROVING PARTIAL**
**SETTLEMENT, DIRECTING NOTICE TO CLASS MEMBERS,**
**AND SCHEDULING FAIRNESS HEARING**

WHEREAS, Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and

Clifton Armoogam, on behalf of themselves and the Classes (as defined below), and

defendants Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit

10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando

and Philip M. Cannella have entered into a Stipulation of Settlement that, if approved by

the Court, would settle all Claims that have been, could have been or could be asserted in

this Action against the Leucadia Defendants; and

WHEREAS, Lead Plaintiffs brought their claims on behalf of similarly situated

individuals in New York City and have included individuals throughout New York State

who may assert claims for monetary and injunctive relief that arise from the same Operative Facts that gave rise to the Action; and

WHEREAS, Lead Plaintiffs filed a motion asking the Court preliminarily to approve the proposed Settlement and attached to their motion the March 18, 2015 Stipulation of Settlement with exhibits (a proposed order preliminarily approving the proposed Settlement, directing notice of the proposed Settlement to Class Members and setting a hearing for final approval of the proposed Settlement (Exhibit A), a proposed order granting final approval of the Settlement (Exhibit B), a proposed judgment (Exhibit C)), as well as a proposed Individual Notice regarding the proposed Settlement, to be mailed to certain of the Class Members, a proposed Claim Form, a proposed Publication Notice regarding the proposed Settlement to be published in certain media and a proposed Allocation Plan for distributing relief to eligible Class Members  (the Stipulation of Settlement and its Exhibits and the Individual Notice, Publication Notice, Claim Form and Allocation Plan collectively, the "Settlement Agreement"); and

WHEREAS, the Court has read and considered the Settlement Agreement and the Settling Parties' submissions; and

WHEREAS, based on the above materials, the Court finds that the proposed Settlement is within the range of possible approval and that notifying potential Class Members about the terms and conditions of the proposed Settlement and scheduling a formal Fairness Hearing is warranted; and

WHEREAS, all terms of the proposed Settlement are subject to the Court's approval;

2

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      *Definitions* – To the extent not defined in this Order, this Court adopts and incorporates the definitions in the Settlement Agreement for purposes of this Order.

2.      *Preliminary Findings Regarding Proposed Settlement* – The Court preliminarily finds that the proposed Settlement evidenced by the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant providing notice of the proposed Settlement to the Classes and scheduling a Fairness Hearing for further review of the proposed Settlement.  In making these findings, the Court has considered a number of factors, including the nature of the Settling Parties' respective claims and defenses, the amount and type of consideration to be paid in settlement, the information available to the Settling Parties and the allocation of proposed settlement relief.  Based on these considerations, the Court preliminarily concludes that (*i*) the proposed Settlement is within the range of possible approval and appears to have resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their counsel and (*ii*) the terms and conditions of the Settlement Agreement do not have any obvious deficiencies and do not improperly grant preferential treatment to any individual Class Member.

3.      *Certification of Settlement Classes* – The Court hereby preliminarily certifies the following settlement Classes pursuant to Fed. R. Civ. R. 23:

a.      A Rule 23(b)(2) Class of all persons or entities who have been or could have been sued by the Mel Harris Firm (or by any other counsel as directed by the

3

Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions

commenced in any court located in the state of New York and where default judgments

were or could have been sought; and

        b.     An overlapping Rule 23(b)(3) Class of all persons or entities (all of

whom are also members of the Rule 23(b)(2) Class) who have been sued by the Mel

Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for

the Leucadia Defendants, including LR Credit, in actions commenced in any court

located in the state of New York and where Default Judgments were obtained.

        4.     For purposes of the settlement of the Action, and only for these purposes,

and subject to the terms of the Settlement Agreement, the Court preliminarily finds that

the requirements of Fed. R. Civ. P. 23 and any other applicable laws appear to be

satisfied, in that:

        a.     Each of the Rule 23(b)(2) Class and the Rule 23(b)(3) Class

appears to be ascertainable from business records and/or from objective criteria;

        b.     Each of the Rule 23(b)(2) Class and the Rule 23(b)(3) Class

appears to be so numerous that joinder of all members would be impractical;

        c.     Lead Plaintiffs have alleged one or more questions of fact and law

that appear to be common to all Rule 23(b)(2) Class Members and all Rule 23(b)(3) Class

Members throughout New York State;

        d.     Based on Lead Plaintiffs' allegations that the Leucadia Defendants

engaged in uniform conduct affecting all Rule 23(b)(2) Class Members and all Rule

23(b)(3) Class Members, Lead Plaintiffs' claims appear to be typical of those of the other

members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class throughout New York State;

e.    Lead Plaintiffs appear to be capable of fairly and adequately protecting the interests of the members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class, in that (*i*) Lead Plaintiffs' interests appear to be consistent with those of the other Rule 23(b)(2) Class Members and the other Rule 23(b)(3) Class Members throughout New York State, (*ii*) Class Counsel appears to be able and qualified to represent each of the Rule 23(b)(2) Class and the Rule 23(b)(3) throughout New York State, and (*iii*) Lead Plaintiffs and Class Counsel appear to have fairly and adequately represented all of the Rule 23(b)(2) Class Members and all of the Rule 23(b)(3) Class Members in obtaining both monetary and injunctive relief, and in negotiating and entering into the proposed Settlement;

f.    For settlement purposes, it appears that the Leucadia Defendants have acted on grounds that apply generally to the members of the Rule 23(b)(2) Class, so that injunctive relief is appropriate respecting the Rule 23(b)(2) Class as a whole; and

g.    For settlement purposes, questions of law and/or fact common to members of the Rule 23(b)(3) Class appear to predominate over such questions affecting only individual Rule 23(b)(3) Class Members, and a class action appears to be superior to all other available methods for the fair and efficient resolution of the Action. In making these provisional findings for settlement purposes, the Court has considered, among other things, (*i*) the Rule 23(b)(3) Class Members' interest in individually controlling the prosecution of separate actions, (*ii*) the impracticability or inefficiency of prosecuting

5

separate actions, (*iii*) the extent and nature of any litigation concerning these claims already commenced and (*iv*) the desirability of concentrating the litigation of the claims in a particular forum.

5.      This certification of these settlement Classes is made for the sole purpose of attempting to consummate the settlement of the Action in accordance with the Settlement Agreement.

6.      If the Court does not grant final approval of the proposed Settlement, or if the Court's approval of the Settlement does not become Final for any reason whatsoever, this settlement class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any further class certification proceedings in this Court (or any other court).

7.      ***Certification of Lead Plaintiffs and Appointment of Class Counsel*** – Solely for the purposes of the proposed Settlement, the Court hereby (*i*) preliminarily certifies Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam as the Lead Plaintiffs and class representatives and (*ii*) preliminarily appoints Emery Celli Brinckerhoff & Abady LLP, New Economy Project and MFY Legal Services, Inc. as Class Counsel pursuant to Fed. R. Civ. P. 23(g) for purposes of representing the proposed settlement Classes.

8.      ***Scheduling of Fairness Hearing*** – Pursuant to Fed. R. Civ. P. 23(e), the Court will hold a Fairness Hearing on _____, 2015, at _____, _.m. ET, before Judge Denny Chin, Circuit Judge for the United States Court of Appeals for the Second Circuit sitting by designation, at the United States District Court for the Southern

District of New York, Thurgood Marshall United States Courthouse, 40 Centre, New York, New York 10007.  The Court may adjourn the Fairness Hearing and reconvene it at some other date without further notice to Class Members and may approve the Settlement (with or without any modifications executed by the Settling Parties), enter the proposed Approval Order at or after the Fairness Hearing or any adjournment of the Fairness Hearing, and dismiss the claims asserted against the Settling Defendants named in the Complaint on the merits and with prejudice without further notice to any persons or entities (including Class Members) other than the Settling Parties.

9.      The Fairness Hearing will consider, among other things:

a.      whether the Court should grant final certification of the Rule 23(b)(2) Class and the Rule 23(b)(3) Class for settlement purposes;

b.      whether the Court should approve the proposed Settlement as fair, reasonable and adequate;

c.      whether the Court should approve the proposed Allocation Plan as fair and reasonable;

d.      whether an Approval Order and a Judgment, substantially in the forms set out in Exhibits B and C to the Settlement Agreement, should be entered dismissing the Action on the merits and with prejudice as to the Leucadia Defendants, and whether the Release set out in the Settlement Agreement should be provided to the Releasees and Releasors;

e.      whether the Individual Notice, Claim Form, Publication Notice and notice methodology implemented pursuant to the Settlement Agreement and this Order

7

(*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, their right to object to the proposed Settlement, their right to appear at the Fairness Hearing, the right of Rule 23(b)(3) Class Members to exclude themselves from the Rule 23(b)(3) Class and the right of Rule (b)(2) Nominal Restitution Recipients to submit Nominal Restitution Declinations, (*iii*) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law;

       f.     whether Lead Plaintiffs and Class Counsel fairly and adequately represented the Class for purposes of entering into and implementing the proposed Settlement;

       g.     whether the proposed Approval Order and the Judgment (forms of which are attached to the Settlement Agreement as Exhibits B and C, respectively) should be entered in this Action pursuant to the proposed Settlement Agreement;

       h.     whether an injunction consistent with the preliminary injunction that is set out in paragraph 41 of this Order should be permanently entered by the Court (as set out in the form of Approval Order, Exhibit B to the Settlement Agreement, at paragraph 19);

i. whether the proposed Complete Bar Order (as set out in the Approval Order, Exhibit B to the Settlement Agreement, at paragraph 21), should be entered;

j. whether the Court should approve Class Counsel's Attorneys' Fees and Expenses Application(s); and

k. any other matters relating to the approval and implementation of the Settlement Agreement that the Court may deem appropriate.

10. **The Class Administrator** – The Court approves Lead Plaintiffs' selection of [to be determined] to serve as Class Administrator. The Class Administrator shall perform tasks as directed by Class Counsel and Leucadia Defendants' Settlement Counsel, including (*i*) distributing the Individual Notice and Claim Form, (*ii*) arranging for publication of the Publication Notice, (*iii*) operating a settlement website, (*iv*) setting up and running a toll-free telephone center staffed with knowledgeable individuals to respond to inquiries from potential Class Members, (*v*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Class Counsel, (*vi*) receiving and processing Claim Forms from Class Members (*vii*) receiving and maintaining any requests from potential Rule 23(b)(3) Class Members for exclusion from the Rule 23(b)(3) Class, (*viii*) receiving and maintaining any Nominal Restitution Declinations from Rule 23(b)(2) Nominal Restitution Recipients, (*ix*) arranging for distribution of the Net Settlement Amount in accordance with the terms of the Allocation Plan and (*x*) otherwise administering the terms of this Settlement Agreement. The Class Administrator will (*i*) act as the agent of Class Counsel (who are acting as agents and

9

representatives of the Class Members) to the extent the Class Administrator is given

confidential information about potential Class Members, including names, addresses and

social security numbers, (*ii*) use such confidential information only in connection with

the administration of the proposed Settlement and (*iii*) take reasonable measures to

maintain the security of the confidential information.

    11.    *Notice* – The Court hereby approves, as to form and content, the

Individual Notice, Claim Form and Publication Notice submitted by the Settling Parties

to the Court.  The Court finds that the Individual Notice, Claim Form and Publication

Notice will fully and accurately inform potential Class Members of all material elements

of the proposed Settlement, of the right of potential Rule 23(b)(3) Class Members to be

excluded from the Rule 23(b)(3) Class, of the right of potential Rule 23(b)(2) Nominal

Restitution Recipients to decline Nominal Restitution Relief, and of each Class Member's

right and opportunity to object to the proposed Settlement.  The Court further finds that

the mailing and distribution of the Individual Notice and Claim Form and the publication

of the Publication Notice substantially in the manner and form set out in this Order will

meet the requirements of due process, Fed. R. Civ. P. 23, the Rules of this Court, and any

other applicable law, constitute the best notice practicable under the circumstances, and

constitute due and sufficient notice to all person and entities entitled to such notice.

    12.    No later than [90 days prior to date for exclusion/objection], 2015, the

Class Administrator shall mail or cause to be mailed the Individual Notice and Claim

Form, substantially in the form submitted to the Court by the Settling Parties, by first-

class mail, postage prepaid, to all potential Rule 23(b)(3) Class Members and all potential

Rule 23(b)(2) Nominal Restitution Recipients at the address of each such person or entity.  Before such mailing, the Class Administrator shall check or cause to be checked all mailing addresses against appropriate available databases to verify the addresses of potential Rule 23(b)(3) Class Members and potential Rule 23(b)(2) Nominal Restitution Recipients and shall update such addresses as appropriate.

13.     If any Individual Notices are returned to the Class Administrator with updated addresses, the Class Administrator shall remail such notices (with the Claim Form) within five business days following receipt of such updated addresses.  If the Class Administrator does not receive an updated address at least five business days before the Fairness Hearing, no remailing shall be required.  If any Individual Notices are returned to the Class Administrator as undeliverable and without an indication of an updated address, the Class Administrator shall cause further research to be undertaken to determine whether a more current address is available.  If such address is found at least five business days before the Fairness Hearing, the Individual Notice (with the Claim Form) shall be remailed to the potential Rule 23(b)(3) Class Member or potential Rule 23(b)(2) Nominal Restitution Recipient.

14.     No later than [60 days prior to date for exclusion/objection], 2015, the Class Administrator shall cause the Publication Notice, substantially in the form submitted to the Court by the Settling Parties, to be published once in each of following publications:  the *New York Daily News,* the *New York Post*, *AM New York*, *New York Metro*, *El Diario*, the *Times Union* and the *Buffalo News*.

11

15.     The Class Administrator shall cause a website to be established on which it shall post, among other things, (*i*) the Individual Notice, (*ii*) the Claim Form, (*iii*) the Publication Notice, (*iv*) the Allocation Plan, (*v*) the Settlement Agreement (including all of its Exhibits), (*vi*) the Settling Parties' filings seeking approval of the proposed Settlement and any responsive papers, (*vii*) Class Counsel's Attorneys' Fees and Expenses Application(s), (*viii*) the Complaint, (*ix*) the Court's December 29, 2010 Opinion on defendants' motions to dismiss, its September 4, 2012 Opinion on class certification and its March 28, 2013 class certification Order, (*x*) the Second Circuit Opinion affirming the Court's March 28, 2013 class certification Order, (*xi*) this Order and any subsequent Orders of the Court relating to the Settlement and (*xii*) such other materials as the Settling Parties determine should be posted.

16.     The Settling Parties shall provide notice to the appropriate federal and state officials as required by the Class Action Fairness Act consistent with the requirements of that Act.

17.     The Settling Parties and their counsel may by written agreement make any amendments to or modifications of the Individual Notice, the Claim Form, the Publication Notice or the Allocation Plan without notice to or approval by the Court so long as such changes are not materially inconsistent with this Order and do not materially limit the rights of potential Class Members.

18.     At least five days before the Fairness Hearing, Class Counsel shall file or cause to be filed with the Court a declaration confirming that Notice was provided consistent with this Order.

19.     *Administration and Notice Expenses* – As provided in the Settlement

Agreement, Leucadia National Corporation shall pay or cause to be paid all Notice

Expenses incurred in providing the Notice described in paragraphs 12, through 14and

paragraph 16.  As further provided in the Settlement Agreement, all other Administration

Expenses, including, without limitation, the fees, costs and expenses of the Class

Administrator and any fees, costs or expenses associated with providing the relief set out

in the Settlement Agreement, shall be paid from the Settlement Fund.

20.     *Exclusion from the Class* – All potential Rule 23(b)(3) Class Members

who wish to exclude themselves from the Rule 23(b)(3) Class must submit timely,

written requests for exclusion to the Class Administrator at the address provided in the

Individual Notice.  The exclusion request must include the following information:

(*i*) name, (*ii*) address, (*iii*) telephone number and (*iv*) e-mail address, if available.

21.     To be valid, any request for exclusion must be in writing, must contain all

of the information described in paragraph 20 of this Order and must be received by the

Class Administrator by no later than [20 days before the scheduled date of the Fairness

Hearing]**.**

22.     If the proposed Settlement is approved, any potential Rule 23(b)(3)

Member who has not filed a timely and valid written request for exclusion (and all Rule

23(b)(3) Releasors related to each such Rule 23(b)(3) Class Member) shall be bound by

the Rule 23(b)(3) Release and by all proceedings, orders, and judgments regarding the

proposed Settlement that relate to the Rule 23(b)(3) Class, whether favorable or

unfavorable, even if he, she or it has pending or subsequently initiates any litigation,

arbitration or other proceedings, or has any other Claim, against any or all of the

Releasees relating to any of the Released Rule 23(b)(3) Class Members' Claims.

23.     Even if a potential Rule 23(b)(3) Class Member submits a timely and valid

request for exclusion from the Rule 23(b)(3) Class, he, she or it will still be a Rule

23(b)(2) Injunction Only Beneficiary and, as such, shall be bound by terms of the Rule

23(b)(2) Injunction Only Release and the Settlement Release.

24.     At or before the Fairness Hearing, the Settling Parties shall provide to the

Court a list of the persons and entities, if any, who have validly and timely requested

exclusion from the Rule 23(b)(3) Class.  Persons requesting exclusion from the Rule

23(b)(3) Class shall not be entitled to receive relief provided to the Rule 23(b)(3) Class,

but shall, as Rule 23(b)(2) Class Members, be beneficiaries of the injunctive relief

provided by the Settlement.

25.     *Nominal Restitution Declination* – All potential Rule 23(b)(2) Nominal

Restitution Recipients who wish to decline the Nominal Restitution Relief available to

him, her or it as Rule 23(b)(2) Nominal Restitution Recipients must submit a timely,

written Nominal Restitution Declination to the Class Administrator at the address

provided in the Individual Notice.  The Nominal Restitution Declination must include the

following information:  (*i*) name, (*ii*) address, (*iii*) telephone number and (*iv*) e-mail

address, if available.

26.     To be valid, any Nominal Restitution Declination must be in writing, must

contain all of the information described in paragraph 25 of this Order and must be

14

received by the Class Administrator by no later than [20 days before the scheduled date of the Fairness Hearing].

27.     If the proposed Settlement is approved, any potential Rule 23(b)(2) Nominal Restitution Recipient Member who has not filed a timely and valid Nominal Restitution Declination (and all Rule 23(b)(2) Nominal Restitution Releasors related to each such Rule 23(b)(2) Nominal Restitution Recipients) shall be bound by the Rule 23(b)(2) Nominal Restitution Release and by all proceedings, orders, and judgments regarding the proposed Settlement that relate to the Rule 23(b)(2) Nominal Restitution Recipients, whether favorable or unfavorable, even if he, she or it has pending or subsequently initiates any litigation, arbitration or other proceedings, or has any other Claim, against any or all of the Releasees relating to any of the Released Rule 23(b)(2) Class Members' Nominal Restitution Claims.

28.     Even if a potential Rule 23(b)(2) Nominal Restitution Recipient submits a timely and valid Nominal Restitution Declination, he, she or it will still be a Rule 23(b)(2) Injunction Only Beneficiary and, as such, shall be bound by terms of the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

29.     At or before the Fairness Hearing, the Settling Parties shall provide to the Court a list of the persons and entities, if any, who have validly and timely submitted Nominal Restitution Declinations.  Persons submitting Nominal Restitution Declinations shall not be entitled to receive relief provided to the Rule 23(b)(2) Nominal Restitution Recipients, but shall, as Rule 23(b)(2) Class Members, be beneficiaries of the injunctive relief provided by the Settlement.

30.     *Objections* – Any Class Member who wishes to object to the fairness,
reasonableness or adequacy of the proposed Settlement, including the Allocation Plan
and/or Class Counsel's Attorneys' Fees and Expenses Application, may do so by filing an
objection as set out below.  However, a potential Rule 23(b)(3) Class Member who
requests exclusion from the Rule 23(b)(3) Class or a Rule 23(b)(2) Nominal Restitution
Recipient who submits a Nominal Restitution Declination may not file an objection
regarding the terms of the Settlement Agreement as they relate, respectively, to Rule
23(b)(3) Class Members or to Rule 23(b)(2) Nominal Restitution Recipients.

31.     A Class Member who wishes to object must serve on Class Counsel and
Leucadia Defendants' Settlement Counsel and file with the Court (at the addresses set out
in paragraph 42) a statement setting out his, her or its objection(s), as well as the specific
reason(s), if any, for each such objection, including any legal support the Class Member
wishes to bring to the Court's attention and any evidence the Class Member wishes to
introduce in support of such objection.

32.     A Class Member's objection must include the name and docket number of
this Action (as set out at the top of this Order) and must also include the following
information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number and
(*iv*) e-mail address, if available.

33.     All objections – whether sent by mail, express delivery, hand delivery or
otherwise – must be received by the Court and by Class Counsel and Leucadia
Defendants' Settlement Counsel (at the addresses set out in paragraph 42) by no later
than [20 days before the scheduled date of the Fairness Hearing].

16

34.     A Class Member may object on his, her or its own, or through counsel hired at his, her or its own expense.

35.     Any attorney hired by a Class Member for the purpose of objecting to the proposed Settlement must serve on Class Counsel and Leucadia Defendants' Settlement Counsel and file with the Court (at the addresses set out in paragraph 42) a notice of appearance, which must be received by counsel and the Court no later than [20 days before the scheduled date of the Fairness Hearing].

36.     Any Class Member who does not make an objection in the time and manner provided in this Order shall be deemed to have waived and forfeited any and all rights he, she or it may have to object and shall be foreclosed from making any objection to the fairness, reasonableness or adequacy of the proposed Settlement unless otherwise allowed by the Court.

37.     *Appearance at the Fairness Hearing* – Attendance at the Fairness Hearing is not necessary.  However, any Class Member who files and serves a timely written objection in accordance with the requirements set out in this Order – and only such Class Members – may also appear at the Fairness Hearing either in person or through personal counsel retained at the Class Member's own expense.  Class Members or their counsel who intend to appear at the Fairness Hearing must serve on Class Counsel and Leucadia Defendants' Settlement Counsel and file with the Court (at the addresses set out in paragraph 42) a notice of intention to appear, which must be received by counsel and the Court no later than [20 days before the scheduled date of the Fairness Hearing].

17

38.     Any Class Member who does not file and serve a notice of intention to appear in the time and manner provided in this Order shall be deemed to have waived and forfeited any and all rights he, she or it may have to appear separately at the Fairness Hearing and shall be foreclosed from appearing separately at the Fairness Hearing unless otherwise allowed by the Court.

39.     Any Class Member who submits an objection to the proposed Settlement shall be deemed to consent to the exclusive jurisdiction of this Court with respect to such objection and all issues that arise or relate to such objection, including any order issued or findings made by the Court regarding the objection.

40.     Class Members do not need to appear at the hearing or take any other action to indicate their approval of the Agreement.

41.     ***Preliminary Injunction*** – Pending final determination by the Court whether the Settlement Agreement should be approved, this Court preliminarily bars and enjoins

a.      all Rule 23(b)(3) Class Members who do not request exclusion, all Rule 23(b)(2) Nominal Restitution Recipients who do not submit Nominal Restitution Declarations, all Rule 23(b)(2) Injunction Only Beneficiaries, and all of their attorneys, accountants, agents, heirs, executors and assigns – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of them (including any person or entity purporting to act parens patriae for Class Members) – from filing, prosecuting, or intervening in, or receiving any benefits from, any other lawsuit or proceeding that is based on or arises from any Released Class Members' Claim as to any Releasee;

18

*provided however*, that the preliminary injunction set out in this Order shall not bar or enjoin any Class Member from defending, participating in or litigating any debt collection proceeding in which LR Credit, LLC or one of its subsidiaries is seeking to collect Consumer Debt from the Class Member, including, without limitation, any efforts to vacate any default judgment entered in such a case; and

      b.     all persons and entities from filing or prosecuting any other lawsuit as a class action or other proceeding on behalf of any Rule 23(b)(3) Class Member who does not request exclusion, any Rule 23(b)(2) Nominal Restitution Recipient who does not submit a Nominal Restitution Declination and any Rule 23(b)(2) Injunction Only Beneficiary as to any Releasee, if such lawsuit is based on or arises out of any Released Class Members' Claim; *provided* that, for the avoidance of doubt, any Class Member who has a pending action relating to any Released Class Members' Claim against one or more of the Leucadia Defendants as of the Execution Date and, if a Rule 23(b)(3) Class Member, does not request exclusion from the Rule 23(b)(3) Class or, if a Rule 23(b)(2) Nominal Restitution Recipient, does not submit a Nominal Restitution Declination shall be barred from pursuing his, her or its action as to the Leucadia Defendant(s) if he, she or it receives any benefit pursuant to this settlement.

42.     ***Filing and Service of Submissions*** – Any Class Member wishing to make a submission pursuant to paragraphs 30, 35 or 37 of this Order must ensure that the submission is received by the Court and by Class Counsel and Leucadia Defendants' Settlement Counsel by no later than [20 days before the scheduled date of the Fairness Hearing] at the following addresses:

a.    the Court:

         Clerk of Court
         United States District Court for the Southern District of New York
         Daniel Patrick Moynihan United States Courthouse
         500 Pearl Street
         New York, New York 10007-1312

b.    Class Counsel:

         Matthew D. Brinckerhoff
         mbrinckerhoff@ecbalaw.com
         Jonathan S. Abady
         jabady@ecbalaw.com
         Debra L Greenberger
         dgreenberger@ecbalaw.com
         Emery Celli Brinckerhoff & Abady LLP
         600 Fifth Avenue, 10th Floor
         New York, New York  10020
         Facsimile:   (212) 763-5001

c.    Leucadia Defendants' Settlement Counsel:

         Ralph C. Ferrara
         rferrara@proskauer.com
         Ann M. Ashton
         aashton@proskauer.com
         Margaret A. Dale
         mdale@proskauer.com
         Proskauer Rose LLP
         1001 Pennsylvania Avenue, NW
         Suite 600 South
         Washington, DC 20005
         Facsimile:   (202) 416-6899

43.    Service on Class Counsel and Leucadia Defendants' Settlement Counsel may be made by facsimile, e-mail, and/or next-day (excluding Saturday or Sunday) express delivery service.

20

44.     Counsel for the Settling Parties are directed promptly to inform each other of any submission served on them (or that otherwise comes into their possession) pursuant to paragraphs 30, 35 or 37 of this Order.

45.     ***Filing of Papers Regarding the Settlement*** – All papers regarding the proposed Settlement (other than those described in paragraphs 30, 35 or 37, which shall be filed and served consistent with the directions in those paragraphs) shall be filed and served as follows:

a.      any motions seeking approval of the proposed Settlement and Allocation Plan and any Attorneys' Fees and Expenses Application(s) must be filed and served no later than [35 days before the date of the scheduled Fairness Hearing];

b.      any responses to any motions seeking final approval of the proposed Settlement, the Allocation Plan and/or any Attorneys' Fees and Expenses Application(s) must be filed and served no later than [20 days before the date of the scheduled Fairness Hearing]; and

c.      any reply papers in support of approval of the proposed Settlement, the Allocation Plan and/or any Attorneys' Fees and Expenses Application(s), and any responses to objections or oppositions, must be filed and served no later than [7 days before the date of the scheduled Fairness Hearing].

46.     ***Termination of Settlement*** – This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (*i*) the proposed Settlement is not finally approved by this Court, or the Court's

approval does not become Final or (*ii*) the Settlement Agreement is terminated or does not become effective in accordance with its terms or for any reason.  In such event, (*i*) all provisions of the Settlement Agreement other than its termination provisions shall become null and void and be of no further force or effect, (*ii*) neither the Settlement Agreement (other than its termination provisions) nor any Court order regarding the Settlement Agreement, including this Order, shall be used or referred to for any purpose whatsoever except in a proceeding to enforce this provision of this Order or the termination provisions of the Settlement Agreement and (*iii*) none of the Settlement Agreement, this Order, the negotiation of the Settlement Agreement, or the statements or court proceedings relating to the Settlement Agreement shall in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action or any other action, or any other judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this provision of this Order or the termination provisions of the Settlement Agreement.  Without limiting the foregoing, neither the Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity including, but not limited to, the Releasees, as a waiver by the Releasees of any applicable defense, or as a waiver by the Lead Plaintiffs or the Releasors of any claims, causes of action or remedies.

47.   ***Retention of Jurisdiction*** – Subject to the dispute-resolution provisions found at Section III.G of the Settlement Agreement, this Court retains exclusive

jurisdiction over the Action to consider all further matters arising out of or connected

with the Settlement Agreement, including a determination whether the proposed

Settlement should be approved as fair, reasonable and adequate.

48.     *Adjournment of Fairness Hearing* – The Court reserves the right to

adjourn the date of the Fairness Hearing, and any adjournment thereof, without further

notice to Class Members or anyone else other than the Settling Parties.

So ordered this _____ day of _____, 2015.

_____
THE HONORABLE DENNY CHIN
United States Circuit Judge
Sitting by Designation

23

# Exhibit B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE SYKES, *et al.*,<br><br>                              Plaintiffs,<br><br>    vs.<br><br>MEL S. HARRIS AND ASSOCIATES, LLC, *et al.*,<br><br>                              Defendants. | 09 Civ. 8486 (DC) |

### [PROPOSED] ORDER APPROVING SETTLEMENT

WHEREAS, Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam, on behalf of themselves and the Classes (as defined below), have entered into a Stipulation of Settlement to settle all Claims that have been, could have been or could be asserted in this Action against defendants Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella; and

WHEREAS, Lead Plaintiffs brought their claims on behalf of similarly situated individuals in New York City and have included individuals throughout New York State who may assert claims for monetary and injunctive relief that arise from the same Operative Facts that gave rise to the Action; and

WHEREAS, the Settling Parties have applied to the Court pursuant to Fed. R. Civ. P. 23(e) for an Order granting final approval of the proposed Settlement in accordance with the Stipulation of Settlement and its Exhibits, as well as the Individual Notice, Claim Form, Publication Notice and Allocation Plan (collectively, the "Settlement Agreement); and

WHEREAS, on _____, 2015, the Court entered an Order (the "Preliminary Approval Order") in which the Court, among other things, (*i*) preliminarily certified two settlement classes, (*ii*) directed that Notice be provided to Class Members as set out in the Preliminary Approval Order and (*iii*) scheduled a Fairness Hearing to consider whether to approve the proposed Settlement, the proposed Allocation Plan and Class Counsel's Attorneys' Fees and Expenses Application; and

WHEREAS, the Court held the Fairness Hearing on _____, 2015 to determine, among other things, (*i*) whether the terms and conditions of the proposed Settlement are fair, reasonable and adequate and should therefore be approved, (*ii*) whether the settlement Classes should be finally certified for settlement purposes, (*iii*) whether Notice to the Classes as implemented was materially consistent with the Preliminary Approval Order and constituted due and adequate notice to the Classes in accordance with Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court and any other applicable law, (*iv*) whether to approve the Allocation Plan, (*v*) whether to enter judgment dismissing the Action on the merits and with prejudice as to the Leucadia Defendants and against all Class Members, and releasing all the Released Class Members' Claims and Released

2

Releasees' Claims as provided in the Settlement Agreement, (*vi*) whether to enter the requested permanent injunctions and Complete Bar Order as provided in the Settlement Agreement and (*vii*) whether, and in what amount, to award attorneys' fees and expenses to Class Counsel; and

WHEREAS, the Court received submissions and heard argument at the Fairness Hearing from Class Counsel (on behalf of Lead Plaintiffs) and from Leucadia Defendants' Settlement Counsel (on behalf of the Leucadia Defendants); and

NOW THEREFORE, based on the written submissions of the Settling Parties, the arguments at the Fairness Hearing, the comments and arguments made by objectors to the Settlement, other materials of record in this Action, and the Court's Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. ***Incorporation of Settlement Agreement*** – This Order incorporates and makes a part hereof the March 18, 2015 Settlement Agreement, including its defined terms, as well as the Individual Notice, Claim Form, Publication Notice and Allocation Plan submitted by the Settling Parties to the Court.  Terms not defined in this Order shall have the definitions given to them in the Settlement Agreement.

2. ***Jurisdiction*** – The Court has jurisdiction over the subject matter of the Action, the Lead Plaintiffs and all other Class Members (as defined below) and has jurisdiction to enter this Order and the Judgment.

3. ***Class Certification*** – The Court grants certification of the following classes solely for purposes of the Settlement pursuant to Fed. R. Civ. P. 23:

a.      A Rule 23(b)(2) Class of all persons or entities who have been or could have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where default judgments were or could have been sought; and

b.      An overlapping Rule 23(b)(3) Class of all persons or entities (all of whom are also members of the Rule 23(b)(2) Class) who have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where Default Judgments were obtained.

4.      The Settling Parties have submitted to the Court a list of the persons and entities who have validly and timely requested exclusion from the Rule 23(b)(3) Class. The Court finds that the persons and entities set out in that list (which is attached as Appendix 1 to this Order) are excluded from the Rule 23(b)(3) Class and therefore shall not be entitled to receive any relief that is provided to Rule 23(b)(3) Class Members and shall not be bound by the terms of the Rule 23(b)(3) Release.  Such excluded persons and entities shall still be Rule 23(b)(2) Injunction Only Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

5.      The Settling Parties have also submitted to the Court a list of the persons and entities who were potential Rule 23(b)(2) Nominal Restitution Recipients and have submitted validly and timely Nominal Restitution Declinations.  The Court finds that the

persons and entities set out in that list (which is attached as Appendix 2 to this Order) shall not be entitled to receive any relief that is provided to Rule 23(b)(2) Nominal Restitution Recipients and shall not be bound by the terms of the Rule 23(b)(2) Nominal Restitution Release.  Such excluded persons and entities shall still be Rule 23(b)(2) Injunction Only Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

6.      For purposes of the settlement of the Action, and only for these purposes, and subject to the terms of the Settlement Agreement, the Court finds that the requirements of Fed. R. Civ. P. 23 and any other applicable laws have been satisfied, in that:

a.      Each of the Rule 23(b)(2) Class and the Rule 23(b)(3) Class is ascertainable from business records and/or from objective criteria;

b.      Each of the Rule 23(b)(2) Class and the Rule 23(b)(3) Class is so numerous that joinder of all members would be impractical;

c.      Lead Plaintiffs have alleged one or more questions of fact and law that are common to all Rule 23(b)(2) Class Members and to all Rule 23(b)(3) Class Members throughout New York State;

d.      Based on Lead Plaintiffs' allegations that the Leucadia Defendants engaged in uniform conduct affecting all Rule 23(b)(2) Class Members and all Rule 23(b)(3) Class Members, Lead Plaintiffs' claims are typical of those of the other members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class throughout New York State;

5

e.      Lead Plaintiffs have been and are capable of fairly and adequately protecting the interests of the members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class, in that (*i*) Lead Plaintiffs' interests are consistent with those of the other Rule 23(b)(2) Class Members and the other Rule 23(b)(3) Class Members throughout New York State, (*ii*) Class Counsel has been and is able and qualified to represent each of the Rule 23(b)(2) Class and Rule 23(b)(3) Class throughout New York State; and (*iii*) Lead Plaintiffs and Class Counsel have fairly and adequately represented all of the Rule 23(b)(2) Class Members and all of the Rule 23(b)(3) Class Members in seeking both monetary and injunctive relief, and in negotiating and entering into the proposed Settlement;

f.      For settlement purposes, the Leucadia Defendants have acted on grounds that apply generally to the members of the Rule 23(b)(2) Class, so that injunctive relief is appropriate respecting the Rule 23(b)(2) Class as a whole; and

g.      For settlement purposes, questions of law and/or fact common to members of the Rule 23(b)(3) Class predominate over such questions affecting only individual Rule 23(b)(3) Class Members, and a class action is superior to all other available methods for the fair and efficient resolution of the Action.  In making these findings for settlement purposes, the Court has considered, among other things, (*i*) the Rule 23(b)(3) Class Members' interest in individually controlling the prosecution of separate actions, (*ii*) the impracticability or inefficiency of prosecuting separate actions, (*iii*) the extent and nature of any litigation concerning these claims already commenced and (*iv*) the desirability of concentrating the litigation of the claims in a particular forum.

6

7.      This certification of the settlement Classes is made for the sole purpose of consummating the settlement of the Action in accordance with the Settlement Agreement.

8.      If the Court's approval of the Settlement does not become Final for any reason whatsoever, this settlement class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any further class certification proceedings in this Court (or any other court).

9.      ***Appointment of Lead Plaintiffs and Class Counsel*** – Solely for purposes of the proposed Settlement, the Court hereby confirms (*i*) its certification of Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam as Lead Plaintiffs and class representatives and (*ii*) its appointment of Emery Celli Brinckerhoff & Abady LLP, New Economy Project and MFY Legal Services, Inc. as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

10.     ***Proof of Notice*** – The Settling Parties filed with the Court adequate proof regarding the notice provided to potential Class Members to demonstrate that such notice was materially consistent with the Court's directives in the Preliminary Approval Order.

11.     The Court finds that the distribution of the Individual Notice and Claim Form, the publication of the Publication Notice and the notice methodology implemented by the Settling Parties (*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, the effect of the Settlement (including the effect of the releases), Class Members' right to

Superseded by Exhibit B to First Amendment

object to the proposed Settlement, the right of Rule 23(b)(3) Class Members to exclude

themselves from the Rule 23(b)(3) Class, the right of Rule 23(b)(2) Nominal Restitution

Recipients to submit Nominal Restitution Declinations and the right of Class Members

who submitted objections to appear at the Fairness Hearing, (*iii*) were reasonable and

constituted due, adequate and sufficient notice to all persons or entities entitled to receive

notice (including any state and/or federal authorities entitled to receive notice under the

Class Action Fairness Act) and (*iv*) met all applicable requirements of the Federal Rules

of Civil Procedure, the United States Constitution (including the Due Process Clause), the

Rules of this Court, and any other applicable law.

12.     ***Settlement Approval*** – The Court finds that the proposed Settlement

resulted from serious, informed, non-collusive negotiations conducted at arm's length by

the Settling Parties and their counsel and was entered into in good faith.  The terms and

provisions of the Settlement Agreement do not have material deficiencies and do not

improperly grant preferential treatment to any individual Class Members.  Accordingly,

the proposed Settlement as set forth in the Settlement Agreement, including the

Allocation Plan, is hereby fully and finally approved as fair, reasonable and adequate,

consistent and in full compliance with all applicable requirements of the Federal Rules of

Civil Procedure, the United States Constitution (including the Due Process Clause), the

Rules of the Court and any other applicable law, and in the best interests of each of the

Settling Parties and the Class Members.

13.     In making these findings, the Court considered, among other factors,

(*i*) the nature of the claims asserted by Lead Plaintiffs and the strength of such claims and

8

the Leucadia Defendants' defenses, (*ii*) the risk, expense, complexity, and likely duration of further litigation, (*iii*) the likelihood of Lead Plaintiffs' maintaining class certification through trial, (*iv*) the amount and kinds of benefits offered in the proposed Settlement, (*v*) the allocation of Settlement proceeds among Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution Recipients, (*vi*)  the potential vacatur of Default Judgments obtained against Rule 23(b)(3) Class Members, (*vii*) the provision of injunctive relief to Class Members, (*viii*) the stage of the proceedings at which the proposed Settlement was reached, (*ix*) the information available to the Settling Parties and the Court, (*x*) the experience and views of the Settling Parties' counsel, (*xi*) the potential Class Members' reactions to the proposed Settlement, including the number of objections filed by Class Members, the number of exclusion requests submitted by potential Rule 23(b)(3) Class Members and the number of Nominal Restitution Declinations submitted by potential Rule 23(b)(2) Nominal Restitution Recipients, (*xii*) the submissions and arguments made throughout these proceedings by the Settling Parties and (*xiii*) the submissions and arguments made in connection with and at the Fairness Hearing.

14.     ***Implementation of the Agreement*** – The Settling Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions.

15.     ***Releases*** – The releases as set forth in Section III.H of the Settlement Agreement, together with relevant definitions, including the definitions of Released Rule 23(b)(3) Class Members' Claims, Released Rule 23(b)(2) Class Members' Nominal Restitution Claims, Released Rule 23(b)(2) Class Members' Injunction Only Claims,

9

Released Class Members' Settlement Claims, Released Releasees' Claims, Releasees and

Releasors, are set out in the attached Appendix 3 to this Order and are expressly

incorporated herein in all respects.  As of the Final Settlement Date, and without limiting

or modifying the full language of the release provisions in the Settlement Agreement, the

Rule 23(b)(3) Release, the Rule 23(b)(2) Nominal Restitution Release, the Rule 23(b)(2)

Injunction Only Release, the Settlement Release and the Releasees' Release shall be

given full force and effect as to all Releasees and all Releasors (as the case may be).

16.    ***Binding Effect*** – The Settlement Agreement and this Order shall be

forever binding on the Releasors and Releasees.  This Order shall have *res judicata* and

other preclusive effect in all pending and future lawsuits or other proceedings brought by

Class Members that are based upon, arise out of or relate to Released Class Members'

Claims or by Releasees that are based upon, arise out of or relate to Released Releasees'

Claims.

17.    ***Termination of the Agreement*** – If the Settlement Agreement is

terminated as provided under its terms, all terms and conditions set out in the Agreement

other than those in Section XII.F shall be null and void and of no further force and effect.

In such event, the Settlement Agreement shall not be used or referred to for any purpose

whatsoever in this or any proceeding (other than to enforce Section XII.F), and all

negotiations and proceedings relating to the Settlement Agreement shall be deemed to be

withdrawn without prejudice as to the rights of each of the Settling Parties, all of whom

shall be restored to their respective positions existing immediately before the Execution

Date, except with respect to the payment of Notice Expenses, Administration Expenses

and the Mediator's fees and expenses, which expense shall be paid as described in

Section XII.F of the Settlement Agreement.

18.     ***Enforcement of the Settlement Agreement*** – Notwithstanding the

provisions of this Order, nothing in this Order or in the Judgment shall preclude any

action to enforce the terms of the Settlement Agreement.

19.     ***Permanent Injunction Regarding Released Class Members' Claims*** –

The Court hereby permanently bars and enjoins

a.     all Class Members and their attorneys, accountants, agents, heirs,

executors and assigns – and anyone else purporting to act on behalf of, for the benefit of,

or derivatively for any of them (including any person or entity purporting to act parens

patriae for Class Members) – from filing, prosecuting, or intervening in, or receiving any

benefits from, any other lawsuit or proceeding that is based on or arises from any

Released Class Members' Claim as to any Releasee; *provided however*, that the

permanent injunction set out in this Order shall not bar or enjoin any Class Member from

seeking to vacate a Default Judgment in the event that Class Counsel are unable to obtain

vacatur of such a Default Judgment on his or her behalf; and

b.     all persons and entities from filing or prosecuting any other lawsuit

as a class action or other proceeding on behalf of any Class Members as to any Releasee,

if such lawsuit is based on or arises out of any Released Class Members' Claim; *provided*

that, for the avoidance of doubt, any Class Member who has a pending action relating to

any Released Class Members' Claim against one or more of the Leucadia Defendants as

of the Execution Date and who has not been excluded from the Rule 23(b)(2) or declined

the nominal restitution relief available to Rule 23(b)(2) Nominal Restitution Recipients shall be barred from, among other things, pursuing his, her or its action as to the Leucadia Defendant(s) if he, she or it receives any benefit pursuant to this settlement.

20.     ***Permanent Injunction Regarding L-Credit and LR Credit, LLC*** – The Court hereby permanently bars and enjoins L-Credit, LLC and LR Credit, LLC (and any of its Subsidiaries) from (*i*) purchasing any additional portfolios of consumer debt or (*ii*) seeking any additional Default Judgments or pursuing collection activities on any Consumer Debt Portfolios that have already been purchased.

21.     ***Complete Bar Order*** – To effectuate the settlement, the Court hereby enters the following Complete Bar Order:

a.     Barring any and all persons and entities (including the Non-Settling Defendants) from asserting against the Releasees any Claim (whether for indemnification, contribution, or otherwise) that is or arises from a Released Class Members' Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to one or both of the Classes or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees any amounts such person or entity has or might become liable to pay to one or both of the Classes or any Class Member and/or any costs, expenses, or attorneys' fees from defending any Claim by one of both of the Classes or any Class Member; *provided however,* that a Claim for attorneys' fees that is subject to contractual indemnification shall not be barred; *provided further* that, if one or both of the Classes or any Class Member obtains any judgment against such person or entity arising out of a Released

Class Members' Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (A) such Releasee's or Releasees' percentage of responsibility for the loss to the Class, Classes or Class Member(s) or (B) either (*i*) the amount of the Settlement Fund, in the case of the Class or Classes, or (*ii*) that portion of the Settlement Fund applicable to the Class Member(s), in the case of one or more Class Members, unless the court entering such judgment orders otherwise;

b.      Barring all Releasees from asserting any Claim (whether for indemnification, contribution, or otherwise) against any other person where the Claim arises from a Released Class Members' Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to one or both of the Classes or any Class Member, including any claim in which a Releasee seeks to recover from any other person or entity any amounts such Releasee has or might become liable to pay to one or both of the Classes or any Class Member and/or any costs, expenses, or attorneys' fees from defending any Claim by one or both of the Classes or any Class Member; *provided however,* that a claim for attorneys' fees that is subject to contractual indemnification shall not be barred; and

c.      Providing further that, if any person or entity (for purposes of this Complete Bar Order, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Class Members' Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to one or both of the Classes (or any Class Member) or (*ii*) seeking contribution or

13

indemnity for any liability or expenses incurred in connection with any such Claim, and

if such action or Claim is not barred by a court pursuant to this Complete Bar Order,

neither the Complete Bar Order nor the Settlement Agreement shall bar any Claims by

that Releasee against (a) such petitioner, (b) any person or entity who is or was controlled

by, controlling or under common control with that petitioner, whose assets or estate are or

were controlled, represented or administered by that petitioner, or to whose claims the

petitioner has succeeded, and (c) any person or entity that participated with any of the

preceding persons or entities described in items (a) and (b) of this Paragraph 21.c. in

connection with the assertion of the Claim(s) brought against the Releasees.

22.     Notwithstanding the provisions in Paragraphs  21.a, 21.b and 21.c, (*i*) if

the Final Settlement Date occurs, and (*ii*) if the Releasees successfully prosecute claims

to final judgment against the Non-Settling Defendants and such judgments are paid by

the Non-Settling Defendants, and (*iii*) if Lead Plaintiffs (on behalf of the Class Members)

successfully prosecute their own claims to final judgment against the Non-Settling

Defendants, and (*iv*) if Lead Plaintiffs are unsuccessful in satisfying their judgment

against the Non-Settling Defendants after expending reasonable efforts to do so, then

(*v*) any proceeds received by the Releasees from the Non-Settling Defendants pursuant to

the judgments they receive will be paid to Lead Plaintiffs (on behalf of Class Members),

and the Releasees will become subrogated to the claims of Lead Plaintiffs and the Class

Members to the full extent of the amounts that the Releasees pay to Lead Plaintiffs (on

behalf of the Rule 23(b)(3) Class Members and Rule 23(b)(2) Nominal Restitution

Recipients).

14

23.     *No Admissions* – None of the Settlement Agreement, this Order, any of the provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the statements or court proceedings relating to the Settlement Agreement, any document referred to in this Order, any action taken to carry out this Order or to implement the Settlement, or any prior Orders in this Action shall constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Order, the Judgment, and the Settlement Agreement are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Members' Claims.  In no event shall this Order, the Judgment, the Settlement Agreement, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Settlement Agreement.  Without limiting the foregoing, this Order, the Judgment, the Settlement Agreement, and any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including any of the Leucadia Defendants, or as a waiver by the Leucadia Defendants of any applicable defense, or as a waiver by Lead Plaintiffs or the Classes of any Claims, causes of action, or remedies; *provided however,* that this Order, the Judgment and/or the Settlement Agreement may be filed in any action against or by Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-

15

faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim; *provided further* that nothing in this Paragraph __ shall be interpreted to limit or affect the ability of Class Counsel (on behalf of the Rule 23(b)(3) Class) to seek to have Default Judgments vacated by the courts of the State of New York as set forth in the Settlement Agreement.

24.     ***Attorneys' Fees and Expenses Award*** – Class Counsel are hereby awarded Attorneys' Fees and Expenses in the amount of _____, which amount is to be paid out of the Settlement Fund Balance.

25.     ***Modification of Settlement Agreement*** – Without further approval from the Court, the Settling Parties are hereby authorized to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) as (*i*) are not materially inconsistent with this Order and the Judgment and (*ii*) do not materially limit the rights of Lead Plaintiffs, any other Class Member, the Leucadia Defendants, Releasors or Releasees under the Settlement Agreement.

26.     ***Findings of Fact and Conclusions of Law*** – In support of this Order, the Settling Parties have prepared proposed findings of fact and conclusions of law, which the Court hereby enters contemporaneously with this Order.

27.     ***Retention of Jurisdiction*** – The Court has jurisdiction to enter this Order. Without in any way affecting the finality of this Order or the Judgment, and subject to the dispute resolution provisions found at Section III.G of the Settlement Agreement, the Court expressly retains exclusive and continuing jurisdiction over the Settlement

Agreement, the Settling Parties, Class Members and anyone else who appeared before

this Court for all matters relating to the Settlement Agreement, including the enforcement

of the Settlement Agreement and of this Order and the Judgment, and for any other

reasonably necessary purpose, including:

        a.     enforcing the terms and conditions of the Settlement Agreement,

this Order and the Judgment (including the Complete Bar Order and the permanent

injunctions);

        b.     resolving any disputes, claims or causes of action that, in whole or

part, are related to or arise out of the Settlement Agreement, this Order or the Judgment

(including whether a person or entity is or is not a Class Member and whether claims or

causes of action allegedly related to the Released Class Members' Claims are or are not

barred by this Order and the Judgment or the Release);

        c.     entering such additional orders as may be necessary or appropriate

to protect or effectuate this Order and the Judgment, including whether to impose a bond

on any parties who appeal from this Order or the Judgment; and

        d.     entering any other necessary or appropriate orders to protect and

effectuate this Court's retention of continuing jurisdiction; *provided however*, that

nothing in this Order or the Judgment shall interfere with the Mediator's ability to made

final, binding and nonappealable rulings as prescribed in the Settlement Agreement.

       28.     ***Findings of Good Faith*** – The Court finds that all of the complaints filed

in the Action, including the Complaint, were filed as to the Leucadia Defendants on a

good faith basis and in accordance with Rule 11 of the Federal Rules of Civil Procedure

based upon all publicly available information.  The Court finds that all Settling Parties and their counsel have acted in good faith and have complied with each requirement of Rule 11 with respect to all proceedings herein.

29.    ***Dismissal of Action as to the Leucadia Defendants*** – The claims asserted in this Action against the Leucadia Defendants are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as otherwise provided in this Order and in the Settlement Agreement.

30.    ***Entry of Judgment*** – There is no just reason to delay the entry of this Order and the Judgment, and immediate entry by the Clerk of Court is expressly directed pursuant to Federal Rule of Civil Procedure 54(b).

So ordered this ____ day of _____ 2015.

_____
THE HONORABLE DENNY CHIN
United States Circuit Judge
Sitting by Designation

# Exhibit C

**EXHIBIT C**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

**MONIQUE SYKES,** *et al.***,**

                                         **Plaintiffs,**

        **vs.**

                                                                    09 Civ. 8486 (DC)

**MEL S. HARRIS AND ASSOCIATES, LLC,** *et al.***,**

                                         **Defendants.**

---

## [PROPOSED] PARTIAL JUDGMENT

        Consistent with the terms of the Court's _____, 2015 Approval Order, the

settlement of this class action on the terms set forth in the Settling Parties' March 18,

2015 Stipulation of Settlement and its Exhibits, as well as the Individual Notice, Claim

Form, Publication Notice and Allocation Plan  (collectively, the "Settlement Agreement")

is approved as fair, reasonable and adequate and consistent with and in compliance with

all applicable requirements of the Federal Rules of Civil Procedure, the United States

Constitution (including the Due Process Clause), the Rules of this Court, and any other

applicable law, and in the best interests of the Settling Parties and Class Members.

Unless otherwise defined in this Judgment, the capitalized terms in this Judgment have

the same meaning as in the Settlement Agreement.

1.      The Court grants certification of the following classes solely for purposes
of the Settlement pursuant to Fed. R. Civ. P. 23:

a.      A Rule 23(b)(2) Class of all persons or entities who have been or
could have been sued by the Mel Harris Firm (or by any other counsel as directed by the
Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions
commenced in any court located in the state of New York and where default judgments
were or could have been sought; and

b.      An overlapping Rule 23(b)(3) Class of all persons or entities (all of
whom are also members of the Rule 23(b)(2) Class) who have been sued by the Mel
Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for
the Leucadia Defendants, including LR Credit, in actions commenced in any court
located in the state of New York and where Default Judgments were obtained.

2.      The persons and entities set out in the list attached as Appendix 1 to the
Approval Order are excluded from the Rule 23(b)(3) Class and therefore shall not be
entitled to receive any relief that is provided to Rule 23(b)(3) Class Members and shall
not be bound by the terms of the Rule 23(b)(3) Release.  Such excluded persons and
entities shall still be Rule 23(b)(2) Injunction Only Beneficiaries and, as such, shall be
bound by the terms of the Rule 23(b)(2) Injunction Only Release and the Settlement
Release.

3.      The persons and entities set out in the list attached as Appendix 2 to the
Approval Order are not be entitled to receive any relief that is provided to Rule 23(b)(2)
Nominal Restitution Recipients and shall not be bound by the terms of the Rule 23(b)(2)

2

Nominal Restitution Release.  Such excluded persons and entities shall still be Rule 23(b)(2) Injunction Only Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2) Injunction Only Release and the Settlement Release.

4.      The distribution of the Individual Notice and the Claim Form, the publication of the Publication Notice and the notice methodology implemented by the Settling Parties (*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, the effect of the Settlement (including the effect of the releases), Class Members' right to object to the proposed Settlement, the right of Rule 23(b)(3) Class Members to exclude themselves from the Rule 23(b)(3) Class, the right of Rule 23(b)(2) Nominal Restitution Recipients to submit Nominal Restitution Declinations and the right of Class Members who submitted objections to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate and sufficient notice to all persons or entities entitled to receive notice (including any state and/or federal authorities entitled to receive notice under the Class Action Fairness Act) and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

5.      The claims in the Action as to the Leucadia Defendants are dismissed on the merits and with prejudice according to the terms of the Settlement Agreement (including the Release) and the Approval Order, without fees or costs to any Settling Party except as provided therein.

3

6.      The permanent injunctions and Complete Bar in the Approval Order shall be effective as to all persons and entities identified in them.

7.      All of the complaints filed in the Action, including the Complaint, were filed as to the Leucadia Defendants on a good faith basis and in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information. The Court finds that all Settling Parties and their counsel have acted in good faith and have complied with each requirement of Rule 11 with respect to all proceedings herein.

8.      The Court has jurisdiction to enter this Judgment.  Without in any way affecting the finality of this Judgment or the Approval Order, and subject to the dispute resolution provisions found at Section III.G of the Settlement Agreement, the Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreement, the Settling Parties, Class Members and anyone else who appeared before this Court for all matters relating to the Settlement Agreement, including the enforcement of the Settlement Agreement and of this Judgment and the Approval Order, and for any other reasonably necessary purpose.  Any action arising under or to enforce this Settlement Agreement and of the Approval Order and this Judgment shall be commenced and maintained only in this Court.

9.      Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

10.     JUDGMENT in this Action is hereby entered with respect to the Settling Parties in accordance with Federal Rule of Civil Procedure 58.

Entered this _____ day of _____, 2015

_____
THE HONORABLE DENNY CHIN
United States Circuit Judge
Sitting by Designation

Superseded by Exhibit C to First Amendment

# Annex 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**MONIQUE SYKES,** *et al.,*

                                  **Plaintiffs,**

         **vs.**

**MEL S. HARRIS AND ASSOCIATES, LLC,** *et al.,*

                                  **Defendants.**

---

09 Civ. 8486 (DC)

**FIRST AMENDMENT TO STIPULATION OF SETTLEMENT AS TO CLAIMS AGAINST CERTAIN DEFENDANTS**

**FIRST AMENDMENT TO
STIPULATION OF SETTLEMENT**

WHEREAS, Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella and Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam (on their own behalf and on behalf of Class Members) entered into a Stipulation of Settlement in the above captioned matter on March 18, 2015 (the "Stipulation of Settlement"); and

WHEREAS, except where specifically noted in this First Amendment to Stipulation of Settlement (the "First Amendment"), the capitalized terms that are used in this First Amendment have the same meaning as ascribed to them in the Stipulation of Settlement; and

WHEREAS, Lead Plaintiffs have recently reached settlements with the Non-Settling Defendants and thus (subject to Court approval) all claims as to all parties in this Action have been settled; and

WHEREAS, the Settling Parties wish to modify the Stipulation of Settlement and its exhibits to reflect that a settlement of all claims as to all parties has now been reached in this Action.

NOW THEREFORE, for the mutual promises reflected herein and for other good and valuable consideration, the Settling Parties, each appearing by and through its counsel of record in this matter, hereby enter into this First Amendment pursuant to which they agree as follows:

A.    Within three (3) Business Days following the latest of (*i*) execution of this First Amendment, (*ii*) execution of an escrow agreement with the Class Administrator (the "Escrow Agreement"), (*iii*) execution of a settlement agreement between Lead Plaintiffs and the Non-Settling Defendants (the "Non-Settling Defendants' Settlement Agreement") and (*iv*) the date on which the Court enters the Preliminary Approval Order (the "Preliminary Approval Date"), Leucadia National Corporation shall cause all amounts (that is, the Settlement Amount, the Additional Settlement Payments, and the interest earned on these amounts since creation of the Leucadia Settlement Account) held in the Leucadia Settlement Account to be transferred to an interest-bearing account to be held in escrow by the Class Administrator under the terms of the Escrow Agreement (the "Leucadia Account"), which terms shall include the following:  (*i*) the Leucadia Account will be held separate and apart from any account(s) established by the Class Administrator

to hold any settlement amounts contributed by the Non-Settling Defendants, (*ii*) the

expense of establishing and maintaining the Leucadia Account will be an Administration

Expense that is paid from the Leucadia Account, (*iii*) until Final Settlement Date, neither

Class Members (including the Lead Plaintiffs) nor Class Counsel will have any interest in,

claim upon, or authority over the amounts held in the Leucadia Account except as set out

in Section E of this First Amendment, (*iv*) if the Stipulation of Settlement as modified by

this First Amendment, including the Exhibits thereto (collectively, the "Settlement

Agreement") is not approved by the Court or the Court's approval of the Settlement does

not become Final or is terminated, the amounts held in the Leucadia Account (subject to

deduction of any expenses incurred but not paid that are to be paid by the Leucadia

Defendants pursuant to Sections XII.F.3, XII.F.4 and XII.F.5 of the Stipulation of

Settlement) will, within five (5) Business Days of the Class Administrator receiving

written notice that the Settlement will not become Final or has been terminated, be

transferred by the Class Administrator to Leucadia National Corporation, (*v*) if the

Settlement becomes Final, upon Final Settlement Date, none of the Leucadia Defendants

shall have any further interest, domination over or claim to the amounts held in the

Leucadia Account and (*vi*) if the Settlement becomes Final, the Settlement Fund Balance

(which shall be the amount described in Section I.A.91 of the Stipulation of Settlement, but

which amount shall be held in the Leucadia Account rather than in the Leucadia Settlement

Account as stated in the Stipulation of Settlement) shall be transferred by the Class

Administrator to Lead Plaintiffs pursuant to Section III.A.2 of the Stipulation of Settlement

for distribution by the Class Members pursuant to such Allocation Plan as the Court approves.

      B.     LR Credit will direct the current collection law firm for Consumer Debt, Stephen Einstein & Associates, PC or any replacement counsel (collectively, the "Einstein Firm"), that, during the period starting as of the date on which the Court enters the Preliminary Approval Order (the "Preliminary Approval Date") and ending as of the date on which LR Credit provides written notice to the Einstein Firm of either the Final Settlement Date or termination of the Settlement Agreement (the "Settlement Review Period"), the Einstein Firm should take direction from Class Counsel regarding the administration and suspension of collection activity of the Consumer Debt, which instruction shall be pursuant to a written agreement between Lead Plaintiffs and the Einstein Firm, a copy of which agreement shall be provided to the Leucadia Defendants for its review and approval, which approval shall not be unreasonably withheld.  At the same time such direction is given to the Einstein Firm, LR Credit will also direct the Mel Harris Defendants to reasonably cooperate with any reasonable efforts by the Einstein Firm to suspend as soon as reasonably practicable all collection activities on Consumer Debt during the Settlement Review Period.

      C.     Upon completion of the transfer described in Section A of this First Amendment and provision of the instruction described in Section B of this First Amendment, the Leucadia Defendants will have fulfilled their obligations under Sections III.A.1 and III.A.2.a of the Stipulation of Settlement and shall have no further funding obligations under those sections and none of the Leucadia Defendants shall be responsible

4

for any losses incurred respecting the amounts held in the Leucadia Account; *provided* that if, despite the suspension of collection activities described in Section B of this First Amendment, Additional Settlement Payments are received directly or indirectly by LR Credit, LR Credit will direct the Einstein Firm to send such Additional Settlement Payments to the Class Administrator for deposit into the Leucadia Account

   D. The Leucadia Defendants agree that Lead Plaintiffs and Class Counsel may work with the Mel Harris Defendants and the Einstein Firm to suspend collection activity of Consumer Debt during the Settlement Review Period, during which period no interest shall accrue on the Consumer Debt.  Notwithstanding anything in the Settlement Agreement, nothing contained in the Settlement Agreement shall terminate any unexpired statute of limitations applicable to any Consumer Debt during the Settlement Review Period.

   E. As part of implementing the suspension of collection activity of Consumer Debt, following the later of (*i*) the transfer described in Section A of this First Amendment, (*ii*) provision of the instruction described in Section B of this First Amendment and (*iii*) the Preliminary Approval Date, Class Counsel may instruct the Class Administrator to pay to the Einstein Firm, in one or more payments, an amount not to exceed in the aggregate five hundred thousand dollars ($500,000) (the "$500,000 Payment") as payment for the Einstein Firm in connection with the suspension described in Section B of the First Amendment, the payment of which amount may be made out of the Additional Settlement Payments held in the Leucadia Account as an Administration Expense (as long as the Court approves such payment in the Preliminary Approval Order) subject to the following

conditions being met:  (*i*) the $500,000 Payment shall be paid to the Einstein Firm in lieu of any payments that might be due to the Einstein Firm after the Preliminary Approval Date from LR Credit under the September 17, 2015 Legal Service Agreement (the "Legal Service Agreement") between LR Credit and the Einstein Firm and the Einstein Firm waives any right it might have to collect any fees from LR Credit under the Legal Service Agreement subsequent to the Preliminary Approval Date, (*ii*) payment of the $500,000 Payment to the Einstein Firm shall be at the sole discretion, and be the responsibility, of Class Counsel, (*iii*) the Leucadia Defendants shall not bear any responsibility for instructing the Class Administrator to pay or for making the $500,000 Payment to the Einstein Firm and the Leucadia Defendants shall be held harmless by Lead Plaintiffs with respect to such payment, (*iv*) the Leucadia Defendants shall have no obligation to fund any payment to the Einstein Firm from the Leucadia Account other than as described in this Section E or the Stipulation of Settlement and (*v*) if Lead Plaintiffs' agreement with the Einstein Firm terminates prior to Final Settlement Date, Class Counsel shall be responsible, as necessary, any costs incurred for the further administration and maintenance of the Consumer Debt pending the Final Settlement Date or termination of the Leucadia Settlement Agreement, which costs may be paid out of the Class Settlement Account as an Administration Expense if approval of the Leucadia Settlement Agreement becomes Final.

   F.  The Settling Parties agree that, so long as the Non-Settling Defendants' Settlement Agreement is preliminarily approved contemporaneously with the Settlement Agreement, the Settlement Agreement and the Non-Settling Defendants' Settlement

Agreement will, to the extent feasible, be administered jointly, which joint administration

will include, but not be limited to: (*i*) the same Individual Notices, Publication Notice, and

Claim Forms will be used for the Leucadia Settlement Agreement and the Non-Settling

Defendants' Settlement Agreement and (*ii*) the same website and telephone center for

Class Member inquiries shall be used for the Leucadia Settlement Agreement and the Non-

Settling Defendants' Settlement Agreement.  If approval of both Leucadia Settlement

Agreement and the Non-Settling Defendants' Settlement Agreement becomes Final, the

Class Administrator may create a single Class Settlement Account for the funds

established by both settlements and jointly distribute the Net Settlement Fund in a single

check to each eligible Class Member for the initial distribution and, if there is any

redistribution, in a single check to each eligible Class Member for any redistribution.

G.      The Stipulation of Settlement is modified to provide that Objections shall be

submitted to the Class Administrator rather than filed with the Court.

H.      The paragraph references in Sections I.A.20, III.H.1.e(2) and III.H.1.f(6) of

the Stipulation of Settlement are changed to Paragraph 26 of Exhibit B.

I.      The definition of "Class Settlement Account" is modified to remove the

words "interest-bearing."

J.      The definition of "Net Settlement Amount" found in Section I.A.48 of the

Stipulation of Settlement is modified to be the definition of "Net Settlement Fund."

K.      Section III.C.3 of the Stipulation of the Settlement Agreement is replaced in

its entirety with the following language:

The Settling Parties further agree that they will not, consistent with

their duties of candor to the Court or any other reviewing court,

assert positions in any court (whether directly or indirectly) or aid

any other entity in asserting positions in any court (whether

directly or indirectly) that may compromise the enforceability or

approval of this Settlement Agreement or the Non-Settling

Defendants' Settlement Agreement.

L.      The last sentence of Section III.D.1.a of the Stipulation of Settlement is

modified to state

A copy of the Claim Form will be mailed along with the Individual

Notices to potential Rule 23(b)(2) Nominal Restitution Recipients

and potential Rule 23(b)(3) Class Members who are eligible to

receive a monetary payment pursuant to the Allocation Plan.

M.      Section III.A.3 of the Stipulation of Settlement is modified to provide that

the Class Administrator (rather than Class Counsel) will be the "administrator" of the

Qualified Settlement Fund(s) for tax purposes.

N.      The definition of "Releasee"  found at Section I. A.68 of the Stipulation of

Settlement is replaced in its entirety with the following definition:

68.      "Releasee" means each and every one of, and

"Releasees" mean all of, (*i*) Leucadia, (*ii*) L-Credit, (*iii*) LR Credit,

(*iv*) Luman, LLC, (*v*) the Einstein Firm and  (*vi*) all other Leucadia

Defendants and, for each of the foregoing Releasees, (*x*) the

8

Releasee's agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest and insurance carriers, (*y*) to the extent the foregoing Releasee is an entity, each of such Releasee's past and present officers, directors, employees, officials, members, principals, shareholders, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers and (*z*) to the extent the foregoing Releasee is a person, each of such Releasee's estates, heirs, executors, beneficiaries, trusts and trustees; *provided* that the Einstein Firm shall be a Releasee (*i*) only with respect to conduct that (*x*) occurred during the period starting September 17, 2015 and ending as of the Final Settlement Date and (*y*) was in connection with the collection and administration of Consumer Debt and the maintenance of records respecting Consumer Debt Portfolios and (*ii*) shall not be Releasee to the extent it engaged in the following conduct:  (*a*) affirmatively seeking additional default judgments on behalf of LR Credit, LLC and/or its Subsidiaries or defending challenges against existing Default Judgments (including appeals), (*b*) defending attempts to stop collection of Consumer Debt and/or vacate Default Judgments, (*c*) proposing or implementing additional voluntary payment plans for Consumer Debt to the extent such

plans were not in existence as of September 17, 2015, (*d*) sending demand letters to collect Consumer Debt, (*e*) commencing or restoring any lawsuits to compel compliance with existing judicial decrees or orders respecting Default Judgments or (*f*) initiating any garnishment of wages or levy of bank accounts on or after September 17, 2015 regarding any Default Judgments; *provided further* that the Einstein Firm shall not be a Releasee with respect to the work undertaken for Lead Plaintiffs as described in Section B of this First Amendment if the Einstein Firm is found by the Court to have breached its agreement with Lead Plaintiffs.

O.    The following definitions are added:

46.a    "Mel Harris Releasee" means each and every one of, and "Mel Harris Releasees" mean all of the Mel Harris Defendants and for each of the Mel Harris Releasees, (*x*) the Mel Harris Releasee's agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest and insurance carriers, (*y*) to the extent the foregoing Mel Harris Releasee is an entity, each of such Mel Harris Releasee's past and present officers, directors, employees, officials, members, principals, shareholders, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers and (*z*) to the

10

extent the foregoing Mel Harris Releasee is a person, each of such Mel Harris Releasee's estates, heirs, executors, beneficiaries, trusts and trustees.

83.a   "Samserv Releasee" means each and every one of, and "Samserv Releasees" mean all of the Samserv Defendants and for each of the Samserv Releasees, (*x*) the Samserv Releasee's agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, partners, successors-in-interest and insurance carriers, (*y*) to the extent the foregoing Samserv Releasee is an entity, each of such Samserv Releasee's past and present officers, directors, employees, officials, members, principals, shareholders, any and all in-house counsel and outside counsel, auditors (including any and all internal and external auditors) and service providers and (*z*) to the extent the foregoing Samserv Releasee is a person, each of such Samserv Releasee's estates, heirs, executors, beneficiaries, trusts and trustees.

P.   The definition of "Released Releasees' Claims" found at Section I.A.64 of is replaced in its entirety with the following language:

64. "Released Releasees' Claims" means each and every Claim that one or more of the Leucadia Defendants, any other Releasee or any of the foregoing's respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside

counsel and Leucadia Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators and assigns have asserted, could have asserted or could assert against Lead Plaintiffs, any other Class Member or any of their respective attorneys (including, without limitation, Class Counsel) or any Releasee, Mel Harris Releasee or Samserv Releasee under any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, in any court, tribunal, agency or other forum, that arises out of or relates in any way to any acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the initiation, prosecution, or settlement of the Action or the implementation of this Settlement Agreement including, without limitation, any Claim that the Leucadia Defendants or any other Releasee might have as to any or all of the Mel Harris Releasees and/or the Samserv Releasees for indemnification, contribution or payment of attorneys' fees or based upon any of the facts and/or allegations that gave rise to the Action.

Q.     Section III.H.1.d of the Stipulation of Settlement is replaced in its entirety with the following language:

Pursuant to the terms of this Settlement Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Section III.H.1.e, on and after the Final Settlement Date, each and the Leucadia Defendants and all other Releasees, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged all Released Releasees' Claims against each and every one of the Releasors, Releasees, the Mel Harris Releasees and the Samserv Releasees; *provided however*, that, if the Non-Settling Defendants' Settlement Agreement fails to be approved by the Court as to either the Mel Harris Defendants or the Samserv Defendants (or both), the approval by the Court does not become Final as to either the Mel Harris Defendants or the Samserv Defendants (or both), or the Non-Settling Defendants' Settlement Agreement is terminated as to either the Mel Harris Defendants or the Samserv Defendants (or both), this Section III.H.1.d shall be null and void and shall have no force or effect as to the Mel Harris Releasees and/or the Samserv Releasees, whosever Settlement Agreement is terminated, and the Complete Bar (as set out in Paragraph 26 of Approval Order,

Exhibit B) shall be modified to provide that it shall not bar a Claim

for attorneys' fees that is subject to contractual indemnification.

R.      Section XIII.B of the Stipulation of Settlement is deleted in its entirety

unless Section III.H.1.d becomes null and void and has no force or effect as to the Mel

Harris Releasees and/or the Samserv Releasees and the Complete Bar (as set out in

Paragraph 26 of Approval Order, Exhibit B) modified to provide that it shall not bar a

Claim for attorneys' fees that is subject to contractual indemnification.  If that occurs, then

Section X.III.B shall remain in effect in its entirety as to the Mel Harris Releasees and/or

the Samserv Releasees, whosever Settlement Agreement is terminated.

S.      Section XIII.P of the Stipulation of Settlement shall be replaced in its

entirety by the following:

All Releasees who are not Settling Parties and, subject to Section

Q of this First Amendment, the Mel Harris Releasees and the

Samserv Releasees are intended third-party beneficiaries who are

entitled to enforce the terms of the Release.

T.      Exhibit A to the Stipulation of Settlement is replaced in its entirety by

Exhibit A to this First Amendment.

U.      Exhibit B to the Stipulation of Settlement is replaced in its entirety by

Exhibit B to this First Amendment.

V.      Exhibit C to the Stipulation of Settlement is replaced in its entirety by

Exhibit C to this First Amendment.

14

W.      The Settling Parties' proposed forms of Individual Notices (as defined in Section I.A.32 of the Stipulation of Settlement) and Lead Plaintiffs' proposed forms of the Allocation Plan and Claim Form (as defined in Sections I.A.5 and I.A.13, respectively, of the Stipulation of Settlement) shall be attached as Exhibits to Lead Plaintiffs Motion for Preliminary Approval of the Settlement Agreement.

X.      Except as specifically modified by this First Amendment, all terms of the Stipulation of Settlement shall remain in full force and effect.

Y.      The First Amendment shall not become effective until the effective date of Non-Settling Defendants' Settlement Agreement.  If the Non-Settling Defendants and Lead Plaintiffs are unable to execute a settlement agreement on or before November 12, 2015, this First Amendment shall be deemed void and of no effect and the Settling Parties shall submit the Stipulation of Settlement to the Court on November 12, 2015 without any modifications.

Z.      Matthew D. Brinckerhoff, Jonathan S. Abady, Debra L. Greenberger, Josh Zinner, Susan Shin, Carolyn E. Coffey and Ariana Lindermayer represent that they are authorized to enter into this First Amendment on behalf of each of the Lead Plaintiffs and any other attorneys who have represented or who now represent any of the Lead Plaintiffs in the Action and/or with respect to Released Class Members' Claims.

AA.     Ralph C. Ferrara, Ann M. Ashton and Margaret A. Dale represent that they are authorized to enter into this First Amendment on behalf of the Leucadia Defendants and any other attorneys who have represented or who now represent the Leucadia Defendants in the Action and/or with respect to Released Class Members' Claims,

BB.    This First Amendment may be signed in counterparts, each of which shall

constitute a duplicate original.  Execution by facsimile or by electronically transmitted

signature shall be fully and legally binding on a Settling Party.

Agreed to as of this 12th day of November 2015.


Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York  10020


Josh Zinner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001


Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS


Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20005

Margaret A. Dale
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036

COUNSEL FOR THE LEUCADIA
DEFENDANTS

16

BB.    This First Amendment may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or by electronically transmitted signature shall be fully and legally binding on a Settling Party.

Agreed to as of this 12th day of November 2015.

_____
Matthew D. Brinckerhoff
Jonathan S. Abady
Debra L Greenberger
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York  10020


_____
Josh Zinner
Susan Shin
New Economy Project
121 West 27th Street, Suite 804
New York, New York 10001

_____
Carolyn E. Coffey
Ariana Lindermayer
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, New York 10007

COUNSEL FOR LEAD PLAINTIFFS
AND CLASS MEMBERS

_____
Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20005

Margaret A. Dale
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036

COUNSEL FOR THE LEUCADIA
DEFENDANTS

# Exhibit A

EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

**MONIQUE SYKES, *et al*.,**

                    **Plaintiffs,**

    **vs.**

                              09 Civ. 8486 (DC)

**MEL S. HARRIS AND ASSOCIATES, LLC, *et al*.,**

                    **Defendants.**

---

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENTS, DIRECTING NOTICE TO CLASS MEMBERS, AND SCHEDULING FAIRNESS HEARING

WHEREAS, Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam, on behalf of themselves and the Classes (collectively, "Lead Plaintiffs"), have reached a settlement (*i*) with defendants Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella (collectively, the "Leucadia Defendants") and (*ii*) separately with Mel S. Harris and Associates, L.L.C., Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher (collectively the "Mel Harris Defendants") and Samserv Inc., William Mlotok, Benjamin Lamb, Michael Mosquera, and John Andino (collectively the "Samserv Defendants"); and

WHEREAS, Lead Plaintiffs have entered into a Stipulation of Settlement and First Amendment to Stipulation of Settlement with the Leucadia Defendants and a separate Stipulation of Settlement with the Mel Harris and Samserv Defendants (both settlements collectively, the "Settlements"); and

WHEREAS, if the separate Settlements are approved by the Court, all Claims that have been, could have been or could be asserted in this Action against all defendants would be resolved; and

WHEREAS, Lead Plaintiffs have filed a motion asking the Court preliminarily to approve both Settlements and attached to their motion the following documents memorializing their settlement with the Leucadia Defendants (collectively, the "Leucadia Settlement Agreement"):

(i)        a March 18, 2015 Stipulation of Settlement as to Certain Claims Against Certain Defendants,

(ii)       a November 12, 2015 First Amendment to Stipulation of Settlement,

(iii)      a proposed Preliminary Approval Order (Exhibit A to the First Amendment to Stipulation of Settlement),

(iv)      a proposed Approval Order (Exhibit B to the First Amendment to Stipulation of Settlement) and

(v)       a proposed Judgment (Exhibit C to the First Amendment to Stipulation of Settlement); and

WHEREAS, also attached to Lead Plaintiffs' motion for preliminary approval is a Stipulation of Settlement as to Claims Against Mel Harris Defendants and Samserv

Defendants, which stipulation memorializes Lead Plaintiffs' settlement with the Mel Harris Defendants and the Samserv Defendants (the "Mel Harris/Samserv Settlement Agreement"); and

WHEREAS, also attached to Lead Plaintiffs' motion for preliminary approval are the following implementing documents:

(i)      proposed Individual Notices to be mailed to eligible Class Members,

(ii)     proposed Publication Notice,

(iii)    Lead Plaintiffs' proposed Allocation Plan,

(iv)     Lead Plaintiffs' proposed Claim Forms and

(v)      Lead Plaintiffs' agreement with the law firm of Stephen Einstein & Associates, P.C. (the "Einstein Firm"); and

WHEREAS, the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants have each asked the Court preliminarily to approve their respective settlements; and

WHEREAS, all of the parties have asked that, to the extent feasible, the approval process for the Leucadia Settlement Agreement and the approval process for the Mel Harris/Samserv Settlement Agreement be conducted contemporaneously, one set of documents implementing the Leucadia Settlement Agreement and the Mel Harris/Samserv Settlement Agreement (collectively, the "Settlement Agreements") and approval process (that is, this Preliminary Approval Order, the Individual Notices, the Publication Notice, the Claim Forms, the Allocation Plan, the Approval Order and the Judgment) address both Settlements and the Settlements be jointly administered; and

WHEREAS, the Court has read and considered the Settlement Agreements and the submissions made by the parties; and

WHEREAS, based on the materials described above, the Court finds that each of the proposed Settlements and the Allocation Plan is within the range of possible approval and that notifying potential Class Members about the terms and conditions of the proposed Settlement Agreements and the Allocation Plan and scheduling a formal Fairness Hearing is warranted; and

WHEREAS, all terms of the proposed Settlement Agreements and Allocation Plan remain subject to the Court's approval;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.   *Definitions* – To the extent not defined in this Order, this Court adopts and incorporates the definitions in the Settlement Agreements for purposes of this Order.

2.   *Contemporaneous Review and Administration of Both Proposed Settlements* – The Court finds, for the sake of efficiency and cost effectiveness and to avoid confusing potential Class Members, that, to the extent possible, the approval process for the Settlement Agreements should be conducted contemporaneously, one set of implementing documents for the Settlement Agreements and approval process should be used to address both Settlements and both Settlements should be administered jointly.

3.   *Preliminary Findings Regarding Proposed Settlements* – The Court preliminarily finds that each of the proposed Settlements as evidenced by their respective Settlement Agreements and the Allocation Plan is sufficiently fair, reasonable and

4

adequate to warrant providing notice of the proposed Settlements to the Classes and

scheduling a Fairness Hearing for further review of the proposed Settlements and

Allocation Plan.  In making these findings, the Court has considered a number of factors,

including the nature of the Lead Plaintiffs' and defendants' respective claims and

defenses, the amount and type of consideration to be paid in the Settlements, the

information available to the parties and the allocation of proposed settlement relief.

Based on these considerations, the Court preliminarily concludes that (*i*) each of the

proposed Settlements and the Allocation Plan is within the range of possible approval and

the Settlements resulted from serious, informed, non-collusive negotiations conducted at

arm's length by the relevant settling parties and their counsel and (*ii*) none of the terms

and conditions of either of the Settlement Agreements or the Allocation Plan have any

obvious deficiencies or improperly grant preferential treatment to any individual Class

Member.

      4.    ***Certification of Settlement Classes*** – The Court hereby certifies the

following settlement Classes for each of the Settlements pursuant to Fed. R. Civ. R. 23

pending a Fairness Hearing and further order of the Court:

      a.    A Rule 23(b)(2) Class of all persons or entities who have been or

could have been sued by the Mel Harris Firm (or by any other counsel as directed by the

Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions

commenced in any court located in the state of New York and where default judgments

were or could have been sought; and

b.      An overlapping Rule 23(b)(3) Class of all persons or entities (all of whom are also members of the Rule 23(b)(2) Class) who have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm)as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where Default Judgments were obtained.

5.      For purposes of the settlement of the Action, and only for these purposes, and subject to the terms of the Settlement Agreements, the Court finds that the requirements of Fed. R. Civ. P. 23 and any other applicable laws are satisfied respecting the settlement Classes being preliminary certified in connection with each of the Settlements:

a.      Both the Rule 23(b)(2) Class and the Rule 23(b)(3) Class are ascertainable from business records and/or from objective criteria;

b.      Both the Rule 23(b)(2) Class and the Rule 23(b)(3) Class are so numerous that joinder of all members would be impractical;

c.      Lead Plaintiffs have alleged one or more questions of fact and law appear to be common to all Rule 23(b)(2) Class Members and all Rule 23(b)(3) Class Members throughout New York State;

d.      Based on Lead Plaintiffs' allegations that the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants engaged in uniform conduct affecting all Rule 23(b)(2) Class Members and all Rule 23(b)(3) Class Members, Lead Plaintiffs' claims are typical of those of the other members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class throughout New York State;

6

e.      Lead Plaintiffs are capable of fairly and adequately protecting the interests of the members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class, in that (*i*) Lead Plaintiffs' interests are consistent with those of the other Rule 23(b)(2) Class Members and the other Rule 23(b)(3) Class Members throughout New York State, (*ii*) Class Counsel are able and qualified to represent each of the Rule 23(b)(2) Class and the Rule 23(b)(3) Class throughout New York State, and (*iii*) Lead Plaintiffs and Class Counsel have fairly and adequately represented all of the Rule 23(b)(2) Class Members and all of the Rule 23(b)(3) Class Members in obtaining both monetary and injunctive relief, and in negotiating and entering into the proposed Settlements;

f.      For settlement purposes, the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants have all acted on grounds that apply generally to the members of the Rule 23(b)(2) Class, so that injunctive relief is appropriate respecting the Rule 23(b)(2) Class as a whole; and

g.      For settlement purposes, questions of law and/or fact common to members of the Rule 23(b)(3) Class predominate over such questions affecting only individual Rule 23(b)(3) Class Members, and a class action is superior to all other available methods for the fair and efficient resolution of the Action.  In making these provisional findings for settlement purposes, the Court has considered, among other things, (*i*) the Rule 23(b)(3) Class Members' interest in individually controlling the prosecution of separate actions, (*ii*) the impracticability or inefficiency of prosecuting separate actions, (*iii*) the extent and nature of any litigation concerning these claims

already commenced and (*iv*) the desirability of concentrating the litigation of the claims in a particular forum.

6.     This certification of these settlement Classes is made for the sole purpose of attempting to consummate settlement of the Action in accordance with the Settlement Agreements.

7.     If the Court does not grant final approval of one or both of the proposed Settlements, or if the Court's approval of the Settlements does not become Final for any reason whatsoever, this settlement class certification shall be deemed void *ab initio* as to those defendants whose settlement has not been approved, shall be of no force or effect whatsoever to those defendants, and shall not be referred to or used for any purpose whatsoever, including in any further class certification proceedings in this Court (or any other court), involving those defendants; *provided however*, that the voiding of the settlement class certification in connection with the circumstances described in this paragraph 7 shall have no effect on the Court's March 27, 2013 order certifying a Rule 23(b)(2) litigation class and a Rule 23(b)(3) litigation class.

8.     ***Certification of Lead Plaintiffs and Appointment of Class Counsel*** – Solely for the purposes of the proposed Settlements, the Court hereby (*i*)  certifies Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam as the Lead Plaintiffs and class representatives and (*ii*)  appoints Emery Celli Brinckerhoff & Abady LLP, New Economy Project and MFY Legal Services, Inc. as Class Counsel pursuant to Fed. R. Civ. P. 23(g) for purposes of representing the proposed settlement Classes.

9.      ***Scheduling of Fairness Hearing*** – Pursuant to Fed. R. Civ. P. 23(e), the

Court will hold a Fairness Hearing on _____, 201_, at _____, _.m. ET to

address both Settlements, before Judge Denny Chin, Circuit Judge for the United States

Court of Appeals for the Second Circuit sitting by designation, at the United States

District Court for the Southern District of New York, Thurgood Marshall United States

Courthouse, 40 Foley Square, New York, New York 10007.  The Court may adjourn the

Fairness Hearing and reconvene it at some other date without further notice to Class

Members and may approve one or both of the Settlements (with or without any

modifications executed by the relevant settling parties), enter the proposed Approval

Order at or after the Fairness Hearing or any adjournment of the Fairness Hearing, and

dismiss the claims asserted against the defendants named in the Complaint on the merits

and with prejudice without further notice to any persons or entities (including Class

Members) other than the parties.

10.     The Fairness Hearing will consider, among other things:

a.      whether the Court should grant final certification of the

Rule 23(b)(2) Class and the Rule 23(b)(3) Class for settlement purposes;

b.      whether the Court should approve one or both of the proposed

Settlements as fair, reasonable and adequate;

c.      whether the Court should approve the proposed Allocation Plan as

fair and reasonable;

d.      whether an Approval Order and a Judgment, substantially in the

forms set out in Exhibits B and C to the First Amendment to Stipulation of Settlement (as

9

part of the Leucadia Settlement Agreement), should be entered dismissing the Action on the merits and with prejudice as to the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants, and whether the releases set out in the Settlement Agreements should be provided to the Releasees and Releasors;

e.      whether adequate and sufficient notice was given in accordance with this Order;

f.      whether Lead Plaintiffs and Class Counsel fairly and adequately represented the Class for purposes of entering into and implementing the proposed Settlements;

g.      whether the proposed Approval Order and the Judgment (forms of which are attached to the First Amendment to Stipulation of Settlement (as part of the Leucadia Settlement Agreement) as Exhibits B and C, respectively) should be entered in this Action pursuant to the proposed Settlement Agreements;

h.      whether an injunction consistent with the preliminary injunction that is set out in paragraph 46 of this Order should be permanently entered by the Court (as set out in the form of Approval Order, Exhibit B to the First Amendment to Stipulation of Settlement, at paragraph 20);

i.      whether the proposed Complete Bar Order (as set out in the Approval Order, Exhibit B to the First Amendment to Stipulation of Settlement, at paragraph 24), should be entered;

j.      whether the Court should approve Lead Plaintiffs' Service Award Application;

10

k.      whether the Court should approve Class Counsel's Attorneys' Fees and Expenses Application(s);and

l.      any other matters relating to the approval and implementation of the Settlement Agreements that the Court may deem appropriate.

11.      *The Class Administrator* – The Court approves Epiq Systems to serve as Class Administrator.  The Class Administrator shall perform tasks as directed by Class Counsel, including (*i*) distributing the Individual Notices and Claim Forms, (*ii*) arranging for publication of the Publication Notice, (*iii*) acting as escrow agent for the settlement moneys contributed by the defendants during the approval process, (*iv*) operating a settlement website, (*v*) setting up and running a toll-free telephone center staffed with knowledgeable individuals to respond to inquiries from potential Class Members, (*vi*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Class Counsel, (*vii*) receiving and processing Claim Forms from Class Members (*viii*) receiving and maintaining any requests from potential Rule 23(b)(3) Class Members for exclusion from the Rule 23(b)(3) Class, (*ix*) receiving and maintaining any Nominal Restitution Declinations from Rule 23(b)(2) Nominal Restitution Recipients, (*x*) receiving and circulating any Objections received from Class Members, (*xi*) arranging for distribution of the Net Settlement Amount in accordance with the terms of the Allocation Plan and (*xii*) otherwise administering the terms of this Settlement Agreements.  The Class Administrator will (*i*) act as the agent of Class Counsel (who are acting as agents and representatives of the Class Members) to the extent the Class Administrator is given confidential information about potential Class Members, including

11

names, addresses and social security numbers, (*ii*) use such confidential information only in connection with the administration of the proposed Settlements and (*iii*) take reasonable measures to maintain the security of the confidential information.

12.     ***Suspension of Collection Activity*** – The Settlement Agreements provide that the continuing collection of Consumer Debt from Class Members will be suspended during the period in which approval of the Settlement Agreements is under review by this Court or any appellate court, during which period no interest shall accrue on the Consumer Debt.  In implementing that suspension, LR Credit will instruct the counsel that is currently engaged to collect Consumer Debt on its and its Subsidiaries' behalf, Stephen Einstein & Associates, P.C., to work with Lead Plaintiffs and Class Counsel to accomplish this suspension.  The Court hereby approves Lead Plaintiffs' entry into an agreement with the Einstein Firm to accomplish the suspension of collection of Consumer Debt during the approval process.  It further approves Lead Plaintiffs' payment to the Einstein firm, as an Administration Expense, the aggregate amount of $500,000 for the Einstein Firm's work on suspending collections, which payment will be paid by Lead Plaintiffs out of the Leucadia Account pursuant to the terms of the agreement between the Einstein Firm and Lead Plaintiffs and subject to the conditions set out in the Leucadia Settlement.

13.     ***Notice*** – The Court hereby approves, as to form and content, the Individual Notices, Claim Forms and Publication Notice submitted by the parties to the Court.  The Court finds that the Individual Notices, Claim Forms and Publication Notice will fully and accurately inform potential Class Members of all material elements of the

proposed Settlements, of the right of potential Rule 23(b)(3) Class Members to be excluded from the Rule 23(b)(3) Class, of the right of potential Rule 23(b)(2) Nominal Restitution Recipients to decline Nominal Restitution Relief, and of each Class Member's right and opportunity to object to one or both of the proposed Settlements.  The Court further finds that the mailing and distribution of the Individual Notices and Claim Forms and the publication of the Publication Notice substantially in the manner and form set out in this Order will meet the requirements of due process, Fed. R. Civ. P. 23, the Rules of this Court, and any other applicable law, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all person and entities entitled to such notice.

14.    No later than [90 days prior to date for exclusion/objection], the Class Administrator shall mail or cause to be mailed the Individual Notices and Claim Forms, substantially in the forms submitted to the Court by the parties, by first-class mail, postage prepaid, to all potential Rule 23(b)(3) Class Members and all potential Rule 23(b)(2) Nominal Restitution Recipients at the address of each such person or entity. Before such mailing, the Class Administrator shall check or cause to be checked all mailing addresses against appropriate available databases to verify the addresses of potential Rule 23(b)(3) Class Members and potential Rule 23(b)(2) Nominal Restitution Recipients and shall update such addresses as appropriate.

15.    If any Individual Notices are returned to the Class Administrator with updated addresses, the Class Administrator shall remail such notices (with the Claim Forms) within five business days following receipt of such updated addresses.  If the

13

Class Administrator does not receive an updated address at least five business days before the Fairness Hearing, no remailing shall be required.  If any Individual Notices are returned to the Class Administrator as undeliverable and without an indication of an updated address, the Class Administrator shall cause further research to be undertaken to determine whether a more current address is available.  If such address is found at least five business days before the Fairness Hearing, the Individual Notices (with the Claim Forms) shall be remailed to the potential Rule 23(b)(3) Class Member or potential Rule 23(b)(2) Nominal Restitution Recipient.

16.    No later than [60 days before date for exclusion/objection], the Class Administrator shall cause the Publication Notice, substantially in the form submitted to the Court by the parties, to be published once in each of following publications:  the *New York Daily News,* the *New York Post*, *AM New York*, *New York Metro*, *El Diario*, the *Times Union* and the *Buffalo News*.

17.    The Class Administrator shall cause a website to be established on which it shall post, among other things, (*i*) a notice that is, in sum and substance, similar to the Individual Notices, (*ii*) the Claim Forms, (*iii*) the Publication Notice, (*iv*) the Allocation Plan, (*v*) the Settlement Agreements (including Exhibits A, B and C to the First Stipulation of Settlement), (*vi*) the filings of the parties seeking approval of the proposed Settlements and any responsive papers, (*vii*) Class Counsel's Attorneys' Fees and Expenses Application(s), (*viii*) the operative Complaint, (*ix*) the Court's December 29, 2010 Opinion on defendants' motions to dismiss, its September 4, 2012 Opinion on class certification and its March 28, 2013 class certification Order, (*x*) the Second Circuit

Opinion affirming the Court's March 28, 2013 class certification Order, (*xi*) this Order and any subsequent Orders of the Court relating to the Settlements and (*xii*) such other materials as Class Counsel determines should be posted.

18.     The parties shall provide notice to the appropriate federal and state officials as required by the Class Action Fairness Act consistent with the requirements of that Act.

19.     The parties and their counsel may by written agreement make any amendments to or modifications of the Individual Notices, the Claim Forms, the Publication Notice or the Allocation Plan without notice to or approval by the Court so long as such changes are not materially inconsistent with this Order and do not materially limit the rights of potential Class Members.

20.     At least five days before the Fairness Hearing, Class Counsel shall file or cause to be filed with the Court a declaration confirming that Notice was provided consistent with this Order.

21.     ***Administration and Notice Expenses*** – As provided in the Leucadia Settlement Agreement, Leucadia National Corporation shall pay or cause to be paid all Notice Expenses incurred in providing the Notice described in paragraphs 14 through 16 and paragraph 18; *provided* that, to the extent Notice Expenses are incurred specifically to mail separate Individual Notices or to publish a separate Publication Notice of the terms of the Mel Harris/Samserv Settlement Agreement, which separate Individual Notices and Publication Notices are in addition to the Individual Notices and Publication Notice of the Leucadia Settlement Agreement, such additional Notice Expenses shall be

15

considered Administration Expenses payable from the Settlement Fund established by the

Mel Harris/Samserv Settlement Agreement.  As further provided in the Settlement

Agreements, all other Administration Expenses including, without limitation, the fees,

costs and expenses of the Class Administrator and any fees, costs or expenses associated

with providing the relief set out in the Settlement Agreements, shall be paid from the

Settlement Funds established pursuant to each of the Settlement Agreements.

22.  ***Exclusion from the Class*** – All potential Rule 23(b)(3) Class Members

who wish to exclude themselves from the Rule 23(b)(3) Class must submit timely,

written requests for exclusion to the Class Administrator at the address provided in the

Individual Notices.  The exclusion request must include the following information:

(*i*) name, (*ii*) address, (*iii*) telephone number and (*iv*) e-mail address, if available.

23.  To be valid, any request for exclusion must be in writing, must contain all

of the information described in paragraph 21 of this Order and must be received by the

Class Administrator by no later than [20 days before the scheduled date of the Fairness

Hearing].

24.  If the proposed Settlements are approved, any potential Rule 23(b)(3)

Member who has not filed a timely and valid written request for exclusion (and all Rule

23(b)(3) Releasors related to each such Rule 23(b)(3) Class Member) shall be bound by

the Rule 23(b)(3) Release and by all proceedings, orders, and judgments regarding the

proposed Settlements that relate to the Rule 23(b)(3) Class, whether favorable or

unfavorable, even if he, she or it has pending or subsequently initiates any litigation,

16

arbitration or other proceedings, or has any other Claim, against any or all of the

Releasees relating to any of the Released Rule 23(b)(3) Class Members' Claims.

25.     Even if a potential Rule 23(b)(3) Class Member submits a timely and valid

request for exclusion from the Rule 23(b)(3) Class, he, she or it will still be a Rule

23(b)(2) Injunction Only Beneficiary and, as such, shall be bound by terms of the Rule

23(b)(2) Injunction Only Release and the Settlement Release as that release in defined in

each of the Leucadia Settlement Agreement and the Mel Harris/Samserv Settlement

Agreement.

26.     At or before the Fairness Hearing, the parties shall provide to the Court a

list of the persons and entities, if any, who have validly and timely requested exclusion

from the Rule 23(b)(3) Class.  Persons requesting exclusion from the Rule 23(b)(3) Class

shall not be entitled to receive relief provided to the Rule 23(b)(3) Class, but shall, as

Rule 23(b)(2) Class Members, be beneficiaries of the injunctive relief provided by the

Settlement.

27.     ***Nominal Restitution Declination*** – All potential Rule 23(b)(2) Nominal

Restitution Recipients who wish to decline the Nominal Restitution Relief available to

him, her or it as Rule 23(b)(2) Nominal Restitution Recipients must submit a timely,

written Nominal Restitution Declination to the Class Administrator at the address

provided in the Individual Notices.  The Nominal Restitution Declination must include

the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number and (*iv*) e-mail

address, if available.

17

28.     To be valid, any Nominal Restitution Declination must be in writing, must

contain all of the information described in paragraph 27 of this Order and must be

received by the Class Administrator by no later than [20 days before the scheduled date

of the Fairness Hearing].

29.     If the proposed Settlement is approved, any potential Rule 23(b)(2)

Nominal Restitution Recipient Member who has not filed a timely and valid Nominal

Restitution Declination (and all Rule 23(b)(2) Nominal Restitution Releasors related to

each such Rule 23(b)(2) Nominal Restitution Recipients) shall be bound by the Rule

23(b)(2) Nominal Restitution Release and by all proceedings, orders, and judgments

regarding the proposed Settlement that relate to the Rule 23(b)(2) Nominal Restitution

Recipients, whether favorable or unfavorable, even if he, she or it has pending or

subsequently initiates any litigation, arbitration or other proceedings, or has any other

Claim, against any or all of the Releasees relating to any of the Released Rule 23(b)(2)

Class Members' Nominal Restitution Claims.

30.     Even if a potential Rule 23(b)(2) Nominal Restitution Recipient submits a

timely and valid Nominal Restitution Declination, he, she or it will still be a Rule

23(b)(2) Injunction Only Beneficiary and, as such, shall be bound by terms of the Rule

23(b)(2) Injunction Only Release and the Settlement Release.

31.     At or before the Fairness Hearing, the parties shall provide to the Court a

list of the persons and entities, if any, who have validly and timely submitted Nominal

Restitution Declinations.  Persons submitting Nominal Restitution Declinations shall not

be entitled to receive relief provided to the Rule 23(b)(2) Nominal Restitution Recipients,

18

but shall, as Rule 23(b)(2) Class Members, be beneficiaries of the injunctive relief provided by the Settlement.

32.     *Objections* – Any Class Member who wishes to object to the fairness, reasonableness or adequacy of the proposed Settlements, including the Allocation Plan and/or Class Counsel's Attorneys' Fees and Expenses Application, may do so by filing an objection as set out below.  However, a potential Rule 23(b)(3) Class Member who requests exclusion from the Rule 23(b)(3) Class or a Rule 23(b)(2) Nominal Restitution Recipient who submits a Nominal Restitution Declination may not file an objection regarding the terms of either Settlement Agreement as they relate, respectively, to Rule 23(b)(3) Class Members or to Rule 23(b)(2) Nominal Restitution Recipients.

33.     A Class Member who wishes to object must submit to the Class Administrator at the address provided in the Individual Notices and Publication Notice his, her or its objection(s), as well as the specific reason(s), if any, for each such objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.  The Class Administrator shall promptly send a copy of each objection it receives to Class Counsel, Leucadia Defendants' Settlement Counsel, Mel Harris Defendants' Counsel and Samserv Defendants' Counsel by email or facsimile.

34.     A Class Member's objection must include the name and docket number of this Action (as set out at the top of this Order) and must also include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number and (*iv*) e-mail address, if available.

19

35.     All objections must be received by the Class Administrator by no later than [20 days before the scheduled date of the Fairness Hearing].

36.     A Class Member may object on his, her or its own, or through counsel hired at his, her or its own expense.

37.     Any attorney hired by a Class Member for the purpose of objecting to either or both of the proposed Settlements must serve on Class Counsel, Leucadia Defendants' Settlement Counsel, Mel Harris Defendants' Counsel and Samserv Defendants' Counsel and file with the Court (at the addresses set out in paragraph 47) a notice of appearance, which must be received by counsel and the Court no later than [20 days before the scheduled date of the Fairness Hearing].

38.     Any Class Member who does not make an objection in the time and manner provided in this Order shall be deemed to have waived and forfeited any and all rights he, she or it may have to object and shall be foreclosed from making any objection to the fairness, reasonableness or adequacy of either proposed Settlement unless otherwise allowed by the Court.

39.     ***Appearance at the Fairness Hearing*** – Attendance at the Fairness Hearing is not necessary.  However, any Class Member who submits a timely written objection to the Class Administrator in accordance with the requirements set out in this Order – and only such Class Members – may also appear at the Fairness Hearing either in person or through personal counsel retained at the Class Member's own expense.

40.     Class Members who intend to appear at the Fairness Hearing on their own behalf must send a letter to the Class Administrator notifying the Class Administrator of

20

his, her or its intention to appear at the Fairness Hearing.  Such letter must also include

the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone

number and (*iv*) e-mail address, if available.   The Class Administrator shall promptly

send a copy of each letter it receives to Class Counsel, Leucadia Defendants' Settlement

Counsel, Mel Harris Defendants' Counsel and Samserv Defendants' Counsel by email or

facsimile.

      41.     If a Class Member retains personal counsel (at the Class Member's

expense) to appear on his, her or its behalf at the Fairness Hearing, such counsel shall

serve on Class Counsel, Leucadia Defendants' Settlement Counsel, Mel Harris

Defendants' Counsel and Samserv Defendants' Counsel and file with the Court (at the

addresses set out in paragraph 47) a notice of intention to appear, which must be received

by counsel and the Court no later than [20 days before the scheduled date of the Fairness

Hearing].

      42.     Any Class Member who does not submit a letter to the Class

Administrator or whose personal counsel does not file a notice of intention to appear with

the Court (as the case may be) in the time and manner provided in this Order shall be

deemed to have waived and forfeited any and all rights he, she or it may have to appear

separately at the Fairness Hearing and shall be foreclosed from appearing separately at

the Fairness Hearing unless otherwise allowed by the Court.

      43.     Any Class Member who submits an objection to the proposed Settlements

shall be deemed to consent to the exclusive jurisdiction of this Court with respect to such

objection and all issues that arise or relate to such objection, including any order issued or findings made by the Court regarding the objection.

44.     Class Members do not need to appear at the hearing or take any other action to indicate their approval of the Settlement Agreements.

45.     At the time Lead Plaintiffs submit their motion seeking approval of the Settlements under paragraph 50, they shall also submit to the Court all of the timely requests for exclusion, declinations of nominal restitution, objections and Class Member letters indicated an intention to appear personally at the Fairness Hearing that have been timely submitted to the Class Administrator.

46.     *Preliminary Injunction* – Pending final determination by the Court whether the Settlement Agreements should be approved, this Court preliminarily bars and enjoins:

a.     all Rule 23(b)(3) Class Members who do not request exclusion, all Rule 23(b)(2) Nominal Restitution Recipients who do not submit Nominal Restitution Declarations, all Rule 23(b)(2) Injunction Only Beneficiaries, and all of their attorneys, accountants, agents, heirs, executors and assigns – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of them (including any person or entity purporting to act parens patriae for Class Members)  – from filing, prosecuting, or intervening in, or receiving any benefits from, any other lawsuit or proceeding that is based on or arises from any Released Class Members' Claim as to any Releasee; *provided however*, that the preliminary injunction set out in this Order shall not bar or enjoin any Class Member from defending, participating in or litigating any debt

22

collection proceeding in which LR Credit, LLC or one of its subsidiaries is seeking to

collect Consumer Debt from the Class Member, including, without limitation, any efforts

to vacate any default judgment entered in such a case; and

        b.      all persons and entities from filing or prosecuting any other lawsuit

as a class action or other proceeding on behalf of any Rule 23(b)(3) Class Member who

does not request exclusion, any Rule 23(b)(2) Nominal Restitution Recipient who does

not submit a Nominal Restitution Declination and any Rule 23(b)(2) Injunction Only

Beneficiary as to any Releasee, if such lawsuit is based on or arises out of any Released

Class Members' Claim; *provided* that, for the avoidance of doubt, any Class Member

who has a pending action relating to any Released Class Members' Claim against one or

more of the Leucadia Defendants, the Mel Harris Defendants and/or the Samserv

Defendants as of the Execution Date and, if a Rule 23(b)(3) Class Member, does not

request exclusion from the Rule 23(b)(3) Class or, if a Rule 23(b)(2) Nominal Restitution

Recipient, does not submit a Nominal Restitution Declination shall be barred from

pursuing his, her or its action as to any of the relevant defendants or their related

Releasees.

        47.     ***Filing and Service of Submissions*** – Any Class Member who has retained

counsel and wishes to make a submission pursuant to paragraphs 37 or 41 of this Order

must ensure that the submission is received by the Court and by Class Counsel, Leucadia

Defendants' Settlement Counsel, Mel Harris Defendants' Counsel and Samserv

Defendants' Counsel by no later than [20 days before the scheduled date of the Fairness

Hearing] at the following addresses:

23

a.      the Court:

       Clerk of Court
       United States District Court for the Southern District of New York
       Daniel Patrick Moynihan United States Courthouse
       500 Pearl Street
       New York, New York 10007-1312

b.      Class Counsel:

       Matthew D. Brinckerhoff
       mbrinckerhoff@ecbalaw.com
       Debra L Greenberger
       dgreenberger@ecbalaw.com
       Emery Celli Brinckerhoff & Abady LLP
       600 Fifth Avenue, 10th Floor
       New York, New York  10020
       Facsimile:   (212) 763-5001

c.      Leucadia Defendants' Settlement Counsel:

       Ralph C. Ferrara
       rferrara@proskauer.com
       Ann M. Ashton
       aashton@proskauer.com
       Margaret A. Dale
       mdale@proskauer.com
       Proskauer Rose LLP
       1001 Pennsylvania Avenue, NW
       Suite 600 South
       Washington, DC 20005
       Facsimile:   (202) 416-6899

d.      Mel Harris' Counsel:

       Maria Ginzburg
       mariaginzburg@quinnemanuel.com
       Quinn Emanuel Urquhart & Sullivan, LLP
       51 Madison Avenue, 22nd Floor,
       New York, New York 10010
       Telephone:  (212) 849-7000
       Facsimile:  (212) 849-7100

24

and

Brett Scher
bscher@kdvlaw.com
Kaufman Dolowich & Voluck, LLP
60 Broad Street, Suite 3600
New York, NY 10004
Telephone:  (212) 485-9950
Facsimile:  (212) 485-9700

    e.    Samserv Defendants' Counsel:

Jordan Sklar
jordan.sklar @babchikyoung.com
Babchik & Young, LLP
245 Main Street
White Plains, NY 10601
Telephone:  914 470-0001 x15
Facsimile:  914 470-0009
jordan.sklar @babchikyoung.com

48.     Service on Class Counsel, Leucadia Defendants' Settlement Counsel, Mel

Harris Defendants' Counsel and Samserv Defendants' Counsel may be made by

facsimile, e-mail, and/or next-day (excluding Saturday or Sunday) express delivery

service.

49.     Counsel for the parties are directed promptly to inform each other of any

submission served on them (or that otherwise comes into their possession) pursuant to

paragraphs 37 or 41 of this Order.

50.     ***Filing of Papers Regarding the Settlements*** – All papers regarding the

proposed Settlements to be filed with the Court (other than those described in paragraphs

37 and 41, which shall be filed and served consistent with the directions in those

paragraphs) shall be filed and served as follows:

25

a.      any motions seeking approval of one or both of the proposed

Settlements and Allocation Plan and any Attorneys' Fees and Expenses Application(s)

must be filed and served no later than -[35 days before the date of the scheduled Fairness

Hearing];

b.      any responses to any motions seeking final approval of one or both

of the proposed Settlements, the Allocation Plan and/or any Attorneys' Fees and

Expenses Application(s) must be filed and served no later than [20 days before the

scheduled date of the Fairness Hearing]; and

c.      any reply papers in support of approval of one or both of the

proposed Settlements, the Allocation Plan and/or any Attorneys' Fees and Expenses

Application(s), and any responses to objections or oppositions, must be filed and served

no later than [7 days before the date of the scheduled Fairness Hearing].

51.      ***Termination of Leucadia Settlement Agreement*** – This Order shall

become null and void as to the Leucadia Defendants, and shall be without prejudice to the

rights of Lead Plaintiffs and the Leucadia Defendants, all of whom shall be restored to

their respective positions existing immediately before this Court entered this Order, if

(*i*) the proposed Leucadia Settlement Agreement is not finally approved by this Court, or

the Court's approval of the Leucadia Settlement Agreement does not become Final or

(*ii*) the Leucadia Settlement Agreement is terminated or does not become effective in

accordance with its terms or for any reason.  In such event, (*i*) all provisions of the

Leucadia Settlement Agreement other than its termination provisions shall become null

and void and be of no further force or effect as to the Leucadia Defendants, (*ii*) neither

26

the Leucadia Settlement Agreement (other than its termination provisions) nor any Court order regarding the Leucadia Settlement Agreement, including this Order, shall be used or referred to for any purpose whatsoever as to the Leucadia Defendants except in a proceeding to enforce this provision of this Order or the termination provisions of the Leucadia Settlement Agreement as to the Leucadia Defendants and (*iii*) none of the Leucadia Settlement Agreement, this Order, the negotiation of the Leucadia Settlement Agreement, or the statements or court proceedings relating to the Leucadia Settlement Agreement shall in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action or any other action, or any other judicial, administrative, regulatory or other proceeding, as to the Leucadia Defendants except in a proceeding to enforce this provision of this Order or the termination provisions of the Leucadia Settlement Agreement.  Without limiting the foregoing, neither the Leucadia Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity including, but not limited to, the Releasees (as defined in the Leucadia Settlement Agreement), as a waiver by those Releasees of any applicable defense, or as a waiver by the Lead Plaintiffs or the Releasors of any claims, causes of action or remedies as to the Leucadia Defendants.

52.     ***Termination of Mel Harris/Samserv Settlement Agreement as to Mel Harris Defendants*** – This Order shall become null and void as to the Mel Harris Defendants, and shall be without prejudice to the rights of Lead Plaintiffs and the Mel

Harris Defendants, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (*i*) the proposed Mel Harris/Samserv Settlement Agreement is not finally approved by this Court, or the Court's approval does not become Final or (*ii*) the Mel Harris/Samserv Settlement Agreement is terminated as to the Mel Harris Defendants or does not become effective as to the Mel Harris Defendants in accordance with its terms or for any reason.  In such event, (*i*) all provisions of the Mel Harris/Samserv Settlement Agreement other than its termination provisions shall become null and void and be of no further force or effect as to the Mel Harris Defendants, (*ii*) neither the Mel Harris/Samserv Settlement Agreement (other than its termination provisions) nor any Court order regarding the Mel Harris/Samserv Settlement Agreement, including this Order, shall, as to the Mel Harris Defendants, be used or referred to for any purpose whatsoever except in a proceeding to enforce this provision of this Order or the termination provisions of the Mel Harris/Samserv Settlement Agreement and (*iii*) none of the Mel Harris/Samserv Settlement Agreement, this Order, the negotiation of the Mel Harris/Samserv Settlement Agreement, or the statements or court proceedings relating to the Mel Harris/Samserv Settlement Agreement shall, as to the Mel Harris Defendants, in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action or any other action, or any other judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this provision of this Order or the termination provisions of the Mel Harris/Samserv Settlement Agreement.  Without limiting the foregoing, neither the Mel Harris/Samserv Settlement Agreement nor any related negotiations, statements, or

28

court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity including, but not limited to, the Releasees (as defined in the Mel Harris/Samserv Settlement Agreement), as a waiver by those Releasees of any applicable defense, or as a waiver by the Lead Plaintiffs or the Releasors of any claims, causes of action or remedies as to the Mel Harris Defendants.  For the avoidance of doubt, if (*i*) the proposed Leucadia Settlement Agreement is not finally approved by this Court, or the Court's approval does not become Final, (*ii*) the Leucadia Settlement Agreement is terminated or does not become effective in accordance with its terms or for any reason, or (*iii*) the Mel Harris/Samserv Settlement Agreement is terminated as to the Samserv Defendants or does not become effective as to the Samserv Defendants in accordance with its terms or for any reason, this Order shall remain in full force and effect as to the Mel Harris Defendants.

53.    ***Termination of Mel Harris/Samserv Settlement Agreement as to Samserv Defendants*** – This Order shall become null and void as to the Samserv Defendants, and shall be without prejudice to the rights of Lead Plaintiffs and the Samserv Defendants, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (*i*) the proposed Mel Harris/Samserv Settlement Agreement is not finally approved by this Court, or the Court's approval does not become Final or (*ii*) the Mel Harris/Samserv Settlement Agreement is terminated as to the Samserv Defendants or does not become effective as to the Samserv Defendants in accordance with its terms or for any reason.  In such event, (*i*) all provisions of the Mel

29

Harris/Samserv Settlement Agreement other than its termination provisions shall become null and void and be of no further force or effect as to the Samserv Defendants, (*ii*) neither the Mel Harris/Samserv Settlement Agreement (other than its termination provisions) nor any Court order regarding the Mel Harris/Samserv Settlement Agreement, including this Order, shall, as to the Samserv Defendants, be used or referred to for any purpose whatsoever except in a proceeding to enforce this provision of this Order or the termination provisions of the Mel Harris/Samserv Settlement Agreement and (*iii*) none of the Mel Harris/Samserv Settlement Agreement, this Order, the negotiation of the Mel Harris/Samserv Settlement Agreement, or the statements or court proceedings relating to the Mel Harris/Samserv Settlement Agreement shall, as to the Samserv Defendants, in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action or any other action, or any other judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this provision of this Order or the termination provisions of the Mel Harris/Samserv Settlement Agreement.  Without limiting the foregoing, neither the Mel Harris/Samserv Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity including, but not limited to, the Releasees (as defined in the Mel Harris/Samserv Settlement Agreement), as a waiver by those Releasees of any applicable defense, or as a waiver by the Lead Plaintiffs or the Releasors of any claims, causes of action or remedies as to the Samserv Defendants.

30

54.     ***Retention of Jurisdiction*** – Subject to the dispute-resolution provisions found at Section III.G of the Leucadia Settlement Agreement and Section III.G of the Mel Harris/Samserv Settlement Agreement, this Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement Agreements, including a determination whether the proposed Settlements should be approved as fair, reasonable and adequate.

55.     ***Adjournment of Fairness Hearing*** – The Court reserves the right to adjourn the date of the Fairness Hearing, and any adjournment thereof, without further notice to Class Members or anyone else other than the parties.

So ordered this _____ day of _____, 2015.


_____
THE HONORABLE DENNY CHIN
United States Circuit Judge
Sitting by Designation

31

# Exhibit B

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

**MONIQUE SYKES,** *et al.***,**

                                   **Plaintiffs,**

         **vs.**

                                                                    09 Civ. 8486 (DC)

**MEL S. HARRIS AND ASSOCIATES, LLC,** *et al.***,**

                                   **Defendants.**

---

### [PROPOSED] ORDER APPROVING SETTLEMENT

WHEREAS, Lead Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam, on behalf of themselves and the Classes (as defined below), have entered into (*i*) a Stipulation of Settlement as to Certain Claims Against Certain Defendants and the First Amendment to Stipulation of Settlement to settle all Claims that have been, could have been or could be asserted in this Action against defendants Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella (collectively, the "Leucadia Defendants") and (*ii*) a Stipulation of Settlement as to Claims Against Mel Harris Defendants and Samserv Defendants with Mel S. Harris and Associates, L.L.C., Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher (collectively the "Mel Harris Defendants") and Samserv Inc., William

Mlotok, Benjamin Lamb, Michael Mosquera, and John Andino (collectively the "Samserv Defendants"); and

WHEREAS, both the settlement with the Leucadia Defendants and the settlement with the Mel Harris Defendants and the Samserv Defendants (collectively, the "Settlements") address the claims of similarly situated individuals throughout the State of New York;

WHEREAS, the Lead Plaintiffs and the Leucadia Defendants have applied to the Court pursuant to Fed. R. Civ. P. 23(e) for an Order granting final approval of their proposed settlement in accordance with the Stipulation of Settlement as to Certain Claims Against Certain Defendants and the First Amendment to Stipulation of Settlement and its Exhibits (collectively, the "Leucadia Settlement Agreement"); and

WHEREAS, the Lead Plaintiffs and the Mel Harris Defendants and Samserv Defendants have applied to the Court pursuant to Fed. R. Civ. P. 23(e) for an Order granting final approval of their proposed settlement in accordance with Stipulation of Settlement as to Claims Against Mel Harris Defendants and Samserv Defendants (the "Mel Harris/Samserv Settlement Agreement"); and

WHEREAS, on _____, 2015, the Court entered an Order (the "Preliminary Approval Order") in which the Court, among other things, (*i*) found that, for the sake of efficiency and cost effectiveness and to avoid confusing potential Class Members, the approval process for the Leucadia Settlement Agreement and the Mel Harris/Samserv Settlement Agreement (collectively, the "Settlement Agreements") should be conducted contemporaneously and that one set of implementing documents for

the Settlement Agreements and approval process should be, to the extent possible, used to
address both Settlements, (*ii*) certified two settlement classes, (*iii*) directed that Notice be
provided to Class Members as set out in the Preliminary Approval Order,
(*iv*) preliminarily approved the Settlement Agreement and the Allocation Plan,
(*v*) appointed the Class Administrator and approved the payment of $500,000 to Stephen
Einstein, P.C. as an Administration Expense and (*vi*) scheduled a Fairness Hearing to
consider whether to finally approve the proposed Settlements, the proposed Allocation
Plan, the Lead Plaintiffs' Service Award Application and Class Counsel's Attorneys'
Fees and Expenses Application; and

   WHEREAS, the Court held the Fairness Hearing on _____,
201_ to determine, among other things, (*i*) whether the terms and conditions of each of
the proposed Settlements are fair, reasonable and adequate and should therefore be
approved, (*ii*) whether the settlement Classes should be finally certified for settlement
purposes, (*iii*) whether Notice to the Classes as implemented was materially consistent
with the Preliminary Approval Order and constituted due and adequate notice to the
Classes in accordance with Federal Rules of Civil Procedure, the United States
Constitution (including the Due Process Clause), the Rules of this Court and any other
applicable law, (*iv*) whether to approve the Allocation Plan, (*v*) whether to enter
judgment dismissing the Action on the merits and with prejudice as to the Leucadia
Defendants, the Mel Harris Defendants and the Samserv Defendants and against all Class
Members, and releasing all the Released Class Members' Claims and Released
Releasees' Claims as provided in the Settlement Agreements, (*vi*) whether to enter the

requested permanent injunctions and Complete Bar Order as provided in the Settlement

Agreements and (*vii*) whether, and in what amount, to award Service Awards to Lead

Plaintiffs and (*viii*) whether, and in what amount, to award attorneys' fees and expenses

to Class Counsel; and

WHEREAS, the Court received submissions and heard argument at the Fairness

Hearing from Class Counsel, Leucadia Defendants' Settlement Counsel, Mel Harris

Defendants' Counsel and Samserv Defendants' Counsel; and

NOW THEREFORE, based on the written submissions of the parties, the

arguments at the Fairness Hearing, the comments and arguments made by objectors to the

Settlements, other materials of record in this Action, and the Court's Findings of Fact and

Conclusions of Law, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      ***Incorporation of Settlement Agreements*** – This Order incorporates and

makes a part hereof (*i*) the Stipulation of Settlement as to Certain Claims Against Certain

Defendants and the First Amendment to Stipulation of Settlement, (*ii*) the Stipulation of

Settlement as to Claims Against Mel Harris Defendants and Samserv Defendants and

(*iii*) the Individual Notice, Claim Form, Publication Notice and Allocation Plan submitted

by the parties to the Court.  Terms not defined in this Order shall have the definitions

given to them in the Settlement Agreements.

2.      ***Jurisdiction*** – The Court has jurisdiction over the subject matter of the

Action, the Lead Plaintiffs and all other Class Members (as defined below) and has

jurisdiction to enter this Order and the Judgment.

3.    *Class Certification* – The Court confirms certification of the following classes solely for purposes of the Settlements pursuant to Fed. R. Civ. P. 23:

a.    A Rule 23(b)(2) Class of all persons or entities who have been or could have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where default judgments were or could have been sought; and

b.    An overlapping Rule 23(b)(3) Class of all persons or entities (all of whom are also members of the Rule 23(b)(2) Class) who have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where Default Judgments were obtained.

4.    The parties have submitted to the Court a list of the persons and entities who have validly and timely requested exclusion from the Rule 23(b)(3) Class.  The Court finds that the persons and entities set out in that list (which shall be filed under seal as Appendix 1 to this Order) are excluded from the Rule 23(b)(3) Class under both Settlements and therefore shall not be entitled to receive any relief that is provided to Rule 23(b)(3) Class Members and shall not be bound by the terms of the Rule 23(b)(3) Release in the Settlement Agreements.  Such excluded persons and entities shall still be Rule 23(b)(2) Injunction Only Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2) Injunction Only Release and the Settlement Release that are found in both Settlement Agreements.

5

5.      The parties have also submitted to the Court a list of the persons and
entities who were potential Rule 23(b)(2) Nominal Restitution Recipients and have
submitted validly and timely Nominal Restitution Declinations.  The Court finds that the
persons and entities set out in that list (which shall be filed under seal as Appendix 2 to
this Order) shall not be entitled to receive any relief that is provided to Rule 23(b)(2)
Nominal Restitution Recipients under both Settlements and shall not be bound by the
terms of the Rule 23(b)(2) Nominal Restitution Release in the Settlement Agreements.
Such excluded persons and entities shall still be Rule 23(b)(2) Injunction Only
Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2) Injunction
Only Release and the Settlement Release that are found in both Settlement Agreements.

6.      For purposes of the Settlements, and only for these purposes, and subject
to the terms of the Settlement Agreements, the Court confirms its findings that the
requirements of Fed. R. Civ. P. 23 and any other applicable laws have been satisfied, in
that:

a.      Both the Rule 23(b)(2) Class and the Rule 23(b)(3) Class are
ascertainable from business records and/or from objective criteria;

b.      Both the Rule 23(b)(2) Class and the Rule 23(b)(3) Class are so
numerous that joinder of all members would be impractical;

c.      Lead Plaintiffs have alleged one or more questions of fact and law
that are common to all Rule 23(b)(2) Class Members and to all Rule 23(b)(3) Class
Members throughout New York State;

d.      Based on Lead Plaintiffs' allegations that the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants engaged in uniform conduct affecting all Rule 23(b)(2) Class Members and all Rule 23(b)(3) Class Members, Lead Plaintiffs' claims are typical of those of the other members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class throughout New York State;

e.      Lead Plaintiffs have been and are capable of fairly and adequately protecting the interests of the members of the Rule 23(b)(2) Class and of the Rule 23(b)(3) Class, in that (*i*) Lead Plaintiffs' interests are consistent with those of the other Rule 23(b)(2) Class Members and the other Rule 23(b)(3) Class Members throughout New York State, (*ii*) Class Counsel has been and is able and qualified to represent each of the Rule 23(b)(2) Class and Rule 23(b)(3) Class throughout New York State, and (*iii*) Lead Plaintiffs and Class Counsel have fairly and adequately represented all of the Rule 23(b)(2) Class Members and all of the Rule 23(b)(3) Class Members in seeking both monetary and injunctive relief, and in negotiating and entering into the proposed Settlements;

f.      For settlement purposes, the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants have acted on grounds that apply generally to the members of the Rule 23(b)(2) Class, so that injunctive relief is appropriate respecting the Rule 23(b)(2) Class as a whole; and

g.      For settlement purposes, questions of law and/or fact common to members of the Rule 23(b)(3) Class predominate over such questions affecting only individual Rule 23(b)(3) Class Members, and a class action is superior to all other

7

available methods for the fair and efficient resolution of the Action.  In making these findings for settlement purposes, the Court has considered, among other things, (*i*) the Rule 23(b)(3) Class Members' interest in individually controlling the prosecution of separate actions, (*ii*) the impracticability or inefficiency of prosecuting separate actions, (*iii*) the extent and nature of any litigation concerning these claims already commenced and (*iv*) the desirability of concentrating the litigation of the claims in a particular forum.

7.     This certification of the settlement Classes is made for the sole purpose of consummating the settlement of the Action in accordance with the Settlement Agreements.

8.      If the Court's approval of the Settlements does not become Final for any reason whatsoever, this settlement class certification shall be deemed void *ab initio* as to those defendants whose settlement has not been approved, shall be of no force or effect whatsoever to those defendants, and shall not be referred to or used for any purpose whatsoever, including in any further class certification proceedings in this Court (or any other court), involving those defendants; *provided however*, that the voiding of the settlement class certification in connection with the circumstances described in this paragraph 8 shall have no effect on the Court's March 27, 2013 order certifying a Rule 23(b)(2) litigation class and a Rule 23(b)(3) litigation class.

9.     ***Appointment of Lead Plaintiffs and Class Counsel*** – Solely for purposes of the proposed Settlements, the Court hereby confirms (*i*) its certification of Monique Sykes, Rea Veerabadren, Kelvin Perez and Clifton Armoogam as Lead Plaintiffs and class representatives and (*ii*) its appointment of Emery Celli Brinckerhoff & Abady LLP,

8

New Economy Project and MFY Legal Services, Inc. as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

10.    *Proof of Notice* – The parties filed with the Court adequate proof regarding the notice provided to potential Class Members to demonstrate that such notice was materially consistent with the Court's directives in the Preliminary Approval Order.

11.    The Court finds that the distribution of the Individual Notices and Claim Forms, the publication of the Publication Notice and the notice methodology implemented by the parties (*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlements, the effect of the Settlements (including the effect of the releases), Class Members' right to object to the proposed Settlements, the right of Rule 23(b)(3) Class Members to exclude themselves from the Rule 23(b)(3) Class, the right of Rule 23(b)(2) Nominal Restitution Recipients to submit Nominal Restitution Declinations and the right of Class Members who submitted objections to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate and sufficient notice to all persons or entities entitled to receive notice (including any state and/or federal authorities entitled to receive notice under the Class Action Fairness Act) and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

12.    The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this Action.

9

13.    *Settlement Approval* – The Court finds that each of the proposed

Settlements resulted from serious, informed, non-collusive negotiations conducted at

arm's length by the parties and their counsel and was entered into in good faith.  None of

the terms and provisions of either of the Settlement Agreements have material

deficiencies or improperly grant preferential treatment to any individual Class Members.

Accordingly, each of the proposed Settlements as set forth in the Settlement Agreements

and the Allocation Plan, is hereby fully and finally approved as fair, reasonable and

adequate, consistent and in full compliance with all applicable requirements of the

Federal Rules of Civil Procedure, the United States Constitution (including the Due

Process Clause), the Rules of the Court and any other applicable law, and in the best

interests of each of the parties and the Class Members.

14.    In making these findings, the Court considered, among other factors,

(*i*) the nature of the claims asserted by Lead Plaintiffs as to each of the defendants and the

strength of such claims and the defenses of each of the defendants, (*ii*) the risk, expense,

complexity, and likely duration of further litigation and the ability to collect on any

judgment obtained, (*iii*) the likelihood of Lead Plaintiffs maintaining class certification

through trial, (*iv*) the amount and kinds of benefits offered in the proposed Settlements,

(*v*) the allocation of proceeds of the Settlements among Rule 23(b)(3) Class Members and

Rule 23(b)(2) Nominal Restitution Recipients, (*vi*)  the potential vacatur of Default

Judgments obtained against Rule 23(b)(3) Class Members, (*vii*) the provision of

injunctive relief to Class Members, (*viii*) the stage of the proceedings at which the

proposed Settlements were reached, (*ix*) the information available to the parties and the

Court, (*x*) the experience and views of the parties' counsel, (*xi*) the potential Class

Members' reactions to the proposed Settlements, including the number of objections filed

by Class Members, the number of exclusion requests submitted by potential Rule

23(b)(3) Class Members and the number of Nominal Restitution Declinations submitted

by potential Rule 23(b)(2) Nominal Restitution Recipients, (*xii*) the submissions and

arguments made throughout these proceedings by the parties and (*xiii*) the submissions

and arguments made in connection with and at the Fairness Hearing.

15.     ***Implementation of the Agreement*** – The parties and their counsel are

directed to implement and consummate the Settlement Agreements according to their

terms and conditions.

16.     ***Releases*** – The releases as set forth in Section III.H of the Leucadia

Settlement Agreement and in Section III.H of the Mel Harris/Samserv Settlement

Agreement, together with relevant definitions, including the definitions of Released Rule

23(b)(3) Class Members' Claims, Released Rule 23(b)(2) Class Members' Nominal

Restitution Claims, Released Rule 23(b)(2) Class Members' Injunction Only Claims,

Released Class Members' Settlement Claims, Released Releasees' Claims, Releasees and

Releasors, are set out in the attached Appendix 3 to this Order and are expressly

incorporated herein in all respects.  As of the Final Settlement Date for each Settlement,

and without limiting or modifying the full language of the release provisions in the

Settlement Agreements, the Rule 23(b)(3) Release, the Rule 23(b)(2) Nominal Restitution

Release, the Rule 23(b)(2) Injunction Only Release, the Settlement Release and the

Releasees' Release shall be given full force and effect as to all Releasees and all Releasors (as the case may be).

17.  ***Binding Effect*** – The Settlement Agreements and this Order shall be forever binding on the Releasors and Releasees (as those terms are defined in each of the Settlement Agreements).  This Order shall have *res judicata* and other preclusive effect in all pending and future lawsuits or other proceedings brought by Class Members that are based upon, arise out of or relate to Released Class Members' Claims or by Releasees that are based upon, arise out of or relate to Released Releasees' Claims.

18.  ***Termination of the Leucadia Settlement Agreement*** – If the Leucadia Settlement Agreement is terminated as provided under its terms, all terms and conditions set out in the Agreement other than those in Section XII.F shall be null and void and of no further force and effect as to the Leucadia Defendants.  In such event, the Leucadia Settlement Agreement shall not be used or referred to for any purpose whatsoever as to the Leucadia Defendants in this or any proceeding (other than to enforce Section XII.F), and all negotiations and proceedings relating to the Leucadia Settlement Agreement shall be deemed to be withdrawn without prejudice as to the rights of each of the Lead Plaintiffs and the Leucadia Defendants, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to the payment of Notice Expenses, Administration Expenses and the Mediator's fees and expenses, which expense shall be paid as described in Section XII.F of the Leucadia Settlement Agreement.

19.     ***Termination of the Mel Harris/Samserv Settlement Agreement as to the***
***Mel Harris Defendants*** – If the Mel Harris/Samserv Settlement Agreement is terminated
as to the Mel Harris Defendants as provided under its terms, all terms and conditions set
out in the Agreement other than those in Section XII.F shall be null and void and of no
further force and effect, but only as to the Mel Harris Defendants.  In such event, the Mel
Harris/Samserv Settlement Agreement shall not be used or referred to for any purpose
whatsoever as to the Mel Harris Defendants in this or any proceeding (other than to
enforce Section XII.F), and all negotiations and proceedings relating to the Mel
Harris/Samserv Settlement Agreement shall, as to the Mel Harris Defendants only, be
deemed to be withdrawn without prejudice as to the rights of each of the Lead Plaintiffs
and the Mel Harris Defendants, all of whom shall be restored to their respective positions
existing immediately before the Execution Date, except with respect to the payment of
Notice Expenses, Administration Expenses and the Mediator's fees and expenses, which
expense shall be paid as described in Section XII.F of the Mel Harris/Samserv Settlement
Agreement.

20.     ***Termination of the Mel Harris/Samserv Settlement Agreement as to the***
***Samserv Defendants*** – If the Mel Harris/Samserv Settlement Agreement is terminated as
to the Samserv Defendants as provided under its terms, all terms and conditions set out in
the Agreement other than those in Section XII.F shall be null and void and of no further
force and effect, but only as to the Samserv Defendants.  In such event, the Mel
Harris/Samserv Settlement Agreement shall not be used or referred to for any purpose
whatsoever as to the Samserv Defendants in this or any proceeding (other than to enforce

Section XII.F), and all negotiations and proceedings relating to the Mel Harris/Samserv

Settlement Agreement shall, as to the Samserv Defendants only, be deemed to be

withdrawn without prejudice as to the rights of each of the Lead Plaintiffs and the

Samserv Defendants, all of whom shall be restored to their respective positions existing

immediately before the Execution Date, except with respect to the payment of Notice

Expenses, Administration Expenses and the Mediator's fees and expenses, which expense

shall be paid as described in Section XII.F of the Mel Harris/Samserv Settlement

Agreement.  If the Mel Harris/Samserv Settlement Agreement is terminated as to the Mel

Harris Defendants only it will remain in full force and effect as to the Samserv

Defendants, unless Class Counsel chooses, in their discretion, to terminate as to the

Samserv Defendants.

     21.    ***Enforcement of the Settlement Agreement*** – Notwithstanding the

provisions of this Order, nothing in this Order or in the Judgment shall preclude any

action to enforce the terms of either of the Settlement Agreements.

     22.    ***Permanent Injunction Regarding Released Class Members' Claims*** –

The Court hereby permanently bars and enjoins

     a.    all Class Members and their attorneys, accountants, agents, heirs,

executors and assigns – and anyone else purporting to act on behalf of, for the benefit of,

or derivatively for any of them (including any person or entity purporting to act parens

patriae for Class Members) – from filing, prosecuting, or intervening in, or receiving any

benefits from, any other lawsuit or proceeding that is based on or arises from any

Released Class Members' Claim as to any Releasee; *provided however*, that the

14

permanent injunction set out in this Order shall not bar or enjoin any Class Member from seeking to vacate a Default Judgment; and

b.      all persons and entities from filing or prosecuting any other lawsuit as a class action or other proceeding on behalf of any Class Members as to any Releasee, if such lawsuit is based on or arises out of any Released Class Members' Claim; *provided* that, for the avoidance of doubt, any Class Member who has a pending action relating to any Released Class Members' Claim against one or more of the Leucadia Defendants, the Mel Harris Defendants and/or the Samserv Defendants as of the Execution Date of the Settlement Agreements and who has not been excluded from the Rule 23(b)(2) or declined the nominal restitution relief available to Rule 23(b)(2) Nominal Restitution Recipients shall be barred from, among other things, pursuing his, her or its action as to any of the relevant defendant or their related Releasees.

23.      ***Permanent Injunction Regarding L-Credit and LR Credit, LLC*** – The Court hereby permanently bars and enjoins L-Credit, LLC and LR Credit, LLC (and any of its Subsidiaries) from (*i*) purchasing any additional portfolios of consumer debt or (*ii*) seeking any additional Default Judgments or pursuing collection activities on any Consumer Debt Portfolios that have already been purchased.

24.      ***Permanent Injunction Regarding the Mel Harris Defendants*** – The Court hereby permanently bars and enjoins (*i*) Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher from purchasing any consumer debt portfolios or judgments, (*ii*) Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher from initiating any litigation with respect to any consumer debt in which he has

a controlling interest or the Mel Harris Defendants, collectively, have a controlling interest, (*iii*) the Mel Harris Firm from engaging in the practice of law, except as specified in the Mel Harris/Samserv Settlement Agreement, and (*iv*) Mel S. Harris, Kerry Lutz, and David Waldman from acting as an attorney in any consumer debt collection proceeding initiated after the Mel Harris/Samserv Agreement Execution Date, except as specified in the Mel Harris/Samserv Settlement Agreement.  The Court further enjoins (*i*) the Mel Harris Defendants to, subject to the terms of the Mel Harris/Samserv Settlement Agreement, reasonably cooperate with any reasonable efforts by LR Credit or its counsel to suspend as soon as reasonably practicable all collection activities on Consumer Debt until the Final Settlement Date, (*ii*) the Mel Harris Defendants to, subject to the terms of the Mel Harris/Samserv Settlement agreement, reasonably cooperate with any steps necessary for Lead Plaintiffs' to vacate the Default Judgments, and (*iii*) Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and Todd Fabacher to comply with all applicable debt collection laws.

25. ***Permanent Injunction Regarding the Samserv Defendants*** – The Court hereby permanently bars and enjoins Samserv, Inc. from serving process in consumer debt collection cases.  The Court further enjoins (*i*) Samserv, Inc. and William Mlotok to provide a list of consumer debt collections lawsuits filed in New York, Bronx, Kings, Queens, Richmond, and Westchester Counties in which it served process from August 2011 to Final Approval Date and, upon request, for two (2) years following Final Approval Date, to provide the corresponding Affidavits of Service, (*ii*) Samserv, Inc. to pay process servers for unsuccessful attempts at the same rate as for successful attempts,

16

(*iii*) William Mlotok, to the extent he ever has a controlling interest in a process serving agency or is ever in a position to set policies regarding the hiring or retention of process servers, whether as employees or independent contractors, to pay process servers for unsuccessful attempts at the same rate as for successful attempts, (*iv*) Benjamin Lamb, Michael Mosquera, and John Andino, for two (2) years following Final Approval Dates, where section 2-233 of Title 6 of the Rules of the City of New York applies, to include in their records entry a description of the vicinity in which process was delivered under CPLR § 308(1) and a description of the actual place of business, dwelling place or usual place of abode at which process was delivered to a person of suitable age and description under CPLR § 308(2).

26.     ***Complete Bar Order*** – To effectuate the settlement, the Court hereby enters the following Complete Bar Order:

a.     Barring any and all persons and entities from asserting against the Releasees any Claim (whether for indemnification, contribution, or otherwise) that is or arises from a Released Class Members' Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to one or both of the Classes or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees any amounts such person or entity has or might become liable to pay to one or both of the Classes or any Class Member and/or any costs, expenses, or attorneys' fees from defending any Claim by one of both of the Classes or any Class Member; *provided* that, if one or both of the Classes or any Class Member obtains any judgment against such person or entity arising out of a Released Class

17

Members' Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (A) such Releasee's or Releasees' percentage of responsibility for the loss to the Class, Classes or Class Member(s) or (B) either (*i*) the amount of the Settlement Fund created by both of the Settlements, in the case of the Class or Classes, or (*ii*) that portion of the Settlement Fund created by both of the Settlements applicable to the Class Member(s), in the case of one or more Class Members, unless the court entering such judgment orders otherwise;

        b.      Barring all Releasees from asserting any Claim (whether for indemnification, contribution, or otherwise) against any other person where the Claim arises from a Released Class Members' Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to one or both of the Classes or any Class Member, including any claim in which a Releasee seeks to recover from any other person or entity any amounts such Releasee has or might become liable to pay to one or both of the Classes or any Class Member and/or any costs, expenses, or attorneys' fees from defending any Claim by one or both of the Classes or any Class Member; and

        c.      Providing further that, if any person or entity (for purposes of this Complete Bar Order, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Class Members' Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to one or both of the Classes (or any Class Member) or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and

18

if such action or Claim is not barred by a court pursuant to this Complete Bar Order,

neither the Complete Bar Order nor either of the Settlement Agreements shall bar any

Claims by that Releasee against (a) such petitioner, (b) any person or entity who is or was

controlled by, controlling or under common control with that petitioner, whose assets or

estate are or were controlled, represented or administered by that petitioner, or to whose

claims the petitioner has succeeded, and (c) any person or entity that participated with

any of the preceding persons or entities described in items (a) and (b) of this Paragraph

24.c. in connection with the assertion of the Claim(s) brought against the Releasees.

27.      *No Admissions* – None of the Settlement Agreements, this Order, any of

the provisions of the Settlement Agreements, the negotiation of the Settlement

Agreements, the statements or court proceedings relating to the Settlement Agreements,

any document referred to in this Order, any action taken to carry out this Order or to

implement the Settlements, or any prior Orders in this Action shall constitute or be

construed as an admission by any of the Releasees of any wrongdoing or liability.  This

Order, the Judgment, and the Settlement Agreements are to be construed solely as a

reflection of the parties' desire to facilitate a resolution of the Claims in the Complaint

and of the Released Class Members' Claims.  In no event shall this Order, the Judgment,

the Settlement Agreements, any of their provisions, or any negotiations, statements, or

court proceedings relating to their provisions in any way be construed as, offered as,

received as, used as, or deemed to be evidence of any kind in the Action, any other

action, or any judicial, administrative, regulatory, or other proceeding, except a

proceeding to enforce one or both of the Settlement Agreements.  Without limiting the

19

foregoing, this Order, the Judgment, the Settlement Agreements, and any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including any of the Leucadia Defendants, the Mel Harris Defendants or the Samserv Defendants, or as a waiver by the Leucadia Defendants the Mel Harris Defendants or the Samserv Defendants of any applicable defense, or as a waiver by Lead Plaintiffs or the Classes of any Claims, causes of action, or remedies; *provided however,* that this Order, the Judgment and/or the Settlement Agreements may be filed in any action against or by Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim; *provided further* that nothing in this Paragraph 25 shall be interpreted to limit or affect the ability of Class Counsel (on behalf of the Rule 23(b)(3) Class) to seek to have Default Judgments vacated by the courts of the State of New York as set forth in the Settlement Agreement.

28.     ***Service Awards*** – The Court finds that the requested Service Awards of _____ to each of the Lead Plaintiffs are reasonable in the circumstances.  These amounts shall be paid out of the Settlement Fund Balance as that term is defined in the Leucadia Settlement Agreement.

29.     ***Attorneys' Fees and Expenses Award*** – Class Counsel are hereby awarded Attorneys' Fees and Expenses in the amount of _____, which amount is to be paid out of the Settlement Fund Balance as that term is defined in the Leucadia

Settlement Agreement.  The Court finds that the Attorneys' Fees and Expenses are fair, reasonable and appropriate.

30.    ***Modification of Settlement Agreements*** – Without further approval from the Court, the parties are hereby authorized to agree to and adopt such amendments, modifications and expansions of the Settlement Agreements and the implementing documents (including all exhibits to the Settlement Agreements) that (*i*) are not materially inconsistent with this Order and the Judgment and (*ii*) do not materially limit the rights of Lead Plaintiffs, any other Class Member, the Leucadia Defendants, the Mel Harris Defendants, the Samserv Defendants, Releasors or Releasees under the Settlement Agreements.

31.    ***Findings of Fact and Conclusions of Law*** – In support of this Order, the Parties have prepared proposed findings of fact and conclusions of law, which the Court hereby enters contemporaneously with this Order.

32.    ***Retention of Jurisdiction*** – The Court has jurisdiction to enter this Order. Without in any way affecting the finality of this Order or the Judgment, and subject to the dispute resolution provisions found at Section III.G of the Leucadia Settlement Agreement and Section III.G of the Mel Harris/Samserv Settlement Agreement, the Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreements, the parties to the Settlement Agreements, Class Members and anyone else who appeared before this Court for all matters relating to the Settlement Agreements, including the enforcement of the Settlement Agreements and of this Order and the Judgment, and for any other reasonably necessary purpose, including:

21

a.      enforcing the terms and conditions of the Settlement Agreements, this Order and the Judgment (including the Complete Bar Order and the permanent injunctions);

b.      resolving any disputes, claims or causes of action that, in whole or part, are related to or arise out of the Settlement Agreements, this Order or the Judgment (including whether a person or entity is or is not a Class Member and whether claims or causes of action allegedly related to the Released Class Members' Claims are or are not barred by this Order and the Judgment or the Releases);

c.      entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment, including whether to impose a bond on any parties who appeal from this Order or the Judgment; and

d.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction; *provided however*, that nothing in this Order or the Judgment shall interfere with the Mediator's ability to made final, binding and nonappealable rulings as prescribed in the Leucadia Settlement Agreement or in the Mel Harris/Samserv Settlement Agreement.

33.     ***Findings of Good Faith*** – The Court finds that all of the complaints filed in the Action, including the Complaint, were filed as to the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants on a good faith basis and in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.  The Court finds that all parties and their counsel have acted in good faith

22

and have complied with each requirement of Rule 11 with respect to all proceedings herein.

34.     ***Dismissal of Action*** – The claims asserted in this Action against the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as otherwise provided in this Order and in the Settlement Agreements.

35.     ***Entry of Judgment*** – The Court will separately enter the accompanying Judgment in accordance with Fed. R. Civ. P. 58.

SO ORDERED this ____ day of _____, 201_.


_____
THE HONORABLE DENNY CHIN
United States Circuit Judge
Sitting by Designation

# Exhibit C

EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MONIQUE SYKES, *et al.*,

                                    Plaintiffs,

        vs.

                                                        09 Civ. 8486 (DC)

MEL S. HARRIS AND ASSOCIATES, LLC, *et al.*,

                                    Defendants.

## [PROPOSED] JUDGMENT

Consistent with the terms of the Court's _____, 201\_ Approval Order, the settlement of this class action on the terms set forth in the (*i*) a Stipulation of Settlement as to Certain Claims Against Certain Defendants and the First Amendment to Stipulation of Settlement (the "Leucadia Settlement Agreement") and (*ii*) a Stipulation of Settlement as to Claims Against Mel Harris Defendants and Samserv Defendants (the "Mel Harris/Samserv Settlement Agreement") is approved as fair, reasonable and adequate and consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law, and in the best interests of the parties and Class Members.  Unless otherwise defined in this Judgment, the capitalized terms in this Judgment have the same meaning as in the Leucadia Settlement Agreement and/or

the Mel Harris/Samserv Settlement Agreement (collectively, the "Settlement Agreements").

1.      The Court grants certification of the following classes solely for purposes of the settlement pursuant to Fed. R. Civ. P. 23:

      a.      A Rule 23(b)(2) Class of all persons or entities who have been or could have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where default judgments were or could have been sought; and

      b.      An overlapping Rule 23(b)(3) Class of all persons or entities (all of whom are also members of the Rule 23(b)(2) Class) who have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where Default Judgments were obtained.

2.      The persons and entities set out in the list attached as Appendix 1 to the Approval Order are excluded from the Rule 23(b)(3) Class under the Settlement Agreements and therefore shall not be entitled to receive any relief that is provided to Rule 23(b)(3) Class Members and shall not be bound by the terms of the Rule 23(b)(3) Releases in the Settlement Agreements.  Such excluded persons and entities shall still be Rule 23(b)(2) Injunction Only Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2) Injunction Only Release and the Settlement Release that are found in both Settlement Agreements.

3.     The persons and entities set out in the list attached as Appendix 2 to the

Approval Order are not be entitled to receive any relief that is provided to Rule 23(b)(2)

Nominal Restitution Recipients under both Settlement Agreements and shall not be

bound by the terms of the Rule 23(b)(2) Nominal Restitution Release in the Settlement

Agreements.  Such excluded persons and entities shall still be Rule 23(b)(2) Injunction

Only Beneficiaries and, as such, shall be bound by the terms of the Rule 23(b)(2)

Injunction Only Release and the Settlement Release that are found in both Settlement

Agreements.

4.     The distribution of the Individual Notices and Claim Forms, the

publication of the Publication Notice and the notice methodology implemented by the

parties (*i*) constituted the best practicable notice, (*ii*) constituted notice that was

reasonably calculated, under the circumstances, to apprise potential Class Members of the

pendency of the Action, the nature and terms of the proposed Settlements, the effect of

the Settlements (including the effect of the releases), Class Members' right to object to

one or both of the proposed Settlement, the right of Rule 23(b)(3) Class Members to

exclude themselves from the Rule 23(b)(3) Class, the right of Rule 23(b)(2) Nominal

Restitution Recipients to submit Nominal Restitution Declinations and the right of Class

Members who submitted objections to appear at the Fairness Hearing, (*iii*) were

reasonable and constituted due, adequate and sufficient notice to all persons or entities

entitled to receive notice (including any state and/or federal authorities entitled to receive

notice under the Class Action Fairness Act) and (*iv*) met all applicable requirements of

the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

5.      The claims as to the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants are dismissed on the merits and with prejudice according to the terms of the Settlement Agreements (including the Releases) and the Approval Order, without fees or costs to any party except as provided therein.

6.      The permanent injunctions and Complete Bar in the Approval Order shall be effective as to all persons and entities identified in them.

7.      All of the complaints filed in the Action, including the Complaint, were filed as to the Leucadia Defendants, the Mel Harris Defendants and the Samserv Defendants on a good faith basis and in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.  The Court finds that all parties and their counsel have acted in good faith and have complied with each requirement of Rule 11 with respect to all proceedings herein.

8.      The Court has jurisdiction to enter this Judgment.  Without in any way affecting the finality of this Judgment or the Approval Order, and subject to the dispute resolution provisions found at Section III.G of the Leucadia Settlement Agreement and Section III.G of the Mel Harris/Samserv Settlement Agreement, the Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreements, the parties to the Settlement Agreements, Class Members and anyone else who appeared before this Court for all matters relating to the Settlement Agreements, including the enforcement of the Settlement Agreements and of this Judgment and the Approval Order, and for any

4

other reasonably necessary purpose.  Any action arising under or to enforce the

Settlement Agreements and of the Approval Order and this Judgment shall be

commenced and maintained only in this Court.

        9.     Without further order of the Court, the parties to the Settlement

Agreements may agree to reasonable extensions of time to carry out any of the provisions

of the Settlement Agreements.

        JUDGMENT in this Action is hereby entered in accordance with Federal Rule of

Civil Procedure 58 this _____ day of _____, 201_

 

 

_____
          THE HONORABLE DENNY CHIN
          United States Circuit Judge
          Sitting by Designation