# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

MONIQUE SYKES, *et al.*,

                                    Plaintiffs,

        vs.

MEL S. HARRIS AND ASSOCIATES, LLC, *et al.*,

                                    Defendants.

---

Index No.  09-cv-8486 (DC)

---

## LEUCADIA DEFENDANTS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

PROSKAUER ROSE LLP

Ralph C. Ferrara
Ann M. Ashton
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-6800

Margaret A. Dale
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000

*Counsel for Defendants Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando, and Philip M. Cannella*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION .........................................................................................1

BACKGROUND ...........................................................................................2

    A.  Plaintiffs' Allegations .......................................................................2

    B.  Initial Proceedings...........................................................................3

    C.  Mediation .......................................................................................5

    D.  Class Certification Order and Second Circuit Appeal  ..........................5

    E.  Negotiation and Execution of the Settlement
       Agreement....................................................................................6

    F.  Discovery and Information Exchange ..................................................8

    G.  Experts ..........................................................................................8

THE PROPOSED SETTLEMENT .....................................................................9

    A.  The Settlement Classes .....................................................................9

    B.  The Settlement Terms .....................................................................10

       1.  Monetary Relief.......................................................................10

       2.  Other Relief............................................................................11

    C.  Forms and Manner of Notice ..........................................................12

THE SETTLEMENT IS FAIR AND REASONABLE AND
SHOULD BE PRELIMINARILY APPROVED ...................................................13

    A.  The Standard for Preliminary Approval..............................................13

       1.  The Settlement Is the Product of Serious, Informed,
          Arms-Length Negotiations.......................................................15

i

2. The Settlement Does Not Improperly Grant
Preferential Treatment to the Named Plaintiffs or
Any Segments of the Class ................................................................16

3. The Settlement Does Not Provide Excessive
Compensation for Plaintiffs' Counsel.............................................17

4. The Settlement Has No Obvious Deficiencies and
Falls Within the Range of Possible Final Approval........................17

B. The Court Should Approve the Proposed Forms and
Manner of Notice .....................................................................................19

CONCLUSION.................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................18

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................18

*Handschu v. Special Servs. Div.*,
    787 F.2d 828 (2d Cir. 1986)......................................................................19

*In re Agent Orange Prod. Liab. Litig.*,
    611 F.Supp. 1396 (E.D.N.Y. 1985),
    *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987) ..........18

*In re AOL Time Warner S'holder Deriv. Litig.*,
    2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006)..............................................22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................22

*In re Nasdaq Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................14

*In re Traffic Executive Ass'n*,
    627 F.2d 631 (2d Cir. 1980).......................................................................14

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)................................................................15, 19

*Newman v. Stein*,
    454 F.2d 689 (2d Cir. 1972)......................................................................18

*Nieves v. Community Health Plan*,
    2012 WL 857891 (S.D.N.Y. Feb. 24, 2012).....................................14, 15, 17

*Soberal-Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983).........................................................................19

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982).......................................................................13

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..........................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................13, 15, 19

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)....................................................................14, 19

STATUTES

28 U.S.C. § 1332(d) ................................................................................13

28 U.S.C. § 1453 ...................................................................................13

28 U.S.C. § 1711 ...................................................................................13

28 U.S.C. § 1715 ...................................................................................13

N.Y. Gen. Bus. Law § 349 ........................................................................3

N.Y. Jud. Act § 487 ...............................................................................3

OTHER AUTHORITIES

Fed. R. Civ. P. 23(b)(1)(A) ........................................................................4

Fed. R. Civ. P. 23(b)(2)......................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)......................................................................... *passim*

Fed. R. Civ. P. 23(e) .............................................................................2, 14

Fed. R. Civ. P. 23(e)(1)..........................................................................19, 20

Fed. R. Civ. P. 23(f)..............................................................................6, 16

Fed. R. Civ. P. 68 ..................................................................................4

Manual for Complex Litigation § 21.632 .................................................14, 16

Newberg on Class Actions § 8:16 (5th ed. 2014) ...........................................21

Newberg on Class Actions § 8:17 (5th ed. 2014) ...........................................19

Theodore Eisenberg & Geoffrey P. Miller,
    *Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
    53 UCLA L. Rev. 1303 (2006) .............................................................17

## INTRODUCTION

Plaintiffs Monique Sykes, Rea Veerabadren, Kevin Perez and Clifton Armoogam ("Lead Plaintiffs"), on behalf of themselves and Class Members (as defined below), and defendants Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC, Joseph A. Orlando and Philip M. Cannella (the "Leucadia Defendants") have entered into a Stipulation of Settlement and a First Amendment to Stipulation of Settlement (together with exhibits, the "Settlement Agreement") that, if approved by the Court, would settle all claims that have been or could have been asserted as to the Leucadia Defendants in this action.  The executed Settlement Agreement is being contemporaneously submitted to the Court by Lead Plaintiffs.

As discussed more fully below, the Settlement Agreement provides for (*i*) creation of a settlement fund in excess of $46,000,000, (*ii*) an agreement that the relevant Leucadia Defendants will be enjoined from purchasing any additional consumer debt portfolios or seeking any additional default judgments or pursuing any collection activities for the consumer portfolios they own, (*iii*) suspension of collection activities during the judicial approval process and (*iv*) transfer of all consumer portfolios (including default judgments that have been obtained) to an entity to be designated by Lead Plaintiffs.  The Leucadia Defendants deny all wrongdoing in connection with the allegations made against them in this action, but nevertheless have agreed to the settlement because it avoids burdensome litigation and resolves all of the claims made against them.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Leucadia Defendants respectfully submit this memorandum of law in support of Lead Plaintiffs' motion for preliminary approval of the Settlement Agreement and respectfully request that the Court, among other things, (*i*) find that the Settlement Agreement resulted from arm's-length negotiations and was reached only after the Lead Plaintiffs and the Leucadia Defendants (collectively, the "Settling Parties") conducted extensive discovery, (*ii*) certify two settlement classes, (*iii*) preliminarily approve the Settlement and find that it warrants sending notice to putative Class Members, (*iv*) approve the forms and manner of notice that the Settling Parties propose to use to inform putative Class Members of the Settlement Agreement and authorize the Settling Parties to provide notice to putative members of the settlement Classes and (*v*) set a hearing date for consideration of final approval of the Settlement Agreement.[1]

## BACKGROUND

### A.  Plaintiffs' Allegations

This action arises out of the collection of (or attempts to collect) purchased consumer debt from putative Class Members by defendant Mel S. Harris and Associates, LLC (the "Mel Harris Firm").  The Mel Harris Firm pursued collection of such debt on behalf of its client, defendant LR Credit, LLC or one of its subsidiaries (collectively "LR Credit").  LR Credit is a limited liability corporation formed by defendant L-Credit, LLC, an indirectly owned subsidiary of defendant Leucadia National Corporation, and Rushmore Recovery Management, LLC for the purpose of purchasing and collecting consumer debt.

---

[1]     A proposed preliminary approval order is attached as Exhibit A to the First Amendment to the Stipulation of Settlement.

The Mel Harris Firm used a variety of methods to collect the consumer debt purchased by LR Credit, including filing collection lawsuits in New York State Courts. In some of the collection lawsuits, the Mel Harris Firm used defendant Samserv, Inc. to serve the summons on the individuals who owed the debt.

The Complaint[2] alleges that the collection activities of the Mel Harris Firm (and affiliated individuals), Samserv, Inc. (and affiliated individuals) and the Leucadia Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), the New York General Business Law ("GBL") § 349 and, for certain of the affiliates of the Mel Harris Firm who are attorneys, the New York Judiciary Act § 487.  Lead Plaintiffs' allegations of wrongdoing include that, when an individual who had been sued failed to respond to the summons, the Mel Harris Firm sometimes obtained a default judgment against such individual by filing an affidavit of merit that stated that LR Credit had personal knowledge about the debt that was owed even though Lead Plaintiffs allege that LR Credit did not have such knowledge.

The Leucadia Defendants deny any wrongdoing in connection with the collection of consumer debt on behalf of LR Credit.

**B.      Initial Proceedings**

Plaintiff Monique Sykes filed an initial complaint on or about October 6, 2009. Approximately two months later, on or about December 28, 2009, Ms. Sykes was joined by Ruby Colon, Rea Veerabadren, and Fatima Graham in filing an amended class action complaint that, among other things, named additional defendants and sought to pursue

---

[2]      The term "Complaint" refers to the Third Amended Class Action Complaint and Jury Demand filed on or about May 16, 2011.

3

claims on behalf of not only the named plaintiffs, but all others similarly situated.  These plaintiffs (and several others) filed a second amended class action complaint on or about March 31, 2010, again naming additional defendants.

Defendants filed motions to dismiss in May 2010, challenging all of the claims made by plaintiffs as well as the jurisdiction of the Court.  In a December 29, 2010 opinion, the Court dismissed (*i*) plaintiff Fatima Graham's FDCPA claims, (*ii*) plaintiffs' claims alleging a distinct Leucadia RICO enterprise, a distinct Mel Harris RICO enterprise and a distinct Samserv RICO enterprise, (*iii*) the substantive RICO claims against David Waldman, Joseph Orlando, Philip Cannella, Benjamin Lamb, Michael Mosquera, John Andino, Husam Al-Atrash and Assmat Abdelrahman and (*iv*) the RICO conspiracy and GBL claims against David Waldman, Joseph Orlando and Philip Cannella.  The Court denied the motions to dismiss with respect to all other claims.

On April 15, 2011, plaintiffs moved for certification of a class pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A), (b)(2) and/or (b)(3).  While their motion was pending, plaintiffs filed a third amended complaint (pursuant to a stipulation with defendants) that added a new plaintiff (Clifton Armoogam), removed five plaintiffs from the complaint based on their agreement to accept Fed. R. Civ. P. Rule 68 Offers of Judgment from defendants, and added an additional defendant.

On September 4, 2012, the Court issued an opinion granting Lead Plaintiffs' motion to certify a Fed. R. Civ. P. Rule 23(b)(2) class and a Fed. R. Civ. P. Rule 23(b)(3) class.

In an October 2, 2012 letter to the Court, Class Counsel advised the Court that the parties had agreed to submit the case to mediation.  As ordered by the Court, the parties

submitted a scheduling order on December 10, 2012 that continued a stay of all proceedings to allow the parties to mediate, but set deadlines for the completion of discovery.

## C.   Mediation

In November 2012, the parties agreed to mediate before former California Superior Court Judge Daniel Weinstein.  Both before and at the December 5, 2012 day-long mediation session, the parties made presentations setting out their factual and legal positions.  The parties were unable to resolve the claims at the mediation session or during subsequent discussions that continued, with Judge Weinstein's assistance, through January 2013.  In a February 7, 2013 letter, Lead Plaintiffs advised the Court that the settlement discussions had reached an impasse.

## D.   Class Certification Order and Second Circuit Appeal

In their February 7, 2013 letter, Lead Plaintiffs also submitted to the Court a draft class certification order.  Based on defendants' disagreement with the wording of Lead Plaintiffs' proposed order, the Court requested additional briefing on the draft order.  On March 28, 2013, the Court rejected defendants' request to clarify the language submitted by Lead Plaintiffs and entered plaintiffs' proposed order certifying a Fed. R. Civ. P. Rule 23(b)(2) class and a Fed. R. Civ. P. Rule 23(b)(3) class and appointing Emery Celli Brinckerhoff & Abady LLP, New Economy Project (f.k.a. Neighborhood Economic Development Advocacy Project) and MFY Legal Services, Inc. as Class Counsel.

Defendants filed Fed. R. Civ. P. Rule 23(f) petitions with the United States Court of Appeals for the Second Circuit seeking leave to file an interlocutory appeal regarding the Court's March 28, 2013 class certification order.  After the Second Circuit granted

5

those petitions on July 19, 2013, the Court stayed all proceeding in the action pending resolution of the appeal.  On February 10, 2015, the Second Circuit issued an opinion affirming the Court's class certification order.

**E.     Negotiation and Execution of the Settlement Agreement**

In October 2014 – while defendants' Rule 23(f) appeal of the Court's class certification order was pending – the Leucadia Defendants' counsel and Class Counsel discussed whether their respective clients had any interest in re-engaging in settlement discussions.  The parties decided to pursue discussions and, between October 2014 and December 14, 2014, Lead Plaintiffs and the Leucadia Defendants engaged in rigorous, arm's-length negotiations, including numerous telephonic meetings, an in-person meeting and the exchange of factual information regarding certain of the portfolios.[3]

On December 14, 2014, Lead Plaintiffs and the Leucadia Defendants entered into a binding term sheet that included the basic terms of their settlement and required that they execute a settlement agreement by January 31, 2015 setting out those terms in more detail.  The parties notified this Court and the Second Circuit that they had executed the term sheet on January 14, 2015.

The Settling Parties agreed to extend the deadline for execution of the settlement agreement several times to allow them sufficient time to negotiate the settlement agreement and for Lead Plaintiffs to prepare a plan of allocation.  Throughout January, February and March, the Settling Parties engaged in numerous telephonic meetings

---

[3]     While the December 2012 mediation session involved all of the parties to the litigation, the discussions that occurred from October 2014 to mid-December 2014 and the December 14, 2014 term sheet that resulted from those discussions involve only Lead Plaintiffs and the Leucadia Defendants; the other defendants are not parties to the term sheet or the March 18, 2015 Settlement Agreement.

regarding the documents and exchanged drafts of the agreement and collateral

documents, including the proposed notices to putative Class Members.  On March 18,

2015, the Settling Parties executed the Stipulation of Settlement.

 At the time their Stipulation of Settlement was executed, the Leucadia Defendants

and Lead Plaintiffs agreed (with the Court's approval) that they would refrain from filing

their Stipulation of Settlement with the Court and seeking preliminary approval of it until

Lead Plaintiffs explored whether they could reach a settlement with Mel S. Harris and

Associates, L.L.C., Mel S. Harris, Michael Young, David Waldman, Kerry Lutz and

Todd Fabacher (collectively, the "Mel Harris Defendants") and Samserv Inc., William

Mlotok, Benjamin Lamb, Michael Mosquera, and John Andino (collectively, the

"Samserv Defendants" and together with the "Mel Harris Defendants," the "Non-Settling

Defendants").  On September 17, 2015, Lead Plaintiffs advised the Leucadia Defendants

that they had reached agreements in principle with the Non-Settling Defendants.  On

October 28, 2015, the Court held a status conference to give the parties direction as to

how to proceed and set a schedule for some, or all, of the parties to move for preliminary

settlement approval.  At the hearing, the Court instructed the parties to submit to the

Court by November 12, 2015, their motions for preliminary approval.

 On November 12, 2015, Lead Plaintiffs entered into a Stipulation of Settlement

with the Non-Settling Defendants and Lead Plaintiffs and the Leucadia Defendants

executed the First Amendment to Stipulation of Settlement.  In an effort to, among other

things, avoid Class Member confusion, the parties to both agreements have agreed that, to

the extent possible, the approval process should be based upon one set of implementing

documents and be jointly administered and implemented.   With this in mind, attached to

the First Amendment to Stipulation of Settlement, are proposed preliminary approval and approval orders and judgment that would apply to both settlements. The other collateral documents – the Individual Notices, Claim Forms and Allocation Plan – are attached to Lead Plaintiffs' papers seeking approval of the settlements.

**F.     Discovery and Information Exchange**

Substantial discovery had been conducted by the Settling Parties prior to executing the Settlement Agreement. Defendants produced over 500,000 pages of documents (320,000 of which were produced by the Leucadia Defendants) and Lead Plaintiffs produced over 5,000 pages. The Settling Parties served and responded to interrogatories. Fourteen depositions were taken, including depositions of three representatives of the Leucadia Defendants and of each of the Lead Plaintiffs. The three Leucadia-related individuals who were deposed were among the most knowledgeable individuals regarding the Leucadia Defendants' involvement in the conduct alleged.

The Settling Parties exchanged information regarding their factual and legal positions during the mediation that occurred in December 2012 and January 2013. In addition, as agreed in the term sheet, the Leucadia Defendants obtained from the Mel Harris Firm additional factual data regarding Class Members that Lead Plaintiffs deemed necessary for development of the plan of allocation.

**G.     Experts**

Throughout the pendency of the action, including during the mediation and settlement discussions, Lead Plaintiffs and the Leucadia Defendants have been advised by various consultants and experts, including individuals with expertise in consumer protection and consumer finance issues.

## THE PROPOSED SETTLEMENT

### A.    The Settlement Classes

For purposes of this Settlement, the Settling Parties have agreed to certification of two settlement classes, a Rule 23(b)(2) Class and an overlapping Rule 23(b)(3) Class. The Rule 23(b)(2) Class consists of "all persons or entities who have been or could have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the State of New York and where default judgments were or could have been sought."  [Stipulation of Settlement at § I.A.73]  The Rule 23(b)(3) Class consists of "all persons or entities who have been sued by the Mel Harris Firm (or by any other counsel as directed by the Mel Harris Firm) as counsel for the Leucadia Defendants, including LR Credit, in actions commenced in any court located in the state of New York and where Default Judgments were obtained; *provided* that, for the avoidance of doubt, all members of the Rule 23(b)(3) Class are also members of the Rule 23(b)(2) Class."  [Stipulation of Settlement at § I.A.80]

These settlement Classes are analogous to the Rule 23(b)(2) and Rule 23(b)(3) classes certified by the Court in its March 28, 2015 order, but extend the reach of each class to include similarly situated individuals throughout New York State (and not just individuals in New York City).  For purposes of this settlement, the claims of all of these individuals arise from the same operative facts that have been pled by Lead Plaintiffs in the Action.

B.      **The Settlement Terms**

1.      **Monetary Relief**

The Leucadia Defendants have created a settlement fund to which Leucadia National Corporation has caused to be contributed $46,000,000.  [Stipulation of Settlement at § III.A.1]  Leucadia National Corporation has additionally caused to be contributed to that fund L-Credit's share of the additional debt payments collected by LR Credit since January 1, 2015.  [Stipulation of Settlement at § III.A.1]  While the March 18, 2015 Stipulation of Settlement called for Leucadia to hold the settlement fund in an interest-bearing account under its control, as part of the First Amendment the Leucadia Defendants have agreed that, if the Settlement Agreement is preliminarily approved, it will transfer all of the monies currently held in the settlement account (over $50,000,000) into an escrow account under the control of the class administrator appointed by the Court.  [First Amendment at § A]  In addition, the Leucadia Defendants have also agreed that the continuing collection of consumer debt from Class Members may be suspended during the period in which approval of the Settlement Agreement is under review by the Court or any appellate court, during which period no interest will accrue on the debt.  [First Amendment at § B]  Subject to Court approval, the cost of implementing this suspension (an aggregate amount of $500,000) will be paid at the direction of Class Counsel out of the settlement fund established by the Leucadia Defendants once that money has been transferred to the class administrator.

As noted below, the Leucadia Defendants will pay for the costs of providing notice to the settlement classes.  The amount the Leucadia Defendants pay for notice will be in addition to the contributions made to the settlement fund.

10

If the Settlement Agreement is approved by the Court and that approval becomes final (and no longer subject to appeal), the settlement fund held by the class administrator (plus any interest that has accrued and less any administration expenses or tax expenses incurred before or as of the date the settlement approval becomes final[4]) will be transferred to Lead Plaintiffs for distribution to eligible Class Members.  [First Amendment at § A]  Once the settlement fund is transferred to Lead Plaintiffs, the Leucadia Defendants will have no interest in the fund; no monies will be returned to the Leucadia Defendants.

After certain deductions are made from the settlement fund – including for administration expenses, service awards made to Lead Plaintiffs by the Court, tax expenses and the attorneys' fees and expenses awarded to Class Counsel by the Court – Lead Plaintiffs and Class Counsel will oversee distribution of the settlement fund pursuant to the terms of the plan of allocation that they have prepared and submitted to the Court – which also is subject to Court approval.  [Stipulation of Settlement at § III.A.4]

### 2.      Other Relief

If the settlement is finally approved, the Leucadia Defendants, in consideration for the release provided in the Settlement Agreement, will also transfer to an entity to be designated by Lead Plaintiffs all the consumer debt portfolios that LR Credit held as of December 14, 2014 (including any default judgments that were obtained against any Class Members).  The Leucadia Defendants have additionally agreed to entry of a permanent injunction against L-Credit, LLC and LR Credit, LLC (and its subsidiaries)

---

[4]      Both "administration expenses" and "tax expenses" are defined by the Settlement Agreement.   [Stipulation of Settlement at § I.A.3 and § I.A.95].

barring those companies from (*i*) purchasing any additional consumer debt portfolios or (*ii*) seeking any additional default judgments or pursuing collection activities on any consumer debt portfolios they have already purchased.  [Stipulation of Settlement at § III.C.3]

## C.    Forms and Manner of Notice

The Settlement Agreement provides that the Settling Parties will cause the class administrator to mail by first-class mail individual notices and a claim form to the last-known addresses of all potential Class Members in the Rule 23(b)(3) Class and all potential members of the Rule 23(b)(2) Class who made payments to one or more of the Leucadia Defendants and/or the Mel Harris Firm even though no default judgment was obtained against them.  The class administrator will cause the individual notice to be mailed to such potential Class Members at least 90 days prior to the earlier of the deadlines for objecting, requesting exclusion (applicable to all potential members of the Rule 23(b)(3) Class) or declining nominal restitution (applicable to those potential members of the Rule 23(b)(2) Class who made debt payments even though no default judgments were obtained against them).[5]  The individual notice will also be published on the class administrator's website.[6]  [Stipulation of Settlement at § III.D.1]

---

[5]     Individual notices returned to the class action administrator with an updated address more than five days before the hearing at which the Court will consider whether finally to approve the Settlement Agreement will be re-mailed.

[6]     The class administrator will post to the website: (*i*) the individual notices, (*ii*) the claim form, (*iii*)  publication notice, (*iv*) the plan of allocation, (*v*) the Settlement Agreement (including all of its Exhibits), (*vi*) the Settling Parties' filings seeking approval of the Settlement Agreement and any responsive papers, (*vii*) Class Counsel's attorneys' fees and expenses application(s), (*viii*) Lead Plaintiffs' service award applications, (*ix*) the Complaint, (*x*) the Court's December 29, 2010 opinion on defendants' motions to dismiss, its September 4, 2012 opinion on class certification and its March 28, 2013 class certification order, (*xi*) the Second

12

In addition to mailing the individual notices and claim form, the Settling Parties will also arrange to have a summary notice published once in the *New York Daily News,* the *New York Post*, *AM New York*, *New York Metro*, *El Diario*, the *Times Union* and the *Buffalo News*.  The Class Administrator will cause the summary notice to be published in these newspapers at least 60 days prior to the earlier of the deadlines for objecting, requesting exclusion or declining nominal restitution.  The Settling Parties will also provide or cause to be provided notice of the settlement to United States federal and appropriate state officials consistent with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, 1711, 1715.[7]   [Stipulation of Settlement at§§ III.D.2, III.D.3]

## THE SETTLEMENT IS FAIR AND REASONABLE
## AND SHOULD BE PRELIMINARILY APPROVED

**A.    The Standard for Preliminary Approval**

The Second Circuit has long recognized "the strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks omitted); *accord TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982) (noting "the paramount policy of encouraging settlements").  The decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, which should

---

Circuit's opinion affirming the Court's March 28, 2013 class certification order, (*xii*) the preliminary approval order and any subsequent orders of the Court relating to the Settlement Agreement and (*xiii*) such other materials as the Settling Parties determine should be posted.

[7]     The Settling Parties have taken into account the time periods prescribed by CAFA in suggesting proposed dates relating to the Court's determination whether to approve the Settlement Agreement.  [Stipulation of Settlement at § III.D.3]

exercise that discretion in light of the general judicial policy favoring settlement. *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Pursuant to Fed. R. Civ. P. 23(e), the settlement of a class action is not effective until judicially approved and such approval becomes final and no longer subject to appeal. As the Court knows, the first step towards obtaining approval of a proposed class action settlement is for the settling parties to present the proposed settlement to the Court for preliminary approval. At the preliminary-approval stage, "[t]he judge must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms . . . ." Manual for Complex Litigation § 21.632, at 321 (4th ed. 2004). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible [final] approval, preliminary approval is granted." *Nieves v. Community Health Plan*, 2012 WL 857891, at *4 (S.D.N.Y. Feb. 24, 2012) (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *accord In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"). Because preliminary approval depends only on whether the proposal "falls within the range of *possible* approval," *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (emphasis added), the proposal requires less exacting scrutiny at this time.

14

1.  **The Settlement Is the Product of Serious, Informed, Arm's-Length Negotiations**

The first consideration in the preliminary-approval analysis is whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations." *Nieves*, 2012 WL 857891, at *4. Indeed, even under the more rigorous standard governing final approval, where a settlement has been negotiated at arm's length by experienced, informed counsel, there is a presumption that it is fair and reasonable. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 106 n.12).

Here, the proposed settlement was negotiated by experienced, informed counsel. Lead Plaintiffs were represented by an experienced law firm and two public interest organizations. All three of the entities have extensive experience in litigating complex class actions and thorough familiarity with the factual and legal issues of the case. And all three of these organizations have significant experience in representing individuals in consumer-oriented cases. The Leucadia Defendants were similarly represented by counsel with extensive experience litigating complex class actions and thorough familiarity with the factual and legal issues of the case.

The negotiations were rigorous and hard-fought, and were conducted at arm's length. Settlement discussions began in late 2012, under the auspices of former California Superior Court Judge Daniel Weinstein. The Settling Parties (along with the other defendants) participated in a full day of mediation with Judge Weinstein and his colleague Michelle Yoshida on December 5, 2012. The parties continued to discuss settlement for two months – engaging in both direct negotiations and in negotiations

15

through Judge Weinstein.  These discussions reached an impasse in early February 2013, after which the parties went back to litigating the issues.

After engaging in additional discovery, briefing regarding the Court's decision to grant Lead Plaintiffs' certification motion and a Fed. R. Civ. P. 23(f) appeal of the Court's class certification order, the Settling Parties began a new round of settlement discussions in October 2014.  These discussions occurred over the next two months, during which time there were multiple telephone meetings and an in-person meeting. Drafts of the term sheet were exchanged and each side bargained hard regarding its terms.  There were times when it appeared that no agreement would be reached.  The parties were eventually able to reach an agreement and a binding term sheet was executed on December 14, 2014.  As discussed above, the Settling Parties negotiated a more complete Stipulation of Settlement between January and March 2015, executing it on March 18, 2015.  On November 12, 2015, they executed a First Amendment to Stipulation of Settlement that includes as Exhibits all of the implementing documents.

### 2.  The Settlement Does not Improperly Grant Preferential Treatment to the Named Plaintiffs or Any Segments of the Class

The Leucadia Defendants leave it to Lead Plaintiffs to describe the plan of allocation that Class Counsel has drafted and pursuant to which the monetary relief will be distributed to eligible Class Members.  While the Lead Plaintiffs drafted the plan and will be responsible for the distribution of settlement relief, the Leucadia Defendants note that the plan of allocation does not appear to provide "unduly preferential treatment of class representatives or segments of the class" and has been reviewed by Judge Weinstein.  *See* Manual for Complex Litigation § 21.632, at 321.

16

In addition, while the Leucadia Defendants will leave it to Lead Plaintiffs to justify the service awards they will seek, the Leucadia Defendants note that the aggregate amount that Lead Plaintiffs have indicated they will seek is consistent with those awards generally made to class representatives.  As set out in a 2006 study, the average aggregate award made to class representatives is 0.16% of the total recovery made to the class. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006).  In this case, the awards sought by class representatives are expected to be in the aggregate amount of $120,000 – which is only 0.0026% of the recovery to the class.

### 3. The Settlement Does Not Provide Excessive Compensation for Plaintiffs' Counsel

The Leucadia Defendants leave it to Lead Plaintiffs and Class Counsel to discuss the attorneys' fees and expenses that will be sought by Class Counsel.

### 4. The Settlement Has No Obvious Deficiencies and Falls Within the Range of Possible Final Approval

The remaining considerations at the preliminary-approval stage are whether the settlement is free of obvious deficiencies and falls within the range of possible final approval.  *Nieves*, 2012 WL 857891, at *4. The settlement here easily meets these criteria.

The settlement is an exceptional outcome for the class.  In addition to the significant settlement fund, which will be distributed to eligible Class Members according to Class Counsel's plan of allocation, the Leucadia Defendants will transfer to an entity designated by Class Counsel all debt portfolios that it owns (including the default judgments that were obtained) and it will agree to entry of a permanent injunction

that will bar the two relevant entities – L-Credit, LLC and LR Credit, LLC (and its

subsidiaries) – from purchasing any additional consumer debt portfolios.   Class Counsel

has expressed its intent to work with the New York State courts to have the default

judgments vacated and to stop collections of any additional debt from Class Members.

The determination of whether a settlement amount is reasonable "does not involve

the use of a 'mathematical equation yielding a particularized sum.'"   *Frank v. Eastman

Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation omitted).   "Instead, 'there is a

range of reasonableness with respect to a settlement – a range which recognizes the

uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion.'"   *Id.*   (quoting *Newman v.

Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).   Moreover, "[m]uch of the value of a settlement

lies in the ability to make funds available promptly."   *In re Agent Orange Prod. Liab.

Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *aff'd in part & rev'd in part on other

grounds*, 818 F.2d 179 (2d Cir. 1987).

When "settlement assures immediate payment of substantial amounts to class

members, even if it means sacrificing 'speculative payment of a hypothetically larger

amount years down the road,'" settlement is reasonable.   *Gilliam v. Addicts Rehab. Ctr.

Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of

La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

If this settlement is approved and that approval becomes final and no longer

subject to appeal, eligible Class Members will receive payments pursuant to Lead

Plaintiffs' submitted allocation plan within a reasonable time after final approval.   If this

case were to be litigated it would be years before plaintiffs would see any relief even if

18

Lead Plaintiffs were successful in their claims – and the Leucadia Defendants do not believe that Lead Plaintiffs would be successful in their claims against the Leucadia Defendants.

**B.      The Court Should Approve the Proposed Forms and Manner of Notice**

Once a court concludes that the proposed settlement meets the standard for preliminary approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The Second Circuit has held that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc.*, 396 F.3d at 113 .  Although no rigid standards govern the contents of notice to class members, the notice should "fairly apprise the [members of the class] of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Id.* at 114 (quoting *Weinberger*, 698 F.2d at 70.  *See also McReynolds*, 588 F.3d at 804 ("[t]he notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance") (quoting *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983)).

"The content of settlement notice is committed to the discretion of the trial judge."  Newberg on Class Actions § 8:17 (5th ed. 2014); *accord Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("the district court has virtually complete discretion as to the manner of giving notice to class members").

In this case, the parties propose sending individual notices (along with a copy of the claim form that eligible Class Members must submit to obtain monetary relief under

the settlement) by first-class mail, postage prepaid (in the forms attached as exhibits to

Lead Plaintiffs' papers seeking approval of the settlements) to all members of the

proposed settlement Rule 23(b)(3) Class and those members of the proposed settlement

Rule 23(b)(2) who made payments to one or more of the Leucadia Defendants and/or the

Mel Harris Firm even though no default judgment was obtained against them.  The

notices will be tailored to the specific circumstances of each recipient Class Member –

including, for example, providing the recipient with estimates of the amount of his or her

monetary relief under different Class Member participation levels.  These notices meet

the requirements of Rule 23(e)(1) and are clearly reasonable:  they are written in plain

English and include (*i*) the caption for the case, (*ii*) a description of the action, (*iii*) a

description of the settlement classes, (*iv*) identification of counsel for the class, (*v*) a

comprehensive summary of the Settlement Agreement's terms, (*vi*) detailed information

about the releases, (*vii*) a description of the allocation plan pursuant to which the

settlement proceeds will be allocated and estimates of the amount each recipient Class

Member will receive pursuant to different participation levels, (*viii*) the procedure for

filing objections, (*ix*) the hearing date, (*x*) the procedure for filing requests for exclusion

from the Rule 23(b)(3) class and declining the nominal restitution, and the consequences

of failing to request exclusion or decline nominal restitution, (*xi*) the consequences of

approval of the settlement by the Court, (*xii*) notice of Class Counsel's intent to request

attorneys' fees, (*xiii*) notice of Lead Plaintiffs' intent to seek service awards, (*xiv*) the

contact information for the class administrator (who will be available to answer Class

Members' questions) and (*xv*) the procedure for obtaining additional information.  The

claim form is also written in plain English and is simple to complete.  Individual notices

(and the claim form) will be mailed to the Class Members described above by no later than 90 days before the earlier of the date by which Class Members must object, request exclusion or decline nominal restitution.  The class administrator will also post the individual notices and the claim form on the class administrator's website, along with the Settlement Agreement (including the full Release).

In addition to mailing the individual notice to those Class Members identified above, the Settling Parties propose publishing a summary notice (in the form attached as an exhibit to Lead Plaintiffs' papers seeking approval of the settlements) in the following newspapers: the *New York Daily News,* the *New York Post*, *AM New York*, *New York Metro*, *El Diario*, the *Times Union* and the *Buffalo News*.  The summary notice will contain (*i*) a description of the settlement classes, (*ii*) a description of the settlement relief, (*iii*) the procedures for requesting exclusion from the Rule 23(b)(3) class or declining nominal restitution relief, (*iv*) the legal effects of not requesting exclusion or declining nominal restitution, (*v*) the hearing date and (*vi*) the process of obtaining further information.  The summary notice will be published by no later than 60 days before the earlier of the date by which Class Members must object, request exclusion or decline nominal restitution.

Both the individual notices (with the claim form) and the publication notice will be distributed to Class Members sufficiently in advance of the objection deadline and the fairness hearing.  *See* Newberg on Class Actions § 8:16 (5th ed. 2014) ( "[t]o safeguard class members' opportunity to object and/or appear, notice must be issued sufficiently in advance of the objection deadline and/or fairness hearing to make those opportunities meaningful").  While *Newberg* suggests that class members be given at least 60 days in

which to file an objection or appear at a fairness hearing, *id.*, courts in this district have

upheld shorter periods, *see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL

5178546, at *13 (S.D.N.Y. Dec. 23, 2009) (approving a settlement with a 30-day opt out

period in securities class action); *In re AOL Time Warner S'holder Deriv. Litig.*, 2006

WL 2572114, at *6 (S.D.N.Y. Sept. 6, 2006) (finding distribution of notice thirty-four

days before the deadline for objections was adequate).  In this case, individual notice will

be provided to the Class Members described above at least 90 days prior to the objection

date (as well as the date for requesting exclusion or declining nominal restitution) and the

summary notice will be published at least 60 days prior to the objection date (and date of

requesting exclusion or declining nominal restitution).  The Settling Parties propose that

the date for objecting, requesting exclusion or declining nominal restitution be at least 20

days prior to the date of the fairness hearing.

There is no question that the notice that will be provided to settlement Class

Members and the methodology by which it will be provided not only meets, but exceeds

all requirements for notice in a class action settlement.  The notice (and the manner in

which it will be provided) is reasonably calculated to apprise settlement Class Members

of the Settlement Agreement, the effect of the Settlement Agreement (including the effect

of the releases contained in the Settlement Agreement), their right to object to the

proposed settlement and their right to exclude themselves from the Rule 23(b)(3) class or

decline nominal restitution.  Accordingly, the Court should approve the proposed notice.

## CONCLUSION

For the reasons set out above, the Leucadia Defendants respectfully request that the Court preliminarily approve the proposed settlement, certify the settlement classes, authorize the proposed form and manner of notice to the settlement classes, and schedule a hearing date for the fairness hearing.  The Settling Parties will ask that the Court, after considering the relevant issues and holding a fairness hearing, issue an order approving the settlement as fair, reasonable and adequate.

Respectfully submitted,


 /s/ Ralph C. Ferrara
Ralph C. Ferrara
Ann M. Ashton
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004-2533
Tel: (202) 416-6800

Margaret A. Dale
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000

*Counsel for Defendants Leucadia
National Corporation, L-Credit,
LLC, LR Credit, LLC, LR Credit 10,
LLC, LR Credit 14, LLC, LR Credit
18, LLC, LR Credit 21, LLC, Joseph
A. Orlando, and Philip M. Cannella*

November 12, 2015